Dalia Genger
May 14, 2009
Page 4

---

**Trans-Resources, Inc. ("TRI")**

17.    All documents relating to TRI from 2003 though the present including, without limitation, shareholder agreements and amendments, tax returns, financial statements (including balance sheets, profit and loss statements, income statements, operating and expense statements), minutes from all board meetings, records of contributions or investments by you, the Trust, the Sagi Trust, Sagi and/or any other party, cash receipts, cash disbursements journals, balance sheets, general ledgers, a list of employees, W-2s, 1099s, and statements of income distribution to you, the Trust, the Sagi Trust, Sagi and/or any other party, a list of all board of director members since 2003 and a list of all appointed management since 2003 and each of their compensation schedules.

18.    The Trust owns TRI shares and as a fiduciary you should have had knowledge that the Sagi Trust sold its TRI shares on August 22, 2008 to TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC and New TR Equity II, LLC. Provide us with all documents relating to the sale of TRI shares by the Sagi Trust.

19.    The assets of the Trust may be affected by the following lawsuits:

(i)    Glenclova Investment Co. v. Trans-Resources, Inc., and TPR Investment Associates, Inc. pending in the United States District Court, Southern District of New York;

(ii)    Robert Smith, TR Investors, LLC and Glenclova Investment Co. v. Trans-Resources, Inc. pending in the Delaware Chancery Court;

(iii)    TR Investors, LLC, Glenclova Investment Co., New TR Equity 1, LLC and New TR Equity II, LLC v. Arie Genger and Trans-Resources, Inc. pending in the Delaware Chancery Court; and

(iv)    New TR Equity, LLC v. Trans-Resources, Inc., pending in the Delaware Chancery Court.

Accordingly, as trustee provide us with copies of documents relating to the above-set-forth proceedings including, without limitation, the pleadings (i.e., the summons, complaint and all motion papers) and correspondence.

20.    All documents related to TRI shares that were issued to the Trust and are being held by Robert Lack, Esq., Friedman Kaplan Seiler & Adleman LLP, 1633 Broadway, New York, New York 10019.

The term "documents" as used above shall mean the original or duplicate copy or draft(s) of any writing or recording of whatever nature, whether written, typed, printed, photocopied, filmed, videotaped or mechanically or electronically sorted or recorded, which is in your possession, custody or control. Moreover, the term "documents" shall include, without limitation, correspondence, e-mails, memoranda, reports, notes, minutes, or records, or telephone conversations, meetings, or conferences, diaries, logs, calendar notes, accounting records, financial statements, books of account, vouchers, invoices, bills, computer tapes, print-outs,

Dalia Genger
May 14, 2009
Page 5

---

writings, drawings, graphs, charts, photographs, videotape recordings, data compilations from which information can be obtained or translated.

     If we do not receive a reply with the information requested on or before May 28, 2009, we will be forced to seek court intervention.


Sincerely,

COZEN O'CONNOR

By:    Judith E. Siegel-Baum

JES:pw

cc:    Orly Genger
       Jonathan G. Kortmansky, Esq.

# PEDOWITZ & MEISTER, LLP

1501 BROADWAY, SUITE 800
NEW YORK, NEW YORK 10036-5501
www.pedowitzmeister.com

212.403.7330 voice
212.354.6614 facsimile
robert.meister@pedowitzmeister.com

ARNOLD H. PEDOWITZ
ROBERT A. MEISTER

DAVID HARRISON
RANDI MELNICK

June 1, 2009

NEW JERSEY OFFICE

285 OLD SHORT HILLS ROAD
SHORT HILLS, N.J. 07078
(973) 912-0005

EMAIL AND UPS

Judith E. Siegel-Baum, Esq.
Cozen & Worcester
250 Park Avenue
New York, NY 10177

Re:    Orly Genger 1993 Trust

Dear Ms. Siegel-Baum:

I write to respond to your May 14th letter to my client, Dalia Genger in her capacity as Trustee of The 1993 Orly Genger Trust (the Trust).

May I start by expressing Mrs. Genger's understanding about the concern that your client, Orly Genger, has about the effect her interests of the various lawsuits your letter mentions. Mrs. Genger has the same concern, particularly since, as we understand it, the *Glenclova* action raises the issue of whether the transfer to the Trust of shares of Trans-Resources, Inc. (TRI) was invalid under the TRI shareholders' agreement.

Having shared that concern, I would like to respond to your letter in narrative form, rather that in the form a response to a litigation demand for production.

All TRI shares are, I am informed, held for the benefit of the shareholders by TRI. Thus Mrs. Genger does not physically possess a share certificate. I am informed that the absence of such a certificate did not prevent The Sagi Genger Trust from selling the shares it was given.

As your client knows, Mrs. Genger became Trustee January 4, 2008, as successor trustee to Leah Fang. Ms. Fang has an accounting pending in Surrogate's Court, New York County, File No. 0017/2008.

Mrs. Genger has not taken any action as Trustee and has not received any dividends or other property or assets in respect of the TRI shares.

As your client knows, D & K LP pledged its 240 shares of the stock of TPR Investment Associates, Inc. (TPR) to secure its December 21, 1993 Note to TPR in the principal amount of

$8,950,000. I believe that your client has the D&K organization papers; if not I'll be glad to copy them for you at your expense, as they're about an inch think. By notice dated 8/31/2008, TPR declared that Note to be in default and subsequently sold the TPR shares for $2,200,000 on February 27, 2009. I attach papers concerning this transaction.

As a result of the foreclosure, the TRI shares are the Trust's only asset.

To date, Mrs. Genger has not filed and fiduciary tax returns, nor submitted any of her expenses for reimbursement by the Trust nor taken any commissions.

Sincerely,

Robert A. Meister

# NOTICE OF DEFAULT & ENFORCEMENT of PLEDGE

To:     Sagi Genger, D&K LP General Manager

From:   Yonit Sternberg, TPR Investment Associates, Secretary

Date:   8/31/2008

Re:     Notice of Default and Liquidation of Collateral

---

Please be advised that you are in default in the payment of amounts due under that certain Promissory Note dated December 21, 1993 in the original amount of $8,950,000(the "Note") due to the failure to pay any principal or interest due since 2005 and failing to make regular payments since 2000. Such default has continued for more than ten (10) business days. Please be advised that pursuant to the Note we hereby declare that the entire unpaid principal amount of the Note immediately due and payable.

The shares of TPR Investment Associates pledged to TPR as collateral will be liquidated at a public auction if the full Note is not satisfied.

Sagi Genger – TPR Investment Associates, Inc.

CONFIDENTIAL

1

TO:        D&K LIMITED PARTNERSHIP

FROM:     TPR INVESTMENT ASSOCIATES, INC.

          New York, New York
          Tel: 212-729-5076

--------------------------------------------------------------------------------------------

We will sell all of your 240 shares of common Stock of TPR Investment Associates, Inc. to the highest qualified bidder in public as follows:

Date:     Friday, February 27, 2009

Time:     2:00 p.m.

Place:    Offices of McLaughlin & Stern, LLP, 260 Madison Avenue, 20th Floor, New York, NY 10016

You are entitled to an accounting of the unpaid indebtedness secured by the property we intend to sell. You may request an accounting by calling us at 212-729-5076.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at 212-729-5076.

If you want us to explain in writing how we have figured the amount that you owe us, you may call us at 212-729-5076 or write us at _____ and request a written explanation.

If you need more information about the sale, call us at 212-729-5076 or write us at _____.

# CERTIFICATE of SALE and FACT

**Know all men by these presents:** That by virtue of a default in the payment of certain monies due, and pursuant to the terms of a certain Security Agreement dated 12 / 21 / 93 placed in my hands for execution and foreclosure made by:

D & K Limited Partnership

to TPR Investment Associates, Inc. (Borrower)

(Secured Party)

The Secured Party did on the 27 day of Feb. , 2009 in the manner provided by statute, sell at Public Auction by WILLIAM MANNION, Auctioneer, all the borrower(s) right, title and interest, in and to the collateral consisting of 240 shares of Capital Stock and the appurtenant Proprietary Lease allocated to Apartment No. in the building known as and located at: at TPR Investment Associates, Inc

And sold unto TPR Investment Associates, Inc.

of

for the sum of $ 2,200,000.— , they being the highest bidder in accordance with the Terms of Sale which were available to all bidders.

That public notice of sale was given prior to its taking place and was duly advertised. This Auction Sale was held at:

McLaughlin + Stern, 200 Madison Ave , NY, NY .

✓ Sold to the Secured Party, no money exchanged hands except for the auctioneer's fees and expenses of the sale.

The sum of $ of the bid price was paid to the Attorney's for the Secured Party as a down payment.

IN WITNESS WHEREOF, I have hereunto set my hand on the 27th day of February , 2009.

William Mannion, Auctioneer



# COZEN
# O'CONNOR

A PROFESSIONAL CORPORATION

250 PARK AVENUE    NEW YORK, NY 10177    212.509.9400    800.437.7040    212.986.0604 FAX    www.cozen.com

June 11, 2009

**Judith E. Siegel-Baum**
Direct Phone 212.883.4902
Direct Fax    215.701.2261
jsiegel-baum@cozen.com

**VIA FACSIMILE, E-MAIL AND US MAIL**

Robert A. Meister, Esq.
Pedowitz and Meister
1501 Braodway
New York, New York  10036

Re:    Orly Genger 1993 Trust

Dear Robert:

      In response to your email dated June 10, 2009, we are prepared to meet with you and Dalia, at our offices, if you agree to the following:

      1.    You agree that Orly will not be present at the meeting.  Based upon prior meetings Orly has advised us that her involvement in this meeting will be too emotionally difficult.

      2.    Dalia stipulates, in writing, that she will not, under any circumstances and until we resolve our differences, sell, transfer or remove the TRI shares from the Orly Trust.  In January 2009 Orly advised Dalia of her strong desire to retain all of the TRI shares currently held by the Orly Trust and specifically directed Dalia not to sell them.

      If you agree to the above, we are prepared to schedule a meeting for early next week and are available after 4 p.m. on June 16th and after 2 p.m. on June 17th.  If we do not hear back from you by the close of business on Friday, June 12, 2009 we will assume that you and Dalia are

Robert A. Meister, Esq.
June 11, 2009
Page 2

---

unable to agree to our requests.   I look forward to hearing from you.


Sincerely,



COZEN O'CONNOR

By: _Judith E. Siegel-Baum_

JES\pw
cc:    Orly Genger

**From:** Robert Meister [mailto:robert.meister@pedowitzmeister.com]
**Sent:** Thursday, June 11, 2009 4:01 PM
**To:** Siegel-Baum, Judith E.
**Cc:** Langan, Suzann; Lehman, Stephanie
**Subject:** RE: Orly Genger 1993 Trust

Dear Judy:  I just received your letter at 3:50 today.  While I have forwarded it to Dalia Genger, other professional commitments make it impossible for me to respond before early next week.  So if we are to have a meeting, we'll have to find different times.

Bob Meister

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
In the Matter of:                                :

Dalia Genger,                                    :        Index No. 302436/02

                          Plaintiff,             :
                                                 :        AFFIDAVIT OF DALIA GENGER
        -against-                                :        IN SUPPORT OF PLAINTIFF'S
                                                 :        APPLICATION FOR AN ORDER
                                                 :        OF CONTEMPT AND OTHER
Arie Genger,                                     :        RELIEF AND IN OPPOSITION TO
                                                 :        DEFENDANT'S CROSS MOTION
                          Defendant.             :
------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

        **DALIA GENGER**, being duly sworn, deposes and says:

        1.    I am the Plaintiff in this action, and submit this affidavit in support of my application that this Court hold my ex-husband, Arie Genger ("Arie"), in contempt for his willful failure to comply with the instructions issued by our son, Sagi Genger ("Sagi"), the attorney-in-fact. The facts stated herein are based upon my personal knowledge unless otherwise stated.

        2.    Concurrent with the execution of the Stipulation of Settlement (the "Stipulation") dated October 30, 2004 between Arie and me, it was understood that Sagi would act as Chief Executive Officer of TPR in order to execute various documents required under the Stipulation. It was also understood that the note (the "D&K Note") issued by D&K Limited Partnership dated December 21, 1993, in the principal sum of $8,950,000 and payable to TPR, which was attached as an Exhibit to the Stipulation, would be saleable by Sagi Genger for as little as $10,000. Simultaneous with the execution of the Stipulation, the Board of TPR executed a Board Resolution which gave effect to these understandings. Arie's counsel reviewed the Board

{N0078423; 1}

P 1/2

20-01187-jlg    Doc 1-5    Filed 06/20/20    Entered 06/20/20 20:19:48    NoR part 6
Pg 12 of 150

Resolution prior to its execution. He did not state any objection to the Board Resolution, and was satisfied that the Board Resolution reflected the parties' understanding and agreement. A true and correct copy of the Board Resolution is attached hereto. Although the Board Resolution is dated October 31, 2004, it was executed on October 30, 2004.

3.    The purpose of the D&K Note Board Resolution was to carry out our understanding that I not be in the position to foreclose on the D&K Note, and to take for myself an interest that Arie and I intended for the children.

4.    In August 2006, TPR sold the D&K Note (but retained a nominal contingent interest) for $12,000.

Sworn to before me this 14th day of February, 2007

_Dalia Genger_
DALIA GENGER

Notary Public

KATARZYNA SCHWARTZ
Notary Public, State of New York
No. 01SC6158649
Qualified in Queens County
COMMISSION EXPIRES 01/02/2011

{N0078423; 1}                    - 2 -



SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In the Matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER as Trustee of the ORLY GENGER 1993 Trust Pursuant to SCPA § 711 (11) | **VERIFIED PETITION FOR REMOVAL OF DALIA GENGER AS TRUSTEE AND REQUEST FOR TEMPORARY RESTRAINING ORDER**<br><br>**FILE NO.:  0017/2008** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("Petitioner" or "Orly"), by her attorneys Cozen O'Connor,

respectfully alleges as her Verified Petition for Removal of Dalia Genger as Trustee:

1.     Orly, domiciled at 1965 Broadway, Apt. 22G, New York, New York 10024, is the

current beneficiary of the Orly Genger 1993 Trust dated December 13, 1993 (the "Orly Trust")

(annexed hereto as Exhibit A). Dalia Genger, residing at 200 East 65th Street, Apt. 32W, New

York, New York 10021 ("Respondent" or "Dalia"), Orly's mother, is the current sole Trustee of

the Orly Trust, and was appointed successor Trustee in January 2008.

2.     Based upon the allegations contained herein, Petitioner requests that this Court

provide the following relief:

(a)     Enjoining and restraining Respondent, her agents, and all other persons

acting on her behalf from withdrawing, selling, disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating, or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc. ("TRI"),[1] a closely held corporation, founded

---

[1] TRI is the parent company of several subsidiaries that provide growers with specialty fertilizer and industrial chemicals, including Haifa Chemicals Ltd., Na-Churs Alpine Solutions, Plant Products Co. Ltd., and Elgo Irrigation Co.

by Arie Genger ("Arie"), Petitioner's father and Respondent's former husband, and any other

assets which may be remaining in the Orly Trust. The Orly Trust's TRI shares are in imminent

danger of being sold by Respondent and her son, Orly's brother, Sagi Genger ("Sagi"), for the

purpose of benefiting Sagi Genger and presumably Respondent, and depleting and denuding the

value of Orly's Trust;

       (b)     removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust, and imprudently managing

and injuring the property committed to her charge. As will be demonstrated herein, Respondent

has conspired with, and participated in the diversion of trust assets to, Sagi, who underhandedly

sold without any objection from Respondent, the Orly Trust's indirect interest in TPR Investment

Associates Inc. ("TPR"), a closely held family-owned corporation.

       (c)     surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding the Petitioner costs and attorneys' fees;

       (d)     appointing Michael D. Grohman, Esq., as successor trustee;

       (e)     waiving any requirement that Petitioner post an undertaking; and

       (f)     granting Petitioner such further relief deemed necessary or proper.

3.     To assist the Court in perceiving the severity of Respondent's conduct and the

urgency of the provision of extraordinary relief, the following is an overview of the facts

supporting this Petition.

## I.   OVERVIEW

4.     Arie and Dalia were married on July 23, 1967, in a ceremony held in Israel. In

2004, however, their marriage ended in divorce. Prior to 1993, at which time Dalia and Arie

were married, Dalia and Arie formed D & K LP ("D & K"), a family-owned limited partnership

whose name was shorthand for "Dalia and Kids." At the time of its formation, Dalia, the general partner, held a 4% interest, and Orly and Sagi, the limited partners, each held a 48% interest.

5.       In December 1993, Dalia and Arie also established identical irrevocable *inter vivos* trusts for the benefit of each of their children: the Orly Trust and the Sagi Genger 1993 Trust (the "Sagi Trust"). For estate-planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the trusts was to ensure that both children received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both trusts and remained Co-Trustees until the Genger's divorce. After the Trusts were funded, Orly and Sagi each assigned their 48% interests in D & K to their Trusts.

6.       At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) in TPR for $10,200,000. The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000, and the balance was satisfied with a recourse $8,950,000 promissory note (the "Note") (a copy of which is annexed hereto as Exhibit B). Pursuant to the Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The Note was secured by a pledge of the 240 TPR shares owned by D & K. Each of the Trusts and Dalia assumed liability on the Note in proportion to its/her direct interest in D & K. Accordingly, each of the Orly and Sagi Trusts assumed a 48% liability on the Note and acquired a 23.52% indirect interest in TPR and Dalia assumed a 4% liability on the Note and a 1.96% indirect interest in TPR. Payments were made on the Note until 1999, at which time D & K stopped making payments with the implied consent of the interested parties.

7.       At the time of the above-described transaction, Arie owned the remaining 51% of TPR, which held investments in various securities, including TRI common stock, as well as its

interest in the Note. As of March 30, 2001, TPR held a 52.85% interest in TRI. The remaining

minority interest in TRI (47.15%) was owned by various entities controlled directly and

indirectly by Jules and Eddie Trump (the "Trump Group").

8.    On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of

Settlement as a final settlement of their divorce (the "Settlement Agreement") (annexed hereto as

Exhibit C). Pursuant to the Settlement Agreement, Dalia received, *inter alia*, Arie's 51% interest

in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to

Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust, and (iii) 19.43%

to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime

voting proxy over their TRI shares (annexed hereto as Exhibit D). Therefore, after October 29,

2004, Arie and the two Trusts held a controlling interest in TRI, and TPR no longer owned any

TRI common stock.

9.    In connection with the divorce settlement, Dalia took measures to cede

management of D & K and TPR to her son Sagi. On October 21, 2004, days before signing the

Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"), whose sole

purpose was to act as the general partner of D & K. Dalia exchanged her 4% interest in D & K

and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1% membership

interest in D & K GP for $1.00. Pursuant to the Limited Liability Agreement of D & K GP

(annexed hereto as Exhibit E), Sagi was given the power to select a manager of D & K GP whose

function would be to control D & K's assets. Sagi selected himself to act as manager; thus, Dalia

effectively handed Sagi the authority to control D & K and its assets. Also, by forming D & K

GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K,

including any personal liability related to the Note. This left the Trusts solely liable on the Note.

10.     On October 30, 2004, Dalia entered into a shareholder agreement with TPR that

provided for the management of TPR.  Specifically, pursuant to the shareholder agreement

(annexed hereto as Exhibit F), D & K, which owned 49% of TPR, was given authority to appoint

one board member to the TPR board.  Sagi, as the managing partner of D & K, appointed himself

as a board member of TPR.  As the majority owner of TPR, Dalia was named as the other board

member.  In addition, the shareholder agreement appointed Sagi as Chief Executive Officer

("CEO") of TPR.  Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had

done with D & K.

11.     Below, for the Court's convenience, is a side-by-side summary of Arie's, Dalia's,

the Orly Trust's, and the Sagi Trust's interests in TPR before and after Arie's and Dalia's

divorce.[2]

## TPR OWNERSHIP
### BEFORE AND AFTER DIVORCE

#### PERCENTAGE

| Person | TPR Before | TPR After |
|---|---|---|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96% |
| Orly Trust | 23.52% | 23.52% |
| Sagi Trust | 23.52% | 23.52% |
| **TOTAL** | **100%** | **100%** |

---

[2] For the Court's convenience, the chart annexed hereto as Exhibit G provides a summary of Arie's,
Dalia's, the Orly Trust's, and the Sagi Trust's ownership interests in TPR, TRI, and D & K as of October 26, 2004 –
i.e., the date that Arie and Dalia executed the Settlement Agreement.

12.    In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi Trust. In January 2008, Dalia was appointed successor trustee of the Orly Trust, despite Orly's objection. By that time, as a result of Dalia's granting him control of TPR and D & K, and through the appointment of his friends and relatives as successor trustees of the Trusts, Sagi effectively had obtained control over the assets held by all of D & K, TPR, the Sagi Trust, and the Orly Trust.

13.    On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K, and TPR, assigned the Note – which then had an approximate value of $11,000,000 as a result of accrued interest – to Mr. Parnes for only $12,000. (A copy of the Memorandum dated August 2, 2006, assigning the Note is annexed hereto as Exhibit H.) The assignment stated that D & K "denied enforceability of the Note" (see Exhibit H annexed hereto), which presumably is why it was "sold" for $12,000. Sagi signed the assignment on behalf of both TPR, as the maker, and D & K, as the holder. Dalia was copied on the memorandum assigning the note, but neither Orly, the Orly Trust, nor the then-Trustee of the Orly Trust received copies of the memorandum. At the time of this assignment, Mr. Parnes was acting as trustee of both the Orly Trust and the Sagi Trust. Shortly after the assignment, Mr. Parnes resigned as Trustee of the Orly Trust in recognition of the inherent conflict he faced in that role.

14.     Sometime in 2007, Sagi sold a 2% interest in TPR to Rochelle Fang. The cost of the 2% interest was based upon a bogus valuation of TPR at $50,000,000. At the time of the sale, TPR's assets were worth between approximately $11,000,000 and $12,000,000, plus the value of the Note. This sale effectively stripped Dalia of her majority interest in TPR giving Sagi unfettered control of TPR, in addition to his control of D & K and D & K GP. In January 2008, when Dalia was appointed successor trustee of the Orly Trust, she completely divested herself of the balance of her TPR shares. Dalia has not informed either the Court or Orly as to when she transferred her TPR interest.

15.     On August 22, 2008, unbeknownst to Orly, Rochelle Fang, who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi Trust's 19.43% interest in TRI to the Trump Group, who already owned 47.15% of TRI's outstanding shares, for $26,715,416. This sale purportedly transferred control of TRI from Arie to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.[3] In connection with the supposed sale, Sagi and David Parnes were given seats on TRI's board of directors. If given effect, this purported sale, which was consummated after Dalia was appointed successor trustee of the Orly Trust, would dilute and diminish the value of the Orly Trust's interest in TRI.

16.     Dalia, who had notice of the supposed sale, made no effort to prevent the sale or to protect the value of the Orly Trust's interest in TRI. Fearing that Dalia would continue to neglect her duty to protect the Orly Trust's assets, on January 10, 2009, Petitioner wrote a letter (annexed hereto as <u>Exhibit I</u>) to her mother stating that "for now, and until further notice, it is my

---

[3] The validity of the sale is at issue in litigation currently pending in Delaware Chancery Court. The parties to the action are Arie Genger, TRI, and various entities affiliated with the Trump Group. The Orly Trust has not appeared in the action. In that action, the Trump Group claims to have bought the shares either from the Sagi Trust or from TPR – thus, the approximately $27 million purportedly paid by the Trump Group either belongs to the Sagi Trust or to TPR, depending on the outcome of the litigation in Delaware.

strong desire to retain all of the shares of TRI that are currently in the Orly Trust, and I direct

you not to sell them." Dalia refused to agree not to dispose of the TRI shares.

## II.    THE EVIDENCE DISCOVERED BY PETITIONER ON JUNE 1, 2009, REQUIRES INJUNCTIVE RELIEF AND THE IMMEDIATE REMOVAL OF DALIA AS TRUSTEE

17.    In February 2008, Orly applied to this Court to designate a Trustee, or in the

alternative to appoint a special trustee, claiming that Dalia and all of the preceding successor

trustees of the Orly Trust were improperly appointed and had no authority to act on behalf of the

Orly Trust.  Orly also alleged wrongful dealings by Dalia as Trustee of the Orly Trust.  In

denying the application without prejudice, this Court stated that Orly had made allegations

without sufficient supporting evidence and suggested that Orly commence an SCPA § 2201

proceeding to obtain the necessary evidence and then renew her application.  (A copy of the

Court's decision is annexed hereto as Exhibit J.)

18.    On May 14, 2009, as a prerequisite to the SCPA § 2201 application, Orly's

counsel sent Dalia Genger a letter (annexed hereto as Exhibit K) requesting documents related to

the Orly Trust's assets.  Soon thereafter, Orly's counsel was notified that Dalia had retained

Robert A. Meister, Esq., of Pedowitz & Meister, LLP, and Orly's counsel therefore forwarded a

copy of the May 14th letter to Mr. Meister.

19.    On June 1, 2009, Mr. Meister responded to Orly's document demand by advising

Orly's counsel that the Orly Trust no longer owned any interest in TPR.  According to the letter,

Sagi, acting as CEO of TPR, had foreclosed on the Note and had sold D & K's 240 shares of

TPR for $2,220,000.  (A copy of the Letter dated June 1, 2009, is annexed hereto as Exhibit L.)

Before that time, Dalia had neither advised nor notified Orly that Sagi had foreclosed on the

Note,[4] nor advised Orly that Sagi had sold the TPR shares at auction. Thus, upon receipt of Mr.

Meister's letter, Orly learned for the first time that:

        (a)      On August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the

general manager of D & K, that D & K was in default of the Note and declared that unless the

entire unpaid principal amount of the Note was paid immediately, TPR would sell, at auction, the

240 shares pledged as collateral. (A copy of the Notification dated August 31, 2008, is annexed

hereto as Exhibit M.)

