175. Article XVI of the Stipulation of Settlement provides that the parties to the Stipulation of Settlement have a right to seek court-ordered reformation in a New York court in order to reflect the parties' original intent in the event a portion of the "So-Ordered" Stipulation of Settlement is held to be invalid for any reason.

176. The concurrent transfer of Arie's ownership of his 51% interest in TPR in consideration of receiving a 14% interest in TRI and the right to control the voting rights of 52.85% of TRI Shares for the duration of Arie's life was an essential, fundamental condition of the transfers of TPR and TRI shares set forth in the Court-Ordered Stipulation of Settlement.

177. The Delaware Chancery Court, as affirmed by the Delaware Supreme Court, held that TPR's 2004 transfers of 52.85% of the shares of TRI Stock under the Stipulation of Settlement and 2004 TPR Transfer Documents were invalid and void *ab initio*, and that the Putative Irrevocable Proxies were invalid.

178. The provisions of the Court-Ordered Stipulation of Settlement relating to the transfer of ownership of TPR in consideration of the 2004 Transfers were based upon the mutual mistake of Dalia and Arie that the 2004 Transfers and Irrevocable Proxies were valid.

179. The Court-Ordered Stipulation of Settlement specifically provides that the parties agree that if any of the terms of the Stipulation of Settlement is declared invalid by any court of competent jurisdiction for any reason, Arie is entitled to seek an Order from this Court to reform the Stipulation of Settlement, or obtain such other equitable or legal relief as is necessary to give full meaning and expression to the original intent of the parties to the Court–Ordered Stipulation of Settlement.

45

180.    Arie is entitled to an Order of the New York Supreme Court to reform the terms
of the Court-Ordered Stipulation of Settlement to reflect the parties' original intent to the
greatest extent possible.

181.    Accordingly, Arie seeks an Order and declaratory judgment to reform the Court-
Ordered Stipulation of Settlement to provide as follows:

(i)    That the transfer by Arie of his 51% interest in TPR to Dalia and the
concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust,
respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result
of the Delaware Court finding that the 2004 Transfers are invalid;

(ii)    that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi
Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii)    that pursuant to a further order of this Court the Court-Ordered Stipulation
of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that
were returned to TPR as a result of the Delaware Court Action voiding the original 2004
Transfers be placed in a newly formed single purpose entity controlled by Arie ("TPR2");

(iv)    that Arie be declared the 51% owner of TPR2, which in turn shall be
declared, *ab initio* the record and beneficial owner of all of such 3000 TRI shares, as though no
2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v)    that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of
TPR2 so that together they own the remaining 49% of TPR2;

(vi) that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would be otherwise permitted and would not violate the terms of the 2001 Stockholders Agreement including, but not limited to, Article 2 of such agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI Shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii) All cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix) Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x) The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

182. The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

183. The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

47

184.    The purported sales by TPR of the Arie and Orly Trust TRI shares to The Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void, and the proceeds from these purported sales now held in escrow will be released to The Trump Group.

185.    TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

186.    TPR2 will consent to the terms of the 2001 Stockholders Agreement.

187.    Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court Ordered Stipulation of Settlement in light of the ruling of the Delaware court that the 2004 Transfers were invalid.

188.    There is a justiciable controversy.

189.    There is no adequate remedy at law.

### SECOND CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

**(For the Imposition of a Constructive Trust against Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties)**

190.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 189, and incorporate the allegations contained in paragraphs 209-219.

191.    Upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares.

48

192.   TPR is not entitled, in equity or good conscience, to retain any direct or indirect benefit resulting from the record ownership of the 3000 shares of TRI stock reverting to TPR as a result of the ruling of the Delaware courts .

193.   TPR would be unjustly enriched at the expense of Arie if it were permitted to retain any direct or indirect ownership or benefit from the sale of the 3000 shares of TRI stock because record ownership of such TRI shares reverted to TPR as a result of the Delaware court rulings.

194.   Upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares.

195.   Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death.

196.   Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death.

49

197.   Upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Trust Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie.

198.   Arie's beneficial ownership and voting rights with respect to the 3000 TRI shares, which were held by TPR in a constructive trust for his benefit, were protected from further transfer to The Trump Group from the moment record title reverted to TPR.

199.   TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares.

200.   TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie.

201.   The Trump Group are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

202.   The Trump Group was on notice of Arie's ownership and voting right claims with respect to the 3000 TRI shares that reverted to TPR, as record owners.

203.   The Trump Group knew and were on notice that TPR was not authorized to sell TPR's TRI shares without the prior consent of Arie.

204.   The Trump Group knew and was on notice that Arie objected to the sale to The Trump Group of any of the 3000 TRI shares that reverted to TPR, as record owner under the 2008 Stock Purchase Agreement, the Side Letter Agreement or the 2010 purported sale of the Arie and Orly Trust TRI shares.

50

205.    The Constructive Trust in favor of Arie imposed upon the Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to The Trump Group, who were not bona fide purchasers.

206.    The Trump Group, in addition to TPR, would be unjustly enriched if they were permitted to keep the benefit of the purported sale by TPR of the 3000 TRI shares to The Trump Group, which sale Sagi was not authorized to enter into on behalf of TPR without the prior consent of Arie because, inter alia,

(i) the Trump Group would become the owner of the Arie, Sagi Trust and Orly Trust Shares, over the objection of Arie and without Arie's required prior permission and consent;

(ii)    the Trump Group would obtain Arie's right to vote these shares for the duration of his lifetime, without Arie's required prior permission and consent; and

(iii)    these shares would be acquired substantially below their true value without Arie's required prior permission and consent;

(iv)    the purported transaction by TPR was in derogation of Arie's beneficial ownership and voting rights appurtenant to such shares; and

(v)    the Trump Group are not bona fide purchasers of such shares.

207.    Plaintiffs have no adequate remedy at law.

51

## THIRD CAUSE OF ACTION
## ON BEHALF OF ARIE AND ORLY

### (Claim for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty Against Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI)

208.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 207.

209.    Sagi, individually and as an officer of TPR, owed a fiduciary duty of trust,

confidence and loyalty to Arie and the Orly Trust because, among other things, (i) he was

entrusted to manage TPR's ownership of the TRI shares for the benefit of Arie and the Orly

Trust upon the Chancery Court voiding the 2004 TPR transfers of TRI shares to Arie, the Sagi

Trust and the Orly Trust, and the resulting ownership of such 52.85 % of TRI shares by TPR; (ii)

he was entrusted to manage TPR's record ownership of the TRI shares for the benefit of Arie and

the Orly Trust upon the Delaware Chancery Court voiding the 2004 TPR transfer of TRI shares

to Arie, the Sagi Trust and the Orly Trust; (iii) pursuant to the 2004 TPR Transfer Agreement,

Sagi was entrusted to take all actions necessary to ensure that Arie would maintain voting control

of 52.85% of the stock of TRI in accordance with the express intent of all parties to the

Stipulation of Settlement and 2004 TPR Transaction Documents; (iv) through Fang and the Sagi

Trust, as his co-agents and alter egos, Sagi owed a duty of trust and confidence to Arie under the

2004 Voting Trust Agreement; and (v) as the successor to the rights and liabilities of Dalia under

the Stipulation of Settlement and the manager of TPR, as a family holding company, Sagi owed a

fiduciary duty to protect the assets of the Orly Trust for the benefit of his sister Orly and his

father, Arie, in connection with the ownership of TPR, TPR's ownership of the TRI shares and

D&K's minority ownership of TPR.

52

210.    As a fiduciary Sagi, individually, and as an officer of TPR, owed a duty of fidelity
and undivided loyalty to Arie, Orly, and the Orly Trust regarding the TRI shares.

211.    Fang, individually and as the trustee of the Sagi Trust, owed a fiduciary duty to
Arie under the 2004 Voting Trust Agreement and Side Letter.

212.    The Trump Group, on becoming the majority shareholder of record in TRI, owed
a fiduciary duty of fidelity and loyalty to Arie as the known beneficial owner of record of the
Arie TRI shares.

213.    Jules Trump and Mark Hirsch, each individually and on behalf of the Trump
Group, and as Directors of TRI owed a fiduciary duty to TPR, and Arie as the beneficial owner
of TRI shares to read TRI corporate documents presented to him in their entirety and have
knowledge of the shareholders of record of TRI, a close corporation.

214.    Sagi, TPR, the Sagi Trust, Fang, the Trump Parties each breached their respective
fiduciary duties as a result of the conduct set forth in the allegations of this complaint, including,
but not limited to their respective conduct in connection with the negotiation, execution and
implementation of the 2008 Stock Purchase Agreement and the Side Letters and the subsequent
transfer of the Arie and Orly Trust TRI Shares.

215.    Sagi, TPR, the Sagi Trust, Fang, and the Trump Parties also knowingly aided,
abetted, induced, participated in, enabled and substantially assisted each other to breach each of
the other's respective fiduciary duties to Arie, Orly and the Orly Trust by the conduct alleged
herein, including but not limited to misrepresenting to the Delaware Chancery Court that the
share certificates for the Sagi Trust TRI shares were lost despite having actual knowledge that

53

such share certificates were held by Arie, and had not been delivered to the Sagi Trust, Sagi or
Fang.

216.    TRI also knowingly aided, abetted, induced, participated in, enabled and
substantially assisted the respective breaches of fiduciary duties owed to Arie, Orly and the Orly
Trust by Sagi, TPR, the Sagi Trust, Fang and the Trump Parties.

217.    Sagi, TPR, the Sagi Trust, Fang, and the Trump Parties, each acting in conspiracy
with, and as the co-agent of one another, entered into an illegal scheme, agreement, plan, and
artifice to breach each other's respective fiduciary duties owed to Arie, Orly, and the Orly Trust
by the conduct alleged herein in furtherance of this conspiracy.

218.    As a result of such breaches of fiduciary duty, aiding and abetting of breaches of
fiduciary duties and conspiracies to breach fiduciary duty, by Sagi, TPR, the Sagi Trust, Fang,
the Trump Parties and TRI, and each of them, Arie suffered compensatory damages in an amount
to be determined.

219.    As a result of such breaches of fiduciary duty, aiding and abetting of breaches of
fiduciary duty and conspiracies to breach fiduciary duty, by Sagi, TPR, the Sagi Trust, Fang, the
Trump Parties and TRI, and each of them, Orly, individually and as the beneficiary of the Orly
Trust, suffered compensatory damages in an amount to be determined.

### FOURTH CAUSE OF ACTION
### ON BEHALF OF ARIE AND ORLY

**(Claim for Unjust Enrichment and Rescission Against Sagi, TPR, Dalia, the Sagi Trust,
Fang, and the Trump Parties)**

220.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 219.

221.    As a result of the Delaware Chancery Court holding, Dalia, TPR, Sagi, the Sagi
Trust and the Trump Parties would each be unjustly enriched at the expense of Arie and the Orly

Trust if each or any of them were allowed to retain any direct or indirect benefit or consideration received by each of them from TPR's ownership of TRI Shares, which none of them are entitled, in equity or good conscience, to retain.

222.    Plaintiff Arie is entitled to rescind the transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents based on failure of consideration because, as a result of the holding by the Delaware Chancery Court, Arie did not receive any of the consideration that was due to him pursuant to such Agreements, including and not limited to (a) his 14% interest in the Arie TRI Shares, and his right to vote 52.85% of the TRI Shares that he controlled prior to the Delaware Court voiding the 2004 Transfers.

223.    Plaintiff the Orly Trust, is entitled to rescind the 2004 Transaction Documents based on failure of consideration because as a result of the holding by the Delaware Court the Orly Trust did not receive any of the consideration due to the Orly Trust pursuant to the 2004 Transfers.

224.    Arie and the Orly Trust are each also entitled to rescission because of failure of consideration based on mutual mistake as to the enforceability of the 2004 TPR Transfers of TRI stock to Arie, the Sagi Trust and the Orly Trust pursuant to the Stipulation of Settlement and the 2004 Transaction Documents.

225.    Arie and the Orly Trust are each entitled to an accounting.

226.    Arie and the Orly Trust have no adequate remedy at law.

## FIFTH CAUSE OF ACTION

**(Claim for Permanent Injunction Against Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties)**

227.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 226.

228.    Plaintiffs are entitled to the issuance of a permanent injunction enjoining and restraining Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties, and each of them, from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or encumbering the 3000 shares of TRI stock that reverted to TPR's control as a result of the Delaware Court rulings.

229.    The failure to grant such permanent injunction will result in irreparable injury to the Plaintiffs.

230.    There is no adequate remedy at law.

231.    The balance of equities favor the Plaintiffs.

## SIXTH CAUSE OF ACTION

### (Claim for Breach of Contract against TPR on Behalf of Arie and Orly)

232.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 231.

233.    TPR entered into the 2004 TPR Transfer Agreement with Arie.

234.    TPR entered into the 2004 TPR Transfer Agreement with the Orly Trust.

235.    TPR breached its express and implied covenants and representations thereunder in connection with the transfer of TRI shares to Arie.

236.    TPR breached its express and implied covenants and representations thereunder by purporting to agree to transfer the Arie, Sagi Trust and Orly Trust TRI Shares to the Trump Parties.

237.    Arie and the Orly Trust performed their respective obligations under the 2004 TPR Transfer Agreement.

56

238.   As a result of such breach of contract, Arie lost the benefit of his bargain and suffered damages in an amount yet to be determined.

239.   TPR breached its express and implied covenants and representations under the 2004 Transaction Documents in connection with the transfer of TRI shares to the Orly Trust.

240.   The Orly Trust performed its obligations under the 2004 TPR Transfer Agreement.

241.   As a result of such breach of contract, the Orly Trust lost the benefit of its bargain and suffered damages in an amount yet to be determined, but believed to be in an amount to be determined.

### SEVENTH CAUSE OF ACTION
### ON BEHALF OF ARIE

#### (Claim for Breach of Contract against the Sagi Trust)

242.   Plaintiffs repeat and reallege the allegations in paragraphs 1 through 241.

243.   The Sagi Trust entered into the 2004 Voting Trust Agreement with Arie.

244.   The Sagi Trust breached its express and implied covenants and representations thereunder in connection with Arie's voting rights and control of TRI shares.

245.   Arie performed his obligations under the 2004 Voting Trust Agreement.

246.   As a result of such breach of contract, Arie lost the benefit of his bargain and suffered damages in an amount yet to be determined.

### EIGHTH CAUSE OF ACTION
### ON BEHALF OF ARIE AND ORLY

#### (Claim for Tortious Interference with Contract Against the Trump Parties)

247.   Plaintiffs repeat and reallege the allegations in paragraphs 1 through 246.

57

248.    The Trump Parties, and each of them, tortiously interfered with, among other things, (i) the Stipulation of Settlement between Arie and Dalia, (ii) the 2004 TPR Transfer Documents between Arie and the Orly Trust and TPR, (iii) the 2004 Voting Trust Agreement between Arie and the Sagi Trust, and (iv) the 2004 Voting Trust Agreement between Arie and the Orly Trust.

249.    The Trump Parties, and each of them, intentionally caused such breaches of contract without justification, as a result of the conduct set forth herein.

250.    As a result of the Trump Parties' tortious interference with contract, Arie suffered damages in an amount yet to be determined.

251.    As a result of the Trump Parties' tortious interference with contract, Orly and the Orly Trust suffered damages in an amount yet to be determined.

### NINTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (Claim for Aiding and Abetting Tortious Interference with Contract Against Sagi, Fang, and the Sagi Trust)

252.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 251.

253.    Sagi, Fang, and the Sagi Trust each had knowledge of the Trump Parties' tortious interference with the 2004 TPR Transaction Agreement and the Stipulation of Settlement, and each such defendant caused, encouraged and substantially assisted the Trump Parties in the commission of the foregoing acts of tortious interference with 2004 TPR Transaction Agreement and the Stipulation of Settlement.

254.    Sagi, Fang, and TPR each had knowledge of the Trump Parties' tortious interference with the 2004 Voting Trust Agreement, and the Stipulation of Settlement, and each such defendant caused, encouraged and substantially assisted the Trump Parties in the

58

commission of the foregoing acts of tortious interference with the 2004 Voting Trust

Agreements.

255. By reason of the foregoing, Arie has been damaged in an amount to be

determined.

256. By reason of the foregoing, Orly, individually and as the beneficiary of the Orly

Trust has been damaged in an amount to be determined.

## TENTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (Claim for Preliminary Injunction Against the Trump Parties, Sagi Genger TPR and the Sagi Trust Under CPLR 7109)

257. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 256.

258. The Arie and Orly Trust TRI shares are unique chattel.

259. By virtue of the facts set forth above, Arie is the beneficial owner of the Arie TRI

shares.

260. Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge,

dilute, or take any action on behalf of TPR relating to or concerning the 3000 TRI shares that

reverted to TPR, without the prior written consent of Arie and Sagi is not authorized to exercise

any and all rights, including TPR's voting rights with respect to such 3000 TRI shares, except as

so directed by Arie as the beneficial owner of such shares and the voting rights appurtenant

thereto.

261. Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge,

dilute, or take any action on behalf of TPR relating to or concerning the Orly Trust TRI shares.

262. By virtue of the facts set forth above, the Orly Trust is entitled to the benefits

provided to it under the Stipulation of Settlement.

263.    The Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust shares are wrongfully being held by the Trump Parties.

264.    Plaintiffs are entitled to a preliminary injunction, under CPLR 7109, that the Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares shall be restrained and enjoined from transferring, selling, diluting, pledging, assigning or otherwise disposing of or removing such shares from the State until the further order of the Court.

**WHEREFORE,** Plaintiffs demand Judgment in favor of Plaintiffs against the Defendants as follows:

(a) on the **First Cause of Action against all Defendants**: that this Court find and declare that Arie is entitled to an Order from this Court to reform the terms of the Court-Ordered Stipulation of Settlement to provide as follows:

(i)   that the transfer by Arie of his 51% interest in TPR to Dalia and the concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust, respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result of the Delaware Court finding that the 2004 Transfers are invalid;

(ii)   that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii)   that pursuant to a further order of this Court the Court-Ordered Stipulation of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that were returned to TPR as a result of the Delaware Court Action voiding the original 2004 Transfers be placed in a newly formed single purpose entity controlled by Arie (hereinafter, "TPR2");

60

(iv) that Arie be declared the 51% owner of TPR2 which in turn shall be declared, ab initio, the record and beneficial owner of all such 3000 TRI shares, as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v) that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of TPR2 so that together they own the remaining 49% of TPR2;

(vi) that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would otherwise be permitted and would not violate the terms of the 2001 Stockholders Agreement, including, but not limited to, Article 2 of such Agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii) all cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix) Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x) The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

61

(xi) The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

(xii) The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

(xiii) The purported sales by TPR of the Arie and Orly Trust TRI Shares to the Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void and the proceeds from these purported sales now held in escrow will be released to the Trump Group.

(xiv) TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

(xv)    TPR2 will consent to the terms of the 2001 Stockholders Agreement.

(xvi) Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court-Ordered Stipulation of Settlement in light of the rulings of the Delaware Court that the 2004 Transfers were invalid.

(xvii) Any other declaration as the Court may deem fair and reasonable to give effect to the Original Intent of the parties to the Stipulation of Settlement.

(b) on the **Second Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties**, that the Court find and declare that:

62

(i) upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares;

(ii) upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares;

(iii) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death;

(iv) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death;

(v) upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie;

63

(vi) TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares;

(vii) TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie;

(viii) The Constructive Trust in favor of Arie imposed upon Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to the Trump Group, who were not and are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

(c) on the **Third Cause of Action against Defendants Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, jointly and severally**, as follows:·

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly Genger individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(d) on the **Fourth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties**:

(i) rescinding Plaintiff Arie's transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents;

64

(ii) rescinding the 2004 Transaction Documents;

(iii) Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties must account to Arie and Orly, individually and as the beneficiary of the Orly Trust, for 3000 TRI Shares and/or their respective value that are now or ever have been in their respective possession, custody or control; and

(iv) such other equitable relief as the Court may deem fair and reasonable;

(e) on the **Fifth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties**, permanently enjoining and restraining these Defendants, and each of them, from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or encumbering the 3000 shares of TRI common stock that reverted to TPR as a result of the Delaware court rulings.

(f) on the **Sixth Cause of Action against Defendant TPR**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action; and

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action.

(g) on the **Seventh Cause of Action against Defendant Sagi Trust**, a money judgment awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plainitiff's attorneys' fees and costs incurred in connection with this action;

65

(h) on the **Eighth Cause of Action Against the Defendant Trump Parties, jointly and severally:**

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(i) on the **Ninth Cause of Action Against Sagi, Fang, and the Sagi Trust**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly, individually and as the beneficiary of the Orly Trust, in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(j) on the **Tenth Cause of Action for a Preliminary Injunction Against the Trump Parties, Sagi Genger, TPR and the Sagi Trust Under CPLR 7109**, and each of them for an injunction or temporary restraining order under CPLR 7109, restraining and enjoining each of them from transferring, selling, diluting, pledging, assigning or otherwise disposing of or

66

removing the Arie TRI Shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares from the State until the further Order of the Court.

(k)    **On all causes of action set forth in this Complaint,** such other relief as this court may deem just, together with the costs and disbursements incurred by plaintiffs in this action, including the recovery of plaintiffs' reasonable attorneys' fees.

DATED: New York, New York
      September 20, 2011

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Paul D. Montclare (PM 4454)
Lauren J. Wachtler (LW 4205)
12 E. 49th Street, 30th Floor
New York, New York 10017
(212) 509-3900

Attorneys for Plaintiff ARIE GENGER

ZEICHNER ELLMAN & KRAUSE LLP


By: _____
Yoav M. Griver
Bryan D. Leinbach
575 Lexington Avenue
New York, New York  10022
Telephone: (212) 223-0400
Facsimile: (212) 753-0396

Attorneys for Plaintiff ORLY GENGER, in
her individual capacity and on behalf of the
ORLY GENGER 1993 Trust

# Exhibit 10

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _1_ day of
~~June~~ 2009
July

New York County Surrogate's Court
DATA ENTRY DEPT.
Date: July 1, 2009

PRESENT: HON. _Troy K. Webber_
                          Surrogate

---

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

---

File No.: 0017/2008

**ORDER TO SHOW CAUSE
WITH TEMPORARY
RESTRAINTS**

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993
                                                                                              Sitting at 60 Centre
Trust, show cause before Surrogate _Troy K. Webber_ at the Surrogate's Court, ~~31 Chambers~~

~~Street~~ Room 300 New York, New York, on the 5 day of ~~June~~ August 2009 at 10:00 o'clock in the forenoon of that

day or as soon thereafter as counsel may be heard why an order should not be entered:

(a)     Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

NYO_XFER\137033\1\1

(b)     Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

(c)     Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)     Appointing Michael D. Grohman, Esq. as successor trustee;

(e)     Waiving any requirement that Petitioner post an undertaking; and

(f)     Granting Petitioner such further relief deemed necessary or proper.

ORDERED that, during the pendency of this proceeding, Respondent, ~~her agents and all~~ *and/or her counsel*
*are required to give notice by overnight mail to petitioners counsel of any 1) offer* ~~other persons acting on her behalf are temporarily restrained from withdrawing, selling,~~
*to purchase the Orly Trust's 19.3% interest in TRI within 10 days of receiving* ~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering,~~
*such offer and 2) act by Respondent, her agents and all other persons* ~~liening, hypothecating or secreting the Orly Trust's 19.43% interest in TRI and other assets~~
*acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or* ~~remaining in the Orly Trust; and it is further~~
*otherwise alter the Orly Trust's interest in TRI at least 10 days prior to such act*
*and it is further* ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on Respondent by personal service at either her residence, located at 200 East

65th Street, Apt. 32W, New York, New York 10021, or any other address at which she can be

located, on or before ~~June 7,~~ *July 7,* 2009; *and it is further*

*ORDERED, that any responsive papers shall be filed by*
*July 29, 2009.*

~~ENTER~~

Surrogate

# Exhibit 11

# Exhibit 11

In re IBJ Schroder Bank & Trust Co., Index No. 101530/98,
Supreme Ct., N.Y. Co. (Aug. 16, 2000)

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:  Hon. Beatrice Shainswit

_Justice_

PART 10

In Re IBJ Schroder Bank + Trust

- v -

INDEX NO. 101530/98

MOTION DATE

MOTION SEQ. NO. 001

MOTION CAL. NO.

