commission of the foregoing acts of tortious interference with the 2004 Voting Trust
Agreements.

255.    By reason of the foregoing, Arie has been damaged in an amount to be
determined.

256.    By reason of the foregoing, Orly, individually and as the beneficiary of the Orly
Trust has been damaged in an amount to be determined.

### TENTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

**(Claim for Preliminary Injunction Against the Trump Parties, Sagi Genger TPR and the Sagi Trust Under CPLR 7109)**

257.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 256.

258.    The Arie and Orly Trust TRI shares are unique chattel.

259.    By virtue of the facts set forth above, Arie is the beneficial owner of the Arie TRI
shares.

260.    Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge,
dilute, or take any action on behalf of TPR relating to or concerning the 3000 TRI shares that
reverted to TPR, without the prior written consent of Arie and Sagi is not authorized to exercise
any and all rights, including TPR's voting rights with respect to such 3000 TRI shares, except as
so directed by Arie as the beneficial owner of such shares and the voting rights appurtenant
thereto.

261.    Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge,
dilute, or take any action on behalf of TPR relating to or concerning the Orly Trust TRI shares.

262.    By virtue of the facts set forth above, the Orly Trust is entitled to the benefits
provided to it under the Stipulation of Settlement.

263.    The Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust shares are wrongfully being held by the Trump Parties.

264.    Plaintiffs are entitled to a preliminary injunction, under CPLR 7109, that the Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares shall be restrained and enjoined from transferring, selling, diluting, pledging, assigning or otherwise disposing of or removing such shares from the State until the further order of the Court.

WHEREFORE, Plaintiffs demand Judgment in favor of Plaintiffs against the Defendants as follows:

(a) on the **First Cause of Action against all Defendants**: that this Court find and declare that Arie is entitled to an Order from this Court to reform the terms of the Court-Ordered Stipulation of Settlement to provide as follows:

(i)    that the transfer by Arie of his 51% interest in TPR to Dalia and the concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust, respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result of the Delaware Court finding that the 2004 Transfers are invalid;

(ii)    that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii) that pursuant to a further order of this Court the Court-Ordered Stipulation of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that were returned to TPR as a result of the Delaware Court Action voiding the original 2004 Transfers be placed in a newly formed single purpose entity controlled by Arie (hereinafter, "TPR2");

60

(iv) that Arie be declared the 51% owner of TPR2 which in turn shall be declared, ab initio, the record and beneficial owner of all such 3000 TRI shares, as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v) that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of TPR2 so that together they own the remaining 49% of TPR2;

(vi) that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would otherwise be permitted and would not violate the terms of the 2001 Stockholders Agreement, including, but not limited to, Article 2 of such Agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii) all cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix) Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x) The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

(xi) The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

(xii) The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

(xiii) The purported sales by TPR of the Arie and Orly Trust TRI Shares to the Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void and the proceeds from these purported sales now held in escrow will be released to the Trump Group.

(xiv) TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

(xv)    TPR2 will consent to the terms of the 2001 Stockholders Agreement.

(xvi) Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court-Ordered Stipulation of Settlement in light of the rulings of the Delaware Court that the 2004 Transfers were invalid.

(xvii) Any other declaration as the Court may deem fair and reasonable to give effect to the Original Intent of the parties to the Stipulation of Settlement.

(b) on the **Second Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties,** that the Court find and declare that:

62

(i) upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares;

(ii) upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares;

(iii) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death;

(iv) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death;

(v) upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie;

63

(vi) TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares;

(vii) TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie;

(viii) The Constructive Trust in favor of Arie imposed upon Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to the Trump Group, who were not and are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

(c) on the **Third Cause of Action against Defendants Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, jointly and severally, as follows:**

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly Genger individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(d) on the **Fourth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties:**

(i) rescinding Plaintiff Arie's transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents;

64

(ii) rescinding the 2004 Transaction Documents;

(iii) Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties must account to Arie and Orly, individually and as the beneficiary of the Orly Trust, for 3000 TRI Shares and/or their respective value that are now or ever have been in their respective possession, custody or control; and

(iv) such other equitable relief as the Court may deem fair and reasonable;

(e) on the **Fifth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties**, permanently enjoining and restraining these Defendants, and each of them, from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or encumbering the 3000 shares of TRI common stock that reverted to TPR as a result of the Delaware court rulings.

(f) on the **Sixth Cause of Action against Defendant TPR**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action; and

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action.

(g) on the **Seventh Cause of Action against Defendant Sagi Trust**, a money judgment awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plainitiff's attorneys' fees and costs incurred in connection with this action;

65

(h) on the **Eighth Cause of Action Against the Defendant Trump Parties, jointly and** severally:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(i) on the **Ninth Cause of Action Against Sagi, Fang, and the Sagi Trust:**

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly, individually and as the beneficiary of the Orly Trust, in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(j) on the **Tenth Cause of Action for a Preliminary Injunction Against the Trump Parties, Sagi Genger, TPR and the Sagi Trust Under CPLR 7109**, and each of them for an injunction or temporary restraining order under CPLR 7109, restraining and enjoining each of them from transferring, selling, diluting, pledging, assigning or otherwise disposing of or

66

removing the Arie TRI Shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares from the State until the further Order of the Court.

      (k)      **On all causes of action set forth in this Complaint**, such other relief as this court may deem just, together with the costs and disbursements incurred by plaintiffs in this action, including the recovery of plaintiffs' reasonable attorneys' fees.

DATED: New York, New York
       September 20, 2011

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Paul D. Montclare (PM 4454)
Lauren J. Wachtler (LW 4205)
12 E. 49th Street, 30th Floor
New York, New York 10017
(212) 509-3900

Attorneys for Plaintiff ARIE GENGER

ZEICHNER ELLMAN & KRAUSE LLP

By: _____

Yoav M. Griver
Bryan D. Leinbach
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400
Facsimile: (212) 753-0396

Attorneys for Plaintiff ORLY GENGER, in
her individual capacity and on behalf of the
ORLY GENGER 1993 Trust

68

# Exhibit 10

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _1_ day of
~~June~~ 2009
*July*

New York County Surrogate's Court
DATA ENTRY DEPT.
Date: *July 1, 2009*

PRESENT: HON. *Troy K. Webber*
                                     Surrogate

---

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

---

File No.: 0017/2008

ORDER TO SHOW CAUSE
WITH TEMPORARY
RESTRAINTS

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009.

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate *Troy K. Webber* at the Surrogate's Court, 31 Chambers *Sitting at 60 Centre*

Street, New York, New York, on the _5th_ day of ~~June~~ *August* 2009 at 10:00 o'clock in the forenoon of that *Room 509*

day or as soon thereafter as counsel may be heard why an order should not be entered:

       (a)     Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

NYC_XFER\137033\1\

(b)    Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

(c)    Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)    Appointing Michael D. Grohman, Esq. as successor trustee;

(e)    Waiving any requirement that Petitioner post an undertaking; and

(f)    Granting Petitioner such further relief deemed necessary or proper.

ORDERED that, during the pendency of this proceeding, Respondent, ~~her agents and all~~ [and/on her counsel]
are required to give notice by overnight mail to petitioners counsel of any 1) offer
~~other persons acting on her behalf are temporarily restrained from withdrawing, selling,~~
to purchase the Orly Trust's 19.3% interest in TRI within 10 days of receiving
~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering~~
such offer and 2) act by Respondent, her agents and all other persons
~~liening, hypothecating or secreting the Orly Trust's 19.43% interest in TRI and other assets~~
acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or
~~remaining in the Orly Trust; and it is further~~
otherwise alter the Orly Trust's interest in TRI at least 10 days prin to such act
~~and it is further~~
and it ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on Respondent by personal service at either her residence, located at 200 East

65th Street, Apt. 32W, New York, New York 10021, or any other address at which she can be

located, on or before ~~June 7~~ July 7, 2009; and it is further

ORDERED, that any responsive papers shall be filed by
July 29, 2009.                                    ~~ENTER~~

                                                        Surrogate

# Exhibit 11

# Exhibit 11

In re IBJ Schroder Bank & Trust Co., Index No. 101530/98,
Supreme Ct., N.Y. Co. (Aug. 16, 2000)

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon. _Beatrice Shainswit_          PART _10_
                                          _Justice_

In Re IBJ Scroder Bank+          INDEX NO. _101530/98_
Trust
                                 MOTION DATE _____

        - v -                    MOTION SEQ. NO. _001_

                                 MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion:  ☐ Yes   ☑ No

Upon the foregoing papers, it is ordered that this motion

On remand, pursuant to the order of
the appellate division, First department
dated April 20, 2000

MOTION IS DECIDED IN ACCORDANCE WITH
ACCOMPANYING MEMORANDUM DECISION

FILED

OCT 0 3 2000

COUNTY CLERK'S OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____ J.S.C.

Dated: _8/16/00_                    _____ J.S.C.

Check one:  ☑ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

CDISPSS

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY : IAS PART 10
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of                          Index No. 101530/98

IBJ SCHRODER BANK & TRUST COMPANY (not
in its individual capacity but in its capacity as Trustee
under a Trust Agreement dated as of December 21, 1985
among Resources Satellite Corp., J. Henry Schroder
Bank & Trust Company and the Beneficiaries thereunder),
                                        Petitioner,

for an order, pursuant to CPLR § 7701, for a Construction
of an Indenture and Approval of a Settlement.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SHAINSWIT, J.:

        In this special proceeding, brought pursuant to CPLR Article 77,

petitioner-trustee seeks a declaratory judgment concerning the construction of an

Investor Trust Agreement, together with approval of the trustee's proposed settlement

of another action presently pending in this Court, involving assets of the Trust, entitled

IBJ Schroder Bank & Trust Co. v GE Capital Spacenet Services, Inc., Index No.

601299/96 (the "Spacenet" action).

        The Trust was established in 1985 to facilitate investments by more than

400 beneficiaries in a project involving the launching and operation of a

communications satellite during the years 1985 through 1994. The Trust involved a

complex series of financial transactions involving the development and placement in

space of the communications satellite.

        The Spacenet action involves a certain master lease relating to the lease

of 24 satellite transponders carried on a satellite which was launched into orbit in 1985.

The satellite earned money for the Trust through receipt of sums from television and radio broadcasters for the use of electronic signals transmitted for television and radio broadcasting by the satellite's "transponders." A transponder automatically transmits a broadcasting signal upon reception of such a signal from another transmitter.

Because adequate supply of fuel was crucial to the operation of the satellite, the trustee and the satellite owner executed the Agreement Regarding Fuel ("Fuel Agreement"), whereby the satellite owner agreed to make certain stipulated fuel shortfall payments, entitled "Stipulated Loss Value" payments, in the event of a fuel shortage.   It is alleged that such a fuel shortage occurred, thereby triggering the trustee's rights to demand payment from the satellite owner under the terms of the Fuel Agreement.  Accordingly, in the Spacenet action, the trustee seeks to recover from the satellite owner the sum of $40,785,455, representing a "Stipulated Loss Value" payment set forth for in the Fuel Agreement.

The satellite owner served its answer in the Spacenet action, denying all liability and pleading defenses and counterclaims, including, among other things, that: (a) the provision in the Fuel Agreement as to Stipulated Loss Value was an unenforceable penalty under New York law; (b) the satellite's failure resulted from a catastrophic event or mechanical failure and not from a lack of fuel; and (c) the satellite in fact had sufficient fuel on the applicable date.

In September 1997, the trustee and the defendants in the Spacenet litigation conditionally agreed to a proposed settlement which provides for the satellite owner to pay $8.5 million, of which $6.97 million would be paid to the Trust.

2

The trustee thereupon commenced this action by "Verified Petition For Construction of Trust and Approval of Proposed Settlement," seeking, among other things: (a) a declaration that it had the authority to commence the Spacenet action; (b) a declaration that it had the authority to settle the Spacenet action; and (c) judicial approval of the proposed settlement of the Spacenet action. 186 trust beneficiaries, jointly represented by one law firm, have submitted opposition to the trustee's application for a declaratory judgment and approval of the proposed settlement.

The trustee predicates his commencement of the Spacenet action, vis-a-vis the beneficiaries of the Trust, upon section 5.02 of the Investor Trust Agreement. That section provides that, in the event of an event of a default under the master lease:

> the Trustee shall give prompt written notice of such event of default to the Lessee, the Grantor and the Beneficiaries by certified mail, postage prepaid. In the event that such event of default has not been cured within 30 days after mailing of such notice, the Trustee shall take such action or shall refrain from taking such action, not inconsistent with the provisions of the Agreements, with respect to such event of default as the Trustee shall be directed in writing by all of the Beneficiaries, or, if no such direction has been received from all of the Beneficiaries within 30 days after the mailing of such notice to the Beneficiaries, the Trustee shall, in its sole discretion ... take such action as shall be necessary to terminate the Master Lease, to obtain the benefits of the Master Collateral Assignment Agreement and to cause the Lessee thereunder to perform all of its obligations upon such termination.

(emphasis supplied).

Prior to commencing the Spacenet action, the trustee sent the requisite notice under Section 5.02 of the Investor Trust Agreement to the proper parties, including the beneficiaries, and did not, in return, receive any "directions" from the beneficiaries.

3

By decision and judgment dated October 21, 1998, this Court held that

the Trust Agreement did <u>not</u> confer upon the trustee authority to settle the action in

question.[1] Having decided that such authority to settle the Spacenet action was

lacking, the Court never reached the trustee's further request for judicial approval of the

proposed settlement. The trustee appealed from the October 21, 1998 decision and

judgment.

The Appellate Division reversed (__ AD2d __, 706 NYS2d 114 [First

Dept 2000]). The Appellate Division held that the trustee was, in fact, vested with the

authority to settle the Spacenet action, stating that:

> It is settled that the duties and powers of a trustee are defined by
> the terms of the trust agreement and are tempered only by the fiduciary
> obligation of loyalty to the beneficiaries (see, <u>United States Trust Co. of
> N. Y. v First Nat. City Bank</u>, 57 AD2d 285, 295-296 <u>affd</u> 45 NY2d 869;
> Restatement [Second] of Trusts § 186, comments a, d). In this matter, the
> same provision of the trust agreement which, the parties do not dispute,
> gave the trustee the power to commence the underlying action, also vests
> the trustee with the power to "take such action as shall be necessary" with
> respect to the subject matter of the underlying action. We now find that
> this provision includes the power to settle that action. We take no position
> on whether the settlement agreement, in its present form, should be
> approved and remand the matter to the IAS court to consider all relevant
> factors in determining whether such approval is warranted.

(<u>Id.</u>).

Thus, this matter is now before this Court on remand to determine

---

[1] On a motion seeking, inter alia, reargument and clarification of the October 21,
1998 decision and judgment, this Court held that the trustee had the authority, pursuant
to section 5.02 of the Investor Trust Agreement, to "take such action" as might be
necessary under the circumstances, including commencing the Spacenet action
(Decision and Order dated April 12, 1999).

4

whether or not approval of the proposed settlement is warranted.

As set forth in the Petition, the trustee maintains that the proposed settlement of the Spacenet action is reasonable and prudent, and the best way to conserve and protect the Trust's assets. In support, the trustee argues that: (a) there is a serious risk that the Spacenet defendants may prevail on one or more of the defenses asserted by them in the Spacenet action, thereby precluding any recovery by the trustee in the Spacenet action; and (b) prosecution of the Spacenet action would be very costly and time consuming, because such cases are extremely expert-intensive and technically complex.

The opposition offered by the 186 trust beneficiaries goes primarily to their belief that the settlement amount is too low. They claim that the proposed settlement is unreasonable and contrary to their best interests, arguing that: (a) the plain terms of the Fuel Agreement require payment of the "Stipulated Loss Value" of approximately $40 million (now over $60 million with interest); (b) the proposed settlement would substantially compromise that amount to $8.5 million; and (c) the trustee has not in any way tested any of the defenses raised in the Spacenet litigation, but rather agreed to that substantial compromise despite having failed to take any discovery or to file any dispositive motions in the Spacenet litigation.

Since the objecting beneficiaries have not submitted any evidence to show that the trustee's actions may have been based on some ulterior motive or that the trustee is somehow itself interested in the transaction other than in its fiduciary capacity, the trustee submits that the dispute comes down to whose view as to the

5



wisdom of the proposed settlement should prevail - - that of the trustee or that of the objecting beneficiaries.

Here, the trustee is the entity to whom the Investor Trust Agreement gives sole power to "take such action as shall be necessary" with respect to the subject matter of the underlying action. While there is some question as to whether the applicable standard of review here is the business judgment rule or the prudent man standard, the conclusion is the same under either standard - - the trustee's decision to compromise the Spacenet action is within the scope of the trustee's powers, is reasonable and prudent, and is entitled to judicial deference. Thus, in view of the trustee's showing of the reasonableness of the proposed settlement herein, and in the absence of any evidence tending to show a breach by the trustee of its fiduciary duties, the trustee's view must prevail. The Court will not invalidate the proposed settlement merely because certain beneficiaries believe a greater recovery might be obtained if the Spacenet action is submitted to an expensive and unpredictable litigation.

<u>CONCLUSION</u>

Accordingly, on remand, the Court holds that approval of the proposed settlement of the Spacenet action is warranted, and grants the trustee's motion to that extent. Settle order/judgment.

Dated: August 16, 2000

ENTER:

_____

J.S.C.

6

# Exhibit 12

**David Parnes**

# Memo

| To: | Robert Meister |
|-----|----------------|
| From: | David Parnes |
| CC: | Robert Brighton |
| Date: | 5/15/2012 |
| Re: | Original Note of $4mm in Favor of TPR |

Attached is the original note of $4,000,000 made by the Orly Genger 1993 Trust in favor of TPR Investment Associates, Inc. The note is being purchased by the Manhattan Safety Company ("Manhattan"). We understand, that you are swapping this note for a different instrument in favor of Manhattan. At their request, we are delivering you this instrument to be held until they receive physical possession of the original new instrument. At that time, you may return this original to the Orly Genger 1993 Trust.

1

# PROMISSORY NOTE

$4,000,000                                                October 3, 2011

FOR VALUE RECEIVED, the undersigned, the Orly Genger 1993 Trust ("Borrower"), by way of its current sole trustee, Dalia Genger, promises to pay to TPR Investment Associates, Inc., a Delaware corporation ("Lender") the sum of $4,000,000 ("Principal") together with interest thereon at the rate of three percent (3%) percent per annum, payable as follows, and further covenants, to Lender, as follows:

The Principal together with all interest accrued thereon shall be due and payable to, or to the order of, Lender on the earliest of:

    (i)   November 1, 2012;

    (ii)   Immediately upon Borrower's receipt of the proceeds from the sale of TRI shares either pursuant to the interpleader action pending in the United States District Court for the Southern District of New York (the "Court") in *Pedowitz v. TPR*, 11 Civ. 5602, or otherwise.

Notwithstanding anything to the contrary herein or in the parties' accompanying Settlement Agreement, to the extent that the Court awards Lender any of the interpleaded funds, Lender shall first retain such funds to the extent necessary to pay down this Note in full, and then transfer any remaining funds to Borrower.

The occurrence and continuation of any one or more of the following events shall constitute an event of default under this New Note ("Event of Default"):

    (a)   *Payment Default*. Borrower shall fail to make any required payment due in connection with this New Note.

    (b)   *Third Party Lien or Caveat*. The creation of a lien on Borrower's property, or the entry of a caveat (which Lender deems material), that has not been removed ten (10) days of its creation.

    (c)   *Change of Trustee*. The resignation, removal, or otherwise change of trustee of Borrower.

    (d)   *Bankruptcy Default*. The Borrower shall (i) commence any case, proceeding or other action under any existing or future law of any jurisdiction relating to seeking to have an order for relief entered with respect to it or its debts, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other such relief with respect to it or its debts, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or substantially all of its assets (each of

the foregoing, a "Bankruptcy Action"); (ii) become the debtor named in any Bankruptcy Action which results in the entry of an order for relief or any such adjudication or appointment described in the immediately preceding clause (i), or remains undismissed, undischarged or unbonded for a period of sixty (60) days; or (iii) make a general assignment for the benefit of its creditors.

In each and every Event of Default, the Lender may, without limiting any other rights it may have at law or in equity, by written notice to the Borrower, declare the unpaid Principal of and Interest on this New Note due and payable, whereupon the same shall be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which the Borrower hereby expressly waives, and the Lender may proceed to enforce payment of such Principal and Interest or any part thereof in such manner as it may elect in its discretion.

This Note may be prepaid in whole or in part at any time without premium or penalty.

All prepayments shall be applied first to interest, then to principal payments in the order of their maturity.

The undersigned agrees to pay all costs and expenses, including all reasonable attorneys' fees, for the collection of this Note upon default. All payments shall be made at 1211 Park Avenue, New York, NY, 10128, or at such other place as the holder hereof may from time to time designate in writing.

Upon default, whether pursuant to an Event of Default or otherwise, the interest rate shall be increased to an amount ("Overdue Rate") equal to the maximum legal rate of interest permitted by applicable law.

If this New Note is not paid when due, Borrower promises to pay all costs and expenses of collection and attorneys' fees incurred by the holder hereof on account of such collection, whether or not suit is filed thereon. Borrower consents to renewals, replacements and extensions of time for payment hereof, before, at, or after maturity; consents to the acceptance, release or substitution of security for this note, and waives protest, presentment, demand for payment, notice of default or nonpayment and notice of dishonor and the right to assert any statute of limitations. The indebtedness evidenced hereby shall be payable in lawful money of the United States.

This New Note shall be governed by, and shall be construed and enforced in accordance with, the laws of the state of Delaware without giving effect to the conflict of law rules thereof, and shall be adjudicated before the appropriate Courts of the State of Delaware.

_Dalia Genger_
THE ORLY GENGER 4993 TRUST

# Exhibit 13

**Robert Meister**

| | |
|---|---|
| **From:** | Allingham II, Thomas J <Thomas.Allingham@skadden.com> |
| **Sent:** | Monday, April 23, 2012 5:19 PM |
| **To:** | 'Yoav M. Griver' |
| **Cc:** | ljw@msk.com; pdm@msk.com; Dellajo@duanemorris.com; emichailidis@duanemorris.com; robert.meister@pedowitzmeister.com; Bryan D. Leinbach; asash@mclaughlinstern.com; dcavanaugh@lyons-mcgovern.com; esilverman@wmllp.com; William Wachtel; robert.meister@pedowitzmeister.com; Frank, William P; Clark, Anthony W |
| **Subject:** | TRI Dividends |

Dear Yoav:

In response to your letter of April 17, 2012, without acknowledging any obligation to respond to this or any other requests regarding TRI business, please note the following (numbered items correspond to your numbered questions):

1. An aggregate amount of $27,000,000 of dividends were paid during calendar 2011.

2. 2. Yes, 32.5% of those dividends were escrowed with Skadden ($8,707,500) and, as of today, that amount plus interest accrued remains escrowed with Skadden.

3. 3. TRI's Board of Directors has authorized dividends during 2012 aggregating $25,618,968 and as with the above, 32.25% of such dividends is being escrowed with Skadden under the escrow arrangement previously discussed among all the parties.