        (b)      Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K

(of which he remained the managing partner) that D & K's 240 shares of TPR stock would be

publicly auctioned to the highest bidder on February 27, 2009, and that the money received from

the sale would be used to reduce the outstanding debt. (A copy of the Notification is annexed

hereto as Exhibit N.) Sagi purported to notify the interested parties of the sale by publishing

notice of the sale in the New York Post in October 2008 and February 2009. Although at all

relevant times Sagi had Orly's contact information, he never informed her of the impending sale.

        (c)      On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the

240 shares of TPR and "auctioned" the shares. Not coincidentally, the Sagi-controlled TPR

purchased the shares at auction for $2,200,000. (See Exhibit O). The proceeds of the sale – i.e.,

$2,220,000 – were used to decrease D & K's obligations under the Note, leaving a balance of

approximately $8,800,000.

    20.      On June 11, 2009, Orly's counsel sent Mr. Meister a letter asking that Dalia, in

accordance with Orly's January 2009 request and in light of the secretive diminution of the Orly

---

[4] While the Note had not been serviced since 1999, TPR had not foreclosed on the Note between 1999 and 2008 because it previously had agreed not to foreclose on the Note in order not to upset the estate-planning goals underlying the Note.

Trust's interest in TPR, stipulate in writing that she would not, under any circumstances and until all issues were resolved, sell, transfer, or remove the TRI shares from the Orly Trust. (A copy of the Letter dated June 11, 2009, is annexed hereto as Exhibit P.) That same day, Mr. Meister responded to the June 11th letter, but he failed to address the terms of the proposed stipulation. (A copy of Mr. Meister's Letter dated June 11, 2009, is annexed hereto as Exhibit Q.)

## A.    A Temporary Restraining Order ("TRO") Is Necessary To Protect The Remaining Assets Held By the Orly Trust

21.    It is clear from Dalia's deliberate inaction and complete deferral to Sagi in all matters related to D & K, TPR, and TRI, that without Court intervention Orly's TRI shares will be: a) sold at a significantly discounted rate so that the proceeds can be used to pay her unpaid portion of the Note, b) used as collateral to secure the Orly Trust's unpaid portion of the Note, or c) used to satisfy a Judgment against the Orly Trust. Since Orly's address was known to her brother and her mother at all relevant times, publishing notice of the sale of the TPR shares alone was a clear and deliberate attempt to prohibit Orly from intervening in the foreclosure and the sale. Dalia, who had knowledge of the events as they were transpiring, easily could have given notice of the auction to Orly, but she intentionally chose not to. There is now reason to believe that Dalia will again remain passive if and when Sagi seeks to hijack, sell, or otherwise meddle with the Orly Trust's TRI shares, even though Orly has specifically advised her mother, in writing, to protect the Trust's ownership of the TRI shares.

22.    There is no reason to trust that Dalia will honor her daughter's wishes and instructions since, from the time of her divorce, she has done nothing but ensure that Sagi has complete control over TPR, D & K, and D & K GP, and has allowed Sagi to do as he pleases. At this time, approximately $8,800,000 of the Note remains unsatisfied, and Sagi, as CEO of TPR, has not voided the notice of default. Based upon Dalia's deliberate inaction and failure to protect

the Orly Trust's assets to date, there is strong evidence to reasonably conclude that Dalia will not

protect the Orly Trust's interest in the TRI shares, but rather, will act to benefit herself and Sagi,

including by allowing Sagi to obtain the TRI shares to satisfy the Orly Trust's unpaid portion of

the Note. Without immediate injunctive relief, Orly will have no recourse and the Orly Trust

will be vulnerable to complete depletion. The harm caused to the Orly Trust under these

circumstances would be irreparable.

23.    Based on the facts and documentary evidence presented herein it is likely that the

Orly Trust will succeed on the merits of her Petition. Accordingly, she meets the criteria

necessary to obtain a TRO and a preliminary injunction. Petitioner therefore respectfully

requests that the Court grant her Petition for a TRO and a preliminary injunction in order to

protect the assets held by the Orly Trust, including the TRI shares.

## B.    **Dalia Must Be Removed As Trustee Immediately**

24.    Based on the information provided to Orly's counsel on June 1, 2009, which

confirms Respondent's lack of diligence and disloyal service as Trustee, there now exists

sufficient evidence to have Respondent removed as Trustee of the Orly Trust. While serving as

Trustee, Dalia intentionally failed to notify Orly that TPR was taking measures to foreclose on

the Orly Trust's 23.52% indirect interest in TPR. It was Dalia's duty as a fiduciary of the Orly

Trust to be apprised of all activity concerning the Orly Trust and to ensure that Orly received

proper notification of the default and auction. Moreover, Dalia actually knew of the foreclosure

and the auction, but took no steps to protect the Orly Trust's interest in TPR. Dalia knew of

Sagi's plan to foreclose on the Note and sell the TPR shares as early as August 2008; thus, she

withheld information concerning the auction from Orly for almost ten months. Dalia did not

disclose the foreclosure and share sale until she received the demand letter from Orly's counsel

and realized that legal action was imminent. Instead of protecting the Orly Trust's and its

beneficiary's interests, Dalia sat back and silently watched her son strip the Orly Trust of its indirect interest in TPR.

25.    The corporate structure which has intertwined TPR, D & K GP, and D & K's assets, all of which are in some manner controlled by Sagi as a result of Dalia's actions, permits Dalia and Sagi to engage in self-dealing and does not provide for any accountability on either Sagi's or Dalia's part. Unfortunately, the Orly Trust is caught in the middle of Dalia's and Sagi's conspiracy to engage in self-dealing intended to benefit their own interests, while Sagi has been permitted to diminish and dissipate the value of the Orly Trust's assets, including its interests in TPR and, potentially, TRI. By enriching herself and her son at the expense of her daughter, Dalia is in breach of her fiduciary duties as Trustee of the Orly Trust. It is imperative that Orly have a successor trustee appointed who will unbiasedly and loyally protect the Orly Trust's remaining assets.

**(1)    In Direct Conflict With Her Obligations as Fiduciary of The Orly Trust, Dalia Did Nothing To Stop Sagi From Attempting to Sell His Trust's TRI Shares, Which, If Valid, Would Dilute the Value of the Orly Trust's Assets**

26.    The Sagi Trust's attempted sale of its interest in TRI to the Trump Group for $26,715,416, which occurred after Dalia was appointed successor trustee of the Orly Trust, purportedly transferred control of TRI from Arie to the Trump Group. As mentioned above, supra paragraph 15, if this purported sale were given effect, then the value of the Orly Trust's assets would be significantly diminished. If the purported sale were valid and effective, then Arie would no longer own a controlling interest in TRI, and thus the Orly Trust would no longer own a portion of the controlling block of TRI shares.

27.    Dalia, as a fiduciary of the Orly Trust, was obligated to apprise herself of any transactions that could affect the value of the Orly Trust's shares, and, in fact, Dalia was contemporaneously aware of the Sagi Trust sale. But Dalia made no effort to protect the value of

the Orly Trust's TRI shares by challenging the proposed sale. Moreover, she has taken no position with regard to the current value of the TRI shares and has taken no measures to protect the Orly Trust's interest in TRI since the purported sale, despite Orly's urgings. By remaining passive with respect to the Orly Trust's TRI shares, Dalia is completely ignoring the intent behind the establishment of the Orly Trust – to transfer an equal amount of assets to each of the children. Dalia, through her actions and her inaction alike, may have permitted Sagi to secure substantially more value from the Trusts' assets than Orly.

      (2)     **In Direct Conflict With Her Obligations as Fiduciary of The Orly Trust, Dalia Took No Action To Protect the Orly Trust's Interest in TPR**

      28.     Pursuant to the August 2006 memorandum assigning the Note to David Parnes – on which Dalia was copied -- Sagi, acting as the managing partner of D & K, took the position that the Note was unenforceable. (See Paragraph 4 of Exhibit H annexed hereto.) In the exact same memorandum, however, Sagi, acting as the CEO of TPR, took the directly contrary position that TPR reserved its right to enforce the Note. (See Paragraph 8 of Exhibit H annexed hereto.)

      29.     On February 14, 2007, Dalia, who participated in the "sham" transaction between Sagi and Mr. Parnes, and in a clear attempt to clean her hands of any impropriety, admitted in a sworn statement to the Court that no one was ever supposed to foreclose on the Note. (See Paragraph 3 of Exhibit R annexed hereto). Additionally, the unpaid Note was the subject of a post-judgment arbitration proceeding between Dalia and Arie, which took place in September 2007. Dalia, who was present at the proceedings, heard Sagi and Mr. Parnes testify that the Note should not be enforced and that Sagi, as CEO of TPR, had no intention of collecting the unpaid portion of the Note. Thus, Dalia knew long before August 2008 that TPR had effectively disclaimed its right to foreclose on the Note.

30.    As described above, however, in August 2008 (eleven months later), Sagi sought

to enforce the Note. Contrary to the position he had taken under oath at the arbitration, and

contrary to the position he had taken as the managing partner of D & K (see Paragraph 4 of

Exhibit H attached hereto), Sagi issued a default notice to D & K on behalf of TPR. Dalia, who

knew the Note was never intended to be enforced and who previously had sworn to as much,

should have immediately sought to block Sagi from foreclosing on the Note and selling the TPR

shares. Notwithstanding her knowledge and her previous statements, however, Dalia failed to

make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the

Orly Trust had a clear interest in the TPR shares at issue. As a fiduciary of the Orly Trust with

prior, as well as continued knowledge, of the TPR foreclosure, TPR's supposed claims against D

& K, and D & K's ability to challenge those claims based on prior representations, Dalia had a

duty to protect the Orly Trust's indirect ownership of the TPR shares. But instead of taking the

proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR

shares for himself to the detriment of the Orly Trust.[5]

31.    Additionally, Dalia's failure to act in the face of the foreclosure and sale of TPR

stock is especially egregious because she has known since August 2008 that the purported sale of

TRI stock to the Trump Group is being challenged in Delaware state court. She also has known

that in that action the Trump Group is asserting that it bought the TRI stock from *either* the Sagi

Trust *or* TPR. Thus, she has known that, depending on the outcome of the litigation in

Delaware, the Orly Trust could have an interest in the $27 million paid by the Trumps in August

---

[5] Moreover, in connection with her appointment as successor trustee of the Orly Trust in January 2008,
Dalia divested herself of her TPR shares (without informing either the Court or Orly as to when she transferred her
interest) in a further attempt to distance herself from any attributable wrongdoing. Dalia has contended to this Court
that she sold her TPR shares in order to avoid any appearance of impropriety in connection with her appointment
as Trustee. Interestingly, however, Dalia has never informed Orly or this Court whether she continues to maintain a
99% interest in D & K GP, the company that controls D & K and, thus, was obligated to service the Note.

2008 if its interest in TPR were preserved. Accordingly, as trustee of the Orly Trust, she should have been especially vigilant in protecting the Orly Trust's interest in TPR through D & K. But instead, she allowed Sagi to essentially steal the Orly Trust's interest in TPR so that Sagi can attempt to retain the entire $27 million regardless of the outcome in Delaware Chancery Court. Her inaction in this regard is a blatant violation of her fiduciary duties as trustee.

**III.    DALIA SHOULD BE SUR-CHARGED IN THE AMOUNT OF THE LOSS OF THE VALUE OF ORLY'S INTEREST IN TPR AS DETERMINED BY THE COURT AND ORLY SHOULD BE AWARDED ATTORNEYS' FEES**

32.    By failing to take action on behalf of the Orly Trust to prevent Sagi from foreclosing on the Note and selling D & K's TPR shares, Dalia caused the Orly Trust to lose its interest in TPR. Accordingly, Dalia should be surcharged in an amount of the loss of the value of Orly's interest in TPR as determined by the Court and should be required to reimburse the Orly Trust for its attorneys' fees incurred in connection with bringing this action.

**IV.    MICHAEL D. GROHMAN, ESQ. SHOULD BE APPOINTED AS SUCCESSOR TRUSTEE**

33.    Based on Dalia's deliberate breach of her fiduciary duties to the Orly Trust, and in light of Dalia's prior nefarious conduct as the Orly Trust's Trustee, this Court should remove Dalia as Trustee and replace her with Michael D, Grohman, Esq. Mr. Grohman is a member of the New York Bar and the head of the Trust and Estates practice group at Duane Morris LLP. Mr Grohman is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR, or D & K, and is willing and prepared to succeed Dalia immediately.

34.    No prior application has been made for the relief requested herein.

**PRAYER FOR RELIEF**

WHEREFORE, based upon the allegations contained herein, Petitioner requests that this Court provide the following relief:

(a)    Enjoining and restraining Respondent, her agents, and all other persons acting on her behalf from withdrawing, selling, disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering, liening, hypothecating, or secreting the Orly Trust's 19.43% interest in TRI and other assets remaining in the Orly Trust;

(b)    removing Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting and dissipating the assets of the Orly Trust, and improvidently managing and injuring the property committed to her charge;

(c)    surcharging Respondent in the amount of the loss of the value of Orly's interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)    appointing Michael D. Grohman, Esq., as successor trustee;

(e)    waiving any requirement that Petitioner post an undertaking; and

(f)    granting Petitioner any other relief it deems necessary and proper.

Dated:    New York, New York
          June 22, 2009

                                        _____
                                        ORLY GENGER
                                        Petitioner


COZEN O'CONNOR

By: _____
    Judith E. Siegel-Baum, Esq.
    Attorney for Petitioner
    250 Park Avenue
    New York, New York 10017
    212-986-1116

## VERIFICATION

STATE OF NEW YORK )          )
                                     )ss.:

COUNTY OF NEW YORK )         )

The undersigned, the Petitioner named in the foregoing petition, being duly sworn, says: I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and believe, and as to those matters I believe it to be true.

_____
Signature of Petitioner

ORLY GENGER
_____
Print Name

Sworn to before me this
22nd day of June, 2009.

_____
Notary Public
Commission Expires:
(Affix Notary Stamp or Seal)

ANN MEADE
**Notary** Public, State of New York
No. 01ME4783921
Qualified in Nassau County
**Certificate** Filed In New York County
**Commission** Expires Sept. 30, 2009

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _1_ day of
~~June~~ 2009
*July*

New York County Surrogate's Court
DATA ENTRY DEPT.
Date: *July 1, 2009*

PRESENT: HON. *Troy K. Webber*
_____
                  Surrogate

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

File No.: 0017/2008

**ORDER TO SHOW CAUSE
WITH TEMPORARY
RESTRAINTS**

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate *Troy K. Webber* at the Surrogate's Court, ~~31 Chambers~~ *Sitting at 60 Centre!*

~~Street,~~ *Room 300* New York, New York, on the *5th* day of ~~June~~ *August* 2009 at 10:00 o'clock in the forenoon of that

day or as soon thereafter as counsel may be heard why an order should not be entered:

       (a)    Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

(b)    Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

(c)    Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)    Appointing Michael D. Grohman, Esq. as successor trustee;

(e)    Waiving any requirement that Petitioner post an undertaking; and

(f)    Granting Petitioner such further relief deemed necessary or proper.

ORDERED that, during the pendency of this proceeding, Respondent ~~her agents and all~~ *and/on her counsel* *are required to give notice by overnight mail to petitioners counsel of any 1) offer* ~~other persons acting on her behalf are temporarily restrained from withdrawing, setting,~~ *to purchase the Orly Trust's 19.3% interest in TRI within 10 days of receiving* ~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering,~~ *such offer and 2) act by Respondent, her agents and all other persons* ~~liening, hypothecating or secreting the Orly Trust's 19.43% interest in TRI and other assets~~ *acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or* ~~remaining in the Orly Trust; and it is further~~ *otherwise alter the Orly Trust's interest in TRI at least 10 days prior to such act* *and it is further* ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on Respondent by personal service at either her residence, located at 200 East

65th Street, Apt. 32W, New York, New York 10021, or any other address at which she can be

located, on or before ~~June~~ July 7, 2009; *and it is further*

ORDERED, that any responsive papers shall be filed by July 29, 2009.

~~ENTER~~

_Surrogate_

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In the Matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER as Trustee of the ORLY GENGER 1993 Trust Pursuant to SCPA § 711 (11) | **ATTORNEY AFFIRMATION AMENDING PETITION FOR REMOVAL OF DALIA GENGER AS TRUSTEE**<br><br>**FILE NO.: 0017/2008** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JUDITH E. SIEGEL-BAUM, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

1.    I am a member of the law firm Cozen O'Connor, attorneys for the Petitioner herein.

2.    I make this affirmation in order to amend paragraph 1. of the Verified Petition for Removal of Dalia Genger as Trustee and Request for Temporary Restraining Order, dated and verified June 22, 2009, to read as follows:

Orly, domiciled at 1965 Broadway, Apt. 22G, New York, New York 10024, is the current beneficiary of the Orly Genger 1993 Trust dated December 13, 1993 (the "Orly Trust") (annexed hereto as Exhibit A). Dalia Genger, Residing at 200 East 65th Street, Apt. 32W, New York, New York 10021 ("Respondent" or "Dalia"), Orly's mother, is the current sole Trustee of the Orly Trust, and was appointed successor Trustee in January 2008. The Orly Trust provides for discretionary payments of income and principal to Orly during her lifetime with the remainder to be distributed to her descendants, per stirpes. If

Orly dies leaving no descendants, the remainder of the trust property is to be

distributed to the Sagi Trust.  David Parnes, residing at 29 Elkachi Street, Tel

Aviv, ISRAEL  69497, is the current Trustee of the Sagi Trust.

Dated: New York, New York
      August _14_, 2009

                                   Judith E. Siegel-Baum

2

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _18_ day of
August 2009

PRESENT: HON. Troy K. Webber

             Surrogate

---

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

File No.: 0017/2008

**SUPPLEMENTAL ORDER TO
SHOW CAUSE WITH
TEMPORARY RESTRAINTS**

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate Troy K. Webber at the Surrogate's Court, ~~sitting at 60 Centre~~ _31 Chambers_

_Street,_ ~~Street,~~ Room ~~300~~ _509_, New York, New York, on the _8_ day of _September_ 2009 at 10:00 o'clock

in the forenoon of that day or as soon thereafter as counsel may be heard why an order should

not be entered:

        (a)      Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other assets which may be remaining in the Orly Trust;

(b)  Removing Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing and injuring the property committed to her charge;

(c)  Surcharging Respondent in the amount of the loss of the value of Orly's interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)  Appointing Michael D. Grohman, Esq. as successor trustee;

(e)  Waiving any requirement that Petitioner post an undertaking; and

(f)  Granting Petitioner such further relief deemed necessary or proper. ~and/or her counsel

ORDERED that, during the pendency of this proceeding, Respondent~~, her agents and all~~ ~be required to give notice by overnight mail to Petitioners Counsel of any 1) offer purchase the Orly Trust's 19.3% interest in TPR within 10 days of receiving~ ~~other persons acting on her behalf are temporarily restrained from withdrawing, selling~~ ~id of Rev and 2) act by respondent, her agents and all other persons~ ~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering,~~ ~acting on her behalf to assign, mortgage, pledge, redeem, encumber &~ ~~lessening, hypothecating or secreting the Orly Trust's 19.43% interest in TPR and other assets~~ ~otherwise dispose of the Orly Trust's interest in TPR at least 10 days prior to such act~ ~~remaining in the Orly Trust; and it is further~~ ~id this further~

ORDERED that service of a copy of this Order and the papers upon which it is based shall be served on David Parnes, in his capacity as Trustee of the Sagi Genger 1993 Trust, by overnight mail service at his residence, located at 29 Elkachi Street, Tel Aviv, Israel 69497 ~~, or~~ ~on or before~ ~ugust 21, 2009~ and on ~~Pedo~~ Pedowitz & Meister, LLP, attorneys ~~any other address at which she can be located, on or before August ___, 2009.~~ ~or Dalia Genger, as trustee of the Orly Genger 1993 Trust by~ ~rsonal delivery or overnight m~~ail~~ on or before August 21, 009.

ENTER

_TKV_
Surrogate

NYO_XFER\1373998\1 252931.000

- 2 -

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the __16__ day of July
2010

PRESENT: SURROGATE NORA S. ANDERSON
Surrogate

New York County Surrogate's Court
DATA ENTRY DEPT
Date: JUL 16 2010



---

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)    -

File No.: 0017/2008

ORDER TO SHOW CAUSE TO
SUPPLEMENT THE COURT'S
JULY 1, 2009 CONFIRMED
AUGUST 18, 2009 ORDER

---

Upon filing the annexed Affidavit of Judith E. Siegel-Baum, sworn to on the 15th day of

July 2010, with exhibits annexed thereto and all prior pleadings filed in this matter:

LET the Respondent, DALIA GENGER, the sole trustee of the Orly Genger 1993 Trust,

show cause before Surrogate Nora S. Anderson at the Surrogate's Court, 31 Chambers Street,

New York, New York, on the 28th day of July 2010 at 10:00 o'clock in the forenoon of that day or

as soon thereafter as counsel may be heard why an order should not be entered:

(a)    Supplementing the Court's Order dated July 1, 2009, confirmed on August

18, 2009, which states:

> "ORDERED that, during the pendency of this proceeding,
> Respondent and/or her counsel are required to give notice
> by overnight mail to Petitioner's Counsel of any 1) offer to
> purchase the Orly Trust's 19.3% interest in TRI within 10
> days of receiving such offer and 2) act by Respondent, her
> agents and all other persons acting on her behalf to assign,
> mortgage, pledge, redeem, encumber, sell or otherwise alter

the Orly Trust's in TRI at least 10 days prior to such act;
and it is further"

With the following additional notice provision:

"ORDERED that, during the pendency of this proceeding,
Respondent and/or her counsel are required to give notice
by overnight mail to Petitioner's Counsel of any attempt to
vote or take any action under the TRI shares held by the
Orly Trust for any purpose, including, without limitation, in
any election of TRI's directors, with such notice being
given at least ten (10) days prior to such attempt being
made," and

(b)     Granting Petitioner such further relief deemed necessary or proper.

ORDERED that, during the pendency of this proceeding, Respondent and/or her counsel,

in addition to the restraints of the Court's Order dated July 1, 2009, confirmed on August 18,

2009, a copy of which is attached hereto and made a part hereof, are required to give notice by

overnight mail to Petitioner's counsel of any attempt to vote or take any action under the TRI

shares held by the Orly Trust for any purpose, including, without limitation, in any election of

TRI's directors, with such notice being given at least ten (10) days prior to such attempt being

made; and it is further

ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on Pedowitz & Meister, LLP, 1501 Broadway, New York, New York 10036,

attorneys for Dalia Genger, as trustee of the Orly Genger 1993 Trust by personal delivery or

overnight mail on or before July 22, 2010.

ENTER: _____

_____
SURROGATE

NYC_MIDTOWN\1587494\1 252931.000

- 2 -

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of
ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

**STIPULATION WITHDRAWING
ORDER TO SHOW CAUSE
SIGNED JULY 16, 2010**

File No.: 0017/2008

**IT IS HEREBY STIPULATED AND AGREED,** by and between Petitioner,

ORLY GENGER, and Respondent, DALIA GENGER, by their respective counsel:

1.    On July 16, 2010, Surrogate Nora S. Anderson signed an Order to Show

Cause, Respondent Dahlia Genger filed an Answer and Petitioner Orly Genger filed a Reply

Affidavit on July 28, 2010.

2.    On the return date Counsel appeared and the case was conferenced before

Senior Court Attorney Mary Santamarina.

3.    A Stipulation was signed by Petitioner and Respondent on ~~August~~ Sept 8,

2010 which is annexed as <u>Exhibit A</u> (and not so-ordered by this Court).

4.    Petitioner's Order to Show Cause signed July 16, 2010 by Surrogate Nora

S. Anderson, Respondent's Answer, and Petitioner's Reply Affidavit are hereby withdrawn.

5.    The Parties' counsel further stipulate and agree that Petitioner will move

this Court for permission to amend the Amended Petition in a motion returnable before Surrogate

Anderson on October 1, 2010 and Respondent will not object to Petitioner's request to amend.

By: _____
    Judith E. Siegel-Baum
    Cozen O'Connor
    Attorneys for Orly Genger
    277 Park Avenue
    New York, New York 10172
    (212) 883-4900

By: _____
    Robert A. Meister
    Pedowitz & Meister LLP
    Attorneys for Dalia Genger
    1501 Broadway
    New York, New York 10036
    (212) 403-7330

Dated:

Dated: Sept 8, 2010

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of
ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

**STIPULATION**

File No.: 0017/2008

Stipulation made and entered into on ~~August~~ Sept 8, 2010 between ORLY

GENGER, Petitioner, and DALIA GENGER, Respondent, collectively referred to as (the

"Parties") and their respective Counsel:

WHEREAS, ORLY GENGER commenced the above-captioned proceeding by

filing an Order to Show Cause in New York County Surrogate's Court on June 22, 2009; and

WHEREAS, by Stipulation of the Parties and their respective counsel, Surrogate

Troy K. Webber signed an Order to Show Cause dated July 1, 2009 confirmed on August 18,

2009 with certain restraints contained therein (a copy of which is annexed as Exhibit A); and

WHEREAS, on July 16, 2010, Orly Genger filed an Order to Show Cause to

Supplement Surrogate Webber's prior Order; and

WHEREAS, on July 28, 2010, Dahlia filed an Answer and Orly filed a Reply

Affidavit.

IT IS HEREBY STIPULATED AND AGREED by and between Parties and their

counsel:

NYC_MIDTOWN\1589779\1 252931.000

1.      Upon signing this Stipulation, the Parties will sign and file a Stipulation withdrawing the Order to Show Cause filed July 16, 2010 and the Answer and Reply Affidavit in New York County Surrogate's Court.

2.      In addition to the stipulated restraints in Exhibit A, Orly and Dalia and their respective Counsel agree during the pendency of this proceeding, Dalia and/or her Counsel are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being made.

IN WITNESS WHEREOF, the Parties have signed and acknowledged this Stipulation on the day and year written above.