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                                 | PAPERS NUMBERED |
|-----------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... |                 |
| Answering Affidavits — Exhibits _____                 |                 |
| Replying Affidavits _____                      |                 |

Cross-Motion:  ☐ Yes    ☑ No

Upon the foregoing papers, it is ordered that this motion

On remand, pursuant to the order of the appellate division, first department dated April 20, 2000.

MOTION IS DECIDED IN ACCORDANCE WITH
ACCOMPANYING MEMORANDUM DECISION

## FILED

OCT 03 2000

COUNTY CLERK'S OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO
JUSTICE
J.S.C.

Dated: 8/16/00

J.S.C.

Check one:  ☑ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

CDISPSD



SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY : IAS PART 10
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of                    Index No. 101530/98

IBJ SCHRODER BANK & TRUST COMPANY (not
in its individual capacity but in its capacity as Trustee
under a Trust Agreement dated as of December 21, 1985
among Resources Satellite Corp., J. Henry Schroder
Bank & Trust Company and the Beneficiaries thereunder),
                                    Petitioner,

for an order, pursuant to CPLR § 7701, for a Construction
of an Indenture and Approval of a Settlement.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SHAINSWIT, J.:

             In this special proceeding, brought pursuant to CPLR Article 77,

petitioner-trustee seeks a declaratory judgment concerning the construction of an

Investor Trust Agreement, together with approval of the trustee's proposed settlement

of another action presently pending in this Court, involving assets of the Trust, entitled

<u>IBJ Schroder Bank & Trust Co. v GE Capital Spacenet Services, Inc.</u>, Index No.

601299/96 (the "Spacenet" action).

             The Trust was established in 1985 to facilitate investments by more than

400 beneficiaries in a project involving the launching and operation of a

communications satellite during the years 1985 through 1994.  The Trust involved a

complex series of financial transactions involving the development and placement in

space of the communications satellite.

             The Spacenet action involves a certain master lease relating to the lease

of 24 satellite transponders carried on a satellite which was launched into orbit in 1985.

The satellite earned money for the Trust through receipt of sums from television and radio broadcasters for the use of electronic signals transmitted for television and radio broadcasting by the satellite's "transponders."  A transponder automatically transmits a broadcasting signal upon reception of such a signal from another transmitter.

Because adequate supply of fuel was crucial to the operation of the satellite, the trustee and the satellite owner executed the Agreement Regarding Fuel ("Fuel Agreement"), whereby the satellite owner agreed to make certain stipulated fuel shortfall payments, entitled "Stipulated Loss Value" payments, in the event of a fuel shortage.  It is alleged that such a fuel shortage occurred, thereby triggering the trustee's rights to demand payment from the satellite owner under the terms of the Fuel Agreement.  Accordingly, in the Spacenet action, the trustee seeks to recover from the satellite owner the sum of $40,785,455, representing a "Stipulated Loss Value" payment set forth for in the Fuel Agreement.

The satellite owner served its answer in the Spacenet action, denying all liability and pleading defenses and counterclaims, including, among other things, that: (a) the provision in the Fuel Agreement as to Stipulated Loss Value was an unenforceable penalty under New York law; (b) the satellite's failure resulted from a catastrophic event or mechanical failure and not from a lack of fuel; and (c) the satellite in fact had sufficient fuel on the applicable date.

In September 1997, the trustee and the defendants in the Spacenet litigation conditionally agreed to a proposed settlement which provides for the satellite owner to pay $8.5 million, of which $6.97 million would be paid to the Trust.

2



The trustee thereupon commenced this action by "Verified Petition For Construction of Trust and Approval of Proposed Settlement," seeking, among other things: (a) a declaration that it had the authority to commence the Spacenet action; (b) a declaration that it had the authority to settle the Spacenet action; and (c) judicial approval of the proposed settlement of the Spacenet action. 186 trust beneficiaries, jointly represented by one law firm, have submitted opposition to the trustee's application for a declaratory judgment and approval of the proposed settlement.

The trustee predicates his commencement of the Spacenet action, vis-a-vis the beneficiaries of the Trust, upon section 5.02 of the Investor Trust Agreement. That section provides that, in the event of an event of a default under the master lease:

> the Trustee shall give prompt written notice of such event of default to the Lessee, the Grantor and the Beneficiaries by certified mail, postage prepaid. In the event that such event of default has not been cured within 30 days after mailing of such notice, the Trustee shall take such action or shall refrain from taking such action, not inconsistent with the provisions of the Agreements, with respect to such event of default as the Trustee shall be directed in writing by all of the Beneficiaries, or, <u>if no such direction has been received from all of the Beneficiaries within 30 days after the mailing of such notice to the Beneficiaries, the Trustee shall, in its sole discretion ... take such action as shall be necessary to terminate the Master Lease, to obtain the benefits of the Master Collateral Assignment Agreement and to cause the Lessee thereunder to perform all of its obligations upon such termination.</u>

(emphasis supplied).

Prior to commencing the Spacenet action, the trustee sent the requisite notice under Section 5.02 of the Investor Trust Agreement to the proper parties, including the beneficiaries, and did not, in return, receive any "directions" from the beneficiaries.

3

By decision and judgment dated October 21, 1998, this Court held that the Trust Agreement did not confer upon the trustee authority to settle the action in question.[1] Having decided that such authority to settle the Spacenet action was lacking, the Court never reached the trustee's further request for judicial approval of the proposed settlement. The trustee appealed from the October 21, 1998 decision and judgment.

The Appellate Division reversed (__ AD2d __ , 706 NYS2d 114 [First Dept 2000]). The Appellate Division held that the trustee was, in fact, vested with the authority to settle the Spacenet action, stating that:

> It is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries (see, United States Trust Co. of N. Y. v First Nat. City Bank, 57 AD2d 285, 295-296 affd 45 NY2d 869; Restatement [Second] of Trusts § 186, comments a, d). In this matter, the same provision of the trust agreement which, the parties do not dispute, gave the trustee the power to commence the underlying action, also vests the trustee with the power to "take such action as shall be necessary" with respect to the subject matter of the underlying action. We now find that this provision includes the power to settle that action. We take no position on whether the settlement agreement, in its present form, should be approved and remand the matter to the IAS court to consider all relevant factors in determining whether such approval is warranted.

(Id.).

Thus, this matter is now before this Court on remand to determine

---

[1] On a motion seeking, inter alia, reargument and clarification of the October 21, 1998 decision and judgment, this Court held that the trustee had the authority, pursuant to section 5.02 of the Investor Trust Agreement, to "take such action" as might be necessary under the circumstances, including commencing the Spacenet action (Decision and Order dated April 12, 1999).

4

whether or not approval of the proposed settlement is warranted.

As set forth in the Petition, the trustee maintains that the proposed settlement of the Spacenet action is reasonable and prudent, and the best way to conserve and protect the Trust's assets.  In support, the trustee argues that: (a) there is a serious risk that the Spacenet defendants may prevail on one or more of the defenses asserted by them in the Spacenet action, thereby precluding any recovery by the trustee in the Spacenet action; and (b) prosecution of the Spacenet action would be very costly and time consuming, because such cases are extremely expert-intensive and technically complex.

The opposition offered by the 186 trust beneficiaries goes primarily to their belief that the settlement amount is too low.  They claim that the proposed settlement is unreasonable and contrary to their best interests, arguing that: (a) the plain terms of the Fuel Agreement require payment of the "Stipulated Loss Value" of approximately $40 million (now over $60 million with interest); (b) the proposed settlement would substantially compromise that amount to $8.5 million; and (c) the trustee has not in any way tested any of the defenses raised in the Spacenet litigation, but rather agreed to that substantial compromise despite having failed to take any discovery or to file any dispositive motions in the Spacenet litigation.

Since the objecting beneficiaries have not submitted any evidence to show that the trustee's actions may have been based on some ulterior motive or that the trustee is somehow itself interested in the transaction other than in its fiduciary capacity, the trustee submits that the dispute comes down to whose view as to the

5



wisdom of the proposed settlement should prevail - - that of the trustee or that of the objecting beneficiaries.

Here, the trustee is the entity to whom the Investor Trust Agreement gives sole power to "take such action as shall be necessary" with respect to the subject matter of the underlying action.  While there is some question as to whether the applicable standard of review here is the business judgment rule or the prudent man standard, the conclusion is the same under either standard - - the trustee's decision to compromise the Spacenet action is within the scope of the trustee's powers, is reasonable and prudent, and is entitled to judicial deference.  Thus, in view of the trustee's showing of the reasonableness of the proposed settlement herein, and in the absence of any evidence tending to show a breach by the trustee of its fiduciary duties, the trustee's view must prevail.  The Court will not invalidate the proposed settlement merely because certain beneficiaries believe a greater recovery might be obtained if the Spacenet action is submitted to an expensive and unpredictable litigation.

## CONCLUSION

Accordingly, on remand, the Court holds that approval of the proposed settlement of the Spacenet action is warranted, and grants the trustee's motion to that extent.  Settle order/ judgment.

Dated: August 16 , 2000

ENTER:

_____

J.S.C.

6

# Exhibit 12

**David Parnes**

# Memo

**To:**   Robert Meister
**From:**   David Parnes
**CC:**   Robert Brighton
**Date:**   5/15/2012
**Re:**   Original Note of $4mm in Favor of TPR

Attached is the original note of $4,000,000 made by the Orly Genger 1993 Trust in favor of TPR Investment Associates, Inc. The note is being purchased by the Manhattan Safety Company ("Manhattan"). We understand, that you are swapping this note for a different instrument in favor of Manhattan. At their request, we are delivering you this instrument to be held until they receive physical possession of the original new instrument. At that time, you may return this original to the Orly Genger 1993 Trust.

1

## PROMISSORY NOTE

$4,000,000                                                      October 3, 2011

FOR VALUE RECEIVED, the undersigned, the Orly Genger 1993 Trust ("Borrower"), by way of its current sole trustee, Dalia Genger, promises to pay to TPR Investment Associates, Inc., a Delaware corporation ("Lender") the sum of $4,000,000 ("Principal") together with interest thereon at the rate of three percent (3%) percent per annum, payable as follows, and further covenants, to Lender, as follows:

The Principal together with all interest accrued thereon shall be due and payable to, or to the order of, Lender on the earliest of:

    (i)    November 1, 2012;

    (ii)   Immediately upon Borrower's receipt of the proceeds from the sale of TRI shares either pursuant to the interpleader action pending in the United States District Court for the Southern District of New York (the "Court") in *Pedowitz v. TPR*, 11 Civ. 5602, or otherwise.

Notwithstanding anything to the contrary herein or in the parties' accompanying Settlement Agreement, to the extent that the Court awards Lender any of the interpleaded funds, Lender shall first retain such funds to the extent necessary to pay down this Note in full, and then transfer any remaining funds to Borrower.

The occurrence and continuation of any one or more of the following events shall constitute an event of default under this New Note ("Event of Default"):

    (a)    <u>Payment Default</u>. Borrower shall fail to make any required payment due in connection with this New Note.

    (b)    <u>Third Party Lien or Caveat</u>. The creation of a lien on Borrower's property, or the entry of a caveat (which Lender deems material), that has not been removed ten (10) days of its creation.

    (c)    <u>Change of Trustee</u>. The resignation, removal, or otherwise change of trustee of Borrower.

    (d)    <u>Bankruptcy Default</u>. The Borrower shall (i) commence any case, proceeding or other action under any existing or future law of any jurisdiction relating to seeking to have an order for relief entered with respect to it or its debts, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other such relief with respect to it or its debts, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or substantially all of its assets (each of

the foregoing, a "Bankruptcy Action"); (ii) become the debtor named in any Bankruptcy Action which results in the entry of an order for relief or any such adjudication or appointment described in the immediately preceding clause (i), or remains undismissed, undischarged or unbonded for a period of sixty (60) days; or (iii) make a general assignment for the benefit of its creditors.

In each and every Event of Default, the Lender may, without limiting any other rights it may have at law or in equity, by written notice to the Borrower, declare the unpaid Principal of and Interest on this New Note due and payable, whereupon the same shall be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which the Borrower hereby expressly waives, and the Lender may proceed to enforce payment of such Principal and Interest or any part thereof in such manner as it may elect in its discretion.

This Note may be prepaid in whole or in part at any time without premium or penalty.

All prepayments shall be applied first to interest, then to principal payments in the order of their maturity.

The undersigned agrees to pay all costs and expenses, including all reasonable attorneys' fees, for the collection of this Note upon default. All payments shall be made at 1211 Park Avenue, New York, NY, 10128, or at such other place as the holder hereof may from time to time designate in writing.

Upon default, whether pursuant to an Event of Default or otherwise, the interest rate shall be increased to an amount ("Overdue Rate") equal to the maximum legal rate of interest permitted by applicable law.

If this New Note is not paid when due, Borrower promises to pay all costs and expenses of collection and attorneys' fees incurred by the holder hereof on account of such collection, whether or not suit is filed thereon. Borrower consents to renewals, replacements and extensions of time for payment hereof, before, at, or after maturity; consents to the acceptance, release or substitution of security for this note, and waives protest, presentment, demand for payment, notice of default or nonpayment and notice of dishonor and the right to assert any statute of limitations. The indebtedness evidenced hereby shall be payable in lawful money of the United States.

This New Note shall be governed by, and shall be construed and enforced in accordance with, the laws of the state of Delaware without giving effect to the conflict of law rules thereof, and shall be adjudicated before the appropriate Courts of the State of Delaware.

_Dalia Genger_
THE ORLY GENGER 4993 TRUST

# Exhibit 13

**Robert Meister**

| | |
|---|---|
| **From:** | Allingham II, Thomas J <Thomas.Allingham@skadden.com> |
| **Sent:** | Monday, April 23, 2012 5:19 PM |
| **To:** | 'Yoav M. Griver' |
| **Cc:** | ljw@msk.com; pdm@msk.com; Dellajo@duanemorris.com; emichailidis@duanemorris.com; robert.meister@pedowitzmeister.com; Bryan D. Leinbach; asash@mclaughlinstern.com; dcavanaugh@lyons-mcgovern.com; esilverman@wmllp.com; William Wachtel; robert.meister@pedowitzmeister.com; Frank, William P; Clark, Anthony W |
| **Subject:** | TRI Dividends |

Dear Yoav:

In response to your letter of April 17, 2012, without acknowledging any obligation to respond to this or any other requests regarding TRI business, please note the following (numbered items correspond to your numbered questions):

1.  An aggregate amount of $27,000,000 of dividends were paid during calendar 2011.

2.  2.  Yes, 32.5% of those dividends were escrowed with Skadden ($8,707,500) and, as of today, that amount plus interest accrued remains escrowed with Skadden.

3.  3.  TRI's Board of Directors has authorized dividends during 2012 aggregating $25,618,968 and as with the above, 32.25% of such dividends is being escrowed with Skadden under the escrow arrangement previously discussed among all the parties.

Tom

---

**From:** Yoav M. Griver [mailto:YGriver@zeklaw.com]
**Sent:** Tuesday, April 17, 2012 4:55 PM
**To:** Allingham II, Thomas J (WIL)
**Cc:** ljw@msk.com; pdm@msk.com; Dellajo@duanemorris.com; emichailidis@duanemorris.com; robert.meister@pedowitzmeister.com; Bryan D. Leinbach; asash@mclaughlinstern.com; dcavanaugh@lyons-mcgovern.com; esilverman@wmllp.com; William Wachtel; robert.meister@pedowitzmeister.com; Frank, William P (NYC); Clark, Anthony W (WIL)
**Subject:** Genger -- Letter

Letter to your attention.  Thank you.


**Yoav M. Griver, Esq.**                           **ZEK**
Partner
Zeichner Ellman & Krause LLP

575 Lexington Avenue
New York, New York 10022
Tel. (212) 826-5338
Fax (212) 753-0396
ygriver@zeklaw.com

NEW YORK | NEW JERSEY | CONNECTICUT

This transmission may contain sensitive and/or privileged information. The sender does not waive any privilege or confidentiality in the event of an inadvertent transmission to an unauthorized recipient. In the event of such a transmission, kindly contact the sender to arrange retrieval. IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

--------------------------------------------------------------------------
*****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
*****************************************************
*****************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*****************************************************
==================================================================

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of
ORLY GENGER, as a person interested, for the          AFFIDAVIT OF SERVICE
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)      File No. 0017/2008
- - - - - - - - - - - - - - - - - - - - - - - - x


STATE OF NEW YORK          )
                           : ss.:
COUNTY OF NEW YORK         )

      JORDANA PALGON, being duly sworn, deposes and says: I am over the age of

18 years and not a party to this action, and have an office at 570 Lexington Avenue, 18th

Floor, New York, NY 10022.  On the 19th day of November, 2012, I served the annexed

NOTICE OF MOTION TO DISMISS THIRD AMENDED PETITION by sending same

via pre-paid Priority U.S. mail to counsel for Petitioner at the following address:

Ralph Hochberg, Esq.
Platzer, Swergold, Karlin, Levine,
Goldberg & Jaslow, LLP
1065 Avenue of the Americas
18th Floor
New York, NY 10018


                                                     _____
                                                    Jordana Palgon

Sworn to before me this
19th day of November, 2012.

_____
Notary Public

ROBERT A. MEISTER
Notary Public, State of New York
No. 31-02ME2653350
Qualified in New York County
Commission Expires March 30, 2015

COMPULSORY ACCOUNTING CITATION

File No.
0017/2008 /A

SURROGATE'S COURT : NEW YORK COUNTY

CITATION

THE PEOPLE OF THE STATE OF NEW YORK,

By the Grace of God Free and Independent

TO    **DALIA GENGER**
~~200 East 65th Street~~
~~Apt. #32W~~
~~New York, NY 10021~~

A petition having been filed by **ORLY GENGER**,

who is domiciled or in the case of a corporation, its principal office, at: 780 Greenwich Street, Apartment #4P, New York, NY

YOU ARE HEREBY CITED TO SHOW CAUSE before the Surrogate's Court for the State of New York, County of New York at 31 Chambers Street, Room _509_ New York, New York on _December 18, 2012_

at _10 : 00_ o'clock in the forenoon of that day

why **DALIA GENGER** should not: (i) file an account of her proceedings and cause same to be judicially settled and upon failure to file her account with petition for judicial settlement on the return date of citation, that the court issue an order requiring her to file an account with respect to the ORLY GENGER 1993 TRUST; and (ii) be surcharged as a result of her breach of her fiduciary duties to the Orly Genger 1993 Trust and to Petitioner as its sole beneficiary including, but not limited to, a surcharge in the amount of any loss of value of the Orly Genger 1993 Trust's assets and all of the Petitioner's reasonable attorneys' fees, costs and expenses.

**[For additional relief pursuant to SCPA §2205 and §2206, check the appropriate box]:**

[X] upon failure to appear on the return date of process without satisfactory excuse therefore, or upon failure to file an account in the time and manner directed by the court, let **DALIA GENGER** show cause why she should not be suspended and why the court should not appoint Joel Isaacson, an eligible person, as temporary fiduciary and to fix a trial date for a hearing on the removal of **DALIA GENGER** whose letters have been suspended and for the appointment of Joel Isaacson, as Successor Fiduciary.

[  ] if the fiduciary's letters are suspended or the fiduciary fails to account in the time and manner directed by the court, why the court should not fix a date for a hearing to take and state the fiduciary's account, in accordance with the proposed accounting attached to the petition, the summary statement of which account has been served herewith.

Dated, Attested and Sealed,

Honorable Nora S. Anderson,
Surrogate

November 20, 2012
(Seal)

_____
Chief Clerk

Name of Attorney:  Ralph R. Hochberg, Esq., Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
Telephone No.: (212) 593-3000

Address of Attorney: 1065 Avenue of the Americas, New York, NY  10018

[Note: This citation is served upon you as required by law.  You are not required to appear.  If you fail to appear it will be assumed you do not object to the relief requested.  You have a right to have an attorney appear for you, and you or your attorney may request a copy of the full account from the petitioner or petitioner's attorney.]

PROOF OF SERVICE MUST BE FILED TWO DAYS PRIOR TO THE RETURN DATE
Court Rule 207.7(c)

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- X
In the Matter of the Application for a Compulsory Accounting
and Related Relief by ORLY GENGER, as a person interested
in the ORLY GENGER 1993 TRUST,

                                        Petitioner,

            against
DALIA GENGER,

                                Respondent.

------------------------------------------------------------------- X

File No. 0017/2008-A

**NOTICE OF APPEARANCE
AND ADMISSION OF SERVICE**

        PLEASE TAKE NOTICE that DALIA GENGER hereby appears in this proceeding,

admits due and timely service, and has retained Pedowitz & Meister LLP as her attorneys and demands

that all pleadings, briefs and other documents be served on them at the address below stated.

                          PEDOWITZ & MEISTER LLP

                          By
                          Robert A. Meister, Esq.
                          570 Lexington Avenue
                          New York, New York  10022
                          (212) 403-7333

                          Attorneys for Respondent Dalia Genger

TO:
CLERK OF THE COURT
31 Chambers Street
New York, New York 10010

PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
1065 Avenue of the Americas – 18th Floor
New York, NY 10018
Attorneys for Orly Genger



New York County Surrogate's Court
MISCELLANEOUS DEPT.

DEC 0 5 2012

FILED
Clerk

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
-------------------------------------------------------------------------X
In the Matter of the Application for a Compulsory Accounting
and Related Relief by ORLY GENGER, as a person interested
in the ORLY GENGER 1993 TRUST,                           Index #: 0017/2008-A

                              Petitioner,

        -against-

DALIA GENGER,                                    **AFFIDAVIT OF SERVICE**

                              Respondent.

-------------------------------------------------------------------------X

State of New York     )
                      ) ss:
County of New York    )

        David Bartky, being sworn, deposes and says:

        I am over the age of 18, and reside at 570 Lexington Avenue, 18th Floor, New York, New
York 10022.

        On the 5th day of December, 2012, deponent served the attached NOTICE OF
APPEARANCE AND ADMISSION OF SERVICE via pre-paid, First Class, U.S. mail to:

                    Platzer, Swergold, Karlin,e t al
                    1065 Avenue of the Americas, 18th Fl.
                    New York, NY 10018


                                        David Bartky


Subscribed and Sworn to
before me this 5th day
of December, 2012


Notary Public
ROBERT A. MEISTER
Notary Public, State of New York
No. 31-02ME2653350
Qualified in New York County
Commission Expires March 30, 2011

New York County Surrogate's Court
MISCELLANEOUS DEPT.

DEC 0 5 2012

FILED
Clerk

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)
- - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION
TO DISMISS THIRD
AMENDED PETITION

File No. 0017/2008

PLEASE TAKE NOTICE that upon the annexed affirmation of Robert A. Meister, the

Third Amended Petition on file, the November 7, 2012 stipulation of the parties, and all prior

proceedings had herein, DALIA GENGER, as Trustee of the Orly Genger 1993 Trust, will move

this Court sitting, at 31 Chambers Street, Room 509, New York, New York, at 10:00 a.m. in the

forenoon of January 15, 2013, or as soon as counsel can be heard, for an Order dismissing the

Third Amended Petition on the grounds that the Petition (1) fails to state a valid claim for

removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust, and (2) fails to name, join

and serve all persons interested.

Pursuant to CPLR §2214(b), any answering papers must be served so as to be received by

January 8, 2013.