Tom

---

**From:** Yoav M. Griver [mailto:YGriver@zeklaw.com]
**Sent:** Tuesday, April 17, 2012 4:55 PM
**To:** Allingham II, Thomas J (WIL)
**Cc:** ljw@msk.com; pdm@msk.com; Dellajo@duanemorris.com; emichailidis@duanemorris.com; robert.meister@pedowitzmeister.com; Bryan D. Leinbach; asash@mclaughlinstern.com; dcavanaugh@lyons-mcgovern.com; esilverman@wmllp.com; William Wachtel; robert.meister@pedowitzmeister.com; Frank, William P (NYC); Clark, Anthony W (WIL)
**Subject:** Genger -- Letter

Letter to your attention. Thank you.

Yoav M. Griver, Esq.
Partner
Zeichner Ellman & Krause LLP

**ZEK**

575 Lexington Avenue
New York, New York 10022
Tel. (212) 826-5338
Fax (212) 753-0396
ygriver@zeklaw.com

1

NEW YORK | NEW JERSEY | CONNECTICUT

www.zeklaw.com

This transmission may contain sensitive and/or privileged information. The sender does not
waive any privilege or confidentiality in the event of an inadvertent transmission to an
unauthorized recipient. In the event of such a transmission, kindly contact the sender to arrange
retrieval. IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the
IRS, we inform you that any U.S. federal tax advice contained in this communication (including
any attachments) is not intended or written to be used, for the purpose of (i) avoiding penalties
under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party
any transaction or matter addressed herein.

---------------------------------------------------------------------------------
*****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly
indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot
be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state
or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related
matters addressed herein.
*****************************************************
*****************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may
contain legally privileged and/or confidential information. If you are not the intended recipient of this email,
you are hereby notified that any dissemination, distribution or copying of this email (and any attachments
thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000
and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided
upon request.
*****************************************************

2

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of
ORLY GENGER, as a person interested, for the       AFFIDAVIT OF SERVICE
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)    File No. 0017/2008
- - - - - - - - - - - - - - - - - - - - - - - - x


STATE OF NEW YORK         )
                              : ss.:
COUNTY OF NEW YORK      )

      JORDANA PALGON, being duly sworn, deposes and says: I am over the age of

18 years and not a party to this action, and have an office at 570 Lexington Avenue, 18th

Floor, New York, NY 10022. On the 19th day of November, 2012, I served the annexed

NOTICE OF MOTION TO DISMISS THIRD AMENDED PETITION by sending same

via pre-paid Priority U.S. mail to counsel for Petitioner at the following address:

Ralph Hochberg, Esq.
Platzer, Swergold, Karlin, Levine,
Goldberg & Jaslow, LLP
1065 Avenue of the Americas
18th Floor
New York, NY 10018

                                        _____
                                           Jordana Palgon

Sworn to before me this
19th day of November, 2012.

_____
Notary Public

ROBERT A. MEISTER
Notary Public, State of New York
No. 31-02ME2653350
Qualified in New York County
Commission Expires March 30, 201_

New York County Surrogate's Court
MISCELLANEOUS DEPT.

OCT 23 2014

FILED

Clerk

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA § 711(11)

File No.:   0017/2008

---

**BENEFICIARY ORLY GENGER'S MEMORANDUM OF LAW
IN OPPOSITION TO THE SAGI TRUST MOTION TO DISMISS ORDER
TO SHOW CAUSE AND THIRD AMENDED PETITION**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT:  THE INSTANT MOTION SHOULD BE DENIED BECAUSE
THE SAGI TRUST WAS PROPERLY SERVED WITH PROCESS UNDER
SCPA §307 AND SERVICE BY MAIL IS PERMITTED UNDER ARTICLE
10(A) OF THE HAGUE CONVENTION ......................................................................... 5

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ackermann v. Levine,
  788 F.2d 830 (2d Cir. 1986)...................................................................12, 14

Axios Prod., Inc. v. Time Mach. Software, Inc.,
  2010 N.Y. Misc. LEXIS 4843 (N.Y. Sup. Ct. Oct. 4, 2010) .....................10, 12, 14

Bankston v. Toyota Motor Corp.,
  889 F.2d 172 (8th Cir. 1989) ...................................................................6

Bush v. United States (The Yulu),
  71 F.3d 635 (5th Cir. 1934) ....................................................................7

Cantarelli S.P.A. v. L. Della Cella Co., Inc.,
  40 A.D.3d 445 (1st Dept. 2007)...............................................................10

Eli Lilly & Co. v Roussel Corp.,
  23 F Supp 2d 460 (D. N.J. 1998) ............................................................10, 11, 13

Ganelina v. Perchikov,
  2009 N.Y. Misc. LEXIS 620 (N.Y. Sup. Ct. March 11, 2009)....................6

Genger v. Genger,
  2014 N.Y. App. Div. LEXIS 6204 (1st Dept. Sept. 23, 2014) ...................1

Genger v. Genger,
  Index No. 109749/2009 (N.Y. Sup. Ct. July 3, 2014) ..............................1

Gouiran Family Trust v. Gouiran,
  40 A.D.3d 400 (1st Dept. 2007).........................................................*passim*

Heredia v. Transport S.A.S., Inc.,
  101 F. Supp.2d 158, 161 (S.D.N.Y. 2000) ...............................................11

M.B.S. Moda, Inc. v. Fuzzi S.P.A.,
  2013 N.Y. Misc. LEXIS 45 (N.Y. Sup. Ct. Jan. 9, 2013)...........................13

Marcus v. "Five J" Jewelers Precious Metals Industry Ltd.,
  2002 N.Y. Misc. LEXIS 860 (N.Y. Sup. Ct. Feb. 19, 2002).......................6

Matter of Genger,
  2014 N.Y. Misc. LEXIS 3157 (N.Y. Sur. Ct. July 15, 2014)....................3, 4

N.Y. State Thruway Auth. v. Fenech,

94 A.D.3d 17 (3d Dept. 2012) .................................................................... *passim*

Papir v. Wurms,
    2005 U.S. Dist. LEXIS 2201 (S.D.N.Y. Feb. 15, 2005).............................12, 14

Reynolds v. Woosup Koh,
    109 A.D.2d 97 (3d Dept. 1985) .....................................................................8, 14

Sardanis v. Sumitomo Corp.,
    279 A.D. 225 (1st Dept. 2001)...............................................................*passim*

Sbarro, Inc. v. Tukdan Holdings, Ltd.,
    32 Misc.3d 217 (N.Y. Sup. Ct. 2011) ...................................................10, 11, 14

Sumitomo Shoji Am., Inc. v. Avagliano,
    457 U.S. 176 (1982)........................................................................................7, 14

Treeline Inv. Partners, LP v. Koren,
    2007 U.S. Dist. LEXIS 47748 .......................................................................12, 14

**STATUTES**

SCPA § 307(2)...................................................................................................*passim*

SCPA § 2201.............................................................................................................3

**OTHER AUTHORITIES**

1 *Restatement (Third) of the Foreign Relations Law of the United States*, § 112 cmt. C at
    59 (1987)...............................................................................................................7

Hague Service Convention Article 10(a)...........................................................*passim*

Hague Service Convention Article 10(b) and (c) ..............................................6, 11

American Society of International Law, International Legal Materials, *30 I.L.M. 260, *2*
    (1991)....................................................................................................................7

*Special Comm'n on the Practical Operation of the Hague, Apostille, Evidence & Service
    Conventions, Conclusions & Recommendations*, Adopted by the Special Comm'n on
    the Practical Operation of the Hague, Apostille, Evidence & Service Conventions at
    11 P 55 (2003)......................................................................................................6

Table Reflecting Applicability of Articles 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) of
    the Hague Service Convention.......................................................................*passim*

## **PRELIMINARY STATEMENT**

Rather than protect the Orly Genger 1993 Trust ("Orly Trust") and beneficiary Orly Genger ("Orly"), Dalia Genger – in collusion with Sagi Genger – has used her time as Trustee of the Orly Trust to harm Orly and the Orly Trust, in deliberate violation of her fiduciary duties.    Both the New York Supreme Court (Jaffe, J.) and the Appellate Division, First Department, have recognized that Dalia suffers from fatal conflicts of interest that make her unfit to be trustee of the Orly Trust, and that she and Sagi are working hand-in-hand against Orly.    See Genger v. Genger, 2014 N.Y. App. Div. LEXIS 6204, *4 (1st Dept. Sept. 23, 2014) ("In entering into the aforementioned October 2011 and March 2012 settlement agreements with TPR and D & K LP on behalf of Orly Trust, of which she was sole trustee, Dalia had a conflict of interest."); Genger v. Genger, Index No. 109749/2009, (N.Y. Sup. Ct. July 3, 2014) ("Additionally, Dalia, trustee of the Orly Trust, has often sided with her son Sagi in these actions…") (Leinbach Aff., **Exhibit A**).

Orly and the Orly Trust remain in danger so long as Dalia remains trustee of the Orly Trust. This, of course, is fine with Sagi, as Dalia's efforts are concentrated on moving all of the Orly Trust's assets to Sagi's pockets.  Accordingly, Sagi (and Dalia, and their agents) will do whatever they can to delay these removal proceedings, and leave the Orly Trust unprotected. This motion by the Sagi Trust is nothing more than another cynical delaying tactic.  While Sagi and Dalia fiddle, Orly and the Orly Trust burn.

The Trustee of the Sagi Trust, who has been participating in these proceedings for some time now, conceded during a September 2014 hearing he received the copy of the citation Orly recently served upon him, by registered mail return receipt requested, in Israel. Yet, he still

cynically contests service, seeking to delay any decision on the merits regarding Orly's removal petition. His instant motion is substantively meritless. As discussed below, service by certified or registered mail, return receipt requested, is proper pursuant to both SCPA §307(2) and Article 10(a) of the Hague Service Convention (defined below), and the Sagi Trust's position that the Hague excludes service by mail is incorrect.

The declared purpose of the Hague Service Convention is to simplify and expedite the process of international service of process. See Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 361, TIAS No. 6638 (1969) (the "Hague Service Convention") (R. 42). The Sagi Trust's effort to use the Hague Service Convention instead to complicate matters and engender delay directly contradicts this purpose, and the Hague's express directive that its Service Convention shall not interfere with the "freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Service Convention, Article 10(a). Indeed, as discussed below, both The Hague and the U.S. State Department (which is charged with overseeing treaties such as the Hague Service Convention) agree that service by mail upon persons in Israel is permitted under the Hague Convention. Moreover, the First Department held that service of process by mail pursuant to the Hague Service Convention is proper. See Gouiran Family Trust v. Gouiran, 40 A.D.3d 400, 401 (1st Dept. 2007). Conversely, the principal case upon which the Sagi Trust relies – Sardanis v. Sumitomo Corp., 279 A.D. 225 (1st Dept. 2001) – was decided before the First Department's subsequent ruling in Gouiran Family Trust, and otherwise has been effectively abrogated by subsequent judicial decisions and the actions of the Hague and the U.S. State Department. Accordingly, his motion should be swiftly denied, and the Surrogate Court should quickly proceed to the merits of the removal petition.

2

## STATEMENT OF FACTS

Orly commenced this case by Order to Show Cause dated July 1, 2009[1] seeking, among other things, to remove Dalia as Trustee of the Orly Trust, and surcharge Dalia for breaching her fiduciary duties as Trustee of the Orly Trust. See Matter of Genger, 2014 N.Y. Misc. LEXIS 3157, *3 (N.Y. Sur. Ct. July 15, 2014). "Orly subsequently amended her petition to name the Sagi Trust as a party." Id. After being made a party, the Sagi Trust was served with Orly's amended removal petition. Id. Despite being served, the Sagi Trust failed to answer or respond to the amended petition. Id.

After serving both Dalia and the Sagi Trust, Orly subsequently amended her petition to address additional Dalia efforts to harm Orly and the Orly Trust, in deliberate violation of her fiduciary duties as Trustee. Orly's current petition, the Third Amended Petition, was filed on or about October 17, 2012. On or about November 19, 2012, Dalia filed a motion to dismiss Orly's Third Amended Petition, which is currently *sub judice*. See Matter of Genger, 2014 N.Y. Misc. LEXIS 3157, at *2.

By decision dated July 15, 2014, the Surrogate's Court held that Orly was required to re-serve the Sagi Trust, as a contingent remainder beneficiary to the Orly Trust. See Matter of Genger, 2014 N.Y. Misc. LEXIS 3157, at *5. In reaching this decision, the Court noted that the Sagi Trust has participated in this case by among other things, appearing at

---

[1]   In 2008, Orly objected to Dalia's appointment as Trustee of the Orly Trust and sought her removal before the New York County Surrogate's Court out of fear that Dalia would not protect Orly's interests while serving as Trustee. By decision dated December 31, 2008, the Surrogate's Court held that Orly's prior petition was premature, in that Dalia should be given an opportunity to act as Trustee. See Decision at 7. The Surrogate's Court also suggested that Orly commence an SCPA § 2201 proceeding to obtain evidence necessary to support a future application to have Dalia removed. See id. Orly has done so, and included the evidence she obtained in her current Third Amended Petition.

hearings through counsel and filing papers. See id. at *5, n.3. However, the Surrogate's Court found that, despite this prior participation with the case, the Sagi Trust had never formally appeared in the action. See id. at *5.

Pursuant to the Surrogate Court's July 15, 2014 decision, Orly obtained issuance of a citation from the Surrogate's Court (the "Citation") directing the Sagi Trust to appear for a hearing scheduled for September 12, 2014. (Leinbach Aff. ¶ 3.) Orly served the Citation upon the Sagi Trust, by serving its current trustee, Assaf Sternberg, in Israel by registered mail return receipt requested. See Supplemental Citation and Affidavit of Service (Leinbach Aff., **Exhibit B**). After serving the Sagi Trust, Orly filed an affidavit of service with the Surrogate's Court attesting to her service. (Leinbach Aff. ¶ 3.) As set forth below, Orly's service of the Cititaion upon the Sagi Trust by registered mail was proper pursuant to both SCPA §307(2) and Article 10(a) of the Hague Service Convention. See Argument.

On September 12, 2014, the Sagi Trust appeared at a hearing before the Surrogate's Court by counsel. (See Leinbach Aff. ¶ 4.) At the hearing, Sagi Trust counsel conceded that Assaf Sternberg had received the Citation. (Id.) However, Sagi Trust objected to the manner by which it had received service (by registered mail, return receipt requested), contending the Citation should have been served upon the Israeli Directorate of the Courts. (Id.)

When asked why the Sagi Trust did not simply appear in the action, and argue the removal on the merits, when it had in fact received the Citation, Sagi Trust counsel replied that he had been specifically instructed to take this position by his client, essentially acknowledging that the Sagi Trust wanted to delay or prevent the present Surrogate's Court case from moving forward and reaching the merits of Dalia's actions as Trustee. (See Leinbach Aff. ¶ 5.) The

Surrogate Court attorney, Ms. Santamarina, than advised Sagi Trust counsel that, if the Sagi

Trust insisted upon objecting to the manner of its actual receipt of the Citation, it would need to

file a motion to dismiss the Citation. (Id.) On or about, September 19, 2014, the Sagi Trust filed

the instant motion. This opposition follows.

## ARGUMENT

### THE INSTANT MOTION SHOULD BE DENIED BECAUSE THE SAGI TRUST WAS PROPERLY SERVED WITH PROCESS UNDER SCPA §307 AND SERVICE BY MAIL IS PERMITTED UNDER ARTICLE 10(a) OF THE HAGUE CONVENTION

New York Surrogate Court Procedures Act § 307(2) provides:

> Service of the process may be made by registered or certified mail, return receipt requested, or by special mail service, upon non-domiciliaries, whether or not they be natural persons.

SCPA § 307(2).[2]

Similarly, Article 10(a) of the Hague Service Convention expressly provides that

the Convention shall not interfere with:

> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

Hague Service Convention, Article 10(a). Contrary to the Sagi Trust's contention (Dellaportas

Aff. ¶ 6), Israel, a signatory to the Hague Service Convention, has not objected to Article 10(a)

of the Hague Service Convention. See Table Reflecting Applicability of Articles 8(2), 10(a)(b)

AND (c), 15(2) AND 16(3) of the Hague Service Convention, p. 5 of 10 (identifying that Israel

---

[2] Research has not uncovered any cases finding SCPA § 307(2) to be unconstitutional or challenged on constitutional grounds.

has "no opposition" to Article 10(a)) (Leinbach Aff., **Exhibit C**) (hereafter "Hague Table").[3]

Both The Hague and the U.S. State Department agree that Article 10(a) permits

service of process by mail.  In 2003, a Special Commission convened in The Hague to review the

practical operation of various Hague Conventions issued a Final Report stating that Article 10(a)

permits service of process by mail.  The Final Report, which was unanimously approved by 57

member states, provides as follows:

> The SC reaffirmed its clear understanding that the term "send" in
> Article 10(a) is to be understood as meaning "service" through
> postal channels.

*Special Comm'n on the Practical Operation of the Hague, Apostille, Evidence & Service*

*Conventions, Conclusions & Recommendations*, Adopted by the Special Comm'n on the

Practical Operation of the Hague, Apostille, Evidence & Service Conventions at ¶ 55 (2003)

(Leinbach Aff., **Exhibit D**).[4]

Equally important, the United States State Department has interpreted Article

10(a) of the Hague Service Convention to permit service of process by mail to a defendant in a

foreign country.  In fact, when the Eighth Circuit issued a decision in Bankston v. Toyota Motor

Corp., 889 F.2d 172, 174 (8th Cir. 1989) with a contrary interpretation of Article 10(a), the U.S.

---

[3] The Sagi Trust's reliance upon Marcus v. "Five J" Jewelers Precious Metals Industry Ltd., 2002 N.Y. Misc. LEXIS 860 (N.Y. Sup. Ct. Feb. 19, 2002) and Ganelina v. Perchikov, 2009 N.Y. Misc. LEXIS 620 (N.Y. Sup. Ct. March 11, 2009) is misplaced.  Neither case addresses Article 10(a) of the Hague Service Convention at all. The Marcus court addressed service of process under Article 10(b) and (c) of the Hague Service Convention, noting Israel's objection to those specific provisions.  However, the Marcus court does not suggest that Israel objected to Article 10(a) of The Hague Service Convention.  Id.  In Genelina, the court simply reports service upon a party in Israel was done pursuant to Article 2 of the Hague Convention: there is no mention of Article 10(a).  Genelina, 2009 N.Y. Misc. LEXIS 620, at *9-10. In any event, the Sagi Trust's contention that Israel has objected to Article 10(a) is wrong, as conclusively demonstrated by the Hague Table.  See Hague Table, at p. 5 of 10 (identifying Israel as having "no opposition" to Article 10(a) (Leinbach Aff., Ex. C).

[4] The report of the 2003 Special Commission also is available at http://goo.gl/qhWGQ.

Department of State issued a Official Letter stating that <u>Bankston</u> was wrongly decided:

> We therefore believe that the decision of the Court of Appeals in
> <u>Bankston</u> is incorrect to the extent that it suggests that the Hague
> Convention does not permit as a method of service of process the
> sending of a copy of a summons and complaint by registered mail
> to a defendant in a foreign country.

March 14, 1990 Letter from U.S. State Department, Deputy Legal Advisor; American Society of
International Law, International Legal Materials, *30 I.L.M. 260, *2* (1991) (<u>quoting</u> U.S. State
Department March 14, 1990 Letter) (Leinbach Aff., **Exhibit E**). Moreover in 2008, when the
Hague Conference circulated a questionnaire to member states asking about their implementation
of the Hague Service Convention, the United States indicated that it considered service of
process by mail an appropriate method of service under Article 10(a).[5]

The U.S. State Department's interpretation of Article 10(a) is particularly
significant because of the longstanding proposition that the views of the State Department should
be given special weight in construing treaties. <u>See, e.g., Sumitomo Shoji Am., Inc. v. Avagliano</u>,
457 U.S. 176, 184-85 (1982); <u>Bush v. United States (The Yulu)</u>, 71 F.3d 635, 636 (5th Cir.
1934); 1 <u>Restatement (Third) of the Foreign Relations Law of the United States</u>, § 112 cmt. C at
59 (1987); <u>see also</u> <u>N.Y. State Thruway Auth. v. Fenech</u>, 94 A.D.3d 17, 22 (3d Dept. 2012)
("[State Department's] opinion, while not conclusive, 'is entitled to great weight.'") (<u>quoting</u>
<u>Avagliano</u>, 457 U.S. at 184-185).

In keeping with the Hague's and U.S. State Department's position that Article
10(a) permits service of process by mail, recent cases interpreting Article 10(a) have held that

---

[5]   The U.S. response to the questionnaire is available through http://goo.gl/tCSjV. The answer cited is on page 44.

Article 10(a) permits service by mail. Thus, in 2012, in <u>N.Y. State Thruway Auth.</u>, the Third

Department reversed its prior holding in <u>Reynolds v. Woosup Koh</u>, 109 A.D.2d 97 (3d Dept.

1985), and found that Article 10(a) permits service of process by mail:

> <u>[T]he weight of authority--much of it having arisen after *Reynolds*
> -- persuades us that a departure from our prior holding is
> appropriate.</u>
>
> The starting point in interpreting any treaty is its text and the
> context in which its words are used. Article 1 of the Hague
> Convention states that the treaty applies only "where there is
> occasion to transmit a judicial or extrajudicial document *for
> service* abroad" (Hague Convention, 20 UST at 362 [emphasis
> added].) Indeed, the explicit, limiting effect of article 1 was
> deliberate, addressing criticisms that language in the draft treaty
> "suggested that [it] could apply to transmissions abroad that do not
> culminate in service" (*Volkswagenwerk Aktienesellschaft v
> Schlunk,* 486 US at 701). As such, article 10 facilitates the service
> of documents by permitting signatories to consent to alternate
> service methods, with article 10(b) and (c) both referring to the
> freedom of specified individuals "to effect *service* of judicial
> documents." While article 10(a), in contrast, refers to "the
> freedom to *send* judicial documents" (emphasis added), the express
> limitation of the Hague Convention's scope to the service of
> documents renders article 10(a) meaningless if it is interpreted as
> applying only to documents that are sent, but not served, by mail.
>
> To the extent that the language of article 10(a) is ambiguous—in
> that reliance upon its obvious meaning would lead to "a result
> inconsistent with the" treaty's intent as expressed in article 1
> (*Maximov v United States*, 373 US 49, 54, 83 SCt 1054, 10 Led2d
> 184, 1963 CB 689 [1963]; *accord Sumitomo Shoji America, Inc. v
> Avagliano*, 457 US 176, 180, 102 SCt 2374, 72 Led2d 765
> [1982]—we are required to "look beyond the written words to the
> history of the treaty, the negotiations, and the practical
> construction adopted by the parties" in order to ascertain the true
> meaning of article 10(a) (*Chocotaw Nation v United States*, 318
> US 423, 432, 63 SCt 672, 87 Led 877, 97 CtCl 731 [1943]; *see
> Eastern Airlines, Inc. v. Floyd*, 499 US 530, 535, 111 SCt 1489,
> 113 Led 2d 569 [1991].) A review of the history of the negotiation
> reveals that the treaty's drafters "intended the language [of article
> 10(a)] to include the service of process" (1 Ristau, International
> Judicial Assistant [Civil and Commercial] Section 4-28, at 167
> [1984]). Indeed, the official account of the conference that

resulted in the Hague Convention stated that the first paragraph of article 10 "was intended to permit service by mail" (*Brockmeyer v May, 383 F3d at 802*), and the American delegation to the conference agreed that article 10 allowed "alternative channels for the transmission of the documents *for the purpose of service*" (Unification of the Rules of Private International Law; Report of the U.S. Delegation to the 10th Session of the Hague Conference on Private International Law, October 7-28, 1964, Dept St Bull, Feb 22, 1965, at 269 [emphasis added]).