Orly Genger                              Dalia Genger

By: _____        By: _____
    Judith E. Siegel-Baum                  Robert A. Meister
Cozen O'Connor                          Pedowitz & Meister LLP
Attorneys for Orly Genger               Attorneys for Dalia Genger
277 Park Avenue                         1501 Broadway
New York, New York 10172                New York, New York 10036
(212) 883-4900                          (212) 403-7330

- 2 -

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _18_ day of
August 2009

PRESENT: HON. Troy K. Webber

Surrogate

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

File No.: 0017/2008

**SUPPLEMENTAL ORDER TO
SHOW CAUSE WITH
TEMPORARY RESTRAINTS**

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate Troy K. Webber at the Surrogate's Court, ~~sitting at 60 Centre~~ _31 Chambers_

~~Street,~~ _Street, 509_ Room ~~300~~, New York, New York, on the _8th_ day of _September_ 2009 at 10:00 o'clock

in the forenoon of that day or as soon thereafter as counsel may be heard why an order should

not be entered:

     (a)    Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

      (b)    Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

      (c)    Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

      (d)    Appointing Michael D. Grohman, Esq. as successor trustee;

      (e)    Waiving any requirement that Petitioner post an undertaking; and

      (f)    Granting Petitioner such further relief deemed necessary or proper. ~~; and/or~~ *her counsel*

ORDERED that, during the pendency of this proceeding, Respondent, ~~her agents and all~~ *are required to give notice by overnight mail to Petitioners Counsel of any 1) offer to purchase the Orly Trust's 19.3% interest in TRI w/in 10 days of receiving such offer and 2) act by Respondent, her agents and all other persons* ~~other persons acting on her behalf are temporarily restrained from withdrawing, selling disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering, kening, hypothecating or secreting the Orly Trust's 19.43% interest in TRI and other assets remaining in the Orly Trust~~ *acting on her behalf to assign, mortgage, pledge, redeem, encumber, or otherwise sell the Orly Trust's in TRI at least 10 days prior to such act* and it is further *and it is further*

ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on David Parnes, in his capacity as Trustee of the Sagi Genger 1993 Trust, by

overnight mail service at his residence, located at 29 Elkachi Street, Tel Aviv, Israel 69497, ~~or~~ *on or before August 21, 2009 and on* ~~Robo~~ *Pedowitz & Meister, LLP, attorneys* ~~any other address at which she can be located, on or before August ___, 2009.~~ *for Dalia Genger, as trustee of the Orly Genger 1993 Trust by personal delivery or overnight m* ENTER *on or before August 21, 2009.*

                                           _____
                                             Surrogate

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of ORLY                    **AFFIDAVIT OF SERVICE**
GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the          **FILE NO.:  0017/2008**
ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS

STATE OF NEW YORK        )
                                              ) ss.:
COUNTY OF NEW YORK    )

      JOY GONZALES, being duly sworn, deposes and says:

      I am over 18 years old, am not a party to this action and reside in Bergen County, New Jersey.

      On the 22nd day of September, 2010, I served a copy of the within **NOTICE OF MOTION FOR LEAVE TO AMEND PETITION** upon:

                Robert A. Meister, Esq.
                Pedowitz & Meister LLP
                *Attorneys for Dalia Genger, Trustee*
                1501 Broadway
                New York, NY 10036

                -and-

                David Parnes, Esq.
                *as Trustee of The Sagi Genger Trust*
                29 El Kachi Street
                Tel Aviv, ISRAEL 69497

by Federal Express, an overnight delivery service regularly employed by this firm and with which this firm maintains an account.

                                              _____
                                            JOY GONZALES

Sworn to before me this
_23_ day of September, 2010

_____
      Notary Public

ANN MEADE
Notary Public, State of New York
No. 01ME4783921
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 2005

NYC_MIDTOWN\1596899\1  252931.000

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of

ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

- - - - - - - - - - - - - - - - - - - - - - - - x

AFFIRMATION IN RESPONSE TO
MOTION FOR LEAVE TO
AMEND PETITION

2008-0017
~~File No. 0017/2009~~

ROBERT A. MEISTER, a member of the New York Bar, hereby affirms under the
penalties of perjury:

1       I am a member of the Bar and of Pedowitz & Meister LLP, counsel for respondent

Dalia Genger, Trustee of the Orly Genger 1993 Trust (the "Orly Trust"). I make this affirmation

in response to the motion of beneficiary Orly Genger ("Orly") further to amend her Petition.

2       While Respondent does not agree with allegations in the proposed Second

Amended Verified Petition, which neither she nor her counsel had seen before receipt of this

motion, as I as counsel believed under the law's liberal amendment policies the Court would

likely grant leave, I stipulated to allow the amendment. Of course, that stipulation is not to be

construed as an admission of the validity of the pleading.

3       The motion also requests an Order deeming the Second Amended Verified

Petition served on all the parties. If the Court grants such relief, I respectfully request that the

Order provide an extended time of 45 days from service of notice of entry of the Order to

respond thereto. This request is due to the need to schedule other professional dates in October

my planned trip to Europe from October 7 through 16 and also due to the complexity of the

matters alleged.

September 23, 2010

Robert A. Meister
Pedowitz & Meister LLP
1501 Broadway
New York, NY 10036
212.403.7330
Attorneys for Dalia Genger, Trustee

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
------------------------------------------------------------------X
In the Matter of the Application of

ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)
------------------------------------------------------------------X

**AFFIDAVIT OF SERVICE**
2008-0017
File No. 0017/2009

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | : ss.: | |
| COUNTY OF NEW YORK | ) | |

David Bartky, being duly sworn, deposes and says: I am over the age of 18 years

and not a party to this action. On the 23rd day of September, 2010, I served the annexed

AFFIRMATION IN RESPONSE TO MOTION FOR LEAVE TO AMEND PETITION

on Petitioner by sending same via pre-paid first class U.S. mail to:

> Judith E. Siegel-Baum, Esq.
> Cozen O'Connor PC
> 277 Park Avenue
> New York, NY 10177,

her counsel of record.

David Bartky

Sworn to before me this
23rd day of September, 2010.

Notary Public



SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br>ORLY GENGER, as a person interested,<br>for the removal of DALIA GENGER<br>as Trustee of the Orly Genger 1993 Trust<br>pursuant to SCPA §711 (11) | **STIPULATION WITHDRAWING<br>ORDER TO SHOW CAUSE<br>SIGNED JULY 16, 2010**<br><br>File No.: 0017/2008 |

**IT IS HEREBY STIPULATED AND AGREED,** by and between Petitioner,

ORLY GENGER, and Respondent, DALIA GENGER, by their respective counsel:

1.      On July 16, 2010, Surrogate Nora S. Anderson signed an Order to Show

Cause, Respondent Dahlia Genger filed an Answer and Petitioner Orly Genger filed a Reply

Affidavit on July 28, 2010.

2.      On the return date Counsel appeared and the case was conferenced before

Senior Court Attorney Mary Santamarina.

3.      A Stipulation was signed by Petitioner and Respondent on ~~August~~ Sept 8,

2010 which is annexed as <u>Exhibit A</u> (and not so-ordered by this Court).

4.      Petitioner's Order to Show Cause signed July 16, 2010 by Surrogate Nora

S. Anderson, Respondent's Answer, and Petitioner's Reply Affidavit are hereby withdrawn.

5.      The Parties' counsel further stipulate and agree that Petitioner will move

this Court for permission to amend the Amended Petition in a motion returnable before Surrogate

Anderson on October 1, 2010 and Respondent will not object to Petitioner's request to amend.

By: _____          By: _____
      Judith E. Siegel-Baum                        Robert A. Meister
Cozen O'Connor                               Pedowitz & Meister LLP
Attorneys for Orly Genger                Attorneys for Dalia Genger
277 Park Avenue                               1501 Broadway
New York, New York 10172             New York, New York 10036
(212) 883-4900                                   (212) 403-7330

Dated:                                              Dated: Sept 8, 2010

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of
ORLY GENGER, as a person interested,
for the removal of DALIA GENGER                    **STIPULATION**
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)                         File No.: 0017/2008

Stipulation made and entered into on August⎯⎯, 2010 between ORLY

GENGER, Petitioner, and DALIA GENGER, Respondent, collectively referred to as (the

"Parties") and their respective Counsel:

WHEREAS, ORLY GENGER commenced the above-captioned proceeding by

filing an Order to Show Cause in New York County Surrogate's Court on June 22, 2009; and

WHEREAS, by Stipulation of the Parties and their respective counsel, Surrogate

Troy K. Webber signed an Order to Show Cause dated July 1, 2009 confirmed on August 18,

2009 with certain restraints contained therein (a copy of which is annexed as Exhibit A); and

WHEREAS, on July 16, 2010, Orly Genger filed an Order to Show Cause to

Supplement Surrogate Webber's prior Order; and

WHEREAS, on July 28, 2010, Dahlia filed an Answer and Orly filed a Reply

Affidavit.

IT IS HEREBY STIPULATED AND AGREED by and between Parties and their

counsel:

NYC_MIDTOWN\1589779\1 252931.000

Index No. 0017/2008

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA GENGER as
Trustee of the ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)

## STIPULATION WITHDRAWING ORDER TO SHOW CAUSE
## SIGNED JULY 16, 2010

### COZEN O'CONNOR

*Office and Post Office Address, Telephone*
**277 PARK AVENUE, 20th FLOOR**
**NEW YORK, N.Y. 10172**
**(212) 883-4900**

Signature (Rule 130-1.1-a)

Service of a copy of the within _____ is hereby admitted,

Dated,

_____

Attorney(s) for

Please take notice
☐ **Notice of Entry**
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on
☐ **Notice of Settlement**
that an order                                     of which the within is a true copy will be presented for
settlement to the **HON.**                        one of the judges
of the within named court, at
on                        at

Dated,

Yours, etc.
**COZEN O'CONNOR**

To

*Office and Post Office Address*
**277 PARK AVENUE, 20th FLOOR**
**NEW YORK, N.Y. 10172**

1.     Upon signing this Stipulation, the Parties will sign and file a Stipulation withdrawing the Order to Show Cause filed July 16, 2010 and the Answer and Reply Affidavit in New York County Surrogate's Court.

2.     In addition to the stipulated restraints in <u>Exhibit A</u>, Orly and Dalia and their respective Counsel agree during the pendency of this proceeding, Dalia and/or her Counsel are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being made.

IN WITNESS WHEREOF, the Parties have signed and acknowledged this Stipulation on the day and year written above.

Orly Genger

Dalia Genger

By: _____
Judith E. Siegel-Baum
Cozen O'Connor
Attorneys for Orly Genger
277 Park Avenue
New York, New York 10172
(212) 883-4900

By: _____
Robert A. Meister
Pedowitz & Meister LLP
Attorneys for Dalia Genger
1501 Broadway
New York, New York 10036
(212) 403-7330

- 2 -



At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _18_ day of
August 2009

PRESENT:  HON. Troy K. Webber
                              Surrogate

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

File No.: 0017/2008

**SUPPLEMENTAL ORDER TO
SHOW CAUSE WITH
TEMPORARY RESTRAINTS**

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate Troy K. Webber at the Surrogate's Court, ~~sitting at 60 Centre~~ _31 Chambers_

~~Street~~ _Street, 509_, Room ~~300~~, New York, New York, on the _8th_ day of _September_ 2009 at 10:00 o'clock

in the forenoon of that day or as soon thereafter as counsel may be heard why an order should

not be entered:

(a)      Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

(b)     Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

(c)     Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)     Appointing Michael D. Grohman, Esq. as successor trustee;

(e)     Waiving any requirement that Petitioner post an undertaking; and

(f)     Granting Petitioner such further relief deemed necessary ~~or proper.~~ *and/or her counsel*

ORDERED that, during the pendency of this proceeding, Respondent~~, her agents and all~~ *1) offer*

*are required to give notice by overnight mail to petitioners counsel of any* ~~other persons acting on her behalf are temporarily restrained from withdrawing, selling,~~ *to purchase the Orly Trust's 19.3% interest in TPR w/in 10 days of receiving* ~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering,~~ *such offer and 2) act by respondent, her agents and all other persons* ~~liening, hypothecating or secreting the Orly Trust's 19.43% interest in TPR and other assets~~ *acting on her behalf to assign, mortgage, pledge, redeem encumber, &* ~~remaining in the Orly Trust and it is further~~ *or otherwise effect the Orly Trust's interest in TPR at least 10 days prior to such act* *and it is further*

ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on David Parnes, in his capacity as Trustee of the Sagi Genger 1993 Trust, by

overnight mail service at his residence, located at 29 Elkachi Street, Tel Aviv, Israel 69497, ~~or~~ *on or before*
*August 21, 2009   and on* ~~Pedowitz & Meister, LLP, attorneys~~
~~any other address at which she can be located, on or before August __, 2009.~~
*for Dalia Genger, as trustee of the Orly Genger 1993 Trust by*
*personal delivery or overnight m~~atter~~ on or before August 21,*
*2009.*

_T.K._
Surrogate

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)

**AFFIDAVIT OF SERVICE**

**FILE NO.:  0017/2008**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS</u>

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

JOY GONZALES, being duly sworn, deposes and says:

I am over 18 years old, am not a party to this action and reside in Bergen County, New Jersey.

On the 23rd day of September, 2010, I served a copy of the within **STIPULATION WITHDRAWING ORDER TO SHOW CAUSE SIGNED JULY 16, 2010** upon:

> Robert A. Meister, Esq.
> Pedowitz & Meister LLP
> *Attorneys for Dalia Genger, Trustee*
> 1501 Broadway
> New York, NY 10036

by Federal Express, an overnight delivery service regularly employed by this firm and with which this firm maintains an account.

JOY GONZALES

Sworn to before me this
23 day of September, 2010

Notary Public

ANN MEADE
Notary Public, State of New York
No. 01ME4783921
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 2008/13

Index No. 0017/2008

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA GENGER as
Trustee of the ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)

## STIPULATION WITHDRAWING ORDER TO SHOW CAUSE
### SIGNED JULY 16, 2010

### COZEN O'CONNOR

*Office and Post Office Address, Telephone*
**277 PARK AVENUE, 20ᵗʰ FLOOR**
**NEW YORK, N.Y. 10172**
**(212) 883-4900**

Signature (Rule 130-1.1-a)

Service of a copy of the within                                                    is hereby admitted,

Dated,

Attorney(s) for

Please take notice
☐ **Notice of Entry**
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on
☐ **Notice of Settlement**
that an order                                          of which the within is a true copy will be presented for
settlement to the **HON.**                                        one of the judges
of the within named court, at
on                                          at

Dated,

Yours, etc.
**COZEN O'CONNOR**

To

*Office and Post Office Address*
**277 PARK AVENUE, 20ᵗʰ FLOOR**
**NEW YORK, N.Y. 10172**

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the        **REPLY AFFIDAVIT**
ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)                                   **FILE NO.: 0017/2008**


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NEW YORK     )

        JUDITH E. SIEGEL-BAUM being duly sworn, deposes and says:

        1.      I am a partner in the law firm of Cozen O' Connor, counsel for Petitioner, Orly

Genger and am familiar with all of the facts recited herein.. I submit this Affidavit in response to

Respondent's counsel's request for 45 days from date of service of Notice of Entry of the Court's

Order to serve answering papers or respond to the pending motion for leave to file a Second

Amended Petition.

        2.      Considering that the Second Amended Petition is at least 90% the same as the

prior Petition, the request for an additional 45 days seems onerous. Respondent's counsel

whether filing an answer or motion to dismiss basically has papers drafted. I am willing to

consent to an additional 10 days, i.e., 30 days for responsive papers to be served from the date of

the Notice of Entry of the Order, which is 10 days more than provided by statute.

WHEREFORE, it is respectfully requested that the Court grant Petitioner's Motion for Leave to File a Second Amended Petition and that Respondent not be granted 45 days to serve his answer or responsive papers after Notice of Entry of the Order on the pending Motion, and for such other relief as the Court deems proper.

Judith E. Siegel-Baum
*Attorneys for Petitioner*
277 Park Avenue
New York, New York 10172
(212) 883-4902

Sworn to before me this
30th day of September, 2010.

_____
Notary Public

ANN MEADE
Notary Public, State of New York
No. 01ME4783921
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 2009

2

File No. 0017                    Year    2008

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of ORLY GENGER, as a person
interested, for the removal of DALIA GENGER as Trustee of the
ORLY GENGER 1993 Trust Pursuant to SCPA § 711 (11)

**REPLY AFFIDAVIT**

**COZEN O'CONNOR**
*Attorneys for Petitioner*

*Office and Post Office Address, Telephone*
**277 Park Avenue**
**NEW YORK, N.Y. 10172**
**(212) 883-4900**

Signature (Rule 130-1.1-a)

Service of a copy of the within                                    is hereby admitted,

Dated,

Attorney(s) for

Please take notice
☐ **Notice of Entry**
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on
☐ **Notice of Settlement**
that an order                              of which the within is a true copy will be presented for
settlement to the **HON.**                              one of the judges
of the within named court, at
on                              at

Dated,

Yours, etc.
**COZEN O'CONNOR**
*Attorneys for Petitioner*

*Office and Post Office Address*
**277 Park Avenue**
**NEW YORK, N.Y. 10172**

To

SURROGATE'S COURT : NEW YORK COUNTY
-------------------------------------- X
In the Matter of the Application of
ORLY GENGER, as a Person Interested,
for the Removal of DALIA GENGER                    File No. 17/2008
as Trustee of the ORLY GENGER 1993
Trust pursuant to SCPA § 711(11)
-------------------------------------- X

A N D E R S O N,   S.

At the call of the calendar, the uncontested motion of Orly

Genger to amend her petition seeking the removal of the trustee

of the Orly Genger 1993 Trust was granted.  The petition is

amended in accordance with the proposed amended petition annexed

to the motion papers.

This decision constitutes the order of the court.

S U R R O G A T E

Dated: October 12, 2010

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK



In the Matter of the Application of
ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

**AMENDED STIPULATION**

File No.: 0017/2008

IT IS HEREBY STIPULATED AND AGREED, by and between Petitioner,

ORLY GENGER, and Respondent, DALIA GENGER, by their respective counsel:

1.    On September 8, 2010 a Stipulation was signed by Petitioner's and

Respondent's counsel which was filed in this Court on September 23, 2010.

2.    This Amended Stipulation will supersede the September 8, 2010

Stipulation.

3.    A Stipulation was signed by Petitioner and Respondent and their

respective counsel which is annexed as Exhibit A (and not so-ordered by this Court).

4.    Petitioner withdraws the Motion to Supplement the Court's July 1, 2010

confirmed August 18, 2010 Order returnable on July 28, 2010 before Surrogate Nora S.

Anderson and Respondent withdraws the response.

5.    The Parties' counsel further stipulate and agree that Petitioner will move

this Court for leave to file a Second Amended Petition in a motion returnable before Surrogate

Anderson on October 1, 2010 and Respondent will not object to Petitioner's request to amend.

By: _____
        Judith E. Siegel-Baum
Cozen O'Connor
Attorneys for Orly Genger
277 Park Avenue
New York, New York 10172
(212) 883-4900

By: _____
        Robert A. Meister
Pedowitz & Meister LLP
Attorneys for Dalia Genger
1501 Broadway
New York, New York 10036
(212) 403-7330

Dated:

Dated:

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of
ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

**STIPULATION**

File No.: 0017/2008

Stipulation made and entered into on A~~ugust~~ Sept __, 2010 between ORLY

GENGER, Petitioner, and DALIA GENGER, Respondent, collectively referred to as (the

"Parties") and their respective Counsel:

WHEREAS, ORLY GENGER commenced the above-captioned proceeding by

filing an Order to Show Cause in New York County Surrogate's Court on June 22, 2009; and

WHEREAS, by Stipulation of the Parties and their respective counsel, Surrogate

Troy K. Webber signed an Order to Show Cause dated July 1, 2009 confirmed on August 18,

2009 with certain restraints contained therein (a copy of which is annexed as Exhibit A); and

WHEREAS, on July 16, 2010, Orly Genger filed ~~an Order to Show Cause~~ A MOTION to

Supplement Surrogate Webber's prior Order; and

WHEREAS, on July 28, 2010, Dahlia filed ~~an Answer and Orly filed a Reply~~ a RESPONSE to the Motion.

~~Affidavit.~~

IT IS HEREBY STIPULATED AND AGREED by and between Parties and their

counsel:

*an Amended*

1. ~~Upon signing this Stipulation,~~ the Parties will sign and file a Stipulation *in which Petitioner withdraws her Motion to Supplement* ~~withdrawing the Order to Show Cause filed July 16, 2010 and the Answer and Reply Affidavit in~~ *the Court's July 1, 2009. Confirmed August 18, 2009 Order* ~~New York County Surrogate's Court.~~ *Returnable on July 25, 2010 before Surrogate Nora S. Anderson*

2. In addition to the stipulated restraints in <u>Exhibit A</u>, Orly and Dalia and *and respondent withdraws her Response*

their respective Counsel agree during the pendency of this proceeding, Dalia and/or her Counsel

are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any

TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election

of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being

made.

IN WITNESS WHEREOF, the Parties have signed and acknowledged this

Stipulation on the day and year written above.

Orly Genger

Dalia Genger

By: _____
Judith E. Siegel-Baum
Cozen O'Connor
Attorneys for Orly Genger
277 Park Avenue
New York, New York 10172
(212) 883-4900

By: _____
Robert A. Meister
Pedowitz & Meister LLP
Attorneys for Dalia Genger
1501 Broadway
New York, New York 10036
(212) 403-7330

- 2 -

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the  1  day of
~~June~~ 2009
July

New York County Surrogate's Court
DATA ENTRY DEPT.
Date: July 1, 2009

PRESENT: HON.  Troy K. Webber
                                          Surrogate

---

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

---

File No.: 0017/2008

ORDER TO SHOW CAUSE
WITH TEMPORARY
RESTRAINTS

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate  Troy K. Webber  at the Surrogate's Court, ~~31 Chambers~~ ⌐Sitting at 60 Centre

⌐Room 309

Street, New York, New York, on the 5 day of ~~June~~ 2009 at 10:00 o'clock in the forenoon of that
                                                              ^th   August

day or as soon thereafter as counsel may be heard why an order should not be entered:

(a)    Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

NYO_XFER\370331\1

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _18_ day of
August 2009

PRESENT:  HON. Troy K. Webber

                Surrogate

---

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

File No.: 0017/2008

**SUPPLEMENTAL ORDER TO
SHOW CAUSE WITH
TEMPORARY RESTRAINTS**

---

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate Troy K. Webber at the Surrogate's Court, ~~sitting at 60 Centre~~ _31 Chambers_

~~Street,~~ _Street,_ _509_ Room ~~300~~, New York, New York, on the _8th_ day of _September_ 2009 at 10:00 o'clock

in the forenoon of that day or as soon thereafter as counsel may be heard why an order should

not be entered:

      (a)      Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any othe

assets which may be remaining in the Orly Trust;

(b) Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

(c) Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d) Appointing Michael D. Grohman, Esq. as successor trustee;

(e) Waiving any requirement that Petitioner post an undertaking; and

(f) Granting Petitioner such further relief deemed necessary or proper. ~~and/or~~ her counsel

ORDERED that, during the pendency of this proceeding, Respondent ~~her agents and all~~
are required to give notice by overnight mail to petitioners Counsel at a day 1) offer
~~other persons acting on her behalf are temporarily restrained from withdrawing, selling~~
to purchase the Orly trust's 19.3% interest in TPl w/in 10 days of receiving
~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering,~~
such offer and 2) act by respondent, her agents and all other persons
~~liening, hypothecating or secreting the Orly Trust's 19.43% interest in TRI and other assets~~
acting on her behalf to assign, mortgage, pledge, redeem, encumber,
~~remaining in the Orly Trust and it is further~~ in that least 10 days prior to such act
And it is further ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on David Parnes, in his capacity as Trustee of the Sagi Genger 1993 Trust, by
on or before
overnight mail service at his residence, located at 29 Elkachi Street, Tel Aviv, Israel 69497, ~~or~~
August 21, 2009 and on ~~Pedcha~~ Pedowitz & Meister, LLP, attorneys
~~any other address at which she can be located, on or before August ___, 2009.~~
for Dalia Genger, as trustee of the Orly Genger 1993 Trust by
personal delivery or overnight m ~~after~~ on or before August 21,
2009.

_____ Surrogate

File No  0017                    Year    2008

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of ORLY GENGER, as a person
interested, for the removal of DALIA GENGER as Trustee of the
ORLY GENGER 1993 Trust Pursuant to SCPA § 711 (11)

## AMENDED STIPULATION

### COZEN O'CONNOR
*Attorneys for Petitioner*

*Office and Post Office Address, Telephone*
**277 Park Avenue**
**NEW YORK, N.Y. 10172**
**(212) 883-4900**

Signature (Rule 130-1.1-a)

Service of a copy of the within                                    is hereby admitted,

Dated,

Attorney(s) for

Please take notice
☐ **Notice of Entry**
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on
☐ **Notice of Settlement**
that an order                                  of which the within is a true copy will be presented for
settlement to the **HON.**                          one of the judges
of the within named court, at
on                          at

Dated,

Yours, etc.
**COZEN O'CONNOR**
*Attorneys for Petitioner*

*Office and Post Office Address*
**277 Park Avenue**
**NEW YORK, N.Y. 10172**

To

SURROGATE'S COURT : NEW YORK COUNTY
---------------------------------------- X
In the Matter of the Application of
ORLY GENGER, as a Person Interested,
for the Removal of DALIA GENGER
as Trustee of the ORLY GENGER 1993
Trust pursuant to SCPA § 711(11)
---------------------------------------- X

New York County Surrogate's Court
DATA ENTRY
Date: October 21, 2010

File No. 17/2008

A N D E R S O N,   S.

     After conference with the court, this motion seeking

modification of the court's July 1, 2009 order has been withdrawn

pursuant to a stipulation filed with the court.

     Proceed accordingly.

S U R R O G A T E

Dated: October 21, 2010

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

- - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION
TO DISMISS

File No. 0017/2008

New York County Surrogate's Court
MISCELLANEOUS DEPT.

NOV 0 4 2010

FILED

Clerk _____

PLEASE TAKE NOTICE that upon the annexed affirmation of Robert A. Meister and all

prior proceedings had herein, DALIA GENGER, as Trustee of the Orly Genger 1993 Trust, will

move this Court sitting, at 31 Chambers Street, Room 509, New York, New York, at 10:00 a.m.

in the fore noon of on November 23, 2010, or as soon as counsel can be heard, for an Order

dismissing the Second Amended Petition on the grounds that the Petition fails to state a valid

claim for removal or surcharge of Dalia Genger as Trustee of the Orly Genger 1993 Trust.