TO:
Platzer, Swergold, Karlin, Levine,
Goldberg & Jaslow, LLP
1065 Avenue of the Americas – 18th Floor
New York, NY 10018
212.593.3000
Attn. Ralph Hochberg, Esq.
Counsel for Petitioner

PEDOWITZ & MEISTER LLP

By _____
    Robert A. Meister
570 Lexington Avenue – 18th Floor
New York, NY 10022
212.403.7330
Attorneys for DALIA GENGER,
    as Trustee of the Orly Genger 1993 Trust

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
--------------------------------------------------------------------------------X
In the Matter of the Application for a Compulsory Accounting and
Related Relief by ORLY GENGER, as a person
interested in the ORLY GENGER 1993 TRUST,                    File No. 0017/2008-A

                                    Petitioner,

               -against-

DALIA GENGER,

                                    Respondent.

--------------------------------------------------------------------------------X

New York County Surrogate's Court
MISCELLANEOUS DEPT.

DEC 0 5 2012

FILED

Clerk_____

## STIPULATION ADJOURNING RETURN DATE OF CITATION
## OF PETITION FOR A COMPULSORY ACCOUNTING
## AND RELATED RELIEF UNDER SCPA § 2205

**WHEREAS,** the Petition for a Compulsory Accounting and Related Relief under SCPA

§ 2205 (the "Petition") in the above-captioned matter was filed by the petitioner, Orly Genger

(the "Petitioner") with the Court on November 7, 2012; and,

**WHEREAS,** the Citation was issued by the Court with respect to the Petition on

November 20, 2012 (the "Citation"); and,

**WHEREAS,** the Citation having directed the Respondent to appear before the Court on

December 18, 2012 at 10:00 a.m. (the "Citation Return Date") to show cause why the relief in

the Petition should not be granted; and,

**WHEREAS,** the Respondent's counsel having requested that Petitioner's counsel

consent to his request for an adjournment of the Citation Return Date on the grounds that

Respondent's counsel is engaged in a trial during the week of the Citation Return Date; and,

**WHEREAS,** the Petitioner having consented to the adjournment;

IT IS HEREBY STIPULATED, AGREED AND CONSENTED to by the undersigned on

behalf of the respective parties as follows:

1.    The Citation Return Date is hereby adjourned on consent to January 15, 2013 at

10:00 a.m.

2.    This Stipulation may be executed in two counterparts and by facsimile or E-Mail

scanned signature, each of which shall be deemed an original, together which shall for all

purposes constitute one Stipulation binding upon each of the parties hereto

Dated:  December 4, 2012
        New York, NY


PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Petitioner, Orly Genger


By:   _____
        Ralph R. Hochberg, Esq.
        Mitchell L. Kaplan, Esq.
        1065 Avenue of the Americas - 18th Floor
        New York, New York 10018
        Tel (212) 593-3000

Dated:   December 5 , 2012
         New York, NY

PEDOWITZ & MEISTER, LLP
Attorneys for Respondent, Orly Genger

By:   _____
        Robert Meister, Esq.
        570 Lexington Avenue, 18th Floor
        New York, NY  10022-6837
        (Tel)  (212) 403-7333

# FAX TRANSMISSION

## PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG & JASLOW
1065 Avenue of the Americas
NEW YORK, NEW YORK 10018
PHONE NO.: 212-593-3000
FAX NO.: 212-593-0353

TO:   Surrogates' Court of the State of NY          **Date:**   January 8, 2012
      Attn:   Clerk of the Miscellaneous Dept.

FACSIMILE:   212-748-5971                            **Pages:**   8⁻²page(s), including this
                                                   cover sheet.

FROM:   Mitchell L. Kaplan, Esq..

RE:   In the Matter of the Application of ORLY GENGER, as a person interested, for the
      removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA
      § 711(11)  **File No. 0017/2008**

      In the Matter of the Application for a Compulsory Accounting and Related Relief
      by ORLY GENGER, as a person interested in the Orly Genger 1993 Trust
      **File No. 0017/2008/A**

**Notice:**

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.
**Tax Advice Disclosure:**

To ensure compliance with the requirements imposed by the IRS in Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.  Thank you.

# PLATZER, SWERGOLD, KARLIN,
## LEVINE, GOLDBERG & JASLOW, LLP
### *COUNSELORS AT LAW*

1065 AVENUE OF THE AMERICAS
SUITE 1800
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM
NY DCL # 1315219

PLAZA 1000 AT MAIN STREET
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to*
*New Jersey Office*

January 8, 2013

VIA FACSIMILE ONLY
212-748-5971
Surrogate's Court of the State of New York
County of New York
31 Chambers Street
New York, NY 10007

Attention:    Clerk of the Miscellaneous Department

Re:    In the Matter of the Application of ORLY GENGER, as a person interested,
for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA § 711(11)
**File No. 0017/2008**

In the Matter of the Application for a Compulsory Accounting and Related Relief
by ORLY GENGER, as a person interested in the Orly Genger 1993 Trust
**File No. 0017/2008/A**

Dear Clerk of the Court:

This law firm is counsel to Petitioner, Orly Genger, (the "Petitioner") in both of the above-referenced proceedings.

The Petitioner has previously filed a Third Amended Petition with the Court (the "Third Amended Petition") seeking, *inter alia*, the removal of respondent, Dalia Genger (the "Respondent") as trustee of the Orly Genger 1993 Trust.

In response to same, the Respondent has filed a Motion to Dismiss (the "Motion to Dismiss") the Third Amended Petition, which is presently returnable before the Court on January 15, 2013.

In addition, the Petitioner previously filed a Petition with the Court for a compulsory accounting. The return date of the Citation is also January 15, 2013 and was previously adjourned on consent at the Respondent's request.

g:\skolnick & hochberg\wordproc\genger\letter to miscellaneous department clerk.doc

PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP
COUNSELORS AT LAW

Clerk of the Miscellaneous Department
Page -2-
January 8, 2013

The Petitioner requires additional time to submit opposition papers to the Motion to Dismiss and the Respondent has consented to same. Accordingly, enclosed please find as follows:

1. The parties' Stipulation adjourning the hearing date of the Motion to Dismiss on consent from January 15, 2013 to January 25, 2013; and,

2. The parties' Stipulation adjourning the return date of the Citation for the Compulsory Accounting proceeding from January 15, 2013 to January 25, 2013.

Kindly confirm that the enclosed Stipulations are acceptable at the Court's earliest possible convenience. Thank you for your courtesies with this matter.

Respectfully submitted,
PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP

By: _Mitchell L. Kaplan_
Mitchell L. Kaplan

MLK:wl
Enclosures
cc: Robert Meister, Esq (Counsel to Respondent, Dalia Genger) – **Via E-Mail Only**

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

---

### STIPULATION ADJOURNING RETURN DATE OF RESPONDENT'S MOTION TO DISMISS PETITIONER'S THIRD AMENDED PETITION TO REMOVE DALIA GENGER AS TRUSTEE AND FOR RELATED RELIEF

**WHEREAS**, Petitioner, Orly Genger ("Petitioner") having previously filed a Third Amended Petition (the "Third Amended Petition") seeking, *inter alia*, the immediate removal of respondent, Dalia Genger (the "Respondent") as Trustee of the Orly Genger 1993 Trust in the above-captioned matter; and,

**WHEREAS**, the Respondent having requested that the Petitioner consent to allow her additional time to respond to the Third Amended Petition and the Petitioner having consented to same pursuant to a prior stipulation entered into by and between the parties through their respective counsel; and,

**WHEREAS**, the Respondent having filed a Motion to Dismiss (the "Motion to Dismiss") the Third Amended Petition, which is presently returnable before the Court on January 15, 2013 (the "Return Date"); and,

**WHEREAS**, the Petitioner having requested additional time to submit opposition papers to the Motion to Dismiss and the Respondent having consented to same;

IT IS HEREBY STIPULATED, AGREED AND CONSENTED to by the undersigned on

behalf of the respective parties as follows:

    1.    The Return Date is hereby adjourned on consent to January 25, 2013 at 10:00 a.m.

    2.    This Stipulation may be executed in two counterparts and by facsimile or E-Mail

scanned signature, each of which shall be deemed an original, together which shall for all

purposes constitute one Stipulation binding upon each of the parties hereto

Dated: January 7, 2013
       New York, NY

PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Petitioner, Orly Genger

By: _____

    Ralph R. Hochberg, Esq.
    Mitchell L. Kaplan, Esq.
    1065 Avenue of the Americas - 18th Floor
    New York, New York 10018
    Tel (212) 593-3000

Dated: January 8, 2013
       New York, NY

PEDOWITZ & MEISTER, LLP
Attorneys for Respondent, Orly Genger

By: _____

    Robert Meister, Esq.
    570 Lexington Avenue, 18th Floor
    New York, NY 10022-6837
    (Tel) (212) 403-7333

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK

----------------------------------------------------------X
In the Matter of the Application for a Compulsory Accounting and
Related Relief by ORLY GENGER, as a person
interested in the ORLY GENGER 1993 TRUST,                    File No. 0017/2008-A

                                        Petitioner,

                    -against-

        DALIA GENGER,

                            Respondent.

----------------------------------------------------------X

## STIPULATION FURTHER ADJOURNING RETURN DATE OF CITATION OF PETITION FOR A COMPULSORY ACCOUNTING AND RELATED RELIEF UNDER SCPA § 2205

**WHEREAS**, the Petition for a Compulsory Accounting and Related Relief under SCPA § 2205 (the "Petition") in the above-captioned matter was filed by the petitioner, Orly Genger (the "Petitioner") with the Court on November 7, 2012; and,

**WHEREAS**, the Citation was issued by the Court with respect to the Petition on November 20, 2012 (the "Citation"); and

**WHEREAS**, the Citation having directed the respondent, Dalia Genger (the "Respondent") to appear before the Court on December 18, 2012 at 10:00 a.m. to show cause why the relief in the Petition should not be granted; and,

**WHEREAS**, the Respondent's counsel having requested that Petitioner's counsel consent to his request for an adjournment of the return date of the Citation on the grounds that Respondent's counsel was engaged on trial; and,

**WHEREAS**, the Petitioner having consented to the adjournment pursuant to a prior stipulation entered into by and between the parties and the return date of the Citation having been adjourned on consent to January 15, 2013 (the "Return Date"); and,

WHEREAS, the Petitioner having previously filed a Third Amended Petition (the "Third Amended Petition") seeking, *inter alia*, the immediate removal of the Respondent as Trustee of the Orly Genger 1993 Trust and the Respondent having filed a Motion to Dismiss (the "Motion to Dismiss") same, which is also returnable on the Return Date; and,

WHEREAS, the Petitioner having requested additional time to submit opposition papers to the Motion to Dismiss and the Respondent having consented to same and the parties would like both matters to be heard on the same date

IT IS HEREBY STIPULATED, AGREED AND CONSENTED to by the undersigned on behalf of the respective parties as follows:

1.    The Return Date is hereby further adjourned on consent to January 25, 2013 at 10:00 a.m.

2.    This Stipulation may be executed in two counterparts and by facsimile or E-Mail scanned signature, each of which shall be deemed an original, together which shall for all purposes constitute one Stipulation binding upon each of the parties hereto

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK. SIGNATURES APPEAR ON FOLLOWING PAGE]

Dated: January 2, 2013
   New York, NY


PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Petitioner, Orly Genger

By: _____

   Ralph R. Hochberg, Esq.
   Mitchell L. Kaplan, Esq.
   1065 Avenue of the Americas - 18th Floor
   New York, New York 10018
   Tel (212) 593-3000


Dated:   January ___, 2013
   New York, NY

PEDOWITZ & MEISTER, LLP
Attorneys for Respondent, Orly Genger

By: _____

   Robert Meister, Esq.
   570 Lexington Avenue, 18th Floor
   New York, NY 10022-6837
   (Tel) (212) 403-7333

# FAX TRANSMISSION

## PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG & JASLOW
1065 Avenue of the Americas
NEW YORK, NEW YORK 10018
PHONE NO.: 212-593-3000
FAX NO.: 212-593-0353

TO:  Surrogates' Court of the State of NY
Attn:  Clerk of the Miscellaneous Dept.

**Date:**  January 17, 2012

FACSIMILE:  212-748-5971

**Pages:**  8, page(s), including this
cover sheet.

FROM:  Mitchell L. Kaplan, Esq..

RE:  In the Matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11)  **File No. 0017/2008**

In the Matter of the Application for a Compulsory Accounting and Related Relief by ORLY GENGER, as a person interested in the Orly Genger 1993 Trust **File No. 0017/2008/A**

Notice:

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.
Tax Advice Disclosure:

To ensure compliance with the requirements imposed by the IRS in Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. Thank you.

# PLATZER, SWERGOLD, KARLIN,
# LEVINE, GOLDBERG & JASLOW, LLP

*COUNSELORS AT LAW*

1065 AVENUE OF THE AMERICAS
SUITE 1800
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM
NY DCL # 1315219

PLAZA 1000 AT MAIN STREET
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to*
*New Jersey Office*

January 17, 2013

VIA FACSIMILE ONLY
212-748-5971
Surrogate's Court of the State of New York
County of New York
31 Chambers Street
New York, NY 10007

Attention:      Clerk of the Miscellaneous Department

Re:      In the Matter of the Application of ORLY GENGER, as a person interested,
for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA § 711(11)
**File No. 0017/2008**

In the Matter of the Application for a Compulsory Accounting and Related Relief
by ORLY GENGER, as a person interested in the Orly Genger 1993 Trust
**File No. 0017/2008/A**

Dear Clerk of the Court:

This law firm is counsel to Petitioner, Orly Genger, (the "Petitioner") in both of the
above-referenced proceedings.

In furtherance of my discussion yesterday with Sandra from your office, enclosed please
find copies of executed Stipulations for both of the above-referenced proceedings further
confirming the adjournment of both pending matters to March 1, 2013.

g:\skolnick & hochberg\wordproc\genger\letter to miscellaneous department clerk02.doc

**PLATZER, SWERGOLD, KARLIN,**
**LEVINE, GOLDBERG & JASLOW, LLP**

*COUNSELORS AT LAW*

Clerk of the Miscellaneous Department
Page -2-
January 17, 2013

Thank you for your courtesies with this matter.

Respectfully submitted,
PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP

By: _____
Mitchell L. Kaplan

MLK:wl
Enclosures
cc: Robert Meister, Esq (Counsel to Respondent, Dalia Genger) — **Via E-Mail Only** (with enclosures)

g:\skolnick & hochberg\wordproc\genger\letter to miscellaneous department clerk#2.doc

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

File No. 0017/2008

_____

### STIPULATION ADJOURNING RETURN DATE OF RESPONDENT'S MOTION TO DISMISS PETITIONER'S THIRD AMENDED PETITION TO REMOVE DALIA GENGER AS TRUSTEE AND FOR RELATED RELIEF

WHEREAS, Petitioner, Orly Genger ("Petitioner") having previously filed a Third Amended Petition (the "Third Amended Petition") seeking, *inter alia*, the immediate removal of respondent, Dalia Genger (the "Respondent") as Trustee of the Orly Genger 1993 Trust in the above-captioned matter; and,

WHEREAS, the Respondent having requested that the Petitioner consent to allow her additional time to respond to the Third Amended Petition and the Petitioner having consented to same pursuant to a prior stipulation entered into by and between the parties through their respective counsel; and,

WHEREAS, the Respondent having filed a Motion to Dismiss (the "Motion to Dismiss") the Third Amended Petition, which is presently returnable before the Court on January 15, 2013 (the "Return Date"); and,

WHEREAS, the Petitioner having requested additional time to submit opposition papers to the Motion to Dismiss and the Respondent having consented to same;

IT IS HEREBY STIPULATED, AGREED AND CONSENTED to by the undersigned on

behalf of the respective parties as follows:

1.    The Return Date is hereby adjourned on consent to March 1, 2013 at 10:00 a.m.

2.    This Stipulation may be executed in two counterparts and by facsimile or E-Mail

scanned signature, each of which shall be deemed an original, together which shall for all

purposes constitute one Stipulation binding upon each of the parties hereto.

Dated: January 15, 2013
       New York, NY


PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Petitioner, Orly Genger


By: _____
      Ralph R. Hochberg, Esq.
      Mitchell L. Kaplan, Esq.
      1065 Avenue of the Americas – 18th Floor
      New York, New York 10018
      Tel (212) 593-3000

Dated: January 16, 2013
       New York, NY

PEDOWITZ & MEISTER, LLP
Attorneys for Respondent, Dalia Genger

By: _____
      Robert Meister, Esq.
      570 Lexington Avenue, 18th Floor
      New York, NY  10022-6837
      (Tel) (212) 403-7333

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
------------------------------------------------X
In the Matter of the Application for a Compulsory Accounting and
Related Relief by ORLY GENGER, as a person
interested in the ORLY GENGER 1993 TRUST,                           File No. 0017/2008-A

                                    Petitioner,

          -against-

          DALIA GENGER,

                                    Respondent.

------------------------------------------------X

## STIPULATION FURTHER ADJOURNING RETURN DATE OF CITATION OF PETITION FOR A COMPULSORY ACCOUNTING AND RELATED RELIEF UNDER SCPA § 2205

**WHEREAS**, the Petition for a Compulsory Accounting and Related Relief under SCPA § 2205 (the "Petition") in the above-captioned matter was filed by the petitioner, Orly Genger (the "Petitioner") with the Court on November 7, 2012; and,

**WHEREAS**, the Citation was issued by the Court with respect to the Petition on November 20, 2012 (the "Citation"); and,

**WHEREAS**, the Citation having directed the respondent, Dalia Genger (the "Respondent") to appear before the Court on December 18, 2012 at 10:00 a.m. to show cause why the relief in the Petition should not be granted; and,

**WHEREAS**, the Respondent's counsel having requested that Petitioner's counsel consent to his request for an adjournment of the return date of the Citation on the grounds that Respondent's counsel was engaged on trial; and,

**WHEREAS**, the Petitioner having consented to the adjournment pursuant to a prior stipulation entered into by and between the parties and the return date of the Citation having been adjourned on consent to January 15, 2013 (the "Return Date"); and,

**WHEREAS,** the Petitioner having previously filed a Third Amended Petition (the "Third Amended Petition") seeking, *inter alia,* the immediate removal of the Respondent as Trustee of the Orly Genger 1993 Trust and the Respondent having filed a Motion to Dismiss (the "Motion to Dismiss") same, which is also returnable on the Return Date; and,

**WHEREAS,** the Petitioner having requested additional time to submit opposition papers to the Motion to Dismiss and the Respondent having consented to same and the parties would like both matters to be heard on the same date

IT IS HEREBY STIPULATED, AGREED AND CONSENTED to by the undersigned on behalf of the respective parties as follows:

1.     The Return Date is hereby further adjourned on consent to March 1, 2013 at 10:00 a.m.

2.     This Stipulation may be executed in two counterparts and by facsimile or E-Mail scanned signature, each of which shall be deemed an original, together which shall for all purposes constitute one Stipulation binding upon each of the parties hereto

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK. SIGNATURES APPEAR ON FOLLOWING PAGE]

Dated: January 15, 2013
     New York, NY


PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Petitioner, Orly Genger


By: _____

    Ralph R. Hochberg, Esq.
    Mitchell L. Kaplan, Esq.
    1065 Avenue of the Americas - 18th Floor
    New York, New York 10018
    Tel (212) 593-3000

Dated: January 16, 2013
     New York, NY

PEDOWITZ & MEISTER, LLP
Attorneys for Respondent, Dalia Genger


By: _____

    Robert Meister, Esq.
    570 Lexington Avenue, 18th Floor
    New York, NY 10022-6837
    (Tel) (212) 403-7333

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)



New York County Surrogate's Court
MISCELLANEOUS DEPT.

FEB 1 4 2013

Clerk

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER
ORLY GENGER'S ORDER TO SHOW CAUSE AND
<u>FOR TEMPORARY RESTRAINTS</u>**

**Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP**
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Tel: 212-593-300

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

RELIEF REQUESTED ........................................................................................ 3

STATEMENT OF FACTS ................................................................................... 4

ARGUMENT ....................................................................................................... 5

I.      A PRELIMINARY INJUNCTION AND TEMPORARY
        RESTRAINING ORDER ARE WARRANTED ........................................... 5

        A.    Legal Standard Governing Injunctive Relief .................................... 5

        B.    Petitioner is Entitled to a Temporary Restraining Order and
              Preliminary Injunction .................................................................... 6

              1.    Likelihood of Success on the Merits ...................................... 6

              2.    Irreparable Harm .................................................................... 7

              3.    The Balancing of Equities ...................................................... 8

II.     THE COURT SHOULD ENJOIN DALIA FROM CONTINUING
        HER DUPLICATIVE DELAWARE CHANCERY ACTION ..................... 10

III.    THIS COURT SHOULD STOP DALIA FROM COLLATERALLY
        ATTACKING THIS COURT'S AUTHORITY AND
        IRREPARABLY HARMING ORLY AND THE ORLY TRUST
        THROUGH DUPLICATIVE LITIGATION ............................................... 13

IV.     THE COURT SHOULD ENJOIN DALIA FROM COMMENCING
        ANY FURTHER DUPLICATIVE ACTIONS ............................................ 15

V.      THE COURT SHOULD NOT REQUIRE ORLY TO POST AN
        UNDERTAKING ......................................................................................... 16

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bloomingdale v. Bloomingdale,*
    107 Misc. 646 (Sup. Ct. NY Cty. 1919) .................................................................8

*Browne v. Browne,*
    53 A.D.2d 134, 385 N.Y.S.2d 983 (4th Dept. 1976) .........................................11, 14

*Bryan v. Bryan,*
    275 A.D.2d 688, 713 N.Y.S.2d 348 (1st Dept. 2000).......................................11, 12

*Dalia Genger as Trustee of the Orly Genger 1993 Trust v. TR Investors LLC,*
    C.A. No. 6906-CS ...................................................................................................3

*Doe v. Axelrod,*
    73 N.Y.2d 748, 532 N.E.2d 1272, 536 N.Y.S.2d 44 (1988)...................................5

*Doran & Associates, Inc. v. Envirogas, Inc.,*
    112 A.D.2d 766, 492 N.Y.S.2d 504 (4th Dept. 1985) ...........................................16

*Estate of Michael Pavese,*
    195 Misc.2d 1, 752 N.Y.S.2d 198 (Surr. Ct. Nassau County 2002)..........................5

*Fernandez v. Fernandez,*
    39 Misc.2d 471, 240 N.Y.S.2d 926 (Sup. Ct. Bronx Cty. 1963) ............................11

*Garvin v. Garvin,*
    302 N.Y. 96, 96 N.E.2d 721 (1951)......................................................................11

*Hirschfeld v. Margo Feiden Galleries Ltd.,*
    224 N.Y.L.J. 17, 2000 N.Y. Misc. LEXIS 663 (Sup. Ct. NY Cty. July 26, 2000)....................5

*Hon v. Hon,*
    164 Misc.2d 806, 624 N.Y.S.2d 553 (Sup. Ct. Queens Cty. 1995) ....................11, 13

*Interested Underwriters at Lloyd's v. H.D.I. III Associates,*
    213 A.D.2d 246, 623 N.Y.S.2d 871 (1st Dept. 1995)............................................12

*Jay Franco and Sons Inc. v. G Studios, LLC,*
    34 A.D.3d 297, 825 N.Y.S.2d 20 (1st Dept. 2006)................................................11

*Jay Franco and Sons Inc. v. G Studios, LLC,*
    Index No. 602236/05, 2006 WL 5110770 (Sup. Ct. N.Y. Cty. June 14, 2006).......................10

*Lafferty v. Lafferty,*
    243 A.D.2d 541, 663 N.Y.S.2d 108 (2d Dept. 1997) .........................................11, 14

*Martin v. Martin,*
    62 Misc.2d 703, 309 N.Y.S.2d 477 (Sup. Ct. Nassau Cty. 1970) ....................................11, 15

*Moy v. Umeki,*
    10 A.D.3d 604, 781 N.Y.S.2d (2nd Dept. 2004) ......................................................................7

*Palmer v. Palmer,*
    268 A.D. 1010, 52 N.Y.S.2d 383 (3d Dept. 1944) ............................................................11, 14

*Pavlo v. Pavlo,*
    137 Misc.2d 418, 520 N.Y.S.2d 991 (Sup. Ct. Kings Cty. 1987)............................................11

*Pereia v. Pereria,*
    272 A.D. 281, 70 N.Y.S.2d 763 (1st Dept. 1947)............................................................11, 14

## STATUTES AND RULES

CPLR § 6301 *et seq.* ...........................................................................................................................5

CPLR § 6313(c) ..................................................................................................................................16

## PRELIMINARY STATEMENT

The relief requested is simple, but urgent. Petitioner Orly Genger ("Petitioner" or "Orly") seeks a temporary restraining order and preliminary injunction to protect the status quo and the Orly Genger 1993 Trust ("Orly Trust") from additional harm. The relief requested would do nothing more than continue a stay that was ordered by the New York Supreme Court over one year ago, and has been in place since then without any harm to the Orly Trust.