The drafters' view of article 10(a) is reinforced by the subsequent actions of signatories to the Hague Convention, a majority of whom make "no objection to the service of judicial documents coming from abroad directly by mail in their territory" (Permanent Bureau of Hague, Report on the Work of the Special Commission on the Operation of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *17 ILM 312, 326 [1978]; see* Table Reflecting Applicability of Articles 8[2], 10[a], [b], and [c], 15 [2] and 16[3] of the Hague Service Convention, available at http://www.hcch.net/upload/applicability14e.pdf. [accessed Dec 13, 2011]). Moreover, <u>special commissions convened [by the Hague] to study the operation of the treaty have consistently noted that article 10 (a) preserves the right to serve process by mail,</u> notwithstanding the holdings of "certain courts in the United States of America ... that service of process abroad by mail was not permitted under the Convention" (Permanent Bureau of the Hague Conference on Private International Law, Report on the Work of the Special Commission of April 1989 on the Operation of the Hague Conventions of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters and of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, *28 ILM 1556, 1561 [1989]; see* Permanent Bureau of the Hague Conference on Private International Law, Conclusions and Recommendations of the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions, at 11 [2003], available at http://www.hcch.net/upload/wop/lse_concl_e.pdf [accessed Dec. 13, 2011]). <u>The United States Department of State holds the same view, and its opinion, while not conclusive, "is entitled to great weight"</u> (*Sumitomo Shoji America, Inc. v Avagliano, 457 US at 184-185*).

<u>It is therefore now evident that article 10 (a) of the Hague Convention permits service of process by mail</u> and, as such, plaintiff was free to served defendants [by mail] pursuant to *Vehicle and Traffic Law § 253* . . . [and] we conclude that Supreme

9

Court acquired jurisdiction over them and their motion to dismiss
must be denied.

N.Y. State Thruway Auth., 94 A.D.3d at 22 (emphases added); see also Sbarro, Inc. v. Tukdan

Holdings, Ltd., 32 Misc.3d 217 (N.Y. Sup. Ct. 2011) (finding Article 10(a) permits service of

process by mail); Axios Prod., Inc. v. Time Mach. Software, Inc., 2010 N.Y. Misc. LEXIS 4843,

*11-12 (N.Y. Sup. Ct. Oct. 4, 2010) (same).

In 2007, in Gouiran Family Trust v. Gouiran, the First Department rejected a

challenge to service identical to the Sagi Trust challenge to service here, and affirmed service of

process by mail pursuant to the Hague Service Convention. The First Department stated:

> There has been no showing by defendants that French law does not
> permit service by mail under the Hague Convention on Service
> Abroad of Judicial and Extrajudicial Documents in Civil or
> Commercial Matters (20 UST 361, TIAS No. 6638 [1965]; cf.
> Sardanis v Sumitomo Corp., 279 AD2d 225, 718 NYS2d 66
> [2001]). Indeed, the contrary appears to be true (see Eli Lilly &
> Co. v Roussel Corp., 23 F Supp 2d 460, 473 [D NJ 1998]).

40 A.D.3d 400, 401 (1st Dept. 2007).[6]   As support, the First Department cited to the United

States District Court's decision in Eli Lilly & Co. v Roussel Corp., 23 F Supp.2d 460 (D. N.J.

1998).  The Eli Lilly court expressly found that service of process by mail was proper under

---

[6] The First Department's ruling in Cantarelli S.P.A. v. L. Della Cella Co., Inc., 40 A.D.3d 445 (1st Dept. 2007) is
readily distinguished.  In Cantarelli, an Italian company brought suit against a New York company in New York
County Supreme Court.  Id., Index No. 117651/05 (N.Y. Sup. Ct. October 25, 2006) (Leinbach Aff., **Exhibit F**).
The Italian company obtained default judgment against the New York company after serving the New York
company through the N.Y. Secretary of State, pursuant to BCL § 306, which requires personal service upon the
N.Y. Secretary of State – not mail. Id.; NY BCL § 306.  A copy of the summons and complaint was also mailed.
Id.  The trial court vacated the default judgment based upon a showing of excusable neglect and a meritorious
defense. Id.  On appeal, the First Department affirmed the trial court's ruling, also noting that the Italian
company's contention that service of process by mail was proper under the Hague Service Convention in this
particular case was unavailing (id., 40 A.D. 3d. at 446), which is not surprising as BCL § 306 requires personal
service.  Here, of course, SCPA § 307(2) allows service by certified or registered mail, return receipt requested,
which is how Orly served the Sagi Trust. Further, the company in Cantrelli facing the default judgment never
actually received notice of the underlying action. Id. at 446.  Here, the Sagi Trust not only concedes it received

Article 10(a) of the Hague Service Convention because the court found that France and Italy, like the State of Israel, had not objected to service of process by mail under Article 10(a) of the Hague Service Convention:

> Article 10(a) allows service by mail unless a country has formally objected. However, neither France nor Italy have objected. If France and Italy objected to service by mail under Article 10(a), they should have declared their objection in accordance with Article 21. Moreover, since France did formally object to Article 8, it is obviously familiar with the procedure.

23 F Supp.2d at 474. The First Department's decision in Gouiran is controlling here. As the State of Israel has not formally objected to mail service under Article 10(a) "in accordance with Article 21" (see Hague Table at p. 5 of 10 (Leinbach Aff., Ex. C)), the Sagi Trust's challenge to the service made upon it by Orly under SCPA §307(2) fails. See also Heredia v. Transport S.A.S., Inc., 101 F. Supp.2d 158, 161 (S.D.N.Y. 2000) ("Canada does not object to service by postal channels. Thus, service by registered mail in Quebec is adequate service under the [Hague] Convention") (citations omitted).

Regarding Israel, both New York state courts and federal courts in the Second Circuit recognize Article 10(a) of the Hague Convention permits service of process by mail upon persons in Israel. In Sbarro, Inc. v. Tukdan Holdings, Ltd., 32 Misc.3d 217 (N.Y. Sup. Ct. 2011), for example, defendants, an Israeli resident and an Israeli corporation whose principal place of business was Israel, were properly served with process, as copies of the summons and complaint were mailed to them by registered mail in Israel.

> The use of the Central Authority, however, is not mandatory (see Canizio and Singh, *Service of Process and the Hague Convention*, NYLJ, Aug. 27, 2010). Article 19 of the Hague Convention

Orly's service, it has participated in this proceeding.

11

> permits service by any method permitted by the internal laws of
> the country in which service is being made (*see Fernandez v
> Univan Leasing, at 344*). Moreover, article 10 permits service of
> process by mail directly to the person abroad provided that the
> state of destination does not object in its ratification to such service
> (*Id. at 344*).

32 Misc.3d. 217 at 218 (emphasis added). The court went on to find that, although Israel had

made express reservations with regard to the application of subsections (b) and (c), Israel had not

made any such reservations concerning Article 10(a) of the Hague Convention. Id. at 219; see

also Hague Table at p. 5 of 10 (identifying that Israel has "no opposition" to Article 10(a))

(Leinbach Aff., Ex. C).

Similarly, in Axios Prod., Inc. v. Time Mach. Software, Inc., 2010 N.Y. Misc.

LEXIS 4843, *11-12 (N.Y. Sup. Ct. Oct. 4, 2010), service of process upon the defendant in

Israel by registered mail was held proper under the Hague Convention because Israel had not

expressly objected to Article 10(a) of the Hague Convention. As in Sbarro, the court made clear

that "[t]he use of the Central Authority [to effect service]... is not mandatory." Id. at *9.

In Ackermann v. Levine, 788 F.2d 830 (2d Cir. 1986), the Second Circuit Court

of Appeals held that service of process by registered international mail upon a person in Israel

was appropriate under Article 10(a), finding that the Hague Service Convention's drafters

intended "send" to mean "serve" - and that this conclusion was "inescapable." Id. at 839. The

Southern District of New York also has expressly found that service of process by mail upon

persons in Israel is permitted by Article 10(a) of the Hague Service Convention:

> Since Israel and the United States are both signatories to the Hague
> Service Convention,...service of process on a defendant in Israel is
> governed by the convention. Article 10(a) of the Hague Service
> Convention permits service through mailing of "judicial

documents, by postal channels, directly to persons abroad,"
provided that the destination state has not objected to this
provision. <u>Since Israel has not objected to Article 10(a) of the
Convention, service through international registered mail remains
an acceptable method of serving Koren, an individual defendant
who resides in Israel.</u>

<u>Treeline Inv. Partners, LP v. Koren</u>, 2007 U.S. Dist. LEXIS 47748, **15-16 (S.D.N.Y. July 3,

2007) (emphases added) (internal citations and quotations omitted); <u>see</u> <u>also</u> <u>Papir v. Wurms</u>,

2005 U.S. Dist. LEXIS 2201, *12-13 (S.D.N.Y. Feb. 15, 2005) (finding service of process by

mail to person in Israel proper under Article 10(a) of the Hague Service Convention).

Here, Orly properly served the Citation on the Sagi Trust when she served the

current Trustee, Assaf Sternberg, by registered mail, return receipt requested, in Israel. Such

service – which Assaf Sternberg admits receiving (<u>see</u> Leinbach Aff. ¶3) – is proper under both

SCPA § 307(2) <u>and</u> Article 10(a) of the Hague Service Convention, as to which Israel has made

no objection. <u>See</u> <u>Gourian</u>, <u>supra</u>; other cases, <u>supra</u>.

Ignoring the express positions of The Hague, the U.S. State Department, and

Israel regarding Article 10(a), the Sagi Trust principally relies instead upon a 2001 decision,

<u>Sardanis v. Sumitomo Corp.</u>, 279 A.D. 225 (1st Dept. 2001), that held Article 10(a) does not

permit service of process by mail. (Dellaportas Aff., ¶ 8). The Sagi Trust's reliance on <u>Sardinis</u>

is unavailing for several reasons.

*First*, the Sagi Trust ignores the First Department's subsequent ruling in <u>Gouiran</u>

which, relying on <u>Eli Lilly & Co.</u>, expressly found that service of process by mail was proper

under the Hague Service Convention. <u>Gourian</u>, 400 A.D.3d at 401 (<u>citing</u> <u>Eli Lilly & Co.</u>, 23 F

Supp.2d at 474) ("Since service by mail satisfies due process and is authorized under the Hague

Convention, Defendants Opos' and Roussel-France's motion to dismiss for insufficiency of service of process is denied.")).[7]

*Second*, Sardinis relied on the Third Department's 1985 holding in Reynolds v. Woosup Koh, in reaching its decision. Reynolds, however, is not good law; it has been overturned by the Third Department's 2012 ruling in N.Y. State Thruway Auth., 94 A.D.3d at 22, discussed supra. In N.Y. State Thruway Auth., the Third Department recognized the determinations of The Hague Special Commission and the U.S. State Department (determinations the Sagi Trust fails to mention in its motion), in overturning its prior holding in Reynolds v. Woosup Koh, because it is "now evident that article 10 (a) of the Hague Convention permits service of process by mail." Id.

*Third*, the decision in Sardinis was rendered before The Hague Special Commission's Final Report in 2001, which, as unanimously approved the Hague member states in 2003, expressly recognized Article 10(a) as allowing service of process by mail. As discussed above, New York state court and federal court decisions decided after the Hague Special Commission's report have found, in accordance with The Hague and U.S. State Department, that Article 10(a) of the Hague Service Convention permits service of process by mail. See, e.g., Gouiran, 400 A.D.3d at 401; N.Y. State Thruway Auth., 94 A.D.3d at 22; Sbarro, Inc., 32 Misc. 3d 219-220; Axios Prod., Inc., 2010 N.Y. Misc. LEXIS 4843, *11-12; Ackermann, 788 F.2d at 839; Treeline Inv., 2007 U.S. Dist. LEXIS 47748, at *15-16; Papir, 2005 U.S. Dist. LEXIS 2201, at *12-13.

---

[7]  The Sagi Trust's reliance upon M.B.S. Moda, Inc. v. Fuzzi S.P.A., 2013 N.Y. Misc. LEXIS 45, * (N.Y. Sup. Ct. Jan. 9, 2013) is similarly unavailing because the trial court decision cites only to Sardinas, overlooking the First Department's subsequent decision in Gouiran Family Trust.

*Fourth*, the decision in <u>Sardinas</u> did not consider or address the U.S. State Department's 1990 statement (which was reiterated by the State Department in 2008) that Article 10(a) of the Hague Service Convention permits service of process by mail. It is well-settled that the views of the State Department should be given "great weight" in construing treaties. <u>N.Y. State Thruway Auth.</u>, 94 A.D.3d at 22 (<u>quoting</u> <u>Avagliano</u>, 457 U.S. at 184-185).

Demonstrably, <u>Sardinis</u> is contrary to the First Department's subsequent decision in <u>Gouiran</u>, has been effectively abrogated by subsequent statements by The Hague and the U.S. State Department, and cannot support the Sagi Trust's transparent attempt to delay this proceeding from being decided on the merits. As a result, the Sagi Trust's motion should be denied.

## CONCLUSION

For the reasons and authorities set forth herein, the Sagi Trust has been properly served. Accordingly, the Surrogate's Court should (i) deny the Sagi Trust's motion in its entirely; and (ii) grant Orly such other and further relief as is just and proper.

Dated:   New York, New York
        October 17, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Yoav M. Griver
    Bryan D. Leinbach
    Attorneys for petitioner Orly Genger
    1211 Avenue of the Americas
    New York, New York 10036
    (212) 223-0400

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

New York County Surrogate's Court
MISCELLANEOUS DEPT.

OCT 23 2014

FILED
Clerk

File No.: 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal of
DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SCPA § 711(11)

**AFFIRMATION OF
BRYAN D. LEINBACH**

STATE OF NEW YORK,
COUNTY OF NEW YORK.

      BRYAN D. LEINBACH, pursuant to CPLR 2106 and under the penalties of perjury, affirms:

      1.    I am associated with the firm of Zeichner Ellman & Krause LLP, attorneys for plaintiff Orly Genger in her individual capacity and on behalf of the Orly Genger 1993 Trust (both in its individual capacity and on behalf of D & K Limited Partnership) ("Orly"). I make this affirmation in support of Orly's opposition to the Sagi Trust's motion to dismiss the Order to Show and Third Amended Peitition.

      2.    Attached as **Exhibit A** is a copy of the July 3, 2014 Decision and Order in a case titled *Orly Genger et al. v. Dalia Genger et al.*, Index No. 109749/2009.

      3.    Pursuant to the Surrogate Court's July 15, 2014 decision, I obtained issuance of a citation from the Surrogate's Court directing the Sagi Trust to appear for a hearing scheduled for September 12, 2014 (the "Citation"). I served a copy of the Citation upon the Sagi Trust by registered mail, return receipt requested. Attached as **Exhibit B** are copies of: (i) the Citation; (ii)

an Affirmation of Bryan Leinbach dated August 4, 2014 attaching the July 15, 2015 decision; and

(iii) Affirmation of Service.  A copy of the affirmation of service was filed with the Surrogate's

Court.  See Ex. B.

4.     On September 12, 2014, the Sagi Trust appeared at a hearing before the

Surrogate's Court by counsel.  At the hearing, Sagi Trust counsel conceded that Assaf Sternberg

had received the Citation my mail.  However, Sagi Trust objected to the manner by which it had

received service (by registered mail, return receipt requested), contending the Citation should have

been served upon the Israeli Directorate of the Courts pursuant to the Hague Service Convention.

5.     When asked why the Sagi Trust did not simply appear in the action, and

argue the removal on the merits, when it had in fact received the Citation, Sagi Trust counsel

replied that he had been specifically instructed to take this position by his client, essentially

acknowledging that the Sagi Trust wanted to delay or prevent the present Surrogate's Court case

from moving forward and reaching the merits of Dalia's actions as Trustee.  The Surrogate Court

attorney, Ms. Santamarina, than advised Sagi Trust counsel that, if the Sagi Trust insisted upon

objecting to the manner of its actual receipt of the Citation, it would need to file a motion to dismiss

the Citation.

6.     Attached as **Exhibit C** is a copy of the Table Reflecting Applicability of

Articles 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) of the Hague Service Convention.

7.     Attached as **Exhibit D** is a copy of *Special Comm'n on the Practical

Operation of the Hague, Apostille, Evidence & Service Conventions, Conclusions &

Recommendations*, Adopted by the Special Comm'n on the Practical Operation of the Hague,

Apostille, Evidence & Service Conventions (2003).

       8.     Attached as **Exhibit E** are copies of (i) a March 14, 1990 Letter from U.S. State Department, Deputy Legal Advisor; and (ii) the American Society of International Law, International Legal Materials, Volume 30, Number 1, *30 I.L.M. 260* (1991), which quotes U.S. State Department March 14, 1990 Letter.

       9.     Attached as **Exhibit F** is a copy of the trial court's decision in <u>Cantarelli S.P.A. v. L. Della Cella Co., Inc.</u>, Index No. 117651/05 (N.Y. Sup. Ct. October 25, 2006).

Dated:   New York, New York
         October 17, 2014

                                                   BRYAN D. LEINBACH

FILED: NEW YORK COUNTY CLERK 07/08/2014  INDEX NO. 109749/2009
NYSCEF DOC. NO. 698                                                  RECEIVED NYSCEF: 07/08/2014

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **BARBARA JAFFE**
_J.S.C._

_Justice_

PART **12**

Index Number : 109749/2009
GENGER, ORLY
vs.
GENGER, DALIA
SEQUENCE NUMBER : 034
COMPEL DISCLOSURE

INDEX NO. **109749/09**

MOTION DATE _____

MOTION SEQ. NO. **034**

The following papers, numbered 1 to _____ , were read on this motion to/for ___**Compel**___

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits | No(s)._____ |
| Answering Affidavits — Exhibits | No(s)._____ |
| Replying Affidavits | No(s)._____ |

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH ACCOMPANYING DECISION / ORDER**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: __7/3/14__

_____, J.S.C.
**BARBARA JAFFE**
_J.S.C._

1. CHECK ONE: .................................................  ☐ CASE DISPOSED  ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................MOTION IS:  ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ...............................  ☐ SETTLE ORDER  ☐ SUBMIT ORDER
                                                         ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  :   IAS PART 12

----------------------------------------------------------------x

ORLY GENGER, in her individual capacity and on
behalf of the Orly Genger 1993 Trust (both in its
individual capacity and on behalf of D & K Limited
Partnership),

                                Plaintiff,

           -against-

DALIA GENGER, SAGI GENGER, LEAH FANG,
D & K GP LLC, and TPR INVESTMENT
ASSOCIATES, INC.,

                                Defendants.

----------------------------------------------------------------x

Index No. 109749/2009

Motion seq. nos. 034, 035

**DECISION AND ORDER**

BARBARA JAFFE, JSC:

| **For plaintiff:** | **For TPR/Sagi:** |
|---|---|
| Yoav M. Griver, Esq. | John Dellaportas, Esq. |
| Brian Leinbach, Esq. | Nicholas Schretzman, Esq. |
| Zeichner, Ellman & Krause, LLP | Morgan, Lewis & Bockius LLP |
| 1211 Avenue of the Americas | 101 Park Ave. |
| New York, NY 10036 | New York, NY 10178 |
| 212-223-0400 | 212-309-6000 |

William Wachtel, Esq.
Wachtel, Missry LLP
885 Second Ave.
New York, NY 10017
212-909-9595

      In motion sequence number 034, defendants TPR Investment Associates, Inc. (TPR) and

Sagi Genger (collectively, TPR/Sagi) seek an order compelling plaintiff Orly Genger and

nonparties Arie Genger and Mark Hirsch to attend additional depositions and answer questions

about the settlement agreement entered into by Orly, Arie and the so-called Trump Group in or

about June 2013. (NYSCEF 539).  In motion sequence number 035, Arie seeks a protective order

preventing further deposition of him by TPR/Sagi. (NYSCEF 550).  These motions are

consolidated for disposition.

## I.  BACKGROUND

The background pertinent to these motions is set forth in several opinions of this court

and others, including my decision dated December 23, 2013, rendered in the related action,

*Genger v Genger*, Index No. 651089/2010. (NYSCEF 700).  In that decision, I denied

TPR/Sagi's motion for an order compelling Arie and Orly to disclose the terms of the June 2013

settlement.  TPR/Sagi filed this motion seeking essentially the same relief, and before I issued the

December decision.  And, in another decision in that action, dated March 20, 2014, I denied

TPR/Sagi's motion for an order enjoining Orly from implementing or accepting the benefits of

the settlement, thereby rejecting their contention that Orly should be restrained from enjoying or

using the proceeds for her own benefit as the  proceeds belong to the Orly Trust. (NYSCEF 925).

In light of the foregoing, and given the protracted history of these litigations, familiarity

with the factual background, rulings, and rationales set forth in the December and March

decisions is presumed.

## II.  DISCUSSION

TPR/Sagi allege that as the Orly Trust receives no consideration for releasing its claims

against the Trump Group, the party that funded the settlement, and that Orly has pocketed the

proceeds for her own benefit, there is "a clear conflict of interest between Orly and the Orly

Trust, which would militate for dismissal of Orly's derivative claims against Sagi and TPR on

the grounds that she is no longer an adequate representative."  They thus argue that the settlement

agreement is relevant to their defenses in this action, as opposed to the 2010 action addressed in

my December 2013 decision, and that Orly, as a derivative plaintiff, has no standing to bring

claims on behalf of the Orly Trust given the conflict of interest and her inadequate representation

of the Trust's interests. (NYSCEF 547).

Having settled claims against the Trump Group in her individual capacity and as beneficiary of the Orly Trust, and absent anything prohibiting the Orly Trust from prosecuting claims against the Trump Group, there is no conflict between Orly and the Trust. And, it is undisputed that TPR/Sagi sought to obtain proceeds of the sale of the Orly Trust shares to the Trump Group, which proceeds are also claimed by the Orly Trust. Moreover, in a recent opinion issued by the Southern District of New York in *TPR Inv. Assoc., Inc. v Pedowitz & Meister LLP*, 2014 WL 1979932, *6 (SD NY, May 15, 2014), although TPR was found to be entitled to the proceeds, the court also observed that nothing therein "should be construed as resolving any question other than whether TPR is the next (but not necessarily last) beneficiary of the sale of the Orly Trust Shares." Consequently, given TPR/Sagi's struggle with the Trust over the proceeds, their bona fides in expressing concern for the Trust is questionable at best.

Additionally, Dalia, trustee of the Orly Trust, has often sided with her son Sagi in these actions, and if Orly is deemed to be an inadequate representative of the Orly Trust, and Dalia declines to pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be insulated from the prosecution of such claims. However, after TPR/Sagi filed this motion, the Appellate Division, First Department, held that Dalia had a conflict of interest in releasing herself, as part of settlement agreements entered into in 2011 and 2012 between TPR/Sagi and herself, as trustee. It also adjudged the settlements, which were against Orly's interests, as void and/or voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1st Dept 2014]). Thus, Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly. And, as noted by the First Department, Orly had petitioned the Surrogate's Court to remove Dalia as trustee and to

3

surcharge her. (*Id.*).