Pursuant to CPLR §2214(b), any answering papers must be served so as to be received by

November 16, 2010.


TO:
Cozen O'Connor
250 Park Avenue
New York, NY 10017
Counsel for Petitioner
Attn:  Judith E. Siegel-Baum, Esq.
       Stephanie Lehman, Esq.

PEDOWITZ & MEISTER LLP

By _____
    Robert A. Meister
    1501 Broadway, Suite 800
    New York, NY 10036
    212.403.7330
    Attorneys for DALIA GENGER,
    as Trustee of the Orly Genger 1993 Trust

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of

ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)
- - - - - - - - - - - - - - - - - - - - - - - - x

AFFIRMATION IN SUPPORT OF
MOTION TO DISMISS SECOND
AMENDED PETITION

File No. 0017/2008

ROBERT A. MEISTER, a member of the New York Bar, hereby affirms under the

penalties of perjury:

1       I am a member of the Bar and of the firm of Pedowitz & Meister LLP, counsel of

record for Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Orly Trust"). I make

this affirmation in support of her motion of to dismiss the Second Amended Petition of

beneficiary Orly Genger ("Orly") on the grounds that the Petition fails to state a valid claim for

removal or surcharge of Dalia Genger as Trustee of the Orly Trust. (Similar motions to dismiss

the original Petition and the First Amended Petition were not decided and presumably are now

moot in light of the motion the Second Amended Petition.)

2       First, Dalia Genger cannot be removed or surcharged on the basis of events that

occurred before she became trustee or when, at Petitioner's instance in her Prior Proceeding,

Dalia Genger had been directed by this Court not to act. However, many of the events of which

the Petition complains either preceded Dalia Genger becoming Trustee in January, 2008, or were

events that occurred in 2008 prior to the December 31, 2008 Decision where Dalia Genger took

no action after being so directed by Surrogate Roth who was considering Orly's prior petition to

remove Dalia Genger as Trustee, which petition was denied on December 31, 2008. See

Decision and Order, *Orly Genger v. Fang*, et al., Surrg. Ct., N. Y. Co., file 17/2008, December

31, 2008, at 3-4 (hereinafter "December 31, 2008 Decision"), Exhibit A hereto. Second, as

shown below, the few subsequent events pleaded in the Second Amended Petition do not justify

removal or surcharge. Thus the Petition alleges no facts that could be the basis of removing

Dalia Genger as Trustee or surcharging her.

3      It is undisputed that Dalia Genger did not become Trustee until January 4, 2008.

December 31, 2008 Decision, Exhibit A. At Petitioner's instance, an accounting action has

commenced against prior trustee Leah Feng which will adjudge and resolve any alleged

misconduct that occurred prior to Dalia Genger's becoming Trustee. Additionally, in the course

of the Prior Proceeding, on March 4, 2008, Surrogate Roth directed Dalia Genger, as Trustee,

that during the pendency of that proceeding, "no actions were to be taken with reference to the

Trust assets." See August 28, 2008 letters from Orly Genger's then counsel, Lawrence M.

Rosenstock, Esq., to Dalia Genger and her former counsel, Exhibit B hereto.

4      The Petition itself alleges that the events of which it complains either preceded

Dalia Genger becoming Trustee 2008 or occurred in 2008 after Surrogate Roth directed Dalia

Genger, as Trustee, that during the pendency of that proceeding. Thus the Petition alleges no

facts that could be the basis of removing Dalia Genger as Trustee or surcharging her.

5      The only events during 2008 on which the Petition bases its claim for removal and

surcharge were events over which Dalia Genger, as Trustee, had and could have had no control: -

- the Sagi Trust's alleged sale of common stock of Trans-Resources, Inc. ("TRI") and TPR

Investment Associates, Inc.'s declaring a default and foreclosing on D&K LP's Note.

6      Dalia Genger is not and never was trustee of the Sagi Trust, and neither the Orly

Trust nor Dalia Genger, as Trustee of the Orly Trust, was a party to the Sagi Trust sale of TRI

stock. As shown by the Stock Purchase Agreement, of which I obtained a copy and attach as

Exhibit C, that sale was purportedly made in August, 2008 by the Sagi Trust, acting through its

trustee, Rochelle Fang. Moreover, Orly's tenuous claim of injury – her contention that Orly

Trust owns shares of TRI stock, which supposedly lost value as a result of the Sagi Trust shares –

is completely undercut by the Final Judgment Order of the Delaware Chancery Court

determining that the transfer of TRI shares to the Orly Trust was void under the TRI

Shareholders' Agreement and thus [Arie Genger and] "the Orly Trust have been found to not be

the record or beneficial owners of the [TRI] shares transferred to them". TRI Investors, et. al. v.

Arie Genger, Civil Action Number 3994-VCS (August 18, 2010); Exhibit C, at ¶ 9.    While there

is an appeal pending, if the Delaware Supreme Court affirms the decision that the Orly Trust's

ownership of TRI shares was void *ab initio*, any allegations that they lost value based on the Sagi

Trust's sale would be totally baseless and no basis to remove Dalia Genger as Trustee.    Even if

the Delaware Supreme Court reverses that decision, is nothing that Dalia, as trustee of the Orly

Genger Trust, could have done to prevent the Sagi Trust from selling its TRI shares and thus

there is no basis to remove or surcharge Dalia Genger.

      7     Nor could Dalia Genger, as Trustee of the Orly Trust, prevent TPR Investment

Associates, Inc. ("TPR") from declaring a default and foreclosing on the promissory Note made

by D&K LP that the Orly Trust had guaranteed.    Undisputed are the following facts:

      A.     The Orly Trust is not a shareholder of TPR. (December 31, 2008 Decision,
Exhibit A at 6);

      B.     The Orly Trust is a 48% Limited Partner in D&K LP.  (December 31, 2008
Decision Exhibit A at 6);

      C.     In 1993, D&K LP made and delivered to TPR an $8,950,000 Note that states it
was to be repaid by December 21, 2003, in partial consideration for D&K LP's
purchase of common stock of TRI, which stock was pledged to secure the Note.
(Second Amended Petition ¶9 and Note, Exhibit E to Second Amended Petition);

D.    A prior trustee of the Orly Trust -- not Dalia Genger -- signed a written guarantee

of the Note in 1993 in which the Orly Trust "assumes and becomes liable for"

48% of the Note "and agrees that the Holder may enforce this Note, to the extent

of such liability, as if the [Orly Trust] were the Maker thereof." (Second Amended

Petition ¶9 and Note, Exhibit E to Second Amended Petition); and

E.    The Second Amended Petition alleges that the Note has not been repaid and that

D&K LP stopped making payments on the Note in 1999.  Second Amended

Petition ¶9.

By admitting that the Note had been paid in accordance with its terms until 1999, the Second

Amended Petition belied its contention that the note was uncollectable.

8    The Second Amended Petition does not allege that TPR ever renounced its rights

under the Note and guarantee by destroying the Note or by delivering the Note or a signed

writing cancelling or renouncing the Note, as required by NY UCC §3-605(1) for the Note to

become unenforceable.  It is hornbook law that the enforceability of a Note is not affected by a

mere statement by the maker or guarantor that the Note is unenforceable.  As the court held in

*Ber v. Johnson*, 163 A.D.2d 817, 818 (4th Dep't 1990):

> Because defendants' original obligation constituted a note and guarantee, it was required
> to be in writing (*see*, Uniform Commercial Code § 3-104 [1], [2]; General Obligations
> Law § 5-701 [a] [2]) and the Statute of Frauds precludes an oral executory modification.
> '[W]here an original agreement comes within [the] provisions of the statute of frauds
> requiring certain agreements to be in writing, the statute of frauds renders invalid and
> ineffectual a subsequent oral agreement changing the terms of the written contract, no
> matter how slight the attempted variation or by whom it was made' ( 61 NY Jur 2d,
> Frauds, Statute of, §140, at 217-218; *see*, *M. H. Metal Prods. Corp. v April*, 251 NY 146,
> 150; *Van Iderstine Co. v Barnet Leather Co.*, 242 NY 425, 430; *Heroux v Page*, 107
> AD2d 862, 863; *Awad & Co. v Pillsbury Mills*, 9 AD2d 870, *lv denied* 8 NY2d 705,
> *appeal dismissed* 8 NY2d 747; *cf.*, General Obligations Law §§ 5-1103, 15-301 [1], [2]).
> Thus, defendants may not rely on plaintiff's alleged oral acceptance of the stock as the
> basis for their defense of modification.

Thus the 2006 statement by Mr. Sagi Genger that D&K LP and its partners "deny the

enforceability of the Note" (Second Amended Petition Exhibit K) would not constitute a defense

to TPR's declaration of default and foreclosure, as a matter of law. And the Petition gives no

legally sufficient reason why the Note and guarantee would not be enforceable as the note is

enforceable on its face. Nor would enforceability of the Note have been affected if Dalia Genger

*had* stated "that no one was ever supposed to foreclose on the Note," as the Second Amended

Petition claims in ¶41. But she did not so state; in the document cited basis for that assertion

Dalia Genger in a post-judgment divorce mediation merely stated that the purpose of a Board

Resolution was "to carry out our [Dalia and Arie Genger's] understanding that I [Dalia Genger]

would not be in the position to foreclose on the D&K Note, and to take for myself an interest that

Arie and I intended for the children." (Emphasis added.) As the Note and guarantee were

enforceable in accordance with their terms, Dalia Genger's failure to take some unspecified

action could not be a basis to remover her as trustee or surcharge her.

9    The Second Amended Petition makes no allegations that Dalia Genger at any time

pledged or encumbered the Orly Trust's shares of TRI stock. Moreover, all allegations

concerning Dalia Genger's management of the Trust's TRI shares are now moot in light of the

Delaware Chancery Court decision.

10    Further, the Second Amended Petition's claim that Dalia Genger violated her

fiduciary duties by providing a general release from claims against the General Partner of D & K

LP arising prior to January 31, 2009 alleges no facts that could be the basis of removing Dalia

Genger as Trustee or surcharging her. The Petition failed to plead any instance of wrongdoing by

the General Partner of D & K LP or any rights or claims against the General Partner of D & K LP

that accrued prior to January 31, 2009. It should also be noted that the release only extends "to

the fullest extent permitted" thus, on its face, is limited in scope to avoid any potential breach of fiduciary duty. Therefore, the Second Amended Petition fails to set forth any plausible grounds that would give adequate grounds to remove Dalia Genger as Trustee for that reason.

11      The Second Amended Petition's vague unspecific allegations that Dalia Genger failed to adequately protect the assets of the trust in the Delaware Chancery Court Proceedings do not state a valid claim for a breach of fiduciary duty. The Delaware Chancery Court held that the purported transfers of TRI shares violated a TRI shareholder's agreement because required consent of other shareholders was not obtained, but neither Dalia Genger nor the Orly Trust was involved in that transaction and the Second Amended Petition does not and cannot claim that the Trust's interests failed to be adequately represented in the Delaware litigation. The Second Amended Petition neglects to draw attention to the fact that 1) the Settlor of the trust himself, Arie Genger, testified in this action in favor of the validity of the transfers and employed competent representation (Davis Polk) to defend his rights as well as the rights of the Orly Genger Trust, and 2) Orly Genger herself testified in the Delaware proceedings to protect her interests, although the Delaware Chancery Court found her testimony to be incredible, discussing what occurred at a meeting that she did not attend. Dalia Genger's decision not to intervene in that litigation spared the Orly Trust substantial legal fees, certainly was within her discretion as Trustee and does not raise a valid ground for removal as Trustee.

12      As the Petition does not allege any action or inaction by Dalia Genger during the time she was Trustee and free from judicial restraint nor any action that she could have taken, there is no basis for this proceeding and the Petition should be dismissed.

_____
Robert A. Meister

SURROGATE'S COURT : NEW YORK COUNTY                      JAN 0 2 2009
------------------------------------- X
In the Matter of the Trust Established
on December 13, 1993, by ARIE GENGER          File No. 0017/2008
for the Benefit of ORLY GENGER.
------------------------------------- X

R O T H ,  S .

 This is a contested application by the primary beneficiary
(Orly Genger) of an irrevocable inter vivos trust established by
her father, Arie Genger, seeking the appointment of a successor
trustee or, alternatively, the appointment of a "special trustee"
to investigate alleged wrongdoing concerning the trust.
Petitioner's mother, Dalia Genger (grantor's former wife),
contends that she is the duly appointed successor trustee and
that there is no basis to appoint another fiduciary for any
purpose.

 The trust agreement, dated December 13, 1993, provides for
discretionary income and principal distributions to Orly for life
with remainder to her descendants or, if none, to the grantor's
descendants in trust.

 Article SEVENTH (B), (D), (E), and (G) of the trust
instrument sets forth the following procedure for the resignation
of trustees and the appointment of their successors.

 A trustee may resign by delivering a signed and acknowledged
instrument of resignation in person or by certified or registered
mail to the other trustee and to either the grantor or the income
beneficiary.  Such resignation is effective upon the receipt of
the acknowledged instrument by the other trustee (if there is

one) and the grantor or the income beneficiary or at such later
date as may be specified in the instrument.

A trustee may appoint his or her successor by delivering a
signed and acknowledged instrument in the same manner as
described above for resignation. Any such appointment, however,
is valid only if the appointee qualifies by delivering a signed
and acknowledged instrument of acceptance in person or by
certified or registered mail to each trustee and the grantor or
the income beneficiary within 30 days after the later of 1) the
date on which a copy of the appointment instrument is delivered
to him or her, and 2) the effective date of the appointment as
set forth in the appointment instrument. It is observed that
there is no provision that requires a resigning trustee to
appoint a successor or that there always be two trustees in
office.

The original two trustees served until October 2004, when
they resigned and appointed David Parnes and Eric Gribitz as
their successors. On February 12, 2007, Mr. Gribitz resigned
without appointing a successor. On April 26, 2007, Mr. Parnes
resigned and appointed as his successor Leah Fang in a signed and
acknowledged instrument. Although Ms. Fang noted her acceptance
at the bottom of such instrument, her signature was not
acknowledged. However, in another document entitled "Release"
executed and acknowledged by Ms. Fang the same day, she, as

2

trustee, purported to discharge Mr. Parnes from liability. It is undisputed that thereafter Ms. Fang acted as trustee. Indeed, Ms. Fang's contention that she received a number of requests for information from petitioner and that petitioner referred to her in writing and orally as trustee is not disputed by petitioner.

On December 12, 2007, Ms. Fang, without resigning in accordance with the trust agreement, attempted to appoint Patricia Enriquez, as successor trustee. Her designation of Ms. Enriquez, however, was by an unacknowledged letter in which she referred to her own resignation as taking effect upon Ms. Enriquez's acceptance of the appointment. Ms. Enriquez accepted by signing the letter, but such acceptance was not acknowledged and, in any event, there is nothing in the record to suggest that such "acceptance" was delivered in accordance with the trust instrument. Two weeks later, an attorney for Ms. Enriquez notified petitioner's counsel by email that her client had advised that she had no intention to overcome the procedural omissions.

On January 3, 2008, Ms. Fang and Dalia Genger signed before a notary a memorandum in which Ms. Fang stated that "to the extent that I am still vested with any powers to appoint trustees of the [trust], I confirm your appointment." The next day, Ms. Fang executed an acknowledged instrument of resignation and appointment of successor trustee naming Dalia as her successor

3

and Dalia, on the same day, executed an acknowledged instrument

of acceptance.  It is undisputed that such documents were

delivered in accordance with the trust requirements.

We address first that portion of the instant application

which seeks the appointment of a successor trustee on the ground

that Dalia was not validly appointed.  In such connection,

petitioner argues first that, because Ms. Fang's signature on the

bottom of Mr. Parnes's appointment instrument was not

acknowledged, she never accepted the position in accordance with

the trust agreement (and thus could not appoint Dalia her

successor).  However, such argument ignores the "Release"

mentioned above that Ms. Fang executed the same day.  Such

instrument, which was signed and duly acknowledged, unequivocally

establishes Ms. Fang's acceptance of the position.  Since

petitioner does not challenge the authenticity of such instrument

or Mr. Parnes' contention, supported by the record, that it was

delivered in accordance with the trust instrument and, as noted

above, petitioner thereafter communicated with Ms. Fang as

trustee, Ms. Fang properly qualified as successor trustee.

Petitioner's second argument that, in any event, Ms. Fang's

appointment of Dalia was ineffective because Ms. Fang had

previously resigned as trustee is also without merit.  Simply

put, Ms. Fang had not previously resigned because her letter to

Ms. Enriquez did not contain the formalities (i.e., an

4

acknowledgment) required by the trust agreement. Moreover,
although not a model of clarity, the letter makes clear that Ms.
Fang did not intend to leave the trust without a trustee in the
event that Ms. Enriquez failed to qualify, which is exactly what
happened. Thus, Ms. Fang had authority to appoint Dalia as her
successor.

Since there is no dispute that the instrument of resignation
and appointment executed by Ms. Fang on January 4, 2008, and
Dalia's instrument of acceptance of the same date were executed
and delivered in accordance with the trust agreement, Dalia is
the duly appointed successor trustee of the trust. To find
otherwise would be to ignore the chronology of events and the
purpose of the provisions at issue, namely to ensure that the
trust always has a fiduciary ready, willing and able to act. The
fact that petitioner does not wish her mother to be the fiduciary
because she considers her an adversary in a broader intra-family
dispute does not provide a basis to ignore the grantor's intent,
as reflected in the trust instrument, that an acting trustee, and
not the beneficiary, decides who shall become a successor
trustee. Accordingly, petitioner's application to appoint a
successor trustee is denied.

We next turn to petitioner's alternate request for relief,
namely that a "special trustee" be appointed for the "purpose of
investigation and taking discovery with respect to the wrongful

5

dealings concerning the assets and income of the trust."

It is noted initially that petitioner's only allegations of "wrongful dealings" concern a close corporation, TPR Investment Associates, Inc.    She contends that her brother Sagi, who is an officer of TPR, and Dalia, who was a shareholder at the time this proceeding was commenced, are engaged in a "wrongful scheme" to divert assets to themselves and, as a result, Dalia "could not possibly" investigate wrongdoing at TPR, which the petition describes as the "greatest" asset of the trust.

However, the premise of the application, namely that the trust's interest in TPR would enable the trustee to investigate or seek relief from TPR, does not appear to be correct. Petitioner does not dispute Dalia's assertion, supported in the record, that the trust is not a shareholder of TPR at all. Rather, D&K LP, an entity in which the trust owns a 48 percent interest, in turn owns approximately 50 percent of TPR. Petitioner does not explain what appears to be a material misstatement concerning TPR's relationship to the trust.    Nor does she identify how a trustee under such circumstances might be in a position to "investigate and address the TPR issues".

In any event, assuming arguendo that a trustee would somehow be able to investigate alleged misconduct at TPR, petitioner's vague and speculative allegations of "wrongful conduct" at TPR from which Dalia purportedly benefitted do not warrant the

appointment of a "special trustee". Similarly, petitioner's

allegations (made upon information and belief) that Dalia had

knowledge of alleged improper acts by former trustee, David

Parnes, in relation to TPR are patently insufficient to warrant

the remedy of a "special trustee". In such connection, it is

noted that Mr. Parnes and Ms. Fang have been directed to account

for their proceedings as trustees (Matter of Genger, NYLJ, Feb.

25, 2008, at 29, col 3), giving petitioner a forum to seek relief

for most of the conduct about which she complains.

Finally, it is observed that petitioner has not alleged that

Dalia has refused a request for information, which would warrant

relief (SCPA 2102), or has failed as trustee to protect trust

assets. Indeed, it appears that Dalia (who states that she is

ready and able to act as fiduciary) has yet to assume the duties

of trustee in deference to her daughter's position in this

litigation. As a validly appointed trustee, she should be given

the opportunity to do what she deems necessary to manage and

protect the trust's assets.

Based upon the foregoing, the appointment of a "special

trustee" is unwarranted at this time and, accordingly, the

application is denied, without prejudice to renewal if future

7

circumstances warrant such relief.

        This decision constitutes the order of the court.


                                            _____

                                            S U R R O G A T E


Dated: December 31, 2008

8

# MARKEWICH AND ROSENSTOCK LLP

8 East 41ˢᵗ Street • Fifth Floor • New York, New York 10017

tel: (212) 542-3156  fax: (212) 481 1761  lrosenstock@mrlawllp.com

Lawrence M. Rosenstock
Eve Rachel Markewich

Robert Markewich
of counsel

August 28, 2008

## BY HAND AND MAIL

Dalia Genger
200 East 65ᵗʰ Street, 32W
New York, New York 10021

               Re:     1993 Orly Genger Trust

Dear Ms. Genger:

It has come to our attention that you may be considering attempting to act on behalf of the Orly Genger Trust (the "Trust").

We remind you that you have no authority to act for the Trust and that on March 4, 2008 Surrogate Roth directed that no actions were to be taken with reference to the Trust assets. Should you violate the Court order, or in any way interfere with the ownership and/or value of the Trust assets or take any action with respect to Trust assets, we will hold you personally responsible for any loss or damage that may be incurred and seek to hold you in contempt.  To the extent others are involved in guiding or facilitating wrongful conduct on your part, we will also seek remedies against them.

We reserve any and all rights with respect to your conduct concerning the Trust.

Very truly yours,

Lawrence M. Rosenstock

LMR:js

cc:   Jonathan G. Kortmansky, Esq. (by hand)
      Sulllivan & Worcester LLP

      Orly Genger

Genger-letter dalia genger 8-28.doc

# MARKEWICH AND ROSENSTOCK LLP

8 East 41st Street • Fifth Floor • New York, New York 10017
*tel:* (212) 542-3156  *fax:* (212) 481 1761  *lrosenstock@mrlawllp.com*

Lawrence M. Rosenstock
Eve Rachel Markewich

Robert Markewich
of counsel

August 28, 2008

**BY HAND AND EMAIL**

Jonathan G. Kortmansky, Esq.
Sullivan & Worcester LLP
1290 Avenue of the Americas
New York, New York 10104

Re:    1993 Orly Genger Trust

Dear Mr. Kortmansky:

I am writing you on behalf of Orly Genger, the beneficiary of the Orly Genger Trust(the "Trust"). By letter dated August 28, 2008, a copy of which is enclosed, we advised Dalia Genger, among other things, that when we were before the court on this matter on March 4, 2008, Surrogate Roth directed that no actions were to be taken with respect to Trust assets. As attorneys for Dalia Genger we expect that you will so advise your client of this direction and to take all appropriate steps to see that she complies with Surrogate Roth's order.

Very truly yours,

Lawrence M. Rosenstock

LMR:js

cc:    Hon. Surrogate Renee R. Roth
       Orly Genger

Genger-letter dalia genger 8-28.doc

# STOCK PURCHASE AGREEMENT

by and among

**TR INVESTORS, LLC,**

**GLENCLOVA INVESTMENT CO.,**

**NEW TR EQUITY I, LLC**

and

**NEW TR EQUITY II, LLC**

as Purchasers,

**SAGI GENGER 1993 TRUST**

as Seller

and

**TPR INVESTMENT ASSOCIATES, INC.**

Dated as of August 22, 2008

## STOCK PURCHASE AGREEMENT

     THIS STOCK PURCHASE AGREEMENT ("Agreement"), dated as of the 22nd day of August, 2008, by and among TR Investors, LLC, a Delaware limited liability company ("TR Investors"), Glenclova Investment Co., a Cayman Islands corporation, ("Glenclova"), New TR Equity I, LLC, a Delaware limited liability company ("Equity I") and New TR Equity II, LLC, a Delaware limited liability company ("Equity II" and collectively with TR Investors, Glenclova and Equity I, the "Purchasers"), the Sagi Genger 1993 Trust ( "Seller"), and TPR Investment Associates, Inc., a Delaware corporation ("TPR").

<b>W I T N E S S E T H:</b>

     WHEREAS, Seller is the record and beneficial owner of an aggregate of one thousand one hundred two and eight-tenths (1,102.80) shares of common stock (the "Common Stock"), par value $.01 per share, of Trans-Resources, Inc., a Delaware corporation (the "Company");

     WHEREAS, Seller desires to sell to TR Investors, and TR Investors desires to purchase from Seller, two hundred seventy five and seven-tenths (275.70) shares of Common Stock (the "TR Investors Shares");

     WHEREAS, Seller desires to sell to Glenclova, and Glenclova desires to purchase from Seller, two hundred seventy five and seven-tenths (275.70) shares of Common Stock (the "Glenclova Shares");

     WHEREAS, Seller desires to sell to Equity I, and Equity I desires to purchase from Seller, two hundred seventy five and seven-tenths (275.70) shares of Common Stock (the "Equity I Shares"); and

     WHEREAS, Seller desires to sell to Equity II, and Equity II desires to purchase from Seller, two hundred seventy five and seven-tenths (275.70) shares of Common Stock (the "Equity II Shares" together with the TR Investors Shares, the Glenclova Shares and the Equity I Shares, the "Shares").

     NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, the parties hereto, intending to be legally bound hereby, agree as follows:

     1.  Sale of Shares. Upon the terms of this Agreement, the Purchasers, severally and not jointly, hereby purchase, acquire and accept from Seller, and the Seller hereby sells, conveys assigns, transfers and delivers to the Purchasers, all right, title and interest in and to the Shares as follows:

(a)    TR Investors hereby purchases, acquires and accepts from Seller, and the Seller hereby sells, conveys assigns, transfers and delivers to TR Investors, all right, title and interest in and to the TR Investors Shares, free and clear of any and all liens, obligations or encumbrances;

(b)    Glenclova hereby purchases, acquires and accepts from Seller, and the Seller hereby sells, conveys assigns, transfers and delivers to Glenclova, all right, title and interest in and to the Glenclova Shares, free and clear of any and all liens, obligations or encumbrances; and

(c)    Equity I hereby purchases, acquires and accepts from Seller, and the Seller hereby sells, conveys assigns, transfers and delivers to Equity I, all right, title and interest in and to the Equity I Shares, free and clear of any and all liens, obligations or encumbrances.