As the Court knows, Orly has brought a petition to remove Dalia as Trustee of her trust because Dalia is working against Orly and the Orly Trust's interests – Dalia is the proverbial fox in charge of the henhouse. As one of her many, continuing efforts to harm the Orly Trust, Dalia has attempted to start an action in Delaware. While purportedly on behalf of the Orly Trust, Dalia's decision to bring an action in Delaware (regarding issues already being litigated in New York) affirmatively harms the Orly Trust and is no accident. Some months before, the Delaware Chancery Court ruled against the Orly Trust's interests, finding that the Orly Trust was not the beneficial owner of the Orly Trust TRI Shares – an asset worth tens of millions of dollars. The Delaware Supreme Court reversed the Chancery Court on the happy technicality that the Chancery Court lacked personal jurisdiction over the Orly Trust, as the Orly Trust was not a part to a Delaware proceeding. Dalia's action is designed to cure that jurisdictional defect, and give the Chancery Court jurisdiction over the Orly Trust. In other words, Dalia has deliberately chosen to spend precious Trust assets bringing an action in the very Court that already has ruled against the Orly Trust. Moreover, Dalia has done so despite the fact that these issues are already being determined in the New York Courts, and all the parties to Dalia's purported action (the Orly Trust, TPR, and the Trump Group entities) are located in New York.

1

Faced with these facts (and no excuse from Dalia as to why she was proceeding in Delaware), the New York Supreme Court did not hesitate. In October 2011, it enjoined Dalia, and every other purported party in Dalia's Delaware Chancery Action (TPR and the Trump Group entities), from proceeding with the Delaware Chancery Action. TPR and the Trump Group entities remain restrained. Dalia, however, now contends that, because she has been personally dismissed from one of the New York actions, she is now able as Trustee to continue the Delaware Chancery Action.

Dalia is wrong. The Delaware Chancery Action does not involve Dalia as an individual – it involves the Orly Trust. The New York Supreme Court, however, already has ruled that, because of the issues and questions plaguing Dalia as Trustee, Orly has standing, and is the proper party, to litigate the beneficial ownership of her trust assets. In that regard, the issue of beneficial ownership of the Orly Trust's assets continues to be advanced by Orly, on behalf of the Orly Trust, in the New York TRI Action, filed in 2010, and in the New York TPR Action, filed in 2009. Thus, there remains no reason for the Delaware Chancery Action to exist, or for the Orly Trust to waste its assets prosecuting that action.

As important, there is no good-faith reason why the Delaware Chancery Action must be pursued now. It has been stayed for over a year, without any harm to the Orly Trust. It should remain stayed while the Petition to remove Dalia as Trustee is decided. If Dalia is allowed to pursue her Delaware Chancery Action, loses that action, and is subsequently found to have engaged in a pattern of fraud, self-dealing, and breach of fiduciary duty (including in the bringing of the Delaware Chancery Action), it will be too late. A money judgment (which may or may not be collectable from Dalia) will not be enough to repair the damage to the Orly Trust from the loss of its Orly Trust TRI Shares.

2

In short, Dalia seeks to continue her prosecution of the unnecessary Delaware Chancery Action to harm the interests of the Orly Trust and its beneficiary, Orly. Dalia is doing so as part of her ongoing scheme with her son and Petitioner's brother, Sagi Genger, to loot the Orly Trust's assets – a scheme set forth in greater detail in the Third Amended Petition to Remove Dalia as Trustee. The Surrogate Court should not allow that to happen. Instead, the Court should protect the Orly Trust by maintaining the stay in effect since October 2011, until it decides whether Dalia should remain Trustee of the Orly Trust.

## RELIEF REQUESTED

Orly respectfully seeks an Order:

(i)    Granting Petitioner's Motion for a preliminary injunction enjoining the Respondent, Dalia Genger, as Trustee ("Dalia"), together with any and all of her agents, assigns, employees, representatives, attorneys, and/or anyone acting on Dalia's behalf either directly or indirectly or in concert with her, from: (i) proceeding with and/or taking any action of any kind or nature, with respect to the action Dalia previously commenced in the Delaware Chancery Court entitled, *"Dalia Genger as Trustee of the Orly Genger 1993 Trust v. TR Investors LLC*, C.A. No. 6906-CS" (the "Delaware Chancery Action") including, but not limited to, the continuation of the prosecution of said Delaware Chancery Action; and, (ii) proceeding with any other existing actions or proceedings and/or commencing any future actions or proceedings in the Delaware Chancery Court, and/or any other local, state or federal courts on behalf of the Orly Genger 1993 Trust (the "Orly Trust") (other than those actions and proceedings which are already pending in the Supreme Court of the State of New York, County of New York) which concern, relate to, pertain to and/or have any effect whatsoever upon any and all assets of the Orly Trust including, but not limited to, the Orly Trust's direct, indirect or beneficial interests in Trans-Resources, Inc. and TPR Investment Associates, Inc; and,

(ii)    Granting such other and further relief as this Court deems to be just, equitable and proper.

3

Petitioner is also requesting that pending the hearing and determination of the Motion and until further Order of this Court, Dalia Genger and any and all of her agents, assigns, employees, representatives, attorneys, and/or anyone acting on Dalia's behalf either directly or indirectly or in concert with her are hereby temporarily restrained from: (i) proceeding with and/or taking any action with respect to the Delaware Chancery Action; (ii) proceeding with any other existing actions or proceedings and/or commencing any future actions or proceedings in the Delaware Chancery Court, and/or any other local, state or federal courts on behalf of the Orly Trust (other than those actions and proceedings which are already pending in the Supreme Court of the State of New York, County of New York) which concern, relate to, pertain to and/or have any effect whatsoever upon any and all assets of the Orly Trust including, but not limited to, the Orly Trust's direct, indirect or beneficial interests in Trans-Resources, Inc. and TPR Investment Associates, Inc., together with such other and further relief as this Court deems to be just, equitable and proper.

## STATEMENT OF FACTS

The facts supporting this motion and request for temporary and preliminary relief are set forth in Petitioner's Third Amended Petition to remove Dalia as Trustee (the "TAP")[1] and related exhibits; the Affidavit of Orly Genger in support of this motion, and related exhibits; and the Affirmation of Ralph R. Hochberg and related exhibits.

---

[1] Unless otherwise defined herein, capitalized terms utilized in this Memorandum of Law shall have the same meanings ascribed to them as in the TAP and the Affidavit of Orly Genger.

4

## ARGUMENT

## I.   A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER ARE WARRANTED

### A.   Legal Standard Governing Injunctive Relief

It is well settled that:

> A preliminary injunction may be granted under CPLR article 63 when the party seeking such relief demonstrates: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor.

*Doe v. Axelrod*, 73 N.Y.2d 748, 750, 532 N.E.2d 1272, 536 N.Y.S.2d 44, 45 (1988) (citing *Grant Co. v. Srogi*, 52 N.Y.2d 496, 517); *Hirschfeld v. Margo Feiden Galleries Ltd.*, 224 N.Y.L.J. 17, 2000 N.Y. Misc. LEXIS 663, at \*5-6 (Sup. Ct. NY Cty. July 26, 2000) *see also* CPLR § 6301 *et seq.*[2] Orly readily satisfies this legal standard.

---

[2] Surrogate's Court Procedure Act § 102, provides, inter alia, that the CPLR applies to the practice and procedure in the Surrogate's Court except where other procedure is provided by the Surrogate's Court Procedure Act. "While the SCPA does not specifically authorize the bringing on of a proceeding by an order to show cause instead of by a citation (SCPA 306), CPLR 403 (d) provides the authority to do so (*Matter of Osorio v Leventhal*, 80 N.Y.2d 898, 587 N.Y.S.2d 891, 600 N.E.2d 61; *Siegel and Connors, Practice Commentaries*. McKinney's Cons Laws of NY, Book 58A, SCPA 308, at 320 [1994 ed]; Turano and Radigan, *New York Estate Administration* § 2.04 [2002 ed]; 1 Warren's Heaton, Surrogates' Courts § 2.08 [2]; see, Surrogate's Court Act § 48; *see also* SCPA 313). Personal jurisdiction over the parties is obtained by service of process upon them (SCPA 203). "Process" under the SCPA includes an order to show cause as well as a citation (SCPA 103 [43]), so it is patent that a proceeding in this court may be commenced by an order to show cause." *Estate of Michael Pavese*, 195 Misc.2d 1,7-8, 752 N.Y.S.2d 198 (Surr. Court Nassau County 2002)

**B.    Petitioner is Entitled to a Temporary Restraining Order and Preliminary Injunction**

        1.    Likelihood of Success on the Merits

        As set forth in the Orly Affidavit and the Hochberg Affirmation, Petitioner seeks to enjoin and restrain Dalia from continuing her prosecution of the Delaware Chancery Action (or commencing any other action and/or proceeding on the Orly Trust's behalf which affects the Orly Trust's assets in any manner) because Dalia's stated intent to continue with her prosecution of the Delaware Chancery Action constitutes a clear breach of her fiduciary duties to the Orly Trust and the Petitioner. Dalia's continued prosecution of the Delaware Chancery Action will inevitably result in immediate and irreparable harm and the stripping of Orly Trust's sole remaining asset, the Orly Trust TRI Shares because as Dalia is well aware, the Delaware Chancery Court has previously ruled against the Orly Trust's interests by determining that the Orly Trust is not the beneficial owner of the Orly Trust TRI Shares.

        Petitioner has filed her TAP to remove Dalia as Trustee on the grounds that Dalia and Petitioner's brother, Sagi, are engaged in an ongoing scheme to loot the Orly Trust of all of its assets. The TAP outlines the numerous ways that Dalia has breached her fiduciary duties to the Orly Trust and the Petitioner since the time that she first became Trustee in 2008, all of which warrant her removal.

        For all of the reasons set forth in the TAP, it is respectfully submitted that Dalia's actions and inactions as Trustee have been so clearly harmful to the Orly Trust and the Petitioner that it is extremely likely that she will be removed as Trustee and that Petitioner's TAP will be granted by this Court. Indeed, Dalia's Delaware Chancery Action is itself a example of why Dalia

6

should and must be removed as Trustee. At the very least, Dalia should not be given an opportunity to further affirmatively harm the Orly Trust by proceeding with her Delaware Chancery Action.

    2.    <u>Irreparable Harm</u>

        The purpose of a temporary restraining order and preliminary injunction is to prevent irreparable injury so as to preserve the Court's ability to render a meaningful decision on the merits. In addition, the "purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual." *Moy v. Umeki*, 10 A.D.3d 604, 781 N.Y.S.2d (2nd Dept. 2004) (citation omitted).

        Orly's active litigation of the New York TRI Action on behalf of the Orly Trust and the prior New York Supreme Court Orders which enjoin Dalia and anyone else from prosecuting or proceeding with the Delaware Chancery Action since Dalia's initial commencement of same on October 4, 2011, have been the "status quo" for the past sixteen (16) months. If Dalia is allowed to now proceed with the Delaware Chancery Action, it will cause irreparable harm to the Orly Trust. Not only will Orly Trust assets be wasted in the litigation process, but the action itself is designed to cure the jurisdictional defect that protects the Orly Trust and its interest in the Orly Trust TRI Shares from the Chancery Court's earlier decision against the Orly Trust.

        Such a determination will cause immediate and irreparable harm to the Orly Trust because it will effectively "bless" the grossly inadequate consideration that TPR (an entity controlled by Sagi Genger) negotiated with the Trump Group for the sale of the Orly Trust TRI Shares. Further, because the Chancery Court's overturned decision held that the Orly Trust TRI Shares revert back to TPR, and the Orly Trust was fraudulently stripped of its TPR shares as a result

of a prior sham foreclosure sale orchestrated by Sagi and Dalia (which is the subject of the New York TPR Action filed in 2009), the Orly Trust will actually receive nothing.

Monetary damages are insufficient to remedy the Orly Trust and Orly in this case. *First*, it already has been determined that the closely-held shares of the Genger family companies, TRI and TPR, are unique chattel whose loss is irreparable. *See* July 28, 2010 Amended Decision (Orly Aff., Ex. 6); *see also Bloomingdale v. Bloomingdale*, 107 Misc. 646, 655-656 (Sup. Ct. NY Cty. 1919) (granting injunction to protect shares of family corporation). This is precisely what Dalia's improper actions threaten.

*Second*, in the event that Orly and the Orly Trust obtain a monetary judgment against Dalia as a result of the catastrophic damages caused by Dalia's breach of her fiduciary duties and the looting of the Orly Trust's assets, there is no reason to believe that Dalia will ever be able to satisfy any judgment, which is likely to amount to in excess of tens of millions of dollars.[3] Thus, any such judgment will be a pyrrhic victory.

3.    The Balancing of Equities

As the sole present beneficiary of the Orly Trust, Orly clearly has the most to lose. Pursuant to Justice Feinman's prior Court Order, Orly has been authorized by the Court to seek the determination concerning the ownership of the Orly Trust TRI Shares. Orly and her counsel have been actively litigating and advocating the Orly Trust's best interests in the New York TRI Action for more than the past two (2) years. There is no "prejudice" to Dalia in having her continue to be enjoined from proceeding with the Delaware Chancery Action. This has been the status quo ever

---

[3]    For example, on the same day Sagi "sold" the Orly Trust TRI Shares for $10 million dollars (they were worth far more), he sold the same number of TRI shares that were in his Trust for over $27 million dollars.

since Dalia first commenced the Delaware Chancery Action on October 4, 2011 and has remained so for the past sixteen (16) months.

Justice Feinman has previously determined that Orly is entitled to seek a determination as to the ownership of the Orly Trust TRI Shares on behalf of the Orly Trust. And, both the Delaware Supreme Court and Justice Feinman have previously determined that New York is the most appropriate jurisdiction and forum to determine the ownership of the Orly Trust TRI Shares. The reasons for these determinations are self-evident. Orly – not Dalia – is the only person truly interested in protecting her Orly Trust. And, as to the proper jurisdiction, Orly and the Orly Trust are both residents of New York, as is every other party necessary to a determination of who owns the Orly Trust TRI Shares. All necessary parties are parties to, and have appeared in, the New York TRI Action. Clinching the matter, the Orly Trust specifically states that "This Trust Agreement and the trusts hereby created shall be governed by the Law of the State of New York." (See TAP, **Exhibit "A"**, Article Sixth (Governing Law).

Dalia's intent to continue her prosecution of the Delaware Chancery Action against Petitioner's express wishes is extremely telling. If Dalia's motives were pure, which they are clearly not, she would have no issue with this matter continuing to be litigated in New York within the context of the pre-existing New York TRI Action, as it has been for more than the past two (2) years. Nor would she have any issue with waiting until the TAP is decided before proceeding with the Delaware Chancery Action, unless her only real goal was to damage the Orly Trust as much as possible before she is removed.

For all these reasons, it is respectfully submitted that the equities strongly favor continuing to enjoin the Dalia from proceeding with her Delaware Chancery Action.

## II.    THE COURT SHOULD ENJOIN DALIA FROM CONTINUING HER DUPLICATIVE DELAWARE CHANCERY ACTION

The New York Supreme Court enjoined the Delaware Chancery Action because, among other reasons, it was duplicative of the previously commenced New York TRI Action. (See Orly Affidavit, **Exhibit "3"**).  This Court should enjoin Dalia for the same reason.

This Court has broad powers to prevent Dalia from prosecuting foreign legal proceedings that duplicate litigation currently pending in New York Courts.  For example, in *Jay Franco and Sons Inc. v. G Studios, LLC*, Index No. 602236/05, 2006 WL 5110770 (Sup. Ct. N.Y. Cty. June 14, 2006), plaintiff filed an action in New York seeking the return of a $70,000 deposit paid to defendant, after the parties failed to complete and enter a trademark licensing agreement. Ten months later, defendant commenced a fraud action in California, contending the licensing agreement had failed due to plaintiff's fraud and the deposit did not have to be returned.  *Id.* Although defendant contended the actions were not duplicative,[4] the New York Supreme Court disagreed and enjoined the California action.  *Id.* (*citing Matter of the Adoption of Baby Girl S.*, 181 Misc. 2d 117, 130 (Surr. Ct. Westchester Cty. 1999) ("the court has the authority to grant injunctive relief in order to protect the integrity of its jurisdiction and to prevent the parties from engaging in duplicative litigation")).

The First Department affirmed, holding that, although the legal claims differed, the operative facts and "underlying issue in both cases is the [same]," and the injunction was proper:

---

[4] Indeed, defendant's California attorneys submitted a certification in California stating that the California action was "not related to another action or proceeding pending in any state." *Jay Franco and Sons, Inc.*, 2006 WL 5110770, at *1.

> In the interest of preventing duplicative litigation that might lead to
> conflicting results, and to prevent the waste of judicial resources and
> unnecessary legal expenses, the court did not improvidently exercise
> its discretion by invoking its equity power to enjoin defendant from
> prosecuting [an action the defendant filed in California].

*Jay Franco and Sons Inc. v. G Studios, LLC,* 34 A.D.3d 297, 825 N.Y.S.2d 20, 21 (1st Dept. 2006);

*see also Bryan v. Bryan*, 275 A.D.2d 688, 713 N.Y.S.2d 348 (1st Dept. 2000) (affirming decision

enjoining defendant from prosecuting duplicative action filed in Texas); *Lafferty v. Lafferty*, 243

A.D.2d 541, 663 N.Y.S.2d 108, 109 (2d Dept. 1997) (affirming decision enjoining defendant from

prosecuting duplicative action filed in Connecticut).[5]

The Delaware Chancery Action was commenced more than <u>fifteen months</u> after the

New York TRI Action, and seeks the same relief: a judgment affirming the Orly Trust's beneficial

ownership to the Orly Trust TRI Shares. The Court in the New York TRI Action has spent

countless hours over more than the past two years familiarizing itself with the facts of the case and

making substantive rulings regarding the property at issue. Appeals have been filed in the New

York TRI Action and a mediation has been scheduled. Indeed, there are already more than 300

entries on the Court's docket for the New York TRI Action. (*See* Hochberg Affirmation and copy of

electronic docket annexed thereto).

---

[5] *See also Garvin v. Garvin*, 302 N.Y. 96, 103, 96 N.E.2d 721 (1951) (affirming lower court's decision to enjoin defendant from prosecuting a subsequent action in the Virgin Islands); *Pereia v. Pereria*, 272 A.D. 281, 70 N.Y.S.2d 763 (1st Dept. 1947) (reversing lower court's decision and enjoining defendant from prosecuting a subsequent action in Nevada); *Palmer v. Palmer*, 268 A.D. 1010, 52 N.Y.S.2d 383 (3d Dept. 1944) (affirming lower court's decision to enjoin defendant from prosecuting a subsequent action in Nevada); *Browne v. Browne*, 53 A.D.2d 134, 385 N.Y.S.2d 983, 987 (4th Dept. 1976) (affirming Supreme Court's decision to enjoin defendant from prosecuting action in Texas); *Hon v. Hon*, 164 Misc.2d 806, 624 N.Y.S.2d 553, 554 (Sup. Ct. Queens Cty. 1995) (enjoining plaintiff from prosecuting subsequent proceeding in Connecticut after commencing an action in New York); *Pavlo v. Pavlo*, 137 Misc.2d 418, 520 N.Y.S.2d 991, 994 (Sup. Ct. Kings Cty. 1987) (enjoining defendant from prosecuting subsequent action in New Jersey); *Fernandez v. Fernandez*, 39 Misc.2d 471, 240 N.Y.S.2d 926, 927 (Sup. Ct. Bronx Cty. 1963) (enjoining defendant from prosecuting subsequent action in Mexico); *Martin v. Martin*, 62 Misc.2d 703, 309 N.Y.S.2d 477, 480 (Sup. Ct. Nassau Cty. 1970) (enjoining defendant from commencing subsequent proceeding in Nevada).

In issuing his prior Orders in the New York TRI Action, Justice Feinman implicitly recognized that: (i) the relief sought by Dalia in the Delaware Chancery Action was entirely duplicative of the relief sought by Petitioner in the New York TRI Action and therefore, Dalia should be enjoined from prosecuting same; (ii) New York was the appropriate jurisdiction to determine the ownership of the Orly Trust TRI Shares; and, (iii) Orly was entitled to seek a determination concerning the ownership of the Orly Trust TRI Shares on behalf of the Orly Trust.

Allowing Dalia to prosecute the Delaware Action would only waste the Orly Trust's remaining assets and duplicate the Court's efforts in the New York TRI Action in a state with no connection to Arie and Dalia's divorce Settlement Agreement which gave rise to the Genger family's division of wealth (and TPR's transfer of the Orly Trust TRI Shares to the Orly Trust), and no connection to Dalia, Petitioner, or the Orly Trust. Petitioner was not a party to the TRI Chancery Action (as defined in the accompanying affidavit of Orly Genger) and does not wish to have the Delaware Chancery Court obtain jurisdiction over her in the Delaware Chancery Action. For this reason alone, the Court should enjoin or stay the Delaware Chancery Action. *See, e.g., Interested Underwriters at Lloyd's v. H.D.I. III Associates*, 213 A.D.2d 246, 247, 623 N.Y.S.2d 871, 873 (1st Dept. 1995) (affirming order staying Colorado action where "New York action was properly placed, ... a contrary decision in Colorado would interfere with the New York court's ability to resolve the issues before it, ... the facts indicate that the defendant may have engaged in forum-shopping ... [and] significant New York contacts existed") (internal citations omitted); *Bryan v. Bryan*, 275 A.D.2d 688, 689, 713 N.Y.S.2d 348, 349 (1st Dept. 2000) (enjoining action where "New York has the greater interest in and contacts with the ... litigation" because "most, if not all, of the marital property is located in New York; the antenuptial agreement was entered into in New York; the

parties lived together in New York as husband and wife ... and the wife continues to reside in New York").

In sum, Dalia should not be able to prosecute the Delaware Chancery Action while the New York TRI Action is still pending and a proceeding for Dalia's removal as Trustee is still pending before this Court. It is respectfully submitted that Dalia's actions in seeking to continue her prosecution of the Delaware Chancery Action undermine both this Court's authority and the authority of the Court in the New York TRI Action. Indeed, the Delaware Chancery Action threatens to render moot any subsequent determination by this Court to remove Dalia as Trustee, because by then the Orly Trust's assets will be entirely dissipated and looted.

## III.   THIS COURT SHOULD STOP DALIA FROM COLLATERALLY ATTACKING THIS COURT'S AUTHORITY AND IRREPARABLY HARMING ORLY AND THE ORLY TRUST THROUGH DUPLICATIVE LITIGATION

New York courts have the power to enjoin a defendant from prosecuting a foreign proceeding to protect the authority and dignity of the New York Courts:

> The plaintiff evidently expects to engage the defendant in an unseemly race to judgment in the two courts. What is being challenged here, therefore, is not the dignity and authority of the Connecticut Court, but of this Court."