To the extent that there exist any issues as to which claims filed by Orly against the

Trump Group belong to Orly individually or are derivative claims of the Orly Trust, and whether

the derivative claims were released pursuant to the settlement agreement, as I observed in my

March 2014 decision, those are matters for the parties to the settlement agreement.

This action does not involve the Trump Group, the party that is released under the

settlement agreement. Rather, this action concerns Orly's allegation of "a sham UCC sale"

orchestrated by Dalia and Sagi in 2009 with respect to the so-called 1993 Note that was never

intended to be collected or enforced. Thus, TPR/Sagi have not demonstrated that the settlement

agreement is relevant to their defenses. (NYSCEF 549 at 1). And it is undisputed that the

settlement agreement settles no claims asserted by Orly in this action. Thus, there is no need to

depose Orly about the settlement agreement.

As it is also undisputed that neither Arie nor Hirsch, an officer of the Trump Group, are

parties to this action, there is no basis for deposing them about the settlement agreement.

TPR/Sagi also rely on a recent pleading filed by the Trump Group in the 2010 action

(NYSCEF 888) whereby it raises a defense pursuant to General Obligations Law § 15-108 (b) to

the cross claim for contribution asserted against it by TPR/Sagi. They argue that the pleading

reflects the divergent positions taken by Orly and the Trump Group as to whether the settlement

agreement settled derivative claims and, thus, according to TPR/Sagi, "one of these parties is

lying to the Court." (NYSCEF 638 at 2). Per my holding in the December decision, the

settlement agreement "has no bearing on anything other than a possible offset at the end of the

trial," and that even though the settlement terms may be useful in assessing maximum exposure

4

under §15-108, "such strategizing [to obtain the settlement terms] has no bearing on the underlying issues of fault and damages." (NYSCEF 700 at 1). I thus found that "other than trial strategy, TPR/Sagi fail[ed] to advance a sufficient reason supporting its request for pre-verdict disclosure of the settlement agreement." (*Id.*). The same holds true here.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED, that the relief requested in motion sequence number 034 by TPR Investment Associates, Inc. and Sagi Genger (TPR/Sagi) seeking to compel additional depositions of the named deponents is denied; and it is further

ORDERED, that the relief requested in motion sequence number 035 by nonparty Arie Genger for a protective order to prevent further depositions of him by TPR/Sagi is denied as moot.

ENTER:

Barbara Jaffe, JSC

Dated:      July 3, 2014
            New York, New York

5

SUPPLEMENTAL CITATION

SURROGATE'S COURT, NEW YORK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

File No. 2008-0017/*B*

**TO:   Assaf Sternberg, as Trustee of the Sagi Genger 1993 Trust**

A petition having been duly filed by Orly Genger, domiciled at 780 Greenwich Street, Apt. 4P, New York, New York 10014.

**YOU ARE HEREBY CITED TO SHOW CAUSE** before the Surrogate's Court, New York County, at 31 Chambers Street, New York, New York 10007, Room _509_ on **September _12_, 2014**, at **10:00** o'clock in the forenoon of that day, why a decree should not be issued (i) removing Dalia Genger as trustee of the Orly Genger 1993 Trust created under agreement dated December 13, 1993; (ii) suspending Dalia Genger as trustee pending determination of her fitness to serve; (iii) appointing Joel Isaacson as successor trustee of the Orly Genger 1993 Trust; and (iv) awarding to Petitioner such other and further relief as the Court deems equitable and proper.

*IN TESTIMONY WHEREOF*, we have cause the seal of the Surrogate's Court of our said County of New York to be hereunto affixed.

Dated, Attested and Sealed, _August 5, 2014_
(L.S.)

HON. _____*Rita Mella*_____
Surrogate, New York County

_____*Diana Sanabria*_____
Chief Clerk

Attorneys for Petitioner:

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, NY  10036
(212) 223-0400
  Attn:  Yoav M. Griver, Esq.
      Bryan D. Leinbach, Esq.

**This citation is served upon you as required by law.   You are not obliged to appear in person.   If you fail to appear, it will be assumed that you consent to the proceedings, unless you file written verified objections thereto.   You have a right to have an attorney-at-law appear for you.**

Proof of Service shall be filed with the Clerk of the Court at least two (2) days before the return date (207.7c).

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No.: 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal of
DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SCPA § 711(11)

## AFFIRMATION OF BRYAN D. LEINBACH

STATE OF NEW YORK,
COUNTY OF NEW YORK.

BRYAN D. LEINBACH, pursuant to CPLR 2106 and under the penalties of
perjury, affirms:

1.    I am associated with the firm of Zeichner Ellman & Krause LLP, attorneys
for petitioner Orly Genger ("Orly"). I make this affirmation to amend Orly's Third Amended
Petition to name Assaf Sternberg, Trustee of the Sagi Genger 1993 Trust (then "Sagi Trust"), as a
party.

2.    By Decision and Order dated July 18, 2014, the Court directed Orly "to
obtain and serve process on the Sagi Trust in connection with the third amended petition." 7/18/14
Decision at 3. (A copy of the July 18, 2014 Decision is attached hereto as **Exhibit A**.) Orly
previously served the Second Amended Petition in this action upon David Parnes as Trustee of the
Sagi Trust. See 7/18/14 Decision at 2 and note 2.

3.    Pursuant to the Court's direction, Orly counsel obtained a Citation for Assaf
Sternberg, the current trustee of the Sagi Trust on July 25, 2014. That same day, the Surrogate

Court informed Orly counsel that Orly counsel would be required to file an affirmation to amend Orly's Third Amended Petition to include Mr. Sternberg as an interested party, and provide his address and capacity.

       4.     Upon information and belief, Assaf Sternberg is the current Trustee of the Sagi Genger 1993 Trust.  Paragraph 3 of the Third Amended Petition is hereby amended to add the following information at the end thereof:

> Upon information and belief, Assaf Sternberg, residing at 2 Balfur Street, Kiryat Uno, Israel, is the Trustee of the Sagi Trust.

Dated:   New York, New York
         August 4, 2014

                               BRYAN D. LEINBACH

2

# Lexis®

Switch Client | Preferences | Help | Sign Out

| *My Lexis*™ | Search | Get a Document | *Shepard's*® | More | History | Alerts |

FOCUS™ Terms [genger and "july 18"]     Search Within [Original Results (1 - 2) ▽] [Go]     Advanced...

View Tutorial

Source:  **Legal > States Legal - U.S. > New York > Find Cases > Cases from NYLJ (ALM) from 1989** [i]

Terms:  **genger and "july 18"**  (Suggest Terms for My Search)

☞ Select for FOCUS™ or Delivery
☐

*ESTATE OF ARIE GENGER, Grantor (08/0017); DECISIONS; First Judicial Department; New York County; SURROGATE'S COURT New York Law Journal July 18, 2014 Friday*

Copyright 2014 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

## New York Law Journal

New York Law Journal

**July 18,** 2014 Friday

**SECTION:** COURT DECISIONS; Pg. p.22, col.5 Vol. 252 No. 12

**LENGTH:** 1314 words

**HEADLINE:** ESTATE OF ARIE **GENGER**, Grantor (08/0017);
DECISIONS;
First Judicial Department;
New York County;
SURROGATE'S COURT

**BYLINE:** Surrogate Anderson

**BODY:**

COURT: Surrogate's Court, New York County

CASE NUMBER: 08/0017

ESTATE OF ARIE **GENGER**, Grantor (08/0017) - Orly **Genger**, the primary beneficiary of an irrevocable inter vivos trust established by her father, Arie **Genger**, on December 13, 1993, seeks removal of her mother, Dalia **Genger**, as trustee. Dalia, in turn, moves to dismiss Orly's third amended petition for failure to state a ground for relief (CPLR 3211 [a][7]) and for failure to join all necessary parties (CPLR 3211 [a][10]).

The trust at issue (the "Orly Trust") provides for discretionary principal distributions to Orly for life, with remainder to her descendants, or, if none, to a trust Arie created for the benefit of Orly's brother, Sagi **Genger** (the "Sagi Trust"). The original and successor trustees served until January 2008, at which time Dalia was appointed pursuant to the terms of the instrument. Orly immediately challenged the validity of her mother's appointment and, in the alternative, sought the appointment of a "special trustee" to investigate alleged "wrongful dealings concerning the assets and income of the trust." The court ruled that Dalia's appointment was valid and that Orly had set forth no grounds that would warrant the appointment of a "special trustee" (Matter of **Genger**, NYLJ, Jan. 9, 2009, at 34, col 2 [Sur Ct, NY County 2009]). Less than seven months later, Orly commenced the instant proceeding to remove her mother as trustee and to appoint Michael D. Grohman, Esq., as successor trustee. After Orly amended the petition for the third time, Dalia made the instant motion to dismiss.

As a threshold matter, we address movant's argument that Orly failed to join the Sagi Trust as contingent remainder beneficiary and to serve it with the third amended petition. The Sagi Trust is unquestionably a proper party to this proceeding. Where removal of a fiduciary is sought on the ground of misconduct, contingent remainder beneficiaries are considered necessary parties, since they have a cognizable interest in the proper administration of the trust (see e.g. Matter of Bellinger, 35 AD2d 1078 [4th Dept 1970]; Matter of Silver, 72 Misc 2d 963 [Sur Ct, Kings County 1973]).

This proceeding was commenced by an order to show cause dated July 1, 2009. Although the trustee of the Sagi Trust, David Parnes, was not initially served with that order to show cause, Orly subsequently amended her petition to name the Sagi Trust as a party. A supplemental order to show cause, which provided for service of process on Mr. Parnes in his capacity as trustee of the Sagi Trust, issued thereafter. An affidavit of service filed with the court confirms that service was effected in the manner directed. On the return date, September 8, 2009, Mr. Parnes did not answer or appear, i.e., the Sagi Trust defaulted. Thereafter, Orly amended her pleading for a second time. Although the changes to the pleading were substantive in nature, Orly provided only informal notice of the new pleading on Mr. Parnes as trustee.

Under these circumstances, the issue is what, if any, notice of the third amended pleading was required. Orly contends that, because Mr. Parnes initially defaulted, she had no obligation to give him any notice of the third amended pleading, but, in the event notice was required, she provided sufficient notice by mailing him a copy.

If an amended pleading does not affect the interests of a defaulting party, service of process, defined in SCPA §103 (43) as a "[c]itation, order to show cause, subpoena and any other mandate of the surrogate's court by which jurisdiction is obtained of a party," is not required. However, where an amended pleading includes "allegations or prayers [for relief that] are modified to any meaningful extent, all parties should be given notice thereof and an opportunity to be heard" (1 Warren's Heaton on Surrogate's Court Practice, §9.04[1], at 9-12 [7th ed]; compare CPLR §3012 [a], providing that "[a] subsequent pleading asserting new or additional claims for relief shall be served upon a party who has not appeared in the manner provided for service of a summons"). In other words, service of process on a party who has defaulted is required if the changes to the pleading, as they relate to the defaulting party, are substantive in nature.

Here, the third amended petition bears little resemblance to the original pleading.[n2] Although Orly seeks some of the same relief as in that pleading, i.e., removal of Dalia, she has substantially expanded the grounds for her removal. For example, she has now alleged conduct that occurred in the more than three years between the time of her initial removal petition and the third amended petition. Orly also asks the court to appoint a successor trustee different from the one proposed in the original pleading. The amended pleading thus represents a substantial modification of the prior pleading. As a result, it cannot be said with any degree of certainty that, if the initial pleading had contained the allegations in the third amended pleading, the Sagi Trust would have defaulted. Under these circumstances, Orly's argument that she had no obligation to

give any notice of the third amended petition to the trustee of the Sagi Trust fails.

Similarly, Orly's contention that, in any event, she gave sufficient notice of the third amended pleading is without merit. The record shows that Orly did in fact mail a copy of the pleading to the trustee. However, Orly's provision of informal notice did not confer jurisdiction, since, as shown above, service of process was required. Further, the defect was never cured by the filing of a waiver of service or by the trustee's appearance."[3]

Contrary to movant's contention, however, dismissal of the pleading is not required. The court has authority under SCPA §312 to join "any person necessary or proper to the final determination" through the issuance of supplemental process (see also Matter of Bellinger, 35 AD2d 1078 [failure to cite interested parties in a removal proceeding did not require dismissal of the petition, but issuance of a supplemental citation]). Accordingly, Orly is directed to obtain and serve process on the Sagi Trust in connection with the third amended Petition. The balance of Orly's motion, which seeks dismissal for failure to state a claim (CPLR 3211 [a][7]), is held in abeyance pending completion of jurisdiction. If the trustee of the Sagi Trust appears, the motion to dismiss must be re-noticed and served upon the trustee so that he is afforded the opportunity to respond.

This decision constitutes the order of the court.

Dated: July 15, 2014

[note 1] Dalia's motion papers do not expressly invoke CPLR 3211 ("Motion to dismiss"). However, since the motion is made preanswer and claims that the petition fails to "state a valid claim for removal" and "fails to name, join and serve all persons interested," the court will treat the motion as one seeking dismissal under CPLR 3211(a)(7) and (a)(10).

[note 2] Had Orly served process on the trustee in relation to her second amended petition, that pleading would have been the operative one for comparison. In any event, it is noted that the third amended petition bears little resemblance to its immediate predecessor as well.

[note 3] The trustee's "participation" in the proceeding in connection with Orly's motion for a preliminary injunction did not constitute an appearance within the meaning of SCPA §401. For reasons that are unclear, Orly served the motion upon Mr. Parnes as trustee of the Sagi Trust. The motion was eventually withdrawn, but, before then, Mr. Parnes filed an affidavit in opposition, and his counsel came to court on the motion's return date and participated in a court conference. However, the trustee never attempted to participate formally in the proceeding. For example, his counsel never attempted to file a responsive pleading or a notice of appearance.

**LOAD-DATE:** July 18, 2014

     Source: **Legal > States Legal - U.S. > New York > Find Cases > Cases from NYLJ (ALM) from
              1989** [i]
      Terms: **genger and "july 18"** (Suggest Terms for My Search)
       View: Full
  Date/Time: Wednesday, July 23, 2014 - 2:04 PM EDT

SURROGATE'S COURT NEW YORK COUNTY    File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

# AFFIRMATION OF BRYAN D. LEINBACH

### Zeichner Ellman & Krause llp
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 223-0400
Fax: (212) 753-0396
www.zeklaw.com

*8/6/14*    *16669.002*

*08-22-14*

SURROGATE'S COURT: NEW YORK COUNTY

---

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER, as Trustee of the Orly
Genger 1993 Trust Pursuant to SCPA § 711(11)

---

File No.: 2008-0017 *B*

New York County Surrogate's Court
MISCELLANEOUS DEPT.

AUG 0 8 2014

**FILED**

Clerk _____

# **AFFIRMATION OF SERVICE**

## AFFIRMATION OF SERVICE

STATE OF NEW YORK
COUNTY OF NEW YORK

BRYAN D. LEINBACH, an attorney admitted to practice law in New York, pursuant to CPLR 2106 and under the penalty of perjury, states the following: That on the 6th day of August, 2014, I caused to be served **SUPPLIMENTAL CITATION TO ASSAF STERNBERG, AS TRUSTEE OF THE SAGI GENGER 1993 TRUST**, and **AFFIRMATION OF BRYAN D. LEINBACH with attached exhibit** upon the party hereinafter named at the place hereinafter stated by depositing the same, properly enclosed in post-paid, properly addressed wrappers, in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York by registered mail, return receipt requested, directed to said party at their last known addresses given below:

Assaf Sternberg
2 Balfur St.
Kiryat Uno
Israel

Dated: August 6, 2014

BRYAN D. LEINBACH

SUPPLEMENTAL CITATION

SURROGATE'S COURT, NEW YORK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

File No. 2008-0017/*B*

**TO:    Assaf Sternberg, as Trustee of the Sagi Genger 1993 Trust**

A petition having been duly filed by Orly Genger, domiciled at 780 Greenwich Street, Apt. 4P, New York, New York 10014.

**YOU ARE HEREBY CITED TO SHOW CAUSE** before the Surrogate's Court, New York County, at 31 Chambers Street, New York, New York 10007, Room _509_ on **September 12.**, 2014, at **10:00** o'clock in the forenoon of that day, why a decree should not be issued (i) removing Dalia Genger as trustee of the Orly Genger 1993 Trust created under agreement dated December 13, 1993; (ii) suspending Dalia Genger as trustee pending determination of her fitness to serve; (iii) appointing Joel Isaacson as successor trustee of the Orly Genger 1993 Trust; and (iv) awarding to Petitioner such other and further relief as the Court deems equitable and proper.

*IN TESTIMONY WHEREOF*, we have cause the seal of the Surrogate's Court of our said County of New York to be hereunto affixed.

Dated, Attested and Sealed, *August 5, 2014*
(L.S.)

HON.    *Rita Mella*
Surrogate, New York County

*Diana Sanabria*
Chief Clerk

Attorneys for Petitioner:

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, NY   10036
(212) 223-0400
Attn:  Yoav M. Griver, Esq.
Bryan D. Leinbach, Esq.

**This citation is served upon you as required by law.   You are not obliged to appear in person.   If you fail to appear, it will be assumed that you consent to the proceedings, unless you file written verified objections thereto.   You have a right to have an attorney-at-law appear for you.**

Proof of Service shall be filed with the Clerk of the Court at least two (2) days before the return date (207.7c).

Registered No.

RE150547634US

Date Stamp

| | | | |
|---|---|---|---|
| Reg. Fee $ | **$13.65** | | |
| Handling $ Charge | **$0.00** | Return $ Receipt | **$0.00** |
| Postage $ | **$4.16** | Restricted $ Delivery | **$0.00** |

To Be Completed By Post Office

Received by

0056

05

08/06/14

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

| Customer Must Declare Full Value $ | **$0.00** | ☐ With Postal Insurance |
|---|---|---|
| | | ☐ Without Postal Insurance |

**FROM**

Zeichner Ellman + Krause LLP
10020 Avenue of the Americas
New York, NY 100 0294 36
USA

**TO**

Assaf Sternberg
2 Balfur St.
IL Israel
Kiryat Uno
Israel

To Be Completed By Customer (Please Print)
All Entries Must Be in Ballpoint or Typed

PS Form **3806**,    **Receipt for Registered Mail**         Copy 1 - Customer
June 2002                                                (See Information on Reverse)

For delivery information, visit our website at *www.usps.com* ®

SURROGATE'S COURT NEW YORK COUNTY                    File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

## AFFIRMATION OF SERVICE

### ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

February 2013

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | (b) | (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Albania | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Antigua and Barbuda | No opposition | No opposition | Additional information | Additional information | Declaration of applicability | No declaration |
| Argentina | No opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration of applicability |
| Armenia | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Australia | No opposition | Qualified opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment, otherwise where it is determined otherwise by the Court seized by the matter |
| Bahamas | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Barbados | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Belarus | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Belgium | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Belize | No opposition | No opposition | No opposition | No opposition | No opposition | No opposition |

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | (b) | (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Bosnia and Herzegovina | No opposition | No opposition | No opposition | No opposition | No opposition | No opposition |
| Botswana | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Bulgaria | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | |
| Canada | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment, except in exceptional cases determined by the rules of the Court seized of the matter |
| China, People's Republic of | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| China (Hong Kong) | Opposition | No opposition | Additional information | Additional information | No declaration of applicability | No declaration |
| China (Macao) | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

**TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a),(b) AND (c), 15(2) AND 16(3)
OF THE HAGUE SERVICE CONVENTION**

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Croatia | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Cyprus | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Czech Republic | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Denmark | No opposition | No opposition – Additional information, see practical information chart | No opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment (additional information, see declarations) |
| Egypt | Opposition | Opposition | Opposition | Opposition | No declaration of applicability | No declaration |
| Estonia | No opposition | No opposition | No opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of three years following the date of the judgment |
| Finland | No opposition | No opposition | Additional information | Additional information | No declaration of applicability | No declaration |
| France | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of twelve months following the date of the judgment |

**TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION**

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Germany | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the termination of one year following the termination of the time limit which has not been observed |
| Greece | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Hungary | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Iceland | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| India | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Ireland | No opposition | No opposition | Additional information | Additional information | Declaration of applicability | No declaration |

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 | | | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| | | (a) | (b) | (c) | | |
| Israel | No opposition | No opposition | Additional information | Additional information | No declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Italy | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Japan | No opposition | No opposition Additional information – See practical information chart | Opposition | Opposition | Declaration of applicability | No declaration |
| Korea, Republic of | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Kuwait | Opposition | Opposition | Opposition | Opposition | Declaration of non-applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of the time fixed by the law of the trial judge or one year following the date of judgment, whichever is longer |
| Latvia | Opposition | Qualified opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Lithuania | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

February 2013

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Luxembourg | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Malawi | No opposition | No opposition | | | No declaration of applicability | No declaration |
| Malta | Opposition | Opposition | Opposition | No opposition | No declaration of applicability | No declaration |
| Mexico | Opposition | Opposition | Opposition | Opposition | Declaration of non-applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of judgment, or a longer period which the judge may deem reasonable (additional information, see declarations) |
| Monaco | Opposition | Opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after expiration of twelve months following the date of the judgment |
| Montenegro | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after expiration of one year following the date of the judgment |
| Morocco | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |

February 2013

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a),(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 | | | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| | | (a) | (b) | (c) | | |
| Netherlands | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Norway | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed if delivered to the competent Norwegian authorities after the expiration of three years following the date of the judgment |
| Pakistan | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief from ex parte decisions will not be entertained if it is filed after the expiration of the period of limitation prescribed by the law of Pakistan |
| Poland | Opposition | Opposition | Opposition | Opposition | No declaration of applicability | No declaration |
| Portugal | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Republic of Moldova | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a),(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Romania | Opposition | No opposition | No opposition | No opposition | No declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Russian Federation | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Saint Vincent and the Grenadines | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| San Marino | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Serbia | Opposition | Opposition | No opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Seychelles | Opposition | No opposition | Additional information | Additional information | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Slovakia | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Slovenia | Opposition | Qualified opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

February 2013

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Spain | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of sixteen months following the date of the judgment |
| Sri Lanka | Opposition | Opposition | No opposition | Opposition | Declaration of applicability | No declaration |
| Sweden | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Switzerland | Opposition | Opposition | Opposition | Opposition | No declaration of applicability | No declaration |
| The Former Yugoslav Republic of Macedonia | Opposition | Opposition | Additional information | Additional information | Declaration of applicability | |
| Turkey | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Ukraine | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the after expiration of one year following the date of the judgment |

February 2013

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 | | | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| | | (a) | (b) | (c) | | |
| United Kingdom | No opposition | No opposition | Additional information – See declarations and practical information chart | Additional information – See declarations and practical information chart | Declaration of applicability | In relation to _Scotland only_, applications for setting aside judgments on the grounds that the defendant did not have knowledge of the proceedings in sufficient time to defend the action will not be entertained if filed more than one year after the date of judgment. |
| United States of America | No opposition – See Practical information chart | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after: a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or b) after the expiration of one year following the date of judgment, whichever is later. |
| Venezuela | Opposition | Opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after expiration of the period specified in Venezuelan law |

Légalisation / Preuves / Notification
Legalisation / Evidence / Service



Octobre / novembre 2003
October / November 2003

**CONCLUSIONS ET RECOMMANDATIONS ADOPTÉES PAR LA COMMISSION SPÉCIALE SUR LE
FONCTIONNEMENT PRATIQUE DES CONVENTIONS
APOSTILLE, OBTENTION DES PREUVES ET NOTIFICATION**

**_(28 octobre au 4 novembre 2003)_**

\* \* \*

**CONCLUSIONS AND RECOMMENDATIONS ADOPTED BY THE SPECIAL COMMISSIONON THE
PRACTICAL OPERATION OF THE HAGUE
APOSTILLE, EVIDENCE AND SERVICE CONVENTIONS**

**_(28 October to 4 November 2003)_**

Permanent Bureau | *Bureau Permanent*
6, Scheveningseweg   2517 KT The Hague | *La Haye*   The Netherlands | *Pays-Bas*
telephone | *téléphone* +31 (0)70 363 3303   fax | *télécopieur* +31 (0)70 360 4867
e-mail | *courriel* secretariat@hcch.net   website | *site internet* http://www.hcch.net

**CONCLUSIONS ET RECOMMANDATIONS ADOPTEES PAR LA COMMISSION SPECIALE SUR LE
FONCTIONNEMENT PRATIQUE DES CONVENTIONS
APOSTILLE, OBTENTION DES PREUVES ET NOTIFICATION**

*(28 octobre au 4 novembre 2003)*

\* \* \*

**CONCLUSIONS AND RECOMMANDATIONS ADOPTED BY THE SPECIAL COMMISSION ON THE
PRACTICAL OPERATION OF THE HAGUE
APOSTILLE, EVIDENCE AND SERVICE CONVENTIONS**

*(28 October to 4 November 2003)*

**Conclusions and Recommendations
of the Special Commission on the practical operation
of The Hague Apostille, Evidence and Service Conventions
*(28 October to 4 November 2003)***

1.   A Special Commission met in The Hague from 28 October to 4 November 2003 to review the practical operation of the Hague Conventions of *5 October 1961 Abolishing the Requirement of Legalisation for Foreign Public Documents*, of *15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, and of *18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*. The Special Commission, which was attended by 116 delegates representing 57 Member States, States party to one or more Convention under review, and observers, unanimously approved the following conclusions and recommendations:

## I.    GENERAL COMMENTS

2.   The Special Commission (SC) noted and emphasised the *continued importance* of the Hague Apostille, Evidence and Service Conventions.