(d)    Equity II hereby purchases, acquires and accepts from Seller, and the Seller hereby sells, conveys assigns, transfers and delivers to Equity II, all right, title and interest in and to the Equity II Shares, free and clear of any and all liens, obligations or encumbrances.

2.    <u>Consideration and Closing Deliveries</u>.

(a)    Upon the terms of this Agreement, in consideration of the sale of the Shares to the Purchasers and the other agreements of the Seller contained herein, the Purchasers, herewith cause to be delivered to the Seller through and pursuant to the Escrow Agreement (as defined below), in full payment for the aforesaid sale of the Shares, an aggregate amount equal to twenty six million seven hundred fifteen thousand four hundred sixteen dollars ($26,715,416) (the "Purchase Price") as follows:

(i)    in respect of the TR Investors Shares, (a) by wire transfer of a portion of the Purchase Price equal to $1,718,750 in immediately available funds to the Escrow Agent (as hereinafter defined) and then by the Escrow Agent to a bank account designated in writing by the Seller, and (b) a portion of the Purchase Price equal to $4,960,104 by wire transfer to the Escrow Agent to be held by the Escrow Agent pursuant to Section 2(b) hereof;

(ii)    in respect of the Glenclova Shares, (a) by wire transfer of a portion of the Purchase Price equal to $1,718,750 in immediately available funds to the Escrow Agent (as hereinafter defined) and then by the Escrow Agent to a bank account designated in writing by the Seller, and (b) a portion of the Purchase Price equal to $4,960,104 by wire transfer to the Escrow Agent to be held pursuant to Section 2(b) hereof; and

(iii)    in respect of the Equity I Shares, (a) by wire transfer of a portion of the Purchase Price equal to $1,718,750 in immediately available funds to the Escrow Agent (as hereinafter defined) and then by the Escrow Agent to a bank account designated in writing by the Seller, and (b) a portion of the Purchase Price equal to

3

$4,960,104 by wire transfer to the Escrow Agent to be held pursuant to Section 2(b) hereof.

(iv)    in respect of the Equity II Shares, (a) by wire transfer of a portion of the Purchase Price equal to $1,718,750 in immediately available funds to the Escrow Agent (as hereinafter defined) and then by the Escrow Agent to a bank account designated in writing by the Seller, and (b) a portion of the Purchase Price equal to $4,960,104 by wire transfer to the Escrow Agent to be held pursuant to Section 2(b) hereof.

(b)    The parties are herewith entering into an Escrow Agreement (the "Escrow Agreement"), among the Purchasers Seller and Troutman Sanders LLP, as escrow agent (the "Escrow Agent"), pursuant to which the Purchasers, severally and not jointly, are depositing the amounts set forth in Sections 2(a)(i)(b), 2(a)(ii)(b), 2(a)(iii)(b) and 2(a)(iv)(b) hereof (collectively, the "Escrow Amount") to be held pursuant to this Agreement and the Escrow Agreement.

(c)    As promptly as practicable, Seller shall deliver to the Escrow Agent, either (i) stock certificates representing the Shares issued in the name of Seller, accompanied by stock powers duly executed in blank with appropriate transfer stamps, if any, affixed, and any other documents that are necessary to transfer title to the shares to the Purchasers (or any designee of the Purchasers), free and clear of any and all liens, obligations or encumbrances, or (ii) stock certificates issued in the names of TR Investors, Glenclova, Equity I and Equity II for the TR Investor Shares, the Glenclova Shares, the Equity I Shares and the Equity II Shares, respectively, in each case free and clear of any and all liens, obligations or encumbrances.

(d)    Subject to Section 2(e) hereof, upon the delivery of stock certificates required by Section 2(c), the Escrow Agent shall release the Escrow Amount to the Seller in accordance with the terms and conditions of the Escrow Agreement.

(e)    Notwithstanding the foregoing, Seller may at any time following the date hereof, direct the Escrow Agent to release up to an aggregate of $500,000 of the Escrow Amount, provided such amounts are held in escrow at such time, to a charity or charities of its choice pursuant to the terms and conditions of the Escrow Agreement.

3.    Closing.  The closing of the transactions contemplated in this Agreement (the "Closing") is taking place at the offices of The Trump Group at 3:00 p.m., Eastern Daylight Time, on the date hereof (the "Closing Date").

4.    Representations and Warranties of Seller.  In connection with the purchase and sale of the Shares referred to in Section 1 hereof and the execution and performance of this Agreement, Seller represents and warrants to the Purchasers as follows:

(a)    Seller is the record and beneficial owner of all right, title and interest in and to all of the Shares and had good and transferable title thereto, free and clear of all liens, obligations, encumbrances, restrictions, pledges, charges, options, preemptive rights, subscription rights, warrants, calls, security interests, and claims of every kind.

4



(b)    Seller has the full right, power, and authority to sell and deliver the Shares in accordance with this Agreement.

(c)    The delivery of the Shares delivered pursuant to Sections 1 and 2 hereof will transfer valid title thereto, free and clear of all liens, obligations, encumbrances, restrictions, pledges, charges, options, preemptive rights, subscription rights, warrants, calls, security interests, and claims of every kind.

(d)    The execution, delivery, and performance of this Agreement, the consummation of the transactions contemplated hereby, and the compliance with or fulfillment of the terms and provisions of this Agreement or of any other agreement or instrument contemplated by this Agreement, do not and will not (i) contravene any law, rule, or regulation of any state or of the United States; (ii) contravene any order, writ, award, judgment, decree, or other determination that affects or binds Seller or the Company, or any of their respective properties; (iii) conflict with, result in a breach of, constitute a default under, or give rise to a right of termination under any contract, agreement, note, deed of trust, mortgage, trust, lease, governmental or other license, permit, or other authorization, or any other instrument or restriction to which Seller or the Company is a party; or (iv) require Seller to obtain the approval, consent, or authorization of, or to make any declaration, filing, or registration with, any third party or any foreign, federal, state, county, or local court, governmental authority, or regulatory body.

(e)    Seller is not subject to any order, writ, award, judgment, decree, or determination, is not a party to or bound by any contract, agreement, note, deed of trust, mortgage, trust, lease, governmental or other license, permit, or other authorization, or other instrument or restriction that could conflict with, impair, impose restrictions or otherwise prevent or delay the execution, delivery, or performance of this Agreement or the consummation of the transactions contemplated by this Agreement.

(f)    This Agreement is the legal, valid, and binding agreement of Seller and is enforceable in accordance with its terms, subject to (i) bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, or other laws or equitable principles relating to or affecting the enforcement of creditors' rights generally, and (ii) the effect of general principles of equity, including, without limitation, concepts of materiality, reasonableness, good faith and fair dealing (regardless of whether considered in a proceeding in equity or at law),.

(g)    None of the representations and warranties of Seller contained herein and none of the written information or written documents furnished to the Purchasers or any of their respective representatives by Seller or its representatives is false or misleading in any material respect or omits to state a fact herein or therein necessary to make the statements made herein not misleading in any material respect.

(h)    Seller has made an independent decision to sell the Shares based on the information available to it and that it has determined is adequate for that purpose, Seller has had the opportunity to review all information which it deems relevant to its decision to sell

5

the Shares, and Seller has not relied on any information (in any form, whether written or oral) furnished by or on behalf of the Purchasers or the Company in making that decision.

(i)    Neither the Purchasers, nor the Company has given any investment advice or rendered any opinion to Seller as to whether the sale of the Shares is prudent or suitable, and Seller is not relying on any representation or warranty other than those made by the Purchasers expressly in this Agreement.

(j)    Seller is a sophisticated investor with respect to the Shares and has adequate information concerning the Shares. Seller believes, by reason of its and its beneficiary's business and financial experience and the information and knowledge that its beneficiary holds with respect to the Company and its business, that it is capable of evaluating the merits and risks of the sale and of protecting its own interest and the interest of its beneficiary in connection with the transactions contemplated by this Agreement. Seller has had the opportunity to have legal counsel review and advise it with respect to the terms of this Agreement.

(k)    Seller acknowledges that (i) the Purchasers currently may have material information regarding the condition (financial or otherwise), results of operations, businesses, properties, plans, and prospects of the Company that may be material to a decision to sell the Shares ("Excluded Information") and that such Excluded Information may affect the value of the Shares. Seller further acknowledges that it has determined to sell the Shares notwithstanding its lack of knowledge of the Excluded Information. Seller represents that it has adequate information concerning the business and financial condition of the Company and its affiliates to make an informed decision regarding the sale of the Shares pursuant hereto and has independently and without reliance upon the Purchasers made its own analysis and decision to sell the Shares pursuant hereto. Seller acknowledges that the sale of the Shares is the result of independent arm's-length negotiations between Seller and the Purchasers.

5.    Representations and Warranties of the Purchasers. In connection with the purchase and sale of the Shares referred to in Section 1 hereof and the execution and performance of this Agreement, each Purchaser represents and warrants, severally and not jointly, to Seller as follows:

(a)    Such Purchaser has the full right, capacity, power, and authority to execute and deliver this Agreement, to consummate the transactions contemplated by this Agreement, and to comply with the terms, conditions, and provisions of this Agreement.

(b)    The execution, delivery, and performance of this Agreement, the consummation of the transactions contemplated hereby and the compliance with or fulfillment of the terms and provisions of this Agreement or of any other agreement or instrument contemplated by this Agreement, do not and will not (i) contravene any law, rule, or regulation of any state or of the United States; (ii) contravene any order, writ, award, judgment, decree, or other determination that affects or binds such Purchaser or any of its properties; (iii) conflict with, result in a breach of, constitute a default under, or give rise to a right of termination under any contract, agreement, note, deed of trust, mortgage, trust, lease, governmental or other license, permit, or other authorization, or any other instrument or restriction to which such

Purchaser is a party or by which any of its properties may be affected or bound; or (iv) require such Purchaser to obtain the approval, consent, or authorization of, or to make any declaration, filing, or registration with, any third party or any foreign, federal, state, county, or local court, governmental authority, or regulatory body that has not been obtained in writing prior to the date of this Agreement.

(c)    Such Purchaser is not subject to any order, writ, award, judgment, decree, or determination nor a party to nor bound by any deed of trust, mortgage, trust, lease, governmental or other license, permit, or other authorization, contract, agreement, note, or other instrument or restriction that could conflict with or prevent the execution, delivery, or performance of this Agreement or the consummation of the transactions contemplated hereby.

(d)    This Agreement is the legal, valid, and binding agreement of such Purchaser and is enforceable in accordance with its terms, subject to (i) bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, or other laws or equitable principles relating to or affecting the enforcement of creditors' rights generally and, (ii) the effect of general principles of equity, including, without limitation, concepts of materiality, reasonableness, good faith and fair dealing (regardless of whether considered in a proceeding in equity or at law).

(e)    Such Purchaser hereby acknowledges receipt of copies of the Irrevocable Proxy, dated as of October 29, 2004, issued by Seller in favor of Arie Genger with respect to the Shares (the "Proxy"), a back-up form of voting trust agreement and voting trust certificate delivered in connection with the Proxy and the letter agreement dated October 29, 2004 with respect to the transfer of the Shares from TPR to Seller.

(f)    Such Purchaser has no actual knowledge of any contract, agreement, note, or other instrument or restriction to which the Seller is subject that could conflict with or prevent the execution, delivery, or performance of this Agreement or the consummation of the transactions contemplated hereby.

6.    Covenants.  Promptly following the execution hereof, Seller shall use all best efforts to cause the Company to recognize Seller as the record and beneficial owner of the Shares in the Company's stock registry.  In furtherance of the foregoing, Seller shall use all best efforts to promptly submit through the Escrow Agent or directly as instructed by the Purchasers a lost certificate affidavit in respect of the Shares to the Company, substantially in the form attached hereto as Exhibit A, and cause the Company to deliver to it (or the Escrow Agent as instructed by the Purchasers) a validly issued stock certificate in respect of the Shares to Seller in Seller's name.  To the extent that Seller is asked by the Purchasers to commence a lawsuit or other proceeding in furtherance of the foregoing, the Purchasers shall select legal counsel for such matters, and shall pay the legal expenses and fees in connection therewith on Seller's behalf.

7.    Indemnification.  Seller agrees to indemnify, defend and hold harmless each Purchaser and its affiliates and controlling persons, and its and their respective directors, officers, employees and agents (collectively, the "Indemnified Group"), at any time after the Closing Date, from and against all demands, claims, actions, or causes of action, assessments,

7

losses, damages, deficiencies, liabilities (including strict liability), costs, and expenses of investigation, including, without limitation, interest, penalties and reasonably attorney's fees and expenses and consultants fees (collectively, "Damages") asserted against, resulting to, imposed upon, or incurred by any member of the Indemnified Group, directly or indirectly, by reason of or resulting from:

(a)    a breach of any representation, warranty, covenant, or agreement of the Seller contained in or made pursuant to this Agreement or any related agreement;

(b)    any failure of the Company to recognize the Seller as the record and beneficial owner of the Shares; and

(c)    any Shares that are subject to any liens, obligations or encumbrances.

8.    Survival of Representations, Warranties, Covenants, and Agreements. All representations, warranties, covenants, and agreements made in this Agreement shall survive the execution of this Agreement, the closing of the transactions contemplated hereby, and the delivery of the certificates or other evidence of the Shares sold hereunder for a period of three (3) years after the Closing.

9.    Rescission. Each of the Purchasers and Seller hereby agree, that in the event that any member of the Indemnified Group makes a claim for indemnification pursuant to Section 7(b) or 7(c), the Purchasers, may in their sole and absolute discretion, elect to void the transactions contemplated hereby and promptly receive a full refund by Seller of the Purchase Price.

10. Valid Transfer. If at any time following the Closing Date, it is determined that Seller is not the record and beneficial owner of the Shares as of the date hereof by virtue of the transfer of the Shares to it by TPR being deemed to have been void or for any other reason, and that all right, title and interest in and to the Shares is held by TPR, subject only to the plaintiff's asserted rights under the Stockholders Agreement asserted in the action styled Glenclova Investment Co. v. Trans-Resources, Inc. and TPR Investment Associates, Inc., Case No. 08-CIV-7140 (JFK), pending in the United States District Court for the Southern District of New York, the parties hereby agree that (a) this Agreement and the transactions contemplated hereby shall be deemed to have been entered into and consummated with TPR, (b) the Purchasers shall retain all right, title and interest in and to the Shares as if purchased from TPR pursuant to this Agreement, (c) TPR shall look only to Seller for any payments made by the Purchasers pursuant to this Agreement, (d) the Purchasers shall have no liability or obligation to TPR in respect of the Shares, and (e) all representations, warranties, covenants and agreements made by Seller herein, shall be deemed to have been made by TPR as of the date hereof.

11. Other Shares. If at any time following the Closing Date, it is determined that Arie Genger is not the record and beneficial owner of the 794.40 shares of Common Stock of the Company purportedly transferred to him by TPR in October, 2004 and/or that Orly Genger 1993 Trust is not the record and beneficial owner of the 1,102.80 shares of Common

8

Stock of the Company purportedly transferred to such Trust by TPR in October, 2004, and that
TPR is determined to be the record or beneficial owner of any such shares, in either or both
cases by virtue of the transfer of such shares being deemed to have been void or for any other
reason (the shares being so effected being referred to herein as the "Affected Shares") then
TPR shall promptly transfer 64% of the Balance Shares (as such term is defined in the
Stockholders Agreement dated March 30, 2001, among TPR, TR Investors, Glenclova and the
Company (the "Stockholders Agreement")) to TR Investors and Glenclova in accordance with
the terms of Section 1.6 of the Stockholders Agreement whether or not such agreement is then
still in effect.

    12. Entire Agreement. This Agreement and the Letter Agreement set forth the
entire agreement between the parties hereto with respect to the purchase and sale of the Shares
contemplated herein and supersedes all prior written or oral agreements or understandings
between the parties hereto relating to the subject matter hereof.

    13. Benefit. This Agreement shall be binding upon and inure to the benefit of
the respective legal representatives, heirs, successors, and assigns of the parties. This
Agreement may not be assigned by the Purchasers or Seller.

    14. Notices. All notices and other communications, whether required or
otherwise, made under this Agreement shall be in writing and shall be deemed to have been
given if personally delivered or mailed by registered, certified, or first-class mail, postage
prepaid, or sent by overnight delivery, telex, telegram, or facsimile transmission:

    if to Seller, to it at:

        Sagi Genger 1993 Trust
        1211 Park Avenue
        New York, New York 10128
        Attention: Mr. Sagi Genger
        Fax: (802) 375-2949

    if to Purchasers, to the appropriate Purchaser at:

        TR Investors, LLC
        c/o The Trump Group
        4 Stage Coach Run
        East Brunswick, New Jersey 08816
        Attention: James M. Lieb, Esq.
        Fax: (732) 390-3319

        New TR Equity I, LLC
        c/o The Trump Group
        4000 Island Blvd
        Williams Island, Florida 33160
        Attention: Mr. Jules Trump

9

New TR Equity II, LLC
c/o The Trump Group
4000 Island Blvd
Williams Island, Florida 33160
Attention: Mr. Eddie Trump
Fax: (305) 933-9514

Glenclova Investment Co.
c/o Carmel Investment Fund
TK House
Bayside Executive Park
West Bay Street and Blake Road
Nassau, Bahamas
Attention: Mr. Robert Smith
Fax: (242) 327-2289

with copy, in each instance, to:

Mark S. Hirsch, Esq.
404 Park Avenue South, 6th Floor
New York, New York  10019
Fax:(917) 546-7009

or to such other address or to such other person as one party shall have last designated by notice
to the other party hereto. Notices delivered personally or by overnight delivery shall be
effective upon delivery. Notices properly addressed and delivered by mail, return receipt
requested, shall be effective upon deposit with the United States Postal Service. Notices sent
by telex, telecopier, or facsimile transmission shall be effective upon confirmation of
transmission.

15. Paragraph Headings. The headings of paragraphs contained in this
Agreement are provided for convenience only. They form no part of this Agreement and shall
not affect its construction or interpretation. All references to paragraphs in this Agreement
refer to the corresponding paragraphs of this Agreement.

16. Amendment. Neither this Agreement nor any terms or provisions hereof
may be changed, waived, discharged, or terminated orally, or in any manner other than by an
instrument in writing signed by the party against whom the enforcement of the change, waiver,
discharge, or termination is sought.

17. Counterparts. This Agreement may be executed simultaneously in
counterparts, each of which shall be deemed to be an original, but all of which together shall
constitute one and the same instrument. It shall not be necessary that any single counterpart be
executed by all parties provided that each party shall have executed at least one counterpart.

18. Further Assurances. Each of the parties hereto shall use all best efforts to do
all things necessary or advisable to make effective the transactions contemplated hereby and

10

shall cooperate and take such action as may be reasonably requested by the other party in order to carry out fully the provisions and purposes of this Agreement and the transactions contemplated hereby and to vest in the Purchasers all rights in respect of the Shares, including, but not limited to, the right to vote, exercise rights under the Stockholders Agreement and transfer the Shares. From and after the Closing Date, the parties hereto agree to execute or cause to be executed such further agreements, documents or instruments as may be reasonably requested by one of the parties hereto in order to effect the transactions contemplated hereunder or to exercise any and all rights in respect of the Shares, including, but not limited to, the right to vote, exercise rights under the Stockholders Agreement and transfer the Shares.

19. Jurisdiction. Each party hereby consents to the exclusive jurisdiction of the courts of the State of Delaware as to all matters relating to the enforcement, interpretation, or validity of this Agreement, and if such party is a non-resident of the State of Delaware, appoints the Secretary of State of the State of Delaware as its agent for service of process.

20. Specific Performance. The parties agree that this Agreement may be enforced in equity, and that specific performance or other equitable relief would be an appropriate remedy in any such action, in addition to any monetary or other damages which may be proved. It is accordingly agreed that the Purchasers, in addition to any other remedy to which they may be entitled in law or in equity, shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to compel specific performance of this Agreement, without the need for proof of actual damages. Seller agrees to waive, and to cause its affiliates to waive, any requirements for the securing or posting of any bond in connection with such remedy. Seller also agrees to reimburse the Purchasers for all costs and expenses, including attorneys' fees, incurred by it in successfully enforcing Seller's or its affiliates' obligations hereunder.

21. Governing Law. This Agreement shall be governed by the laws of the State of Delaware, without regard to any conflicts of law principles.

22. Severability. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

23. No Presumption Against the Drafter. Each of the parties to this Agreement participated in the drafting of this Agreement and the interpretation of any ambiguity contained in the Agreement will not be affected by the claim that a particular party drafted any provision hereof.

[SIGNATURE PAGE FOLLOWS]

11

IN WITNESS WHEREOF, the parties have duly executed this Agreement effective as of the date and year first above-written.

TR INVESTORS, LLC

By: _____
    Name: Jim Lieb
    Title: Executive Vice-President

GLENCLOVA INVESTMENT CO.

By: _____
    Name: Robert Smith
    Title: Chairman

NEW TR EQUITY I, LLC

By: _____
    Name: MARK S. HIRSCH
    Title: EXECUTIVE VP/GEN'L COUNSEL

NEW TR EQUITY II, LLC

By: _____
    Name:
    Title:

SAGI GENGER 1993 TRUST

By: _____
    Name: Rochelle Fang
    Title: Trustee

TPR INVESTMENT ASSOCIATES, INC.

By: _____
    Name: Sagi Genger
    Title: President

12



| GRANTED |
| --- |

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
| --- | --- |
| TR INVESTORS, LLC, GLENCLOVA INVESTMENT CO., NEW TR EQUITY I, LLC, and NEW TR EQUITY II, LLC, and TRANS-RESOURCES, INC., <br><br>             Plaintiffs, <br><br> v. <br><br> ARIE GENGER, <br><br>             Defendant. | |
| ARIE GENGER, <br><br>             Counterclaim Plaintiff, <br><br> v. <br><br> TR INVESTORS, LLC, GLENCLOVA INVESTMENT CO., NEW TR EQUITY I, LLC, and NEW TR EQUITY II, LLC, and TRANS-RESOURCES, INC., <br><br>             Counterclaim Defendants. | Civil Action No. 3994-VCS |

### FINAL JUDGMENT ORDER

For the reasons set forth in this Court's Opinions of December 9, 2009, February 3, 2010, July 23, 2010, and August 9, 2010 (the "Opinions"), this _____ day of August, 2010, IT IS HEREBY ORDERED that:

1.    Unless otherwise provided herein, all defined terms in this Final Judgment Order shall have the same meanings ascribed to them under the Court's Opinions.

2.    TR Investors, LLC ("Investors") is the owner of 1,740.7641 shares of the authorized and issued stock of Trans-Resources, Inc. ("Trans-Resources").

3.    Glenclova Investment Co. ("Glenclova") is the owner of 1,553.4931 shares of the authorized and issued stock of Trans-Resources.

4.       New TR Equity I, LLC ("Equity I") is the owner of 275.7 shares of the authorized and issued stock of Trans-Resources.

5.       New TR Equity II, LLC ("Equity II") is the owner of 275.7 shares of the authorized and issued stock of Trans-Resources.

6.       The foregoing ownership holdings of Investors and Glenclova include 64% of the Balance Shares, as that term is defined in the Stockholders Agreement, representing 66.4144 shares of the authorized and issued stock of Trans-Resources.

7.       As a result of the foregoing, Investors, Glenclova, Equity I and Equity II are presently the owners of a total of 3,845.6572 shares, or 67.7477%, of the authorized and issued stock of Trans-Resources.

8.       TPR is the record and beneficial owner of all Trans-Resources shares not presently owned by the Plaintiffs.

9.       Arie Genger and the Orly Genger Trust are not (and have not been since at least the date of execution of the Stockholders Agreement) the record or beneficial owners of any Trans-Resources shares.

10.       No Trans-Resources shares presently owned by Plaintiffs are subject to any proxy of any kind in favor of Arie Genger.

11.       All of the transfers of shares of the authorized and issued stock of Trans-Resources that Arie Genger purported to cause TPR to make in 2004 (to himself, the Sagi Genger 1993 Trust, and the Orly Genger 1993 Trust) were in violation of the Stockholders Agreement.

2

12.     As a result, the transfers were void, the purportedly transferred shares continued to be owned by TPR, and Investors and Glenclova had the right under Section 3.2 of the Stockholders Agreement to buy all of the shares purportedly transferred by TPR.

13.     In exchange for, among other consideration, such right under Section 3.2 of the Stockholders Agreement to purchase the Trans-Resources shares purportedly transferred in 2004 from TPR to Arie Genger and the Orly Genger 1993 Trust, Investors, Glenclova, Equity I and Equity II obtained the contractual right to purchase those shares pursuant to a Letter Agreement dated August 22, 2008, between TPR and those entities.

14.     If Investors, Glenclova, Equity I and Equity II exercise their rights under the Letter Agreement, they may purchase the shares improperly transferred in 2004 to Arie Genger and the Orly Genger 1993 Trust per the terms of the Letter Agreement, will own such shares, and may vote those shares (which are not subject to any proxy of any kind in favor of Arie Genger).

15.     Trans-Resources need not recognize Arie Genger or the Orly Genger 1993 Trust as stockholders.

16.     Defendant Arie Genger is ordered to pay reasonable attorneys' fees and expenses to Plaintiffs, in accordance with this Court's December 9, 2009 and February 3, 2010 Opinions, in the amount of $3,200,000, based on Mr. Genger's agreement that he will not challenge the reasonableness of the amount of such fee award (whether on appeal or otherwise), except on the ground that it was improper to award any sanction, including attorneys' fees or expenses, for this Court's contempt finding against Mr. Genger.

17.     This Order constitutes a final judgment as to all counts of Plaintiffs' Amended and Verified Complaint Under 8 *Del. C.* § 225, dated March 11, 2009.