*Hon,* 624 N.Y.S.2d at 554 (emphasis added). This power to enjoin also exists as a matter of equity to protect the rights of its litigants where a subsequently filed action would damage a plaintiff's rights in the earlier filed action:

> In our opinion there is a sufficient and immediate necessity for equitable intervention by our courts to protect the marital status of the wife domiciled in New York. The failure of equity to act at the earliest opportunity when called upon to do so might result in irreparable harm to the domiciliary party who invokes its protection.

> Certainly there is every reason for a wife in plaintiff's position to fear the result of a foreign divorce proceeding prosecuted by the husband. It is difficult for her to determine whether she should go to Nevada, if possessed of means to do so, and there contest the *bona fides* of her husband's claim of domicile. Such procedure would entail the risk of acquiescing in the jurisdiction of the Nevada courts. The alternative risk in staying quiescent at home involves the possible inability to procure later the proof she now has to establish the husband's lack of bona fide domicile in the foreign jurisdiction.

*Pereia*, 70 N.Y.S.2d at 768 (emphasis added); *see also Browne*, 385 N.Y.S.2d at 986 (preventing defendant from prosecuting action in Texas where a Texas judgment would prejudice plaintiff's rights in New York proceeding); *Lafferty*, 663 N.Y.S.2d at 109 (preventing defendant from seeking a sister state ruling that would make New York decision ineffectual); *Palmer*, 52 N.Y.S.2d at 383 (same).

In this case, it is respectfully submitted that Dalia has been and needs to remain enjoined from, *inter alia*, pursuing the Delaware Chancery Action on the grounds that the New York TRI Action has provided and continues to provide the parties with an appropriate jurisdiction and forum to litigate the ownership of the Orly Trust TRI Shares. Dalia's suspicious actions in seeking to race once again to the same Delaware Chancery Court that previously ruled against the Orly Trust's interests speaks volumes as to her where true motivations and loyalties lie. Plainly, they are not with Orly and the Orly Trust; they are with herself and her son, Sagi.

Further, a proceeding to remove Dalia as Trustee is still pending before this Court. As set forth in the TAP, Dalia has breached her fiduciary duties to the Orly Trust and Petitioner by continuing to engage in a scheme with Sagi to loot the Orly Trust of its assets and has deliberately and willfully violated this Court's prior July 2009 Order, as well as the restraints imposed against her by other New York Courts.

In light of such overwhelming evidence, at the very least, Dalia should not be allowed to make any further decisions on behalf of the Orly Trust which will almost certainly lead to the destruction of all of the Orly Trust's assets pending this Court's determination of the TAP. Enjoining Dalia from prosecuting the Delaware Chancery Action will maintain the status quo that has always existed, namely that the determination of the ownership of the Orly Trust TRI Shares shall continue to be litigated in the New York TRI Action.

## IV.    THE COURT SHOULD ENJOIN DALIA FROM COMMENCING ANY FURTHER DUPLICATIVE ACTIONS

Not only does the Court have the power to enjoin Dalia from prosecuting the Delaware Chancery Action, it also has the power to prevent Dalia from commencing new actions:

> Granting the preliminary injunction requested by the wife would do no more than maintain the status quo of the parties until the bona fides of the husband's alleged foreign domicile are determined in the main action. To permit the husband to institute divorce proceedings in Nevada would place his wife in an unfair position of imminent peril....she would then be placed on the horns of a dilemma, have the option of either sitting idly by while her marriage is purportedly dissolved in Nevada, keeping for herself what may be an illusory right to attack the decree at a later time, or of appearing in Nevada, at great expense, and placing all her marital rights at the mercy of a court ostensibly foreign to every aspect of their marital domicile and relationship.
>
> Under the circumstances, a preliminary injunction is proper and plaintiff may maintain her action for a permanent injunction. This is true, despite the fact that there is no matrimonial action pending presently between the parties.

*Martin*, 309 N.Y.S.2d at 479-80 (internal citations omitted). Pending a final determination by the Court in the New York TRI Action and a final determination by this Court as to whether Dalia

should be removed as Trustee, Dalia should be enjoined from commencing any new actions as

Trustee of the Orly Trust which affect the Orly Trust's assets in any way whatsoever.

## V.    THE COURT SHOULD NOT REQUIRE ORLY TO POST AN UNDERTAKING

CPLR § 6313(c) provides in relevant part that:

(c)    Undertaking. Prior to the granting of a temporary restraining
order the court may, **in its discretion**, require the plaintiff to
give an undertaking in an amount to be fixed by the court…"

(emphasis added)

The plain language of CPLR §6313(c) provides that it is within the Court's

discretion to require that an undertaking be posted in conjunction with the issuance of a temporary

restraining order and is not mandatory. (See Generally, *Doran & Associates, Inc. v. Envirogas, Inc.*,

112 A.D.2d 766, 492 N.Y.S.2d 504 (4th Dept. 1985))

It is respectfully submitted that Orly should not be required to post an undertaking,

especially given the likelihood of her success on the merits of her TAP to remove Dalia as Trustee.

In addition, since Dalia and Sagi have effectively looted the Orly Trust of its assets or have caused

the Orly Trust's assets to be tied up in litigation, any such requirement would further award Dalia

for her breach of fiduciary duties to the Orly Trust and Orly.

16

## CONCLUSION

In conclusion, it is respectfully submitted that Petitioner Orly Genger's Order to Show Cause and Motion should be granted in its entirety, together with such other and further relief as this Court deems just, proper, and equitable.

Dated: New York, New York
      February 14, 2013

                PLATZER, SWERGOLD, KARLIN, LEVINE,
                GOLDBERG, & JASLOW, LLP
                Attorneys for Petitioner, Orly Genger

                By: _____
                        Ralph R. Hochberg
                        Mitchell L. Kaplan
                        For the Firm
                        1065 Avenue of the Americas – 18th Floor
                        New York, New York 10018
                        (212) 593-3000

                -and-

                ZEICHNER ELLMAN & KRAUSE LLP

                By: _____
                        Yoav M. Griver, Esq.
                        Bryan D. Leinbach, Esq.
                        575 Lexington Avenue
                        New York, New York 10022
                        (212) 223-0400

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)



New York County Surrogate's Court
MISCELLANEOUS DEPT.

FEB 1 4 2013

FILED

Clerk

---

## AFFIRMATION IN SUPPORT OF PETITIONER'S
## ORDER TO SHOW CAUSE PURSUANT TO 22 NYCRR § 202.7(f)

**Ralph R. Hochberg,** an attorney duly admitted to practice law in the courts of the State

of New York, affirms the following under penalties of perjury:

### I. INTRODUCTION

1.      I am a Partner of the law firm of Platzer, Swergold, Karlin, Levine,

Goldberg & Jaslow, LLP, the attorneys for the petitioner, Orly Genger (the "<u>Petitioner</u>" or

"<u>Orly</u>") and am fully familiar with the facts and circumstances herein by virtue of the records

and documents kept in the legal file maintained by this office.  I certify that to the best of my

knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

the contentions made herein are not frivolous as defined in subsection (c) of Section 130-1.1 of

the New York Court Rules.

2.      I submit this Affirmation pursuant to 22 NYCRR § 202.7(f) and in support

of Petitioner's Order to Show Cause and Motion (the "<u>Motion</u>") for an Order:

> (a) Granting Petitioner's Motion for a preliminary injunction enjoining the
> Respondent, Dalia Genger, as Trustee ("<u>Dalia</u>"), together with any and all of
> her agents, assigns, employees, representatives, attorneys, and/or anyone
> acting on Dalia's behalf either directly or indirectly or in concert with her,
> from: (i) proceeding with and/or taking any action of any kind or nature, with
> respect to the action Dalia previously commenced in the Delaware Chancery
> Court entitled, "*Dalia Genger as Trustee of the Orly Genger 1993 Trust v. TR
> Investors LLC*, C.A. No. 6906-CS" (the "<u>Delaware Chancery Action</u>")
> including, but not limited to, the continuation of the prosecution of said

Delaware Chancery Action; and, (ii) proceeding with any other existing actions or proceedings and/or commencing any future actions or proceedings in the Delaware Chancery Court, and/or any other local, state or federal courts on behalf of the Orly Genger 1993 Trust (the "Orly Trust") (other than those actions and proceedings which are already pending in the Supreme Court of the State of New York, County of New York) which concern, relate to, pertain to and/or have any effect whatsoever upon any and all assets of the Orly Trust including, but not limited to, the Orly Trust's direct, indirect or beneficial interests in Trans-Resources, Inc. and TPR Investment Associates, Inc; and,

(b) Granting such other and further relief as this Court deems to be just, equitable and proper

2.      Petitioner is also requesting that pending the hearing and determination of this Motion and until further Order of this Court, Dalia Genger, as Trustee, and any and all of her agents, assigns, employees, representatives, attorneys, and/or anyone acting on Dalia's behalf either directly or indirectly or in concert with her are hereby temporarily restrained from: (i) proceeding with and/or taking any action with respect to the Delaware Chancery Action; (ii) proceeding with any other existing actions or proceedings and/or commencing any future actions or proceedings in the Delaware Chancery Court, and/or any other local, state or federal courts on behalf of the Orly Trust (other than those actions and proceedings which are already pending in the Supreme Court of the State of New York, County of New York) which concern, relate to, pertain to and/or have any effect whatsoever upon any and all assets of the Orly Trust including, but not limited to, the Orly Trust's direct, indirect or beneficial interests in Trans-Resources, Inc. and TPR Investment Associates, Inc., together with such other and further relief as this Court deems to be just, equitable and proper.

3.      Accompanying this Affirmation are copies of: (i) Orly Genger's Affidavit in Support of the Motion and Order to Show Cause (the "Orly Affidavit"); (ii) the Petitioner's Third Amended Petition seeking, *inter alia,* the removal of her Mother, Dalia, as Trustee of the Orly Trust (the "TAP" and all accompanying Exhibits); and (iii) Petitioner's Memorandum of

2

Law in Support of the Motion.[1]

## PETITIONER'S COMPLIANCE WITH 22 NYCRR § 202.7(f)

4.      In accordance with 22 NYCRR § 202.7(f), on February 13, 2013, I E-Mailed and faxed a letter to Dalia's counsel, Robert Meister, and informed him that Petitioner intended to file the Motion and Order to Show Cause with the Court on February 14, 2013 and indicated that this law firm will be requesting a temporary restraining order on behalf of the Petitioner.

5.      Since the Order to Show Cause and Motion is only seeking affirmative relief against Dalia, it is respectfully submitted that prior notice of same to David Parnes, the Trustee of the Sagi Trust is not necessary.  The Sagi Trust is a contingent remainder beneficiary under the provisions of the Orly Trust.  Mr. Parnes was previously served with copies of the Petition to remove Dalia as Trustee of the Orly Trust, Petitioner's Second Amended Petition and the TAP by overnight delivery.    Upon information and belief, the Sagi Trust never opposed the relief sought therein and accordingly has defaulted.

6.      Notwithstanding the Sagi Trust's forgoing default and expressly without prejudice to Petitioner's right to assert that the Sagi Trust is not entitled to any further notice, Petitioner's counsel will serve Mr. Parnes with a copy of the Order to Show Cause and all supporting papers via overnight delivery once it is entered by the Court (presuming that it is entered by the Court).

## PETITIONER'S  MOTION IS MERITORIOUS

7.      The Orly Affidavit and all Exhibits annexed thereto and the accompanying Memorandum of Law in support of the Motion, set forth all of the reasons why the Order to Show Cause and Motion should be granted in its entirety and Affirmant does not wish to burden

---

[1] Unless otherwise defined herein, capitalized terms utilized in this Affidavit shall have the same meanings ascribed to them as in the TAP and the Orly Affidavit..

3

this Court with a lengthy and repetitive recitation of the facts and legal arguments contained therein in this Affirmation.

8.      As set forth in the Motion, unbeknownst to Petitioner and in violation of this Court's prior Order dated July 1, 2009, Dalia commenced the Delaware Chancery Action, purportedly on behalf of the Orly Trust, more than fifteen months after Petitioner commenced the New York TRI Action (as defined in the Orly Affidavit), seeking the same relief sought by Petitioner in the New York TRI Action: a judgment affirming the Orly Trust's beneficial ownership to the Orly Trust TRI Shares (as defined in the Orly Affidavit).

9.      As also set forth in the Motion, by commencing the Delaware Chancery Action on purported behalf of the Orly Trust and now seeking to continue the prosecution of same, Dalia deliberately selected the worst possible option for the Orly Trust, bringing a plenary action in the Delaware Chancery Court, the same Court that had previously rendered a decision against the Orly Trust's interests in a related action.   Although the Delaware Chancery Court's prior decision was reversed by the Delaware Supreme Court on the grounds that the Chancery Court never had jurisdiction over the Orly Trust and Petitioner because they were not parties to said proceeding, by commencing the Delaware Chancery Action, Dalia intentionally cured the jurisdictional defect that protected the Orly Trust and its interest in the Orly Trust TRI Shares from the Delaware Chancery Court's prior decision. (See Orly Affidavit, **Exhibits "4"and "5"**)

10.     In other words, in an egregious breach of her fiduciary duties and in furtherance of her scheme with her son and Petitioner's brother, Sagi Genger ("Sagi") to loot the Orly Trust of all of its assets, Dalia commenced the Delaware Chancery Court because she knew and hoped in advance that the Orly Trust would lose.

11.     Justice Feinman has signed three (3) restraining orders which have enjoined Dalia and all other parties to the Delaware Chancery Action (who are the same parties to the New York

4

TRI Action) from prosecuting or otherwise proceeding with same because it is entirely duplicative of the relief sought by Petitioner in the New York TRI Action and New York was the appropriate jurisdiction to determine the ownership of the Orly Trust TRI Shares. (See Orly Affidavit, **Exhibits "12", 13" and "14"**) Justice Feinman also determined that Orly was entitled to seek a determination concerning the ownership of the Orly Trust TRI Shares on behalf of the Orly Trust. (See Orly Affidavit, **Exhibit "7"**).

12.    These injunctions have been in effect since Dalia initially commenced the Delaware Chancery Action on October 4, 2011 and have remained in effect ever since. During this time, the parties (including Dalia) have actively litigated the New York TRI Action. The Court in the New York TRI Action has spent countless hours over the past two years familiarizing itself with the facts of the case and has made substantive rulings regarding the property at issue. Appeals have been filed in the New York TRI Action and a mediation has been scheduled. Indeed, there are already more than 300 entries on the Court's docket for said case. Annexed to this Affirmation is a copy of the Court's electronic docket in the New York TRI Action evidencing same.

13.    Thus, for the reasons set forth in the Orly Affidavit and the Memorandum of Law in support of the Motion, it is respectfully submitted that the determination of the Orly Trust's beneficial ownership to the Orly Trust TRI Shares should continue to be made in the New York TRI Action, where the parties have litigated for the past two years and not in the Delaware Chancery Action, which Dalia has been enjoined from pursuing since her initial commencement of same some sixteen (16) months ago.

14.    Pursuant to CPLR 2217(b), no prior application for the relief requested herein has been made either to this or any other Court except as set forth in the Orly Affidavit.

5

**WHEREFORE,** it is respectfully requested that the relief sought in Petitioner's

Motion be granted in its entirety together with such other and further relief as this Court deems

to be just equitable and proper.


Dated:        New York, New York
              February 13, 2013

_____
        **Ralph R. Hochberg**

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

## THIRD AMENDED VERIFIED PETITION FOR REMOVAL
## OF DALIA GENGER AS TRUSTEE

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("<u>Petitioner</u>" or "<u>Orly</u>"), by her attorneys, Platzer, Swergold,

Karlin, Levine, Goldberg & Jaslow, LLP, respectfully alleges as her Third Amended Verified

Petition (the "<u>Third Amended Petition</u>") for Removal of Dalia Genger as Trustee as follows:

1.     Orly, domiciled at 780 Greenwich Street, Apartment #4P, New York, New

York 10014, is the current and sole beneficiary of the Orly Genger 1993 Trust dated December

13, 1993 (the "<u>Orly Trust</u>"). Annexed hereto as **Exhibit "A"** is a copy of the Orly Trust.

2.     Dalia Genger ("<u>Dalia</u>" or "<u>Respondent</u>"), residing at 200 East 65th Street,

Apartment #32W, New York, New York 10021 is Orly's mother and is the current sole Trustee

of the Orly Trust. Dalia was appointed successor Trustee in January, 2008.

3.     The Orly Trust provides for discretionary payments of income and principal

to Petitioner during her lifetime with the remainder to be distributed to her descendants, per

stirpes. If Petitioner dies leaving no descendants, the remainder of the trust property is to be

distributed to the Sagi Genger 1993 Trust (the "<u>Sagi Trust</u>"). Sagi Genger ("<u>Sagi</u>") is Orly's

brother.

4.    For the reasons set forth herein, Petitioner respectfully requests that this Court enter an order:

(a)    Pursuant to Surrogate Court's Procedure Act ("SCPA") § 711(2)(3)(7) and/or (8) providing for the immediate removal of Dalia as Trustee of the Orly Trust as a result of her: (i) numerous and continuous breaches of her fiduciary duties to the Orly Trust and Petitioner as its sole beneficiary; (ii) waste and dissipation of the Orly Trust's assets; (iii) repeated and willful engagement in an ongoing fraudulent scheme with Sagi to loot, encumber, pledge and transfer the assets of the Orly Trust; (iv) deliberate and willful violation and contempt of the prior Order of this Court dated July 1, 2009 (the "July 2009 Order") (as well as her deliberate and willful violation and contempt of prior restraining Orders imposed upon her by other New York Courts in related proceedings) as set forth herein; and, (v) imprudent management and injury to the assets of the Orly Trust committed to her charge, all as set forth in this Third Amended Petition;

(b)    Suspending the Letters of Appointment heretofore issued to Dalia;

(c)    Appointing Joel Isaacson as successor trustee; and,

(d)    Granting such other and further relief as this Court deems to be just equitable and proper.

## PRELIMINARY STATEMENT

5.    Petitioner is the sole beneficiary of the Orly Trust. Dalia is Petitioner's mother and is the sole Trustee of the Orly Trust. Petitioner is filing this Third Amended Petition as a result of Dalia's egregious, willful, malicious, deliberate and surreptitious scheme to pledge, encumber, transfer and dissipate all of the assets of the Orly Trust in violation of her fiduciary duties as Trustee and in violation of the July 2009 Order.

6.    As will be set forth further below in this Third Amended Petition, Dalia

and Sagi have continuously engaged in a secretive and machiavellian scheme to loot, encumber, pledge, waste, dissipate and transfer the assets of the Orly Trust for personal gain and/or as punishment of Orly for her maintaining her relationship with her father, Arie Genger ("Arie"), during and after acrimonious divorce proceedings between Arie and Dalia.

7.    In addition to this scheme being an egregious breach of Dalia's fiduciary duties to the Orly Trust, Dalia's actions in this regard also constitute a blatant and willful disobedience of the July 2009 Order by pledging and encumbering the assets of the Orly Trust and completely dissipating their value without any prior notice to Petitioner as required under the July 2009 Order, all in breach of Dalia's fiduciary obligations.

8.    Most recently, the Petitioner discovered that Dalia and Sagi entered into various secretive agreements (as will be set forth in this Third Amended Petition) to loot, dissipate, pledge, encumber and transfer the assets of the Orly Trust by agreeing to allow the potential foreclosure against valuable assets of the Orly Trust by Manhattan Safety Company ("MSCo"), a recently created entity in St. Kitts, which upon information and belief is controlled by a professional gambler. All of these recent secret agreements were entered into by Dalia and Sagi without prior notice to Petitioner as required under the July 2009 Order.

9.    As further set forth below, Dalia and Sagi's secretive scheme to loot, pledge, encumber and transfer the assets of the Orly Trust is so brazen in its nature, constitutes such an egregious breach of Dalia's fiduciary duties as Trustee and Dalia's contempt of the July 2009 Order is so clear, that her immediate removal as Trustee of the Orly Trust is both warranted and necessary in order to prevent any further irreparable harm from occurring to the assets of the Orly Trust and Petitioner, as its sole beneficiary.

10.    Dalia's immediate removal as Trustee is necessary because it is clear that

-3-

the prior Orders and warnings of this Court (and as will be shown in this Third Amended Petition, the prior Orders of other courts as well) mean absolutely nothing to her and Sagi. Thus, as long as Dalia is Trustee, any assets of the Orly Trust will remain vulnerable and subject to immediate irreparable harm as a result of her ongoing scheme with Sagi.

11.    Dalia's ongoing conspiracy and scheme with Sagi in this regard is akin to Dalia "thumbing her nose" at this Court and Petitioner, as sole beneficiary of the Orly Trust.

12.    A summary of the timeline of critical factual and procedural events surrounding this matter as well as the events which precipitated the filing of this Third Amended Petition appears immediately below and will provide the Court with the proper context in which to appreciate the severity of Dalia's misconduct. As set forth below, the lengthy summarization of the factual history is necessary in order to show that Dalia's actions cannot be viewed in a "vacuum" and constitute a pattern of ongoing conduct for approximately the past four (4) years which is specifically intended to harm Petitioner and the Orly Trust.

### THE FORMATION OF D & K LP AND THE FORMATION AND INITIAL FUNDING OF THE ORLY TRUST FOR PETITIONER'S BENEFIT, AS SOLE BENEFICIARY

13.    Dalia and Arie were married in 1967 and their marriage subsequently ended in divorce in 2004.

14.    Prior to 1993, Dalia and Arie formed D & K LP ("D & K") a family owned limited partnership, whose name was shorthand for "Dalia and Kids". At the time of its formation, Dalia was the general partner and held a 4% interest. Petitioner and her brother, Sagi, were the limited partners who each held a 48% interest.

15.    In December, 1993, Dalia and Arie established identical irrevocable inter vivos trusts for the benefit of Petitioner and Sagi, the Orly Trust and the Sagi Trust (jointly, the Orly Trust and the Sagi Trust shall be referred to hereinafter as the "Trusts"). For estate-

planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the Trusts was to ensure that both Petitioner and her brother received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both Trusts and remained Co-Trustees until Petitioner's parents' divorce in 2004. After the Trusts were funded, Sagi and Petitioner each assigned their 48% interests in D & K to their respective Trusts.

## THE CREATION OF THE D & K NOTE

16.     At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) of TPR Investment Associates, Inc. ("TPR"), a closely held family corporation for the sum of $10,200,000.   The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000. The balance was satisfied with a recourse $8,950,000 Promissory Note (the "D & K Note"). Annexed hereto as **Exhibit "B"** is a copy of the D & K Note.

17.     As set forth further below in this Third Amended Petition, there was never any intention by Arie, Dalia, Sagi and Orly for TPR to collect upon the D & K Note.

18.     Pursuant to the D & K Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The D & K Note was secured by a pledge of the 240 TPR shares owned by D & K. (See **Exhibit "B"- Pledge Agreement**) Each of the Trusts and Dalia assumed liability on the D & K Note in proportion to its/her direct interest in D & K. Accordingly, each of the Trusts, assumed a 48% liability on the D & K Note and acquired a 23.52% indirect interest in TPR. Dalia assumed a 4% liability on the D & K Note and acquired a 1.96% indirect interest in TPR.

19.     At the time of the above-described transaction, Arie owned the remaining 51% of TPR, which held investments in various securities including common stock in Trans-Resources, Inc ("TRI"), as well as its interest in the D & K Note. TRI was a successful and

valuable company which was engaged in the business of manufacturing specialty chemical products for agricultural and industrial end uses.

20.    Payments were made on the D & K Note out of dividends paid by TRI until 1999. Thereafter, when TRI stopped paying dividends, D & K stopped making payments under the D & K Note with the consent of the interested parties.