3.   In light of the value of the continued monitoring of the Conventions' practical operation, the need to promote uniform interpretation, foster mutual confidence and enhance the mutual benefits for States party to the Convention to exchange their respective experiences in operating the Conventions, as well as to promote the benefits of the Conventions to non-party States, the SC recommended to have *more frequent meetings* to review the practical operation of the Apostille, Evidence and Service Conventions. The Special Commission recommended that review meetings on the practical operation of these three Conventions be held *every five years*, subject to the availability of the additional resources needed. Also, consideration should be given to the possibility of reviewing the practical operation of the *Hague Convention of 25 October 1980 on International Access to Justice*.

4.   The SC emphasised that the Apostille, Evidence and Service Conventions operate in an environment which is subject to important *technical developments*. Although this evolution could not be foreseen at the time of the adoption of the three Conventions, the SC underlined that modern technologies are an integral part of today's society and their usage a matter of fact. In this respect, the SC noted that the spirit and letter of the Conventions do not constitute an obstacle to the usage of modern technology and that their application and operation can be further improved by relying on such technologies. The Workshop held prior to the SC (*i.e.*, on 27 October 2003) clearly revealed the means, possibilities and advantages of using modern technologies in subject matters falling within the scope of the Conventions[1].

---

[1]   The Workshop was structured around the following presentations: MR THOMAS GOTTWALD & MR PETER FRANK (Federal Ministry of Justice, Austria): *eJustice – Datahighway to Austrian Courts – Electronic Legal Communication (ELC) – Transmission of Legal Documents*; MS JULIE NIND (Ministry of Justice, New Zealand): *Taking evidence by video link across Tasman*; MS DORY MCKENZIE & MR JAMES MASON (Foreign and Commonwealth Office, United Kingdom): *The issuance of Apostilles by the Foreign and Commonwealth Office*; MR OZIE STALLWORTH & MR KEVIN MENDELSON (National Notary Association, United States of America): *enjoa – The Electronic Notary Journal of Official Acts*.

## II.    APOSTILLE CONVENTION

*General considerations*

5.  Examination of practice under the Apostille Convention confirmed its *very wide use and effectiveness*, as well as the absence of any major practical obstacle. Against this background, the SC recommended strongly that States party to the Convention should continue to *promote* it to other States. In particular, Member States of the Conference which are not already party to the Convention are encouraged to consider actively becoming party to the Convention.

6.  The SC also stressed the *usefulness of linking the application of the Hague Adoption Convention of 1993 to the Apostille Convention*. In light of the high number of public documents included in a typical adoption procedure, the SC recommended that States that are party to the Adoption Convention but not to the Apostille Convention consider actively becoming party to the latter.

7.  The SC emphasised that the *use of information technology (IT) could have a positive impact on the operation of the Convention*, in particular through lowering costs and increasing the efficiency of the creation and registration of Apostilles.

8.  The SC noted the difficulties some States face with the recognition of Apostilles issued in States with numerous competent authorities (difficulties in identifying and verifying the competence of individual issuing authorities; differences in Apostilles issued within the same State). With a view to further promoting knowledge about the practical operation of the Convention, the SC recommended that States party send all *relevant information to the Permanent Bureau to be publicised on the Hague Conference's website, and that particular consideration to a FAQ-section be given.*

9.  Furthermore, the SC recommended that a *Handbook* on the practical operation of the Convention be prepared by the Permanent Bureau, subject to adequate resources being available for the purpose.

*Scope of the Convention*

10. With regard to *commercial and customs documents*, which are excluded from the scope of the Convention, the SC noted that despite some isolated concerns there were no developments that would justify the need to reconsider this exclusion. The SC suggested that the matter be further explored in the Handbook (see recommendation 9 above).

11. Regarding the application of an Apostille on a *certified copy* of a public document, the SC concluded that Article 1 of the Convention applies. Individual States, however, may decline to issue an Apostille to the certified copy of a document on the grounds of public policy.

*Competent Authorities*

12. In addition to the obligation mentioned in Article 6 (of the Convention), the SC recommended that States party make available to the Permanent Bureau a list of *all* competent authorities to issue Apostilles, including their full contact details (postal address, telephone and fax numbers, e-mail). The SC noted the importance of keeping this information updated.

*Formal requirements*

13. The SC underlined the importance of the *principle that an Apostille that has been established according to the requirements of the Convention in the State of issuance must be accepted and produce its effects in any State of production*. With a view to further facilitating free circulation of Apostilles, the SC recalled the importance of the *Model certificate* annexed to the Convention. The SC recommended that Apostilles issued by competent authorities should conform as closely as possible to this model. However, variations in the form of an Apostille among issuing authorities should not be a basis for rejection as long as the Apostille is clearly identifiable as an Apostille issued under the Convention. *The SC firmly rejects, as contrary to the Convention, isolated practices among States party that require Apostilles to be legalised.*

14. The SC took note of some reports of *successful use of electronically or non-manually reproduced signatures of issuing authorities* and that the use of such signatures has not led to an increased incidence of fraud. At the same time, it was noted that most States party remained reticent towards the use of such signatures. The SC recommended the advantages of increased automation, but stressed the importance of applying appropriate anti-fraud measures to the production of automated signatures.

15. The SC agreed that it was important to maintain *mutual confidence* where electronically or non-manually reproduced signatures are used. In this respect, the SC underlined the important role that the *register* – which up to now has not often been called upon to verify the relevant information contained in a specific Apostille – could play in resolving any doubt in relation to an Apostille. The SC noted that maintenance of electronic registers could facilitate the process of verification.

16. The SC noted the *variety of means for affixing Apostilles* to the public document. These means may include rubber stamp, glue, (multi-coloured) ribbons, wax seals, impressed seals, self-adhesive stickers, etc.; as to an allonge, these means may include glue, grommets, staples, etc. The SC noted that all these means are acceptable under the Convention, and that, therefore, these variations cannot be a basis for the rejection of Apostilles.

17. As regards Apostilles to be issued for a *multi-page document*, the SC recommended that the Apostille be affixed to the signature page(s) of the document. When using an allonge, the Apostille may be affixed to the front or the back of the document.

18. The SC stressed that Apostilles may *not be refused in a State of production on the grounds that they do not comply with that State's national formalities and modes of issuance*. The only relevant consideration in this respect is that referred to in paragraph 13 above.

*Language*

19. The SC concluded that Article 4 of the Convention permitted the *use of more than one language* in the Apostille and that this might well assist in the circulation of documents. In the light of examples given by delegations it was clear that it was possible to create a form of Apostille with a number of languages and yet retain conformity with the model of the Apostille provided in the Convention. The SC recommended that States party give information on this to the PB for inclusion on the Hague Conference's website.

*Costs*

20. The SC recalled that the fees charged in connection with the issuing of the Apostille should be *reasonable*, particularly for situations like cross-border adoptions and maintenance procedures. One way of dealing with this could be to charge a single fee for a cluster of related documents rather than an individual fee for each document in a particular case.

*Retention of records in a Register*

21. As regards the issue of the retention and disposal of records in a register or card index established under Article 7, the SC did not suggest a minimum period during which records in a register should be kept. It concluded that it was a matter for each State party to develop *objective criteria* in this respect. The SC agreed that holding of information in electronic form would assist this process by making it easier to store and retrieve records.

*Effects of an Apostille*

22. The SC recalled that under the Convention, the effect of an Apostille is to "certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears" (Art. 3). In particular, the *effect of an Apostille does not extend to the content of the public document* to which it is attached.

*Use of IT in issuing Apostilles*

23. The SC identified the following four stages in the issuing of an Apostille in respect of which the application of IT might be considered and thought that there was no reason in principle – as far as the use of IT proves to be cost-efficient – why IT should not be applied:

1. maintenance of a secure electronic database of signatures for the purpose of verifying the signatures appearing on public documents for which an Apostille is requested;
2. use of word-processing technology to complete the information to appear on the Apostille;
3. use of electronically reproduced signatures of the issuing authority to be inserted through secure electronic means and printed on the Apostille;
4. maintenance of an electronic register.

*E-Apostille?*

24. The SC recommended that States party and the PB should work towards the development of techniques for the generation of electronic Apostilles taking into account *inter alia* the UNCITRAL model laws on electronic commerce and on electronic signatures, both being based on the principles of non-discrimination and functional equivalence.

*Multi-unit States and Regional Economic Integration Organisations (REIOs)*

25. The SC took note of the position of one Member State that the existence of a Multi-unit State clause might assist that State to accede to the Convention, but there was insufficient priority for this to be the subject of a protocol on its own; if there were to be a Protocol on other issues, then such a clause might be considered.

26. The SC accepted that, at this point, there was no need to consider the application of the Convention to documents issued by REIOs.

## III. EVIDENCE CONVENTION

*General considerations*

27. The SC recalled the importance of the Evidence Convention as a *bridge between common law and civil law* procedures relating to the taking of evidence in civil and commercial litigation.

28. With a view to overcoming some of the differences that have arisen among States party in interpreting the Convention, in particular the scope of a possible reservation under Article 23, the SC carefully reviewed some of the principles and practices relating to the Convention.


*Reservations under Article 23*

29. The SC recognised that the terms of Article 23, which permits a Contracting State to "declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents", are a continued source of misunderstandings. Having regard to the history of the provision, the SC agreed that Article 23 was intended to permit States to ensure that a request for the production of documents must be *sufficiently substantiated* so as to avoid requests whereby one party merely seeks to find out what documents may generally be in the possession of the other party to the proceeding. The SC noted that the wording of the particularised declaration submitted by the UK (*i.e.,* the proponent of the provision) reflected this purpose more adequately than the wording of Article 23. The UK declaration reads as follows:

> "In accordance with Article 23 Her Majesty's Government declare that the United Kingdom will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents. Her Majesty's Government further declare that Her Majesty's Government understand "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents" for the purposes of the foregoing Declaration as including any Letter of Request which requires a person:
>
> a.    to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his possession, custody or power; or
> b.    to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power."

30. Equally, the SC noted that Article 16 of the *Additional Protocol of 1984 to the Inter-American Convention on the Taking of Evidence Abroad* also more adequately reflects the concern of the proponents of Article 23 of the Evidence Convention. Article 16 of the Additional Protocol reads as follows:

> "The States Parties to this Protocol shall process a letter rogatory that requests the exhibition and copying of documents if it meets the following requirements:
>
> a.    The proceeding has been initiated;
> b.    The documents are reasonably identified by date, contents, or other appropriate information, and
> c.    The letter rogatory specifies those facts and circumstances causing the requesting party reasonably to believe that the requested documents are or were in the possession, control, or custody of, or are known to the person from whom the documents are requested.

The person from whom documents are requested may, where appropriate, deny that he has possession, control, or custody of the requested documents, or may object to the exhibition and copying of the documents, in accordance with the rules of the Convention.

At the time of signing, ratifying or acceding to this Protocol a State may declare that it will process the letters rogatory to which this article applies only if they identify the relationship between the evidence or information requested and the pending proceeding."[2]

31. The SC noted that in some instances where States have made a general, non-particularised declaration under Article 23, they may have mistakenly believed that they are only objecting to evidence requests submitted prior to the *opening of a proceeding in the State of origin*. In fact, "pre-trial discovery" means evidence requests submitted after the filing of a claim but before the final hearing on the merits.

32. Compounding the misunderstandings that may have prompted Contracting States to make a general declaration under Article 23 denying the "pre-trial discovery of documents", the SC noted that in some cases the judicial authorities of a State of origin have concluded that no requests for the production of documents were permitted under the Convention in a State having made such a general declaration. This may result in the State of origin applying its own domestic law for the taking of evidence against foreign parties.

33. The SC took note of the fact that following the discussion of the same issue during the SC meeting in 1989, some States revised their declaration under Article 23 to reflect the more particularised terms on the UK declaration. At the same time, another State party informed the SC about changes in its internal law to further limit the scope of pre-trial discovery, including by increasing the control of judges over discovery proceedings.

34. Against this background, the SC recommended that States which have made a general, non-particularised declaration under Article 23 *revisit their declaration* by considering an amendment adopting terms such as those contained in the UK declaration or in Article 16 of the Inter-American Protocol. In this connection, the SC further recommended the production of a new edition of the *practical Handbook* on the operation of the Convention.

*Scope of Article 23*

35. The SC noted that Article 23 expressly refers to "documents" and that the scope of the provision should not be extended to oral testimony.

*Article 1(2)*

36. The SC recommended that States party submit information to the Permanent Bureau as to how Article 1(2) was interpreted and, in particular, what national judicial proceedings would be regarded as "contemplated" for purposes of this provision.

*Mandatory and / or Exclusive character of the Convention*

37. The SC noted that there were still differing views among States party as to the obligatory and/or exclusive character of the Convention.

---

[2]    Reference was also made to the treatment of pretrial discovery of documents under Art. 9 of the *Inter-American Convention of 1975 on the Taking of Evidence Abroad.*

*Arbitration*

38. The SC noted that in some instances, and in accordance with the internal law of some States, the Convention has been made available for use in arbitration proceedings. The SC stressed that a request for the taking of evidence under the Convention would have to be presented by the relevant judicial authority of the State where the arbitration proceedings take place.

*Time issues*

39. The SC recommended that requests for evidence be presented as soon as practically possible so as to provide sufficient time for their execution in the State addressed.

40. The SC also urged States party to communicate to their Central Authorities and to the authorities receiving letters of request, the importance of expeditious execution of the requests.

41. With a view to avoiding unnecessary delays where a letter of request is deficient, the SC recommended that Central Authorities or executing authorities encourage the requesting authority to reformulate and resubmit its letter of request. In cases where the request appears to be partially deficient, the executing authorities should, wherever appropriate, execute the portion of a letter that is not deficient rather than to reject the entire request.

*Modern technologies*

42. The SC expressed general support for the use of modern technologies to further facilitate the efficient operation of the Convention. The SC noted that there seems to be no legal obstacle to the usage of modern technologies under the Convention. However, the use of some techniques may be subject to different legal requirements in different States (*e.g.*, obtaining the consent of all parties involved in the execution). In this respect, the SC recommended that States party make relevant information on legal requirements relating to specific techniques available to the Permanent Bureau

43. The SC stressed where a special method or procedure is requested for the taking of evidence (Art. 9(2)), the *exception* for methods that are "incompatible with the internal law of the State of execution or [...] impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties" should be interpreted narrowly to permit, to the greatest possible extent, the use of modern information technology.

44. The SC stressed that early informal contact among appropriate authorities to coordinate the presentation and execution of Letters of request might be facilitated by the use of modern information technology such as e-mail.

*Multi-unit States and Regional Economic Integration Organisations (REIOs)*

45. The SC took note of the position of one Member State that the existence of a Multi-unit State clause might assist that State to accede to the Convention, but there was insufficient priority for this to be the subject of a protocol on its own; if there were to be a Protocol on other issues, then such a clause might be considered.

46. The SC accepted that, at this point, there was no need to consider the application of the Convention in relation to REIOs.

## IV.  SERVICE CONVENTION

*Forwarding Authorities*

47. The SC recalled that it is for the law of the requesting State to determine the competence of the forwarding authorities (Art. 3). Furthermore, the SC took note of information provided by number of experts about the position of forwarding authorities and concluded that most practical problems have been solved.

48. The SC invited all States party to provide information on the forwarding authorities and their competences to the Permanent Bureau for posting on the Conference's website. The SC also accepted a suggestion that such information be included on the Standard Form for a Request for Service[3].

49. The SC recommended that in any question of doubt as to the competence of the forwarding authority, rather than rejecting the request, the authorities in the State requested should seek to confirm that competence by either consulting the Conference's website or by making expeditious informal inquiries of the forwarding authorities, including by way of e-mail.

*Designation of Central Authorities*

50. The SC reaffirmed the requirement on States party to the Service Convention to designate a Central Authority under Article 2 and noted the serious difficulties which can arise in operating the Convention if such a designation is not made known to the depositary at the time of the deposit of the instrument of ratification or accession. The SC urged all States party which have not yet done so to designate, as soon as possible, a Central Authority. If delays may not be avoided in the designation of the Central Authority(ies), the SC urged that such States give full information to the Permanent Bureau about the arrangements provided to facilitate the functioning of the Convention pending such designation.

51. The SC requested all States party to provide to the Permanent Bureau complete contact information (postal address, telephone and fax numbers, e-mail and website addresses) for their Central Authorities, particularly for States that have designated more than one Central Authority or other authorities under Article 18. The SC noted the importance of regularly updating of this information on the Conference's website.

*Functioning of the Central Authorities*

52. The SC reaffirmed that it is for a State party to determine its own model for the organisation of the Central Authority functions. In particular, the SC noted that the terms of the Convention do not preclude a Central Authority from contracting activities under the Convention to a private entity, while retaining its status as Central Authority and ultimate responsibility for its obligations under the Convention[4].

53. The SC reaffirmed that according to Article 12(1), a State party shall not charge for its services rendered under the Convention. Nevertheless, under Article 12(2), an applicant shall pay or reimburse the costs occasioned by the employment of a judicial officer or other competent person. The SC urged States to ensure that any such costs reflect actual expenses and be kept at a reasonable level[5].

---

[3]  The Russian Federation did not support this recommendation and reserved its position.
[4]  The Russian Federation did not support this recommendation and reserved its position.
[5]  The Russian Federation did not support this recommendation and reserved its position.

54. The SC invited States party to make available to the Permanent Bureau all relevant information relating to costs, the availability and modalities of service by delivery under Article 5(2), as well as information relating to the alternative modes of transmission under the Convention, for posting on the Conference's website.

*Alternative channels of transmission*

55. The SC reaffirmed its clear understanding that the term "send" in Article 10(a) is to be understood as meaning "service" through postal channels.

56. The SC considered the increasing use of private courier services for the expeditious transmission of documents in a variety of business settings and heard reports that such couriers have been used to serve process under Article 10(a) of the Convention. In light of that, the SC concluded that for the purposes of Article 10(a) the use of a private courier was the equivalent of the postal channel.

57. The SC noted the further clarification submitted by the Japanese delegation on its position regarding Article 10(a):

"Japan has not declared that it objects to the sending of judicial documents, by postal channels, directly to addressees in Japan. As the representative of Japan made clear at the Special Commission of April 1989 on the practical operation of the Service and Evidence Conventions, Japan does not consider that the use of postal channels for sending judicial documents to persons in Japan constitutes an infringement of its sovereign power.
Nevertheless, as the representative also indicated, the absence of a formal objection does not imply that the sending of judicial documents by postal channels to addressees in Japan is always considered valid service in Japan. In fact, sending documents by such a method would not be deemed valid service in Japan in circumstances where the rights of the addressee were not respected."

58. The SC noted that the UK confirmed its position expressed at the Special Commission meeting of 1989, indicating its preference for the use of direct service through English solicitors on residents of England and Wales.

*Use of IT technology*

59. The SC stressed that the operation of the Convention was to be considered in light of a business environment in which use of modern technology was now all pervasive, and that the electronic transmission of judicial communications is a growing part of that environment. In this light, conclusions could be reached as follows:

60. The Convention does not on its terms prevent or prescribe the use of modern technologies to assist in further improving its operation.

61. The Convention does not on its terms deal with internal procedures but there is a link between domestic law systems and the functioning of the Convention.

62. It can be concluded, however, that the transmission of documents internationally for the purposes of the Convention can and should be undertaken by IT-Business methods including e-mail; this is already happening and the SC recommends that States party to the Convention explore all ways in which they can use modern technology for this purpose.

63. In this light, the SC identified a variety of steps for which the use of electronic means may be immediately explored: communication between a requesting party and a forwarding authority, communication between a forwarding authority and a Central Authority of a requested State, and retransmission of the certificate of execution by the designated authority.

64. The SC also recognised that in many domestic legal systems the relevant legal procedures and technological conditions did not allow for service by electronic means, although in certain systems the use of e-mail and fax was permitted in certain circumstances, particularly where approved by judicial authority in advance or agreed by the parties. Nevertheless, the SC recognised that given the pace of technological developments, existing problems might well be overcome so as to enable service by these methods to become more widely used. States party to the Convention are therefore encouraged to explore ways in which such innovations can be achieved.

*Translation requirements*

65. The SC recognised that no translation is required, under the Convention, for transmission under alternative channels provided by the Convention; the SC noted, however, that in isolated cases such translation requirements are imposed by a State's internal law.

66. The SC noted that the vast majority of States party do not require a translation for service by way of informal delivery (Art. 5(2)).

67. As to the translation requirement for service under Article 5(1), the SC also noted the importance of respecting the various requirements provided in the national laws of States party.

68. The SC invited the States party to make available to the Permanent Bureau all relevant information (incl. any declaration) regarding the extent of any translation requirement for execution of requests under Article 5. The SC also invited States party to provide information as to the consequences under their domestic law when acting as requesting State of a refusal of an addressee to accept service under the Convention.