3

18.    This Order constitutes a final judgment as to Arie Genger's Counterclaim dated March 30, 2009.

19.    Unless and until otherwise ordered by the Delaware Court of Chancery or the Supreme Court of the State of Delaware, or agreed to in writing by the parties to the above action, Arie Genger and his agents, servants, employees, attorneys, advisors and all persons acting in concert or participation with any of them (including but not limited to Orly Genger and the Orly Genger 1993 Trust to the extent they are so acting), and each of their successors and assigns, shall not, during the pendency of any appeal from this Court's Opinions and Orders in this action, commence or prosecute any legal proceeding (other than this action and any appeal arising therefrom) in any state court constituting a collateral attack on, attempt to prevent implementation of, or relitigation of, any of the Court's holdings set out in paragraphs 2 through 16 (inclusive) of this Final Judgment Order; provided, however, that (x) the foregoing shall not limit the ability of any of the individuals or entities named herein to: (1) commence litigation or to assert added claims or counterclaims in existing litigation so as to comply with any statute of limitations or other doctrine that would subsequently bar such claim, so long as the person making such filing shall contemporaneously apply for a stay of such litigation or claim for the duration of the pendency of this appeal, or (2) make any necessary filings in litigation already filed or commenced against them, so long as they contemporaneously apply for a stay of that proceeding for the duration of the pendency of this appeal; and (y) Arie Genger shall have the right to seek an order from a court of competent jurisdiction requiring TPR Investment Associates, Inc. and its officers and directors to place in escrow the proceeds of sale of the shares of TRI referenced in paragraph 14 of this Order.  For the avoidance of doubt, nothing in this Order shall prohibit the commencement or prosecution of claims against TPR Investment

4

Associates, Inc. and its officers and directors and other relevant parties for fiduciary or other

misconduct, so long as, during the pendency of this appeal, the persons commencing that action

do not seek therein to collaterally attack, prevent the implementation of, or relitigate this Court's

holdings described in paragraphs 2 through 16 above.

20.    The Second Amended Status Quo Order entered by the Court on

December 30, 2008 is hereby terminated and dissolved.


_____
The Honorable Leo E. Strine, Jr.

This document constitutes a ruling of the court and should be treated as such.

|  |  |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Leo E Strine |
| **File & Serve Transaction ID:** | 32722444 |
| **Current Date:** | Aug 18, 2010 |
| **Case Number:** | 3994-VCS |
| **Case Name:** | CLOSED 8/17/2010 CONF ORDER T R Investors LLC vs Arie Genger |
| **Court Authorizer:** | Leo E Strine |

/s/ **Judge Leo E Strine**

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
------------------------------------------------------------------X
In the Matter of the Application of                                    **AFFIDAVIT OF SERVICE**
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the                              File No. 0017/2008
Orly Genger 1993 Trust pursuant to SCPA §711(11)
------------------------------------------------------------------X

STATE OF NEW YORK        )
                         : ss.:
COUNTY OF NEW YORK       )

       David Bartky, being duly sworn, deposes and says: I am over the age of 18 years

and not a party to this action.  On the 2nd day of November, 2010, I served the annexed

NOTICE OF MOTION TO DISMISS on Petitioner by sending same via pre-paid first

class U.S. mail to:

                   Judith E. Siegel-Baum, Esq.
                   Stephanie Lehman, Esq.
                   Cozen O'Connor PC
                   250 Park Avenue
                   New York, NY 10017,

her counsel of record.

                                                        _____
                                                        David Bartky

Sworn to before me this
2nd day of November, 2010.

_____
Notary Public

**ROBERT A. MEISTER**
Notary Public, State of New York
No. 31-02ME2653350
Qualified in New York County
Commission Expires March 30, 2011

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------- X

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)

**AFFIDAVIT IN OPPOSITION TO
RESPONDENT'S MOTION TO
DISMISS**

**FILE NO.: 0017/2008**

--------------------------------- X

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF New York         )

ORLY GENGER, being duly sworn deposes and says:

1.    I am Petitioner in the above-captioned matter and familiar with all the facts
recited herein. I submit this affidavit in opposition to my mother's, Respondent's, Motion to
Dismiss my Second Amended Verified Petition dated September 21, 2010 (the "Second
Amended Petition") (i) seeking removal of Respondent as Trustee of the Orly Genger 1993 Trust
(the "Orly Trust"); (ii) surcharging Respondent in the amount of the loss of the value of my
interest in TPR Investment Associates Inc. ("TPR"), a closely held family-owned operation and
(iii) awarding me costs and attorneys' fees. A copy of the Second Amended Petition and the
exhibits are annexed as Exhibit A. My mother, prior to filing a Verified Answer, is seeking
dismissal of the Second Amended Petition claiming I allegedly failed to state a cause of action
upon which relief can be granted.

2.    My lawyers have advised me that Respondent's papers are insufficient to support
a Motion to Dismiss. The Second Amended Petition sets forth facts supporting my position that
my mother must be immediately removed because she breached her fiduciary duties to the Orly
Trust. Indeed, this Court previously recognized that there are significant discrepancies in the

NYC_MIDTOWN\1604291\1 252931.000              - 1 -

factual pleadings of the Parties. On July 1, 2009, at a hearing before Acting Surrogate Troy K. Webber at which counsel and I were present, but at which my mother was notably absent, the Court recognized that factual issues were in dispute between the parties, that there was an immediate need for discovery and ultimately a trial of the issues presented in the my initial Petition dated June 22, 2009 (the "Orly Petition"). (A copy of the court transcript is annexed as Exhibit B. See, page 20, lines 19-21; page 28, lines 21-23; page 29, lines 3-7). As a result, a Motion to Dismiss is procedurally incorrect.

3.      To date, no discovery has taken place because the Court, in the interest of judicial economy, opined that no action would be taken on the Orly Petition until Justice Paul G. Feinman rendered a decision in a New York County, Supreme Court decision, Index Number 109749/2009, another matter involving the same parties.   In this Supreme Court action, Judge Feinman held that claims against Respondent for fraud were not ripe for dismissal because there were issue of fact that made discovery necessary.  (A copy of Judge Feinman's decision is annexed as Exhibit C.)

4.      While discovery was stayed, I learned that actions were taken by my mother which directly affect the Orly Trust and that the Orly Trust's TRI shares were the subject matter of a Delaware Chancery decision now on appeal.  My mother, in the underlying dismissal motion, has taken the same positions that Mr. Meister took at the July 1, 2009 court appearance which resulted in the Court's recognition that further discovery is required.  My mother also incorrectly relies on the newly discovered evidence and the Delaware Chancery Court decision in support of her Motion to Dismiss.

5.      Moreover, the Motion to Dismiss should be denied because my mother failed to submit sworn testimony supporting her Motion.  The application is supported solely by the Affirmation of Mr. Meister.  Mr. Meister lacks any personal knowledge of the facts and

circumstances surrounding my application for removal. Only my mother or another party with first hand knowledge of pertinent events can provide support for her Motion to Dismiss.

6.      My responsive papers prove that Respondent in the Motion to Dismiss fails to provide one scintilla of evidence refuting the allegations set forth in my Second Amended Petition. Therefore, Respondent's Motion to Dismiss should be denied.

## DISPUTED FACTS BETWEEN THE PARTIES COMPEL
## THE DISMISSAL OF RESPONDENT'S MOTION[1]

### A.      Respondent Wrongfully Hides Behind The Court's Order Directing Her Not To Act

7.      The Court previously directed Respondent not to take any actions as Trustee while litigation in this matter is on-going. Respondent wrongfully interpreted this directive as a gag order. Notwithstanding this directive, if Respondent wanted to protect the Orly Trust's interests in either TPR or TRI she could have, as part of her fiduciary duties, advised the Court as to Sagi's actions and sought an amendment from the Court directing her to take protective measures. Instead, Respondent conveniently hid behind the Court's directives and actively conspired with Sagi to strip the Orly Trust of assets.

### B.      Respondent's Claim That The Orly Trust Did Not Have An Interest In TPR Is False

8.      D & K, a family-owned limited partnership in which the Orly Trust has a 48% interest, purchased 240 shares of common stock (constituting 49% of the outstanding shares) in TPR for $10,200,000. The purchase price of the TPR shares was satisfied as follows: (a) the Orly Trust and the Sagi Trust each paid $600,000; (b) Respondent paid $50,000; and (c) Respondent, as general partner of D & K, executed a recourse $8,950,000 Promissory Note dated December 21, 1993 (the "Note") to satisfy the balance. (A copy of the Note is annexed to the Second Amended Petition which is annexed as Exhibit A). Therefore, as a result of D & K's

---

[1] In order to avoid repetitive submissions, the Court is respectfully referred to the pertinent procedural history and facts outlined in the Second Amended Petition attached as Exhibit A.

purchase of TPR stock, the Orly Trust and the Sagi Trust each acquired a 23.52% indirect interest in TPR and Respondent acquired a 1.96% indirect interest in TPR. The Orly Trust had an indirect interest in TPR and thus my mother, as my Trustee, has a fiduciary duty to manage the asset. Accordingly, Respondent's argument is erroneous.

**C.    Respondent's Claim That The Factual Basis For The Second Amended Petition Was Premised Upon Events That Occurred Prior To Respondent's Appointment As Trustee Is False**

9.    Contrary to the position taken by Respondent, the Second Amended Petition is based upon verified facts, including documentary evidence provided to my current counsel by Mr. Meister in June 2009 not upon facts set forth in my February 2008 application seeking to have my mother removed as Trustee (the "February 2008 Removal Application"). In February 2008, I filed the February 2008 Removal Application because I was, and am fearful that my mother would not protect my interests while serving as Trustee because of my mother's ongoing animosity towards her ex-husband, my father, and her collusion with my brother, Sagi. In response to the February 2008 Removal Application, Surrogate Roth held that my motion was premature, in that my mother should be given an opportunity to act as Trustee. Instead, Surrogate Roth suggested that I commence an SCPA §2201 proceeding to obtain evidence necessary to support a future application to have my mother removed.

10.    Taking Surrogate Roth's suggestion, my attorneys sent Respondent a letter dated May 14, 2009 seeking production of documents related to the Orly Trust's direct and indirect interest in various assets including D & K, D & K GP, TPR and TRI. On June 1, 2009, Mr. Meister informed my attorneys that the Orly Trust no longer owned any interest in TPR. I was advised that TPR purportedly foreclosed on the Note and sold the pledged shares back to TPR for $2,200,000, leaving approximately $8,800,000 unpaid and guaranteed by the Orly Trust and the Sagi Trust. Mr. Meister provided my counsel with the following documents, all of which are

clearly dated after the appointment of my mother as Trustee: (a) a memo dated August 31, 2008, from Sagi, the CEO of TPR, to Sagi, the general manager of D & K, demanding repayment of the Note and threatening the sale of 240 TPR shares pledged as collateral (a copy of the memo is attached to the Second Amended Petition which is annexed as Exhibit A); (b) a memo from TPR to D & K announcing the time and date for the public auction of the TPR shares (a copy of the memo is attached to the Second Amended Petition which is annexed as Exhibit A); and (c) a certificate of sale dated February 27, 2009 evidencing the foreclosure on the Note and the sale of the pledged shares back to TPR for $2,200,000 (a copy of the certificate of sale is attached to the Second Amended Petition which is annexed as Exhibit A).

11. The basis for my Second Amended Petition is that Respondent, in her capacity as Trustee of the Orly Trust, owes me an undiluted fiduciary duty to monitor, manage, maintain and protect the Orly Trust's assets, including the Orly Trust's ownership interest in TPR from challenge or diminution in value. Respondent breached her fiduciary duties to me by: (a) failing to inform me or this Court of TPR's foreclosure on the Note and the sale of the pledged shares, which completely divested the Orly Trust of its 23.52% interest in TPR; (b) failing to take any action to protect or defend the Orly Trust's interest in TPR; (c) failing to apprise me of all activity concerning the Orly Trust and to ensure that I received proper notification of the default and auction; and (d) failing to take any actions to protect the Orly Trust's interest in TRI.

12. Respondent, like the entire Genger family, knew the Note was never intended to be enforced. It was always my parents intention that I and my brother Sagi would receive equal distributions of the family's wealth. In keeping with my parents' estate planning goals every member of the Genger family understood and agreed before the time of their execution that none of them would ever enforce the Note because any attempt to enforce the Note would destroy the Genger family estate planning. Consistent with this knowledge, on February 14, 2007,

Respondent admitted in a sworn statement to the Court that no one was ever supposed to foreclose on the Note. (Respondent's sworn statement is annexed to the Second Amended Petition which is annexed as Exhibit A). Additionally during a post-judgment arbitration proceeding concerning the Note in September 2007, Respondent, Sagi and the Orly Trust's then Trustee David Parnes each testified and argued that the Note should not be enforced and that TPR and Mr. Parnes had taken steps to insure that the Note would not be collected. Upon receiving notice of Sagi's attempts to foreclose upon the Note, Respondent should have immediately taken action to preserve the sanctity of her (and my father's) estate planning goals or sought guidance from this Court.

**D.    Respondent's Counsel, Who Has No Personal Knowledge Of The Facts, Incorrectly Concluded That Respondent Had No Control Over The Sale of The Orly Trust's Interest in TPR**

13.     As discussed *supra*, evidence exists which demonstrates that Respondent had knowledge, as early as August 31, 2008, during her tenure as Trustee of the Orly Trust, of Sagi's plan to foreclose on the Note.

14.     In addition as part of my parents' divorce, Respondent received a controlling block of TPR shares. On October 30, 2004, Respondent entered into a shareholder agreement with TPR concerning the future management of the company. Respondent named herself as one of two TPR board members. Sagi, using managerial control afforded to him by the TPR shareholder agreement, awarded himself the other board seat. Although Respondent has intimated that she has divested herself of her controlling interest in TPR, (although no documentary proof has been supplied), she has never offered any sworn testimony or documentary proof indicating that she relinquished her seat on TPR's board of directors. Clearly, this is an issue that needs to be explored through discovery. Upon learning of the actions to be taken by Sagi, Respondent should have immediately objected and taken action to

prevent the declaration of default or subsequent sale. At all relevant times Respondent knew my address and other contact information but never notified me of the impending foreclosure and auction.

**E.    Respondent's Counsel, Who Has No Personal Knowledge of The Underlying Facts, Incorrectly Concluded That Respondent Was Not A Party To the Sagi Trusts' Sale Of TRI Stock**

15.    In paragraph 6 of Mr. Mesiter's Affirmation (which is undated), he states that because Respondent was never appointed Trustee of the Sagi Trust and the Orly Trust was not a party to the Sagi Trust's sale of TRI shares there is no basis in law for removing or surcharging Respondent. In essence, Mr. Meister is alleging that there would have been no way for Respondent to have knowledge of the Sagi Trust's sale of the TRI shares. However, because Mr. Meister's affirmation lacks factual support from Respondent or any other party with first hand knowledge. Respondent's baseless motion cannot dispute the facts in my Second Amended Petition.

16.    What Mr. Meister fails to recognize is that my mother breached her fiduciary duties by failing to take any action to protect my interest in TRI. Immediately upon learning that the Sagi Trust sold its interest in TRI, my mother should have taken measures to preserve the Orly Trust's interest in a majority block of TRI shares. My mother could have moved to reverse the sale or sought to force the Sagi Trust to give the proceeds of sale of TRI stock to TPR. Instead, my mother has taken no action because she does not want to muddy the waters with Sagi—her son, with whom she is conspiring to strip the Orly Trust of its assets.

17.    Mr. Meister also fails to recognize that Respondent's involvement in the creation and negotiation of both the Amended and Restated Limited Partnership Agreement of D & K Limited Partnership (the "D & K Agreement") and the "Meeting of Partners of D & K LP— January 31, 2009 & Agreement" (the "Meeting Agreement") directly impacted the Orly Trust's

interest in the TRI Shares. (The D& K Agreement and the Meeting Agreement are annexed as exhibits to the Second Amended Petition annexed as Exhibit A.) I was unaware of the existence of either agreement until Respondent and my brother filed motions in related Supreme Court matters which was after I filed Orly's Petition. I included the factual circumstances relating to each agreement in the Second Amended Petition.

18.     On November 23, 2007, Leah Fang, Sagi's sister-in-law, then the sole Trustee of the Orly Trust, and Sagi, acting in his capacity as manager of D & K GP, executed the D & K Agreement. Among other things, the D & K Agreement purported to grant D & K GP authority to "mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber [the Orly Trust's TRI Shares] for the benefit of [D & K] or that of third parties, in connection with the Note." (See Exhibit A to the Second Amended Petition). By its terms, the D & K Agreement does not require D & K GP (i.e., Sagi) to give notice to anyone, including Orly or the Orly Trust, of its decision to encumber the Orly Trust's TRI Shares in any way.

19.     The Meeting Agreement purportedly grants D & K GP (i.e., Sagi) authority to encumber the Orly Trust's TRI Shares without notice to either me or the Orly Trust. (A copy of the Meeting Agreement is annexed as Exhibit A to the Second Amended Petition.) The Meeting Agreement also purports to indemnify and release Respondent, my brother, D & K GP and TPR from any claims by the Orly Trust while excluding my father and others perceived enemies of Respondent from indemnity and release.

20.     Both of the D & K Agreement and the Meeting Agreement were negotiated and executed without ever informing me. Neither agreement is supported by any consideration or benefit to the Orly Trust. Respondent executed the Meeting Agreement weeks after my attorneys sent her attorney a letter demanding that she not sell the Orly Trust's TRI shares. Moreover, Respondent never informed me of the existence of either agreement, even though I

made repeated requests for information about the Orly Trust and its assets during Respondent's tenure as sole Trustee, and never tried to amend the D & K Agreement to protect my trust's interests in TRI. Respondent has given sworn statements to the Court regarding the Orly Trust and has never disclosed the existence of either the D& K Agreement or the Meeting Agreement. Respondent's breach of fiduciary duty resulted in Sagi having the purported power and ability with Respondent's consent and knowledge to encumber, transfer or sell the Orly Trust's TRI Shares.   Respondent's state of mind at the time she entered into the Meeting Agreement is further evidence of the breach of fiduciary duty and at the very least demonstrates that further discovery into Respondent's actions is necessary.

**F.**   **The Delaware Chancery Decision Is Not Sufficient to Defeat The Second Amended Petition**

21.     On August 18, 2010, Vice Chancellor Leo E. Strine, Jr. of Delaware Chancery Court Civil Action Number 3994-VCS issued a Final Judgment Order in <u>TRI Investors, et. al. vs. Arie Genger</u>, in which neither the Orly Trust, Respondent as trustee nor I was a party. The Order ruled that the Orly Trust is not the record or beneficial owner of any TRI Shares. To the extent an appearance was appropriate, Respondent failed to file a Notice of Appeal on behalf of the Orly Trust to protect the trust's assets. I have now been forced to retain my own Delaware counsel to advise and protect me and the Orly Trust upon the issuance of a final order. Respondent's failure to act may have depleted a major asset of the Orly Trust, which is a severe breach of fiduciary duty.

22.     Respondent's state of mind is the issue before this Court--not Judge Strine's Order. Only weeks after receiving my letter instructing her to protect the Orly Trust's interests in the TRI Shares, Respondent executed the Meeting Agreement which placed the TRI Shares in immediate jeopardy. The fact that Respondent entered into the Meeting Agreement, thereby

encumbering the Orly Trust's TRI Shares without notice to either me or the Orly Trust, is *printa facie* evidence supporting the Second Amended Petition. Irrespective of what Judge Strine determined, it is clear that Respondent entered into the Meeting Agreement because she believed that the Orly Trust was the beneficial owner of TRI Shares. What I do not understand is why now, if Respondent is relying on the Strine decision in support of her Motion to Dismiss, she does not voluntarily remove herself as Trustee if she is certain that the Orly Trust is not the beneficial owner of any TRI shares (or any TPR shares if she believes that the foreclosure sale at issue was valid).

## CONCLUSION

23.     Respondent's Motion to Dismiss must be denied in its entirety because (a) the factual allegations set forth in the Petitioner establish a cause of action for Respondent's removal as my Trustee; (b) there are questions of fact which need to be clarified through discovery and answered at trial and (c) the sole basis for Respondent's application is statements made by Respondent's counsel of which he has no personal knowledge. Accordingly, Respondent has failed to properly defend her application.

WHEREFORE, based upon the allegations contained herein, Petitioner requests that Respondent's Motion to Dismiss be denied and this Court provide the following relief:

(a)     Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any (1) offer to purchase the Orly Trust's 19.3% interest in TRI within ten (10) days of receiving such offer; and (2) act by Respondent, her agents, and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell, or otherwise alter the Orly Trust's interest at least 10 days prior to such act in accordance with Judge Troy K. Webber's Order dated July 1, 2009 affirmed on August 18,

2009, and stipulated to by the parties' respective counsel. (Annexed to the Second Amended Petition);

(b)     Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being made in accordance with the Stipulation signed by the Parties and their counsel dated September 8, 2010 (Annexed to the Second Amended Petition);

(c)     remove Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting, dissipating and looting the assets of the Orly Trust, imprudently managing and injuring the property committed to her charge; for concocting a scheme with Sagi Genger to strip the Orly Trust of its assets:  (a) an indirect interest in 49% of defendant TPR Investment Associates, Inc. ("TPR"), a closely held family corporation; and (b) 1,102.80 shares of common stock of Trans-Resources, Inc. ("TRI") (the "TRI Shares"), another closely held corporation; for allowing a foreclosure upon the Orly Trust's indirect 49% interest in TPR pursuant to a promissory note which, by mutual understanding and agreement between the Genger family members and TPR was never to be collected and did nothing to preserve Orly's rights or interest at the foreclosure sale; for colluding with defendants Sagi Genger and D&K GP LLC ("D&K GP") to enter into various agreements that would allow D&K GP to "mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber [the Orly Trust's TRI Shares]" in connection with the above-mentioned promissory note without giving any notice to Orly, the Orly Trust's beneficiary; and for failing to protect the Orly Trust

by not appearing or appealing the Final Judgment Order of V.C. Leo E. Strine, Jr., Delaware

Chancery Court Civil Action Number 3997-VCS;

        (d)    surcharging Respondent by an amount of the loss of the value of Orly's

interest in TPR and TRI, as determined by the Court and awarding Petitioner her costs and

attorneys' fees;

        (e)    appointing Michael D. Grohman, Esq., as successor trustee;

        (f)    waiving any requirement that Petitioner post an undertaking; and

        (g)    granting Petitioner any other relief it deems necessary and proper.

Dated:  New York, New York
       November 16, 2010

ORLY GENGER
Petitioner

COZEN O'CONNOR

By:

Judith E. Siegel-Baum, Esq.
Attorney for Petitioner
277 Park Avenue
New York, New York 10172
212-883-4900

## VERIFICATION

STATE OF NEW YORK )               )
        *KINGS*                   )ss.:
COUNTY OF ~~NEW YORK~~ )          )


    The undersigned, the Petitioner named in the foregoing petition, being duly sworn, says: I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and believe, and as to those matters I believe it to be true.


_____
Signature of Petitioner


ORLY GENGER
_____
Print Name


Sworn to before me this
16th day of November, 2010.

_____
Notary Public
Commission Expires:
(Affix Notary Stamp or Seal)

ANN MEADE
Notary Public, State of New York
No. 01ME4783921
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 2009/13

2

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)

**ATTORNEY AFFIDAVIT IN
OPPOSITION TO
RESPONDENT'S MOTION TO
DISMISS**

**FILE NO.: 0017/2008**


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK    )
                     )ss:
COUNTY OF NEW YORK   )

JUDITH E. SIEGEL-BAUM, deposes and says:

1.       I am a member of the law firm Cozen O'Connor, attorneys for Petitioner, Orly

Genger, and am admitted to practice in the state of New York. I am familiar with the facts

recited herein and submit this Affidavit in opposition to Respondent's, Dalia Genger, motion to

dismiss the Second Amended Verified Petition sworn to on September 21, 2010. (A copy of the

"Second Amended Petition" is annexed as Exhibit A). Significantly, Respondent's motion is

based on nothing more than a six (6) page Notice of Motion and hearsay Affirmation of Robert

A. Meister, Esq. in which conclusions are drawn with no supporting Affidavit by Respondent.

Orly Genger's Affidavit, sworn to on November 15, 2010 and this Affidavit will demonstrate

that Respondent's application is fatally flawed and should be denied in its entirety.

**Procedural History**

2.       On June 22, 2009, Petitioner filed the initial petition ("Orly's Petition") seeking a

temporary restraining order and removal of Respondent as the trustee of the Orly Genger 1993

Trust (the "Orly Trust") pursuant to SCPA 711(11) for breaching her fiduciary duties, wasting

and dissipating the assets of the Orly Trust, and improvidently managing and injuring the
property committed to her charge as a result of her failure to act to preserve trust assets
consisting of various family controlled enterprises, and her collusion in the systematic looting of
those assets by Petitioner's brother, Sagi Genger ("Sagi").

3.      On July 1, 2009, Acting Surrogate Troy K. Webber held a special hearing to
determine whether the Order to Show Cause should be entertained and the temporary restraining
order granted ("July 1 Order"). During oral argument the parties and their respective counsel
agreed that certain notice requirements and restrictions relating to the sale of TRI shares pending
a final determination were appropriate which Acting Surrogate Webber wrote in the Order. (A
copy of the July 1 Order is annexed as Exhibit D).

4.      During oral argument, Mr. Meister inaccurately asserted, in direct contravention
to the allegations set forth in Orly's Petition, that (a) the Orly Trust had no interest in TPR and as
a result Respondent could not have breached her fiduciary duty, (b) Respondent, as Trustee,
could not have prevented the dimunition of the Orly Trust's interest in TPR and (c) Respondent,
as Trustee, had no standing to prevent the sale of the Sagi Genger 1993 Trust's (the "Sagi Trust")
19.43% interest in TRI to the Trump Group. Neither Mr. Meister nor Respondent (since she
was not present) offered any sworn testimony or documentary evidence either supporting their
allegations or in response to Orly's Petition.

5.      Acting Surrogate Webber recognized that there were factual issues in dispute
between the parties with regard to the Orly Trust's ownership interest in TPR and stated "it's
something that has to be litigated…[h]owever, we're not going to litigate it now, because I don't
know. And there's nothing before me that tells me whether it is or is not." (A copy of the court

2

transcript is attached as <u>Exhibit B</u>. See, page 28, lines 21-23 and page 29, lines 5-7). The Court

recognized the need for discovery:

> "Ms. Siegel-Baum: I think we have to get my removal proceeding;
> I think I need some discovery done.
>
> The Court: Most definitely. Most definitely. You move for that
> in the order to show cause." (See <u>Exhibit B</u>, page 20, lines 18-21).