21.    As of March 20, 2001, TPR held a 52.85% interest in TRI. The remaining minority interest in TRI (47.15%) was owned by various entities controlled directly and indirectly by Jules and Eddie Trump (the "Trump Group").

## ARIE AND DALIA'S DIVORCE IN 2004 AND ITS EFFECT ON THE TRUSTS' ASSETS

22.    On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of Settlement as a final settlement of their divorce (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Dalia received, *inter alia,* Arie's 51% interest in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust (the "Orly Trust TRI Shares") and (iii) 19.43% to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime voting proxy over their TRI shares (annexed hereto as **Exhibit "C"**). Therefore, after October 29, 2004, Arie and the Trusts held a controlling interest in TRI and TPR no longer owned any TRI common stock.

## DALIA CEDES CONTROL OF D & K AND TPR TO SAGI AND THE FORMATION OF D & K GP LLC

23.    In connection with the divorce settlement, Dalia took measures to cede management of D & K to Sagi. On October 21, 2004, days before signing the Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"). Dalia exchanged her 4% interest in D & K and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1%

membership interest in D & K GP for $1.00. Pursuant to D & K GP's Limited Liability Agreement (annexed hereto as **Exhibit "D"**), Sagi was given the power to select a manager of D & K GP whose function would be to control D & K's assets. Sagi selected himself to act as manager; thus, Dalia effectively handed Sagi the authority to control D & K and its assets. Also, by forming D & K GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K, including any personal liability related to the D & K Note. This left the Trusts solely liable for any obligations due under the D & K Note.

24.     On October 30, 2004, Dalia entered into a shareholder's agreement with TPR that provided for the management of TPR. Specifically, pursuant to the TPR shareholder's agreement (annexed hereto as **Exhibit "E"**), D & K, which owned 49% of TPR, was given authority to appoint one board member to the TPR board. Sagi, as the managing partner of D & K appointed himself as a board member of TPR. As the majority owner of TPR, Dalia was named as the other board member. In addition, the shareholder agreement appointed Sagi as Chief Executive Officer ("CEO") of TPR. Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had done with D & K.

25.     For the Court's convenience, below is a summary of Arie, Dalia, and the Trusts' interests in TPR both before and after the divorce and Settlement Agreement:

| Person | TPR Interest Before | TPR Interest After |
|---|---|---|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96%[1] |
| Orly Trust (indirectly through D & K) | 23.52% | 23.52% |
| Sagi Trust (indirectly through D & K) | 23.52% | 23.52% |
| **Total** | **100%** | **100%** |

26.    In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another and were controlled by him. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi Trust.

## THE SHAM ASSIGNMENT AND SALE OF THE D & K NOTE

27.    On or about October 31, 2004, the TPR Board (consisting of Dalia and Sagi) passed a resolution to sell the D & K Note. Sagi was charged with the responsibility of selling the D & K Note to a "third party".

28.    In December, 2005, Sagi filed amended 2002 and 2003 tax returns for

---

[1] Dalia held a 1.96% indirect interest in TPR prior to the divorce as a result of her 4% interest in D & K. Pursuant to the Settlement Agreement, Dalia received an additional 51% direct interest in TPR from Arie. Just prior to the Settlement Agreement, as stated above, Dalia transferred her 4% interest in D & K (and thus, her 1.96% indirect interest in TPR) to D & K GP.

TPR, writing off the entire D & K Note and declaring it as a loss in the approximate amount of $8,700,000.

29.     On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K and TPR, assigned and sold the D & K Note, which then had an approximate value of $11,000,000 as a result of the accrued interest, to Mr. Parnes in his individual capacity for the sum of only $12,000 (a copy of the Memorandum dated August 2, 2006 (the "<u>D & K Note Memorandum</u>"), assigning and selling the D & K Note is annexed hereto as **Exhibit "F"**). The D & K Note Memorandum asserts unspecified claims by D & K against TPR and Sagi expressly memorialized that D & K "denies enforceability of the [D & K Note]". **(See Exhibit "F")**

30.     Sagi signed the D & K Note Memorandum on behalf of both TPR as the holder and D & K as the maker. Dalia was copied on the D & K Note Memorandum but Petitioner did not receive a copy of same.   At the time of the D & K Note Memorandum, Mr. Parnes was acting as trustee of both Trusts. Shortly after the D & K Note Memorandum, Mr. Parnes summarily resigned as Trustee of the Orly Trust without explanation.

## THE D & K NOTE WAS NEVER INTENDED TO BE ENFORCED

31.     Mr. Parnes testified in Arie and Dalia's matrimonial arbitration (See **Exhibit "G"**, which contains the relevant portions of the transcript of Mr. Parnes' testimony from the arbitration) that:

     (i)     As the Trustee of both Trusts, he was a "trusted" person to keep the D & K Note to make sure it would never be collected.  (See Pages 460-461);

     (ii)    D & K does not have to make payments to TPR; (Page 452)

     (iii)   The D & K Note is uncollectible (Page 453); and,

     (iv)   Sagi's job was to "bury the D & K Note in the woods" (Page 461)

32.     Sagi testified in the same arbitration (See **Exhibit "H"**, which contains the relevant portions of the transcript of Sagi's testimony from the arbitration) that:

(i)     The purpose of the D & K Note was for estate planning (Pages 367-380);

(ii)    The D & K Note was never declared in default (Page 370);

(iii)   There was no intention of collecting the D & K Note (Page 370); and,

(iv)    The D & K Note is worth nothing (Pages 375-377)

33.     In addition, Dalia, who was copied on the D & K Note Memorandum,

previously admitted in her Pre-Hearing Memorandum submitted to the Court in connection with

the matrimonial arbitration that the D & K Note was never intended to be collected upon because

the:

> "...collection by TPR of the D & K Note would simply transfer
> wealth from the children, Sagi and Orly, to their parents,
> Arie and Dalia, thus undoing the estate planning scheme which
> had transferred that wealth to the children.
> (See **Exhibit "I"**, excerpt from Dalia's Pre-Trial Memorandum
> Page "26")

34.     Ultimately, the Gengers' matrimonial arbitrator, Judge I. Leo Milonas,

specifically determined that the D & K Note was never intended to be collected from its

inception.

> "The arbitrator finds for Dalia on this issue. The D & K [N]ote
> was part of the estate planning scheme to transfer wealth to the
> children. The parties never intended for this note to be collected
> and to do so would re-transfer wealth back to the parents and
> defeat their estate plan.
> (See **Exhibit "J"**, Final Arbitration Award in Genger divorce
> proceeding, Page "15")

35.     Petitioner was well aware of, and relied upon, the agreement that the D &

K Note would never be enforced. Petitioner was also aware of, and relied upon, Judge Milonas'

award declaring the D & K Note worthless and uncollectible, and Dalia, Sagi and Mr. Parnes'

sworn statements and/or written submissions to that effect.

## THE D & K AGREEMENT IS ENTERED INTO WITHOUT PETITIONER'S KNOWLEDGE AND PURPORTEDLY AUTHORIZES D & K TO PLEDGE AND ENCUMBER THE ORLY TRUST TRI SHARES

36.     On or about November 23, 2007, Leah Fang (Sagi's sister-in-law), the then sole Trustee of both Trusts[2], and Sagi, acting in his capacity as manager of D & K GP, executed an "Amended and Restated Limited Partnership Agreement of D & K Limited Partnership (the "D & K Agreement"). Among other things, the D & K Agreement purported to grant D & K GP authority to "mortgage, hypothecate, pledge, create, a security interest in or lien upon, or otherwise encumber [the Orly Trust TRI Shares] for the benefit of [D & K] or that of third parties, in connection with the [D & K Note]". (See a copy of the D & K Agreement attached hereto as **Exhibit "K"**, Page "11"). There was no legitimate need or purpose for the amendment. It was a preliminary step in Sagi and Dalia's scheme to punish Petitioner and attempt to loot the Orly Trust of this valuable asset.

37.     By its terms, the D & K Agreement, does not require D & K GP (i.e. Sagi) to give notice to anyone, including Petitioner or the Orly Trust, if a decision is made to encumber the Orly Trust TRI Shares in any way.

38.     Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession it gave to D & K GP under the D & K Agreement. Indeed, the D & K Agreement was merely an instrument created for the specific purpose of encumbering the Orly Trust and Petitioner as its beneficiary, with debt.

39.     Leah Fang never informed Petitioner of the existence of the D & K

---

[2] In 2007, Mr. Gribetz resigned as the trustee of both Trusts, without appointing a successor, thereby leaving Mr. Parnes as the sole remaining trustee. Thereafter, as set forth above, Mr. Parnes resigned as trustee of the Orly Trust appointing Leah Fang as successor Trustee.

Agreement. In January, 2008, Dalia was appointed successor trustee of the Orly Trust, despite Petitioner's objections. At that time, Dalia, notwithstanding her knowledge that the D & K Note was not intended to be collected, did nothing to attempt to rescind or nullify the D & K Agreement, nor did she do anything to advise Petitioner as beneficiary that the prior trustee had granted D & K GP authority to encumber the Orly Trust TRI shares. By that time, as a result of Dalia's granting Sagi control of TPR and D & K through the appointment of his friends and relatives as successor trustee of the Trusts, Sagi had effectively obtained control over all of the assets held by D & K, TPR, the Sagi Trust and the Orly Trust.[3]

40. Through the above-mentioned transactions, Dalia allowed Sagi to obtain direct control over TPR and its interest in the D & K Note to the detriment of Petitioner and the Orly Trust. Notably, Sagi's role as CEO of TPR, (the creditor on the D & K Note) is in direct conflict with his role as manager of D & K (the debtor on the D & K Note), whose role was to repay the D & K Note or contest its enforceability.

## ORLY'S INITIAL APPLICATION TO REMOVE DALIA AS TRUSTEE

41. In February, 2008, Petitioner filed an initial application with this Court (the "Initial Application") to remove Dalia as Trustee of the Orly Trust on the grounds that she feared Dalia would not protect her interests while serving as Trustee because of Dalia's animosity towards Arie, and her collusion with Sagi.

42. Surrogate Roth denied the Initial Application as premature, believing

---

[3] In addition, by stock purchase agreement dated January 18, 2007, Sagi as CEO of TPR sold 2% of TPR's shares to his mother-in-law, Rochelle Fang, thereby eliminating Dalia's majority ownership interest of TPR by diluting it to 49%. Around the time that she became sole Trustee to the Orly Trust in January 2008, Dalia purportedly divested herself of the balance of her TPR shares. Thus, in addition to being CEO, Sagi effectively controlled TPR through the 49% owned by D & K, which Sagi controlled and the 2% owned by Rochelle Fang, also controlled by Sagi. (See **Exhibit "L"**, Transcript of Hearing before the Honorable Jane S. Solomon dated August 22, 2011 in the action entitled Orly Genger v. Sagi Genger, Supreme Court of the State of New York, County of New York, Index No. 100697/2008) (Pages "53" to "55" for example)

Dalia should be given the chance to demonstrate whether she intended to act in Orly's interests

or against Orly's interests. Surrogate Roth gave Dalia the benefit of the doubt based, in part, on

sworn statements by Dalia to the Surrogate Court that she intended to protect the Orly Trust and

its assets.

> "[I]t appears that Dalia (who states that she is ready and able to act as
> fiduciary) has yet to assume the duties of trustee in deference to her
> daughter's position in this litigation. As a validly appointed trustee,
> she should be given the opportunity to do what she deems necessary
> to manage and protect the trust's assets.
>
> Based upon the foregoing, the appointment of a "special trustee" is
> unwarranted at this time and, accordingly, the application is denied,
> without prejudice to renewal if future circumstances warrant such
> relief.
> (See copy of Surrogate Court Decision dated December 31, 2008
> annexed hereto as **Exhibit "M"**, Pages 7-8) (emphasis added).

43.    At the time of the Surrogate's decision, the extent of Dalia's complicity in

the conspiracy with Sagi was not fully understood.

## WITHIN WEEKS OF SURROGATE ROTH'S DECISION, RATHER THAN PROTECT THE ORLY TRUST, DALIA HELPED SAGI STRIP THE ORLY TRUST OF ITS ONLY ASSETS

44.    Sadly, Dalia's every action since Surrogate Roth's decision has proven

Petitioner's fears were well grounded and the benefit of the doubt given to Dalia by Surrogate

Roth was unjustified. As described below, rather than protecting the Orly Trust, Dalia has used

her position as Trustee to help Sagi Genger strip the Orly Trust of its two assets: (1) 1,102.80

shares of common stock in TRI; and (2) a 23.52% indirect interest in TPR.

45.    As set forth below, Dalia was an active and willing participant in Sagi's

scheme to strip the Orly Trust of its assets, thereby causing harm to Petitioner as the Orly Trust's

sole beneficiary.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF THE ORLY TRUST TRI SHARES

46.    Dalia has always understood the true value and importance of the Orly Trust TRI Shares to Petitioner and to the Orly Trust. Indeed, during the Initial Application to remove Dalia as Trustee, Dalia's attorney sent Surrogate Roth a letter stating that "the most valuable asset in the Orly Genger Trust is the shares of TRI'" and "the TRI Shares held by the Orly Trust are potentially worth tens of millions of dollars." See November 11, 2008 Letter to Hon. Renee R. Roth from J.G. Kortmansky, Esq. annexed hereto as **Exhibit "N"**. (emphasis supplied)

47.    On August 22, 2008, unbeknownst to Petitioner, Rochelle Fang, (Sagi's mother-in-law) who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi Trust's 19.43% in TRI to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.[4] In connection with the supposed sale, Sagi and David Parnes were given seats on TRI's board of directors. This sale, which was consummated after Dalia was appointed successor trustee of the Orly Trust, has diluted and diminished the value of the Orly Trust's interest in TRI since Arie will no longer have a controlling interest in TRI (which he previously had by virtue of his voting proxy over the Trust's shares, see **Exhibit "C"**) and thus, the Orly Trust would no longer own a portion of the controlling block of TRI shares.[5]

---

[4] In response to Dalia and Sagi's collusive efforts to sell the TRI shares to the Trump Group, Petitioner, on behalf of herself, individually and the Orly Trust, commenced an action in the Supreme Court for New York County seeking to determine, among other things, the ownership of the Orly Trust TRI Shares. See <u>Arie Genger and Orly Genger, in her individual capacity and on behalf of The Orly Genger 1993 Trust v. Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, The Sagi Genger 1993 Trust, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, Jules Trump, Eddie Trump and Mark Hirsch</u>, Index No. 651089/2010 (the "<u>New York TRI Action</u>"). The New York TRI Action is still pending before Justice Feinman.

[5] In 2011, without prior notice to Petitioner as required under the July 2009 Order, Dalia, as Trustee of the Orly Trust and in a transparent forum shopping move, commenced an action in the Delaware Chancery Court seeking a declaration that the Orly Trust is the beneficial owner of the Orly Trust TRI Shares. Dalia has been restrained from pursuing this action pursuant to a prior Order of the Court issued in the New York TRI Action.

48.    On or about January 31, 2009, only weeks after making sworn statements to the Surrogate Court that she intended to protect the Orly Trust and its assets, Dalia executed a document entitled "Meeting of Partners of D & K LP- Jan. 31, 2009 & Agreement (the "Meeting Agreement"). Annexed hereto as **Exhibit "O"** is a copy of the Meeting Agreement. Like the D & K Agreement, the Meeting Agreement purported to grant D & K GP (i.e., Sagi) unfettered authority to encumber the Orly Trust TRI Shares:

> "The partners wish to clarify that the authority vested in the General Partner to make limited partners' assets subject to a pledge shall be done in substantially the same manner in which TPR Investment Associates, Inc. shares were pledged in conjunction with the aforementioned note [the D & K Note]. However, the General Partner shall be authorized to sign for the partnership and/or each individual partner."
> (See **Exhibit "O"**, Paragraph "3")

49.    In another naked act of self-dealing in violation of Dalia's fiduciary duties as Trustee, the Meeting Agreement also purports to:

> "Indemnify and provide a general release from any claim or right at equity, law, or contract or otherwise the current and former general partner, its officers, the partnership's holdings (including TPR Investment Associates, inc.) and the officers of its holdings to fullest extent permitted in connection with any claim by the partnership and/or its partners. Irrespective of the above, nothing herein shall serve to release or indemnify Arie Genger, William Dowd, Lawrence Small or Edward Klimerman." (See **Exhibit "O"**, Paragraph "1")

50.    Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession, Dalia, acting as trustee, gave to D & K GP under the Meeting Agreement. Indeed, the Meeting Agreement, like the D & K Agreement, was merely another instrument created for the specific purpose of depleting the Orly Trust of its assets.

51.    Both the D & K Agreement and the Meeting Agreement were negotiated

-15-

and executed without ever informing Petitioner. Moreover, Dalia never subsequently informed Petitioner of the existence of either agreement, even though Petitioner made repeated requests to Dalia for information about the Orly Trust and its assets during her tenure as Trustee. The Meeting Agreement was only disclosed on or about October 2009 in connection with the New York TPR Action (defined and discussed below) which was commenced by Petitioner in the Supreme Court for New York County.

52.    Notably on January 10, 2009, just days before Dalia signed the Meeting Agreement granting Sagi unfettered authority to dispose of the Orly Trust TRI Shares (and purporting to indemnify Sagi regardless of any actions he took in connection with same), Petitioner sent Dalia a letter reminding her (once again) that the Orly Trust TRI Shares needed to be protected and retained.

> "For now, and until further notice, it is my strong desire to retain all of the shares of Trans-Resources., Inc. ("TRI") that are currently in the Trust, and I direct you not to sell them. If you are approached, or have been approached, with an offer to purchase any of the TRI shares in the Trust, please notify me immediately. If, despite my wishes, you consider accepting an offer, do not sell any shares until I have a reasonable period of time to maximize the benefit to the Trust, including possible alternative transactions."
> (See January 10, 2009 letter from Petitioner to Dalia (emphasis added), a copy of which is annexed hereto as **Exhibit "P"**)

53.    Dalia, in violation of her fiduciary obligations refused to agree not to dispose of the Orly Trust TRI Shares. To do so would be contrary to the fraudulent scheme in which Dalia was a willing participant.

54.    Likewise, although Dalia has given sworn statements to the Surrogate Court regarding the Orly Trust, she never disclosed the existence of the D & K Agreement or the Meeting Agreement to either Surrogate Roth or her successor Surrogate Webb. Basically, through the D & K Agreement, the Meeting Agreement and by ceding management of D & K

and TPR to Sagi, Dalia gave Sagi total control to pilfer the Orly Trust assets for his own use and benefit.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF ITS INDIRECT INTEREST IN TPR

55.    In Surrogate Roth's decision, she noted that in the Initial Application, "...petitioner has not alleged that Dalia has refused a request for information, which would warrant relief (SCPA 2102), or has failed as trustee to protect trust assets" (see **Exhibit "M"**, Page "7").

56.    On May 14, 2009, Petitioner's then counsel, Judith Siegel-Baum, sent Dalia's attorney, Robert Meister, a document demand relating to the Orly Trust's assets. (annexed hereto as **Exhibit "Q"**).

57.    On June 1, 2009, Mr. Meister responded to Ms. Sigel-Baum's document demand by advising her that the Orly Trust no longer owned any interest in TPR. According to the letter, Sagi, acting as CEO for TPR, had foreclosed on the D & K Note and sold D & K's 240 shares of TPR for $2,200,000. A copy of the letter is annexed hereto as **Exhibit "R"**. Before that time, Dalia had neither advised nor notified Petitioner that Sagi had foreclosed on the D & K Note, nor advised Petitioner that Sagi had sold the TPR shares at auction. This news came as a complete and utter shock to Petitioner.

58.    Despite the clear and consistent agreement among the Genger family members that the D & K Note was never to be collected upon or enforced, the sworn testimony and/or Court submissions of Dalia, Sagi and Mr. Parnes, the assignee and purchaser of the D & K Note, and Judge Milonas' award and specific determination to this effect, upon receipt of Mr. Meister's letter, Petitioner learned for the first time that:

(a)    Sagi caused TPR to reclaim the D & K Note from Mr. Parnes.[6]  Then, on
August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the general manager of D & K,
that D & K was in default under the D & K Note and declared that unless the entire unpaid
principal amount of the D & K Note was paid immediately, TPR would sell, at auction, the 240
shares pledged as collateral.  A copy of this purported Notification dated August 31, 2008 is
annexed hereto as **Exhibit "S"**.  Dalia, who knew that the D & K Note was never intended to be
enforced and who previously had sworn to as such, in violation of her fiduciary duties as Trustee,
never sought to block Sagi from foreclosing on the D & K Note and selling the TPR shares.
Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any
effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust
had a clear interest in the TPR shares at issue.

(b)    Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K
(of which he remained managing partner) that D & K's 240 shares of TPR stock would be
auctioned to the highest bidder on February 27, 2009, and that the money received from the sale
would be used to reduce the outstanding debt under the D & K Note.  A copy of this purported
Notification is annexed hereto as **Exhibit "T"**.  Sagi purported to notify the interested parties of
the sale by publishing notice of the sale in the New York Post in October 2008 and February
2009.  At all relevant times, Sagi had Petitioner and Dalia's contact information.  Despite this,
Petitioner was never informed of the impending sale.  At the time that Sagi secretly schemed
with the connivance of Dalia to structure the bogus sale, it was clear that the value of the TPR
shares was significantly higher than any purported value of the D & K Note (although as
previously stated the D & K Note had no value).

---

[6] On or about May 25, 2008, Mr. Parnes rescinded, *ab initio*, the assignment of the D & K Note.  Petitioner
was also not notified of that action.

(c)    On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the 240 shares of TPR and "auctioned" the shares (the "TPR Sale"). Not coincidentally, TPR purchased the shares at auction for $2,200,000, which was substantially less than their estimated value, making no effort to collect on the D & K Note from the Sagi Trust. (See **Exhibit "U"**). The $2,200,000 proceeds of the TPR Sale were purportedly used to decrease D & K's obligations under the D & K Note. The deficiency under the D & K Note was deliberately manufactured by this sham auction in order to provide Sagi and TPR with a future basis to foreclose upon the Orly Trust's only remaining principal asset, the Orly Trust TRI Shares.

59.    TPR and Sagi, with the connivance of Dalia in breach of her fiduciary duty, effectively stripped the Orly Trust of its indirect interest in the TPR shares by improperly foreclosing on the D & K Note and conducting the TPR Sale notwithstanding the fact that the Genger family never intended the D & K Note to be enforced. Notably, this alleged and purported notification process and sham TPR Sale took place without Dalia objecting in any way, taking preventive action of any kind, or notifying Petitioner in any way.    In short, Dalia, allowed the sham TPR Sale to transpire, did not notify Petitioner of same and clearly violated her duties as a fiduciary to the Orly Trust and Petitioner, as sole beneficiary by failing to protect the valuable trust asset.

60.    The forgoing scheme injured Petitioner and the Orly Trust in a number of ways. The Orly Trust's interest in D & K is now worthless, as it purportedly no longer owns any interest in TPR, while Sagi now has control over the foreclosed TPR shares. The scheme also destroyed Arie and Dalia's tax and estate planning intent that both children have equal shares in the family wealth.

61.    Dalia, who knew that the D & K Note was never intended to be enforced, should have immediately sought to block Sagi from foreclosing on the D & K Note and selling

the TPR shares. Certainly, she should have informed Petitioner so Petitioner could make her own efforts to block the sham TPR sale or, at the least, arrange for other bidders to be at the sale. Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust has a clear interest in the TPR shares at issue.