*Scope of application*

69. As to the meaning of the terms "civil or commercial matters", the SC urged for a broad interpretation of these terms and reaffirmed the following conclusions adopted in 1989:

   a.  The Commission considered it desirable that the words "civil or commercial matters" should be interpreted in an *autonomous* manner, without reference exclusively either to the law of the requesting State or to the law of the requested State, or to both laws cumulatively.

   b.  In the "grey area" between private and public law, the historical evolution would suggest the possibility of a more *liberal interpretation* of these words. In particular, it was accepted that matters such as bankruptcy, insurance and employment might fall within the scope of this concept.

70. In addition, the SC took note of the fact that while in some States tax issues were considered as falling within the scope of the Convention, in others this was not the case.

71. The SC also noted that in some States party, the Convention had been applied in proceedings relating to the recovery of proceeds of crime.

72. Finally, the SC cautioned that the meaning of "civil and commercial" appearing in other instruments should not be relied on for interpretation without considering the object and purpose of such other instruments.

*Mandatory and/or exclusive character of the Convention*

73. Recalling the conclusions and recommendations of 1989, the SC confirmed the prevailing view that the Convention was of a non-mandatory, but exclusive character as described in more detail in the provisional version of the new edition of the Practical Handbook, without prejudice to international law on the interpretation of treaties.

74. The SC recalled the purpose and fundamental importance of Article 15(2), which is designed to ensure actual notice to a defender in sufficient time to organise his or her defence.

*Double-date*

75. The SC considered and rejected a proposal that States party adopt a recommendation to implement a system of double-date, according to which the interests of the plaintiff (*e.g.*, limitation periods) and those of the defendant (*e.g.*, time to file his or her defence) have to be protected by assigning different dates. The SC took note that many legal systems have effective means to protect the interests of the plaintiff without having to rely on the actual date of service.

*Exclusion of the application of the Convention between the parties*

76. The SC took note of the practice reported in one State party to the Convention whereby contractual arrangements were entered into and upheld in the courts of that State which excluded the application of the Convention for service of documents as regards parties to such contracts, including parties outside that State.

77. Several experts commented to the effect that this would not be allowed in their States and be considered as contrary to their internal law. Some experts indicated, however, that a judgment rendered pursuant to service in accordance with any such contractual arrangements would not necessarily be refused execution.

*Exequatur*

78. The SC recalled that the Convention does not address the issue of recognition and enforcement of judgments. In addition, experts reaffirmed the need for the Convention to operate so as to sustain the procedural rights of the defender. In particular, the SC recalled again the principle that the defender should be given actual notice in sufficient time to allow him or her to organise a defence. This was significant notably where in the State addressed consideration was given to the validity of service.

*Reservations and reciprocity*

79. The SC noted that States party do not assert reciprocity against other States party that have made declarations under Articles 8 and 10.

*Regional Economic Integration Organisations (REIOs)*

80. The SC accepted that, at this point, there was no need to consider the application of the Convention in relation to REIOs.

*Future Work: Form and Handbook*

81. The SC accepted that future work on the forms be undertaken by the PB in conjunction with a representative group of experts to be designated by the Secretary General, in particular with a view to assessing the necessity of amending the forms and to develop guidelines for completing those forms.

82. The SC welcomed the draft version of the new edition of the Practical Handbook prepared by the Permanent Bureau. The SC invited the Permanent Bureau to finalise the new edition, taking into account the conclusions and recommendations adopted by the SC and emphasised the desirability of maintaining and enhancing the practical utility of the Handbook in conjunction with the information provided on the Conference's website.

The Hague / 20 November 2003

UNCLASSIFIED

United States Department of State

*The Legal Adviser*

*Washington, D.C. 20520*

RELEASED IN FULL

March 14, 1990

L2

Harry W. Swegle, Esquire
Washington Liaison
National Center for State Courts
444 N. Capitol St., N.W.
Suite 608
Washington, D.C. 20001

Subject: Bankston v. Toyota Motor Corporation, 8th Circuit,
No. 89-1249, November 13, 1989

Dear Mr. Swegle:

I am writing with reference to the interpretation of United
States treaty obligations in the recent Bankston decision. As you
are aware, while courts in the United States have final authority to
interpret international treaties for the purposes of their
application as law in the United States, they give great weight to
treaty interpretations made by the Executive Branch. Rest. 3rd,
Restatement of Foreign Relations Law of the United States §326(2)
(1986).

The United States Government did not have an opportunity to
express its views on the issues before the 8th Circuit Court of
Appeals in Bankston. The November 28 issue of The United States Law
Week first brought the November 13, 1989 decision of the Court of
Appeals in Bankston to the attention of the Office of the Legal
Adviser in the Department of State and the Office of Foreign
Litigation in the Justice Department, which serves as the U.S.
Central Authority under the 1965 Hague Convention on the Service
Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, 20 U.S.T. 361, T.I.A.S. 6638. The Circuit Court
in Bankston, examining Toyota's motion to dismiss for improper
service on the defendant in Japan by registered mail rather than
under the procedures set out in the Hague Service Convention (to
which both the United States and Japan are parties), concluded that
service of the summons and complaint by registered mail to a
defendant in a foreign country (Japan) is not a method of service of
process permitted by the Hague Convention.

We understand from appellant's/plaintiff's counsel that the time
period for filing a petition for a rehearing in Bankston has
elapsed. We understand further that neither the plaintiff nor the
Court of Appeals was aware of a statement made by the delegate of
Japan in April, 1989 at a meeting of representatives of countries

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: OSCAR J OLSON
DATE/CASE ID: 08 JUN 2010 200902335

UNCLASSIFIED

## UNCLASSIFIED

that have joined the Hague Service Convention that appears to be
relevant to the basic question addressed in the Bankston case.  The
Japanese statement in question was the result of efforts by the
Departments of State and Justice to encourage the Government of
Japan to clarify its position with regard to the service of process
in Japan by mail from another country party to the Hague Service
Convention.  Enclosed is a copy of the report of that meeting
prepared by the Permanent Bureau of the Hague Conference on Private
International Law.  The statement and the relevant report language
may be found at pages 9 and 11 of the report and read as follows:

"Question D:  Have there been any court decisions in your
country interpreting Article 10 a. of the Hague Service
Convention which reads as follows:

"Provided the State of destination does not object,
the present Convention shall not interfere with –

a  the freedom to send judicial documents, by postal
channels, directly to persons abroad ..."

It was pointed out that the postal channel for service
constitutes a method which is quite separate from service
via the Central Authorities or between judicial officers.
Article 10 a in effect offered a reservation to Contracting
States to consider that service by mail was an infringement
of their sovereignty.  Thus, theoretical doubts about the
legal nature of the procedure were unjustified.
Nonetheless, certain courts in the United States of America
in opinions cited in the "Checklist" had concluded that
service of process abroad by mail was not permitted under
the Convention.

The Japanese delegation explained that their Government
wished the following statement of position to be made known:

"Japanese position on Article 10 a of the Hague
Convention on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters:

Japan has not declared that it objects to the sending
of judicial documents, by postal channels, directly to
persons abroad.  In this connection, Japan has made it
clear that no objection to the use of postal channels
for sending judicial documents to persons in Japan
does not necessarily imply that the sending by such a
method is considered valid service in Japan; it merely
indicates that Japan does not consider it as
infringement of its sovereign power."

## UNCLASSIFIED

UNCLASSIFIED

It was understood that the Japanese position as expressed
in this statement would be included in the next revision of
the Practical Handbook on the Hague Service Convention."
[The Handbook is published by the Hague Conference.]

We consider that the Japanese statement represents the official
view of the Japanese Government that Japan does not consider service
of process by mail in Japan to violate Japanese judicial sovereignty
and that Japan does not claim that such service would be
inconsistent with the obligations of any other country party to the
Hague Service Convention vis-a-vis Japan. The Japanese statement
suggests, however; that it is possible, and even likely, that
service in Japan by mail, which may be considered valid service by
courts in the United States, would not be considered valid service
in Japan for the purposes of Japanese law. Thus, a judgment by a
court in the United States based on service on the defendant in
Japan by mail, while capable of recognition and enforcement
throughout the United States, may well not be capable of recognition
and enforcement in Japan by the courts of that country.

We therefore believe that the decision of the Court of Appeals
in Bankston is incorrect to the extent that it suggests that the
Hague Convention does not permit as a method of service of process
the sending of a copy of a summons and complaint by registered mail
to a defendant in a foreign country.

We believe that it would be useful, in an effort to spare
plaintiffs in the United States unnecessary time and expense, for
your Center to bring the Japanese statement to the attention of
State courts. You may, in doing so, wish to inform them that
International Legal Materials, published by the American Society of
International Law, reprinted the entire Report of the April session
at The Hague in its November, 1989 issue, 28 I.L.M. 1556-1569
(1989). As an additional means of bringing the Japanese Statement
and our interpretation of it to the attention of the courts and the
private bar, we are sending a copy of this letter to the editor of
International Legal Materials with the recommendation that the
letter be reproduced in that publication in the near future.

Sincerely yours,

Alan J. Kreczko
Deputy Legal Adviser


Enclosure: Hague Conference Report


UNCLASSIFIED



Copyright (c) 1991 American Society of International Law, Washington, D.C.
International Legal Materials

Volume 30, Number 1

January, 1991

*30 I.L.M. 260;* (1991)

**SECTION:** NOTICE OF OTHER RECENT DOCUMENTS

**LENGTH:** 1338 words

**TEXT:**

[*260]  1.  United States Department of State Opinion Regarding the Bankston Case and Service by Mail to Japan under the Hague Service Convention

In the decision of the United States Court of Appeals for the Eighth Circuit, Bankston v. Toyota Motor Company, No. 89-1249, November 13, 1989, the Court concluded that service of summons and complaint by registered mail to a defendant in a foreign country is not a method of service permitted by the Hague Convention.  The United States Department of State has recently stated that it believes the decision to be incorrect.  This view is contained in a March 14 letter from the United States Department of State Deputy Legal Adviser, Alan J. Kreczko, to the Administrative Office of United States Courts and the National Center for State Courts, excerpts of which are reproduced below:

"I am writing with reference to the interpretation of United States treaty obligations in the recent Bankston decision.  As you are aware, while courts in the United States have final authority to interpret international treaties for the purposes of their application as law in the United States, they give great weight to treaty interpretations made by the Executive Branch.  Rest. 3rd, Restatement of Foreign Relations Law of the United States section 326(2) (1986).

"The United States Government did not have an opportunity to express its views on the issues before the 8th Circuit Court in Bankston.  The November 28 issue of the United States Law Week first brought the November 13, 1989 decision of the Court of Appeals in Bankston to the attention of the Office of the Legal Adviser in the Department of State and the Office of Foreign Litigation in the Justice Department, which serves as the U.S. Central Authority under the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. 6638 [4 I.L.M. 341 (1965)].  The Circuit Court in Bankston, examining Toyota's motion to dismiss for improper service on the defendant in Japan by registered mail rather than under procedures set out in the Hague Service Convention (to which both the United States and Japan are parties), concluded that service of summons and complaint by registered mail to a defendant in a foreign country (Japan) is not a method of service of process permitted by the Hague Convention.

"We understand from appellant's/plaintiff's counsel that the time period for filing a petition for a rehearing in Bankston has elapsed.  We understand further that neither the plaintiff nor the Court of Appeals was aware of a statement made by the delegate of Japan in April, 1989 at a meeting of representatives of countries that have joined the Hague Service Convention that appears to  [*261]  be relevant to the basic question addressed in the Bankston case.  The Japanese statement in question was the result of efforts by the Departments of State and Justice to encourage the Goverment of Japan to clarify its position with regard to the service of process in Japan by mail from another country party to the Hague Service Convention. . . .  [The section of the report containing the Japanese statement appears at 28 I.L.M. 1561 (1989); the full text of the report from the Hague meeting is reproduced at 28 I.L.M. 1556 (1989).]

"We consider that the Japanese statement represents the official view of the Japanese Government that Japan does not consider service of process by mail in Japan to violate Japanese judicial sovereignty and that Japan does not claim that such service would be inconsistent with the obligations of any other country party to the Hague Service Convention vis-a-vis Japan.   The Japanese statement suggests, however, that it is possible, and even likely, that service in Japan by mail, which may be considered valid service by courts in the United States, would not be considered valid service in Japan for the purposes of Japanese law.   Thus, a judgment by a court in the United States based on service on the defendant in Japan by mail, while capable of recognition and enforcement throughout the United States, may well not be capable of recognition and enforcement in Japan by the courts of that country.

"We therefore believe that the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country. . . ."

2.   The United States Supreme Court Allows Texas Supreme Court Decision in Dow Chemical Company v. Alfaro to Stand

On January 7, 1991, the United States Supreme Court allowed the Texas Supreme Court decision in Dow Chemical v. Alfaro [29 I.L.M. 751 (1990)] to stand, refusing to hear an appeal brought by Dow Chemical Company and Shell Oil Company.   The Texas Supreme Court had found that the legislature had abolished the doctrine of forum non conveniens in 1913, and ruled that the Costa Rican plaintiffs could file suit in Texas.   The ruling is expected to permit citizens of foreign countries to bring law suits in the Texas courts.

3.   United Nations Draft Handbook on the Peaceful Settlement of Disputes between States

On December 13, 1984, the General Assembly of the United Nations requested the Secretary-General to prepare a draft handbook on the peaceful settlement of disputes between States on the basis of the outline elaborated by the Special Committee on the Charter of the United Nations and on the Strengthening of the Role of the Organization, and in light of the views expressed in the course of the discussions in the Sixth Committee and in the Special Committee.

[*262]   The 181-page draft handbook is annexed to the Secretary-General's progress report (UN document A/AC.182/L.68 of November 12, 1990), which reviews the program of meetings on the draft document, and which notes that the draft is to be submitted in final form to the 1991 session of the Special Committee, at which time it will include annexes, an index and a bibliography.

As the introduction to the draft handbook notes,

"The purpose of the handbook is to contribute to the peaceful settlement of disputes between States and to help to increase compliance with international law by providing States parties to a dispute, particularly those states which do not have the benefit of long-established and experienced legal departments, with the information they might need to select and apply procedures best suited to the settlement of particular disputes.

"The handbook has been prepared in strict conformity with the Charter of the United Nations.   It is descriptive in nature, it is not a legal instrument and does not commit States in any way."

The contents of the handbook are as follows:

I.   PRINCIPLE OF THE PEACEFUL SETTLEMENT OF DISPUTES BETWEEN STATES
　　A.   Charter of the United Nations
　　B.   Declarations and resolutions of the General Assembly
　　C.   Corollary and related principles
　　D.   Free choice of means

II.   MEANS OF SETTLEMENT
　　A.   Negotiations and consultations
　　B.   Inquiry
　　C.   Good offices
　　D.   Mediation
　　E.   Conciliation
　　F.   Arbitration

30 I.L.M. 260, *

    G.  Judicial settlement
    H.  Resort to regional agencies or arrangements
    I.  Other peaceful means

III.  PROCEDURES ENVISAGED IN THE CHARTER OF THE UNITED NATIONS
    A.  Introduction
    B.  The Security Council
    C.  The General Assembly
    D.  The Secretariat

IV.  PROCEDURES ENVISAGED IN OTHER INTERNATIONAL INSTRUMENTS
    A.  Introduction
    B.  Procedures envisaged in the constituent instruments of international organizations of a universal character other than the United Nations
    C.  Procedures envisaged in multilateral treaties creating no permanent institutions

SCANNED ON 10/25/2006

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**
**PRESENT:**        **HON. MARYLIN G. DIAMOND**                    **PART 48**
                                                    *Justice*

CANTARELLI, S.p.A.,

                                    Plaintiff,                    INDEX NO. **117651/05**

                        - v -                                     MOTION DATE

L. DELLA CELLA CO., INC.,                                         MOTION SEQ. NO.  **001**
                                                                  MOTION CAL. NO.

                                    Defendant.

**FILED**
**OCT 2 5 2006**
**NEW YORK**
**COUNTY CLERK'S OFFICE**

Cross-Motion:    [ ] Yes    [X] No

**Upon the foregoing papers, it is ordered that:** This is an action to recover $22,663.08 allegedly due on a shipment from Italy of Parma ham by the plaintiff, an Italian company, to the defendant, a company based in Garden City, New York. On January 5, 2006, the summons and complaint were served on the defendant through the Secretary of State, pursuant to BCL § 306. On May 31, 2006, an ex parte default judgment was entered against the defendant. The defendant has now moved to vacate the judgment, pursuant to CPLR 5015(a). A party seeking to set aside a default under this provision must demonstrate a reasonable excuse for the default and a meritorious defense. *See Chisholm v. Hodges*, 277 AD2d 173 (1st Dept. 2000). Here, the defendant has submitted an affidavit from its President, Peter L. Cannizzaro, who states that his company never received a copy of the summons and complaint from the agent whom it had designated to receive service from the Secretary of State and that it was unaware of the lawsuit until it received a copy of the pleadings in the mail in March, 2006. The defendant has also disputed the plaintiff's claim that it is entitled to the monies it seeks, attaching to its motion papers an invoice from a trucking indicating that only 316 cartons of the ham were delivered to the defendant and not the 499 cartons which plaintiff claims to have shipped and for which it seeks payment.

Where service is made through the Secretary of State, the courts have been generous in opening up or denying default judgments. *See Abrahams v. Peddlers Pond Holding Corp.*, 125 AD2d 355 (2nd Dept. 1986); McLaughlin, Practice Commentaries (Cons. Laws of NY, Book 7B, CPLR 317:2 at 477). In view of the defendant's relatively prompt response to the default judgment, its showing of an excusable default and a meritorious defense and New York's strong public policy in permitting parties to litigate on the merits, its motion to vacate the default should be granted and it should be permitted to submit a late answer. *See Delgado v. City of New York*, 245 AD2d 123, 124 (1st Dept 1997).

Accordingly, the defendant's motion is granted and the default judgment entered against it is hereby vacated. The defendant shall have twenty days from service upon its counsel of a copy of this order with notice of entry to serve and file an answer.

Finally, the parties are advised that, in a separate order, this action is being transferred to Civil Court pursuant to CPLR 325(d).

                        ENTER ORDER

Dated: **10/18/06**                    _____
                                       **MARYLIN G. DIAMOND, *J.S.C.***
**Check one: [X] FINAL DISPOSITION**    **[ ] NON-FINAL DISPOSITION**

STATE OF NEW YORK,                    AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.                    BY FIRST CLASS MAIL

       CHERYL L. ADEN, being duly sworn, says:  that I am over the age of eighteen years, am not a party herein, and reside in New York County, and that on the 17th day of October, 2014, I served a true copy of the within **BENEFICIARY ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI TRUST MOTION TO DISMISS ORDER TO SHOW CAUSE AND THIRD AMENDED PETITION, and AFFIRMATION OF BRYAN D. LEINBACH, WITH EXHIBITS,** upon the attorneys hereinafter named at the places hereinafter stated and set opposite their respective names by depositing the same, properly enclosed in a post-paid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York, directed to said attorneys at their last known addresses given below.

NAME                                   ADDRESS

Robert A. Meister, Esq.                570 Lexington Avenue, 18th Floor
Marisa Warren, Esq.                    New York, New York 10022
PEDOWITZ & MEISTER LLP

John G. Dellaportas, Esq.              101 Park Avenue
Mary C. Pennisi, Esq.                  New York, New York 10178
MORGAN, LEWIS & BOCKIUS LLP


                                  _____
                                    CHERYL L. ADEN

Sworn to before me on this
20th day of October, 2014

_____
NOTARY PUBLIC

MICHAEL W. ANTONIVICH
Notary Public, State of New York
No. 01AN4762190
Qualified in Nassau County
Commission Expires June 30, 20[18]

#782542v1

STATE OF NEW YORK,                          AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.                          BY FIRST CLASS MAIL

      CHERYL L. ADEN, being duly sworn, says:  that I am over the age of eighteen years, am not a party herein, and reside in New York County, and that on the 17th day of October, 2014, I served a true copy of the within **BENEFICIARY ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI TRUST MOTION TO DISMISS ORDER TO SHOW CAUSE AND THIRD AMENDED PETITION, and AFFIRMATION OF BRYAN D. LEINBACH, WITH EXHIBITS**, upon the attorneys hereinafter named at the places hereinafter stated and set opposite their respective names by depositing the same, properly enclosed in a post-paid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York, directed to said attorneys at their last known addresses given below.

NAME                                              ADDRESS

Robert A. Meister, Esq.                         570 Lexington Avenue, 18th Floor
Marisa Warren, Esq.                             New York, New York 10022
PEDOWITZ & MEISTER LLP

John G. Dellaportas, Esq.                       101 Park Avenue
Mary C. Pennisi, Esq.                           New York, New York 10178
MORGAN, LEWIS & BOCKIUS LLP

                                   CHERYL L. ADEN

Sworn to before me on this
___ day of October, 2014

              NOTARY PUBLIC

MICHAEL W. ANTONIVICH
Notary Public, State of New York
No. 01AN4762190
Qualified in Nassau County
Commission Expires June 30, 2018

#782542v1

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    File No.:      0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SCPA § 711(11)

## AFFIRMATION OF BRYAN D. LEINBACH

## ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x
                                   :

In the Matter of the Application of ORLY    :   File No.: 0017/2008
GENGER, as a person interested, for the removal  :
of DALIA GENGER as Trustee of the Orly     :
Genger 1993 Trust pursuant to SCPA § 711(11)  :
                                   :

-------------------------------------------------------------x

**IT IS HEREBY STIPULATED AND AGREED** by and between the attorneys for the

undersigned parties hereto that the hearing on Asaaf Sternberg's Motion to Dismiss The Order to

Show Cause and Third Amended Petition, currently scheduled for November 7, 2014 be

adjourned on consent of all parties to November 18, 2014.

Dated: New York, New York
      November 5, 2014

MORGAN, LEWIS & BOCKIUS LLP        ZEICHNER ELLMAN & KRAUSE LLP

By: _____        By: _____
    John DeHaportas                     Yoav M. Griver
    Mary C. Pennisi                     Bryan D. Leinbach
101 Park Avenue                     1211 Avenue of the Americas
New York, NY 10178               New York, NY 10036
(212) 309-6000                    (212) 223-0400

*Attorneys for Asaaf Sternberg*        *Attorneys for Plaintiff*
                                 *Orly Genger, as beneficiary of the*
                                 *Orly Genger 1993 Trust*

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel. 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

**Mary C. Pennisi**
Associate
212.309.6716
mpennisi@morganlewis.com

November 5, 2014

**VIA HAND DELIVERY AND EMAIL**

Miscellaneous Department
Surrogate's Court
New York County (Manhattan)
31 Chambers Street
New York, NY 10007
misc_general@courts.state.ny.us

Re:     In the Matter of the Application of Orly Genger, as a person interested, for the removal of
Dalia Genger as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11),
Index No. 0017/2008 *1B*

Dear Clerk of the Miscellaneous Department:

We represent non-party Asaaf Sternberg in the above-referenced matter. Enclosed please
find a jointly executed stipulation, adjourning the hearing date on Asaaf Sternberg's Motion to
Dismiss The Order to Show Cause and Third Amended Petition, currently scheduled for
November 7, 2014 to November 18, 2014. The parties agreed to this adjournment due to a
schedule conflict with an oral argument scheduled by the First Department, Appellate Division
on November 7, 2014.

Thank you very much.