Moreover, the Court recognized the need for a hearing:

> "Ms. Siegel-Baum: But the thing is I don't know if she wants a
> hearing; I have to go through a hearing.
>
> The Court: Yes." (See <u>Exhibit B</u>, page 21, lines 14-17).

6.      Because Petitioner's and Respondent's positions were in direct conflict, Acting

Surrogate Webber set dates for responsive pleadings to be filed and a discovery schedule

requiring discovery notices to be served by August 20, 2009. (See <u>Exhibit B</u>, page 30, lines 14-

16). However, instead of filing a Verified Answer to Orly's Petition, Respondent filed a motion

to dismiss, on the grounds that Orly failed to join the Sagi Trust as an interested party and failed

to state a cause of action upon which relief could be granted. Petitioner's counsel filed papers in

opposition and appeared before Acting Surrogate Webber on August 5, 2009.

7.      On August 14, 2009, prior to any decision by this Court, Orly filed a

Supplemental Order to Show Cause requesting the same relief as granted in the July 1 Order and

an attorney affirmation amending Orly's Petition to include the Sagi Trust as an interested party,

which was signed by Acting Surrogate Webber on August 18, 2009 and served upon David

Parnes, Esquire, as Trustee of the Sagi Trust and Respondent's counsel on August 19, 2009, i.e.

the First Amended Petition. The Court confirmed the July 1 Order upon signing the August 18,

3

2009 Order with a return date of September 8, 2009. A copy of the confirmed Order is annexed
as Exhibit E.

8.       A determination was made by the Surrogate's Court in the interest of judicial
economy that no action would be taken on Orly's Petition until Justice Paul G. Feinman rendered
a decision on motions to dismiss then pending in a New York County Supreme Court decision,
Index Number 109749/2009, a case involving many of the same allegations at issue here in
which Respondent is a defendant. In that Supreme Court Action, Respondent moved to dismiss
based on the same arguments she rehashes here. The decision was rendered on June 28, 2010.
Judge Feinman denied most of the motion to dismiss, holding that valid causes of action had
been stated, and that issues of fact existed. A copy of Judge Feinman's decision is attached as
Exhibit C.

9.       On July 16, 2010, Petitioner filed an Order to Show Cause to modify the July 1
Order confirmed on August 18, 2009, requesting additional restraints for the TRI Shares held by
the Orly Trust. Surrogate Anderson signed the Order on July 28, 2010. A copy of the Order is
attached as Exhibit F. Counsel for both parties appeared before Surrogate Anderson on the
return date, conferenced the matter and (a) agreed to withdraw the July 16, 2010 Order to Show
Cause and responsive pleadings, (b) agreed to Petitioner serving a "second" Second Amended
Petition, and (3) agreed to have the parties stipulate to the notice requirement and restrictions in
the orders signed by Acting Surrogate Webber and Surrogate Anderson, pending final
determination of this proceeding. Copies of the Stipulations are attached as Exhibit G.

10.      Respondent filed a Second Amended Petition because additional documents and
facts evidencing Dalia's breach of fiduciary duty as Trustee of the Orly Trust were obtained
subsequent to the date Orly's Petition was filed. These documents and facts further demonstrate

4

a deliberate scheme between Dalia and Sagi to deplete the Orly Trust's assets which require her

removal as Trustee. Aside from the additional facts and documents described below, the facts

pleaded, and the relief sought, in Second Amended Petition and Orly's Petition are identical.

**Additional Facts and Documents**

            (i)     After the action was commenced, Petitioner learned from filings

made in related New York County Supreme Court matters that two agreements existed which

purportedly encumbered the Orly Trust's interest in its TRI Shares. The first agreement, the

Amended and Restated Limiting Partnership Agreement of D&K Limited Partnership (the

"D&K Agreement") executed on November 23, 2007, purportedly grants D&K GP (an entity

formed by Respondent and Sagi and which was the general partner of D&K) the authority to,

among other things, encumber the Orly Trust's interest in TRI without giving Orly or the Orly

Trust notice. Respondent never disclosed the existence of this document to Orly after she

became her trustee. The second document, the Meeting of Partners of D&K LP – January 31,

2009 and Agreement (the "Meeting Agreement"), also purportedly grants D&K GP with

authority to encumber the Orly Trust's shares in TRI without any notice on input from the

Trustee or the beneficiary. Respondent signed the Meeting Agreement while serving as Trustee

of the Orly Trust. Both of these documents endanger, or were intended to endanger, the Orly

Trust's assets and are further indicia of Respondent's breaches of fiduciary duty. (The D & K

Agreement and the Meeting Agreement are each annexed to the Second Amended Petition

annexed as Exhibit A).

            (ii)    On August 18, 2010, Vice Chancellor Leo E. Strine, Jr. of

5

Delaware Chancery Court Civil Action Number 3994-VCS issued a Final Judgment Order in

TRI Investors, et. al. vs. Arie Genger, which *inter alia* held that the Orly Trust is not the record

or beneficial owner of any TRI Shares. Respondent as Trustee of the Orly Trust, to the extent an

appearance was appropriate, failed to file a Notice of Appeal on behalf of the Orly Trust to

protect the assets of the trust. Orly was forced to retain her own Delaware counsel to advise and

protect her and the Orly Trust once a final judgment order was issued. This failure to act

demonstrates an even more severe breach of fiduciary duty by Respondent.

11.    Respondent, instead of filing a Verified Answer, and notwithstanding Acting

Surrogate Webber's recognition for discovery, served a Motion to Dismiss the Second Amended

Petition. The Motion to Dismiss is meritless; its only real purpose is to delay.

## RESPONDENT'S MOTION TO DISMISS MUST BE DENIED

### A.    Because Questions of Fact Exist Respondent's Motion to Dismiss Should Be Denied

12.    It is well-settled law that on a motion to dismiss the court must accept each and

every allegation set forth in the pleadings as true without expressing any opinion as to whether

the moving party will be able to establish the truth of these allegations. *219 Broadway Corp. v.

Alexander's Inc.*, 46 N.Y.2d 506 (1979). See also, *Khan v. Newsweek, Inc.*, 160 A.D.2d 425, 554

N.Y.S.2d 119 (1st Dep't. 1990); *Carbillano v. Ross*, 108 A.D.2d 776, 485 N.Y.S.2d 110 (2d

Dept. 1985). The function of a court on a motion to dismiss is quite narrow. *Ippolito v. Lennon*,

150 A.D.2d 300, 542 N.Y.S.2d 3 (1st Dep't. 1989). The court's inquiry is limited to

ascertaining whether the pleadings state a cause of action, not whether there is evidentiary

support for the pleadings. *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268 (1977)("if from [the

complaint's] four corners factual allegations are discerned which taken together manifest any

cause of action cognizable at law a motion for dismissal will fail."). See also, *EBC I, Inc. v. Goldman Sachs & Co.,* 5 N.Y.3d 11 (2005); *World Wide Adjustment Bureau v. Edward S. Gordon Co.*, 111 A.D.2d 98, 489 N.Y.S.2d 231 (1st Dep't 1985). Thus, the court must accept all of the allegations set forth in the pleadings as true, liberally construe the petition and accord the moving party the benefit of every possible favorable inference. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144 (2002), *Leon v. Martinez,* 84 N.Y.2d 83 (1994).

13.    The Second Amended Petition makes a *prima facie* case for removal of Respondent pursuant to SCPA § 711(11). The Second Amended Petition is supported by evidence including both sworn testimony and documentary proof establishing a cause of action. The Second Amended Petition contains numerous facts supporting Respondent's removal as Trustee of the Orly Trust which include without limitation the fact that:

(i)    Respondent deliberately and intentionally failed to notify Petitioner, or the Court, of the foreclosure by TPR of the Orly Trust's indirect interest in TPR, which sale diluted the Orly Trust of its entire interest in TPR.

(ii)    Respondent deliberately and intentionally failed to notify Petitioner, or the Court, of the sale by the Sagi Trust of its interest in TRI, which sale diluted the Orly Trust of ownership of a majority block of stock.

(iii)    Respondent failed to notify Petitioner, or the Court, of the D & K Agreement which purported to grant D & K GP authority to encumber the Orly Trust's TRI Shares. Respondent also failed to any actions to amend the D & K Agreement.

(iv)    Respondent executed the Meeting Agreement, while Trustee of the Orly Trust, even though (a) Petitioner, two weeks prior to her execution of the agreement, asked her not to sell the Orly Trust's interest in TRI and (b) the agreement grants D & K

7

GP (i.e., Sagi) authority to encumber the Orly Trust's TRI Shares without notice to either Petitioner or the Orly Trust.

(v)    Respondent knew, but failed to notify Petitioner, or the Court, that Sagi: (a) was not making payments on the Note as manager of D & K GP; (b) intended to and eventually purported to declare a default under the Note on behalf of TPR; (c) sent the sale notice supposedly notifying D & K that its shares of TPR stock were to be auctioned as a result of the purported default under the Note; and (d) conducted a sham "auction" where Sagi (on behalf of TPR) bought the pledged shares at a significant discount to their actual value.

14.    Petitioner has set forth in the Second Amended Petition sufficient facts to have Respondent removed as Trustee of the Orly Trust because of her patent breach of her fiduciary duties and divided loyalties. If the Court finds that Petitioner is entitled to relief upon any reasonable view of these facts the inquiry is complete, the Second Amended Petition is legally sufficient and Respondent's Motion to Dismiss must be denied. *219 Broadway Corp. v. Alexander's Inc.*, 46 N.Y.2d 506 (1979).

15.    Respondent seeks dismissal of the Second Amended Petition based upon a novel contention that because this Court prevented her from fulfilling her fiduciary duties by directing her to take "no action" she cannot now be removed as Trustee or surcharged since she did nothing wrong. This argument is absurd and should not be considered by this Court. This Court's "order" instructing Respondent to take no action to harm the Orly Trust cannot, in good faith, be interpreted as "gag" order or excuse for doing nothing, as Respondent claims. The "order" did not compel Respondent to abrogate her fiduciary duties as Trustee. Unsurprisingly, Respondent cites no legal support for her unique position.

8

16.     Even if, however, Respondent's interpretation of the Court's "order" is valid,
nothing should have prevented her, as part of her fiduciary duties, from informing the Court of
the actions taken against the Orly Trust's indirect and direct interests in TPR and TRI,
respectively, or from seeking amendment of the order.  By the time Sagi noticed the TPR sale,
he had negotiated the sale of the Sagi Trust's TRI Shares for $27,000,000.  Accordingly, at the
time Sagi notice the TPR sale, the value of TPR had been increased by $27,000,000.  Because
Respondent received notice of the TPR sale, she clearly knew that the value of TPR had been
increased by $27,000,000.  Armed with this knowledge, Respondent had a fiduciary duty to take
action to protect the Orly Trust's indirect interest in TPR and direct interest in TRI—however,
she did nothing.

17.     Moreover, the Court has already recognized the existence of issues of fact
supporting a removal proceeding.  First, it issued a discovery schedule—which schedule was
stayed for reasons of judicial economy not because the Court believed the issues of fact had been
clarified.  Second, the Court signed an Order to Show Cause dated July 1, 2009, confirmed on
August 18, 2009, with temporary restraints to protect the Orly Trust's interests in TRI.  The
Parties and Counsel subsequently, after a court conference with the Court, stipulated to
expanding the scope of the temporary restraints with regard to the Orly Trust's interest in TRI.
Accordingly, based upon the Court's prior rulings Respondent's Motion to Dismiss should be
denied.

### B.     The Motion Is Defective And Must Be Dismissed

18.     Respondent's Motion to Dismiss is insufficient to defeat the Second Amended
Petition because she failed to support her application with sworn testimony by any person,
including herself, having first-hand knowledge of the factual issues raised in the Second

9

Amended Petition. *Melbourne Med., P.C. v. Utica Mut. Ins. Co.*, 4 Misc. 3d 92, 781 N.Y.S.2d

819 (Sup. Ct. NY County 2004). Only Respondent, or another fact witness, can testify as to

what she knew, had control over or acts she took or did not take in her capacity as fiduciary of

the Orly Trust. *Id.* The only pleading attached to Respondent's Motion to Dismiss is the

affirmation of Mr. Meister, Respondent's attorney. An attorney's affirmation which is lacking in

personal knowledge of the facts cannot be considered by a court when considering factual issues.

*Lerman v. Lerman*, 106 Misc. 2d 198, 431 N.Y.S.2d 253 (Sup. Ct. Albany County 1980).

## C.   All Oral Statements Made By the Genger Family Which Predate the Note Can Be Used To Explain The Intent And Purpose Of The Note Without Violating The Statute Of Frauds

19.    Respondent claims that because the Second Amended Petition does not allege that

TPR ever renounced, in writing, its right to collect the Note, the Second Amended Petition must

be dismissed. The standard as cited by Respondent is that "[w]here an original agreement comes

within [the] provisions of the statute of frauds requiring certain agreements to be in writing, the

statute of frauds renders invalid and ineffectual a subsequent oral agreement changing the terms

of the written contract, no matter how slight the attempted variation or by whom it was made…"

61 NY Jur 2d, Frauds, Statute of, §140, at 217-218. The provision cited by Mr. Meister deals

strictly with writings that may exist which post date the Note.

20.    Regardless of whether a subsequent writing exists extinguishing the Note, the

Court of Appeals has held that "[n]either the parol evidence rule nor the Statute of Frauds forbids

proof of the actual agreement between the parties in order to…establish that…the [written

agreement] either does or does not accurately evidence a prior oral agreement. There must be a

trial and evidence taken." *Balkum v. Marino*, 299 N.Y. 590, 86 N.E.2d 109 (1949).

Accordingly, oral agreements made prior to the creation of the Note are admissible. Here,

10

Petitioner has asserted that the Genger family agreed, in advance of the actual execution of the
Note, that the Note would never be enforced. The Note was nothing more than an estate
planning tool created in an effort to assist in the transfer of wealth between generations. (See ¶¶
41-42 of Exhibit A.) However, contrary to this mutual understanding, Sagi, acting on behalf of
TPR, enforced the Note and auctioned the Orly Trust's and the Sagi Trust's interest in TPR to
satisfy the Note. Moreover, Respondent, who at the time of this sale was Trustee of the Orly
Trust, failed to take any steps to prevent the sale, despite the fact that she too understood that the
Note was never intended to be enforced. There must be a trial and evidence taken to determine
the intent of the Note in order to determine whether Respondent ultimately breached her
fiduciary duties warranting her immediate removal.[1]

21.     Judge Feinman rejected Respondent's argument, in support of her motion to
dismiss made before the Supreme Court, that oral modifications made to the Note are
unenforceable. Judge Feinman found the argument to be "unpersuasive." (See, page 21 of Judge
Feinman's decision annexed as Exhibit C.) Specifically, Judge Feinman found that

>   "a material issue of fact exists regarding the intention of the
>   Note's enforceability. While the documents speak for themselves,
>   [Petitioner] raises material questions of fact concerning the actual
>   intent behind the promissory note. She argues that the promissory
>   note's purposes was to facilitate the estate planning of Arie Genger
>   and the transfer of funds between the family members with
>   lessened tax consequences.....Given the testimonial evidence in
>   particular, there is a question of fact as to whether the promissory
>   note was intended to be an enforceable agreement, and it would be
>   premature to apply the Statute of Frauds analysis to the cause of
>   action." (See, page 21-211 of Judge Feinman's decision annexed
>   as Exhibit C.)

---

[1] There is no merger provision in the Note. The Note, standing alone, does not represent the entire
agreement between the parties. Testimony of the parties must be taken so that the intentions of the parties can be
upheld, i.e., that the Note not be enforced.

WHEREFORE, based upon the allegations contained herein, Petitioner requests that Respondent's motion to dismiss be denied and that this Court provide the following relief to Petitioner:

(a)     Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any (1) offer to purchase the Orly Trust's 19.3% interest in TRI within ten (10) days of receiving such offer; and (2) act by Respondent, her agents, and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell, or otherwise alter the Orly Trust's interest at least 10 days prior to such act in accordance with Judge Troy K. Webber's Order dated July 1, 2009 affirmed on August 18, 2009, and stipulated to by the parties' respective counsel. (Annexed to the Second Amended Petition);

(b)     Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being made in accordance with the Stipulation signed by the Parties and their counsel dated September 8, 2010 (which is annexed to the Second Amended Petition);

(c)     remove Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting, dissipating and looting the assets of the Orly Trust, imprudently managing and injuring the property committed to her charge; for concocting a scheme with Sagi Genger to strip the Orly Trust of its two most valuable assets: (a) an indirect interest in 49% of defendant TPR Investment Associates, Inc. ("TPR"), a closely held family corporation; and (b)

12

1,102.80 shares of common stock of Trans-Resources, Inc. ("TRI") (the "TRI Shares"), another

closely held corporation; for allowing a foreclosure upon the Orly Trust's indirect 49% interest

in TPR pursuant to a promissory note which, by mutual understanding and agreement between

the Genger family members and TPR was never to be collected and did nothing to preserve

Orly's rights or interest at the foreclosure sale; for colluding with defendants Sagi Genger and

D&K GP LLC ("D&K GP") to enter into various agreements that would allow D&K GP to

"mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber

[the Orly Trust's TRI Shares]" in connection with the above-mentioned promissory note without

giving any notice to Orly, the Orly Trust's beneficiary; and for failing to protect the Orly Trust

by not appearing or appealing the Final Judgment Order of V.C. Leo E. Strine, Jr., Delaware

Chancery Court Civil Action Number 3997-VCS;

        (d)    surcharging Respondent by an amount of the loss of the value of Orly's

interest in TPR and TRI, as determined by the Court and awarding Petitioner her costs and

attorneys' fees;

        (e)    appointing Michael D. Grohman, Esq., as successor trustee;

13

   (f)  waiving any requirement that Petitioner post an undertaking; and

   (g)  granting Petitioner any other relief it deems necessary and proper.


Dated: New York, New York
   November 16, 2010

                  JUDITH E. SIEGEL-BAUM
                   Attorney for the Petitioner

Sworn to before me this
16th day of November, 2010.


Notary Public
Commission Expires:
(Affix Notary Stamp or Seal)

SUZANN P. LANGAN
Notary Public, State of New York
No. 01LA5051937
Qualified in Queens County
Commission Expires November 13, 20_13_

NYC_MIDTOWN\1604453\1 252931.000

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
ORLY GENGER 1993 Trust Pursuant to
SCPA § 711 (11)

**SECOND AMENDED VERIFIED
PETITION FOR REMOVAL OF
DALIA GENGER AS TRUSTEE
AND REQUEST FOR
TEMPORARY RESTRAINING
ORDER**

**FILE NO.: 0017/2008**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("Petitioner" or "Orly"), by her attorneys Cozen O'Connor,

respectfully alleges as her Second Amended Verified Petition for Removal of Dalia Genger as

Trustee:

1.      Orly, domiciled at 1965 Broadway, Apt. 22G, New York, New York 10024, is the

current beneficiary of the Orly Genger 1993 Trust dated December 13, 1993 (the "Orly Trust")

(annexed hereto as Exhibit A).

2.      Dalia Genger, residing at 200 East 65th Street, Apt. 32W, New York, New York

10021 ("Respondent" or "Dalia"), Orly's mother, is the current sole Trustee of the Orly Trust,

and was appointed successor Trustee in January 2008.

3.      David Parnes residing at 29 Elkachi Street, Tel Aviv, Israel 69497, is the current

Trustee of the Sagi Genger 1993 Trust dated December 13, 1993 ("Sagi Trust").

4.      The Orly Trust provides for discretionary payments of income and principal to

Orly during her lifetime with the remainder to be distributed to her descendants, per stirpes. If

Orly dies leaving no descendants, the remainder of the trust property is to be distributed to the

Sagi Trust.

5.    Based upon the allegations contained herein, Petitioner requests that this Court provide the following relief:

(a)    Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any (1) offer to purchase the Orly Trust's 19.3% interest in TRI within ten (10) days of receiving such offer; and (2) act by Respondent, her agents, and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell, or otherwise alter the Orly Trust's interest at least 10 days prior to such act in accordance with Judge Troy K. Webber's Order dated July 1, 2009 affirmed on August 18, 2009, and stipulated to by the parties' respective counsel. (Annexed hereto as Exhibit B);

(b)    Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being made in accordance with the Stipulation signed by the Parties and the Stipulation withdrawing the Order to Show Cause signed July 16, 2010 by their respective counsel both dated September 8, 2010 (both Stipulations are annexed hereto as Exhibit C);

(c)    remove Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting, dissipating and looting the assets of the Orly Trust, imprudently managing and injuring the property committed to her charge; for concocting a scheme with Sagi Genger to strip the Orly Trust of its two most valuable assets: (a) an indirect interest in 49% of defendant TPR Investment Associates, Inc. ("TPR"), a closely held family corporation; and (b) 1,102.80 shares of common stock of Trans-Resources, Inc. ("TRI") (the "TRI Shares")[1], another

---

[1]    The Orly Trust's TRI Shares have become the subject matter of a Final Judgment Order in Delaware Chancery Court Civil Action Number 3994-VCS although neither Orly nor the Orly Trust nor Dalia as Orly's Trustee was a party to the proceeding. A copy of the decision is annexed hereto as Exhibit D (see paragraph 8 in which Judge Strine included in his ruling that the Orly Trust is not the record or beneficial owner of any TRI Shares although this issue was not in the Complaint and Orly and/or the Orly Trust were not parties to the proceeding). The decision is being appealed on behalf of Orly and her Trust. Dalia as her trustee has failed to file a Notice of Appeal and protect the Orly Trust assets.

closely held corporation; for allowing a foreclosure upon the Orly Trust's indirect 49% interest

in TPR pursuant to a promissory note which, by mutual understanding and agreement between

the Genger family members and TPR was never to be collected and did nothing to preserve

Orly's rights or interest at the foreclosure sale; for colluding with defendants Sagi Genger and

D&K GP LLC ("D&K GP") to enter into various agreements that would allow D&K GP to

"mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber

[the Orly Trust's TRI Shares]" in connection with the above-mentioned promissory note without

giving any notice to Orly, the Orly Trust's beneficiary; and for failing to protect the Orly Trust

by not appearing or appealing the final Judgment Order of V.C. Leo E. Strine, Jr., Delaware

Chancery Court Civil Action Number 3994-VCS;

        (d)     surcharge Respondent in the amount of the loss of the value of Orly's

interest in TPR and TRI, as determined by the Court and awarding the Petitioner costs and

attorneys' fees;

        (e)     appoint Michael D. Grohman, Esq., as successor trustee;

        (f)     waive any requirement that Petitioner post an undertaking; and

        (g)     grant Petitioner such further relief deemed necessary or proper.

    6.     To assist the Court in perceiving the severity of Respondent's conduct, the

following is an overview of the facts supporting this Petition.

## I.    OVERVIEW

7.    Arie and Dalia were married on July 23, 1967, in a ceremony held in Israel. In 2004, however, their marriage ended in divorce. Prior to 1993, while Dalia and Arie were married, Dalia and Arie formed D & K LP ("D & K"), a family-owned limited partnership whose name was shorthand for "Dalia and Kids." At the time of its formation, Dalia, the general partner, held a 4% interest, and Orly and Sagi, the limited partners, each held a 48% interest.

8.    In December 1993, Dalia and Arie also established identical irrevocable *inter vivos* trusts for the benefit of each of their children: the Orly Trust and the Sagi Trust. For estate-planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the trusts was to ensure that both children received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both trusts and remained Co-Trustees until the Genger's divorce. After the Trusts were funded, Orly and Sagi each assigned their 48% interests in D & K to their Trusts.

9.    At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) in TPR for $10,200,000. The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000, and the balance was satisfied with a recourse $8,950,000 promissory note (the "Note") (a copy of which is annexed hereto as Exhibit E). Pursuant to the Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The Note was secured by a pledge of the 240 TPR shares owned by D & K. Each of the Trusts and Dalia assumed liability on the Note in proportion to its/her direct interest in D & K. Accordingly, each of the Orly and Sagi Trusts assumed a 48% liability on the Note and acquired a 23.52% indirect interest in TPR and Dalia assumed a 4% liability on the Note and a 1.96% indirect interest in TPR. Payments were made on the Note until 1999, at which time D & K stopped making payments with the implied consent of the interested parties.

10.    At the time of the above-described transaction, Arie owned the remaining 51% of
TPR, which held investments in various securities, including TRI common stock, as well as its
interest in the Note. As of March 30, 2001, TPR held a 52.85% interest in TRI. The remaining
minority interest in TRI (47.15%) was owned by various entities controlled directly and
indirectly by Jules and Eddie Trump (the "Trump Group").

11.    On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of
Settlement as a final settlement of their divorce (the "Settlement Agreement") (annexed hereto as
Exhibit F). Pursuant to the Settlement Agreement, Dalia received, *inter alia*, Arie's 51% interest
in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to
Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust, and (iii) 19.43%
to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime
voting proxy over their TRI shares (annexed hereto as Exhibit G). Therefore, after October 29,
2004, Arie and the two Trusts held a controlling interest in TRI, and TPR no longer owned any
TRI common stock.

12.    In connection with the divorce settlement, Dalia took measures to cede
management of D & K and TPR to her son Sagi. On October 21, 2004, days before signing the
Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"), whose sole
purpose was to act as the general partner of D & K. Dalia exchanged her 4% interest in D & K
and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1% membership
interest in D & K GP for $1.00. Pursuant to D & K GP's Limited Liability Agreement (annexed
hereto as Exhibit H), Sagi was given the power to select a manager of D & K GP whose function
would be to control D & K's assets. Sagi selected himself to act as manager; thus, Dalia
effectively handed Sagi the authority to control D & K and its assets. Also, by forming D & K
GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K,
including any personal liability related to the Note. This left the Trusts solely liable on the Note.

13.    On October 30, 2004, Dalia entered into a shareholder agreement with TPR that provided for the management of TPR. Specifically, pursuant to the shareholder agreement (annexed hereto as Exhibit I), D & K, which owned 49% of TPR, was given authority to appoint one board member to the TPR board. Sagi, as the managing partner of D & K, appointed himself as a board member of TPR. As the majority owner of TPR, Dalia was named as the other board member. In addition, the shareholder agreement appointed Sagi as Chief Executive Officer ("CEO") of TPR. Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had done with D & K.