62.    As if this was not an egregious enough breach of Dalia's fiduciary duties to the Orly Trust, Dalia has made no effort whatsoever to date to seek any contribution from the Sagi Trust for its share of purported amounts due under the D & K Note (although as previously stated at length herein, no such purported sums are due under the D & K Note because it was never intended to be enforced). In other words, if the D & K Note was truly a "liability" of both Trusts, in theory, TPR should have foreclosed on the Sagi Trust's interests as well. Of course, this will never happen as long as Sagi is still the CEO of TPR (the holder of the D & K Note) and the manager of D & K, (the maker of the D & K Note). By ceding management authority of TPR and D & K to Sagi, Dalia deliberately created Sagi's clear and unequivocal conflict of interest and "paved the road" for his self-dealing. This has resulted in Sagi looting the Orly Trust for his own benefit with the tacit or express approval of Dalia.

63.    As a fiduciary of the Orly Trust with prior, as well as continued knowledge, of the TPR foreclosure, Dalia had a duty to protect the Orly Trust's indirect ownership of the TPR shares. Instead of taking proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR shares for himself to the detriment of the Orly Trust. Moreover, in connection with her appointment as successor trustee of the Orly Trust in January, 2008, as previously stated above, Dalia purportedly divested herself of her TPR shares for the sum of $5,000,000 (without informing the Court or Petitioner as to when she transferred her interest) in a further attempt to distance herself from any attributable wrongdoing.

64.    Dalia knew of Sagi's plan to foreclose on the D & K Note as early as August, 2008, thus she withheld information from Petitioner concerning the TPR Sale for almost 10 months. Even then, she only provided the information until she received a demand letter from Petitioner's counsel and realized that legal action was imminent.

65.    In fact, the notice of the TPR Sale in the New York Post was specifically designed by Dalia and Sagi not to provide Petitioner with notice and an opportunity to object to same. Dalia and Sagi were both aware of Petitioner's address at this time but instead of notifying Petitioner, they chose to deceive her by publishing notice in the newspaper.

66.    As a result of the sham TPR Sale, on or about June 9, 2009, Petitioner commenced an action which is pending before the Supreme Court for New York County entitled, Orly Genger et al v. Dalia Genger, Sagi Genger, D & K GP LLC, TPR Investment Associates, Inc. and Leah Fang, Index No. 109749/2009 (the "New York TPR Action"). In the New York TPR Action, Petitioner is seeking, _inter alia,_ monetary damages and the return of the TPR shares.[7]

## THE JULY 2009 ORDER AND INJUNCTION AND PETITIONER'S RENEWED APPLICATION WITH THIS COURT TO REMOVE DALIA AS TRUSTEE

67.    Upon learning of the sham TPR Sale, which stripped the Orly Trust of its indirect interest in its shares of TPR, Petitioner renewed her petition with this Court to remove Dalia as Trustee of the Orly Trust by filing same on or about June 22, 2009. Petitioner also filed a Motion with this Court and sought a temporary restraining order which enjoined and prohibited

---

[7] By Decision and Order of the Honorable Paul G. Feinman dated June 28, 2010 in the New York TPR Action, Justice Feinman determined that the Petitioner's claim with respect to Dalia's breach of her fiduciary duty as sole Trustee of the Orly Trust should be decided by the Surrogate's Court. Further, in the same Decision and Order, Justice Feinman denied Dalia's Motion for Summary Judgment and determined that there is a "...question of fact as to whether Dalia Genger acted with intent to commit fraud against plaintiff's trust [the Orly Trust], and to lull plaintiff [Orly] into a false sense of security as to the status of her trust." (See **Exhibit "V"**, Decision and Order of Justice Feinman dated June 28, 2010, Pages "17" and 19")

Dalia, *inter alia,* and anyone acting on her behalf from attempting to sell, transfer, pledge and encumber or take any act with respect to the Orly Trust TRI Shares without providing Petitioner with at least 10 days prior notice. A copy of the June 22, 2009 Petition (without the exhibits attached to it which are duplicative) is annexed hereto as **Exhibit "W"**.

68.    As a result of the Petitioner's forgoing motion for a restraining order, the July 1, 2009 Order was entered pending the outcome of this proceeding and which imposed certain protective restraints (the "Restraints") upon Dalia as previously set forth above. Dalia declined to attend the hearing.

69.    During counsel's oral argument of Petitioner's motion for a restraining order, Surrogate Webber noted to Dalia's counsel that:

> "They [Dalia and Sagi] are on notice of all of your fears
> [with respect to the dissipation of the Orly Trust's assets].
> So for them now to do something which would obviously
> be against their duties and responsibilities would be
> somewhat glaring in terms of what the surcharge [to be
> imposed against Dalia] would be." (emphasis supplied)
> (See excerpt from transcript from July 1, 2009
> hearing annexed hereto as **Exhibit "X"**, Page "23")

70.    The Restraints were later confirmed by this Court on August 18, 2009, reconfirmed and supplemented with additional restraints by this Court on July 16, 2010 and made a part of a stipulation between Petitioner and Dalia which was entered on September 8, 2010 (see **Exhibit "Y"**).

71.    On or about September 21, 2010, Petitioner filed the Second Amended Verified Petition (the "Second Amended Petition") to remove Dalia as Trustee. Dalia has filed a Motion to Dismiss the Second Amended Petition and the decision on the Motion to Dismiss still remains *sub judice.*

## THE ADDITIONAL RESTRAINTS PLACED UPON DALIA AND SAGI BY THE NEW YORK COURTS IN THE NEW YORK TRI ACTION AND THE NEW YORK TPR ACTION

72.    In addition to the Restraints imposed upon Dalia by the July 2009 Order, on or about July 28, 2010, the Court in the New York TPR Action also restrained Dalia, Sagi and the co-defendants to that action from transferring, selling, pledging, assigning, or otherwise disposing of D & K's 48% ownership interest in TPR. (the "TPR Action Restraints") (See **Exhibit "Z"** at page "32")

73.    The Court in the New York TRI Action also entered certain restraints against Dalia, Sagi and the other co-defendants to that action with respect to the Orly Trust TRI Shares.[8] (the "TRI Action Restraints") (See **Exhibit "AA"**, December 28, 2011 Order in New York TRI Action, Pages "14" through "15").

## DALIA HAS WILLFULLY AND REPEATEDLY DISOBEYED THE JULY 2009 ORDER BY ENTERING INTO A FURTHER SCHEME TO ENCUMBER AND DISSIPATE THE ORLY TRUST'S ASSETS

74.    Petitioner submits that it could not be any more clear to Dalia, her counsel, Sagi and the other co-defendants to the New York TPR Action and the New York TRI Action that Dalia was forbidden from transferring, pledging, encumbering, assigning, selling and/or dissipating any assets of the Orly Trust without prior notice to Petitioner as a result of: (i) the Restraints set forth in the July 1, 2009 Order; (ii) Surrogate Webb's statement to Dalia's counsel on the return date that Dalia and Sagi are on notice of Petitioner's fears that the Orly Trust's assets will be dissipated (and therefore, any actions taken by Dalia against her duties and responsibilities would obviously be "glaring") (See **Exhibit "X"**, Page "23"); (iii) the Stipulation entered into between Petitioner and Orly further confirming the Restraints (See **Exhibit "Y"**;

---

[8] Both the New York TRI Action and the New York TPR Action are before Justice Paul Feinman.

and, (iv) the restraints imposed by Justice Feinman in the New York TRI Action and New York

TPR Action (collectively, the "Supreme NY Restraints"). All these restraints were specifically

and expressly intended to preserve the "status quo" until the Courts rendered a final decision.

75.     Notwithstanding the forgoing, rather than honor any of these restraints,

subsequent to the Petitioner's filing of the Second Amended Petition, Dalia, Sagi and their

cohorts, have continued to conspire together and in secret to render all of these restraints a

nullity.

76.     Instead of treating this Court's July 2009 Order and the Supreme NY

Restraints as Orders to be obeyed and boundaries to be honored, Dalia, Sagi and their cohorts

saw them as obstacles to be hurdled. To that end, Dalia, D & K (through D & K GP), and/or

TPR (in other words, Dalia and Sagi) secretly executed eight (8) agreements[9] encumbering the

Orly Trust with $4.44 million in new debt, which the Orly Trust has no hope of paying off.

77.     In breach of Dalia's fiduciary duties as Trustee, the Secret Agreements

were specifically designed and intended as part of Dalia and Sagi's scheme to encumber the Orly

Trust with debt but not to similarly encumber the Sagi Trust with any debt whatsoever.

78.     Petitioner discovered the existence of the Secret Agreements on or about

July 6, 2012 solely in response to discovery requests made by Petitioner's counsel in the New

York TPR Action. These documents were only first produced on or about July 6, 2012

notwithstanding the fact that: (i) the initial Secret Agreements, namely, the $4,000,000

---

[9] These eight secret agreements (collectively, the "Secret Agreements") will be further described
immediately below and are: (i) the $4,000,000 Promissory Note dated October 3, 2011 (See **Exhibit "BB"**); (ii) the
Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note executed on May
15, 2012 (See **Exhibit "CC"**); (iii) the $4,240,000 Amended and Restated Promissory Note dated May 15, 2012
(See **Exhibit "DD"**); (iv) the $200,000 Promissory Note dated May 15, 2012 (See **Exhibit "EE"**); (v) the
Agreement Amending Terms of Promissory Note dated March, 2012 (See **Exhibit "FF"**); (vi) the purported TPR
Settlement Agreement dated October 3, 2011 (See **Exhibit "GG"**); (vii) the purported Amended and Restated TPR
Settlement Agreement dated March 16, 2012 (See **Exhibit "HH"**); and, (viii) the Bill of Sale and Note Assignment
dated May 15, 2012 (See **Exhibit "II"**).

Promissory Note and the TPR Settlement Agreement were both executed approximately nine (9)

months earlier on October 3, 2011; (ii) the July 2009 Order expressly required that Dalia provide

Petitioner with prior notice of any and all acts which would affect the Orly Trust TRI Shares;

and, (iii) the Supreme NY Restraining Orders expressly required that Dalia provide prior notice

of any and all acts which would affect the Orly Trust's respective interests in the Orly Trust TRI

Shares and TPR.

### THE 2011 PROMISSORY NOTE

79.    Unbeknownst to Petitioner, on October 3, 2011, Dalia and TPR purported

to cancel the $4,500,000 deficiency remaining on the D & K Note after the disputed TPR Sale

and replace it with a $4,000,000 promissory note that directly obligated the Orly Trust to pay

TPR (the "2011 Promissory Note"). (See **Exhibit "BB"**, copy of 2011 Promissory Note and the

TPR Settlement Agreement (defined below), **Exhibit "GG"**).

80.    By so doing, Dalia wrongly attempted to: (i) transfer $4 million dollars of

liability from D & K to the Orly Trust (See **Exhibit "GG"**, TPR Settlement Agreement at 5); (ii)

replace the unenforceable D & K Note with a putatively enforceable one (id); (iii) acknowledge

the legality of the sham TPR Sale and the resulting deficiency (id. at 2-3); and, (iv) ensure that

this $4 million dollar liability would not fall within the release that was part of the purported

TPR Settlement Agreement reached that same day between Dalia, Sagi and the other defendants

to the New York TPR Action, but would continue to burden the Orly Trust (id. at 5).

81.    The 2011 Promissory Note was payable to TPR the earlier of: (a)

November 1, 2012; or, (b) the receipt of any proceeds from the sale of the Orly Trust TRI

Shares, "notwithstanding anything to the contrary herein or in the parties' accompanying [TPR]

Settlement Agreement". See **Exhibit "BB"** at 1.

82.   By executing the 2011 Promissory Note on behalf of the Orly Trust, Dalia (i) obligated the Orly Trust to pay all of TPR's legal fees (See **Exhibit "BB"** at 2); (ii) **made her removal as Trustee an "Event of Default" making the 2011 Promissory Note immediately due and payable** (id. at 1, emphasis added); and, (iii) agreed to the law and jurisdiction of the State of Delaware (id at 2)[10]

## THE 200K PROMISSORY NOTE AND THE CREDIT AGREEMENT

83.   In May, 2012, TPR assigned the 2011 Promissory Note to MSCo, a St. Kitts entity. In exchange for an alleged $400,000 received from MSCo, Dalia had the Orly Trust sign another promissory note for $200,000 (the "200K Note") (See **Exhibit "EE"**) and increased the 2011 Promissory Note to $4,240,000.[11] (See **Exhibit "CC"**, Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note (the "Credit Agreement" and **Exhibit "EE"**, (the 200K Note).

84.   Further, Dalia, purporting to act as Trustee wrongfully attempted to: (i) waive any defenses the Orly Trust would have to payment, including any defenses with respect to MSCo., TPR, or any prior holder of the 2011 Promissory Note (See **Exhibit "CC"**, Credit Agreement, §6.1(c)); (ii) have the Orly Trust broadly indemnify MSCo., should Orly or any future Trustee legally attack the 2011 Promissory Note, the Amended Promissory Note, or the Credit Agreement (id., §7); (iii) make the Orly Trust liable for all costs of collection, including attorneys' fees (See **Exhibit "DD"**, Amended and Restated Promissory Note (the "Amended 2011 Note") § 6); (iv) **make Dalia's replacement as the Orly Trust Trustee an "Event of**

---

[10] In March, 2012, unbeknownst to Petitioner, TPR, D & K and the Orly Trust (i.e. Dalia and Sagi) purported to enter into an "Agreement Amending Terms of Promissory Note" to provide for New York law and jurisdiction in any competent court (See **Exhibit "FF"**). This Agreement also gave Dalia and Sagi the power to amend the 2011 Promissory Note at will.

[11] In other words, Dalia pledged $440,000 of Orly Trust assets in exchange for a purported $400,000.

Default" making the Amended 2011 Note and the 200K Note (jointly, the "Notes") immediately due and payable (See **Exhibit "CC"**, Credit Agreement, § 6.2, emphasis added); (v) agree to pay the 200K Note from the sale of the Orly Trust TRI Shares "notwithstanding anything to the contrary" (**Exhibit "EE"**, 200K Note, §1.3); and, (vi) make the Credit Agreement and Notes fully assignable without the consent of, or notice to, the Orly Trust (See **Exhibit "CC"**, Credit Agreement, § 10).

## THE PURPORTED SETTLEMENT AND AMENDED SETTLEMENT

85.    On October 3, 2011, Dalia (supposedly on behalf of the Orly Trust), TPR and D & K (by Sagi Genger) purported to settle the New York TPR Action.

86.    Petitioner and her counsel in the New York TPR Action were not informed of this purported settlement nor was Petitioner consulted in any way regarding its terms.

87.    In violation of the July 2009 Order, the Supreme NY Restraints, Surrogate Webb's admonishment to Dalia concerning the dissipation of the Orly Trust's Assets, and the Stipulation entered into between Petitioner and Dalia, the purported settlement agreement (the "TPR Settlement Agreement", which incorporates the 2011 Promissory Note by reference) purports to have the Orly Trust transfer all its interests in D & K and disclaim all interest in TPR. The settlement agreement also has TPR relinquish its claims to the Orly Trust TRI Shares:

> (a) TPR hereby relinquishes in favor of the OG Trust [the Orly Trust] any economic interest in the TRI Shares [the Orly Trust TRI Shares] and assigns to the OG Trust its right to any economic benefits of the TRI Shares including any proceeds from the sale thereof, including but not limited to the $10.3 million in proceeds otherwise owing to TPR in the future pursuant to the terms of the August 22, 2008 letter agreement; (b) the OG Trust - irrespective of any claim made or asserted on its behalf by Orly Genger – hereby transfers to TPR its limited partnership interest in DK (the "DK Interest"), and disclaims any interest in, any shares of or TPR, either directly

or indirectly through DK (the "TPR Interest");. . . and (c) TPR agrees to pay $100,000 for the legal fees of the OG Trust.[12]
(See **Exhibit "GG"**, TPR Settlement Agreement, Paragraph "1")

88.    On March 16, 2012, Dalia (supposedly on behalf of the Orly Trust), TPR, and D & K GP (by Sagi Genger) entered into a purported Amended and Restated Settlement Agreement (the "Amended TPR Settlement Agreement"). Once again, Petitioner was not informed or consulted in any way. The purported "settlement" was restated, and then amended to purportedly cancel and void "the (i) the Amended and Restated Limited Partnership Agreement of D&K Limited Partnership dated as of October 30, 2004 and signed November 22, 2007, and/or (ii) the Meeting of Partners of D&K L.P. January 31, 2009 and Agreement." See **Exhibit "HH"**, March 16, 2012 Amended TPR Settlement Agreement, Paragraph "1").

89.    Importantly, though the Amended TPR Settlement Agreement purported to void these two agreements *ab* initio, the purported settlement did nothing to reverse or unwind the sham TPR Sale that these two agreements purported to enable, or to cancel the supposed deficiency resulting from the TPR Sale.[13]

90.    Demonstrably, these various actions and agreements (agreed to in secret and never revealed to the Court or Petitioner despite numerous Court appearances, filings and outstanding documents requests) in the New York TPR Action and New York TRI Action violated the protective restraints imposed by this Court and the other New York Courts in a

---

[12] Dalia, Sagi, TPR, and D & K also purported to require the Orly Trust to pay D & K and TPR's attorneys' fees, should Petitioner continue to advance claims on the Orly Trust's behalf (see **Exhibit "GG"**, Paragraph "8") and purported to release one another  from all claims, causes of action, lawsuits, demands, liability of any kind, asserted or unasserted, known or unknown, suspected or unsuspected, direct or derivative, in connection with the 1993 Note [D & K Note], the [Orly Trust] TRI Shares, the Share Transfer, the DK Interest, the TPR Interest, the 2008 Letter Agreement, or any other matters, through the date of the Agreement Id. at Paragraph "4")

[13] The parties also made sure that the Release in the TPR Settlement Agreement did not cover anyone on Sagi and Dalia's "enemies list" (See **Exhibit "HH"**, Amended TPR Settlement Agreement, Paragraph "3"), changed the governing law to New York law (id. at Paragraph "6"), and made their agreement to Delaware jurisdiction non-exclusive (id.).

number of independent ways. As to the TPR Settlement Agreement and the Amended TPR

Settlement Agreement:

(a)    Pursuant to the July 2009 Order, Dalia and her counsel were required to give Petitioner 10 days advance notice of any transaction that impacted the Orly Trust TRI Shares, but failed to provide notice of either the TPR Settlement Agreement or the Amended TPR Settlement Agreement;

(b)    By agreeing in the TPR Settlement Agreement and the Amended TPR Settlement Agreement to have the Orly Trust relinquish its interest in TPR and transfer its interest in D & K to TPR, Dalia, Sagi, D & K GP, and TPR jointly and severally violated the TPR Action Restraints which forbade each of them from "transferring, pledging, assigning or otherwise disposing of the [Orly Trust TPR] Shares." (See **Exhibit "Z"** at 31-32)

91.    As to the Notes and the Credit Agreement, TPR's assignment of the 2011

Promissory Note to MSCo was an "...act by Respondent, her agents and all other persons acting

on her behalf to assign, mortgage, pledge, redeem, encumber, sell or otherwise alter the Orly

Trust's interest in TRI..." Accordingly, pursuant to the July 2009 Order, Dalia was required to

give Petitioner at least 10 days notice of the transaction but completely failed to do so. This

failure to notify Petitioner also violated various provisions of the Supreme NY Restraining

Orders.

## THE EVENT OF DEFAULT UNDER THE NOTES HAS BEEN TRIGGERED AS A RESULT OF THE DISMISSAL OF DALIA'S COUNSEL'S FEDERAL INTERPLEADER ACTION

92.    As a result of Dalia, TPR, D & K (through D & K GP) (i.e, Dalia and

Sagi's) actions, the $4.44 million dollars in new debt to MSCo is immediately due and payable

because of one of the poison pills that litter the Secret Agreements (in addition to the one that

provides an event of default if Dalia is removed as Trustee of the Orly Trust) has already been

triggered[14], and thus, MSCo is able to immediately proceed against the Orly Trust's assets in any

---

[14]The resolution of an interpleader action commenced by Dalia's counsel, Pedowitz & Meister LLP ("Pedowitz & Meister") is a triggering Event of Default under the Secret Agreements. Pedowitz & Meister was the

jurisdiction in the world (Delaware, St. Kitts, etc.) without notice or warning to the Orly Trust or to anyone.

93.    Thus, by her actions Dalia has created a situation where the assets of the Orly Trust could be in immediate peril of dissipation.

## DALIA NEEDS TO BE REMOVED AS TRUSTEE IMMEDIATELY

94.    As a result of all of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary of the Orly Trust, her violation of the terms and conditions of this Court's July 2009 Order and the Supreme NY Restraints, her ongoing conspiracy and scheme with Sagi to loot, transfer, pledge, encumber and dissipate the Orly Trust's assets and the immediate peril to those assets, Petitioner submits that Dalia's should be immediately removed as Trustee of the Orly Trust.

## JOEL ISAACSON SHOULD BE APPOINTED AS SUCCESSOR TRUSTEE

95.    As a result of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary

---

Escrow Agent with respect to the proceeds of the disputed sale of the Orly Trust TRI Shares and commenced an interpleader action against Petitioner, Dalia as Trustee of the Orly Trust and other parties in the United States District Court for the Southern District of New York, Pedowitz & Meister LLP v. TPR Investment Associates, Inc. Orly Genger, et al (Case No. 11 Civ. 5602) (the "Pedowitz & Meister Interpleader Action) whereby it sought, *inter alia,* a judgment from the Court determining who was entitled to the proceeds of the disputed sale of the Orly Trust TRI Shares. Petitioner's counsel moved to dismiss the Pedowitz & Meister Interpleader Action on the grounds, *inter alia,* that the District Court lacked subject matter jurisdiction and in any event, all the parties and claims involved in the Pedowitz & Meister Interpleader Action were already pending before Justice Feinman in the New York TRI Action. The Pedowitz & Meister Interpleader Action was recently dismissed by Judge John F. Keenan in the United States District Court for the Southern District of New York by Opinion and Order dated June 14, 2012, due to lack of subject matter jurisdiction and described by him as a "sham". See Case No.'s 08 Civ. 7140 (JFK), 11 Civ. 5602 (JFK), et al), Docket No. 64). Thus, the resolution of this sham action has triggered an Event of Default under the Secret Agreements. It is worth noting that Pedowitz & Meister represents both Dalia in her individual capacity and as Trustee of the Orly Trust.

of the Orly Trust and her violation of the terms and conditions of this Court's July 2009 Order, Dalia should be immediately removed as Trustee and replaced with Joel Isaacson.

96.    Mr. Isaacson is the founder and CEO of Joel Isaacson & Co. LLC, which has been a leading independent wealth management firm in New York City for almost 20 years, and which is located at 546 Fifth Avenue, 20th Floor, New York, NY 10036. Mr. Isaacson specializes in financial services and tax planning and has acted as trustee for more than 100 trusts. He holds a Bachelors of Science Degree in accounting and a Masters of Business Administration degree in financial planning. Mr. Isaacson is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR or D & K, is willing and prepared to succeed Dalia as Trustee immediately and has an understanding of the current status of the Orly Trust.

**WHEREFORE,** respectfully requests that an Order be entered: (i) immediately removing Dalia Genger as Trustee of the Orly Trust; (ii) suspending the Letters of Appointment heretofore issued to Dalia; (iii) appointing Joel Isaacson as successor trustee; and, (iv) granting such other and further relief as this Court deems to be just equitable and proper.