Morgan Lewis
COUNSELORS AT LAW

Miscellaneous Department
June 9, 2014
Page 2

Sincerely,

Mary C. Pennisi

MCP
Enclosures
cc:John Dellaportas, Yoav Griver, Esq. (via e-mail)

2

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA § 711(11)

File No.: 0017/2008 /*A*

-------------------------------------------------------------x

New York County Surrogate's Court
MISCELLANEOUS DEPT.

NOV   6 2014

FILED
Clerk_____

## ASAAF STERNBERG'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
## ORLY'S THIRD AMENDED PETITION

John Dellaportas, Esq.
Mary C. Pennisi, Esq.
Jessica Joy, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Tel: (212) 309-6000
Fax: (212) 309-6001
*Attorneys for Trustee of the Sagi Genger
1993 Trust Asaaf Sternberg*

By July 28, 2014 Decision, this Court held that the pending motion must be "re-noticed and served upon the trustee [of the Sagi Genger 1993 Trust, the contingent remainder beneficiary of the Orly Genger 1993 Trust] so that he is afforded the opportunity to respond." It was thus incumbent upon Orly and her counsel, if they wished the Court to proceed with this matter, to lawfully service as directed by the Court the trustee of the Sagi Genger 1993 Trust, Asaaf Sternberg. They did not do so. Instead, they purported to serve him solely by registered mail. Mr. Sternberg is a citizen of Israel, not the United States, and resident of Israel, a signatory to the Hague Service Convention. As the New York courts have repeatedly held, the "Hague Service Convention..., of course, is the supreme law of the land and its service requirements are mandatory." *Mutual Benefits Offshore Fund v. Zeltser*, 2014 WL 4743467, at *7 (Sup. Ct. N.Y. Cnty Sept. 23, 2014)

In her opposition to this motion, Orly does not dispute that Hague Service Convention service is mandatory. Instead, she argues that Article (a) of the Convention permits service by registered mail. She is mistaken. In *Sardanis v. Sumitomo Corp.*, 279 A.D.2d 225, 228-29 (1st Dep't 2001), the First Department, Appellate Division held that service of process may not be made through the mail under Article 10(a) of the Hague Convention. As the Court explained: "'Paragraph (a) of Article 10 permits the "send[ing of] judicial documents, by postal channels, directly to persons abroad,' but that paragraph pertains to the forwarding of informational material, not the 'service' of documents for jurisdictional purposes.'" *Id.* In doing so, the First Department acknowledged that: "We recognize that American courts have divided over whether article 10 (a) should be interpreted as allowing foreign service of the type permitted under Business Corporation Law § 307. Even in New York there has been a division of authority among the departments of the Appellate Division." However, the Appellate Division reasoned

-2-

that it was the "better reasoned" approach, based on its reading of the U.S. Supreme Court's

decision in *Volkswagenwerk AG. v. Schlunk*, 486 U.S. 694, 698 (1988).

Contrary to Orly's contention, the First Department has never rescinded *Sardanis*, which

remains <u>controlling precedent</u> in this Department. *See, e.g., New York State Thruway Auth. v.*

*Fenech*, 94 A.D.3d 17, 19 (3d Dep't 2012) ("This Court and the First Department have both

adopted that interpretation, concluding that the use of the term 'send' in article 10 (a)—as

opposed to 'service,' which is ubiquitous elsewhere in the treaty—signifies 'something other

than 'service'' in the legal sense, such as the mere transmittal of notices and legal documents

which need not be 'served.'") (citing *Sardanis*, 279 A.D.2d 225); *Cantarelli S.P.A. v. L. Della*

*Cella Co.*, 40 A.D.3d 445, 446 (1st Dep't 2007) ("Defendant's president avers that defendant did

not receive notice of the foreign action which plaintiff seeks to domesticate, and plaintiff's

reliance on article 10 (a) of the Hague Convention on the Service Abroad of Judicial and

Extrajudicial Documents in Civil or Commercial Matters [] to establish proper service and notice

to plaintiff is unavailing.") (citing *Sardanis*, 279 A.D.2d 225); *Gouiran Family Trust v. Gouiran*,

40 A.D.3d 400, 401 (1st Dep't 2007) ("There has been no showing by defendants that French

law does not permit service by mail under the Hague Convention on the Service Abroad of

Judicial and Extrajudicial Documents in Civil or Commercial Matters.") (citing *Sardanis*, 279

A.D.2d 225); *Mutual Benefits Offshore Fund v. Zeltser*, No. 650438/2009, 2014 WL 4743467, at

\*7 (Sup. Ct. N.Y. Cnty. Sept. 23, 2014) ("However, "[w]here there exists a treaty requiring a

specific form of service of process such as the . . . Hague Service Convention, that treaty, of

course, is the supreme law of the land and its service requirements are mandatory.") (citing

*Sardanis*, 279 A.D.2d 225); *M.B.S. Moda, Inc. v. Fuzzi S.P.A.*, No. 156899, 2013 WL 117863, at

\*3 (Sup. Ct. N.Y. Cnty. Jan. 9, 2013) ("Contrary to plaintiff's contention, while Article 10(a) of

the Hague Convention provides that the Convention 'shall not interfere with [...] freedom to

-3-

send judicial documents by postal channels directly to persons abroad,' provided that the country

of destination does not object, the First Department held that Article 10(a) pertains to the

forwarding of informational material, not the 'service' of documents for jurisdictional

purposes.") (emphasis in original) (citing *Sardanis*, 279 A.D.2d 225); *Epic Sports Intern., Inc. v.*

*Frost*, No. 65199/2012, 2013 WL 1783565, at *3, n.1 (Sup. Ct. N.Y. Cnty. Apr. 22, 2013)

("Even if Switzerland had not opposed Article 10 of the Hague Convention, the law in the First

Department is that service by mail [] does not fall within the alternative methods permitted by

Article 10. *Sardanis v. Sumitomo Corp.*, 279 A.D.2d 225 (1st Dept 2001) (finding that Article

10(a), which permits sending of judicial documents by postal channels directly to persons

abroad, does not apply to the "service" of documents for jurisdictional purposes); *Bank of India*

*v. Subramanian*, No. 118307/09, 2011 WL 5358513 (Sup. Ct. N.Y. Cnty. Nov. 2, 2011) ("While

there is some disagreement as to whether, under subdivision (a), the sending of judicial

documents by postal means is intended to permit service of process through the post, the First

Department has determined that subsection (a) of article 10 'pertains to the forwarding of

informational material, not the 'service' of documents for jurisdictional purposes.'") (citing

*Sardanis*, 279 A.D.2d 225); *Sbarro, Inc. v. Tukdan Holdings, Ltd.*, 32 Misc. 3d 217, 219 (Sup.

Ct. Suffolk Cnty. 2011) ("The First and Third Departments interpret the word 'send' in article

10(a) to authorize something other than 'service' in the legal sense, such as the mere transmittal

of notices and legal documents, and not the service of process that initiates a lawsuit and secures

jurisdiction over an adversary party.") (citing *Sardanis*, 279 A.D.2d 225); *Axios Products, Inc. v.*

*Time Mach. Software, Inc.*, No. 13825/10, 2010 WL 3974915 (N.Y. Sup. Ct. Suffolk Cnty. Oct.

4, 2010) ("TMS urges this court to adopt the interpretation adopted by the First and Third

Departments, which hold that article 10 (a) was meant to authorize something other than

'service' in the legal sense, such as the mere transmittal of notices and legal documents, and not

the service of process that initiates a lawsuit and secures jurisdiction over an adversary party.")

(citing *Sardanis*, 279 A.D.2d 225); *I.D.R.P. v. Worldwide Diamonds Grp., Inc.,* 10 Misc. 3d

1064(A), at *1 -*2 (Sup. Ct. N.Y. Cnty. 2005) ("'That article 10 (a) refers to send', whereas the

Hague Convention repeatedly refers to service' of documents, indicates to us that article 10 (a)

was meant to authorize something other than service' in the legal sense, such as the mere

transmittal of notices and legal documents which need not be served' in the legal sense.' […] The

First Department adopted [this] reasoning in *Sardanis v. Sumitomo Corporation* (279 A.D.2d

225, 229 [2001]).") (quoting *Reynolds v. Koh,* 109 A.D.2d 97, 99 (3d Dep't 1985)).

    In contrast to all of the foregoing precedent, no court in the First Department has ever

taken a position contrary to *Sardanis*. Orly cites to the Appellate Division's decision in *Gouiran

Family Trust v. Gouiran*, 40 A.D.3d 400, 401 (1st Dep't 2007), but that case does not rescind

*Sardanis*. To the contrary, the Appellate Division in *Gouiran* cited to *Sardanis* to support its

ruling. *Gouiran*, 40 A.D.3d at 401 (1st Dep't 2007) ("There has been no showing by defendants

that French law does not permit service by mail under the Hague Convention on the Service

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.") (citing

*Sardanis*, 279 A.D.2d 225). Orly's claim that the *Gouiran* "effectively abrogated" the *Sardanis*

decision is completely misleading and false, as demonstrated by all of the above-cited, post

*Gouirian* cases which continue to cite *Sardanis*.

    Orly also cites to various precedents outside of the First Department, and even to a U.S.

State Department decision, which disagree with *Sardanis*. We fully acknowledge the split in

authority, as the First Department itself did in deciding *Sardanis*. Indeed, the split was discussed

in a recent law review article. *See* George Bundy Smith & Thomas J. Hall, *Divergent Views of

Service of Process Under the Hague Convention*, 247 N.Y.L.J. 115 (2012). But that split is for

the Court of Appeals to resolve. Until it does, this Court is bound by the precedents of the First

Department, which prohibit the method of service Orly employed.  Instead of undertaking proper service of process, she has instead chosen to engage in pointless motion practice.

Mr. Sternberg is a citizen of Israel and does not waive his rights thereunder.  As this Court has not yet obtained personal jurisdiction over him, and as such jurisdiction is required under this Court's prior decision, Orly's petition must be dismissed as a result.

Dated: New York, New York
November 6, 2014

**MORGAN, LEWIS & BOCKIUS LLP**

By: _____
        John Dellaportas
        Mary C. Pennisi
        Jessica Joy
    101 Park Avenue
    New York, NY  10178
    Tel: (212) 309-6000
    Fax: (212) 309-6001

*Attorneys for Trustee of the Sagi Genger 1993*
*Trust, Asaaf Sternberg*

VERIFICATION

STATE OF NEW YORK      )
                       )
COUNTY OF NEW YORK  )

      I, John Dellaportas, state that I am an attorney for Asaaf Sternberg, Trustee of the Sagi Genger 1993 Trust ("the Trustee") in this action. I have read the attached Reply Memorandum of Law herein and all the contents thereof are true to the best of my knowledge, except as to matters therein stated to be alleged on information and belief, and that, as to those matters, I believe them to be true. Pursuant to N.Y. C.P.L.R. 3020(d)(3), the verification is not made by the Trustee as a foreign non-domiciliary residing abroad.

Dated: New York, New York
      November 6, 2014

                                          _____
                                          JOHN DELLAPORTAS

Sworn to before me this
6th day of November, 2014

Notary Public

MARY C. PENNISI
Notary Public, State of New York
No. 02PE6266530
Qualified in Kings County
Commission Expires on 08/06/2016

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x
                                                    :
                                                    :
In the Matter of the Application of ORLY             :    File No.: 0017/2008
GENGER, as a person interested, for the removal     :
of DALIA GENGER as Trustee of the Orly              :    **AFFIRMATION OF SERVICE OF**
Genger 1993 Trust pursuant to SCPA § 711(11)        :    **MARY C. PENNISI**
                                                    :
                                                    :

     I, MARY C. PENNISI, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms pursuant to CPLR § 2106, as follows:

     1.    I am a member of the New York State Bar and the law firm of Morgan, Lewis &

Bockius LLP;

     2.    I hereby affirm that I am not a party to this action, I am over 18 years of age, I am an

attorney duly admitted to the Courts of the State of New York, and that on November 6, 2014, I

caused to be served a true and correct copy of the foregoing ASAAF STERNBERG'S REPLY

MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS ORLY'S

THIRD AMENDED PETITION, dated November 6, 2014, on the following counsel of record via

regular mail, postage pre-paid:

Robert A. Meister                            Yoav Griver
Pedowitz & Meister LLP                       Zeichner Elliman & Krause LLP
570 Lexington Avenue – 18th Floor            1211 Avenue of the Americas, 40th Floor
New York, NY 10022                           New York, New York 10036
212.403.7330                                 212.223.0400
*Attorneys for Dalia Genger,*                *Attorneys for Orly Genger*
*as Trustee of the Orly Genger 1993 Trust*


Dated: New York, New York
       November 6, 2014                      _____
                                             MARY C. PENNISI

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

================================================

File No.: 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA § 711(11)

================================================

**ASAAF STERNBERG'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
ORLY'S THIRD AMENDED PETITION**

================================================

MORGAN, LEWIS & BOCKIUS LLP

ATTORNEYS FOR ASAAF STERNBERG

OFFICE & POST OFFICE ADDRESS
101 PARK AVENUE
NEW YORK, NY 10178-0060
212-309-6000

New York County Surrogate's Court
DATA ENTRY
Date: *December 11, 2014*

Form OSG

At Chambers of the Surrogate's Court of the
County of New York, at the Courthouse
In said county, on the 10th
Day of December

PRESENT:
            Hon. NORA S. ANDERSON,

                        Surrogate.

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

            ARIE GENGER, as Grantor

                                        ORDER APPOINTING
                                        GUARDIAN AD LITEM

                                        File no. 2008-0017

It is Ordered, that STEVEN M. Riker, Esq., (                    )

is hereby appointed the guardian ad litem of: UNBORN CHILDREN.

NSA
Surrogate

Notified by phone by ef
Date 12-11-14
Date Forms Sent _____

New York County Surrogate's Court
MISCELLANEOUS DEPT.

DEC 2 2 2014

**FILED**

Clerk

State of New York
Surrogate's Court, County of New York

Petition for a Decree Removing Dalia Genger
as Trustee of the Trust under Indenture
of Trust dated December 13, 1993 made
by    ARIE GENGER, AS GRANTOR

Appearance and
Consent of Guardian ad Litem
in a Miscellaneous Proceeding

File No. 2008 - 0017

Deceased

I, Steven Riker, Esq                                    , counsellor at law, hereby appear
and consent to be appointed by the Surrogate of the County of New York the guardian ad litem of
unborn children
for the sole purpose of appearing and for protecting the interests of the aforementioned person(s) under
disability in the above-entitled matter.

Dated,    New York                , New York

Signature of Guardian ad Litem

Address:    110 East 59th Street, 33rd Floor
New York, NY 10022

Phone No:    (212) 661-6410

State of New York
County of New York

Steven Riker, Esq.            , being duly sworn says that (s)he is an attorney and counsellor
at law, and that (s)he is the individual who signed the foregoing consent. Deponent further states that
(s)he is fully competent to understand and protect the rights of the above named person(s) under a
disability, that (s)he has no interest in this proceeding adverse to that of said person(s) under a disability,
and that (s)he is not connected in business with any party to this proceeding or with the attorney or
counsel of any such party.

Signature of Guardian ad Litem

Sworn to before me this 23rd
day of December , 2014

Notary Public

LEONARD SALIS
Notary Public, State of New York
No. 02SA6080759
Qualified in Queens County
Commission Expires September 23, 20 18

New York County Surrogate's Court
MISCELLANEOUS DEPT.
JAN 1 6 2015
FILED
Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X     File No. 2008-0017/B
Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by                                              **NOTICE OF**
                                                                       **APPEARANCE**
             **ARIE GENGER**, as Grantor.

--------------------------------------------------------------------X

PLEASE TAKE NOTICE, that **STEVEN RIKER, ESQ.** hereby appears in the above-

entitled proceeding as Guardian ad Litem of unborn children, and that all notices given or

required to be given, and all papers served or required to be served herein, should be served upon

the undersigned at the office address stated below.

Dated: New York, New York
       December 26, 2014

                                              Yours, etc.,

                                              _____
                                              Steven Riker, Esq.
                                              Guardian Ad Litem
                                              Law Office of Steven Riker
                                              110 East 59th Street, 23rd Floor
                                              New York, New York 10022
                                              Tel No.: (212) 661-6410

TO:    John Dellaportas, Esq.
       Morgan Lewis & Bockius, LLP
       Attorneys for Asaaf Sternberg
       101 Park Avenue
       New York, New York 10178

       Yoav M. Griver, Esq.
       Zeichner Ellman & Krause, LLP
       Attorneys for Orly Genger
       1211 Avenue of the Americas
       New York, New York 10036

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X     File No. 2008-0017 /B

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by                                                      **AFFIRMATION OF
                                                                              SERVICE**

        **ARIE GENGER**, as Grantor.

------------------------------------------------------------------------X

      I, STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following subject to the penalties of perjury

      On December 26, 2014, I served the within Notice of Appearance, by depositing a true

copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care

and custody of the U.S. Postal Service within New York State, addressed to the following

person(s) at the address(es) set forth below:

TO:    John Dellaportas, Esq.
       Morgan Lewis & Bockius, LLP
       Attorneys for Asaaf Sternberg
       101 Park Avenue
       New York, New York 10178

       Yoav M. Griver, Esq.
       Zeichner Ellman & Krause, LLP
       Attorneys for Orly Genger
       1211 Avenue of the Americas
       New York, New York 10036

                              Steven Riker, Esq.

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FILE NO. 2008-0017/B

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

      ARIE GENGER, as Grantor.

---

## NOTICE OF APPEARANCE

---

STEVEN RIKER, ESQ.
Guardian ad Litem
Law Offices of Steven Riker
110 East 59th Street, 23rd Floor
New York, New York 10022
Tel No.: (212) 561-6410

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAR 1 2 2015

FILED

Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    File No. 0017/2008

In the Matter of the Application of ORLY GENGER,            **ADMISSION OF**
as a person interested, for the removal of DALIA           **SERVICE OF**
GENGER, as Trustee of the Orly Genger 1993 Trust           **THE SAGI TRUST**
pursuant to SCPA §711(11)                                   **MOTION TO DISMISS**

------------------------------------------------------------------------X

The undersigned, having been appointed by an Order of the Hon. Nora S. Anderson to

serve as the Guardian ad Litem of unborn children of Petitioner Orly Genger, hereby

acknowledges service and receipt of the following motion papers in the above-captioned matter.

1.    Amended Notice of Motion and Affirmation of John Dellaportas in Support of
      Motion to Dismiss the Third Amended Petition (dated September 23, 2014);

2.    Affirmation of Bryan D. Leinbach in Opposition to the Sagi Trust's Motion to
      Dismiss the Third Amended Petition (dated October 17, 2014);

3.    Memorandum of Law in Opposition to the Sagi Trust's Motion to Dismiss the
      Third Amended Petition (dated October 17, 2014); and

4.    Reply Memorandum of Law in Support of Motion to Dismiss the Third Amended
      Petition (dated November 6, 2014).

Dated:    New York, New York
          March 11, 2015

                                              Steven Riker, Esq.
                                              *Guardian Ad Litem*
                                              Law Office of Steven Riker
                                              110 East 59th Street, 23rd Floor
                                              New York, New York 10022
                                              Tel No. (212) 661-6410

TO:    John Dellaportas, Esq.
       Morgan Lewis & Bockius, LLP
       Attorneys for Asaaf Sternberg
       101 Park Avenue
       New York, New York 10178

Yoav M. Griver, Esq.
Zeichner Ellman & Krause, LLP
Attorneys for Orly Genger
1211 Avenue of the Americas
New York, New York 10036

Robert Meister, Esq.
Pedowitz & Meister, LLP
Attorneys for Dalia Genger
570 Lexington Avenue, 18th Floor
New York, New York 10022

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    File No. 2008-0017
Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by                                                    **AFFIRMATION OF**
                                                                            **SERVICE**

       **ARIE GENGER**, as Grantor.

------------------------------------------------------------------------X

    I, STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following subject to the penalties of perjury

    On March 11, 2015, I served the within **ADMISSION OF SERVICE OF THE SAGI**

**TRUST MOTION TO DISMISS** by depositing a true copy thereof enclosed in a post-paid

wrapper, in an official depository under the exclusive care and custody of the U.S. Postal

Service within New York State, addressed to the following person(s) at the address(es) set forth

below:

TO:    John Dellaportas, Esq.              Yoav M. Griver, Esq.
        Morgan Lewis & Bockius, LLP      Zeichner Ellman & Krause, LLP
        Attorneys for Asaaf Sternberg       Attorneys for Orly Genger
        101 Park Avenue                 1211 Avenue of the Americas
        New York, New York 10178        New York, New York 10036

        Robert Meister, Esq.
        Pedowitz & Meister, LLP
        Attorneys for Dalia Genger
        570 Lexington Avenue, 18th Floor
        New York, New York 10022

                                                        STEVEN RIKER, ESQ.

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    FILE NO. 2008-0017

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

    **ARIE GENGER**, as Grantor.

## ADMISSION OF SERVICE
## OF THE SAGI TRUST MOTION TO DISMISS

**STEVEN RIKER, ESQ.**
Guardian ad Litem
Law Office of Steven Riker
110 East 59th Street, 23rd Floor
New York, New York 10022
Tel No.:  (212) 661-6410

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAR 1 2 2015

FILED

Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by


        **ARIE GENGER**, as Grantor.
------------------------------------------------------------------------X

File No. 2008-0017


**SUPPLEMENTAL
NOTICE OF
APPEARANCE**

    PLEASE TAKE NOTICE, that **STEVEN RIKER, ESQ.** hereby appears in the above-

entitled proceeding as Guardian ad Litem of unborn children, and that all notices given or

required to be given, and all papers served or required to be served herein, should be served upon

the undersigned at the office address stated below.

Dated:  New York, New York
        March 11, 2015

                                Yours, etc.,


                                Steven Riker, Esq.
                                Guardian Ad Litem
                                Law Office of Steven Riker
                                110 East 59th Street, 23rd Floor
                                New York, New York 10022
                                Tel No.:  (212) 661-6410

TO:     Robert Meister, Esq.
        Pedowitz & Meister, LLP
        Attorneys for Dalia Genger
        570 Lexington Avenue, 18th Floor
        New York, New York 10022

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X   File No. 2008-0017

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by                                   **AFFIRMATION OF**
                                                            **SERVICE**

        **ARIE GENGER**, as Grantor.

-----------------------------------------------------------------------X

I, STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following subject to the penalties of perjury

On March 11, 2015, I served the within Supplemental Notice of Appearance by

depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the

exclusive care  and custody of the U.S. Postal Service within New York State, addressed to the

following person(s) at the address(es) set forth below:

TO:    John Dellaportas, Esq.
       Morgan Lewis & Bockius, LLP
       Attorneys for Asaaf Sternberg
       101 Park Avenue
       New York, New York 10178

       Yoav M. Griver, Esq.
       Zeichner Ellman & Krause, LLP
       Attorneys for Orly Genger
       1211 Avenue of the Americas
       New York, New York 10036

       Robert Meister, Esq.
       Pedowitz & Meister, LLP
       Attorneys for Dalia Genger
       570 Lexington Avenue, 18th Floor
       New York, New York 10022

                                                  _____
                                               Steven Riker, Esq.

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                              FILE NO. 2008-0017

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

**ARIE GENGER**, as Grantor.

## SUPPLEMENTAL NOTICE OF APPEARANCE

**STEVEN RIKER, ESQ.**
Guardian ad Litem
Law Office of Steven Riker
110 East 59th Street, 23rd Floor
New York, New York 10022
Tel No.:  (212) 661-6410

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAR 1 2 2015

FILED

Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------X    File No. 0017/2008

In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA
GENGER, as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711(11)

**AFFIRMATION OF
STEVEN RIKER, ESQ.
IN RESPONSE TO
DALIA GENGER'S
MOTION TO DISMISS**

--------------------------------------------------------------------X

STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the State

of New York, hereby affirms the following to be true subject to the penalties of perjury:

1.      I was appointed by an Order of the Hon. Nora S. Anderson to serve as the

Guardian ad Litem of unborn children of Petitioner Orly Genger ("Orly") in this miscellaneous

proceeding.