14.    Below, for the Court's convenience, is a side-by-side summary of Arie's, Dalia's, the Orly Trust's, and the Sagi Trust's interests in TPR before and after Arie's and Dalia's divorce.[2]

### TPR OWNERSHIP
### BEFORE AND AFTER DIVORCE

#### PERCENTAGE

| Person | TPR Before | TPR After |
|--------|-----------|-----------|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96% |
| Orly Trust | 23.52% | 23.52% |
| Sagi Trust | 23.52% | 23.52% |
| **TOTAL** | **100%** | **100%** |

---

[2] For the Court's convenience, the chart annexed hereto as Exhibit J provides a summary of Arie's, Dalia's, the Orly Trust's, and the Sagi Trust's ownership interests in TPR, TRI, and D & K as of October 26, 2004 – i.e., the date that Arie and Dalia executed the Settlement Agreement.

15.      In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi Trust.

16.      On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K, and TPR, assigned the Note – which then had an approximate value of $11,000,000 as a result of accrued interest – to Mr. Parnes for only $12,000. (A copy of the Memorandum dated August 2, 2006, assigning the Note is annexed hereto as Exhibit K)  The assignment stated that D & K "denied enforceability of the Note" (see Exhibit K annexed hereto). Sagi signed the assignment on behalf of both TPR, as the maker, and D & K, as the holder. Dalia was copied on the memorandum assigning the note, but neither Orly, the Orly Trust, nor the then-Trustee of the Orly Trust received copies of the memorandum. At the time of this assignment, Mr. Parnes was acting as trustee of both the Orly Trust and the Sagi Trust. Shortly after the assignment, Mr. Parnes resigned as Trustee of the Orly Trust in recognition of the inherent conflict he faced in that role.

17.      On November 23, 2007, Leah Fang, Sagi Genger's sister-in-law, then sole Trustee of both the Orly and Sagi Trusts, and Sagi Genger, acting in his capacity as manager of D&K GP, executed an "Amended and Restated Limited Partnership Agreement of D&K Limited Partnership (the "D&K Agreement"). Among other things, the D&K Agreement purported to grant D&K GP authority to "mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber [the Orly Trust's TRI Shares] for the benefit of [D&K] or that of third parties, in connection with the Note." See D&K Agreement attached hereto as Exhibit L, p.11.

18.     By its terms, the D&K Agreement does not require D&K GP (i.e., Sagi) to give notice to anyone, including Orly or the Orly Trust, if it decided to encumber the Orly Trust's TRI Shares in any way.

19.     Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession it gave to D&K GP under the D&K Agreement. Indeed, the D&K Agreement was merely an instrument created for the specific purpose of encumbering the Orly Trust and its beneficiary, Orly with debt.

20.     Leah Fang never informed Orly of the existence of the D & K Agreement. In January 2008, Dalia was appointed successor trustee of the Orly Trust, despite Orly's objection. At that time she did nothing to attempt to amend Exhibit L nor did she do anything to advise Orly as beneficiary that the prior trustee had granted D&K GP authority to encumber the Orly Trust's TRI Shares. By that time, as a result of Dalia's granting Sagi control of TPR and D & K, and through the appointment of his friends and relatives as successor trustees of the Trusts, Sagi effectively had obtained control over the assets held by all of D & K, TPR, the Sagi Trust, and the Orly Trust.

21.     On or about January 31, 2009, only weeks after making sworn statements to the Surrogate Court that she intended to protect the Orly Trust and its assets, Dalia executed a document entitled "Meeting of Partners of D&K LP – Jan. 31, 2009 & Agreement (the "Meeting Agreement")." Like the D&K Agreement, the Meeting Agreement purported to grant D&K GP (i.e., Sagi) authority to encumber the Orly Trust's TRI Shares:

> The partners wish to clarify that the authority vested in the General Partner to make limited partners' assets subject to a pledge shall be done in substantially the same manner in which TPR Investment Associates, Inc. shares were pledged in conjunction with the aforementioned note. However, the General Partner shall be authorized to sign for the partnership and/or each individual partner.

See Meeting Agreement ¶3 (attached hereto as Exhibit M)

22.     In another naked act of self-dealing in violation of Dalia's fiduciary duties as

Trustee, the Meeting Agreement also purports to:

> Indemnify and provide a general release from any claim or
> right at equity, law, or contract or otherwise the current and
> former general partner, its officers, the partnership's
> holdings (including TPR Investment Associates, Inc.) and
> the officers of its holdings to fullest extent permitted in
> connection with any claim by the partnership and/or its
> partners.  Irrespective of the above, nothing herein shall
> serve to release or indemnify Arie Genger, William Dowd,
> Lawrence Small or Edward Klimerman.

See Meeting Agreement, Exhibit M, ¶1.

23.     Upon information and belief, the Orly Trust received no consideration and no

direct or indirect benefit in exchange for the substantial concessions Dalia, acting as trustee, gave

to D&K GP under the Meeting Agreement.  Indeed, the Meeting Agreement, like the D&K

Agreement, was merely another instrument created for the specific purpose of depleting the Orly

Trust and its beneficiary, Orly of its assets.

24.     Both the D&K Agreement and the Meeting Agreement were negotiated and

executed without ever informing the Orly Trust's beneficiary, Orly.  Moreover, Dalia never

subsequently informed Orly of the existence of either agreement, even though Orly made

repeated requests for information about the Orly Trust and its assets during Dalia's tenure as sole

Trustee.  Likewise, although Dalia has given sworn statements to the Surrogate Court regarding

the Orly Trust, she never disclosed the existence of either the D&K Agreement or the Meeting

Agreement to either Surrogate Roth or her successor Surrogate Webber.  Basically, Dalia, as

Orly's mother and trustee gave Sagi total control to pilfer the Orly Trust assets for his own use

and benefits.  Dalia's breach of fiduciary duty resulted in Sagi having the purported power and

ability with Dalia's consent and knowledge to sell the Orly Trust's TRI's Share for one-third

(1/3) of the price that he had sold the Sagi Trust TRI Shares.

25.     Sometime in 2007, Sagi sold a 2% interest in TPR to Rochelle Fang. This sale effectively stripped Dalia of her majority interest in TPR giving Sagi unfettered control of TPR, in addition to his control of D & K and D & K GP. In January 2008, when Dalia was appointed successor trustee of the Orly Trust, she completely divested herself of the balance of her TPR shares. Dalia has not informed either the Court or Orly as to when she transferred her TPR interest.

26.     On August 22, 2008, unbeknownst to Orly, Rochelle Fang, who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi Trust's 19.43% interest in TRI to the Trump Group, who already owned 47.15% of TRI's outstanding shares, for $26,715,416. This sale purportedly transferred control of TRI from Arie to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.[3] In connection with the supposed sale, Sagi and David Parnes were given seats on TRI's board of directors. This sale, which was consummated after Dalia was appointed successor trustee of the Orly Trust, has diluted and diminished the value of the Orly Trust's interest in TRI.

27.     Dalia, while serving as Trustee of the Orly Trust, made no effort to prevent the sale or to protect the value of the Orly Trust's interest in TRI. Fearing that Dalia would continue to neglect her duty to protect the Orly Trust's assets, on January 10, 2009, Petitioner wrote a letter (annexed hereto as Exhibit N) to her mother stating that "for now, and until further notice, it is my strong desire to retain all of the shares of TRI that are currently in the Orly Trust, and I direct you not to sell them." Dalia refused to agree not to dispose of the TRI shares.

---

[3] The validity of the sale was at issue in litigation in Delaware Chancery Court Civil Action Number 3994-VCS, in which the Court's decision is currently pending appeal. The parties to the action are Arie Genger, TRI, and various entities affiliated with the Trump Group. The Orly Trust had not appeared in the action. Although, neither Orly Genger nor the Orly Trust were ever a party to this proceeding, the court ruling applies to her trust's interest in TRI and TPR. In that action, the Trump Group claimed to have bought the shares either from the Sagi Trust or from TPR – thus, the approximately $27 million purportedly paid by the Trump Group somehow belongs to the Sagi Trust or to TPR, and not the Sagi or Orly Trust.

## II. THE EVIDENCE DISCOVERED BY PETITIONER ON JUNE 1, 2009, AND RESPONDENT'S EXECUTION OF THE MEETING AGREEMENT AND REFUSAL TO PROTECT THE ORLY TRUST'S ASSETS IN THE DELAWARE CHANCERY COURT PROCEEDING, REQUIRES THE IMMEDIATE REMOVAL OF DALIA AS TRUSTEE

28.     In February 2008, Orly applied to this Court to designate a Trustee, or in the alternative to appoint a special trustee, claiming that Dalia and all of the preceding successor trustees of the Orly Trust were improperly appointed and had no authority to act on behalf of the Orly Trust. Orly also alleged wrongful dealings by Dalia as Trustee of the Orly Trust. In denying the application without prejudice, this Court stated that Orly had made allegations without sufficient supporting evidence and suggested that Orly commence an SCPA § 2201 proceeding to obtain the necessary evidence and then renew her application. (A copy of the Court's decision is annexed hereto as Exhibit O.)

29.     On May 14, 2009, as a prerequisite to the SCPA § 2201 application, Orly's counsel sent Dalia Genger a letter (annexed hereto as Exhibit P) requesting documents related to the Orly Trust's assets. Soon thereafter, Orly's counsel was notified that Dalia had retained Robert A. Meister, Esq., of Pedowitz & Meister, LLP, and Orly's counsel therefore forwarded a copy of the May 14th letter to Mr. Meister.

30.     On June 1, 2009, Mr. Meister responded to Orly's document demand by advising Orly's counsel that the Orly Trust no longer owned any interest in TPR. According to the letter, Sagi, acting as CEO of TPR, had foreclosed on the Note and had sold D & K's 240 shares of TPR for $2,220,000. (A copy of the Letter dated June 1, 2009, is annexed hereto as Exhibit Q.) Before that time, Dalia had neither advised nor notified Orly that Sagi had foreclosed on the Note,[4] nor advised Orly that Sagi had sold the TPR shares at auction. Thus, upon receipt of Mr. Meister's letter, Orly learned for the first time that:

---

[4] While the Note had not been serviced since 1999, TPR had not foreclosed on the Note between 1999 and 2008 based upon the Genger Family's agreement at the Note's inception that foreclosure on the Note would upset the estate-planning goals underlying the Note.

(a)     On August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the general manager of D & K, that D & K was in default of the Note and declared that unless the entire unpaid principal amount of the Note was paid immediately, TPR would sell, at auction, the 240 shares pledged as collateral. (A copy of the Notification dated August 31, 2008, is annexed hereto as Exhibit R.)

(b)     Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K (of which he remained the managing partner) that D & K's 240 shares of TPR stock would be publicly auctioned to the highest bidder on February 27, 2009, and that the money received from the sale would be used to reduce the outstanding debt. (A copy of the Notification is annexed hereto as Exhibit S.) Sagi purported to notify the interested parties of the sale by publishing notice of the sale in the New York Post in October 2008 and February 2009. At all relevant times Sagi had Orly's and Dalia's contact information. Despite this, Orly was never informed of the impending sale.

(c)     On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the 240 shares of TPR and "auctioned" the shares. Not coincidentally, the Sagi-controlled TPR purchased the shares at auction for $2,200,000, making no effort to collect on the Note from the Sagi Trust. (See Exhibit T). The proceeds of the sale – i.e., $2,220,000 – were used to decrease D & K's obligations under the Note, leaving a balance of approximately $8,800,000.

31.     On June 11, 2009, Orly's counsel sent Mr. Meister a letter asking that Dalia, in accordance with Orly's January 2009 request and in light of the secretive diminution of the Orly Trust's interest in TPR, stipulate in writing that she would not, under any circumstances and until all issues were resolved, sell, transfer, or remove the TRI shares from the Orly Trust. (A copy of the Letter dated June 11, 2009, is annexed hereto as Exhibit U) That same day, Mr. Meister responded to the June 11th letter, but he failed to address the terms of the proposed stipulation. (A copy of Mr. Meister's Letter dated June 11, 2009, is annexed hereto as Exhibit V.)

32.     Only many months after this proceeding was commenced, it was discovered that
Dalia while serving as Trustee of the Orly Trust had entered into the Meeting Agreement while
serving as Orly's trustee (Exhibit M) which authorized D & K GP (Sagi) to encumber the Orly
Trust's TRI Shares.

33.     Finally and most importantly, the Orly Trust has been adversely effected by the
Delaware Chancery Court's opinion which Orly and the Orly Trust were not parties. Dalia, as
her Trustee never appeared in the proceeding to protect the assets of the Trust nor has she filed a
Notice of Appeal to protect her beneficiary's interest. As a result, Orly has been forced to retain
her own Delaware counsel to advise and protect her and the Orly Trust.

A.     **Dalia Must Be Removed As Trustee Immediately**

34.     As a result of Dalia's deliberate inaction and collusion with Sagi, Orly's TRI
shares (a) may not be an asset of her trust, and if an asset could be sold at a significantly
discounted rate and the proceeds may be used to pay her unpaid portion of the Note, (b) may be
used as collateral to secure the Orly Trust's unpaid portion of the Note, or (c) may be used to
satisfy a Judgment against the Orly Trust. Since Orly's address was known to her brother and
her mother at all relevant times, publishing notice of the sale of the TPR shares alone was a clear
and deliberate attempt to prohibit Orly from intervening in the foreclosure and the sale. Dalia,
who upon information and belief had knowledge of the events as they were transpiring, easily
could have given notice of the auction to Orly, but she intentionally chose not to. There is now
reason to believe Dalia deliberately remained passive so as to allow Sagi to hijack, sell, or
otherwise meddle with the Orly Trust's TPR and TRI shares, even though Orly has specifically
advised her mother, in writing, to protect the Trust's ownership interest in the TPR and TRI
shares and will not stop harming her daughter's economic interests in the Orly Trust.

35.    There is no reason to trust that Dalia will honor her daughter's wishes and
instructions since, from the time of her divorce, she has done nothing but ensure that Sagi has
complete control over TPR, D & K, and D & K GP, and has allowed Sagi to do as he pleases. At
this time, approximately $8,800,000 of the Note remains unsatisfied, and Sagi, as CEO of TPR,
has not voided the notice of default. Based upon Dalia's deliberate inaction and failure to protect
the Orly Trust's assets to date, there is strong evidence to reasonably conclude that Dalia will not
protect the Orly Trust's interest in any assets in the Trust, but rather, will act to benefit herself
and Sagi, including by allowing Sagi to obtain any asset in the Orly Trust to satisfy the Orly
Trust's unpaid portion of the Note.

36.    The fact that Dalia has never appeared or intervened or filed a notice of appeal in
the Delaware Action alone is cause for her removal. When added to the information provided to
Orly's counsel on June 1, 2009, which confirms Respondent's lack of diligence and disloyal
service as Trustee, there are more than sufficient evidence to have Respondent removed as
Trustee of the Orly Trust. While serving as Trustee, Dalia intentionally failed to notify Orly that
TPR was taking measures to foreclose on the Orly Trust's 23.52% indirect interest in TPR. It
was Dalia's duty as a fiduciary of the Orly Trust to be apprised of all activity concerning the
Orly Trust and to ensure that Orly received proper notification of the default and auction.
Moreover, Dalia actually knew of the foreclosure and the auction, but took no steps to protect the
Orly Trust's interest in TPR. Dalia knew of Sagi's plan to foreclose on the Note and sell the
TPR shares as early as August 2008; thus, she withheld information concerning the auction from
Orly for almost ten months. Dalia did not disclose the foreclosure and share sale until she
received the demand letter from Orly's counsel and realized that legal action was imminent and
now she has done nothing to protect the Orly Trust assets from the Delaware litigation and in
fact may have by her inaction depleted most of the assets of the Orly Trust. Instead of protecting
the Orly Trust's and its beneficiary's interests, Dalia sat back and silently watched and supported
her son as he stripped the Orly Trust of its indirect interest in TPR.

37.     The corporate structure which has intertwined TPR, D & K GP, and D & K's
assets, all of which are in some manner controlled by Sagi as a result of Dalia's actions, permits
Dalia and Sagi to engage in self-dealing and does not provide for any accountability on either
Sagi's or Dalia's part. Unfortunately, the Orly Trust is caught in the middle of Dalia's and
Sagi's conspiracy to engage in self-dealing intended to benefit their own interests, while Sagi has
been permitted to diminish and dissipate the value of the Orly Trust's assets, including its
interests in TPR and TRI. By enriching herself and her son at the expense of her daughter, Dalia
is in breach of her fiduciary duties as Trustee of the Orly Trust. It is imperative that Orly have
an independent successor trustee appointed who will unbiasedly and loyally protect the Orly
Trust's remaining assets, and make every attempt possible to retain the assets that have been
reduced in value.

(1)     **In Direct Conflict With Her Obligations as Fiduciary of The Orly Trust,
         Dalia Did Nothing To Stop Sagi From Attempting to Sell His Trust's TRI
         Shares, Which Have Diluted the Value of the Orly Trust's Assets**

38.     The Sagi Trust's sale of its interest in TRI to the Trump Group for $26,715,416,
which occurred after Dalia was appointed successor trustee of the Orly Trust, purportedly
transferred control of TRI from Arie to the Trump Group. Assuming if this purported sale has
been given effect, then the value of the Orly Trust's assets have significantly diminished since
Arie will no longer own a controlling interest in TRI, and thus the Orly Trust would no longer
own a portion of the controlling block of TRI shares.

39.     Dalia, as a fiduciary of the Orly Trust, was obligated to apprise herself of any
transactions that could affect the value of the Orly Trust's shares, and, in fact, Dalia was, upon
information and belief, contemporaneously aware of the Sagi Trust sale. But Dalia made no
effort to protect the value of the Orly Trust's TRI shares by challenging the proposed sale.
Moreover, she has taken no position with regard to the current value of the TRI shares and has
taken no measures to protect the Orly Trust's interest in TRI. By remaining passive with respect
to the Orly Trust's TRI shares, and indeed colluding with Sagi, Dalia completely ignored the

intent behind the establishment of the Orly Trust – to transfer an equal amount of assets to each of the children. Dalia, through her actions and her inaction alike, may have permitted Sagi to secure substantially more value from the Trusts' assets than Orly.

### (2)    In Direct Conflict With Her Obligations as Fiduciary of The Orly Trust, Dalia Took No Action To Protect the Orly Trust's Interest in TPR

40.    Pursuant to the August 2006 memorandum assigning the Note to David Parnes – on which Dalia was copied – Sagi, acting as the managing partner of D & K, took the position that the Note was unenforceable. (See Paragraph 4 of Exhibit K annexed hereto.) In the exact same memorandum, however, Sagi, acting as the CEO of TPR, took the directly contrary position that TPR reserved its right to enforce the Note. (See Paragraph 8 of Exhibit K annexed hereto.)

41.    On February 14, 2007, Dalia, who participated in the transaction between Sagi and Mr. Parnes, and in a clear attempt to clean her hands of any impropriety, admitted in a sworn statement to the Court that no one was ever supposed to foreclose on the Note. (See Paragraph 3 of Exhibit W annexed hereto). Additionally, the unpaid Note was the subject of a post-judgment arbitration proceeding between Dalia and Arie, which took place in September 2007. Dalia, who was present at the proceedings, heard Sagi and Mr. Parnes testify that the Note should not be enforced and that Sagi, as CEO of TPR, had no intention of collecting the unpaid portion of the Note. Thus, Dalia knew long before August 2008 that TPR had effectively disclaimed its right to foreclose on the Note.

42.    As described above, however, in August 2008 (eleven months later), Sagi sought to enforce the Note. Contrary to the position he had taken under oath at the arbitration, and contrary to the position he had taken as the managing partner of D & K (see Paragraph 4 of Exhibit K attached hereto), Sagi issued a default notice to D & K on behalf of TPR. Dalia, who knew the Note was never intended to be enforced and who previously had sworn to as much, should have immediately sought to block Sagi from foreclosing on the Note and selling the TPR

shares. Notwithstanding her knowledge and her previous statements, however, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust had a clear interest in the TPR shares at issue. As a fiduciary of the Orly Trust with prior, as well as continued knowledge, of the TPR foreclosure, TPR's supposed claims against D & K, and D & K's ability to challenge those claims based on prior representations, Dalia had a duty to protect the Orly Trust's indirect ownership of the TPR shares. But instead of taking the proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR shares for himself to the detriment of the Orly Trust. Moreover, in connection with her appointment as successor trustee of the Orly Trust in January 2008, Dalia divested herself of her TPR shares (without informing either the Court or Orly as to when she transferred her interest) in a further attempt to distance herself from any attributable wrongdoing. Dalia has contended to this Court that she sold her TPR shares in order to avoid any appearance of impropriety in connection with her appointment as Trustee. Interestingly, however, Dalia has never informed Orly or this Court whether she continues to maintain a 99% interest in D & K GP, the company that controls D & K and, thus, was obligated to service the Note.

43.     Additionally, Dalia's failure to act in the face of the foreclosure and sale of TPR stock is especially egregious because she has known since August 2008 that the purported sale of TRI stock to the Trump Group was being challenged in Delaware Chancery Court. She also has known that in that action the Trump Group is asserting that it bought the TRI stock from *either* the Sagi Trust *or* TPR. Thus, she has known that, depending on the outcome of the appeal of litigation in Delaware, the Orly Trust could have an interest in the $27 million paid by the Trumps in August 2008 if its interest in TPR were preserved. Accordingly, as trustee of the Orly Trust, she should have been especially vigilant in protecting the Orly Trust's interest in TPR through D & K. But instead, she allowed Sagi to essentially steal the Orly Trust's interest in TPR so that Sagi can attempt to retain the entire $27 million regardless of the outcome of the appeal in Delaware Chancery Court. Indeed, Dalia has done nothing to ensure that the $27,000,000 is preserved, so that it will not be depleted by Sagi pending the outcome of the

Delaware appeal. Her inaction in this regard is a blatant violation of her fiduciary duties as trustee.

## III. DALIA SHOULD BE SUR-CHARGED IN THE AMOUNT OF THE LOSS OF THE VALUE OF ORLY'S INTEREST IN TPR AS DETERMINED BY THE COURT AND ORLY SHOULD BE AWARDED ATTORNEYS' FEES

44.     By failing to take action on behalf of the Orly Trust to prevent Sagi from foreclosing on the Note and selling D & K's TPR shares and through her other actions and inactions described herein, Dalia caused the Orly Trust to lose its interest in TPR and possibly TRI. Accordingly, Dalia should be surcharged in an amount of the loss of the value of Orly's interest in TPR and TRI as determined by the Court and should be required to reimburse the Orly Trust for its attorneys' fees incurred in connection with bringing this action.

## IV. MICHAEL D. GROHMAN, ESQ. SHOULD BE APPOINTED AS SUCCESSOR TRUSTEE

45.     Based on Dalia's deliberate breach of her fiduciary duties to the Orly Trust, and in light of Dalia's prior nefarious conduct as the Orly Trust's Trustee, this Court should remove Dalia as Trustee and replace her with Michael D, Grohman, Esq. Mr. Grohman is a member of the New York Bar and the head of the Trust and Estates practice group at Duane Morris LLP. Mr Grohman is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR, or D & K, and is willing and prepared to succeed Dalia immediately.

46.     No prior application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, based upon the allegations contained herein, Petitioner requests that this Court provide the following relief:

(a)     Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any (1) offer to purchase the Orly Trust's 19.3% interest in TRI within ten (10) days of receiving such offer; and (2) act by

Respondent, her agents, and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell, or otherwise alter the Orly Trust's interest at least 10 days prior to such act in accordance with Judge Troy K. Webber's Order dated July 1, 2009 affirmed on August 18, 2009, and stipulated to by the parties' respective counsel. (Annexed hereto as Exhibit B);

(b)     Respondent and/or her counsel during the pendency of this proceeding are required to give notice by overnight mail to Petitioner's Counsel of any attempt to vote any TRI shares held by the Orly Trust for any purpose, including, without limitation, in any election of TRI's directors, with such notice being given at least ten (10) days prior to such attempt being made in accordance with the Stipulation signed by the Parties and their counsel dated September 8, 2010 (which is annexed hereto as Exhibit C);

(c)     remove Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting, dissipating and looting the assets of the Orly Trust, imprudently managing and injuring the property committed to her charge; for concocting a scheme with Sagi Genger to strip the Orly Trust of its two most valuable assets:  (a) an indirect interest in 49% of defendant TPR Investment Associates, Inc. ("TPR"), a closely held family corporation; and (b) 1,102.80 shares of common stock of Trans-Resources, Inc. ("TRI") (the "TRI Shares"), another closely held corporation; for allowing a foreclosure upon the Orly Trust's indirect 49% interest in TPR pursuant to a promissory note which, by mutual understanding and agreement between the Genger family members and TPR was never to be collected and did nothing to preserve Orly's rights or interest at the foreclosure sale; for colluding with defendants Sagi Genger and D&K GP LLC ("D&K GP") to enter into various agreements that would allow D&K GP to "mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber [the Orly Trust's TRI Shares]" in connection with the above-mentioned promissory note without giving any notice to Orly, the Orly Trust's beneficiary; and for failing to protect the Orly Trust

by appearing or appealing the Final Judgment Order of v.c. Leo E. Strine, Jr., Delaware

Chancery Court Civil Action Number 3997-VCS ;

        (d)    surcharging Respondent by an amount of the loss of the value of Orly's

interest in TPR and TRI, as determined by the Court and awarding Petitioner her costs and

attorneys' fees;

        (e)    appointing Michael D. Grohman, Esq., as successor trustee;

        (f)    waiving any requirement that Petitioner post an undertaking; and

        (g)    granting Petitioner any other relief it deems necessary and proper.

Dated:  New York, New York
        September **21**, 2010

                                        ORLY GENGER
                                        Petitioner

COZEN O'CONNOR

By: _____
      Judith E. Siegel-Baum, Esq.
      Attorney for Petitioner
      277 Park Avenue
      New York, New York 10172
      212-883-4902