Dated: New York, New York
       October 15, 2012

                                    _____
                                    ORLY GENGER

# VERIFICATION

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss.: |
| COUNTY OF NEW YORK | ) |

ORLY GENGER, the petitioner named in the foregoing Third Amended Verified

Petition, being duly sworn, deposes and says:

1.    I am the Petitioner in this matter.

2.    I have read the annexed Third Amended Verified Petition, know the contents thereof and the same are true to my knowledge, except those matters thereon which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
ORLY GENGER

Sworn to before me this
15th day of October, 2012

_____
Notary Public

**Daniel B Fix**
Notary Public State of New York
New York County, LIC# 02F16239452
Comm Exp 04/18/2015

# EXHIBIT A

TRUST AGREEMENT

BETWEEN

ARIE GENGER

AS GRANTOR

AND

LAWRENCE M. SMALL AND SASH A. SPENCER

AS TRUSTEES

CREATING

THE ORLY GENGER 1993 TRUST

Dated: December  *13*  , 1993

Copy 3 of 4

RUBIN BAUM LEVIN CONSTANT & FRIEDMAN
30 ROCKEFELLER PLAZA  ·  NEW YORK, N.Y. 10112

DG 00313

## Index to the Orly Genger 1993 Trust Agreement

| Article | Contents | Page |
|---|---|---|
| FIRST: | Disposition of Principal and Income During the Life of the Grantor's Daughter, ORLY GENGER | 1 |
| SECOND: | Continuing Trust for Descendants of the Grantor's Daughter, ORLY GENGER | 5 |
| THIRD: | Disposition of Property if No Descendant of the Grantor is Living | 9 |
| FOURTH: | Additions to the Trusts | 13 |
| FIFTH: | Irrevocability | 13 |
| SIXTH: | Governing Law | 13 |
| SEVENTH: | Trustees | 13 |
| EIGHTH: | Compensation of Trustees | 18 |
| NINTH: | Settlement of Trustees' Accounts; Exoneration of Trustees | 18 |
| TENTH: | Definitions | 21 |
| ELEVENTH: | Administrative Powers | 22 |
| TWELFTH: | Provisions Relating to the GST | 32 |
| THIRTEENTH: | Release of Powers | 37 |
| FOURTEENTH: | Provision with Respect to Closely Held Businesses | 38 |
| FIFTEENTH: | Headings | 39 |
| SIXTEENTH: | Severability | 39 |

DG 00314

TRUST AGREEMENT dated December $/3$ , 1993, between
ARIE GENGER (now residing at 1067 Fifth Avenue, New York, New
York), as Grantor, and LAWRENCE M. SMALL (now residing at 2804
Woodland Drive, Washington, D.C. 20008) and SASH A. SPENCER (now
residing at 251 Crandon Boulevard, Townhouse 164, Key Biscayne,
Florida 33149), as Trustees.

The Grantor hereby transfers to the Trustees, and the
Trustees hereby acknowledge receipt of, the sum of Six Hundred
Thousand Dollars ($600,000.00), to be held, administered and
disposed of in accordance with the provisions of Article FIRST
hereof. Said sum and any other property that may be received by
the Trustees pursuant to the provisions of Article FOURTH
hereof, and all investments and reinvestments thereof, and all
proceeds thereof which constitute principal, are hereinafter
collectively called "principal."

This Trust Agreement shall be known as the "Orly
Genger 1993 Trust Agreement" and the trust created by Article
FIRST hereof shall be known as the "Orly Genger 1993 Trust."

> FIRST:    Disposition of Principal and Income
> During the Life of the Grantor's Daughter,
> ORLY GENGER.

A.    The Trustees shall hold, manage, invest and rein-
vest the principal of the trust created by this Article, IN
TRUST, and, so long as the Grantor's daughter, ORLY GENGER,
shall live, the Trustees are authorized and empowered to pay
such part, parts or all, if any, of the net income of the trust

DG 00315

created by this Article (hereinafter referred to in this Article as "Orly's Trust") to, or apply such part, parts or all, if any, of such net income for the use or benefit of, such one or more of the following individuals living from time to time in such equal or unequal amounts or proportions, and at such time or times, as the Trustees, in their discretion, shall determine:

1. The Grantor's daughter, ORLY GENGER.

2. Each descendant of ORLY GENGER.

The Trustees shall accumulate all income of Orly's Trust not so paid to or applied and, at least annually, add such net income to the principal of Orly's Trust.

In making such distributions, the Trustees are requested (but they are not directed) to limit the total amount of the distributions made to any descendant of ORLY GENGER with respect to any calendar year to the amount necessary to increase such descendant's taxable income for United States income tax purposes for such year to the greatest amount that shall still result in such descendant not being subject to United States income taxes at the highest marginal rate in effect for such year, after taking into account all of such descendant's other income and deductions for such year.

B. The Trustees are authorized and empowered to pay to, or apply for the use or benefit of, the Grantor's said daughter such part, parts or all, if any, of the principal of Orly's Trust, and at such time or times, as said Trustees, in

-2-

DG 00316

their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of Orly's Trust.

C.    Upon the death of the Grantor's said daughter, the Trustees shall pay the then principal of Orly's Trust, together with all net income thereof then accrued but not yet collected, and collected but not yet disposed of, as follows:

1.    The Trustees shall pay one-half (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of the descendants of the Grantor's said daughter, and upon such terms, conditions and trusts, if any, as the Grantor's said daughter, by a provision in her Will expressly referring to this Article of this Trust Agreement, shall validly direct and appoint. If, or to the extent that, the Grantor's said daughter shall fail so validly to direct and appoint such principal and income, the Trustees, at the death of the Grantor's said daughter, shall pay the same, per stirpes, to such of the descendants of the Grantor's said daughter as shall survive her, subject, however, to the provisions of Article SECOND hereof, or, if no descendant of the Grantor's said daughter shall survive her, per stirpes, to such of the Grantor's descendants as shall so survive, or, if no descendant of the Grantor shall so survive, in accordance with the provisions of Article THIRD hereof.

-3-

DG 00317

2.    The Trustees shall pay one-half (1/2) of
such income and principal, per stirpes, to such of the descen-
dants of the Grantor's said daughter as shall survive her, sub-
ject, however, to the provisions of Article SECOND hereof, or,
if no descendant of the Grantor's said daughter shall survive
her, per stirpes, to such of the Grantor's descendants as shall
so survive, or, if no descendant of the Grantor shall so sur-
vive, in accordance with the provisions of Article THIRD hereof

3.    If, pursuant to the provisions of paragraph
1 or paragraph 2 of this Section C, the Trustees are directed to
pay a per stirpital share of such income and principal to a
descendant of the Grantor, and if at the time the Trustees are
so directed there shall be in existence a trust for such descen-
dant under a trust agreement between Arie Genger, as grantor,
and Lawrence M. Small and Sash A. Spencer, as trustees, executed
on the date hereof and known as the "Sagi Genger 1993 Trust
Agreement," the Trustees shall not pay such per stirpital share
to such descendant but shall instead pay such per stirpital
share to the trustees then acting under said trust agreement, to
be disposed of by them pursuant to the provisions of the trust
for such descendant under said trust agreement.

D.    Notwithstanding anything herein to the contrary,
if any Trustee hereunder shall be one of the potential income
beneficiaries of Orly's Trust, such Trustee shall not, in his or
her capacity as such a Trustee, have any voice or vote or other-

-4-

DG 00318

wise participate in any decision pertaining to the payment or application of the income or principal of Orly's Trust to or for the use or benefit of him or her in his or her capacity as a beneficiary of such trust or to or for the use or benefit of any person whom he or she has an obligation to support, and, in each such event, the other Trustee or Trustees shall make all decisions relating to such trust that pertain to such matters.

> SECOND:    Continuing Trusts for
> Descendants of the Grantor's Daughter,
> ORLY GENGER.

A.    If, under any provision of this Trust Agreement, any property is directed to be paid to a descendant of the Grantor's daughter, ORLY GENGER, subject to the provisions of this Article, such property shall not be distributed or paid to such descendant. Instead, the Trustees shall continue to hold such property, IN TRUST (in a separate trust for each such descendant which is referred to in this Article as "such descendant's trust"; provided, however, that if there shall be property so directed to be paid on more than one occasion to any such descendant, all such property shall be held in a single trust for such descendant), and, so long as such descendant shall live before attaining the age of twenty-one (21) years, the Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the net income of such descendant's

-5-

DG 00319

trust, and at such time or times, as said Trustees, in their discretion, shall determine, and the Trustees shall accumulate the balance of such net income, if any, and, at least annually, add it to the principal of such descendant's trust, and, so long as such descendant shall live after attaining the age of twenty-one (21) years, the Trustees shall pay to such descendant all of the net income of such descendant's trust in at least quarterly installments.

B.    The Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the principal of such descendant's trust, and at such time or times, as said Trustees, in their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of the trust.

C.    Upon the death of such descendant (hereinafter referred to in this Article as "such deceased descendant"), the Trustees shall pay the then principal of such deceased descendant's trust, together with all net income thereof accrued but not yet collected, and collected but not yet disposed of, as follows:

-6-

DG 00320

1.    The Trustees shall pay one-half (1/2) of
such income and principal, in such equal or unequal amounts or
proportions, to or for the use or benefit of such one or more of
the descendants of such deceased descendant, and upon such
terms, conditions and trusts, if any, as such deceased descen-
dant, by a provision in his or her Will expressly referring to
this Article of this Trust Agreement, shall validly direct and
appoint.  If, or to the extent that, such deceased descendant
shall fail so expressly and so validly to direct and appoint
such principal and income, the Trustees shall, at the death of
such deceased descendant, pay the same, per stirpes, to such of
the descendants of such deceased descendant as shall survive
such deceased descendant, subject, however, to the provisions of
this Article, or, if no such descendant shall so survive, per
stirpes, to such of the descendants as shall so survive of the
ancestor of such deceased descendant closest in degree of rela-
tionship to such deceased descendant who (i) shall have descen-
dants who shall so survive and (ii) shall have been a descendant
of the Grantor or shall have been the Grantor, subject, however,
to the provisions of this Article, or, if no such descendant
shall so survive, in accordance with the provisions of Article
THIRD hereof.

2.    The Trustees shall pay one-half (1/2) of
such income and principal, per stirpes, to such of the descen-
dants of such deceased descendant as shall survive such deceased

-7-

DG 00321

descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

3.   If, pursuant to the provisions of paragraph 1 or paragraph 2 of this Section C, the Trustees are directed to pay a per stirpital share of such income and principal to a descendant of the Grantor subject to the provisions of this Article, and if at the time the Trustees are so directed there shall be in existence a trust for such descendant under a trust agreement between Arie Genger, as grantor, and Lawrence M. Small and Sash A. Spencer, as trustees, executed on the date hereof and known as the "Sagi Genger 1993 Trust Agreement," the Trustees shall not pay such per stirpital share to such descendant subject to the provisions of this Article but shall instead pay such per stirpital share to the trustees then acting under said trust agreement, to be disposed of by them pursuant to the provisions of the trust for such descendant under said trust agreement.

-8-

D.    Notwithstanding anything herein to the contrary, each trust created by the terms of this Article shall terminate, if not sooner terminated, upon the expiration of twenty-one (21) years after the death of the last surviving descendant of the Grantor's parents, SHARGA GENGER and DORA GENGER, who shall have been in being on the date hereof; and the Trustees shall thereupon pay the then principal of any trust terminated in accordance with the provisions of this Section, together with all net income thereof accrued but not yet collected and collected but not yet disposed of, to the descendant of the Grantor with respect to whom such trust is being held.

THIRD:    Disposition of Property if No Descendant of the Grantor is Living.

A.    As used in this Article:

1.    The words "such time" shall mean the time as of which any property is directed to be paid in accordance with the provisions of this Article.

2.    The term "Qualified Charitable Organization" shall mean an organization that shall be qualified as an organization to which contributions and bequests are deductible for both United States income tax, gift tax and estate tax purposes under the provisions of Section 170, Section 2522 and Section 2055 of the Internal Revenue Code.

-9-

DG 00323

B.    If, under any provision of this Trust Agreement,
any property is directed to be paid in accordance with the pro-
visions of this Article, the Trustees shall pay such property as
follows:

1.    If the Grantor, the Grantor's spouse and/or
any one or more descendants of the Grantor shall have caused
there to be created a foundation known as The Genger Foundation,
and if at such time said Foundation shall be in existence and
shall be a Qualified Charitable Organization, then, in such
event, the Trustees shall pay such property to said Foundation.

2.    If at such time either The Genger Foundation
created as aforesaid shall not be in existence or said Founda-
tion shall be in existence but shall not be a Qualified Charit-
able Organization, and if at such time the Trustees are autho-
rized under applicable law to cause to be organized a corpora-
tion under and in accordance with the laws of any state of the
United States which the Trustees, in their discretion, shall
select, which corporation (i) shall be known by the name of The
Genger Foundation (or by such other name as the Trustees, in
their discretion, shall select if the name of The Genger Founda-
tion shall not be available to be utilized as the name of said
corporation), (ii) shall have as its purposes the encouragement,
promotion, support and enhancement of non-orthodox study and
education for children in the State of Israel pertaining to the
customs, practices and ancient and modern history of the Jewish

-10-

people and shall maintain all of the property held by it, and
use all of the net income thereof received from time to time,
for the encouragement, promotion, support and enhancement of
such study and education for children, (iii) shall be required
to maintain all of the property held by it, and use all of the
net income thereof received from time to time, for such pur-
poses, with such property and income to be expended for such
purposes in such amounts, at such time or times and to or for
the use or benefit of such recipient or recipients as the direc-
tors, trustees and/or the officers of such corporation shall, in
their discretion, determine from time to time, subject, however,
to the other provisions of this paragraph 2, (iv) shall have as
its initial directors or trustees the Trustees hereunder, the
Grantor's cousin, JEREMIAH WOHLBERG (now residing at 2325
Lindermere Drive, Merrick, New York), if he shall not then be a
Trustee hereunder, and also such other individual or individ-
uals, if any, as may be designated by the Trustees, and there-
after to have as directors or trustees such individuals as shall
from time to time be determined as provided for in the certi-
ficate of incorporation and/or by-laws of said corporation, and
(v) shall be organized and maintained in such manner as to be
and continue to be a Qualified Charitable Organization, then, in
such event, the Trustees shall organize such a corporation, and
the Trustees shall pay such property to such corporation.

-11-

DG 00325

3. If at such time (i) either The Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and (ii) the Trustees are not authorized under applicable law to cause to be organized a corporation of the nature referred to in paragraph 2 of this Section B, then, in such event, the Trustees shall pay such property to the JEWISH COMMUNAL FUND OF NEW YORK, New York, New York, to be held, administered and disposed of pursuant to the rules and regulations thereof as an Undesignated Philanthropic Fund to be known as the Genger Philanthropic Fund and with the privilege of making advisory recommendations with respect thereto to be held in the first instance by the Trustees, said JEREMIAH WOHLBERG, if he shall not then be a Trustee hereunder, and also by such other individual or individuals, if any, as the Trustees may designate, and thereafter by such other individual or individuals as such designees and their successors acting in such capacity may from time to time designate, and it is requested (but not directed) that the principal and income of such Fund shall be utilized to encourage, promote, support and enhance nonorthodox study and education for children in the State of Israel pertaining to the customs, practices and ancient and modern history of the Jewish people.

-12-

FOURTH:   Additions to the Trusts.

Any person, including the Grantor, by a transfer to take effect during the life of such person or upon the death of such person, may, at any time or times, add to the principal of any trust hereunder any property of any kind or nature acceptable to the Trustees, and any such additional property so received by the Trustees pursuant to the provisions of this Article shall thereafter be deemed to be part of the principal of such trust subject to all of the terms, provisions and conditions of this Trust Agreement.

FIFTH:   Irrevocability.

This Trust Agreement and the trusts hereby created are irrevocable and not subject to amendment or change.

SIXTH:   Governing Law.

This Trust Agreement and the trusts hereby created shall be governed by the laws of the State of New York.

SEVENTH:   Trustees.

A.   The initial Trustees acting hereunder shall be LAWRENCE M. SMALL and SASH A. SPENCER.

B.   Each individual acting as a Trustee hereunder (whether such Trustee is initially a party to this Trust Agreement or a successor Trustee named in Section C of this Article

-13-

DG 00327

or appointed pursuant to the provisions of this Section B) is
authorized and empowered to appoint another individual (other
than the Grantor) to act in his or her place and stead as a
Trustee hereunder.    Each appointment of a successor Trustee
hereunder shall be made by the execution of an instrument of
appointment signed and acknowledged by the individual who shall
have made such appointment and by delivering such instrument in
accordance with the provisions of Section G of this Article; and
any such appointment may be revoked in the same manner by the
individual Trustee who shall have made it at any time before the
occurrence of the event or events as of which such appointment
shall, by its provisions, become effective.    Any appointment
made in accordance with the provisions of this Section B shall
be valid only if the individual so appointed shall, within
thirty (30) days after the later of (i) the date on which a copy
of such instrument of appointment is so delivered to him or her,
and (ii) the occurrence of the event or events as of which such
appointment shall, by its provisions, become effective, qualify
as a successor Trustee under this Trust Agreement in accordance
with the provisions of Section D of this Article.    Each succes-
sor Trustee named in Section C of this Article or appointed in
accordance with the provisions of this Section B shall be vested
with the same powers and authority as the initial Trustees who
are parties to this Trust Agreement; provided, however, that no
such Trustee shall be permitted to exercise any authority or

-14-

DG 00328

power which such Trustee shall be prohibited from exercising by an express provision of this Trust Agreement.

C.   1.   If either LAWRENCE M. SMALL or SASH A. SPENCER shall cease to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, MARTIN A. COLEMAN (now residing at 51 Cambridge Road, Great Neck, New York 11023) shall act as Trustee hereunder.

2.   If MARTIN A. COLEMAN shall fail or cease cease to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, THOMAS G. HARDY (now residing at 935 Park Avenue, New York, New York 10028) shall act as a Trustee hereunder.

D.   Each successor Trustee hereunder shall qualify as such by accepting the trusteeship by the execution of a signed and acknowledged instrument of acceptance and by delivering such instrument in accordance with the provisions of Section G of this Article.

E.   Any individual Trustee hereunder may resign as such a Trustee by the execution of a signed and acknowledged instrument of resignation and by delivering such instrument in accordance with the provisions of Section G of this Article.

-15-

Any such resignation shall become effective upon the receipt of such instrument of resignation by each individual to whom it is delivered or mailed as aforesaid or at such later date as may be specified therein.

F.   If any individual while acting as a Trustee hereunder shall become incapable of discharging his or her responsibilities and duties as such a Trustee by reason of a physical, emotional or intellectual incapacity and such incapacity shall be confirmed by each of two medical doctors in written statements, copies of which shall be delivered or mailed as hereinafter provided, the individual who is so incapacitated shall be deemed for the purposes of construing and applying all of the provisions of this Trust Agreement to have effectively resigned as such Trustee in compliance with the provisions of Section E of this Article, such resignation to be deemed to be effective upon the delivery or mailing of the aforesaid statements as hereinafter provided. Each of the aforesaid statements shall be signed and acknowledged by the medical doctor making the same and copies of the same shall be delivered or mailed by registered or certified mail to the individual, if any, who will become the successor Trustee hereunder in the place and stead of the incapacitated Trustee to whom such statement pertains, to each Trustee, if any, then acting hereunder (other than the incapacitated Trustee to whom such statement pertains), and also to either (i) the Grantor (or, if the Grantor shall not then be

-16-

DG 00330

living, to the executors, administrators or personal representatives of the Grantor's estate), or (ii) any one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied.

G.   Each instrument directed to be delivered in accordance with the provisions of this Section G shall be delivered in person or by mailing a copy of the same by registered or certified mail to each Trustee, if any, then acting hereunder (other than the Trustee, if any, who shall have executed such instrument), and to either (i) the Grantor (or, if the Grantor is not then living, to the executors, personal representatives or administrators of the Grantor's estate), or (ii) any one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied.

H.   No bond or other security shall be given by or required in any jurisdiction (whether in the State of New York or elsewhere) of any Trustee at any time acting hereunder (whether such Trustee is named herein or appointed pursuant to the provisions hereof) for the faithful performance of such Trustee's fiduciary duties in any capacity hereunder regardless of whether such Trustee is or may become a non-resident of the State of New York or elsewhere.

-17-

DG 00331

EIGHTH:   <u>Compensation of Trustees.</u>

No Trustee hereunder, whether such Trustee is herein-above named or appointed pursuant to the provisions hereof, shall be entitled to any compensation (other than reimbursement for out-of-pocket expenses) for services rendered as a Trustee hereunder; and each Trustee who is a party to this Trust Agreement or who qualifies as a successor Trustee hereunder as provided herein shall be deemed to have agreed to serve as such Trustee without receiving any such compensation.

NINTH:   <u>Settlement of Trustees' Accounts;<br>Exoneration of Trustees.</u>

A.   To the fullest extent permitted by law, the Trustees shall not be required to file with or render to, and the Grantor waives and excuses the filing with or rendering to, any Court an account of their transactions or inventories, accounts, statements or reports of principal and/or income with respect to any trust created hereunder.   Nevertheless, the Trustees may at any time have their accounts judicially settled with respect to any trust created hereunder, and in any such proceeding it shall not be necessary to serve any person who is under a disability if there is another party to the proceeding who is not under any disability and who has the same interest as the person who is under a disability, and, in such event, it shall not be necessary to appoint a guardian ad litem for any such party who is under a disability.   The expenses of any such

-18-

DG 00332

account shall be a proper administration expense of the trust to which such account relates.

B.    If any Trustee shall resign as a Trustee here-under, the continuing Trustee, if any, or, if there is no continuing Trustee, any successor Trustee who shall have qualified to act in accordance with the provisions of Section D of Article SEVENTH hereof, may deliver to the Trustee so resigning an instrument whereby such resigning Trustee shall be released and discharged, to the extent stated therein, of and from any and all accountability, liability and responsibility for acts or omissions as Trustee. Any such release and discharge shall be binding upon all persons, whether or not then in being, then or thereafter interested in either the income or the principal of any trust hereunder and shall have the force and effect of a final decree, judgment or order of a court of competent juris-diction rendered in an appropriate action or proceeding for the judicial settlement of the account of such Trustee in which jurisdiction was obtained of all necessary and proper parties. The foregoing provision, however, shall not preclude any Trustee so resigning from having his or her account judicially settled, and in any such proceeding it shall not be necessary to serve any person who is under a disability if there is another party to the proceeding who is not under any disability and who has the same interest as the person who is under a disability, and, in such event, it shall not be necessary to appoint a guardian

-19-

DG 00333

ad litem for any such party who is under a disability.    The expenses of any judicial account rendered by a Trustee who shall resign shall be a proper administration expense of the trust to which such account relates.

C.    In addition to the foregoing, the Trustees are hereby authorized, at any time and from time to time, with respect to any trust hereunder, to settle the account of the Trustees by agreement between the Trustees and the then adult individual or individuals to whom or for whose use or benefit the income of such trust may then be paid or applied and the adult or adults who would be entitled to the principal in case such trust were to terminate at the time of such agreement, excluding any such individual who is under a disability if there is a party to the agreement who is not under any disability and who has the same interest as the individual who is under a disability, which agreement shall bind all persons, whether or not then in being, then or thereafter interested in either the income or the principal of such trust.    Any such settlement shall have the same force and effect as a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for the judicial settlement of such account in which jurisdiction was obtained of all necessary and proper parties.    The expenses of any such account shall be a proper administration expense of such trust.

-20-

D.    To the extent permitted by law, no Trustee shall be accountable, liable or responsible for any act, default, negligence, or omission of any other Trustee.

TENTH:    Definitions.

Wherever used in this Trust Agreement:

1.    The word "Trustees" and all references to the Trustees shall mean and refer to the Trustees and successor Trustees hereinabove named, any successor Trustee appointed pursuant to the provisions hereof, any substitute Trustee appointed by a court of competent jurisdiction, the survivors or survivor of them, and their and each of their successors or successor, as may be acting hereunder from time to time.

2.    The words "IN TRUST" shall mean "in trust, nevertheless, to hold, manage, invest and reinvest, and, until payment thereof as hereinafter directed, to receive the income thereof."

3.    The word "pay" shall, where applicable, mean "convey, transfer and pay" and the word "payment" shall, where applicable, mean "conveyance, transfer and payment."

4.    The words "descendant" and "descendants," when used with respect to any person, shall be deemed to include (i) every individual who is born to such person, (ii) every individual who is lawfully adopted by such person, and (iii)

-21-

DG 00335