2.      Since such time, I have thoroughly acquainted myself with the rights and interests

of my wards in the above-entitled proceeding and I have studied and checked all the documents

and papers on file pertaining thereto.

3.      I submit this affirmation in response to the motion of Dalia Genger, Trustee of the

Orly Genger 1993 Trust, who seeks to dismiss Orly's Third Amended Petition (the "TAP").

## BACKGROUND

4.      Orly is the primary beneficiary of an irrevocable inter vivos trust established by

her father, Arie Genger ("Arie"), on or about December 13, 1993 (the "Orly Trust").  Orly seeks

the removal of her mother, Dalia Genger ("Dalia"), as trustee of said Trust.

5.      The Orly Trust provides for discretionary principal distributions to Orly for life,

with remainder to her descendants (i.e., my wards), or if she has no descendants, to a trust Arie

established for the benefit of Orly's brother, Sagi Genger (the "Sagi Trust").

6.      Dalia initially moved to dismiss the TAP for failure to state a ground for relief (CPLR 3211(a)(7)) and for failure to join all necessary parties (CPLR 3211(a)(10). Specifically, Dalia alleged that Orly failed to join the Sagi Trust as a contingent remainder beneficiary and serve the Sagi Trustee with the TAP.

A.    **July 28, 2014 Decision**

7.      By Decision dated July 28, 2014, this Court held that Orly failed to properly serve the TAP upon the Sagi Trust, which is a necessary party to this proceeding. However, the Court further held that dismissal of the pleading was not required; rather, Orly was directed to obtain and serve supplemental process on the Sagi Trust in connection with the TAP. The balance of Dalia's motion to dismiss was held in abeyance pending the completion of jurisdiction.

B.    **Service of Supplemental Citation**

8.      Following Orly's service of a Supplemental Citation upon the Sagi Trustee by registered mail, return receipt requested (see Leinbach Affirmation dated October 17, 2014 at ¶ 3), the Sagi Trustee brought a motion to dismiss the TAP based upon a lack of personal jurisdiction. Specifically, the Sagi Trustee alleges that he is a citizen and resident of Israel, and thus, may only be served with process through the Hague Convention (20 U.S.T. 361, T.I.A.S. No 6638 (1969)). He contends that Orly's service of the Supplemental Citation by registered mail does not comply with the service provisions of the Hague Convention. The Sagi Trustee's motion to dismiss is sub judice and, at the request of this Court, your affiant has submitted, simultaneously herewith, a response to same.

9.      Likewise, at the request of this Court, your affiant currently submits a response to Dalia's pending motion to dismiss the TAP.

2

## DISCUSSION

10.    Pursuant to the TAP and the opposition papers submitted by Orly, Dalia has

purportedly colluded with Sagi to loot the Orly Trust of its interests in two closely-held Genger

family businesses – TPR Investment Associates, Inc. ("TPR") and Trans-Resources, Inc ("TRI").

Dalia has purportedly engaged in such action as a form of retribution to her daughter, Orly, who

took the side of her father, Arie, during his divorce from Dalia (while Sagi took the side of his

mother, Dalia).  As such, it is alleged that Dalia, in concert with Sagi, has breached her fiduciary

duties as trustee of the Orly Trust.

11.    By way of example and not limitation, it is alleged that Dalia failed to inform, and

affirmatively concealed from, Orly, an alleged "sham" foreclosure sale by Sagi of the Orly

Trust's stock interests in TPR. It is also alleged that Dalia attempted to dissipate the Orly Trust's

TRI Shares by commencing a wasteful action that seeks declaratory relief with respect to the

beneficial ownership of the Orly Trust's TRI Shares in the Delaware Chancery Court,

notwithstanding that said court already ruled against the Orly Trust in holding that TPR is the

beneficial owner of the Orly Trust's TRI Shares.

12.    Additionally, it is alleged that Dalia entered into certain Secret Agreements (as

defined in the TAP) on behalf of the Orly Trust, without notice to Orly, and as such, has

endangered the trust's assets from being foreclosed upon.

13.    In support of her motion to dismiss, Dalia contends that the TAP fails to state a

claim for a myriad of reasons, most of which appear to be of a factual nature.

14.    For example, Dalia contends that she was never a trustee of the Sagi Trust, and

that she was not a party to the Sagi Trust's sale of TRI stock. Similarly, she contends that neither

3

she nor the Orly Trust is a shareholder of TPR. Consequently, she alleges that she had nothing to do with the alleged "sham" foreclosure sale by Sagi of the Orly Trust's stock interests in TPR.

15.     Dalia also asserts that she has taken actions that were in the best interest of the Orly Trust. For example, she alleges that she sued Arie for breach of their divorce settlement to ensure the transfer of TRI shares to the Orly Trust and to seek damages for the Orly Trust. She also claims that she settled claims with the Trump Group in order to benefit the Orly Trust.

16.     It is axiomatic that on a motion to dismiss pursuant to CPLR 3211, the Surrogate must afford the petition a liberal construction and "determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 (1994)). "Whether a [petitioner] can ultimately establish [his or her] allegations is not part of the calculus" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19) (2005)).

17.     In light of this standard, it is respectively submitted that Dalia has not met her burden of proof on this motion. The facts, as alleged by Orly, if true, would support a claim of, inter alia, breach of fiduciary duty. Nonetheless, your affiant respectfully submits that the issues on the motion have been sufficiently briefed by Orly (with whom my wards' share many of the same interests), and that my wards' interests are adequately protected thereby. Thus, I will respectfully rely upon the opposition papers and legal arguments advanced by Orly in this regard.

## CONCLUSION

18.     Accordingly, your affiant believes Orly has sufficiently pled facts in the TAP to establish a *prima facie* case for the removal of Dalia as trustee of the Orly Trust, and respectfully submits that the motion to dismiss the TAP should be denied.

4

Dated: New York, New York
      March 11, 2015

STEVEN RIKER

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------X    File No. 2008-0017

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

      **ARIE GENGER**, as Grantor.

                                 **AFFIRMATION OF
SERVICE**

-------------------------------------------------------------------------X

      I, STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following subject to the penalties of perjury

      On March 11, 2015, I served the within **AFFIRMATION OF STEVEN RIKER, ESQ.**

**IN RESPONSE TO DALIA GENGER'S MOTION TO DISMISS** by depositing a true copy

thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and

custody of the U.S. Postal Service within New York State, addressed to the following person(s)

at the address(es) set forth below:

TO:    John Dellaportas, Esq.              Yoav M. Griver, Esq.
        Morgan Lewis & Bockius, LLP      Zeichner Ellman & Krause, LLP
        Attorneys for Asaaf Sternberg       Attorneys for Orly Genger
        101 Park Avenue                  1211 Avenue of the Americas
        New York, New York 10178         New York, New York 10036

        Robert Meister, Esq.
        Pedowitz & Meister, LLP
        Attorneys for Dalia Genger
        570 Lexington Avenue, 18th Floor
        New York, New York 10022

                                             _____
                                           STEVEN RIKER

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FILE NO. 2000-0017

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

      **ARIE GENGER**, as Grantor.

# AFFIRMATION OF STEVEN RIKER, ESQ.
# IN RESPONSE TO
# DALIA GENGER'S MOTION TO DISMISS

**STEVEN RIKER, ESQ.**
Guardian ad Litem
Law Office of Steven Riker
110 East 59th Street, 23rd Floor
New York, New York 10022
Tel No.: (212) 661-6410

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAR 1 2 2015

FILED

Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X    File No. 0017/2008

In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA
GENGER, as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711(11)

**ADMISSION OF
SERVICE OF
THE DALIA GENGER
MOTION TO DISMISS**

-----------------------------------------------------------------------X

The undersigned, having been appointed by an Order of the Hon. Nora S. Anderson to

serve as the Guardian ad Litem of unborn children of Petitioner Orly Genger, hereby

acknowledges service and receipt of the following motion papers in the above-captioned matter.

1.    Notice of Motion and Affirmation of Robert Meister in Support of Motion to
      Dismiss the Third Amended Petition (dated November 19, 2012);

2.    Affirmation of Ralph R. Hochberg in Opposition to Motion to Dismiss the Third
      Amended Petition (dated February 26, 2013);

3.    Memorandum of Law in Opposition to Motion to Dismiss the Third Amended
      Petition (dated February 26, 2013); and

4.    Supplemental Affirmation of Robert Meister in Support of Motion to Dismiss the
      Third Amended Petition (dated June 19, 2013).

Dated: New York, New York
       March 11, 2015

Steven Riker, Esq.
*Guardian Ad Litem*
Law Office of Steven Riker
110 East 59th Street, 23rd Floor
New York, New York 10022
Tel No. (212) 661-6410

TO:    John Dellaportas, Esq.
       Morgan Lewis & Bockius, LLP
       Attorneys for Asaaf Sternberg
       101 Park Avenue
       New York, New York 10178

Yoav M. Griver, Esq.
Zeichner Ellman & Krause, LLP
Attorneys for Orly Genger
1211 Avenue of the Americas
New York, New York 10036

Robert Meister, Esq.
Pedowitz & Meister, LLP
Attorneys for Dalia Genger
570 Lexington Avenue, 18th Floor
New York, New York 10022

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    File No. 2008-0017
Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by                                                     **AFFIRMATION OF**
                                                                             **SERVICE**
            **ARIE GENGER**, as Grantor.

------------------------------------------------------------------------X

    I, STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following subject to the penalties of perjury

    On March 11, 2015, I served the within **ADMISSION OF SERVICE OF THE DALIA**

**GENGER MOTION TO DISMISS** by depositing a true copy thereof enclosed in a post-paid

wrapper, in an official depository under the exclusive care  and custody of the U.S. Postal

Service within New York State, addressed to the following person(s) at the address(es) set forth

below:

TO:    John Dellaportas, Esq.         Yoav M. Griver, Esq.
       Morgan Lewis & Bockius, LLP    Zeichner Ellman & Krause, LLP
       Attorneys for Asaaf Sternberg    Attorneys for Orly Genger
       101 Park Avenue            1211 Avenue of the Americas
       New York, New York 10178      New York, New York 10036

       Robert Meister, Esq.
       Pedowitz & Meister, LLP
       Attorneys for Dalia Genger
       570 Lexington Avenue, 18th Floor
       New York, New York 10022

 

_____

STEVEN RIKER, ESQ.

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                          FILE NO. 2008-0017

Petition for a Decree Removing Dalia Genger as
Trustee of the Trust under Indenture of Trust dated
December 13, 1993 made by

    **ARIE GENGER**, as Grantor.

## ADMISSION OF SERVICE
## OF THE DALIA GENGER MOTION TO DISMISS

**STEVEN RIKER, ESQ.**
Guardian ad Litem
Law Office of Steven Riker
110 East 59th Street, 23rd Floor
New York, New York 10022
Tel No.:  (212) 661-6410

SURROGATE'S COURT : NEW YORK COUNTY
----------------------------------------X
In the Matter of the Application of
Orly Genger to Remove Dalia Genger
as Trustee of the The Orly
Genger 1993 Trust Established on
December 13, 1993, by

ARIE GENGER,

                    Grantor.
----------------------------------------X

New York County Surrogate's Court
MISCELLANEOUS DEPT.

APR  9 2015

FILED
Clerk_____

File No. 2008-0017/B

A N D E R S O N,  S .

In this proceeding, Orly Genger, the primary beneficiary

of an irrevocable inter vivos trust established by her father,

Arie Genger, on December 13, 1993, seeks removal of her mother,

Dalia Genger, as trustee. The contingent remainder beneficiary,

a trust Arie established for the benefit of Orly's brother,

Sagi Genger, moves to dismiss for lack of personal jurisdiction

(CPLR 3211[a][8]).

In a July 2014 decision, this court held that the

contingent remainder beneficiary was a necessary party and that

Orly had failed to serve properly the third amended petition

upon such beneficiary (see Matter of Genger, NYLJ, July 28,

2014, at 18, col 3 [Sur Ct, New York County 2014]).

Thereafter, Orly obtained a supplemental citation and served

the contingent remainder beneficiary by registered mail, return

receipt requested (SCPA § 307[2]). The contingent remainder

beneficiary then made the instant motion, arguing that, since

he[1] is a citizen and resident of Israel, service of process had

---

[1]    Service was made upon the trustee of the trust.

to be made in accordance with the Hague Convention (Hague
Convention on Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, 20 UST 361, TIAS No.
6638 [1965]), which does not allow for service of process by
registered mail in the circumstances here.   Orly counters that
the Hague Convention does allow for such service.

In view of the First Department's decision in *Sardanis v
Sumitomo Corp.* (279 AD2d 225 [1ˢᵗ Dept 2001]), ruling that
Article 10(a) of the Hague Convention does not permit service
of process by mail, this court must grant the motion to
dismiss, notwithstanding contrary authority in the Appellate
Divisions, Second, Third and Fourth Departments (*see e.g. N.Y.
State Thruway Auth. v French*, 94 AD3d 17 [3d Dept 2012]);
*Fernandez v Univan Leasing*, 15 AD3d 343 [2d Dept 2005]; *Rissew
v Yamaha Motor Co., Ltd.*, 129 AD2d 94 [4ᵗʰ Dept 1987]).   In
*Sardanis* (279 AD2d 225, *supra*)*,* the First Department held that
service of process by mail is improper under Article 10(a) of
the Hague Convention because such provision does not apply to
the "service" of documents for jurisdictional purposes. This
court recently recognized *Sardanis* as controlling authority and
required service of process under the terms of the Hague
Convention (*see Matter of Angelides*, NYLJ, March 27, 2015, at
23, col 6 [Sur Ct, New York County 2015]).

Orly concedes the applicability of Article 10(a), but
contends that *Sardanis* was "effectively abrogated" by a

2

subsequent decision of the First Department, *Gouiran Family
Trust v Gouiran* (40 AD3d 400 [1ˢᵗ Dept 2007]). That decision,
however, is inapposite. Indeed, the *Gouiran* court did not even
refer to Article 10(a) of the Hague Convention, much less
specifically examine that provision to determine whether it
permits service of process by mail.  Orly's argument is further
refuted by the absence of a single case supporting Orly's
"abrogation" theory and the many cases ignoring *Gouiran* and
recognizing the split of authority between the First Department
and the other departments based on *Sardanis* (*see e.g. New York
State Thruway Auth.*, 94 AD3d 17, *supra; M.B.S. Moda,* Inc. v
Fuzzi S.P.A., 38 Misc 3d 1208[A] [Sup Ct, New York County
2013]; Sbarro*, Inc. v Tukdam, Ltd.*, 32 Misc 3d 217 [Sup Ct,
Suffolk County 2011]); *Axios Prod., Inc. v Time Mach. Software,
Inc.*, 2010 NY Slip Op 32772[U] [Sup Ct, Suffolk County 2010];
*see also* George Bundy Smith and Thomas J. Hall, *Divergent Views
of Service of Process under the Hague Convention*, NYLJ, June
15, 2012, at 3, col 1).

Based upon the foregoing, the motion of the contingent
remainder beneficiary to dismiss the petition as against it for
lack of personal jurisdiction is granted without prejudice to
Orly's initiating proper service of process upon such
beneficiary under the Hague Convention within 30 days of the

3

date of this decision.

This decision constitutes the order of the court.


Dated: April 9, 2015

_____
S U R R O G A T E

4

SURROGATE'S COURT : NEW YORK COUNTY
----------------------------------------X
In the Matter of the Application of
Orly Genger to Remove Dalia Genger
as Trustee of the The Orly
Genger 1993 Trust Established on                    File No. 2008-17
December 13, 1993, by

                    ARIE GENGER,

                         Grantor.
----------------------------------------X
A N D E R S O N,  S .

New York County Surrogate's Court
MISCELLANEOUS DEPT.

APR 2 2 2015

FILED

Clerk

     The decision in this matter, dated April 9, 2015, was

issued with an incorrect file number.  That decision is

therefore vacated and replaced with the following decision,

which is the same except for the corrected file number.

     In this proceeding, Orly Genger, the primary beneficiary

of an irrevocable inter vivos trust established by her father,

Arie Genger, on December 13, 1993, seeks removal of her mother,

Dalia Genger, as trustee. The contingent remainder beneficiary,

a trust Arie established for the benefit of Orly's brother,

Sagi Genger, moves to dismiss for lack of personal jurisdiction

(CPLR 3211[a][8]).

     In a July 2014 decision, this court held that the

contingent remainder beneficiary was a necessary party and that

Orly had failed to serve properly the third amended petition

upon such beneficiary (*see Matter of Genger*, NYLJ, July 28,

2014, at 18, col 3 [Sur Ct, New York County 2014]).

Thereafter, Orly obtained a supplemental citation and served

the contingent remainder beneficiary by registered mail, return

receipt requested (SCPA § 307[2]).  The contingent remainder

beneficiary then made the instant motion, arguing that, since he[1] is a citizen and resident of Israel, service of process had to be made in accordance with the Hague Convention (Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 361, TIAS No. 6638 [1965]), which does not allow for service of process by registered mail in the circumstances here.  Orly counters that the Hague Convention does allow for such service.

In view of the First Department's decision in *Sardanis v Sumitomo Corp.* (279 AD2d 225 [1st Dept 2001]), ruling that Article 10(a) of the Hague Convention does not permit service of process by mail, this court must grant the motion to dismiss, notwithstanding contrary authority in the Appellate Divisions, Second, Third and Fourth Departments (*see e.g. N.Y. State Thruway Auth. v French*, 94 AD3d 17 [3d Dept 2012]); *Fernandez v Univan Leasing*, 15 AD3d 343 [2d Dept 2005]; *Rissew v Yamaha Motor Co., Ltd.*, 129 AD2d 94 [4th Dept 1987]). In *Sardanis* (279 AD2d 225, *supra*), the First Department held that service of process by mail is improper under Article 10(a) of the Hague Convention because such provision does not apply to the "service" of documents for jurisdictional purposes. This court recently recognized *Sardanis* as controlling authority and required service of process under the terms of the Hague

---

[1]     Service was made upon the trustee of the trust.

2

Convention (*see Matter of Angelides*, NYLJ, March 27, 2015, at 23, col 6 [Sur Ct, New York County 2015]).

Orly concedes the applicability of Article 10(a), but contends that *Sardanis* was "effectively abrogated" by a subsequent decision of the First Department, *Gouiran Family Trust v Gouiran* (40 AD3d 400 [1st Dept 2007]). That decision, however, is inapposite. Indeed, the *Gouiran* court did not even refer to Article 10(a) of the Hague Convention, much less specifically examine that provision to determine whether it permits service of process by mail. Orly's argument is further refuted by the absence of a single case supporting Orly's "abrogation" theory and the many cases ignoring *Gouiran* and recognizing the split of authority between the First Department and the other departments based on *Sardanis* (*see e.g. New York State Thruway Auth.*, 94 AD3d 17, *supra*; *M.B.S. Moda,* Inc. v Fuzzi S.P.A.*, 38 Misc 3d 1208[A] [Sup Ct, New York County 2013]; Sbarro*, Inc. v Tukdam, Ltd.*, 32 Misc 3d 217 [Sup Ct, Suffolk County 2011]); *Axios Prod., Inc. v Time Mach. Software, Inc.*, 2010 NY Slip Op 32772[U] [Sup Ct, Suffolk County 2010]; *see also* George Bundy Smith and Thomas J. Hall, *Divergent Views of Service of Process under the Hague Convention*, NYLJ, June 15, 2012, at 3, col 1).

Based upon the foregoing, the motion of the contingent remainder beneficiary to dismiss the petition as against it for

3

lack of personal jurisdiction is granted without prejudice to

Orly's initiating proper service of process upon such

beneficiary under the Hague Convention within 30 days of the

date of this decision.

This decision constitutes the order of the court.


Dated: April 22, 2015

_____
S U R R O G A T E

SUPPLEMENTAL CITATION

SURROGATE'S COURT, NEW YORK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

File No. 2008-0017

**TO:   Assaf Sternberg, as Trustee of the Sagi Genger 1993 Trust**

A petition having been duly filed by Orly Genger, domiciled at 780 Greenwich Street, Apt. 4P, New York, New York 10014.

**YOU ARE HEREBY CITED TO SHOW CAUSE** before the Surrogate's Court, New York County, at 31 Chambers Street, New York, New York 10007, Room 509 on ⎯JULY 8⎯, 2015, at **10:00** o'clock in the forenoon of that day, why a decree should not be issued (i) removing Dalia Genger as trustee of the Orly Genger 1993 Trust created under agreement dated December 13, 1993; (ii) suspending Dalia Genger as trustee pending determination of her fitness to serve; (iii) appointing Joel Isaacson as successor trustee of the Orly Genger 1993 Trust; and (iv) awarding to Petitioner such other and further relief as the Court deems equitable and proper.

*IN TESTIMONY WHEREOF*, we have cause the seal of the Surrogate's Court of our said County of New York to be hereunto affixed.

Dated, Attested and Sealed, ⎯May 6, 2015⎯
(L.S.)

HON. _____NORA S. ANDERSON_____
Surrogate, New York County

_____Diana Sanabria_____
Chief Clerk

Attorneys for Petitioner:

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, NY   10036
(212) 223-0400
   Attn:  Yoav M. Griver, Esq.
          Bryan D. Leinbach, Esq.

**This citation is served upon you as required by law.   You are not obliged to appear in person.   If you fail to appear, it will be assumed that you consent to the proceedings, unless you file written verified objections thereto.   You have a right to have an attorney-at-law appear for you.**

Proof of Service shall be filed with the Clerk of the Court at least two (2) days before the return date (207.7c).

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of Orly
Genger to Remove Dalia Genger
as Trustee of The Orly Genger 1993 Trust
Established on December 13, 1993, by

ARIE GENGER,

Grantor

File No.: 0017/2008

**NOTICE OF APPEAL**

> New York County Surrogate's Court
> MISCELLANEOUS DEPT.
>
> MAY 1 2 2015
>
> **FILED**
>
> Clerk_____

TAKE NOTICE, that petitioner Orly Genger hereby appeals to the Appellate Division of the Supreme Court, First Judicial Department, from each and every part of the attached Decision and Order of this Court entered on April 22, 2015 that granted respondent the Sagi Genger 1993 Trust's motion to dismiss the supplemental citation served upon it.

Dated:   New York, New York
         May 8, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Yoav M. Griver
    Bryan D. Leinbach
    1211 Avenue of the Americas
    New York, New York 10036
    (212) 223-0400

*Attorneys for petitioner Orly Genger*

TO:   MORGAN, LEWIS & BOCKIUS LLP
      101 Park Avenue
      New York, New York 10178

*Attorneys for the Sagi Genger 1993 Trust*