> "**In case, at any time hereinafter, any further action is
> necessary or desirable to carry out the purposes of this Letter
> Agreement, each of the parties hereto shall take or cause to be
> taken all necessary action,** including, without limitation, the
> execution and delivery of such further instruments and documents
> which may be reasonably requested by any party for such purpose
> or otherwise **to complete or perfect the transactions
> contemplated hereby.**"

> This Letter Agreement shall be governed by the laws of the State
> of New York without regard to conflicts of law principles.

(2004 TPR Transfer Agreement, Exhibit B) (emphasis added)

### E.    The 2004 Voting Trust Agreements (Exhibit C hereto)

51.    In accordance with the terms of the Stipulation of Settlement (Exhibit A) and the

2004 TPR Transfer Agreement (Exhibit B), Arie and the Sagi and Orly Trusts, respectively,

entered into identical 2004 Voting Trust Letter Agreements in favor of Arie (Exhibit C) which

provide as follows:

> "In connection with the transfer to the [Sagi and Orly Trusts] of
> 1,102.80 shares [each] of common stock (the "Shares") of Trans-
> Resources, Inc. (TRI) **pursuant to the terms and conditions of
> the Stipulation of Settlement of even date herewith,** the [Sagi
> and Orly] trust is [each] granting to Arie Genger an irrevocable
> proxy ("the Proxy") for the shares, a copy of which is annexed
> hereto.

(Exhibit C)(emphasis added).

### F.    The 2004 Putative Irrevocable Proxies Executed By The Sagi and Orly Trusts (Exhibit D, hereto)

52.    In accordance with the 2004 TPR Transfer Agreement, the Stipulation of

Settlement, and the 2004 Voting Trust Agreement, the Sagi and Orly Trusts executed two

identical Putative Irrevocable Proxies, each of which states, in relevant part, that:

> "[The Sagi Trust and Orly Trust, each respectively], ("the Trust")
> being the current record and beneficial owner of 1,102.80 shares of
> common stock of [TRI] **does hereby constitute and appoint Arie**

14

**Genger, Chairman of the Board, Chief Executive Officer, and owner of approximately fourteen percent (14%) of the shares of common stock of TRI to vote as its proxy, all shares of common stock of TRI which are now or hereafter owned by the Trust,** at any and all meetings of the stockholders of TRI, regular or special, or by consent in lieu of meeting or any adjournments thereof in the same manner and to the same extent that the Trust might were the Trust present at said meeting (or executing such consent), upon any issue or proposal which may be brought before such meeting or by such consent.

**"This Irrevocable Proxy shall he deemed coupled with an interest and be irrevocable from the date hereof, and shall continue for the duration of Arie Genger's life."**

(Exhibit D)(emphasis added).

53.     The 2004 Voting Trust Agreement further provides that **in the event that the Putative Irrevocable Proxies were ever declared invalid,** the Orly and Sagi Trusts would be obligated to enter into a Back-up Voting Trust Agreement (Exhibit E) to assure that Arie would maintain voting control over a majority of TRI shares for the duration of his life. This part of the 2004 Voting Trust Agreement, executed by the Sagi Trust and the Orly Trust, provides:

> **"In the event that for any reason the Proxy is declared invalid and is no longer in effect, the Trust agrees, as promptly as practicable, to enter into a Voting Trust Agreement (the "Voting Agreement") with Arie Genger as the voting trustee, which shall be substantially in the form annexed hereto. During the time the Proxy is not in effect and prior to the time the Voting Agreement is entered into, the Sagi Trust agrees to vote the shares as directed in writing by Arie Genger."**

(2004 Voting Trust Agreement, Exhibit C ) (emphasis added).

**G.     Back-Up Voting Trust Agreement –(Exhibit E hereto)**

54.     The Backup Voting Trust Agreement, which springs into effect upon the Putative Irrevocable Proxies being voided, provides:

15


> **"The Trust Securities [the Sagi and Orly TRI Shares subject to the Voting Trust] shall be held by the Trustee [Arie Genger] for the purposes of and in accordance with this Agreement <u>and none of the Trust Securities shall be sold or otherwise disposed of by the Trustee except as herein expressly provided or in accordance with a final order of any Court or administrative agency with jurisdiction thereover."</u>**

* * *

> **"This Agreement shall continue in effect for the duration of Arie Genger's Life"**

Exhibit E. (emphasis added)

55.    In order to ensure that he maintained absolute control of the TRI shares for the duration of his life, Arie never delivered physical copies of TPR's TRI shares to the Orly or Sagi Trusts.

### H.    The Intent of the Parties

56.    The written 2004 Transaction Documents and the Stipulation of Settlement reflect the stated intention of all the parties to these collective documents, to wit, that in order to resolve the contested Genger Divorce Action, Arie agreed as part of the distribution of marital assets to transfer his 51% interest in the family holding company, TPR, to Dalia, in exchange for Dalia agreeing that TPR would concurrently divest itself of its 52.85% interest in the common stock of TRI by distributing TPR's 52.85% majority interest in TRI to Arie (14%), the Sagi Trust (19.425%), and the Orly Trust (19.425%) each, **on the express further condition that Arie maintain voting rights for the Sagi Trust and Orly Trust TRI shares for the duration of his life.**

57.    Arie, Dalia, Sagi and Orly each reasonably believed that the 2004 Transfers provided for in the Stipulation of Settlement were valid and enforceable.

16

58.     Arie, Dalia, Sagi and Orly each reasonably believed that the Putative Irrevocable

Proxies and Voting Trust Agreements were valid and assured that Arie would be able to maintain

58.85% voting control for the duration of his life.

59.     Accordingly, the concurrently executed integrated 2004 Transfer Documents were

intended to implement the terms of the Stipulation of Settlement which provided expressly that

Arie was to retain his 52.85% voting control over TRI and concomitantly continue to control the

management and Board of TRI during his lifetime.

60.     It was also the parties' stated intention, and all parties reasonably believed, that

the terms of the court-ordered Stipulation of Settlement with Dalia would not violate the terms or

intent of the 2001 TRI Stockholders Agreement because Arie would still control what had been

TPR's voting majority of TRI shares.

61.     The Genger Divorce Action was not concealed from TRI, the Trump Group, or

the Trump Parties at any time.

62.     The 2004 transfers of TRI shares to Arie, the Sagi Trust and the Orly Trust were

reflected in the books and records of TRI.

63.     Prior to 2008, Jules Trump, and Mark Hirsch, each individually and on behalf of

the Trump Group between 2004 and 2008 had access to the books and records of TRI.

64.     Between 2004 and 2008, as a Director of TRI, Jules Trump and Mark Hirsch,

each had a fiduciary duty and legal duty of reasonable care to the record and beneficial owners,

including TPR and TRI, to know the identity of all TRI shareholders of record as set forth in the

books and records of TRI- a close corporation.

17

65.    As a Directors of TRI, Jules Trump, and Mark Hirsch, each individually and on

behalf of TRI, had a fiduciary and legal duty of reasonable care to TPR and Arie to read all

corporate Board minutes and other documents presented to the Directors and/or shareholders of

TRI, in their entirety, prior to signing such documents.

66.    Prior to 2008, the books and records of TRI show that:

        (i) Arie was record owner of 794.40 shares of TRI, representing 13.9946% of the

common stock of TRI;

        (ii) the Sagi Trust was the record owner of 1102.80 TRI shares, representing

19.42766% of the common stock of TRI; and

        (iii) the Orly Trust was the record owner of 1102.80 TRI shares, representing

19.42766% of the common stock of TRI.

67.    Prior to 2008, the 2004 Transfers and the record ownership of TRI shares was

known by:

        (i) the officers and directors of TRI, in addition to Arie

        (ii) TRI's legal counsel; and

        (iii) TRI's Certified Public Accountant.

68.    Jules Trump, and Mark Hirsch, each individually and on behalf of the Trump

Group executed corporate TRI documents as Director and/or on behalf of a shareholder of TRI

which indicated that Arie, the Orly Trust and the Sagi Trust were the record owners of TRI

shares.

18

69.     The terms of the Stipulation of Settlement relating to the distribution of TPR and
TRI shares as marital assets in connection with the Genger Divorce Action were not in any way
or at any time concealed from TRI, the Trump Group, or the Trump Parties.

70.     Prior to 2008, the Trump Group, through Jules Trump, who testified in the Genger
Divorce Action, and otherwise knew, and was aware that the Genger Divorce Action could
involve in some way the equitable distribution of TPR shares owned by Arie as part of the
divorce action.

71.     Prior to 2008, the Trump Group, through Jules Trump, who testified in the Genger
Divorce Action, knew, and was aware that the Genger Divorce Action involved in some way the
value of TPR's ownership of TRI shares.

72.     Prior to 2008, the Trump Group, through Jules Trump, who testified in the Genger
Divorce Action, knew, and was aware that the Genger Divorce Action involved in some way
Arie's management and control over TRI, the company that he had founded and managed since
1985.

73.     Prior to 2008, Jules Trump knew that ownership of TPR, as a marital asset which
owned 52.85% of TRI shares, was a major asset and was the subject of a claim by Dalia for
equitable distribution in the Genger Divorce Action.

74.     Prior to 2008, the Trump Group, through Jules Trump, who testified in the Genger
Divorce Action, knew, and was aware that the Genger Divorce Action would involve in some
way the equitable distribution of TPR assets, including Arie's 51% majority ownership of TPR.

75.     Prior to 2008, the Trump Group, through Jules Trump who testified in the Genger
Divorce Action, and otherwise knew, and was aware that the Genger Divorce Action could

involve D&K Limited Partnership, which was identified in the 2001 TRI Stockholders
Agreement as an owner of 49% of TPR (the majority Shareholder of TRI) and further disclosed
that in turn this 49% minority ownership of TPR by D&K was owned by Arie's wife Dalia (4%)
the Sagi Trust (48%) and the Orly Trust (48%), and that these Trust interests could be effected
by the equitable distribution of TPR assets as part of the Genger Divorce Action.

76.     The Trump Group knew that the 2001 TRI Stockholders Agreement did not
contain an express provision setting forth the rights and obligations of TPR, Arie or the Trump
Group in the event of a contested divorce involving Arie's ownership of TPR shares as marital
property, including TPR's ownership of TRI shares under New York's equitable distribution
laws or otherwise.

77.     Prior to 2008, Arie had reason to believe that The Trump Group, through Jules
Trump, and otherwise, had notice of the 2004 Transfers.

78.     Prior to 2008, Arie had reason to believe that The Trump Group had notice of the
2004 Transfers which were reflected in TRI corporate documents.

79.     Prior to 2008, the Trump Group and Jules Trump, in particular, had knowledge of
facts in 2002-2004 including, but not limited, to the fact that Arie was involved in a bitter
contested divorce, and that the issue of Arie's ownership interests in TRI, through TPR or
otherwise, was an issue raised in the Genger Divorce Action.

80.     Between 2004 and 2008, Directors of TRI, its legal counsel, Secretary, as well as
its Controller, knew of the 2004 transfers.

81.     Between 2004 and 2008, TRI, under Arie's management, reported the new company ownership resulting from the 2004 transfers to its lead bank, the IRS, and TRI's insurance company.

82.     Between October 2004 and August of 2008 nothing prevented the Trump Group, Jules Trump, TRI or its officers or directors, or any of them, from making any inquiry whatsoever of Arie, Orly, TPR, TRI, TRI's general counsel, Dalia, Sagi, the Sagi Trust, the Orly Trust, or D&K, concerning the effect, if any, that the Genger Divorce Action, or any judgment or resolution of the Genger Divorce Action had, would or could have, on (i) the ownership of TPR, (ii) Arie's ownership of a majority interest of TPR, (iii) TPR's ownership of TRI, (iv) Dalia's interest in D&K minority ownership of TRI, or the rights of the Sagi Trust or the Orly Trust as limited partners of D&K which owned approximately 49% each of TPR -- which ownership was acknowledged by the Trump Group in the 2001 TRI Stockholders Agreement.

83.     Between October 2004 and August of 2008 nothing prevented the Trump Group, Jules Trump, TRI or its officers or directors, or any of them, from making any inquiry whatsoever of Arie, Orly, TPR, TRI, TRI's general counsel, Dalia, Sagi, the Sagi Trust, the Orly Trust, or D&K as to the identity of the record owners of TRI.

84.     Jules Trump, Eddie Trump and Mark Hirsch (an attorney) at all times relevant to this complaint were sophisticated business individuals, with special expertise in corporate governance and ownership.

85.     At all times relevant to this action the Trump Parties had access to independent legal counsel.

21

86.     Prior to 2008, the Trump Group, by Jules Trump, and otherwise, acted with

willful blindness and indifference to facts which put The Trump Group on notice of (i) the 2004

Transfers, and (ii) that Arie, the Sagi Trust and the Orly Trust were record owners of their

respective TRI shares.

87.     The Trump Group, by Jules Trump, and otherwise, waived any objection to the

2004 Transfers.

88.     Between 2004 and 2008, under Arie's management, TRI's business performance

improved consistently without any complaint or objection by TRI's Board of Directors

including but not limited to representatives of the Trump Group.

**I.      The Trump Parties' 2008 Scheme and Conspiracy to Seize Majority Control
of TRI, Squeeze Out Arie as an Officer, Director and Shareholder of TRI
and Dilute the Value of Arie's, Orly's and the Orly Trust's Interests in the
Affected TRI Shares**

89.     There was no hint of any substantial disagreement between Arie and the Trump

Group relating to the Genger Divorce Action, or otherwise, until June of 2008, when TRI's value

increased substantially as a result of improved performance.

90.     In the early Spring of 2008, TRI was facing a threat of foreclosure of one of its

major operating units by Bank Hapoalim, a long-time lender of TRI.

91.     To address this foreclosure threat, Arie and the Trump Group explored the

possibility of a sale of assets and restructuring plan involving the spin-off of all of TRI's North

American assets to a separate entity and a capital loan by the Trump Group into a residual TRI to

retire the Bank Hapoalim debt in exchange for increasing the equity position of the Trump Group

in the restructured TRI so that the Trump Group would obtain a majority position (the "Funding

Plan").

22

92.    Had the Funding Plan been implemented, in return for providing funding Jules and Eddie Trump through TR-I and TR-II would, for the first time, have been permitted to obtain a direct ownership interest in TRI, and the Trump Parties, under the Funding Plan, would have obtained majority control over TRI, the company that Arie had founded and worked so hard to make succeed.

93.    TRI's legal counsel advised that it would be necessary for a special committee of the Board to be constituted in order for the Board to approve the Funding Plan without the vote of Jules Trump who was an interested Director with a conflict of interest.

94.    Despite requests from Arie to constitute such a committee, the Trump Group Directors failed to agree to the appointment of such committee.

95.    The Board of TRI never constituted a special committee in order for the Board to approve the Funding Plan.

96.    The implementation of the Funding Plan was also subject to other conditions relating to the value of the transaction which conditions were never met.

97.    While the proposed Funding Plan was being worked on, the financial condition of TRI began to improve substantially. By late June 2004, TRI was generating positive cash flow of $15-20 million per month. This represented a dramatic improvement in TRI's earnings within a matter of months in 2008, and rendered the Funding Plan unnecessary.

98.    As a result, there was no longer a need for TRI or Arie to move forward with the Trump Group Funding Plan that would have given the Trump Parties' majority control of TRI.

23

99.     To proceed with the Funding Agreement would have diluted the shares of existing

shareholders and cause TRI to pay the Trump Group unreasonable fees for a loan that was not

needed.

100.    Based on the advice of TRI's Delaware corporate counsel concerning the

establishment of an independent committee of the Board to approve the Funding Plan, which the

Trump Group refused to empanel, and the fact such a Funding Plan was no longer necessary

because of improved performance of TRI which permitted the satisfaction of the Bank Hapoalim

loan, the Funding Plan was rejected and the Bank Hapoalim loan satisfied with TRI's own

substantially improved earnings without the need for funding from the Trump Parties or any

other third-party.

101.    On information and belief, the Bank Haopolim's threat of foreclosure and the

Funding Plan takeover proposed by the Trump Group were also engineered by Jules Trump,

individually, and on behalf of the Trump Group with the aid, assistance and further illegal

conduct of the Trump Group and a principal officer of Bank Haopolim with whom the Trump

Group had other business entanglements.

102.    Thwarted in their effort to take over the controlling interest in TRI through the

rejected Funding Plan, the Trump Group, Mark Hirsch, Eddie Trump, and Jules Trump

formulated a further illegal scheme and plan to take over the then very profitable TRI, and oust

Arie as its CEO, and steal the Genger family TRI shares at a fraction of their value.

103.    In furtherance of this plan, the Trump Group leveled an extortionate threat at Arie

demanding that unless Arie agreed to turn over majority control of TRI to the Trump Group

pursuant to the Funding Plan (which was no longer necessary ), the Trump Group would declare

24

that the 2004 TPR transfers of TRI shares to Arie, the Sagi Trust and the Orly Trust under the

Stipulation of Settlement were void under the 2001 TRI Stockholders Agreement even though

Arie as a permitted Transferee held 14% of TRI outright, and had received a Voting Trust

Agreement and Putative Irrevocable Proxies from the Sagi Trust and the Orly Trust which, on

their face, gave Arie the right during his lifetime to control the management of TRI, and vote the

same 52.85% shares of TRI stock that had been controlled by Arie through his 51% ownership of

TPR prior to the Stipulation of Settlement and the execution of the 2004 Transfer Documents.

Thus, there was virtually no effective difference in Arie's control of TRI Shares as between his

majority control of TPR prior to the execution of the Stipulation of Settlement, and the intended

control that Arie would exercise after the Stipulation of Settlement and 2004 Transfer

Documents were executed.

104.    At the time they made this threat in 2008, the Trump Parties, among other things,

knew that:

(i) the intent of the parties pursuant to the 2001 TRI Stockholders Agreement in

restricting certain transfers to Genger family members was to ensure that (a) Arie, personally,

would continue to have management and majority shareholder voting control over TPR's TRI

shares for the duration of his life, and (b) prevent any other Genger family member from having

any management or voting control over TRI during Arie's lifetime;

(ii) pursuant to the terms of the Stipulation of Settlement and the 2004 TPR-TRI

Transfer Documents Arie, Dalia, Orly and Sagi, specifically intended to preserve Arie's

management and voting control of TRI, in the context of resolving the equitable distribution of

marital property issues concerning TPR raised in the Genger Divorce Action;

25

(iii) that as a condition for Arie transferring his 51% interest in TPR to Dalia in the Genger Divorce Action, it was intended that pursuant to the Stipulation of Settlement and 2004 Transaction Documents Arie would receive valid Putative Irrevocable Proxies and Back-up Voting Trust Agreements from the Sagi Trust and the Orly Trust designed to ensure that Arie would retain voting control over a majority of TRI shares for the duration of his life even if the Putative Irrevocable Proxies were held to be invalid; and

(iv) that if the 2004 TPR transfer of TRI shares were voided, as threatened by the Trump Group, then:

(a)    52.85% of TRI shares would revert to TPR, which would be unjustly enriched because TPR, under the Stipulation of Settlement and implementing 2004 Transaction Documents, had already divested itself of those TRI shares in consideration of Arie relinquishing his 51% ownership of TPR to Dalia;

(b) that Arie would be the beneficial owners of such 3000 TRI Shares, and Arie would have the right to vote the 52.85% of TRI shares that were returned to TPR, subject to the Orly and Sagi Trust rights to receive certain of these shares upon Arie's death;

(c)    Sagi was not authorized to act on behalf of TPR to sell any of the TRI shares without the consent of Arie as the beneficial owner of the Arie TRI Shares, and the beneficial holder of the voting rights to TPR's TRI Shares;

(d)    Arie would be entitled to reform the Stipulation of Settlement, pursuant to the express terms of the Stipulation of Settlement, so that Arie would regain control of 51% of TPR's ownership and control of 52.85% of TRI's shares;

26

(e) that the New York Supreme Court under the Judgment of Divorce, had retained jurisdiction over Arie and Dalia in connection with enforcing the terms of the Stipulation of Settlement, including Arie's reformation claims; and

(f)    TPR, under Sagi's control, was not authorized to sell TRI shares to the Trump Group without the consent of Arie, as beneficial owner of TPR's record ownership of the TRI shares, in the event the 2004 Transfers were held to be invalid;

(v) that if the Putative Irrevocable Proxies (Exhibit D) were held to be invalid, that the Sagi and Orly Trust shares would be subject to the Back-Up Voting Trust Agreement Exhibit E) which was referred to in the 2004 Voting Trust Agreement (Exhibit C).

105.    Nevertheless, on August 8, 2008, the Trump Group, in furtherance of their plan to pressure Arie and take over a majority control of TRI, sent a letter to TPR asserting that it had the right under Section 3.2 of the 2001 TRI Stockholders Agreement to purchase all of the TRI shares that were the subject of the Stipulation of Settlement transfers in 2004, **at 2004 prices** – a small fraction of what is believed to have been a TRI value in excess of $1 billion in 2008, which had net after-tax income in excess of $150 million in that year. The Trump Group provided no such letter or notice to Orly or the Orly Trust or the Sagi Trust.

106.    Three days later, on August 11, 2008, the Trump Parties, through Glenclova, commenced an action in the Federal District Court of the Southern District of New York against TPR (the "Federal Action") claiming that the transfer of the TRI shares by TPR to Arie Genger, the Orly Trust and the Sagi Trust pursuant to the express terms of the Stipulation of Settlement and 2004 Transaction Documents, was void.

27

107.    Notwithstanding the Trump Parties' respective specific knowledge in 2008 of the
existence and terms of the Court-ordered Stipulation of Settlement and the 2004 TPR Transfer
Documents, the Trump Group did not name Arie, Dalia, the Sagi Trust or the Orly Trust as
parties in the Federal Action.

108.    The Trump Parties knew at the time they commenced the Federal Action that Arie
was a known third party beneficiary under the 2001 TRI Stockholders Agreement and that the
2004 Transfers were approved in a Court-Ordered Stipulation of Settlement in the Genger
Divorce Action, but nevertheless opposed Arie's motion to intervene in the Federal Action.

109.    The Trump Parties also knew that Sagi, as a result of the Stipulation of Settlement
and 2004 TPR Transfer Documents, became the president of TPR, but that he had since become
estranged from his father, and that Sagi had installed his mother-in-law Rochelle Fang as the
nominal trustee of the Sagi Trust and that he exercised total dominion and control over her.

110.    The Trump Parties also knew that if the 2004 TPR transfers of TRI shares to Arie,
the Sagi Trust and the Orly Trust pursuant to the "So-Ordered" Stipulation of Settlement and
2004 Transfer Documents were voided, that Arie's transfer of his 51% ownership in TPR to
Dalia would also have to be voided, and that as a consequence Dalia, or Sagi as her successor-in-
interest, as a matter of New York law, would have to hold this 51% TPR interest in a
constructive trust for the benefit of Arie with respect to TPR's ownership of the TRI Shares.

111.    The Trump Parties knew that neither TPR, nor Sagi as its President, would be
authorized to sell any of TPR's shares of TRI to the Trump Group in the event that the 2004 TPR
Transfers of TRI Shares to Arie, the Sagi Trust or the Orly Trust were voided because in that

28

event those TRI shares would be returned to TPR subject to a constructive trust for the benefit of Arie.

112.   Prior to August 22, 2008, the Trump Group also knew that in the event that the 2004 transfers by TPR of TRI Shares to Arie, the Sagi Trust or the Orly Trust were voided, Sagi, as the President of TPR, also owed a separate fiduciary duty to Arie and the Orly Trust with respect to the 3000 TRI shares that would revert to TPR.

113.   TPR and Sagi each had a fiduciary and contractual duty to Arie to hold any TRI shares that reverted to TPR in a constructive trust for their respective benefits as the beneficial owner of such shares, and also owed a fiduciary duty to Orly and the Orly Trust with respect to her interest in a portion of these shares.

114.   Nevertheless, in August, 2008, the Trump Group met, conspired and schemed with Sagi and/or his representatives to contrive a plan to offer Sagi approximately $26.7 million to induce Sagi to cause the Sagi Trust, through his mother-in-law Fang, to transfer to the Trump Parties the Sagi Trust's 19.425% of TRI shares that the Sagi Trust received pursuant to the Stipulation of Settlement and 2004 TPR Transaction Documents. This $26.7 million payment was a fraction of the value of those shares at that time given the performance of TRI which, in 2008 had after tax earnings of $150,000,000 of sales of approximately $1 billion.

115.   As part of this conspiracy and scheme, the purchase of the Sagi Trust Shares was to be conditioned on Sagi, purportedly as the President of TPR, further agreeing that if the Court in the Federal Action, or any other court, held that the 2004 TPR Transactions were void, then TPR would be "deemed" the Seller of the Sagi Shares, even though the Sagi Trust could keep the $26.7 million, and even though TPR had no right or authority to sell the Arie, the Sagi Trust and

29

Orly Trust Shares without the consent of Arie as beneficial owners of these respective shares,

subject to Orly's interest to receive the Orly Trust TRI Shares upon Arie's death, and Arie's

beneficial interest in the voting rights for the Sagi Trust, Orly Trust and Arie TRI Shares.

116.    The Trump Group defendants knew that if the $26.7 million purported purchase

price of the Sagi Trust Shares was paid to the Sagi Trust that the money would need to be

returned to TPR.

117.    The Trump Group defendants knew that Sagi, on behalf of TPR was not

authorized to sell the Sagi Trust Shares, in the event the 2004 Transfers were declared invalid.

118.    The Trump Group defendants never sought or received a representation by TPR

or Sagi that Sagi, on behalf of TPR was authorized to sell any TRI Shares to the Trump Group.

119.    The Trump Group defendants knew that Sagi on behalf of TPR was not

authorized to sell any of TPR's TRI shares to the Trump Group in the event that the 2004 Shares

reverted to TPR that Sagi and TPR had a fiduciary and contractual duty to protect Arie's control

over the 52.85% of TRI Shares for the duration of his life.

120.    The Trump Group did not obtain a representation from Sagi or TPR as to whether

any sale by the Sagi Trust or TPR would be subject to Arie's right to vote those Shares for the

duration of his life in accordance with the terms of the Court-ordered Stipulation of Settlement

and the 2004 Transaction Documents.

121.    As part of this conspiracy and scheme the Trump Parties also required that in

order for Sagi to get the $26.7 million put in his Trust, Sagi purportedly as the President of TPR

would have to further agree in a "side letter" that if the Court in the Federal Action, or any other

court, held that the 2004 TPR Transactions were void, then TPR would also agree to sell the 14%

Arie TRI shares and the 19.425% Orly Trust Shares, which TPR had already sold to Arie and the

Orly Trust pursuant to the Stipulation of Settlement and the 2004 Transaction Documents, to the

Trump Parties at a price that was 60% less than the price per share to be paid to the Sagi Trust.

Again, Sagi had no authority to make this sale on behalf of TPR.

     122.   As part of the same conspiracy and scheme, the Trump Parties also insisted that

neither the Sagi Trust nor TPR take any action to protect the voting rights of Arie that were

granted to Arie by the Sagi Trust and the Orly Trust under the 2004 Voting Trust Agreements in

accordance with the 2004 TPR Transfer Agreement.

     123.   To induce Sagi to sell the Sagi Trust Shares to the Trump Parties, the Trump

Group proposed a scheme and conspiracy that the Trump Parties knew would require Sagi to use

his position as President of TPR to obtain a personal benefit by having $26.7 million paid to his

Sagi Trust, while selling out Arie's and the Orly Trust's TRI shares for a fraction of their real

value in an obvious breach of Sagi's fiduciary and contractual duties to Arie and the Orly Trust,

which breaches of duty arose from, among other things, (i) Sagi's self-dealing transactions as an

officer of TPR to get $26.7 million from the Trump Group for his Sagi Trust shares while at the

same time and at the expense of Arie and the Orly Trust agreeing to sell their TRI shares at a

price per share that was 60% lower than the deal Sagi was making for himself through the sale of

the Sagi Trust shares to the Trump Parties, (ii) ignoring Arie's and the Orly Trust's beneficial

interest in the value of TPR's ownership of specific TRI stock that TPR had already transferred

to Arie and the Orly Trust for valuable consideration pursuant to the Stipulation of Settlement

and the 2004 TPR Transaction documents; (iii) inducing Fang as the Trustee of the Sagi Trust to

violate the 2004 Voting Trust Agreement with Arie; (iv) inducing the trustees of the Orly Trust

31

to violate their fiduciary obligations to the Orly Trust and Orly; (v) failing to protect Arie's

voting rights to 52.85% of TRI shares in accordance with the express intent and provisions of the

Stipulation of Settlement and the 2004 Transaction Documents; (vi) disposing of and

substantially devaluing the asset value of TPR's ownership of TRI shares, with knowledge that

such shares would be subject to Arie's claims for imposing a constructive trust on such shares,

reformation and/or rescission under the terms of the Stipulation of Settlement with respect to

restoring Arie's rights to a 51 % ownership of TPR insofar as TPR's ownership of TRI shares

was concerned; (vii) failing to disclose to Arie, Orly, or the Orly Trust the terms of the Trump

Parties' proposed scheme and plan to purchase the same TRI shares that TPR previously sold to

Arie and the Orly Trust under the Stipulation of Settlement and 2004 TPR Transfer Agreement,

(viii) failing to take all actions necessary to comply with the stated intentions of the parties to the

Stipulation of Settlement and 2004 Transaction Documents, and (ix) entering a self-interested,

unauthorized, ultra-vires agreement, ostensibly on behalf of TPR but in reality using his position

as President of TPR for his own personal gain to the detriment of Arie's and the Orly Trust's

legal and equitable interests in TPR's ownership of the TRI shares that were transferred to each

of them by TPR four years earlier, pursuant to the Stipulation of Settlement and 2004

Transaction Documents.

124.    In furtherance of this scheme and conspiracy, the Trump Parties, the Sagi Trust,

by Rochelle Fang, and Sagi, purportedly on behalf of TPR, executed a 2008 Stock Purchase

Agreement with the Sagi Trust without the knowledge or consent of Arie or the Orly Trust, to

sell the 1102.80 Sagi Trust Shares of TRI common stock representing 19.425% of the shares of

stock to the Trump Group and two new entities – TR I and TR II – for $26,715,416.00. ("2008

Stock Purchase Agreement", attached hereto as Exhibit F).

125.    When combined with the Trump Parties' minority share of 47.15 %, this Sagi

Trust sale would give the Trump Parties a 66.575% majority and controlling voting interest in

TRI, in direct derogation of the intent of the Court–Ordered Stipulation of Settlement and the

Putative Irrevocable Proxies and 2004 Voting Trust Letter Agreement.

126.    The Trump Parties acknowledged the existence of the Putative Irrevocable

Proxies and 2004 Voting Trust Letter Agreement in the 2008 Stock Purchase Agreement,

representing and warranting that:

> "Such Purchaser hereby acknowledges receipt of copies of the
> irrevocable proxy dated as of October 29, 2004, issued by Seller
> ["Sagi Trust"] in favor of Arie Genger with respect to the shares
> (the "Proxy"), a backup form of voting trust agreement and voting
> trust certificate delivered in connection with the Proxy and the
> Letter Agreement dated October 29, 2004 [2004 Voting Trust
> Letter Agreement] with respect to the transfer of shares from TPR
> to Seller"

127.    The 2008 Stock Purchase Agreement also states that if the 2004 transfer of TRI

shares by TPR to the Sagi Trust were determined to be void and the shares returned to TPR then

**TPR** would be deemed the seller of the Sagi Trust Shares to the Trump Parties for $26.7 million,

even though this $26.7 million would have already been paid to the Sagi Trust controlled by Sagi

through his mother-in-law Fang.  There was no provision with respect to the reallocation of the

sales proceeds to TPR.

128.    The 2008 Stock Purchase Agreement violated the terms of the  2001 Stockholders

Agreement, including, but not limited to, Section 3.2 of that Agreement.

129.    By entering into the 2008 Stock Purchase Agreement, the Trump Group voluntarily and intentionally waived any right to purchase the Sagi Trust Shares under the 2001 Stockholders Agreement.

130.    Also through its intentional conduct, including its violation of the 2001 Stockholders Agreement, the Trump Group is estopped from utilizing any purported right to purchase under the 2001 Stockholders Agreement.

131.    In addition, Sagi, ostensibly acting for TPR, but without authority and in violation of his contractual, legal and fiduciary duties owed to Arie and Orly, signed a side letter on the very same day as the 2008 Stock Purchase Agreement that provides that if the 2004 transfer by TPR of TRI Shares to Arie and the Orly Trust under the Stipulation of Settlement and 2004 Transaction Documents were declared void, then Sagi, purportedly on behalf of TPR, would transfer the Arie Shares and Orly Trust Shares to the Trump Parties at a price per share 60% per share lower than the Sagi Trust was to receive under the 2008 Stock Purchase Agreement, which would then be deemed a sale by TPR ("2008 Stock Purchase Side Letter Agreement", attached hereto as Exhibit G).

132.    The terms of both the 2008 Stock Purchase Agreement and the Side Letter violated the 2001 Stockholders Agreement, including, but not limited to Section 3.2 of the 2001 Stockholders Agreement.

133.    The Trump Group defendants waived, and are estopped from asserting, any right under the 2001 Stockholders Agreement to purchase the Arie and Orly Trust TRI Shares from TPR.

34

134.    Neither Arie on behalf of TRI or the Board of Directors of TRI approved the transaction set forth in the 2008 Stock Purchase Agreement and Side Letter.

135.    This Side Letter was not only an insidious requirement mandated by the Trump Parties to get a majority interest in TRI for the first time, but was tantamount to a $26.7 million bribe offered by the Trump Parties to Sagi, the estranged son of Arie, to betray his father and rob his sister of the true value of their respective legal and equitable interests in the TRI stock previously owned by TPR in order for the Trump Group to completely squeeze out Arie and the Orly Trust at unconscionably low prices.

136.    At the time the Trump Parties, TR-I and TR II, the Sagi Trust and Sagi purportedly on behalf of TPR, executed the 2008 Stock Purchase Agreement, the Trump Parties also knew that if the 2004 transactions were voided, TPR, Sagi, the Sagi Trust and the Trump Parties would all be unjustly enriched by the 2008 Stock Purchase Agreement and Side Letter.

137.    The Trump Parties also knew that if the 2004 TPR Transfers of TRI shares to Arie, the Sagi Trust and the Orly Trust were voided, that these TRI shares recovered by TPR would be the subject of a constructive trust established for the benefit of Arie, the Orly Trust and the Sagi Trust.

138.    The Trump Parties, Sagi, and the Sagi Trust knew that Sagi, as an officer and director of TPR, owed a fiduciary duty to Arie, the Orly Trust, and the Sagi Trust, not to devalue or alienate Arie's and the Orly Trust's beneficial ownership of TPR insofar as TPR's ownership of the TRI shares was concerned, and not to strip Arie of his voting rights with respect to these TRI Shares.

35

139.    The Trump Parties, Sagi and the Sagi Trust knew at the time they executed the

2008 Stock Purchase Agreement that pursuant to the Court –Ordered Stipulation of Settlement,

Arie had a contractual right to seek to reform the terms of the Stipulation of Settlement in order

to give full effect to the intent of the parties with respect to his relinquishment of control in TPR

in exchange for Arie's continuing control of 52.85% of TRI shares and outright ownership of

14% of TRI's stock, as a permitted transferee.

140.    The Trump Parties, Sagi, and the Sagi Trust knew at the time they executed the

2008 Stock Purchase Agreement and Side Letter that Arie was entitled to rescission for failure of

consideration of that part of the Stipulation of Settlement that transferred his 51% of TPR to

Dalia, in exchange for Dalia's agreement to have TPR concurrently transfer 14% of TRI's shares

to Arie outright, and  that Arie would maintain voting control, or 52.85% of TRI for the duration

of his life.

141.    In connection with the 2008 Stock Purchase Agreement and in furtherance of the

plan and scheme to wrest control of TRI from Arie's control, the Trump Parties aided and

abetted the preparation of a sworn affidavit swearing that the Sagi Trust shares had been lost,

when the Trump Parties knew that was not a true statement.

J.    **The Trump Parties Declare Themselves The Majority Owners Of TRI, and
       Commence An Action In The Delaware Chancery Court To Determine The
       Composition of TRI's Board of Directors**

142.    On August 25, 2008, only three days after the 2008 Stock Purchase Agreement

and 2008 Stock Purchase Side Letter Agreement were executed, the Trump Group asserted that it

was in control of TRI through the acquisition of 1102.80 shares that were purportedly transferred

to them by the Sagi Trust.

36

143.    On August 25, 2008, the Trump Parties commenced a Chancery Court in rem summary proceeding in the State of Delaware pursuant to 8 Del.C § 225(a) to determine the composition of the Board of Directors of TRI ("The Delaware Action") and to declare, inter alia that:

    i.     the Trump Parties are the majority shareholders of TRI and have the right to vote all of its shares including the shares which were allegedly purchased pursuant to the Stock Purchase Agreement;

    ii.    the 2004 transfers to Arie Genger, the Sagi Trust and the Orly Trust are void and continue to belong to TPR; and

    iii.   that the Putative Irrevocable Proxies do not apply to the shares transferred pursuant to the Stock Purchase Agreement.

144.    Neither TPR, the Sagi Trust, nor the Orly Trust were a party to the Delaware Action, although TPR was given an opportunity to participate in that action, and refused to do so.

145.    The Trump Group as interested Directors in control of TRI had a fiduciary and legal duty to authorize the appointment of separate, independent counsel for TRI in connection with the Delaware proceeding and otherwise with respect to determining the beneficial and record ownership of the Arie, Orly Trust and Sagi Trust TRI shares.

**K.**    **The July 23, 2010 Opinion of the Delaware Chancery Court**

146.    On July 23, 2010 the Delaware Chancery Court issued a lengthy written decision which held that the transfers of TPR's TRI shares to Arie, the Sagi Trust and the Orly Trust pursuant to the Stipulation of Settlement and 2004 Transaction Documents were void and ownership reverted to TPR and that TPR's sale of the Sagi Trust TRI Shares to the Trump Group pursuant to the 2008 Stockholders Agreement was valid.

37

147.    The Chancery Court also held that the Sagi Trust Irrevocable Proxy was not valid under New York or Delaware law. The Chancery Court in this § 225 proceeding held that the Trump Group was entitled to elect a majority of TRI Board members.

148.    While voiding the 2004 Transfers, however, the Chancery Court in this July 23 decision also held that because Arie was a "permitted transferee" under the 2001 TRI Stockholders Agreement, the transfer of the TRI shares to him did not warrant a forfeiture of Arie's TRI Shares.

149.    Because Arie was a permitted transferee of the TRI shares owned by TPR (a Genger family holding company that Arie had created) the Trump Group would have no right to stop the transfer of these TPR TRI shares to Arie once it received contractual notice and Arie agreed to be personally bound by the TRI Stockholders Agreement.

150.    Under the Delaware Chancery Court's July 23 decision, Arie would retain his TRI shares once he gave formal notice of TPR's 2004 transfer and agreed to be bound by the 2001 TRI Stockholders Agreement, which Arie promptly agreed to do shortly thereafter.

151.    In its July 23, 2010 decision, the Court of Chancery also held that because neither Orly nor the Orly Trust were parties to the Delaware Chancery Court action, the Delaware Court declined to issue any ruling with respect to the Orly Trust TRI Shares.

**L.      The July 26, 2010 TRO in this New York Action**

152.    Based on the July 23, 2010 Chancery Court decision, Arie and Orly sought and obtained a temporary restraining order from this Court, restraining Sagi and TPR from selling or encumbering the Arie and Orly Trust TRI shares. This temporary restraining order was granted on July 26, 2010 and extended by this Court on July 28, 2010.

**M.    The August Opinion of the Delaware Chancery Court**

153.    After being advised by the Trump Group of plaintiff being granted a TRO in this

New York Action, the Delaware Chancery Court indicated that it would reexamine its rulings

with regard to the Arie and Orly Trust TRI shares, and expressed concern about whether the New

York TRO was designed to undermine its ruling in the Delaware Court, which it was not.

154.    On August 3, 2010, to allay the Court of Chancery's concerns, Arie's counsel in

this case wrote to this Court advising that because defendants Sagi and TPR had agreed to abide

by a *status quo order* entered by the Delaware Chancery Court, which provided that Arie would

be given notice in the event TPR or Sagi intended to sell the Arie and Orly TRI Shares to the

Trump Group, it was agreed among counsel for TPR, Sagi, Dalia and the plaintiffs, that the

temporary restraining order would be vacated and plaintiffs in this action would accordingly

withdraw their application for a preliminary injunction, without prejudice.

155.    On August 9, 2010, the Chancery Court made an abrupt "about face" regarding its

determination earlier relating to the Arie and Orly Trust TRI Shares. In this second opinion, the

Delaware Chancery reversed itself regarding the ownership of the Arie and Orly Trust Shares,

and held that the Trump Group had the right to purchase the Arie and Orly Trust TRI shares from

TPR under the 2008 Side Letter Agreement, even though the Court had held only two weeks

earlier that Arie was a permitted transferee under the Stockholders Agreement and should be

permitted to keep his shares, and that the Orly Trust was never a party to the § 225 proceeding.

The Chancery Court also held that Arie and the Orly Trust had no beneficial interest in the Arie

and Orly Trust TRI shares—even though TPR, Sagi, the Sagi Trust and the Orly Trust were

never parties to the Delaware § 225 proceeding.

39

**N.**  **The Delaware Chancery Court's Final Judgment Order of August 18, 2010**

156.  On August 18, 2010, the Delaware Chancery Court entered a Final Judgment Order which found (i) that TPR's 2004 transfers of the Arie TRI Shares, and the Orly Trust TRI shares were void under the 2001 TRI Stockholders Agreement, (ii) that title to the Sagi Trust TRI Shares, the Orly Trust TRI Shares and the Arie TRI Shares, all reverted to TPR; (iii) that the Irrevocable Proxy for the Sagi Trust was not valid; (iv) that the sale of the Sagi Trust TRI shares by Sagi on behalf of TPR was valid; (v) that the Side Letter was a valid agreement; and (vi) that Arie and the Orly Trust had no beneficial or legal ownership interest in the Arie and Orly Trust TRI shares.

157.  There was no discussion or finding in the Chancery Court Decision as to whether Sagi was authorized to sell the Arie, Orly and Sagi Trust TRI Shares out of TPR.

158.  In addition to these holdings, the Chancery Court entered an anti-lawsuit injunction, which prohibited Arie from "commenc[ing] or prosecut[ing] any legal proceeding . . . in any [state] court [including the action in this Court which had already been commenced] constituting a collateral attack on, attempt to prevent implementation of, or relitigation of any of the [Chancery] Court's holdings set out in paragraphs 2 through 16 inclusive (summarized above), of this final judgment order" pending a determination of an appeal to the Delaware Supreme Court, with certain limited exceptions, but even the Chancery Court specifically recognized Arie's right to apply to this Court to seek to escrow the proceeds from TPR's impending sale of the Arie TRI Shares to the Trump Group, as follows:

> "Arie Genger shall have the right to seek an order from a court of competent jurisdiction requiring TPR Investment Associates, Inc. and its officers and directors to place in escrow the proceeds of sale of the shares of TRI referenced in paragraph 14 of this Order. [the "Arie TRI Shares"]."

40

**O.**    **Arie Appeals From the Chancery Court's Final Judgment Order**

159.    Arie timely appealed from the Chancery Court's rulings, arguing, inter alia, that

(i) the Trumps ratified the 2004 transfers, as a matter of law; (ii) the Irrevocable Proxy was valid

under New York law; and (iii) the Delaware Chancery Court had no jurisdiction to determine the

ownership of the Arie and Orly TRI shares or the validity of the Side Letter.

160.    Under threat of contempt, Arie agreed to stay this case pending a final

determination by the Delaware Supreme Court.

**P.**    **The Purported Sale by TPR of the Arie and Orly Trust TRI Shares**

161.    While Arie's appeal was pending, Arie was informed that TPR, without Arie's

consent or approval, intended to sell the Arie TRI shares to the Trump Group for $7,424,994.

162.    While the Trump Group and TPR agreed to hold $5,924,944 of these sale

proceeds in escrow pending a determination by the Delaware Supreme Court relative to the

ownership of the Arie and Orly Trust TRI shares, Sagi, as the CEO of TPR, insisted that TPR

was entitled to keep and spend the $1.5 million of the proceeds from the sale of the Arie TRI

shares, notwithstanding the pending appeal challenging the Chancery Court's rulings relating to

the ownership of the Arie and Orly Trust TRI Shares.

163.    While the appeal to the Delaware Supreme Court was pending, TPR, without the

consent or approval of Arie or Orly, also entered into an agreement to sell the Orly Trust TRI

Shares to the Trump Group for $10,314,005, with the proceed to be held in escrow by counsel

for Dalia as the nominal trustee of the Orly Trust.

164.    The Trump Group as interested Directors in control of TRI had a fiduciary and

legal duty to authorize the appointment of separate, independent counsel for TRI in connection

with the Delaware proceeding and otherwise with respect to determining the beneficial and


record ownership of the Arie, Orly Trust and Sagi Trust TRI shares prior to TRI recording the

transfer of the Arie and Orly Trust Shares to the Trump Group in 2010.

165.   Neither Sagi nor TPR had any authority to sell the Arie or Orly Trust Shares to

the Trump Group.

**Q.**   **This Court Enjoins TPR and Sagi From Taking or Using the $1.5 million Sale Proceeds From the Purported TPR Sale of the Arie Shares to the Trump Group**

166.   Arie moved by Order to Show Cause to restrain and enjoin Sagi and TPR from

using or disposing of the $1.5 million sale proceeds that were about to be released to TPR, and

requested that these specifically identified funds be placed in an acceptable escrow account or

paid into Court. This Court by its February 17, 2011 Decision and Order decreed as follows:

> "ORDERED that the defendants Sagi Genger and TPR
> Investment Associates, Inc., and their agents, servants, employees
> and all other persons acting under the jurisdiction, supervision
> and/or direction of the defendants, are enjoined and restrained,
> during the pendency of this action, from doing or suffering to be
> done, directly or through any attorney, agent, servant, or employee
> or other person under the supervision or control of the defendants,
> from taking, using, or spending or converting to their own use
> otherwise, the $1.5 million proceeds from the sale of certain
> common stock in Trans-Resources, Inc. in which plaintiff claims
> an interest"

**R.**   **The Decision of the Delaware Supreme Court**

167.   On July 18, 2011, the Delaware Supreme Court reversed that part of the Delaware

Chancery Court's Judgment that held that Arie and the Orly Trust were not the beneficial owners

of the Arie and Orly Trust TRI Shares.

168.   On Arie's appeal the Delaware Supreme Court described the limited nature of the

§225 proceeding as follows:

> A Section 225 proceeding is not an *in personam* action.
> Rather, it is "in the nature of an *in rem* proceeding," where the

"defendants" are before the court, not individually, but rather, as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever barred from doing so.

\* \* \*

[For example] in a Section 225 proceeding the court "cannot go further and actually rescind a transaction procured through such unlawful behavior or award money damages to those harmed by that behavior." That type of ultimate relief can only be obtained in a plenary action in a court that has *in personam* jurisdiction over any necessary or indispensable parties.

169.    Further explaining the limited holding of the Delaware Chancery Court, the

Delaware Supreme Court held:

Given the jurisdictional limitations that inhere in a Section 225 action, we affirm the judgment of the Court of Chancery insofar as it determines the *record* [emphasis in original] ownership of the disputed Trans-Resources shares in the Side Letter Opinion and the Final Judgment Order.

\* \* \*

An adjudication of who has the right to vote disputed corporate shares for Section 225 purposes cannot constitute a binding adjudication of who beneficially owns those shares, because a Section 225 action is by its nature an *in rem*, not a plenary, proceeding. **Only in a plenary proceeding before a court that has *in personam* jurisdiction over the litigants may the court adjudicate the litigants' property interest in disputed corporate shares.**

(Emphasis added)

170.    The Delaware Supreme Court also held that the issue of ultimate beneficial

ownership of the Arie TRI Shares and the Orly Trust TRI Shares was beyond the equity

jurisdiction of the Chancery Court in the summary § 225 *in rem* proceeding, and that the issue of

the beneficial ownership of those shares needed to be adjudicated in a plenary action in a

jurisdiction where the Court has *in personam* jurisdiction over all indispensible parties. These

43

necessary parties -- Arie, TPR, Sagi, Orly, the Orly Trust and the Trump Group -- are all parties

to this New York action , and have been served and have appeared in this case.

171.    The Delaware Chancery Court's holdings were limited to an in rem proceeding to

determine who held the record ownership of the shares at a point in time in order to determine

voting rights to elect members of the TRI Board based on the record owners of those shares at

the time of the election.

172.    The Delaware Chancery Court was without jurisdiction to determine the ultimate

ownership of the Arie and Orly Trust TRI shares or any of the tort claims asserted by Plaintiffs

in this action. Nor did the Delaware Chancery Court have jurisdiction to determine Arie's claims

for rescission, unjust enrichment, constructive trust or reformation arising from and in

connection with the Court-ordered Stipulation of Settlement, the 2004 Transaction Documents,

or the authority of Sagi to act on behalf of TPR.

173.    The Delaware Supreme Court affirmed that portion of the Chancery Court ruling

that held that TPR's 2004 transfers of TRI shares pursuant to the Stipulation of Settlement in the

Genger divorce and implementing 2004 TPR Transaction Documents violated the 2001 TRI

Stockholders Agreement and were void ab initio, for the purpose of the Delaware § 225

proceeding to determine composition of the TRI Board.


## FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF ARIE GENGER

### (For a Declaratory Judgment Under CPLR 3001 that the
### Stipulation of Settlement Entitles Plaintiff Arie to a
### Court-Ordered Reformation of the Terms of the Stipulation
### of Settlement as Against All Defendants)

174.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 173.

44

175.   Article XVI of the Stipulation of Settlement provides that the parties to the Stipulation of Settlement have a right to seek court-ordered reformation in a New York court in order to reflect the parties' original intent in the event a portion of the "So-Ordered" Stipulation of Settlement is held to be invalid for any reason.

176.   The concurrent transfer of Arie's ownership of his 51% interest in TPR in consideration of receiving a 14% interest in TRI and the right to control the voting rights of 52.85% of TRI Shares for the duration of Arie's life was an essential, fundamental condition of the transfers of TPR and TRI shares set forth in the  Court-Ordered Stipulation of Settlement.

177.   The Delaware Chancery Court, as affirmed by the Delaware Supreme Court, held that TPR's 2004 transfers of 52.85% of the shares of TRI Stock under the Stipulation of Settlement and 2004 TPR Transfer Documents were invalid and void *ab initio*, and that the Putative Irrevocable Proxies were invalid.

178.   The provisions of the Court-Ordered Stipulation of Settlement relating to the transfer of ownership of TPR in consideration of the 2004 Transfers were based upon the mutual mistake of Dalia and Arie that the 2004 Transfers and Irrevocable Proxies were valid.

179.   The Court-Ordered Stipulation of Settlement specifically provides that the parties agree that if any of the terms of the Stipulation of Settlement is declared invalid by any court of competent jurisdiction for any reason, Arie is entitled to seek an Order from this Court to reform the Stipulation of Settlement, or obtain such other equitable or legal relief as is necessary to give full meaning and expression to the original intent of the parties to the Court–Ordered Stipulation of Settlement.

45

180. Arie is entitled to an Order of the New York Supreme Court to reform the terms of the Court-Ordered Stipulation of Settlement to reflect the parties' original intent to the greatest extent possible.

181. Accordingly, Arie seeks an Order and declaratory judgment to reform the Court-Ordered Stipulation of Settlement to provide as follows:

(i) That the transfer by Arie of his 51% interest in TPR to Dalia and the concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust, respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result of the Delaware Court finding that the 2004 Transfers are invalid;

(ii) that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii) that pursuant to a further order of this Court the Court-Ordered Stipulation of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that were returned to TPR as a result of the Delaware Court Action voiding the original 2004 Transfers be placed in a newly formed single purpose entity controlled by Arie ("TPR2");

(iv) that Arie be declared the 51% owner of TPR2, which in turn shall be declared, *ab initio* the record and beneficial owner of all of such 3000 TRI shares, as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v) that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of TPR2 so that together they own the remaining 49% of TPR2;

46

(vi)    that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would be otherwise permitted and would not violate the terms of the 2001 Stockholders Agreement including, but not limited to, Article 2 of such agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI Shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii)    All cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix)    Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x)    The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

182.    The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

183.    The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

47

184.    The purported sales by TPR of the Arie and Orly Trust TRI shares to The Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void, and the proceeds from these purported sales now held in escrow will be released to The Trump Group.

185.    TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

186.    TPR2 will consent to the terms of the 2001 Stockholders Agreement.

187.    Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court Ordered Stipulation of Settlement in light of the ruling of the Delaware court that the 2004 Transfers were invalid.

188.    There is a justiciable controversy.

189.    There is no adequate remedy at law.

## SECOND CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (For the Imposition of a Constructive Trust against Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties)

190.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 189, and incorporate the allegations contained in paragraphs 209-219.

191.    Upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares.

48

192.   TPR is not entitled, in equity or good conscience, to retain any direct or indirect benefit resulting from the record ownership of the 3000 shares of TRI stock reverting to TPR as a result of the ruling of the Delaware courts .

193.   TPR would be unjustly enriched at the expense of Arie if it were permitted to retain any direct or indirect ownership or benefit from the sale of the 3000 shares of TRI stock because record ownership of such TRI shares reverted to TPR as a result of the Delaware court rulings.

194.   Upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares.

195.   Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death.

196.   Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death.

49

197.    Upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Trust Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie.

198.    Arie's beneficial ownership and voting rights with respect to the 3000 TRI shares, which were held by TPR in a constructive trust for his benefit, were protected from further transfer to The Trump Group from the moment record title reverted to TPR.

199.    TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares.

200.    TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie.

201.    The Trump Group are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

202.    The Trump Group was on notice of Arie's ownership and voting right claims with respect to the 3000 TRI shares that reverted to TPR, as record owners.

203.    The Trump Group knew and were on notice that TPR was not authorized to sell TPR's TRI shares without the prior consent of Arie.

204.    The Trump Group knew and was on notice that Arie objected to the sale to The Trump Group of any of the 3000 TRI shares that reverted to TPR, as record owner under the 2008 Stock Purchase Agreement, the Side Letter Agreement or the 2010 purported sale of the Arie and Orly Trust TRI shares.

50

205.    The Constructive Trust in favor of Arie imposed upon the Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to The Trump Group, who were not bona fide purchasers.

206.    The Trump Group, in addition to TPR, would be unjustly enriched if they were permitted to keep the benefit of the purported sale by TPR of the 3000 TRI shares to The Trump Group, which sale Sagi was not authorized to enter into on behalf of TPR without the prior consent of Arie because, inter alia,

(i) the Trump Group would become the owner of the Arie, Sagi Trust and Orly Trust Shares, over the objection of Arie and without Arie's required prior permission and consent;

(ii)    the Trump Group would obtain Arie's right to vote these shares for the duration of his lifetime, without Arie's required prior permission and consent; and

(iii)    these shares would be acquired substantially below their true value without Arie's required prior permission and consent;

(iv)    the purported transaction by TPR was in derogation of Arie's beneficial ownership and voting rights appurtenant to such shares; and

(v)    the Trump Group are not bona fide purchasers of such shares.

207.    Plaintiffs have no adequate remedy at law.

51

## THIRD CAUSE OF ACTION
## ON BEHALF OF ARIE AND ORLY

### (Claim for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty Against Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI)

208.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 207.

209.    Sagi, individually and as an officer of TPR, owed a fiduciary duty of trust, confidence and loyalty to Arie and the Orly Trust because, among other things, (i) he was entrusted to manage TPR's ownership of the TRI shares for the benefit of Arie and the Orly Trust upon the Chancery Court voiding the 2004 TPR transfers of TRI shares to Arie, the Sagi Trust and the Orly Trust, and the resulting ownership of such 52.85 % of TRI shares by TPR; (ii) he was entrusted to manage TPR's record ownership of the TRI shares for the benefit of Arie and the Orly Trust upon the Delaware Chancery Court voiding the 2004 TPR transfer of TRI shares to Arie, the Sagi Trust and the Orly Trust; (iii) pursuant to the 2004 TPR Transfer Agreement, Sagi was entrusted to take all actions necessary to ensure that Arie would maintain voting control of 52.85% of the stock of TRI in accordance with the express intent of all parties to the Stipulation of Settlement and 2004 TPR Transaction Documents; (iv) through Fang and the Sagi Trust, as his co-agents and alter egos, Sagi owed a duty of trust and confidence to Arie under the 2004 Voting Trust Agreement; and (v) as the successor to the rights and liabilities of Dalia under the Stipulation of Settlement and the manager of TPR, as a family holding company, Sagi owed a fiduciary duty to protect the assets of the Orly Trust for the benefit of his sister Orly and his father, Arie, in connection with the ownership of TPR, TPR's ownership of the TRI shares and D&K's minority ownership of TPR.

52

210. As a fiduciary Sagi, individually, and as an officer of TPR, owed a duty of fidelity and undivided loyalty to Arie, Orly, and the Orly Trust regarding the TRI shares.

211. Fang, individually and as the trustee of the Sagi Trust, owed a fiduciary duty to Arie under the 2004 Voting Trust Agreement and Side Letter.

212. The Trump Group, on becoming the majority shareholder of record in TRI, owed a fiduciary duty of fidelity and loyalty to Arie as the known beneficial owner of record of the Arie TRI shares.

213. Jules Trump and Mark Hirsch, each individually and on behalf of the Trump Group, and as Directors of TRI owed a fiduciary duty to TPR, and Arie as the beneficial owner of TRI shares to read TRI corporate documents presented to him in their entirety and have knowledge of the shareholders of record of TRI, a close corporation.

214. Sagi, TPR, the Sagi Trust, Fang, the Trump Parties each breached their respective fiduciary duties as a result of the conduct set forth in the allegations of this complaint, including, but not limited to their respective conduct in connection with the negotiation, execution and implementation of the 2008 Stock Purchase Agreement and the Side Letters and the subsequent transfer of the Arie and Orly Trust TRI Shares.

215. Sagi, TPR, the Sagi Trust, Fang, and the Trump Parties also knowingly aided, abetted, induced, participated in, enabled and substantially assisted each other to breach each of the other's respective fiduciary duties to Arie, Orly and the Orly Trust by the conduct alleged herein, including but not limited to misrepresenting to the Delaware Chancery Court that the share certificates for the Sagi Trust TRI shares were lost despite having actual knowledge that

53

such share certificates were held by Arie, and had not been delivered to the Sagi Trust, Sagi or Fang.

216.    TRI also knowingly aided, abetted, induced, participated in, enabled and substantially assisted the respective breaches of fiduciary duties owed to Arie, Orly and the Orly Trust by Sagi, TPR, the Sagi Trust, Fang and the Trump Parties.

217.    Sagi, TPR, the Sagi Trust, Fang, and the Trump Parties, each acting in conspiracy with, and as the co-agent of one another, entered into an illegal scheme, agreement, plan, and artifice to breach each other's respective fiduciary duties owed to Arie, Orly, and the Orly Trust by the conduct alleged herein in furtherance of this conspiracy.

218.    As a result of such breaches of fiduciary duty, aiding and abetting of breaches of fiduciary duties and conspiracies to breach fiduciary duty, by Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, and each of them, Arie suffered compensatory damages in an amount to be determined.

219.    As a result of such breaches of fiduciary duty, aiding and abetting of breaches of fiduciary duty and conspiracies to breach  fiduciary duty, by Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, and each of them, Orly, individually and as the beneficiary of the Orly Trust, suffered compensatory damages in an amount  to be determined.

### FOURTH CAUSE OF ACTION
### ON BEHALF OF ARIE AND ORLY

**(Claim for Unjust Enrichment and Rescission Against Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties)**

220.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 219.

221.    As a result of the Delaware Chancery Court holding, Dalia, TPR, Sagi, the Sagi Trust and the Trump Parties would each be unjustly enriched at the expense of Arie and the Orly

Trust if each or any of them were allowed to retain any direct or indirect benefit or consideration received by each of them from TPR's ownership of TRI Shares, which none of them are entitled, in equity or good conscience, to retain.

222.   Plaintiff Arie is entitled to rescind the transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents based on failure of consideration because, as a result of the holding by the Delaware Chancery Court, Arie did not receive any of the consideration that was due to him pursuant to such Agreements, including and not limited to (a) his 14% interest in the Arie TRI Shares, and his right to vote 52.85% of the TRI Shares that he controlled prior to the Delaware Court voiding the 2004 Transfers.

223.   Plaintiff the Orly Trust, is entitled to rescind the 2004 Transaction Documents based on failure of consideration because as a result of the holding by the Delaware Court the Orly Trust did not receive any of the consideration due to the Orly Trust pursuant to the 2004 Transfers.

224.   Arie and the Orly Trust are each also entitled to rescission because of failure of consideration based on mutual mistake as to the enforceability of the 2004 TPR Transfers of TRI stock to Arie, the Sagi Trust and the Orly Trust pursuant to the Stipulation of Settlement and the 2004 Transaction Documents.

225.   Arie and the Orly Trust are each entitled to an accounting.

226.   Arie and the Orly Trust have no adequate remedy at law.

### FIFTH CAUSE OF ACTION

**(Claim for Permanent Injunction Against Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties)**

227.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 226.

55

228.    Plaintiffs are entitled to the issuance of a permanent injunction enjoining and

restraining Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties, and each of them, from

directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting,

valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of,

or encumbering the 3000 shares of TRI stock that reverted to TPR's control as a result of the

Delaware Court rulings.

229.    The failure to grant such permanent injunction will result in irreparable injury to

the Plaintiffs.

230.    There is no adequate remedy at law.

231.    The balance of equities favor the Plaintiffs.

### SIXTH CAUSE OF ACTION

**(Claim for Breach of Contract against TPR on Behalf of Arie and Orly)**

232.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 231.

233.    TPR entered into the 2004 TPR Transfer Agreement with Arie.

234.    TPR entered into the 2004 TPR Transfer Agreement with the Orly Trust.

235.    TPR breached its express and implied covenants and representations thereunder in

connection with the transfer of TRI shares to Arie.

236.    TPR breached its express and implied covenants and representations thereunder

by purporting to agree to transfer the Arie, Sagi Trust and Orly Trust TRI Shares to the Trump

Parties.

237.    Arie and the Orly Trust performed their respective obligations under the 2004

TPR Transfer Agreement.

56

238.    As a result of such breach of contract, Arie lost the benefit of his bargain and suffered damages in an amount yet to be determined.

239.    TPR breached its express and implied covenants and representations under the 2004 Transaction Documents in connection with the transfer of TRI shares to the Orly Trust.

240.    The Orly Trust performed its obligations under the 2004 TPR Transfer Agreement.

241.    As a result of such breach of contract, the Orly Trust lost the benefit of its bargain and suffered damages in an amount yet to be determined, but believed to be in an amount to be determined.

### SEVENTH CAUSE OF ACTION
### ON BEHALF OF ARIE

#### (Claim for Breach of Contract against the Sagi Trust)

242.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 241.

243.    The Sagi Trust entered into the 2004 Voting Trust Agreement with Arie.

244.    The Sagi Trust breached its express and implied covenants and representations thereunder in connection with Arie's voting rights and control of TRI shares.

245.    Arie performed his obligations under the 2004 Voting Trust Agreement.

246.    As a result of such breach of contract, Arie lost the benefit of his bargain and suffered damages in an amount yet to be determined.

### EIGHTH CAUSE OF ACTION
### ON BEHALF OF ARIE AND ORLY

#### (Claim for Tortious Interference with Contract Against the Trump Parties)

247.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 246.

57

248.   The Trump Parties, and each of them, tortiously interfered with, among other things, (i) the Stipulation of Settlement between Arie and Dalia, (ii) the 2004 TPR Transfer Documents between Arie and the Orly Trust and TPR, (iii) the 2004 Voting Trust Agreement between Arie and the Sagi Trust, and (iv) the 2004 Voting Trust Agreement between Arie and the Orly Trust.

249.   The Trump Parties, and each of them, intentionally caused such breaches of contract without justification, as a result of the conduct set forth herein.

250.   As a result of the Trump Parties' tortious interference with contract, Arie suffered damages in an amount yet to be determined.

251.   As a result of the Trump Parties' tortious interference with contract, Orly and the Orly Trust suffered damages in an amount yet to be determined.

### NINTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

**(Claim for Aiding and Abetting Tortious Interference with Contract Against Sagi, Fang, and the Sagi Trust)**

252.   Plaintiffs repeat and reallege the allegations in paragraphs 1 through 251.

253.   Sagi, Fang, and the Sagi Trust each had knowledge of the Trump Parties' tortious interference with the 2004 TPR Transaction Agreement and the Stipulation of Settlement, and each such defendant caused, encouraged and substantially assisted the Trump Parties in the commission of the foregoing acts of tortious interference with 2004 TPR Transaction Agreement and the Stipulation of Settlement.

254.   Sagi, Fang, and TPR each had knowledge of the Trump Parties' tortious interference with the 2004 Voting Trust Agreement, and the Stipulation of Settlement, and each such defendant caused, encouraged and substantially assisted the Trump Parties in the

58

commission of the foregoing acts of tortious interference with the 2004 Voting Trust

Agreements.

255.    By reason of the foregoing, Arie has been damaged in an amount to be

determined.

256.    By reason of the foregoing, Orly, individually and as the beneficiary of the Orly

Trust has been damaged in an amount to be determined.

## TENTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (Claim for Preliminary Injunction Against the Trump Parties, Sagi Genger TPR and the Sagi Trust Under CPLR 7109)

257.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 256.

258.    The Arie and Orly Trust TRI shares are unique chattel.

259.    By virtue of the facts set forth above, Arie is the beneficial owner of the Arie TRI

shares.

260.    Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge,

dilute, or take any action on behalf of TPR relating to or concerning the 3000 TRI shares that

reverted to TPR, without the prior written consent of Arie and Sagi is not authorized to exercise

any and all rights, including TPR's voting rights with respect to such 3000 TRI shares, except as

so directed by Arie as the beneficial owner of such shares and the voting rights appurtenant

thereto.

261.    Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge,

dilute, or take any action on behalf of TPR relating to or concerning the Orly Trust TRI shares.

262.    By virtue of the facts set forth above, the Orly Trust is entitled to the benefits

provided to it under the Stipulation of Settlement.

263.    The Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust shares are wrongfully being held by the Trump Parties.

264.    Plaintiffs are entitled to a preliminary injunction, under CPLR 7109, that the Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares shall be restrained and enjoined from transferring, selling, diluting, pledging, assigning or otherwise disposing of or removing such shares from the State until the further order of the Court.

**WHEREFORE**, Plaintiffs demand Judgment in favor of Plaintiffs against the Defendants as follows:

(a) on the **First Cause of Action against all Defendants**: that this Court find and declare that Arie is entitled to an Order from this Court to reform the terms of the Court-Ordered Stipulation of Settlement to provide as follows:

(i)   that the transfer by Arie of his 51% interest in TPR to Dalia and the concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust, respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result of the Delaware Court finding that the 2004 Transfers are invalid;

(ii)   that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii) that pursuant to a further order of this Court the Court-Ordered Stipulation of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that were returned to TPR as a result of the Delaware Court Action voiding the original 2004 Transfers be placed in a newly formed single purpose entity controlled by Arie (hereinafter, "TPR2");

60

(iv) that Arie be declared the 51% owner of TPR2 which in turn shall be declared, ab initio, the record and beneficial owner of all such 3000 TRI shares, as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v) that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of TPR2 so that together they own the remaining 49% of TPR2;

(vi) that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would otherwise be permitted and would not violate the terms of the 2001 Stockholders Agreement, including, but not limited to, Article 2 of such Agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii) all cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix) Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x) The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

61

(xi) The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

(xii) The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

(xiii) The purported sales by TPR of the Arie and Orly Trust TRI Shares to the Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void and the proceeds from these purported sales now held in escrow will be released to the Trump Group.

(xiv) TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

(xv)    TPR2 will consent to the terms of the 2001 Stockholders Agreement.

(xvi) Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court-Ordered Stipulation of Settlement in light of the rulings of the Delaware Court that the 2004 Transfers were invalid.

(xvii) Any other declaration as the Court may deem fair and reasonable to give effect to the Original Intent of the parties to the Stipulation of Settlement.

(b) on the **Second Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties,** that the Court find and declare that:

62

(i) upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares;

(ii) upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares;

(iii) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death;

(iv) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death;

(v) upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie;

63

(vi) TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares;

(vii) TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie;

(viii) The Constructive Trust in favor of Arie imposed upon Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to the Trump Group, who were not and are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

(c) on the **Third Cause of Action against Defendants Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, jointly and severally,** as follows:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly Genger individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(d) on the **Fourth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties**:

(i) rescinding Plaintiff Arie's transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents;

64

(ii) rescinding the 2004 Transaction Documents;

(iii) Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties must account to Arie and Orly, individually and as the beneficiary of the Orly Trust, for 3000 TRI Shares and/or their respective value that are now or ever have been in their respective possession, custody or control; and

(iv) such other equitable relief as the Court may deem fair and reasonable;

(e) on the **Fifth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties**, permanently enjoining and restraining these Defendants, and each of them, from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or encumbering the 3000 shares of TRI common stock that reverted to TPR as a result of the Delaware court rulings.

(f) on the **Sixth Cause of Action against Defendant TPR**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action; and

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action.

(g) on the **Seventh Cause of Action against Defendant Sagi Trust**, a money judgment awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plainitiff's attorneys' fees and costs incurred in connection with this action;

65

(h) on the **Eighth Cause of Action Against the Defendant Trump Parties, jointly and severally**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(i) on the **Ninth Cause of Action Against Sagi, Fang, and the Sagi Trust**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly, individually and as the beneficiary of the Orly Trust, in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(j) on the **Tenth Cause of Action for a Preliminary Injunction Against the Trump Parties, Sagi Genger, TPR and the Sagi Trust Under CPLR 7109**, and each of them for an injunction or temporary restraining order under CPLR 7109, restraining and enjoining each of them from transferring, selling, diluting, pledging, assigning or otherwise disposing of or

66

removing the Arie TRI Shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares from the State until the further Order of the Court.

(k)    **On all causes of action set forth in this Complaint,** such other relief as this court may deem just, together with the costs and disbursements incurred by plaintiffs in this action, including the recovery of plaintiffs' reasonable attorneys' fees.

67

DATED: New York, New York
      September 20, 2011

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Paul D. Montclare (PM 4454)
Lauren J. Wachtler (LW 4205)
12 E. 49th Street, 30th Floor
New York, New York 10017
(212) 509-3900

Attorneys for Plaintiff ARIE GENGER

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
Yoav M. Griver
Bryan D. Leinbach
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400
Facsimile: (212) 753-0396

Attorneys for Plaintiff ORLY GENGER, in
her individual capacity and on behalf of the
ORLY GENGER 1993 Trust

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x
                        :

In the Matter of the Application of ORLY    :   File No.: 0017/2008
GENGER, as a person interested, for the removal :
of DALIA GENGER as Trustee of the Orly   :   **AFFIRMATION OF SERVICE OF**
Genger 1993 Trust pursuant to SCPA § 711(11) :   **MARY C. PENNISI**
                        :

-------------------------------------------------------------x

       I, MARY C. PENNISI, an attorney duly admitted to practice law before the Courts of the State of

New York, hereby affirms pursuant to CPLR § 2106, as follows:

       1.     I am a member of the New York State Bar and associated with the firm of Morgan, Lewis &

Bockius LLP;

       2.     I hereby affirm that I am not a party to this action, I am over 18 years of age, I am an attorney

duly admitted to the Courts of the State of New York, and that on July 7, 2015, I caused to be served a true

and correct copy of the attached motion papers, on the following counsel of record via OVERNIGHT

DELIVERY, postage pre-paid:

Robert A. Meister                            Yoav Griver
Pedowitz & Meister LLP                  Zeichner Elliman & Krause LLP
570 Lexington Avenue – 18th Floor        1211 Avenue of the Americas, 40th Floor
New York, NY 10022                    New York, New York 10036
212.403.7330                            212.223.0400
*Attorneys for Dalia Genger,*              *Attorneys for Orly Genger*
*as Trustee of the Orly Genger 1993 Trust*

Steven Riker, Esq.
Law Office of Steven Riker
110 E. 59th Street, 23rd Floor
New York, New York 10022
212.661.6410
*Guardian At Litem*

       I also served a second supplemental notice of motion by first class mail on July 8, 2015.

Dated:  New York, New York                  _____
        July 8, 2015                       MARY C. PENNISI



SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

```
New York County Surrogate's Court
MISCELLANEOUS DEPT.

AUG 0 7 2015
FILED
Clerk_____
```

-----------------------------------------------------------x
                                         :

In the Matter of the Application of ORLY     :    File No.: 0017/2008
GENGER, as a person interested, for the removal  :
of DALIA GENGER as Trustee of the Orly     :    **VERIFIED**
Genger 1993 Trust pursuant to SCPA § 711(11)  :    **NOTICE OF APPEARANCE**
                                           :

                                         :
-----------------------------------------------------------x

      PLEASE TAKE NOTICE, that the undersigned has been retained by and hereby appears

for and on behalf of THE 1993 SAGI GENGER TRUST, a person interested in the above estate,

and demands that service of all papers herein be made upon him at his office at the address set

forth below.

Dated:   New York, New York
        July 22, 2015

                              MORGAN, LEWIS & BOCKIUS LLP

                              By:_____
                                John Dellaportas
                                Mary C. Pennisi
                                101 Park Avenue
                                New York, NY 10178-0060
                                212.309.6716
                                212.309.6001
                                jdellaportas@morganlewis.com

                              *Attorneys for The 1993 Sagi Genger Trust*

TO:

Robert A. Meister
Pedowitz & Meister LLP
570 Lexington Avenue – 18th Floor
New York, NY 10022
212.403.7330
*Attorneys for Dalia Genger,*
*as Trustee of the Orly Genger 1993 Trust*

DB1/ 84120678.1

Yoav Griver
Zeichner Elliman & Krause LLP
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
212.223.0400

*Attorneys for Orly Genger*

Steven Riker, Esq.
Law Office of Steven Riker
110 E. 59th Street, 23rd Floor
New York, New York 10022
212.661.6410

*Guardian At Litem*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA § 711(11)

File No.: 0017/2008

TRUSTEE'S AUTHORIZATION
OF NOTICE OF APPEARANCE

------------------------------------------------------------x

    I, BEN SHOUSHAN, trustee of the 1993 Sagi Genger Trust (the "Trust"), interested in

the above entitled proceeding, hereby authorize John Dellaportas and Mary C. Pennisi of

MORGAN, LEWIS & BOCKIUS LLP, to appear on behalf of the Trust and protect its interests

in the above entitled proceeding.  I have not assigned, sold, or hypothecated any part of my

interest in decedent's estate, nor have I executed any power of attorney or similar instrument to

any person with respect thereto.

Dated:    Tel Aviv, Israel
          July 22 2015

                                      BEN SHOUSHAN

DB1/ 84120678.1

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------x
                              :

                              :    File No.: 0017/2008

In the Matter of the Application of ORLY    :
GENGER, as a person interested, for the removal  :    AFFIRMATION OF
of DALIA GENGER as Trustee of the Orly    :    BEN SHOUSHAN
Genger 1993 Trust pursuant to SCPA § 711(11)  :

                              :

                              :
----------------------------------------------------------x

      I affirm this 22nd day of July, 2015, under the penalties of perjury under the laws of New

York, which may include a fine or imprisonment, that I am physically located outside the

geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any

territory or insular possession subject to the jurisdiction of the united States, that the foregoing is

true, and that I understand that this document may be filed in an action or prroceeding in a court

of law.

Dated:      Tel Aviv, Israel
           July 22, 2015

                                    BEN SHOUSHAN

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------x
                                                    :
                                                    :
                                                    :
In the Matter of the Application of ORLY            :
GENGER, as a person interested, for the removal     :    File No.: 0017/2008
of DALIA GENGER as Trustee of the Orly              :
Genger 1993 Trust pursuant to SCPA § 711(11)        :    **AFFIRMATION OF SERVICE**
                                                    :
                                                    :
                                                    :
---------------------------------------------------------------x

I, MARY C. PENNISI, an attorney duly admitted to practice before the courts of the

State of New York, hereby affirm under penalty of perjury that on August 6, 2015, I caused the

foregoing **VERIFIED NOTICE OF APPEARANCE** to be served via regular mail, by postage

pre-paid, to all counsel of record in the above-captioned action, including:

Robert A. Meister
Pedowitz & Meister LLP
570 Lexington Avenue – 18th Floor
New York, NY 10022
*Attorneys for Dalia Genger, as Trustee of the Orly Genger 1993 Trust*

Yoav Griver
Zeichner Elliman & Krause LLP
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
*Attorneys for Orly Genger*

Steven Riker, Esq.
Law Office of Steven Riker
110 E. 59th Street, 23rd Floor
New York, New York 10022
*Guardian At Litem*

New York, New York
August 6, 2015

                                        MARY C. PENNISI

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x
                                   :

In the Matter of the Application of ORLY   :
GENGER, as a person interested, for the removal  :
of DALIA GENGER as Trustee of the Orly   :
Genger 1993 Trust pursuant to SCPA § 711(11)  :
                                   :

-------------------------------------------------------------------x

File No.: 0017/2008

**UPDATED NOTICE OF
MOTION TO DISMISS THIRD
VERIFIED AMENDED PETITION
OF ORLY GENGER**

PLEASE TAKE NOTICE that upon the annexed verified affirmation of John Dellaportas,

the Supplemental Citation to Show Cause issued by the Honorable Nora S. Anderson on May 6,

2015, and all prior proceedings had herein, the Sagi Genger 1993 Trust (the "Sagi Trust") which

is the contingent remainderman beneficiary of the Orly Genger 1993 Trust, by its attorneys,

Morgan, Lewis & Bockius LLP, will move this Court sitting, at 31 Chambers Street, New York,

New York, in the courtroom of the Honorable Nora S. Anderson in Room 509, at 10:00 a.m. in

September 22, 2015, or as soon as counsel can be heard, for an Order dismissing the Third

Amended Verified Petition for Removal of Dalia Genger as Trustee filed by Orly Genger on

October 15, 2012.

Pursuant to CPLR 2214(b), any answering papers must be served so as to be received by

no later than seven days before the return date.

Dated:      New York, New York     Respectfully submitted,
              August 25, 2015

                                    MORGAN, LEWIS & BOCKIUS LLP

                                    By:_____
                                      John Dellaportas
                                      101 Park Avenue
                                      New York, New York 10178
                                      (212) 309-6690
                                      *Attorneys for the Sagi Genger 1993 Trust*

TO:

Robert A. Meister, Esq.
Pedowitz & Meister LLP
570 Lexington Avenue – 18th Floor
New York, NY 10022
212.403.7330
*Attorneys for Dalia Genger,*
*as Trustee of the Orly Genger 1993 Trust*

Yoav Griver, Esq.
Zeichner Elliman & Krause LLP
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
212.223.0400
*Attorneys for Orly Genger*

Steven Riker, Esq.
Law Office of Steven Riker
110 E. 59 Street 23rd Floor
New York, New York 10022
212.661.6410
*Guardian At Litem*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x
                                     :    File No.: 0017/2008

In the Matter of the Application of ORLY   :
GENGER, as a person interested, for the removal   :   **AFFIRMATION OF SERVICE OF**
of DALIA GENGER as Trustee of the Orly   :   **MARY C. PENNISI**
Genger 1993 Trust pursuant to SCPA § 711(11)   :

------------------------------------------------------------x

       I, MARY C. PENNISI, an attorney duly admitted to practice law before the Courts of the State of

New York, hereby affirms pursuant to CPLR § 2106, as follows:

       1.      I am a member of the New York State Bar and associated with the firm of Morgan, Lewis &

Bockius LLP;

       2.      I hereby affirm that I am not a party to this action, I am over 18 years of age, I am an attorney

duly admitted to the Courts of the State of New York, and that on July 7, 2015, I caused to be served a true

and correct copy of the attached motion papers, on the following counsel of record via OVERNIGHT

DELIVERY, postage pre-paid:

Robert A. Meister                            Yoav Griver
Pedowitz & Meister LLP                  Zeichner Elliman & Krause LLP
570 Lexington Avenue – 18th Floor         1211 Avenue of the Americas, 40th Floor
New York, NY 10022                      New York, New York 10036
212.403.7330                              212.223.0400
*Attorneys for Dalia Genger,*              *Attorneys for Orly Genger*
*as Trustee of the Orly Genger 1993 Trust*

Steven Riker, Esq.
Law Office of Steven Riker
110 E. 59th Street, 23rd Floor
New York, New York 10022
212.661.6410
*Guardian At Litem*

       3.      I also served a second supplemental notice of motion by first class mail on July 8, 2015.

       4.      On August 25, 2015, I caused to be served the foregoing updated notice of motion by first

class mail to the recipients noted above.

Dated: New York, New York
       August 25, 2015

                                     MARY C. PENNISI

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)
- - - - - - - - - - - - - - - - - - - - - - x

AMENDED NOTICE RESETTING
RETURN DATE OF MOTION TO
DISMISS THIRD AMENDED
PETITION

File No. 0017/2008

PLEASE TAKE NOTICE that upon all pleadings previously filed and the annexed

August 25, 2015 affirmation of Robert A. Meister, DALIA GENGER, as Trustee of the Orly

Genger 1993 Trust, will move this Court sitting at 31 Chambers Street, Room 509, New York,

New York, at 10:00 a.m. in the forenoon of September 22, 2015, or as soon as counsel can be

heard, for an Order dismissing the Third Amended Petition on the grounds that the Petition fails

to state a valid claim for removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust.

PEDOWITZ & MEISTER LLP

By _____
Robert A. Meister
570 Lexington Avenue – 18th Floor
New York, NY 10022
212.403.7330
Attorneys for DALIA GENGER,
as Trustee of the Orly Genger 1993 Trust

TO:
Morgan Lewis & Bockius
101 Park Avenue
New York NY 10178-0600
Attn. John Dellaportas, Esq.
Counsel for the Sagi Genger Trust
Attn. John Dellaportas, Esq.

Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York New York 10036
Counsel for Petitioner Orly Genger
Attn. Yoav Griver, Esq.

Steven Riker, Esq.
110 East 59 Street, 23rd Floor
New York, NY 10022
Guardian *ad Litem*

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In the Matter of the Application of                    File No. 0017/2008
ORLY GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA §711(11)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### AFFIRMATION IN RESPONSE TO THE SAGI GENGER 1993 TRUST'S SUPPLEMENTAL MOTION TO DISMISS THE THIRD VERIFIED AMENDED PETITION OF ORLY GENGER

ROBERT A. MEISTER, a member of the New York Bar, affirms under the penalties of perjury:

1.  I am a member of the Bar and of Pedowitz & Meister, LLP, counsel for

Respondent Dalia Genger ("Dalia"), as Trustee of the Orly Genger 1993 Trust (the "Orly

Trust"). I make this affirmation in response to the Sagi Genger 1993 Trust's supplemental

motion to dismiss the Third Amended Petition of beneficiary Orly Genger ("Orly").

2.  Legal developments since Dalia filed her pending Motion to Dismiss the Third Amended

Petition provide further reasons why Dalia's actions have been proper attempts to protect the

Orly Trust and show that Petitioner Orly has repeatedly acted to enhance her personal interests in

derogation of, and at the expense of, the Trust.

3.  It is now clearly and indisputably established, as a matter of law, that Arie Genger

("Arie") did not cause TPR Investments, Inc. ("TPR") to transfer 1,102.80 shares of Trans-

Resources Inc. ("TRI") stock to the Orly Trust, as he agreed to in the 2004 Divorce Stipulation

Agreement between himself and Dalia Genger. The Delaware Courts have ruled that Arie failed

to cause TPR to transfer the 1,102.80 shares to the Orly Trust *Genger v. TR Investors et al.,* 26

A.3d 180 (De. 2011), thus leaving TPR as the continued legal and record owner of the TRI

shares.

4.  It was to resolve the substantial legal and factual issues concerning whether the Orly

Trust was entitled to the *economic* interest in those TRI shares that Dalia, as Trustee, entered into

1

the 2011 Settlement Agreement with TPR and D&K that, as described in the previously filed

Meister Nov, 19, 2013 Aff., ¶30, that would have netted the Orly Trust more than $6 million and

eliminated its obligation to pay more than $4 million. Rather than recognize the value of that

settlement, Orly attacked and voided it, which was voided then due to the conflict between Orly

and Dalia, as Trustee. *Genger v. Genger*, 120 A.D.3d 1102 (1st Dep't 2014).

5.      That settlement would have been benefitted the Orly Trust.  United States District

Judge Keenan subsequently ruled that TPR – not the Orly Trust - was entitled to $10.3 million

proceeds from the sale of the TRI stock held in escrow by Pedowitz & Meister, although Judge

Keenan noted that this determination was "not any kind of equitable or normative conclusion as

to who among the Genger siblings ultimately deserves recompense. That is a different question,

one that was left to the state courts to sort out." *TPR Inv. Associates, Inc. v. Pedowitz & Meister

LLP*, No. 13 CIV. 8243 JF, 2014 WL 1979932, at *6 (S.D.N.Y. May 15, 2014).

6.      When Judge Keenan so ruled there were two pending state court actions seeking a

determination as to the economic beneficial interest in the TRI stock. In the first state action,

filed by Arie and Orly, individually and purportedly on behalf of the Orly Trust, Orly did not

seek the beneficial interest in the TRI shares for the Orly Trust, but rather for Orly's father, Arie.

*Arie Genger and Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993

Trust v. Sagi Genger, et al., Sup. Ct. N.Y. Co., Index No. 651089/2010.* (See Meister Nov. 19,

2013, Aff. ¶ 13 & Ex. 9).  If that action had been successful, the Orly Trust would have lost any

claim to the economic beneficial interest, millions of dollars.  In 2014, the First Department

affirmed and expanded Justice Jaffe's dismissal of Orly's and Arie's attempt to recover the

economic value of the TRI shares for Arie, *Genger v. Genger*, 121 A.D.3d 220  (1st Dep't 2014)

and the Court of Appeals denied leave to appeal. *Genger v Genger,* 24 N.Y.3d 917 (2105).  Thus

2

Orly's and Arie's action did not obtain any economic benefit for the Orly Trust. Subsequently

Dalia, as Trustee, moved to intervene in that action to assert claims of the Orly Trust against

other parties, but Justice Jaffe has refused to decide that motion until this Court decides whether

Dalia will be removed as Trustee in the instant proceeding. *Genger v. Sagi Genger, et al., Sup.*

*Ct. N.Y. Co., Index No. 651089/2010* (May 7, 2105).

7.    The second state court action pending when Judge Keenan ruled that the state courts

could "sort out" the issue of the economic interest of the TRI shares is *Dalia Genger, as trustee*

*on behalf of the Orly Genger 1993 Trust and Dalia Genger in her individual capacity v. Arie*

*Genger*, Sup. Ct. N.Y. Co. Index No. 113862/2010 (Complaint attached as Exhibit 8 to Meister

Nov. 19, 2013 Aff.). Dalia commenced that action in her individual capacity, as a party to the

Divorce Stipulation agreement, *and* in her capacity as Trustee, to obtain damages *for the Orly*

*Trust* as a result of Arie's failure to cause TPR to transfer the TRI shares as he agreed and

warranted he would. That is the only action that sought to recover for the Orly Trust the

economic value of the beneficial interest in the TRI shares. Dalia moved for Summary Judgment

in that action on the basis that all necessary facts are either undisputed or have already been

decided by tribunals of competent jurisdiction.[1]

---

[1]    Dalia's Motion argued that as the facts were undisputed, *the Orly Trust*, as a matter of law, should be entitled to $10,689,274.92 plus 9% prejudgment interest from, October 2004, the date Arie agreed to cause TPR to the TRI shares. *See Dalia Genger's Motion for Summary Judgment,* Index No. 113862/2010, The undisputed facts on which Dalia's motion relied include that:

   a.   Arie and Dalia divorced in 2004 and that they entered into a contract, the Divorce Stipulation Agreement;

   b.   In that contract, Arie agreed that he would cause TPR Investment, Inc. ("TPR") to transfer 1,102.80 shares of Trans-Resources Inc. ("TRI") stock to the Orly Trust;

   c.   The Delaware Courts have ruled in cases in which Arie Genger was a party that he failed to cause TPR to transfer the 1,102.80 shares to the Orly Trust; and

   d.   The damages caused from this breach, the value of the TRI shares at the time of the breach, has been determined by a ruling from a 2008 arbitration award against Arie; the value of the 1,102.80 shares of TRI Stock that Arie warranted he would transfer to the Orly Trust was $10,689,274.92 at the time of the breach as determined from a post-divorced arbitration conducted by Judge Leo Milonas.

8.   Notwithstanding that such action would bring the Orly Trust millions of dollars, Orly again stepped in to sabotage the Trust's interests.  Although not a party to the *Dalia v. Arie* action, Orly submitted an affidavit in opposition to Dalia's motion for summary judgment in which Orly mischaracterized herself as the "sole beneficiary" of the Orly Trust[2] and baldly stated – citing no *evidence* - that she "do[es] not believe that Dalia is in any way trying to protect [Orly's] interest, or the interests of the Orly Trust."[3] Exhibit 14 ¶ 4.

9.   Justice Jaffe has also refused to decide that summary judgment motion until this Court decides whether Dalia will be removed as Trustee in the instant proceeding.  *Dalia Genger, as trustee on behalf of the Orly Genger 1993 Trust and Dalia Genger in her individual capacity v. Arie Genger*, Sup. Ct. N.Y. Co. Index No. 113862/2010, Docket No. 119, Interim Order dated April 1, 2015,

10.  Orly's true motivations in attempting to block Dalia's efforts to protect and enhance the Orly Trust is demonstrated by a settlement agreement she made with the Trump Group, which she kept confidential from Dalia and the Sagi Genger Trust and refused to produce in her Supreme Court actions.  However, in another action the federal court ordered it produced, *Sagi Genger v. Orly Genger*, 76 F. Supp. 3d 488 (S.D.N.Y 2015), and the federal court held that in that secret agreement "Orly has effectively monetized an interest in the very shares she claims not to have received to the tune of $32.3 million" for *her own individual interest. Id.,* at 491.

---

[2] The Sagi Genger 1993 Trust is the contingent remainderman beneficiary of the Orly Trust and is currently a party to this action in its capacity as such.

[3] More troubling, Orly also falsely claimed that *Dalia Genger v Arie Genger*, where Dalia sought zero recovery for herself and total recover for the Orly Trust, was "yet another attempt to enrich herself and Sagi at [Orly's] expense," Exhibit 14 ¶ 20, and falsely asserted that the Arie and Orly action had sought to "return the value of the TRI shares to the Orly Trust" through their state court action.  Exhibit 14 ¶ 7.

Thus Orly's actions show that she is not interested in protecting the Trust but rather in obtaining

for herself, individually, whatever claims it may have, free of trust restrictions and free of the

interest of the contingent remainder.

August 25, 2015

_____

Robert A. Meister

# EXHIBIT 14

20-01187-jlg    Doc 1-43    Filed 06/20/20    Entered 06/20/20 20:19:48    NoR part
Pg 73 of 150

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| DALIA GENGER, as Trustee on behalf of the Orly Genger 1993 Trust, and DALIA GENGER, in her individual capacity, | INDEX NO. 113862/2010 |
| Plaintiffs, | **AFFIDAVIT OF ORLY GENGER** |
| v. | |
| ARIE GENGER, | |
| Defendant. | |

STATE OF NEW YORK

COUNTY OF NEW YORK

ORLY GENGER, being duly sworn, deposes and states as follows:

1.    I am the sole beneficiary of the Orly Genger 1993 Trust (the "Orly Trust").  I make this affidavit in support of Defendant Arie Genger's ("Arie") opposition to Plaintiff Dalia Genger's ("Dalia") motion for summary judgment, and in support of Arie's cross-motion for summary judgment, a stay of these proceedings, or for dismissal of these proceedings for failure to join necessary parties.

2.    Dalia, my mother, purports to bring this action on behalf of the Orly Trust, as Trustee of the Orly Trust.

3.    As the sole beneficiary of the Orly Trust, I do not approve of Dalia's filing or prosecution of this action against my father, Arie.

4.    I believe that the actions being undertaken by Dalia in this lawsuit are actually intended to solely benefit Dalia, and her son Sagi.  I do not believe that Dalia is in any way trying to protect my interests, or the interests of the Orly Trust.

5.     Since 2008, I have disputed Dalia's ability to adequately represent the interests of the Orly Trust. I have been seeking to have Dalia removed as Trustee of the Orly Trust for almost seven years now.

6.     At one time, the Orly Trust contained two valuable assets: (i) a 23.52% indirect interest in TPR Investment Associates, Inc. ("TPR"); and (ii) 1,102.80 shares of common stock in Trans-Resources, Inc. ("TRI"). Dalia's actions as Trustee have consistently assisted my brother, Sagi, in his attempts to strip the Orly Trust of these assets and their value.

7.     In a related action pending before this Court, captioned *Arie Genger and Orly Genger v. Sagi Genger, et al.*, Index No. 651089/2010, I am currently seeking, among other things, the return of the value of those TRI shares to the Orly Trust (the "2010 Action").

8.     In another related action before this Court, captioned *Orly Genger v. Dalia Genger, et al.*, Index No. 109749/2009, I am seeking the return of the Orly Trust's 23.52% indirect ownership interest in TPR (the "2009 Action").

9.     The various ways in which Dalia has assisted my brother Sagi in stripping the Orly Trust of its assets are detailed in the operative complaints in the 2010 Action and the 2009 Action, the contents of which I adopt as if fully set forth herein. A true and correct copy of the operative complaint in the 2010 Action is attached hereto as Exhibit A. A true and correct copy of the operative complaint in the 2009 Action is attached hereto as Exhibit B.

10.     This Court in both the 2010 Action and the 2009 Action has recognized that, as the beneficiary of the Orly Trust, I have the right to assert causes of action on behalf of the Orly Trust. A true and correct copy of the May 29, 2013 Decision and Order of this Court in the 2009 Action stating this fact is attached hereto as Exhibit C.

11.     I have also brought a proceeding specifically seeking to remove my mother Dalia as Trustee of the Orly Trust in the New York Surrogate's Court. The Surrogate's Court Action is titled *In the Matter of the Application of Orly Genger, as person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust pursuant to SPCA § 711(11)*, Index No. 0017/2008. That action is still pending before the Surrogate's Court.

12.     I originally brought an action to remove Dalia as Trustee in February 2008, just after she was appointed as Trustee of the Orly Trust. I did so because I feared Dalia would not protect my interests while serving as Trustee because of Dalia's animosity toward Arie, and her collusion with Sagi.

13.     Dalia's actions since 2008 have proven that my fears were well-grounded.

14.     For example, on or around January 31, 2009, Dalia executed an agreement entitled "Meeting of Partners of D&K LP – Jan. 31, 2009 & Agreement" (the "Meeting Agreement"). The Meeting Agreement purported to grant D&K GP (*i.e.*, Sagi) unfettered authority to encumber the Orly Trust's TRI shares, which directly contrary to my interests and the interests of the Orly Trust. This Meeting Agreement was negotiated and executed without ever informing me, the Orly Trust's beneficiary. A true and correct copy of the Meeting Agreement is attached hereto as Exhibit D.

15.     In 2009, I also learned that Dalia had assisted Sagi in yet another attempt to strip the Orly Trust of its indirect interest in TPR by allowing Sagi and TPR to improperly foreclose on a Note the Genger family had never intended to be enforced, and conducting a sham UCC sale. Notably, this notification process and  contrived UCC sale took place without Dalia

objecting in any way, without her taking preventative action of any kind, and without notifying me of any of this, all obviously designed to enrich Sagi and my expense.

16.     In October 2011, Dalia further acted against my wishes when she instituted a declaratory judgment action in the Delaware Chancery Court seeking a declaration of ownership of the 1,102.80 shares of TRI stock that were once an asset of the Orly Trust, which she did in spite of the fact that I was already seeking a determination as to that ownership in New York in the 2010 Action. A true and correct copy of the complaint filed by Dalia in Delaware is attached hereto as Exhibit E, and the stipulation ordered by the Court on August 30, 2013 is Exhibit F.

17.     In order to prevent Dalia from further acting contrary to my interests and the interests of the Orly Trust, I sought an injunction in the 2010 Action against Dalia prosecuting the Delaware action. This injunction was granted by the Court in the 2010 Action, the Court recognizing that this maneuver by Dalia was clearly not designed to protect my interests or the interest of the Orly Trust. True and correct copies of the temporary restraining orders, injunction, and Amended Judgment continuing this injunction are attached hereto as Exhibits G, H, I and J.

18.     On July 6, 2012, as a result of discovery in the 2009 Action, I learned that Dalia, purportedly on behalf of the Orly Trust, had entered into sham settlement agreements with TPR that were prejudicial to Orly and the Orly Trust, as well as contrary to prior orders of the Court in the 2009 Action and 2010 Action.

19.     The Court in the 2009 Action previously held that this sham settlement agreement

were void, as they were in violation of court orders. *See* Exhibit C.

20.     All of the actions Dalia as taken to date- in this Court, in Delaware, in the Federal

Court and in the Surrogates Court clearly demonstrate a multitude of collusive plans with Sagi

and TPR designed not to protect me or the Orly Trust, but rather to strip the Orly Trust of its

assets. This claim she has purportedly asserted on behalf of the Orly Trust against Arie in this

action is yet another attempt to enrich herself and Sagi and my expense.

ORLY GENGER

Sworn to before me
February 14, 2014

Notary Public

LAUREN J WACHTLER
Notary Public, State of New York
No. 5C11538
Qualified in Westchester County
Term Expires April 19, 199̶ 2015

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
-------------------------------------------------------------------- X

In the Matter of the Application of                    Index No. 0017/2008
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the              **AFFIDAVIT**
Orly Genger 1993 Trust pursuant to SCPA §711(11),      **OF SERVICE**
--------------------------------------------------------------X

STATE OF NEW YORK              )
                              : ss.:
COUNTY OF NEW YORK            )

        DAVID BARTKY, being duly sworn, deposes and says: I am over the age of 18

years and not a party to this action.  On the 25th day of August, 2015, I served the

attached AMENDED NOTICE RESETTING RETURN DATE OF MOTION TO

DISMISS THIRD AMENDED PETITION with supporting documents, via UPS

overnight courier to:

        Yoav M. Griver, Esq.              John Dellaportas, Esq.
        Zeichner Ellman & Krause LLP      Morgan Lewis & Bockius
        1211 Avenue of the Americas       101 Park Avenue
        New York, NY 10036                New York, NY 10178

        Steven Riker, Esq.
        110 East 59th Street, 23rd Floor
        New York, NY 10022

                                        David Bartky

Sworn to before me this
25th day of August, 2015.

_____
Notary Public

        ROBERT A. MEISTER
    Notary Public, State of New York
        No. 31-02ME2653350
    Qualified in New York County
Commission Expires March 30, 2019

New York County Surrogate's Court
MISCELLANEOUS DEPT.

SEP **1 6** 2015

**FILED**

Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of Orly Genger to
Remove Dalia Genger as Trustee of The Orly Genger
1993 Trust Established on December 13, 1993, by

ARIE GENGER,

Grantor

---

File No.:  0017/2008

**<u>STIPULATION</u>**

IT IS HEREBY STIPULATED by and between counsel for the parties

that: (1) the return dates for Dalia Genger's and the Sagi Genger 1993 Trust's (the "Sagi

Trust") motions to dismiss are adjourned from September 22, 2015 to October 27, 2015;

(2) petitioner's and guardian ad litem's oppositions to Dalia Genger's and the Sagi Trust's

motions, if any, shall be served on or before October 6, 2015 (with courtesy copies sent

via email); (3) Dalia Genger's and the Sagi Trust's reply papers in further support of their

motions shall be served so that it is received no later than October 26, 2015 (with courtesy

copies sent via email by 5:00pm EST); (4) a facsimile copy of this Stipulation shall be

deemed to be an original; and (5) this stipulation can be signed in counterparts all of which constitute one document.

Dated:    New York, New York
          September 11, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
     Yoav M. Griver
     Bryan D. Leinbach
     1211 Avenue of the Americas
     New York, New York 10022
     (212) 223-0400

     Attorneys for Orly Genger

PEDOWITZ & MEISTER LLP

By: Robert A. Meister / by permission
     Robert A. Meister
     570 Lexington Avenue – 18th Floor
     New York, New York 10022
     (212) 403-7330


     Attorneys for Dalia Genger

MORGAN, LEWIS & BOCKIUS LLP

By: John Dellaportas / by permission
     John Dellaportas
     101 Park Avenue
     New York, New York 10178-0060
     (212) 309-6000

     Attorneys for the Sagi Genger 1993 Trust

LAW OFFICE OF STEVEN RIKER

By: Steven Riker / by permission
     Steven Riker, Esq.
     110 E. 59th Street, 23rd Floor
     New York, New York 10022
     Tel No. (212) 661-6410


     Guardian Ad Litem

#825752

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No.: 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SPCA § 711(11)

# STIPULATION

### ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of Orly Genger to
Remove Dalia Genger as Trustee of The Orly Genger
1993 Trust Established on December 13, 1993, by

ARIE GENGER,

Grantor

File No.: 0017/2008

---

> New York County Surrogate's Court
> **MISCELLANEOUS DEPT.**
>
> OCT 1 3 2015
>
> **FILED**
> Clerk_____

**ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI
GENGER 1993 TRUST'S MOTION TO DISMISS ORLY'S PETITION
FOR THE REMOVAL OF DALIA GENGER AS TRUSTEE**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 8

ARGUMENT ............................................................................................................. 8

I.      ORLY'S THIRD AMENDED PETITION CLEARLY SETS
        FORTH A CAUSE OF ACTION FOR DALIA'S REMOVAL AS
        TRUSTEE OF THE ORLY TRUST.  ACCORDINGLY, THE SAGI
        TRUST'S MOTION TO DISMISS MUST BE DENIED .......................... 8

II.     THE SAGI TRUST'S FIRST ARGUMENT CONCERNING JOEL
        ISAACSON IS MERITLESS AND DOES NOT NEGATE ANY OF
        THE PLEADED FACTS SUPPORTING DALIA'S REMOVAL AS
        TRUSTEE OF THE ORLY TRUST ...................................................... 14

III.    THE SAGI TRUST'S SECOND ARGUMENT CONCERNING A
        CONFIDENTIAL SETTLEMENT BETWEEN ORLY AND THE
        TRUMP GROUP IS MERITLESS AND DOES NOT NEGATE
        ANY OF THE PLEADED FACTS SUPPORTING DALIA'S
        REMOVAL AS TRUSTEE OF THE ORLY TRUST ............................. 19

CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Ackerman v. 305 E. 40th Owners Corp.,
189 A.D.2d 665 (1st Dept. 1993) ............................................................................8

Berrios v. 735 Ave. of the Ams., LLC,
82 A.D.3d 552 (1st Dept. 2011) ..............................................................................5

Birnbaum v. Birnbaum,
73 N.Y.2d 461 (1989)...............................................................................................8

Breslin Realty Corp. v. Shaw,
72 A.D.3d 258 (2d Dept. 2010) ............................................................................11

CDR Creances S.A.S. v. Cohen,
23 N.Y.3d 307 (2014).................................................................................6, 16, 17

Doe v. New York University,
6 Misc.3d 866 (Sup. Ct. N.Y. Cty. 2004) .............................................................11

Genger v. Genger,
120 A.D.3d 1102 (1st Dept. 2014) ....................................................................2, 12

Genger v. Genger,
121 A.D.3d 270 (1st Dept. 2014) ..........................................................................23

Genger v. Genger,
2013 N.Y. Misc. LEXIS 2304 (Sup. Ct. N.Y. Cty. May 31, 2013), aff'd, 120 A.D.3d
1102 (1st Dept. 2014) ............................................................................................11

Genger v. Genger,
2015 U.S. Dist. LEXIS 649 (S.D.N.Y. Jan. 5, 2015) ........................................6, 21

Greystone Funding Corp. v Kutner,
121 A.D.3d 581 (1st Dept. 2014) ............................................................................8

Guggenheimer v. Ginzburg,
43 N.Y.2d 268 (1977)...............................................................................................8

In re Estate of Brandt,
81 A.D.2d 268 (1st Dept. 1981) ..............................................................................9

In re Estate of Saxton,
179 Misc.2d 681 (Sur. Ct. Broome Cty. 1998).......................................................8

In re Van Deusen's Estate,
    37 A.D.2d 131 (1st Dept. 1971) ................................................................................9

Landon v Kroll Lab. Specialists, Inc.,
    22 N.Y.3d 1 (2013) ...................................................................................................8

Marquez v. City of New York,
    48 A.D.3d 241 (1st Dept. 2008) ...............................................................................5

Matter of the Estate of Helen Thompson,
    232 A.D.2d 219 (1st Dept. 1996) ...........................................................................10

Matter of the Estate of Manny E. Duell, Deceased,
    258 A.D.2d 382 (1st Dept. 1999) ......................................................................9, 10

Matter of Hall,
    275 A.D.2d 979 (4th Dept. 2000) .............................................................................9

Matter of the Proceeding to Remove David M. Mergenhagen as Trustee,
    50 A.D.3d 1486 (4th Dept. 2008) .............................................................................9

Matter of Stewart,
    2011 N.Y. Misc. LEXIS 6504 (Sur. Ct. N.Y. Cty. Dec. 1, 2011) ...........................9

Matter of Wood,
    177 A.D.2d 161 (2d Dept. 1992) ..............................................................................8

Meinhard v. Salmon,
    249 N.Y. 458 (1928) .................................................................................................9

Ryan v. New York Tel. Co.,
    62 N.Y.2d 494 (1984) .............................................................................................11

Tap Holdings, LLC v Orix Fin. Corp.,
    109 A.D.3d 167 (1st Dept. 2013) .............................................................................8

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP,
    2014 U.S. Dist. LEXIS 67116 (S.D.N.Y. May 15, 2014) .....................................23

Ventur Group, LLC v. Finnerty,
    80 A.D.3d 474 (1st Dept. 2011) .............................................................................11

Watts v. Swiss Bank Corp.,
    27 N.Y.2d 270 (1970) .............................................................................................11

Zuckerman v. New York,
    49 N.Y.2d 557 (1980) ...............................................................................................5

**STATUTES**

CPLR 3211 (McKinney's 2014)..............................................................................3, 4, 8

**OTHER AUTHORITIES**

http://dictionary.reference.com/browse/acquainted.......................................................15

## PRELIMINARY STATEMENT

The question before the Court is a narrow one: Are the allegations of petitioner/beneficiary Orly Genger's ("Orly") 96 paragraph, 35 exhibit Third Amended Petition ("TAP"), when taken as true, sufficient to support the judicial removal of Dalia Genger ("Dalia") as sole Trustee of the Orly Genger 1993 Trust ("Orly Trust")? The answer to that question is plainly "Yes." The detailed facts alleged in the TAP, taken as true, demonstrate that Dalia has an inherent and undeniable conflict of interest, and is unwilling or unable to properly discharge her fiduciary duties and act in the best interests of Orly, the sole non-contingent beneficiary of the Orly Trust. Nothing in the Sagi Genger 1993 Trust's ("Sagi Trust") motion papers even addresses these operable facts. As a result, its motion to dismiss should be denied.

Since July 2009 (and before), Orly, the sole lifetime beneficiary of the Orly Genger 1993 Trust ("Orly Trust"), has been seeking to remove her mother, Dalia, as sole Trustee. Orly seeks Dalia's removal because, as detailed in the TAP, Dalia is hostile to Orly, and has used, and continues to use, her position as Trustee to harm Orly in contravention of her fiduciary duties. In this regard, Orly's TAP[1] alleges that Dalia:

- failed to notify Orly that her brother intended to conduct a foreclosure of the Orly Trust's indirect interest in TPR Investment Associates, Inc. ("TPR"), even though she was specifically informed of the foreclosure in advance (TAP ¶¶ 58-65);

- failed to make any effort to protect the Orly Trust's interest in TPR from foreclosure, even though Dalia successfully argued during a marital arbitration that the promissory note Sagi intended to foreclose upon was never intended to be collected (TAP ¶¶ 31-35, 58-65);

- signed agreements that allowed Sagi Genger ("Sagi"), Orly's older brother and established nemesis, to encumber or pledge the Orly Trust's assets, including the Orly Trust's interest in Trans-Resources, Inc., without ever informing Orly (TAP ¶¶ 46-54);

---

[1]  For the Court's convenience, a copy of the TAP (without exhibits) is attached as **Exhibit 1** to the accompanying Affirmation of Bryan D. Leinbach ("Leinbach Aff.").

and

- executed a set of secret "settlement agreements" and related promissory notes that – the New York Supreme Court and Appellate Division, First Department, already have held – conflicted with Dalia's role as Trustee of the Orly Trust. These secret agreements improperly saddled the Orly Trust with millions in debt, violated this Court's July 2009 order requiring 10 business days notice to Orly before doing anything that in any way affected the Orly Trust's interest in TRI shares, violated other court injunctions, and imposed multiple poison pills designed to improperly entrench Dalia as Trustee of the Orly Trust against Orly's wishes (TAP ¶¶ 76-93).

The Sagi Trust's motion papers do not address any of these well-pled allegations, which must be accepted as true by this Court on a motion to dismiss.

The Sagi Trust also fails to inform the Court that, since Orly started this proceeding to remove Dalia as Trustee in July 2009, the Appellate Division, First Department, the New York Supreme Court, the United States District Court for the Southern District of New York, and the Delaware Chancery Court, have all found Dalia has a conflict of interest and should not serve as Trustee:

> *In entering into the aforementioned October 2011 and March 2012 settlement agreements with TPR and D & K LP on behalf of Orly Trust, of which she was sole trustee, Dalia had a conflict of interest.* … Moreover, as previously discussed, *the settlements were entered into in violation of the aforementioned 2010 and 2011 injunctions.* For these reasons, the settlements are voidable and, given the expressed intention of plaintiff (the beneficiary of Orly Trust) to void them, the purported releases they contain are not enforceable.

Genger v. Genger, 120 A.D.3d 1102, 1104 (1st Dept. 2014) (emphases added); 7/3/14 Decision and Order at 3 ("Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly."); 3/21/14 Decision and Order at 4 ("…having found that 'Dalia – as trustee of Orly's Trust – had a conflict of interest … the Appellate Division throws doubt on Dalia's standing to complain"); 8/15/12 Hearing Tr. at 4:10-13 ([Judge Feinman] "I mean, unless there is some truth to the conspiracy theories asserted by the plaintiffs, why is she [Dalia]

2

continuing to serve?  Why doesn't she resign?"); 4/29/14 SDNY Hearing Tr. at 27-28 ([Judge

Keenan] "And as I read Chancellor Strine's – he's chief justice down there, chief judge.  As I

read his remarks, he kept suggesting that she [Dalia] no longer should be trustee, didn't he?");

see also 8/1/13 Delaware Hearing Tr. at 42-43 (Chancellor Strine questioning Dalia's fitness to

serve as Trustee, where "Dalia brings a lawsuit that Orly doesn't want" and "Dalia's aligned with

Sagi").  (Each of these decisions will be more fully addressed below.)

These court determinations that Dalia is adverse to Orly, and the well-pleaded

allegations in the TAP, are sufficient legal grounds to disqualify Dalia and remove her as Trustee

of the Orly Trust, which, of course, means the Sagi Trust's motion to dismiss must be denied.

Clinching the matter, the New York County Supreme Court already has ruled that

Orly's causes of action against Dalia and Sagi for fraud and breach of fiduciary duty arising from

the same fraudulent UCC sale at issue in the TAP were sufficient to survive converted motions[2]

for summary judgment and should proceed to trial:

> Plaintiff alleges that the various defendants [including Dalia and
> Sagi] together committed fraud by, for example, creating
> conditions that resulted in the "sham sale" of the TPR Investment
> assets owed by D&K Ltd. Partnership, and agreeing in the January
> 2009 Meeting Agreement to give power to D&K GP, the company
> controlled by Dalia and Sagi, to pledge the Orly Trust's shares of
> Trans-Resources as security for the promissory note (Am. Ver.
> Compl. [Doc. 46-4] ¶¶ 76-68, 151).  Plaintiff asked repeatedly for
> information about her trust, but because defendant [Dalia] has not
> been forthcoming nor kept her informed, she did not know that
> there was any need to attempt to protect the assets of her trust.
>
> The evidence and arguments provided by both parties show that
> there is a question of fact as to whether Dalia Genger acted with

---

[2]    The defendants filed motions to dismiss.  The New York Supreme Court (Feinman, J.) converted those motions
to ones for summary judgment pursuant to CPLR 3211(c), inviting defendants to file any evidence they had to
support summary judgment in their favor.  Thereafter, following briefing, submission of defendants' purported
evidence, and oral argument, the New York Court denied defendants' motions for summary judgment.

> intent to commit fraud against plaintiff's trust, and to lull plaintiff
> into a false sense of security as to the status of her trust.
> Accordingly, the branch of defendant's motion to dismiss the 5th
> cause of action is denied.

7/28/10 Amended Decision and Order at 18-19 (Leinbach Aff., **Exhibit 2**); see also id. at 20-22

(finding Orly sufficiently pled causes of action for fraud against Sagi). Indeed, the Supreme

Court upheld Orly's claims against Sagi and D&K GP LLC, an entity controlled by Sagi and

Dalia, for aiding and abetting Dalia's breach of fiduciary duty, even as the Court transferred

Orly's viable claim for breach of fiduciary duty against Dalia to this Court in the interests of

judicial economy.[3] The Sagi Trust, which is in privity with its beneficiary, Sagi, is collaterally

estopped from disputing the judicial determination that both Dalia and Sagi are validly alleged to

have committed fraud against Orly and the Orly Trust.

For all these reasons, the instant motion to dismiss the TAP should be denied.

See Argument, Point I.

As the TAP allegations already have been adjudged sufficient, the Sagi Trust

never really contends the TAP's allegations are legally insufficient, or do not adequately plead

causes of action against Dalia. Rather, the Sagi Trust tries to advance two legally and factually

meritless contentions. *First*, the Sagi Trust contends that Orly committed a "fraud upon the

---

[3]   By its July 28, 2010 Amended Decision and Order, the Supreme Court found that the causes of action against
Dalia for breach of fiduciary duty should be prosecuted in this Court, in the interests of judicial economy:

> As argued by defendant, the claim of breach of fiduciary duty is also at issue in a proceeding
> currently before the Surrogate's Court entitled *In the Matter of the Application of Orly Genger,
> as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993
> Trust pursuant to SCPLA § 711(1)*, File No. 17/2008 (Surrogate's Court NY County). Plaintiff
> does not address this argument. Accordingly, in the interest of judicial economy, the branch of
> defendant's motion seeking summary judgment and dismissal as to the complaint's 1st cause of
> action, is granted, on the ground that the same claim is pending in another court proceeding
> (CPLR 3211[a][4]).

7/28/10 Amended Decision at 17 (Leinbach Aff., Ex. 2).

court" by misrepresenting her association with Joel Isaacson, the proposed replacement Trustee. (See Dellaportas Aff. ¶¶ 3-7). *Second*, the Sagi Trust contends that Orly's petition to remove Dalia is nothing more than Orly's attempt to keep from Dalia and the Orly Trust proceeds Orly received from a 2013 settlement agreement in which Orly settled her *individual claims* against a group of persons and entities referred to as the "Trump Group." See Dellaportas Aff. ¶¶ 8-20. Both arguments are meritless for the many reasons discussed below, including that they depend on facts outside the pleadings for which no evidence is proffered.[4]  Moreover, both arguments – which simply attack Orly – are irrelevant here; neither argument addresses the well-pled allegations against Dalia, or Dalia's fitness to continue as Trustee against Orly's wishes.[5]

The Sagi Trust's argument regarding Joel Isaacson should fail for at least three independent reasons. *First*, as a matter of fact, Orly's statement that "Mr. Isaacson is not acquainted with any members of the Genger family" (see TAP ¶ 96) is not a "fraud on the court," or even untrue.    That statement was part of Orly informing the Court that Mr. Isaacson has no interest in any Genger family entity, or association with any Genger family member, that would or could conflict with his duties as Trustee of the Orly Trust.    That Orly briefly hired Mr. Isaacson as a financial advisor in 2007 does not change this fact or make it untrue.[6]

---

[4]  The Sagi Trust's motion to dismiss relies entirely on the contentions of Sagi Trust attorney John Dellaportas who has no personal knowledge of the transactions at issue.  These attorney contentions are not evidence as a matter of law.  See Berrios v. 735 Ave. of the Ams., LLC, 82 A.D.3d 552, 553 (1st Dept. 2011) (attorney affirmation "entitled to no evidentiary weight") (citing Zuckerman v. New York, 49 N.Y.2d 557, 563 (1980) (attorney affirmation "is without evidentiary value and thus unavailing")); Marquez v. City of New York, 48 A.D.3d 241, 241 (1st Dept. 2008) (attorney affirmation insufficient to offer admissible evidence on summary judgment).

[5]  In a throwaway paragraph, the Sagi Trust also "adopts," without discussion, the arguments Dalia made to dismiss the TAP, a motion already fully briefed. (See Dellaportas Aff. ¶ 21.)  The papers Orly submitted in opposition to Dalia's motion to dismiss and incorporated herein by reference (including the memorandum of law attached as **Exhibit 3** to the Leinbach Aff.) explain why Dalia's motion to dismiss is meritless.

[6]  The Sagi Trust fails to inform the Court that Mr. Isaacson was retained because Sagi demanded that Orly change her then accountants to another company before he would provide Orly with any information about her or the Orly Trust's assets.  See 3/23/15 Trial Tr. at 2825:15-2827:4 (Leinbach Aff., **Exhibit 4**).  Orly changed her

*Second*, the Sagi Trust's argument that this one statement rises to the extreme level of a "fraud on the court" fails as a matter of law.  To be a "fraud on the court," Orly must have "acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and [her] adversary's defense of the action," by engaging in such acts as "fabrication of evidence, perjury, and falsification of documents" that destroy "the truth-finding process."  CDR Creances S.A.S. v. Cohen, 23 N.Y.3d 307, 320 (2014).  She did not.  Indeed, the Sagi Trust does not allege (much less provide any evidence) that Orly has engaged in such improper acts, or that the "truth-finding process" somehow has been destroyed.

*Third*, not only is the Sagi Trust's contention factually and legally meritless, it is irrelevant to the central question to be answered – whether the allegations of the TAP, taken as true, are sufficient to justify Dalia's removal as Trustee, and thus survive a motion to dismiss. See Argument, Point II.

The Sagi Trust's argument regarding the settlement between Orly and the Trump Group is equally meritless.  *First*, as a matter of simple logic, Orly's February *2008* petition to remove Dalia cannot be motivated by Orly's 2013 Confidential Settlement Agreement ("CSA"), especially since Orly settled a case that didn't commence until July *2010*.

*Second*, the CSA with the Trump Group settled Orly's individual claims, as the record in Supreme Court clearly demonstrates.  *Indeed, the federal district court and the New York Supreme Court already have found the CSA did not settle Orly Trust claims.*  See Genger v. Genger, 2015 U.S. Dist. LEXIS 649, *9-10 (S.D.N.Y. Jan. 5, 2015) ("The 2013 Settlement

---

accountants, but to no avail.  Sagi still refused to provide Orly with the financial information she wanted.  See id. 2827:14-17; 2828:23-2829:12; 2852:3-6; 2854:2-7; 2855:23-26; 2860:23-2861:12; 3221:21-3222:16; 3234:6-13; 3236:2-7; 3240:3-19 (testimony of Orly Genger and Joel Isaacson).

Agreement does not waive any of the Orly Trust's claims."); 3/20/14 Decision and Order at 4 ("in the settlement agreement, Orly stops short of releasing derivative claims").

The Sagi Trust fails to inform the Court that Sagi and Dalia used the fact that the Orly Trust claims were *not* settled under the CSA to subsequently settle the Orly Trust claims in a sweetheart deal with Dalia's favored son, Sagi, in a Delaware Action commenced by Dalia as Trustee. This deal not only failed to obtain any money for the Orly Trust, it guaranteed that Sagi – not the Orly Trust – would get the $10.3 million the Trump Group paid for the Orly Trust's prior interest in TRI, a closely held Genger family company.[7] That Dalia is now using Orly Trust monies to have her lawyers try to misdirect money from beneficiary Orly to the Orly Trust, so that money can then be dissipated by Dalia to Sagi like all the other Orly Trust assets, further demonstrates Dalia's hostility to Orly.

*Third*, the CSA is irrelevant to the central question to be answered: whether the allegations of the TAP, taken as true, are sufficient to justify Dalia's removal as Trustee, and thus survive a motion to dismiss. If anything, the need to remove Dalia is underscored by her continuing efforts to assert control over purported Orly Trust's assets so she may continue dissipating them. See Argument, Point III.

For these many reasons, the Sagi Trust's motion to dismiss should be denied and Orly's TAP should move forward to trial.

---

[7] An actual example of a "fraud upon the court" is the conflicting positions Sagi and Dalia and their counsel have taken in the Delaware Court – that the Orly Trust claims were not settled by the CSA such that Dalia could subsequently settle those claims – and in this Court and the New York Supreme Court – that the CSA settled the Orly Trust claims.

### STATEMENT OF FACTS

The relevant facts are set forth in paragraphs 13 through 93 of the TAP (attached as Exhibit 1 to the accompanying Leinbach Aff.) and pages 1 to 11 of Orly's memorandum of law in opposition to Dali's motion to dismiss (attached as Exhibit 3 to the accompanying Leinbach Aff.), incorporated here by reference.

### ARGUMENT

Orly's TAP cannot properly be dismissed. On a motion to dismiss, the Court is required to take all fact allegations in the TAP as true, giving Orly the benefit of every inference. Those facts, thus credited, more than adequately state a legal and equitable basis for Dalia's removal as Trustee. See Greystone Funding Corp. v Kutner, 121 A.D.3d 581, 583 (1st Dept. 2014) ("[I]n assessing the adequacy of a complaint under CPLR 3211 (a) (7), the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference.") (quoting Landon v Kroll Lab. Specialists, Inc., 22 N.Y.3d 1, 5 (2013)); Tap Holdings, LLC v Orix Fin. Corp., 109 A.D.3d 167, 174 (1st Dept. 2013) (same); see also Ackerman v. 305 E. 40th Owners Corp., 189 A.D.2d 665, 666 (1st Dept. 1993) (motion to dismiss "should be denied if 'from [the pleading's] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law'") (quoting Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275 (1977)).

I.    **ORLY'S THIRD AMENDED PETITION CLEARLY SETS FORTH A CAUSE OF ACTION FOR DALIA'S REMOVAL AS TRUSTEE OF THE ORLY TRUST. ACCORDINGLY, THE SAGI TRUST'S MOTION TO DISMISS MUST BE DENIED.**

As Trustee, Dalia is obligated to "be as a watchman in the night, ever vigilant and always dedicated to the best interest of the *cestui que trust*." In re Estate of Saxton, 179 Misc.2d

681, 693 (Sur. Ct. Broome Cty. 1998). She has "the duty of communicating all the material facts

to the beneficiary," Matter of Wood, 177 A.D.2d 161, 167 (2d Dept. 1992) (rejecting trustee

bank's contention that it had no duty to inform the trust beneficiary of its intent to liquidate the

stock and bond portfolio of the trust), and is required to place Orly's interests above her own.

Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466 (1989) (fiduciary "is bound to single-mindedly

pursue the interests of those to whom a duty of loyalty is owed"); Meinhard v. Salmon, 249 N.Y.

458, 464 (1928) (trustee bound to standard "stricter than the morals of the market place. Not

honesty alone, but the punctilio of an honor the most sensitive"); In re Van Deusen's Estate, 37

A.D.2d 131, 133 (1st Dept. 1971) (same).

   A Trustee's violation of her fiduciary duties to a beneficiary, or the existence of a

conflict of interest between trustee and beneficiary – irrespective of any resulting harm – is

grounds for removal of the Trustee. See In re Estate of Brandt, 81 A.D.2d 268, 273-274 (1st

Dept. 1981) ("acts of self-dealing and other breaches of fiduciary duty alleged would, of course,

if established, warrant the trustees' removal, irrespective of whether petitioners' beneficial

interests were affected"); Matter of Stewart, 2011 N.Y. Misc. LEXIS 6504, *4 (Sur. Ct. N.Y.

Cty. Dec. 1, 2011) (Anderson, J.) (confirming referee's report to remove trustee based on

"repeated instances in which [Trustee] put her own personal interests before her fiduciary duty");

Matter of Hall, 275 A.D.2d 979, 980 (4th Dept. 2000) ("If the personal interests of a trustee

conflict with her interest as a trustee, the Court may remove her as a trustee.").

   Similarly, removal is warranted where a trustee exhibits open hostility to the

beneficiary and interferes with the administration of the trust for the beneficiary's benefit. Thus,

in Matter of the Proceeding to Remove David M. Mergenhagen as Trustee, the Trustee was

removed because his

> open hostility toward the other beneficiaries directly conflicts with
> his duty to the trust where, as here, that hostility has "interfere[d]
> with the proper administration of the trust" (citing *Matter of Rudin,*
> 15 AD3d 199, 200, 789 NYS2d 123 [2005], *lv denied* 4 NY3d 710,
> 830 NE2d 1146, 797 NYS2d 817 [2005].

50 A.D.3d 1486, 1488 (4th Dept. 2008) (reversing Surrogate's Court). Similarly, in Matter of

the Estate of Manny E. Duell, Deceased, the Appellate Division, First Department, affirmed the

Surrogate Court's decision to remove the co-trustee:

> In light of the demonstrated antagonisms between appellant co-
> trustee and the trust beneficiaries, and between appellant and his
> co-trustee, and the evidence establishing that those antagonisms
> resulted in actions by appellant co-trustee interfering with the
> proper administration of the estate, and upon the proof tending to
> demonstrate that future cooperation was unlikely, the Surrogate's
> determination to remove appellant as co-trustee was a proper
> exercise of discretion. (citations omitted)

258 A.D.2d 382, 383 (1st Dept. 1999). See also Matter of the Estate of Helen Thompson, 232

A.D.2d 219, 219-220 (1st Dept. 1996) ("it is well settled that the Surrogate may disqualify a

person from receiving letters of administration where the friction between such a person and a

beneficiary or co-fiduciaries interferes with the proper administration of the estate and future

cooperation is unlikely") (citations omitted).

Here, the TAP sets forth well-pled allegations of Dalia's clear breaches of

fiduciary duty and open hostility to her daughter. The TAP sets forth how Dalia failed to inform

Orly about the foreclosure of the Orly Trust's indirect interest in TPR Investment Associates,

Inc. through D & K Limited Partnership before that foreclosure sale occurred and made no effort

to stop the foreclosure, even though Dalia had successfully argued only months before that the

promissory note at issue was never intended to be collected. See TAP ¶¶ 31-35, 58-65 (Leinbach

Aff., Ex. 1). The TAP also sets forth how Dalia used her position as Trustee to enter into secret

"defendants-only" settlement agreements and related notes designed to prevent Orly from

removing her as Trustee or appointing a co-trustee, while saddling the Orly Trust with millions of dollars of debt – all without ever informing Orly or any Court prior to executing the agreements. See id. ¶¶ 76-93. Taken as true, the allegations in the TAP set forth a cause of action for Dalia's removal as Trustee.

Indeed, the Supreme Court has twice refused to dismiss the identical allegations in a related Supreme Court action (Index No. 109749/2009), holding that those allegations set forth causes of action that should proceed to trial. See 7/28/10 Amended Decision and Order (Feinman, J.) (Leinbach Aff., Ex. 2); Genger v. Genger, 2013 N.Y. Misc. LEXIS 2304 (Sup. Ct. N.Y. Cty. May 31, 2013) (Jaffe, J.), aff'd, 120 A.D.3d 1102 (1st Dept. 2014). The Sagi Trust, which is in privity with its beneficiary, Sagi,[8] is collaterally estopped from disputing the judicial determination that both Dalia and Sagi are validly alleged to have committed fraud against Orly and the Orly Trust, and that Sagi is validly alleged to have aided and abetted Dalia's breaches of her fiduciary duties as Trustee. See Breslin Realty Corp. v. Shaw, 72 A.D.3d 258, 263 (2d Dept. 2010) (collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in the prior action or proceeding, and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.") (citing Ryan v. New York Tel. Co., 62 N.Y.2d 494, 501-502 (1984)); Ventur Group, LLC v. Finnerty, 80 A.D.3d 474, 475 (1st Dept. 2011) (same).

Moreover, since Orly filed the TAP with the Surrogate's Court in October 2012, numerous courts have examined Dalia's actual actions as Trustee, and recognized that Dalia

---

[8]    See, e.g., Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277-278 (1970) (finding privity between legatees and executor of the estate); Doe v. New York University, 6 Misc.3d 866, 873 (Sup. Ct. N.Y. Cty. 2004) ("[Privity] includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action.") (quoting Watts).

suffers from conflicts of interest, is aligned with Sagi against Orly, and is otherwise unfit to serve

as Trustee. Thus, for example, the First Department held that Dalia has deliberately ignored her

conflicts of interest and placed her personal interests ahead of the Orly Trust and Orly, to benefit

herself at the expense of the Orly Trust:

> In entering into the aforementioned October 2011 and March 2012
> settlement agreements with TPR and D&K LP on behalf of the
> Orly Trust, of which she was sole trustee, Dalia had a conflict of
> interest. The new promissory notes executed by Dalia on behalf of
> the Orly Trust pursuant to the settlement agreements contained
> provisions that were plainly intended to entrench her as sole trustee
> of Orly Trust, notwithstanding the ongoing disputes and litigation
> between herself and plaintiff, the trust's beneficiary. Specifically,
> the replacement notes provided that Dalia's resignation or removal
> as trustee of Orly Trust, or the appointment of any additional
> trustee, would constitute an event of default rendering the notes
> immediately due and payable by Orly Trust. Further, the purported
> settlement of the derivative claims that plaintiff asserts on behalf of
> Orly Trust in this action – which was already pending at the time
> the settlement agreements were executed – required the court's
> approval, which was never sought. Moreover, as previously
> discussed, the settlements were entered into in violation of the
> aforementioned 2010 and 2011 injunctions. For these reasons, the
> settlements are voidable and, given the expressed intention of
> plaintiff (the beneficiary of Orly Trust) to void them, the purported
> releases they contain are not enforceable.

Genger v. Genger 120 A.D.3d 1102, 1104 (1st Dept. 2014) (Leinbach Aff. **Exhibit 5**).

The New York County Supreme Court also recognized Dalia's conflicts of

interest and collusion with her son, Sagi, against Orly make her unfit to act for Orly's benefit:

> Additionally, *Dalia, trustee of the Orly Trust, has often sided with
> her son Sagi in these actions*, and if Orly is deemed to be an
> inadequate representative of the Orly Trust, and Dalia declines to
> pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be
> insulated from the prosecution of such claims. However, after
> TPR/Sagi filed this motion, the Appellate Division, First
> Department, held that Dalia had a conflict of interest in releasing
> herself, as part of settlement agreements entered into in 2011 and
> 2012 between TPR/Sagi and herself, as trustee. It also adjudicated
> the settlements, which were against Orly's interests, as void and/or

voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1ˢᵗ Dept 2014]).[9]
Thus, *Dalia may no longer be able to serve as trustee, having
failed to disclose the conflict to her principal, Orly*.  And, as noted
by the First Department, Orly has petitioned the Surrogate's Court
to remove Dalia as trustee and to surcharge her. (*Id*.).

7/3/14 Decision and Order at 3-4 (emphases added) (Leinbach Aff. **Exhibit 6**).

Dalia Genger, trustee of the Orly Trust, neither filed nor joined in
the instant motion.  Instead, she signed an affidavit, dated June 28,
2013, asserting that "an analysis of the claims [filed by Orly
against the Trump Group] shows that they are entirely claims of
the Orly Trust and that she has no individual rights separate
therefrom." (NYSCEF 483, ¶ 2).  Dalia's assertion is not supported
or accompanied by any analysis of the subject claims, and is fatally
conclusory....And *having found that "Dalia – as trustee of Orly's
Trust – had a conflict of interest in releasing herself as part of the
October 2011 and March 2012 settlement agreements [embodying
the proposed transactions]" (Genger v Genger, --AD3d--, 2014 NY
Slip Op 01421 *2 (1ˢᵗ Dept 2014), the Appellate Division throws
doubt on Dalia's standing to complain.*

3/21/14 Decision and Order at 3-4 (emphasis added) (Leinbach Aff. **Exhibit 7**).

The New York Supreme Court, the Delaware Chancery Court, and the District

Court for the Southern District of New York have all questioned Dalia's fitness to serve as a

fiduciary for Orly, and questioned her motivation for refusing to resign as Trustee.

THE COURT: [referring to Surrogate Roth's January 2009
decision]  The Surrogate said, you know, basically she should be
given a chance to try out, in essence.  That's when I reread Judge
Roth's decision that at the time of the original objection to her, or
the challenge to her, she hasn't been given a chance to serve.

I just don't understand why somebody would want to continue to
serve as the trustee of her daughter's trust when the daughter
doesn't want her.  Why not just say: Okay.  I'm out of this.  You
want to have a fight with your brother, have a fight with your
brother.  If you want to have a fight with your father, have a fight

---

[9]    In response to Dalia and Sagi/TPR's motions for reconsideration, the First Department replaced the referenced
decision with a September 2014 decision (Genger v. Genger, 120 A.D.3d 1102 (1st Dept. 2014)), which re-
affirmed Dalia's conflicts of interest and expanded upon its prior ruling that Dalia had improperly placed her
interests ahead of Orly's interests.

with your father.

> I mean, *unless there is some truth to the conspiracy theories asserted by the plaintiffs, why is she continuing to serve? Why doesn't she resign? Who needs this aggravation?*

8/15/12 Hearing Tr. 3:23-4:13 (Feinman, J.) (emphasis added) (Leinbach Aff. **Exhibit 8**).

> THE COURT: Well how can she be both? She is the trustee for the Orly Trust. Right?...And as I read Chancellor Strine's – he's chief justice down there, chief judge. As I read his remarks, he kept suggesting that she no longer should be trustee, didn't he?

4/29/14 Hearing Tr. at 27-28 (Keenan, J.) (Leinbach Aff. **Exhibit 9**); see also 8/1/13 Hearing Tr.

at 42-43 (Leinbach Aff. **Exhibit 10**) (Chancellor Strine questioning Dalia's fitness to serve as

trustee, where "Dalia brings a lawsuit that Orly doesn't want," where "Dalia's aligned with Sagi"

and Dalia is willing to come to a settlement "on terms that Orly gives up any claim that she has

that Sagi didn't exactly cut the pie fairly").

Given the above, Orly's TAP adequately pleads a cause of action for Dalia's

removal. Sagi and the Sagi Trust's transparent efforts at delay should end, and this case should

proceed.

## II.    THE SAGI TRUST'S FIRST ARGUMENT CONCERNING JOEL ISAACSON IS MERITLESS AND DOES NOT NEGATE ANY OF THE PLEADED FACTS SUPPORTING DALIA'S REMOVAL AS TRUSTEE OF THE ORLY TRUST

The Sagi Trust absurdly contends that Orly's statement that "Mr. Isaacson is not

acquainted with any members of the Genger family" is a willful attempt at deceit so egregious as

to rise to the level of a "fraud on the court." (See Dellaportas ¶¶ 3-7). The Sagi Trust is wrong.

Not only does this argument fail as a matter of fact and law, but it is irrelevant to Dalia's

manifest unfitness to be Orly's Trustee.

*First*, the statement in the TAP is not a "fraud on the court." The *complete*

14

statement at issue is as follows:

> Mr. Isaacson is not acquainted with any members of the Genger
> family, does not have any interest in TRI, TPR or D & K, is
> willing and prepared to succeed Dalia as Trustee immediately and
> has an understanding of the current status of the Orly Trust.

TAP ¶ 96. The statement addresses the truthful and undisputed fact that Mr. Isaacson would be a proper Trustee of the Orly Trust.

The Sagi Trust contends TAP ¶ 96 is incorrect because Mr. Isaacson is "acquainted" with the Genger family in one sense of that word – *i.e.,* Isaacson has some direct, personal knowledge of the interactions between Orly and Sagi because his firm was briefly retained in 2007 by Orly to assess Orly's and the Orly Trust's finances and, in that capacity, he met with Sagi. (See Dellaportas ¶¶ 3-5). The word "acquainted" as used in TAP paragraph 96, however, refers to the undisputed fact that Mr. Isaacson has no social relationship with any Genger family member. See TAP ¶ 96. The dictionary definition of the word "acquainted" is either   personal   knowledge   or   social   contact.   See   Dictionary.com (http://dictionary.reference.com/browse/acquainted).   As stated in the TAP, Isaacson has no social relationship with any Genger family member, and nowhere does the Sagi Trust even allege otherwise.

In that very same paragraph, the TAP also alleges the fact – again uncontested – that Isaacson has no personal interest in the matters at issue between Orly and Sagi, and would be able (and is willing) to serve in an independent and fiduciary capacity as a replacement trustee. Once again, the Sagi Trust makes no allegation to the contrary. In fact, the movant does not even contend that Isaacson has any current business dealings or personal relationships with any Genger family member, or provide any facts that would make Isaacson an improper trustee

for the Orly Trust. For this reason alone, the Sagi Trust's argument fails.

*Second*, the snippet at issues does not constitute a "fraud on the court." as defined by the Court of Appeals. To show a "fraud on the court," the Sagi Trust must show, *by clear and convincing evidence*, that Orly "has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and [her] adversary's defense of the action," by engaging in *such acts as "fabrication of evidence, perjury, and falsification of documents" that destroy "the truth-finding process."* CDR Creances S.A.S. v. Cohen, 23 N.Y.3d 307, 320 (2014) (emphases added).

In Creances, plaintiff commenced two actions in 2003 and 2006 in New York County Supreme Court against Maurice Cohen, his son Leon Cohen and several entities engaged in an extensive and intricate conspiracy designed to, among other things, strip Euro-American Lodging Corporation ("EALC"), an entity Maurice Cohen controlled, of its operating income and sell a New York Flatotel hotel to avoid payment of a judgment. 23 N.Y.3d at 313. Before discovery ended in the consolidated actions, federal authorities arrested the Cohens and charged them with tax evasion and "a conspiracy to commit fraud on the New York court by forging documents and suborning perjury." Id. at 314. During the federal trial, former associates of the Cohens (the Habibs) testified that the Cohens had orchestrated "an extensive, systematic effort to conceal from the Supreme Court [their] efforts to conceal proceeds from the $33 million dollar sale of the New York Flatotel, and the transfer of the proceeds to offshore accounts to avoid taxes." Id. After a jury conviction for tax evasion, the federal court found the Cohens had committed a fraud on the New York County Supreme Court. See id. at 315.

Based upon the federal convictions, plaintiff sought default judgment in the New York Supreme Court action, alleging the Cohens had committed a fraud on the Court. Creances,

23 N.Y.3d at 315.   After an evidentiary hearing, the New York Supreme Court found the Cohens

had committed a fraud on the Court.   See id. at 316.   The First Department and the Court of

Appeals each affirmed:

> The record reveals *numerous instances of perjury, subornation of perjury, witness tampering and falsification of documents by defendants*.   As Supreme Court and the Appellate Division described in detail, Maurice and Leon Cohen sought to mislead the court about their ownership interests in the defendant corporations, as well as the conversion of the proceeds from the loan agreement and the sale of the New York Flatotel.   The record shows that the Habibs produced the *script provided by Maurice and Leon Cohen, which demonstrated that co-defendants Aich and Maraboeuf were entirely dishonest in their assertions* that Maurice and Leon did not own any of the defendant entities and that neither had a relationship with Maurice Cohen.   Moreover, *the script revealed that defendant Maraboeuf was blatantly lying* about his role at EALC and his assertion that he had no contact with Maurice Cohen for several years.   Additionally, *all of the defendants lied about the payment of their legal fees*, which in fact were paid by entities controlled by Maurice and Leon Cohen.   *Defendant Aich testified regarding her multiple meetings with Jim Cox and conversations with Francois Laville — completely aware that these were fictitious individuals, fabricated by Maurice and Leon Cohen. All this conduct was in furtherance of one goal: to hide Maurice and Leon's connections to the alleged theft, and conceal the location of the funds pursued by the plaintiff.*   Thus, the defendants intended to undermine the New York actions in which plaintiff sought to discover and procure the concealed proceeds of the loan agreement, and committed a fraud on the court.

Id. at 323 (emphases added).

Here, the Sagi Trust accusation – which is nothing more than a quibble over the

use and meaning of the word "acquainted" – is not "clear and convincing evidence" of fraud on

the court, as delineated by the Court of Appeals in Creances.   In this regard, the Sagi Trust does

not, and cannot, provide any evidence showing that Orly intentionally engaged in any of the

improper actions – deliberate fabrication of evidence, perjury, or falsification of documents –

identified by the Court of Appeals in Creances.   Likewise, the Sagi Trust does not, and cannot,

explain how the snippet it takes out of context would undermine or destroy the Court's ability to decide if Dalia is a proper Trustee.

Orly's proposal to replace Dalia with Mr. Isaacson as Trustee cannot rationally be considered a knowing attempt to "hinder the fact finder's fair adjudication of the case" or the Sagi Trust's "defense of the action." Indeed, the Sagi Trust cannot even allege it was unaware of Mr. Isaacson's past retention because, as Sagi concedes, he met with Mr. Isaacson in 2007 and knew all about this limited retention. See Dellaportas Aff. ¶ 4 (admitting Sagi met with Mr. Isaacson in 2007); 7/27/12 Sagi Dep. Tr. at 432:16-434:9; 436:17-439:25 (Leinbach Aff., **Exhibit 11**) (Sagi testifying he met with Mr. Isaacson in 2007); Trial Tr. 1765:4-18 (Leinbach Aff., Ex. 4) (same). For all these reasons, the Sagi Trust's "fraud on the court" argument fails.

This is at least the third time this attorney has insultingly claimed, on Sagi's behalf, that Orly has committed a "fraud on the court." Each time the allegation has been found to be so meritless as to constitute a deliberate waste of the court's time and scarce judicial resources. See 3/18/15 Decision and Order at 3 (Leinbach Aff., **Exhibit 12**) ("Defendants' current argument that no fees should be awarded based on plaintiff's alleged fraud on the court is fatally conclusory and has no bearing on [Orly's] entitlement to costs here"; awarding sanctions against Sagi-controlled TPR); 5/5/14 and 5/4/15 Decisions and Orders (Leinbach Aff., **Exhibit 13**) (denying Sagi and Sagi-controlled TPR's motion to strike complaint based upon Orly's alleged "fraud on the court" and ordering that Sagi would now have to obtain the Court's permission before he would be allowed to file any more motions).[10] As before, there is no fraud on the Court, just another meritless Sagi/Sagi Trust counsel motion specifically intended to delay

---

[10] Although the court applied its order to both parties, all the court's examples of frivolous motions were ones made by Sagi Trust counsel Dellaportas on Sagi's behalf. See 5/4/15 Decision and Order at 5 (Leinbach Aff., Ex. 13).

and waste the Court's valuable time.

*Third*, not only is the Sagi Trust's "fraud on the court" allegation factually and legally meritless, it is irrelevant. The Sagi Trust's contention has no bearing on the central question to be answered – whether Orly's well-pled TAP, taken as true, should survive a motion to dismiss. Nor does the Sagi Trust's meritless allegation affect the numerous judicial determinations that Dalia is unfit to serve as Trustee. See Argument, Point I.

For each and every one of these many reasons, the Sagi Trust's motion to dismiss for "fraud on the court" fails. Its motion to dismiss should be denied.

## III.   THE SAGI TRUST'S SECOND ARGUMENT CONCERNING A CONFIDENTIAL SETTLEMENT BETWEEN ORLY AND THE TRUMP GROUP IS MERITLESS AND DOES NOT NEGATE ANY OF THE PLEADED FACTS SUPPORTING DALIA'S REMOVAL AS TRUSTEE OF THE ORLY TRUST

The Sagi Trust next argues that, irrespective of Dalia's past actions, Orly's petition to remove Dalia as Trustee should be dismissed because it is nothing more than an attempt by Orly to prevent Dalia, as Trustee, from taking proceeds Orly received via the June 2013 CSA between Orly individually and the Trump Group.  (See Dellaportas Aff. ¶¶ 8-20). The Sagi Trust's argument fails for at least three separate reasons.

*First*, the Sagi Trust's contentions about the CSA are irrelevant because they have no bearing on the central question to be answered – whether Orly's well-pled TAP, taken as true, state a cause of action for Dalia's removal. Nor does the CSA somehow negate the numerous judicial determinations and observations that Dalia has a conflict of interest with Orly and should not be serving as Trustee. For this reason alone, the motion to dismiss should be denied. See Argument, Point I.

*Second*, Sagi's argument fails because, as a matter of basic common sense, Orly did not and could not have commenced this action in 2008 to remove Dalia to prevent Dalia from interfering with a settlement of a legal action that did not come into existence until years later. Orly brought her Petition seeking Dalia's removal in *February 2008*. See TAP ¶ 41.[11] The CSA between Orly and the Trump Group was executed in June 2013 to settle an action that Orly commenced in *July 2010* over a fraud allegedly perpetrated by Sagi, Dalia, and others in *August 2008*. See CSA at 1 (Leinbach Aff., **Exhibit 14**) (FILED UNDER SEAL); TAP ¶ 47, n. 4.

*Third*, the CSA did not settle trust claims. The Sagi Trust's contention is belied by the unambiguous language of the CSA, and the unambiguous language of the So-Ordered Stipulation of Dismissal that resulted from the CSA. Specifically, nothing in the CSA (i) disavows the Orly Trust's rights to the TRI shares; or (ii) re-sells the Orly Trust TRI shares for additional monies. On page 2 of the June 2013 CSA, the Trump Group abandons its claims to the $10.3 million the Trump Group paid for the Orly Trust TRI Shares, leaving the Orly Trust's claims to those monies unimpeded.

The 2013 CSA was entered into as of June 16, 2013. It is executed by the "AG Group," which includes Orly Genger, but only as an individual and Orly Trust beneficiary. See CSA at 1 (Leinbach Aff, Ex. 14). In turn, the Orly Trust is specifically defined in the CSA as a "Sagi Group" member that is *not* a settling party. Id. at 3. The Sagi Trust, which includes the Orly Trust, is *not* included in any release of claims. Id.

---

[11] Surrogate Roth denied Orly's first petition to remove Dalia as premature, because Dalia had not yet been given the chance to act as Trustee. See 12/31/08 Decision and Order at 7 (Leinbach Aff., **Exhibit 15**) (Dalia "has yet to assume the duties of trustee in deference to her daughter's position in this litigation. As a validly appointed trustee, she should be given the opportunity to do what she deems necessary to manage and protect the trust's assets."). Dalia has misused the chance given her by this Court, and has spent her time as Trustee harming Orly and the Orly Trust.

Emphasizing that the CSA does not release Orly Trust claims, the CSA directs the AG Group to try to take action to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties" in the future. Id. at 16. *A fortiori*, had the Orly Trust's claims been released in the CSA there would be no reason to include language about "causing" the release of Orly Trust claims in the future.

Both the United States District Court and the New York County Supreme Court have recognized that the CSA does not settle the Orly Trust claims:

> The 2013 Settlement Agreement does not waive any of the Orly Trust's claims.

Genger v. Genger, 2015 U.S. Dist. LEXIS 649, *9-10 (S.D.N.Y. Jan. 5, 2015).

> [I]n the settlement agreement, Orly stops short of releasing derivative claims.

3/21/14 Decision and Order at 4 (Leinbach Aff., Ex. 7).[12]

---

[12] Likewise, Orly repeatedly testified that she did not settle Orly Trust claims:

> Q: And you since settled your claims against the Trump Group; is that correct?
>
> A: I settled with the Trump Group.
>
> Q: And you settled your claims that you brought on your own behalf and on behalf of the trust, correct?
>
> [Objection noted]
>
> A: I settled on behalf of myself as an individual.
>
> Q: You did not settle the claims that were brought on behalf of the trust?
>
> A: Well, if there – if the trustee of my trust decides to file a complaint with the Trumps regarding this matter they can.
>
> ...
>
> Q: Your testimony today is that when you settled your claims against the Trumps you did not settle those claims on behalf of the trust, is that right?
>
> [Objection noted]

After the 2013 CSA was executed, the New York Supreme Court So-Ordered a Stipulation of Dismissal, which only discontinued claims Orly brought individually, and not Orly Trust claims. See New York Supreme Court So-Ordered Stipulation of Dismissal (Leinbach Aff., **Exhibit 16**). Importantly, the Stipulation of Dismissal follows the CSA (see CSA at 5-6) by expressly leaving Orly Trust claims un-settled, and lifting the New York Supreme Court injunctions that had previously prevented Dalia from prosecuting an earlier-filed Delaware action Dalia brought on behalf of the Orly Trust, claiming the Orly Trust beneficially owned certain Orly Trust Shares. See New York Supreme Court So-Ordered Stipulation of Dismissal (Leinbach Aff., Ex. 16).

Taking advantage of the fact that the CSA did not settle Orly Trust claims, on or about August 30, 2013, Dalia, on behalf the Orly Trust, along with her favored son Sagi, engineered a settlement of the Orly Trust's claims in the Delaware courts, by entering into the "So-Ordered" August 30, 2013 Stipulation in the Delaware Chancery Court action that Dalia commenced on behalf of the Orly Trust. In the Delaware Stipulation (not signed or agreed to by Orly), Dalia, as Trustee of the Orly Trust, not only settled the Orly Trust claims for no money, she stipulated that TPR, an entity Sagi controls – and not the Orly Trust - owned the $10.3 million in proceeds from the sale of the Orly Trust TRI shares. See 8/30/13 Delaware Stipulation ¶ 2 (Leinbach Aff., **Exhibit 18**). In doing so, Dalia expressly abandoned the Orly Trust claims against TPR and the Trump Group – an Orly Trust asset – and obtained less than

---

A:  I settled with the Trumps on my behalf as an individual.  Not – I am not the trustee of my trust.  So I couldn't settle with them as a trustee of my trust.

If the trustee decides to pursue this matter with the Trumps they can.

10/25/13 Orly Dep. Tr. at 93:25-95:10 (Leinbach Aff., **Exhibit 17**); see also 2/14/14 Orly Dep. Tr. at 70:12-14 ("I settled with the Trumps other than with regards to my trust.  So I settled with them as an individual.") (Leinbach Aff., Ex. 17).

nothing in exchange.   Moreover, the fact that Dalia prosecuted and then "settled" Orly Trust

claims *after* the June 2013 CSA shows that those Orly Trust claims were not settled by the CSA

– as Dalia and Sagi well-know.

The Southern District Court recognized that it was this August 2013 Delaware

Stipulation by Dalia and Sagi – not the June 2014 CSA – that settled the Orly Trust's claims and

determined beneficial ownership of the intended Orly Trust TRI Shares:

> As part of a stipulation dismissing the action in Delaware
> Chancery Court, the parties to that action -- TPR/Sagi, the Trump
> Group, and Dalia, but not Arie or Orly -- agreed that the Trump
> Group is the rightful owner of the Orly Trust Shares. (Dellaportas
> Dec. Ex. B ¶ 2.)

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP, 2014 U.S. Dist. LEXIS 67116,

*5-6 (S.D.N.Y. May 15, 2014).

The Appellate Division, First Department, similarly recognized that it was the

August 2013 Delaware Stipulation – not the June 2013  CSA – that that settled the Orly Trust's

claims and determined beneficial ownership and ended Orly's claims to the $10.3 million in

proceeds from Sagi/TPR's sale of those shares to the Trump Group:

> Moreover, under the 2008 agreement between TPR and the Trump
> Group, the sale could only take place after a judicial determination
> that TPR is the record and beneficial owner of the Orly Trust's TRI
> shares.  When the complaint was filed, it had only been determined
> that TPR was the shares' record owner, but the Delaware Chancery
> Court has now also ruled that TPR is the shares' beneficial owner
> (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR
> Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

Genger v. Genger, 121 A.D.3d 270, 280 (1st Dept. 2014).

Remarkably, Dalia had her lawyer expressly support Sagi-controlled TPR's claim

that TPR – and not the Orly Trust – should receive all proceeds from the sale of the TRI shares

intended for the Orly Trust:

> [Dalia Counsel] Ms. Bachman: ...we [Dalia as Trustee] don't object if this Court would direct that the [$10.3 million in] escrow be given to TPR.

4/29/14 Hearing Tr. at 27 (Leinbach Aff., Ex. 9).

After giving up Orly Trust claims against TPR and the Trump Group by settling in Delaware in August 2013, and assuring that TPR – and not the Orly Trust – received the $10.3 million in proceeds, Dalia then changed her position, as part of her and Sagi's continuing efforts to pauperize Orly.  Ignoring Delaware completely, Dalia now claims the Orly Trust claims were settled in June 2013, and that she has a right as Trustee to clawback monies from beneficiary Orly.  In other words, Dalia is now using her position as Trustee to try and take even more money from beneficiary Orly.

On August 11, 2014, Dalia, apparently using Orly Trust monies and Orly Trust lawyers, brought a motion in New York Supreme Court seeking to take from Orly any money Orly received for settling her *individual* claims under the CSA.  See Dalia Substitution Memo at 6-9 (Leinbach Aff. **Exhibit 19**).[13]  By Interim Decision, the Supreme Court held Dalia's motion in abeyance pending the resolution of this proceeding to remove Dalia.  See 5/7/15 Interim Order (Leinbach Aff., **Exhibit 20**).

These actions provide yet another showcase of Dalia's hostility towards Orly, and Dalia's misuse of her position as the Orly Trust Trustee.  Dalia and Sagi used Dalia's position as Trustee to commence a litigation in Delaware so she could give away $10.3 million to Sagi (via TPR).  Not satisfied with that (and her other harmful actions against beneficiary Orly), Dalia is

---

[13] Orly has opposed Dalia's attempt to take Orly's money.  See Orly Opp. Memo to Dalia Substitution at 18-21 (Leinbach Aff., **Exhibit 19**).

now fighting to remain Trustee so she can try to take more monies from beneficiary Orly, and dissipate those monies to Orly's detriment and Sagi's benefit, just as she has in the past. Dalia's current actions are not a reason to dismiss the TAP, but another reason to deny the motion to dismiss and proceed with this case.

For each and every one of these many reasons, the Sagi Trust's contentions about the CSA fail, and, its motion to dismiss should be denied.

## CONCLUSION

The TAP adequately pleads causes of action against Dalia that justify her removal as Trustee. Accordingly, the Sagi Trust's motion to dismiss should be immediately denied, and Orly's Third Amended Petition for Dalia's removal as Trustee should proceed forthwith.

Dated:    New York, New York
          October 6, 2015

                              ZEICHNER ELLMAN & KRAUSE LLP


                              By: _____
                                  Yoav M. Griver
                                  Bryan D. Leinbach
                                  Attorneys for Petitioner Orly Genger
                                  1211 Avenue of the Americas
                                  New York, New York 10036
                                  (212) 223-0400

STATE OF NEW YORK,                               AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.         BY UPS GROUND COMMERCIAL DELIVERY

        JOHN D. DELANEY, being duly sworn, says:  that I am over the age of eighteen years, and am not a party herein, and reside in Jersey City, New Jersey and that on the 6th day of October, 2015, I served a true copy of the within:

**ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI GENGER 1993 TRUST'S MOTION TO DISMISS ORLY'S PETITION FOR THE REMOVAL OF DALIA GENGER AS TRUSTEE**

**AFFIRMATION OF BRYAN D. LEINBACH
with Exhibits;**

by delivering into the exclusive care and custody of a representative of United Parcel Service for ground commercial delivery a true copy of the papers to the attorneys hereinafter named at the places hereinafter stated, which was properly enclosed in a pre-paid addressed wrapper of United Parcel Service and left in the custody of a representative of UPS to be sent by ground commercial delivery, directed to said attorneys at their last known addresses given below:

Steven Riker, Esq.
*Guardian Ad Litem*
LAW OFFICE OF STEVEN RIKER
110 East 59th Street, 23rd Floor
New York, New York 10022

John G. Dellaportas, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178

Robert Meister, Esq.
PEDOWITZ & MEISTER, LLP
570 Lexington Avenue, 18th Floor
New York, New York 10022

JOHN D. DELANEY

Sworn to before me this
___ day of October, 2015

NOTARY PUBLIC

ANTHONY ROSARIO
Notary Public, State of New York
No. 01RO6212071
Qualified in Bronx County
Commission Expires 10/05/20 17

#829275

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of Orly Genger to Remove
Dalia Genger as Trustee of The Orly Genger 1993 Trust
Established on December 13, 1993, by

ARIE GENGER,

Grantor

File No.:  0017/2008

---

## AFFIRMATION OF BRYAN D. LEINBACH

STATE OF NEW YORK,
COUNTY OF NEW YORK.

BRYAN D. LEINBACH, pursuant to CPLR 2106 and under the penalties of perjury, affirms:

1.      I am associated with the firm of Zeichner Ellman & Krause LLP, attorneys for petitioner Orly Genger ("Orly").  Orly is the sole non-contingent beneficiary of The Orly Genger 1993 Trust (the "Orly Trust").  I make this affirmation in opposition to The Sagi Genger 1993 Trust's (the "Sagi Trust") motion to dismiss Orly's Third Amended Petition, seeking to remove Dalia Genger as Trustee of the Orly Trust.

2.      Attached as **Exhibit 1** is a copy of Orly's Third Amended Petition (without exhibits) in this case.

3.      Attached as **Exhibit 2** is a copy of a July 28, 2010 Amended Decision and Order in a case currently pending in New York County Supreme Court titled *Orly Genger et al v. Dalia Genger et al.*, Index No. 109749/2009 (the "New York TPR Action").

4.      Attached as **Exhibit 3** is a copy of Orly's memorandum of law in opposition to Dalia Genger's motion to dismiss Orly's Third Amended Petition.

5.      Attached as **Exhibit 4** is a copy of excerpts of the trial transcript in a case currently pending in New York County Supreme Court titled *Orly Genger v. Sagi Genger*, Index No. 100697/2008.

6.      Attached as **Exhibit 5** is a copy of a September 23, 2014 Decision and Order of the Appellate Division, First Department in the New York TPR Action.

7.      Attached as **Exhibit 6** is a copy of a July 3, 2014 Decision and Order in the New York TPR Action.

8.      Attached as **Exhibit 7** is a copy of March 21, 2014 Decision and Order in a case currently pending in New York Supreme Court titled *Arie Genger et al v. Sagi Genger et al.*, Index No. 651089/2010 (the "New York TRI Action").

9.      Attached as **Exhibit 8** is a copy of an August 15, 2012 hearing transcript in the New York TPR Action.

10.      Attached as **Exhibit 9** is a copy of an April 29, 2014 hearing transcript in a case before the United States District Court for the Southern District of New York titled *TPR Investment Associates, Inc. v. Pedowitz & Meister LLP et al.*, Case No. 13-8243 (JFK).

11.      Attached as **Exhibit 10** is a copy of an August 1, 2013 hearing transcript in a case before the Delaware Chancery Court in a case titled *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC et al.*, C.A. No. 6906-CS (the "Dalia Delaware Action").

2

12.     Attached as **Exhibit 11** is a copy of excerpts of Sagi Genger's July 27, 2012 deposition transcript.

13.     Attached as **Exhibit 12** is a copy of a March 18, 2015 Decision and Judgment in the New York TPR Action.

14.     Attached as **Exhibit 13** are copies of: (i) a May 4, 2015 Decision and Judgment in the New York TPR Action; and (ii) a May 5, 2015 Short Form Order in the New York TPR Action.

15.     Attached as **Exhibit 14** is a copy of a confidential settlement agreement between Orly, individually and as beneficiary of the Orly Genger 1993 Trust, and various individuals and entities known as the "Trump Group" (FILED UNDER SEAL).

16.     Attached as **Exhibit 15** is a copy of a December 31, 2008 decision in this case.

17.     Attached as **Exhibit 16** is a copy of a July 1, 2013 Second Amended Stipulation of Discontinuance With Prejudice in the New York TPR Action.

18.     Attached as **Exhibit 17** are copies of: (i) excerpts from Orly Genger's October 25, 2013 deposition transcript in the New York TPR Action; and (ii) excerpts from Orly's February 14, 2014 deposition transcript in the New York TRI Action.

19.     Attached as **Exhibit 18** is a copy of an August 30, 2013 So-Ordered Stipulation and Order of Dismissal in the Dalia Delaware Action executed by Dalia Genger's counsel and Sagi/TPR/Sagi Trust's counsel.

20.    Attached as **Exhibit 19** are copies of: (i) Dalia Genger's memorandum of law in support of her motion to, among other things, pay the proceeds of Orly's settlement with the Trump Group (Exhibit 14) into Court; and (ii) Orly's memorandum of opposition to Dalia's motion.

21.    Attached as **Exhibit 20** is a copy of a May 7, 2015 Interim Order in the New York TRI Action.

Dated:    New York, New York
          October 6, 2015

_____
BRYAN D. LEINBACH

4

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

File No. 0017/2008

---

## THIRD AMENDED VERIFIED PETITION FOR REMOVAL
## OF DALIA GENGER AS TRUSTEE

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("Petitioner" or "Orly"), by her attorneys, Platzer, Swergold,

Karlin, Levine, Goldberg & Jaslow, LLP, respectfully alleges as her Third Amended Verified

Petition (the "Third Amended Petition") for Removal of Dalia Genger as Trustee as follows:

1.      Orly, domiciled at 780 Greenwich Street, Apartment #4P, New York, New

York 10014, is the current and sole beneficiary of the Orly Genger 1993 Trust dated December

13, 1993 (the "Orly Trust"). Annexed hereto as **Exhibit "A"** is a copy of the Orly Trust.

2.      Dalia Genger ("Dalia" or "Respondent"), residing at 200 East 65th Street,

Apartment #32W, New York, New York 10021 is Orly's mother and is the current sole Trustee

of the Orly Trust. Dalia was appointed successor Trustee in January, 2008.

3.      The Orly Trust provides for discretionary payments of income and principal

to Petitioner during her lifetime with the remainder to be distributed to her descendants, per

stirpes. If Petitioner dies leaving no descendants, the remainder of the trust property is to be

distributed to the Sagi Genger 1993 Trust (the "Sagi Trust"). Sagi Genger ("Sagi") is Orly's

brother.

4.     For the reasons set forth herein, Petitioner respectfully requests that this Court enter an order:

(a)     Pursuant to Surrogate Court's Procedure Act ("SCPA") § 711(2)(3)(7) and/or (8) providing for the immediate removal of Dalia as Trustee of the Orly Trust as a result of her: (i) numerous and continuous breaches of her fiduciary duties to the Orly Trust and Petitioner as its sole beneficiary; (ii) waste and dissipation of the Orly Trust's assets; (iii) repeated and willful engagement in an ongoing fraudulent scheme with Sagi to loot, encumber, pledge and transfer the assets of the Orly Trust; (iv) deliberate and willful violation and contempt of the prior Order of this Court dated July 1, 2009 (the "July 2009 Order") (as well as her deliberate and willful violation and contempt of prior restraining Orders imposed upon her by other New York Courts in related proceedings) as set forth herein; and, (v) imprudent management and injury to the assets of the Orly Trust committed to her charge, all as set forth in this Third Amended Petition;

(b)     Suspending the Letters of Appointment heretofore issued to Dalia;

(c)     Appointing Joel Isaacson as successor trustee; and,

(d)     Granting such other and further relief as this Court deems to be just equitable and proper.

## PRELIMINARY STATEMENT

5.     Petitioner is the sole beneficiary of the Orly Trust. Dalia is Petitioner's mother and is the sole Trustee of the Orly Trust. Petitioner is filing this Third Amended Petition as a result of Dalia's egregious, willful, malicious, deliberate and surreptitious scheme to pledge, encumber, transfer and dissipate all of the assets of the Orly Trust in violation of her fiduciary duties as Trustee and in violation of the July 2009 Order.

6.     As will be set forth further below in this Third Amended Petition, Dalia

-2-

and Sagi have continuously engaged in a secretive and machiavellian scheme to loot, encumber, pledge, waste, dissipate and transfer the assets of the Orly Trust for personal gain and/or as punishment of Orly for her maintaining her relationship with her father, Arie Genger ("Arie"), during and after acrimonious divorce proceedings between Arie and Dalia.

7.     In addition to this scheme being an egregious breach of Dalia's fiduciary duties to the Orly Trust, Dalia's actions in this regard also constitute a blatant and willful disobedience of the July 2009 Order by pledging and encumbering the assets of the Orly Trust and completely dissipating their value without any prior notice to Petitioner as required under the July 2009 Order, all in breach of Dalia's fiduciary obligations.

8.     Most recently, the Petitioner discovered that Dalia and Sagi entered into various secretive agreements (as will be set forth in this Third Amended Petition) to loot, dissipate, pledge, encumber and transfer the assets of the Orly Trust by agreeing to allow the potential foreclosure against valuable assets of the Orly Trust by Manhattan Safety Company ("MSCo"), a recently created entity in St. Kitts, which upon information and belief is controlled by a professional gambler. All of these recent secret agreements were entered into by Dalia and Sagi without prior notice to Petitioner as required under the July 2009 Order.

9.     As further set forth below, Dalia and Sagi's secretive scheme to loot, pledge, encumber and transfer the assets of the Orly Trust is so brazen in its nature, constitutes such an egregious breach of Dalia's fiduciary duties as Trustee and Dalia's contempt of the July 2009 Order is so clear, that her immediate removal as Trustee of the Orly Trust is both warranted and necessary in order to prevent any further irreparable harm from occurring to the assets of the Orly Trust and Petitioner, as its sole beneficiary.

10.     Dalia's immediate removal as Trustee is necessary because it is clear that

-3-

the prior Orders and warnings of this Court (and as will be shown in this Third Amended
Petition, the prior Orders of other courts as well) mean absolutely nothing to her and Sagi. Thus,
as long as Dalia is Trustee, any assets of the Orly Trust will remain vulnerable and subject to
immediate irreparable harm as a result of her ongoing scheme with Sagi.

11.     Dalia's ongoing conspiracy and scheme with Sagi in this regard is akin to
Dalia "thumbing her nose" at this Court and Petitioner, as sole beneficiary of the Orly Trust.

12.     A summary of the timeline of critical factual and procedural events
surrounding this matter as well as the events which precipitated the filing of this Third Amended
Petition appears immediately below and will provide the Court with the proper context in which
to appreciate the severity of Dalia's misconduct. As set forth below, the lengthy summarization
of the factual history is necessary in order to show that Dalia's actions cannot be viewed in a
"vacuum" and constitute a pattern of ongoing conduct for approximately the past four (4) years
which is specifically intended to harm Petitioner and the Orly Trust.

### THE FORMATION OF D & K LP AND THE FORMATION AND INITIAL FUNDING OF THE ORLY TRUST FOR PETITIONER'S BENEFIT, AS SOLE BENEFICIARY

13.     Dalia and Arie were married in 1967 and their marriage subsequently
ended in divorce in 2004.

14.     Prior to 1993, Dalia and Arie formed D & K LP ("D & K") a family
owned limited partnership, whose name was shorthand for "Dalia and Kids". At the time of its
formation, Dalia was the general partner and held a 4% interest. Petitioner and her brother, Sagi,
were the limited partners who each held a 48% interest.

15.     In December, 1993, Dalia and Arie established identical irrevocable inter
vivos trusts for the benefit of Petitioner and Sagi, the Orly Trust and the Sagi Trust (jointly, the
Orly Trust and the Sagi Trust shall be referred to hereinafter as the "Trusts"). For estate-

-4-

planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the Trusts was to ensure that both Petitioner and her brother received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both Trusts and remained Co-Trustees until Petitioner's parents' divorce in 2004. After the Trusts were funded, Sagi and Petitioner each assigned their 48% interests in D & K to their respective Trusts.

### THE CREATION OF THE D & K NOTE

16.    At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) of TPR Investment Associates, Inc. ("TPR"), a closely held family corporation for the sum of $10,200,000. The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000. The balance was satisfied with a recourse $8,950,000 Promissory Note (the "D & K Note"). Annexed hereto as **Exhibit "B"** is a copy of the D & K Note.

17.    As set forth further below in this Third Amended Petition, there was never any intention by Arie, Dalia, Sagi and Orly for TPR to collect upon the D & K Note.

18.    Pursuant to the D & K Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The D & K Note was secured by a pledge of the 240 TPR shares owned by D & K. (See **Exhibit "B"- Pledge Agreement)** Each of the Trusts and Dalia assumed liability on the D & K Note in proportion to its/her direct interest in D & K. Accordingly, each of the Trusts, assumed a 48% liability on the D & K Note and acquired a 23.52% indirect interest in TPR. Dalia assumed a 4% liability on the D & K Note and acquired a 1.96% indirect interest in TPR.

19.    At the time of the above-described transaction, Arie owned the remaining 51% of TPR, which held investments in various securities including common stock in Trans-Resources, Inc ("TRI"), as well as its interest in the D & K Note. TRI was a successful and

valuable company which was engaged in the business of manufacturing specialty chemical products for agricultural and industrial end uses.

20.     Payments were made on the D & K Note out of dividends paid by TRI until 1999. Thereafter, when TRI stopped paying dividends, D & K stopped making payments under the D & K Note with the consent of the interested parties.

21.     As of March 20, 2001, TPR held a 52.85% interest in TRI. The remaining minority interest in TRI (47.15%) was owned by various entities controlled directly and indirectly by Jules and Eddie Trump (the "Trump Group").

## ARIE AND DALIA'S DIVORCE IN 2004 AND ITS EFFECT ON THE TRUSTS' ASSETS

22.     On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of Settlement as a final settlement of their divorce (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Dalia received, *inter alia,* Arie's 51% interest in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust (the "Orly Trust TRI Shares") and (iii) 19.43% to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime voting proxy over their TRI shares (annexed hereto as **Exhibit "C"**). Therefore, after October 29, 2004, Arie and the Trusts held a controlling interest in TRI and TPR no longer owned any TRI common stock.

## DALIA CEDES CONTROL OF D & K AND TPR TO SAGI AND THE FORMATION OF D & K GP LLC

23.     In connection with the divorce settlement, Dalia took measures to cede management of D & K to Sagi. On October 21, 2004, days before signing the Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"). Dalia exchanged her 4% interest in D & K and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1%

membership interest in D & K GP for $1.00. Pursuant to D & K GP's Limited Liability Agreement (annexed hereto as **Exhibit "D"**), Sagi was given the power to select a manager of D & K GP whose function would be to control D & K's assets. Sagi selected himself to act as manager; thus, Dalia effectively handed Sagi the authority to control D & K and its assets. Also, by forming D & K GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K, including any personal liability related to the D & K Note. This left the Trusts solely liable for any obligations due under the D & K Note.

24.    On October 30, 2004, Dalia entered into a shareholder's agreement with TPR that provided for the management of TPR. Specifically, pursuant to the TPR shareholder's agreement (annexed hereto as **Exhibit "E"**), D & K, which owned 49% of TPR, was given authority to appoint one board member to the TPR board. Sagi, as the managing partner of D & K appointed himself as a board member of TPR. As the majority owner of TPR, Dalia was named as the other board member. In addition, the shareholder agreement appointed Sagi as Chief Executive Officer ("CEO") of TPR. Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had done with D & K.

25.    For the Court's convenience, below is a summary of Arie, Dalia, and the Trusts' interests in TPR both before and after the divorce and Settlement Agreement:

| Person | TPR Interest Before | TPR Interest After |
|---|---|---|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96%[1] |
| Orly Trust (indirectly through D & K) | 23.52% | 23.52% |
| Sagi Trust (indirectly through D & K) | 23.52% | 23.52% |
| **Total** | **100%** | **100%** |

26.    In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another and were controlled by him. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi Trust.

## THE SHAM ASSIGNMENT AND SALE OF THE D & K NOTE

27.    On or about October 31, 2004, the TPR Board (consisting of Dalia and Sagi) passed a resolution to sell the D & K Note. Sagi was charged with the responsibility of selling the D & K Note to a "third party".

28.    In December, 2005, Sagi filed amended 2002 and 2003 tax returns for

---

[1] Dalia held a 1.96% indirect interest in TPR prior to the divorce as a result of her 4% interest in D & K. Pursuant to the Settlement Agreement, Dalia received an additional 51% direct interest in TPR from Arie. Just prior to the Settlement Agreement, as stated above, Dalia transferred her 4% interest in D & K (and thus, her 1.96% indirect interest in TPR) to D & K GP.

-8-

TPR, writing off the entire D & K Note and declaring it as a loss in the approximate amount of $8,700,000.

29.     On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K and TPR, assigned and sold the D & K Note, which then had an approximate value of $11,000,000 as a result of the accrued interest, to Mr. Parnes in his individual capacity for the sum of only $12,000 (a copy of the Memorandum dated August 2, 2006 (the "D & K Note Memorandum"), assigning and selling the D & K Note is annexed hereto as **Exhibit "F"**). The D & K Note Memorandum asserts unspecified claims by D & K against TPR and Sagi expressly memorialized that D & K "denies enforceability of the [D & K Note]". (**See Exhibit "F"**)

30.     Sagi signed the D & K Note Memorandum on behalf of both TPR as the holder and D & K as the maker. Dalia was copied on the D & K Note Memorandum but Petitioner did not receive a copy of same.    At the time of the D & K Note Memorandum, Mr. Parnes was acting as trustee of both Trusts. Shortly after the D & K Note Memorandum, Mr. Parnes summarily resigned as Trustee of the Orly Trust without explanation.

## THE D & K NOTE WAS NEVER INTENDED TO BE ENFORCED

31.     Mr. Parnes testified in Arie and Dalia's matrimonial arbitration (See **Exhibit "G"**, which contains the relevant portions of the transcript of Mr. Parnes' testimony from the arbitration) that:

     (i)     As the Trustee of both Trusts, he was a "trusted" person to keep the D & K Note to make sure it would never be collected.  (See Pages 460-461);

     (ii)    D & K does not have to make payments to TPR; (Page 452)

     (iii)   The D & K Note is uncollectible (Page 453); and,

     (iv)    Sagi's job was to "bury the D & K Note in the woods" (Page 461)

32.     Sagi testified in the same arbitration (See **Exhibit "H"**, which contains the relevant portions of the transcript of Sagi's testimony from the arbitration) that:

(i)      The purpose of the D & K Note was for estate planning (Pages 367-380);

(ii)     The D & K Note was never declared in default (Page 370);

(iii)    There was no intention of collecting the D & K Note (Page 370); and,

(iv)     The D & K Note is worth nothing (Pages 375-377)

33.    In addition, Dalia, who was copied on the D & K Note Memorandum,

previously admitted in her Pre-Hearing Memorandum submitted to the Court in connection with

the matrimonial arbitration that the D & K Note was never intended to be collected upon because

the:

> "...collection by TPR of the D & K Note would simply transfer
> wealth from the children, Sagi and Orly, to their parents,
> Arie and Dalia, thus undoing the estate planning scheme which
> had transferred that wealth to the children.
> (See **Exhibit "I"**, excerpt from Dalia's Pre-Trial Memorandum
> Page "26")

34.    Ultimately, the Gengers' matrimonial arbitrator, Judge I. Leo Milonas,

specifically determined that the D & K Note was never intended to be collected from its

inception.

> "The arbitrator finds for Dalia on this issue. The D & K [N]ote
> was part of the estate planning scheme to transfer wealth to the
> children. The parties never intended for this note to be collected
> and to do so would re-transfer wealth back to the parents and
> defeat their estate plan.
> (See **Exhibit "J"**, Final Arbitration Award in Genger divorce
> proceeding, Page "15")

35.    Petitioner was well aware of, and relied upon, the agreement that the D &

K Note would never be enforced. Petitioner was also aware of, and relied upon, Judge Milonas'

award declaring the D & K Note worthless and uncollectible, and Dalia, Sagi and Mr. Parnes'

sworn statements and/or written submissions to that effect.

-10-

## THE D & K AGREEMENT IS ENTERED INTO WITHOUT PETITIONER'S KNOWLEDGE AND PURPORTEDLY AUTHORIZES D & K TO PLEDGE AND ENCUMBER THE ORLY TRUST TRI SHARES

36.    On or about November 23, 2007, Leah Fang (Sagi's sister-in-law), the then sole Trustee of both Trusts[2], and Sagi, acting in his capacity as manager of D & K GP, executed an "Amended and Restated Limited Partnership Agreement of D & K Limited Partnership (the "D & K Agreement"). Among other things, the D & K Agreement purported to grant D & K GP authority to "mortgage, hypothecate, pledge, create, a security interest in or lien upon, or otherwise encumber [the Orly Trust TRI Shares] for the benefit of [D & K] or that of third parties, in connection with the [D & K Note]". (See a copy of the D & K Agreement attached hereto as **Exhibit "K"**, Page "11"). There was no legitimate need or purpose for the amendment. It was a preliminary step in Sagi and Dalia's scheme to punish Petitioner and attempt to loot the Orly Trust of this valuable asset.

37.    By its terms, the D & K Agreement, does not require D & K GP (i.e. Sagi) to give notice to anyone, including Petitioner or the Orly Trust, if a decision is made to encumber the Orly Trust TRI Shares in any way.

38.    Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession it gave to D & K GP under the D & K Agreement. Indeed, the D & K Agreement was merely an instrument created for the specific purpose of encumbering the Orly Trust and Petitioner as its beneficiary, with debt.

39.    Leah Fang never informed Petitioner of the existence of the D & K

---

[2] In 2007, Mr. Gribetz resigned as the trustee of both Trusts, without appointing a successor, thereby leaving Mr. Parnes as the sole remaining trustee. Thereafter, as set forth above, Mr. Parnes resigned as trustee of the Orly Trust appointing Leah Fang as successor Trustee.

Agreement. In January, 2008, Dalia was appointed successor trustee of the Orly Trust, despite Petitioner's objections. At that time, Dalia, notwithstanding her knowledge that the D & K Note was not intended to be collected, did nothing to attempt to rescind or nullify the D & K Agreement, nor did she do anything to advise Petitioner as beneficiary that the prior trustee had granted D & K GP authority to encumber the Orly Trust TRI shares. By that time, as a result of Dalia's granting Sagi control of TPR and D & K through the appointment of his friends and relatives as successor trustee of the Trusts, Sagi had effectively obtained control over all of the assets held by D & K, TPR, the Sagi Trust and the Orly Trust.[3]

40.    Through the above-mentioned transactions, Dalia allowed Sagi to obtain direct control over TPR and its interest in the D & K Note to the detriment of Petitioner and the Orly Trust. Notably, Sagi's role as CEO of TPR, (the creditor on the D & K Note) is in direct conflict with his role as manager of D & K (the debtor on the D & K Note), whose role was to repay the D & K Note or contest its enforceability.

## ORLY'S INITIAL APPLICATION TO REMOVE DALIA AS TRUSTEE

41.    In February, 2008, Petitioner filed an initial application with this Court (the "Initial Application") to remove Dalia as Trustee of the Orly Trust on the grounds that she feared Dalia would not protect her interests while serving as Trustee because of Dalia's animosity towards Arie, and her collusion with Sagi.

42.    Surrogate Roth denied the Initial Application as premature, believing

---

[3] In addition, by stock purchase agreement dated January 18, 2007, Sagi as CEO of TPR sold 2% of TPR's shares to his mother-in-law, Rochelle Fang, thereby eliminating Dalia's majority ownership interest of TPR by diluting it to 49%. Around the time that she became sole Trustee to the Orly Trust in January 2008, Dalia purportedly divested herself of the balance of her TPR shares. Thus, in addition to being CEO, Sagi effectively controlled TPR through the 49% owned by D & K, which Sagi controlled and the 2% owned by Rochelle Fang, also controlled by Sagi. (See Exhibit "L", Transcript of Hearing before the Honorable Jane S. Solomon dated August 22, 2011 in the action entitled Orly Genger v. Sagi Genger, Supreme Court of the State of New York, County of New York, Index No. 100697/2008) (Pages "53" to "55" for example)

Dalia should be given the chance to demonstrate whether she intended to act in Orly's interests

or against Orly's interests. Surrogate Roth gave Dalia the benefit of the doubt based, in part, on

sworn statements by Dalia to the Surrogate Court that she intended to protect the Orly Trust and

its assets.

> "[I]t appears that Dalia (who states that she is ready and able to act as
> fiduciary) has yet to assume the duties of trustee in deference to her
> daughter's position in this litigation. As a validly appointed trustee,
> she should be given the opportunity to do what she deems necessary
> to manage and protect the trust's assets.
>
> Based upon the foregoing, the appointment of a "special trustee" is
> unwarranted at this time and, accordingly, the application is denied,
> without prejudice to renewal if future circumstances warrant such
> relief.
> (See copy of Surrogate Court Decision dated December 31, 2008
> annexed hereto as **Exhibit "M"**, Pages 7-8) (emphasis added).

43.     At the time of the Surrogate's decision, the extent of Dalia's complicity in

the conspiracy with Sagi was not fully understood.

### WITHIN WEEKS OF SURROGATE ROTH'S DECISION, RATHER THAN PROTECT THE ORLY TRUST, DALIA HELPED SAGI STRIP THE ORLY TRUST OF ITS ONLY ASSETS

44.     Sadly, Dalia's every action since Surrogate Roth's decision has proven

Petitioner's fears were well grounded and the benefit of the doubt given to Dalia by Surrogate

Roth was unjustified. As described below, rather than protecting the Orly Trust, Dalia has used

her position as Trustee to help Sagi Genger strip the Orly Trust of its two assets: (1) 1,102.80

shares of common stock in TRI; and (2) a 23.52% indirect interest in TPR.

45.     As set forth below, Dalia was an active and willing participant in Sagi's

scheme to strip the Orly Trust of its assets, thereby causing harm to Petitioner as the Orly Trust's

sole beneficiary.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF THE ORLY TRUST TRI SHARES

46.     Dalia has always understood the true value and importance of the Orly Trust TRI Shares to Petitioner and to the Orly Trust. Indeed, during the Initial Application to remove Dalia as Trustee, Dalia's attorney sent Surrogate Roth a letter stating that "the most valuable asset in the Orly Genger Trust is the shares of TRI'" and "the TRI Shares held by the Orly Trust are potentially worth tens of millions of dollars." See November 11, 2008 Letter to Hon. Renee R. Roth from J.G. Kortmansky, Esq. annexed hereto as **Exhibit "N"**. (emphasis supplied)

47.     On August 22, 2008, unbeknownst to Petitioner, Rochelle Fang, (Sagi's mother-in-law) who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi Trust's 19.43% in TRI to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.[4]  In connection with the supposed sale, Sagi and David Parnes were given seats on TRI's board of directors.  This sale, which was consummated after Dalia was appointed successor trustee of the Orly Trust, has diluted and diminished the value of the Orly Trust's interest in TRI since Arie will no longer have a controlling interest in TRI (which he previously had by virtue of his voting proxy over the Trust's shares, see **Exhibit "C"**) and thus, the Orly Trust would no longer own a portion of the controlling block of TRI shares.[5]

---

[4] In response to Dalia and Sagi's collusive efforts to sell the TRI shares to the Trump Group, Petitioner, on behalf of herself, individually and the Orly Trust, commenced an action in the Supreme Court for New York County seeking to determine, among other things, the ownership of the Orly Trust TRI Shares.  See Arie Genger and Orly Genger, in her individual capacity and on behalf of The Orly Genger 1993 Trust v. Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, The Sagi Genger 1993 Trust, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, Jules Trump, Eddie Trump and Mark Hirsch, Index No. 651089/2010 (the "New York TRI Action"). The New York TRI Action is still pending before Justice Feinman.

[5] In 2011, without prior notice to Petitioner as required under the July 2009 Order, Dalia, as Trustee of the Orly Trust and in a transparent forum shopping move, commenced an action in the Delaware Chancery Court seeking a declaration that the Orly Trust is the beneficial owner of the Orly Trust TRI Shares. Dalia has been restrained from pursuing this action pursuant to a prior Order of the Court issued in the New York TRI Action.

48.    On or about January 31, 2009, only weeks after making sworn statements
to the Surrogate Court that she intended to protect the Orly Trust and its assets, Dalia executed a
document entitled "Meeting of Partners of D & K LP- Jan. 31, 2009 & Agreement (the "Meeting
Agreement"). Annexed hereto as **Exhibit "O"** is a copy of the Meeting Agreement. Like the D
& K Agreement, the Meeting Agreement purported to grant D & K GP (i.e., Sagi) unfettered
authority to encumber the Orly Trust TRI Shares:

> "The partners wish to clarify that the authority vested in the General
> Partner to make limited partners' assets subject to a pledge shall be
> done in substantially the same manner in which TPR Investment
> Associates, Inc. shares were pledged in conjunction with the
> aforementioned note [the D & K Note]. However, the General
> Partner shall be authorized to sign for the partnership and/or each
> individual partner."
> (See **Exhibit "O"**, Paragraph "3")

49.    In another naked act of self-dealing in violation of Dalia's fiduciary duties
as Trustee, the Meeting Agreement also purports to:

> "Indemnify and provide a general release from any claim or
> right at equity, law, or contract or otherwise the current and
> former general partner, its officers, the partnership's holdings
> (including TPR Investment Associates, inc.) and the officers
> of its holdings to fullest extent permitted in connection with
> any claim by the partnership and/or its partners. Irrespective
> of the above, nothing herein shall serve to release or indemnify
> Arie Genger, William Dowd, Lawrence Small or Edward
> Klimerman." (See **Exhibit "O"**, Paragraph "1")

50.    Upon information and belief, the Orly Trust received no consideration and
no direct or indirect benefit in exchange for the substantial concession, Dalia, acting as trustee,
gave to D & K GP under the Meeting Agreement. Indeed, the Meeting Agreement, like the D &
K Agreement, was merely another instrument created for the specific purpose of depleting the
Orly Trust of its assets.

51.    Both the D & K Agreement and the Meeting Agreement were negotiated

and executed without ever informing Petitioner. Moreover, Dalia never subsequently informed
Petitioner of the existence of either agreement, even though Petitioner made repeated requests to
Dalia for information about the Orly Trust and its assets during her tenure as Trustee. The
Meeting Agreement was only disclosed on or about October 2009 in connection with the New
York TPR Action (defined and discussed below) which was commenced by Petitioner in the
Supreme Court for New York County.

52.     Notably on January 10, 2009, just days before Dalia signed the Meeting
Agreement granting Sagi unfettered authority to dispose of the Orly Trust TRI Shares (and
purporting to indemnify Sagi regardless of any actions he took in connection with same),
Petitioner sent Dalia a letter reminding her (once again) that the Orly Trust TRI Shares needed to
be protected and retained.

> "For now, and until further notice, it is my strong desire to retain all
> of the shares of Trans-Resources., Inc. ("TRI") that are currently in
> the Trust, and I direct you not to sell them. If you are approached,
> or have been approached, with an offer to purchase any of the TRI
> shares in the Trust, please notify me immediately. If, despite my
> wishes, you consider accepting an offer, do not sell any shares until
> I have a reasonable period of time to maximize the benefit to the
> Trust, including possible alternative transactions."
> (See January 10, 2009 letter from Petitioner to Dalia (emphasis
> added), a copy of which is annexed hereto as **Exhibit "P"**)

53.     Dalia, in violation of her fiduciary obligations refused to agree not to
dispose of the Orly Trust TRI Shares. To do so would be contrary to the fraudulent scheme
in which Dalia was a willing participant.

54.     Likewise, although Dalia has given sworn statements to the Surrogate
Court regarding the Orly Trust, she never disclosed the existence of the D & K Agreement or the
Meeting Agreement to either Surrogate Roth or her successor Surrogate Webb. Basically,
through the D & K Agreement, the Meeting Agreement and by ceding management of D & K

and TPR to Sagi, Dalia gave Sagi total control to pilfer the Orly Trust assets for his own use and benefit.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF ITS INDIRECT INTEREST IN TPR

55.    In Surrogate Roth's decision, she noted that in the Initial Application, "...petitioner has not alleged that Dalia has refused a request for information, which would warrant relief (SCPA 2102), or has failed as trustee to protect trust assets" (see **Exhibit "M"**, Page "7").

56.    On May 14, 2009, Petitioner's then counsel, Judith Siegel-Baum, sent Dalia's attorney, Robert Meister, a document demand relating to the Orly Trust's assets. (annexed hereto as **Exhibit "Q"**).

57.    On June 1, 2009, Mr. Meister responded to Ms. Sigel-Baum's document demand by advising her that the Orly Trust no longer owned any interest in TPR. According to the letter, Sagi, acting as CEO for TPR, had foreclosed on the D & K Note and sold D & K's 240 shares of TPR for $2,200,000. A copy of the letter is annexed hereto as **Exhibit "R"**. Before that time, Dalia had neither advised nor notified Petitioner that Sagi had foreclosed on the D & K Note, nor advised Petitioner that Sagi had sold the TPR shares at auction. This news came as a complete and utter shock to Petitioner.

58.    Despite the clear and consistent agreement among the Genger family members that the D & K Note was never to be collected upon or enforced, the sworn testimony and/or Court submissions of Dalia, Sagi and Mr. Parnes, the assignee and purchaser of the D & K Note, and Judge Milonas' award and specific determination to this effect, upon receipt of Mr. Meister's letter, Petitioner learned for the first time that:

-17-

(a)    Sagi caused TPR to reclaim the D & K Note from Mr. Parnes.[6]    Then, on
August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the general manager of D & K,
that D & K was in default under the D & K Note and declared that unless the entire unpaid
principal amount of the D & K Note was paid immediately, TPR would sell, at auction, the 240
shares pledged as collateral. A copy of this purported Notification dated August 31, 2008 is
annexed hereto as **Exhibit "S"**. Dalia, who knew that the D & K Note was never intended to be
enforced and who previously had sworn to as such, in violation of her fiduciary duties as Trustee,
never sought to block Sagi from foreclosing on the D & K Note and selling the TPR shares.
Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any
effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust
had a clear interest in the TPR shares at issue.

(b)    Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K
(of which he remained managing partner) that D & K's 240 shares of TPR stock would be
auctioned to the highest bidder on February 27, 2009, and that the money received from the sale
would be used to reduce the outstanding debt under the D & K Note. A copy of this purported
Notification is annexed hereto as **Exhibit "T"**. Sagi purported to notify the interested parties of
the sale by publishing notice of the sale in the New York Post in October 2008 and February
2009. At all relevant times, Sagi had Petitioner and Dalia's contact information. Despite this,
Petitioner was never informed of the impending sale. At the time that Sagi secretly schemed
with the connivance of Dalia to structure the bogus sale, it was clear that the value of the TPR
shares was significantly higher than any purported value of the D & K Note (although as
previously stated the D & K Note had no value).

---

[6] On or about May 25, 2008, Mr. Parnes rescinded, *ab initio*, the assignment of the D & K Note. Petitioner
was also not notified of that action.

-18-

(c)    On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the 240 shares of TPR and "auctioned" the shares (the "TPR Sale"). Not coincidentally, TPR purchased the shares at auction for $2,200,000, which was substantially less than their estimated value, making no effort to collect on the D & K Note from the Sagi Trust. (See **Exhibit "U"**). The $2,200,000 proceeds of the TPR Sale were purportedly used to decrease D & K's obligations under the D & K Note. The deficiency under the D & K Note was deliberately manufactured by this sham auction in order to provide Sagi and TPR with a future basis to foreclose upon the Orly Trust's only remaining principal asset, the Orly Trust TRI Shares.

59.    TPR and Sagi, with the connivance of Dalia in breach of her fiduciary duty, effectively stripped the Orly Trust of its indirect interest in the TPR shares by improperly foreclosing on the D & K Note and conducting the TPR Sale notwithstanding the fact that the Genger family never intended the D & K Note to be enforced. Notably, this alleged and purported notification process and sham TPR Sale took place without Dalia objecting in any way, taking preventive action of any kind, or notifying Petitioner in any way.    In short, Dalia, allowed the sham TPR Sale to transpire, did not notify Petitioner of same and clearly violated her duties as a fiduciary to the Orly Trust and Petitioner, as sole beneficiary by failing to protect the valuable trust asset.

60.    The forgoing scheme injured Petitioner and the Orly Trust in a number of ways. The Orly Trust's interest in D & K is now worthless, as it purportedly no longer owns any interest in TPR, while Sagi now has control over the foreclosed TPR shares. The scheme also destroyed Arie and Dalia's tax and estate planning intent that both children have equal shares in the family wealth.

61.    Dalia, who knew that the D & K Note was never intended to be enforced, should have immediately sought to block Sagi from foreclosing on the D & K Note and selling

-19-

the TPR shares. Certainly, she should have informed Petitioner so Petitioner could make her own efforts to block the sham TPR sale or, at the least, arrange for other bidders to be at the sale. Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust has a clear interest in the TPR shares at issue.

62.    As if this was not an egregious enough breach of Dalia's fiduciary duties to the Orly Trust, Dalia has made no effort whatsoever to date to seek any contribution from the Sagi Trust for its share of purported amounts due under the D & K Note (although as previously stated at length herein, no such purported sums are due under the D & K Note because it was never intended to be enforced). In other words, if the D & K Note was truly a "liability" of both Trusts, in theory, TPR should have foreclosed on the Sagi Trust's interests as well. Of course, this will never happen as long as Sagi is still the CEO of TPR (the holder of the D & K Note) and the manager of D & K, (the maker of the D & K Note). By ceding management authority of TPR and D & K to Sagi, Dalia deliberately created Sagi's clear and unequivocal conflict of interest and "paved the road" for his self-dealing. This has resulted in Sagi looting the Orly Trust for his own benefit with the tacit or express approval of Dalia.

63.    As a fiduciary of the Orly Trust with prior, as well as continued knowledge, of the TPR foreclosure, Dalia had a duty to protect the Orly Trust's indirect ownership of the TPR shares. Instead of taking proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR shares for himself to the detriment of the Orly Trust. Moreover, in connection with her appointment as successor trustee of the Orly Trust in January, 2008, as previously stated above, Dalia purportedly divested herself of her TPR shares for the sum of $5,000,000 (without informing the Court or Petitioner as to when she transferred her interest) in a further attempt to distance herself from any attributable wrongdoing.

-20-

64.    Dalia knew of Sagi's plan to foreclose on the D & K Note as early as August, 2008, thus she withheld information from Petitioner concerning the TPR Sale for almost 10 months. Even then, she only provided the information until she received a demand letter from Petitioner's counsel and realized that legal action was imminent.

65.    In fact, the notice of the TPR Sale in the New York Post was specifically designed by Dalia and Sagi not to provide Petitioner with notice and an opportunity to object to same. Dalia and Sagi were both aware of Petitioner's address at this time but instead of notifying Petitioner, they chose to deceive her by publishing notice in the newspaper.

66.    As a result of the sham TPR Sale, on or about June 9, 2009, Petitioner commenced an action which is pending before the Supreme Court for New York County entitled, Orly Genger et al v. Dalia Genger, Sagi Genger, D & K GP LLC, TPR Investment Associates, Inc. and Leah Fang, Index No. 109749/2009 (the "New York TPR Action"). In the New York TPR Action, Petitioner is seeking, inter alia, monetary damages and the return of the TPR shares.[7]

## THE JULY 2009 ORDER AND INJUNCTION AND PETITIONER'S RENEWED APPLICATION WITH THIS COURT TO REMOVE DALIA AS TRUSTEE

67.    Upon learning of the sham TPR Sale, which stripped the Orly Trust of its indirect interest in its shares of TPR, Petitioner renewed her petition with this Court to remove Dalia as Trustee of the Orly Trust by filing same on or about June 22, 2009. Petitioner also filed a Motion with this Court and sought a temporary restraining order which enjoined and prohibited

---

[7] By Decision and Order of the Honorable Paul G. Feinman dated June 28, 2010 in the New York TPR Action, Justice Feinman determined that the Petitioner's claim with respect to Dalia's breach of her fiduciary duty as sole Trustee of the Orly Trust should be decided by the Surrogate's Court. Further, in the same Decision and Order, Justice Feinman denied Dalia's Motion for Summary Judgment and determined that there is a "...question of fact as to whether Dalia Genger acted with intent to commit fraud against plaintiff's trust [the Orly Trust], and to lull plaintiff [Orly] into a false sense of security as to the status of her trust." (See Exhibit "V", Decision and Order of Justice Feinman dated June 28, 2010, Pages "17" and "19")

Dalia, *inter alia,* and anyone acting on her behalf from attempting to sell, transfer, pledge and

encumber or take any act with respect to the Orly Trust TRI Shares without providing Petitioner

with at least 10 days prior notice. A copy of the June 22, 2009 Petition (without the exhibits

attached to it which are duplicative) is annexed hereto as **Exhibit "W"**.

68.    As a result of the Petitioner's forgoing motion for a restraining order, the

July 1, 2009 Order was entered pending the outcome of this proceeding and which imposed

certain protective restraints (the "Restraints") upon Dalia as previously set forth above. Dalia

declined to attend the hearing.

69.    During counsel's oral argument of Petitioner's motion for a restraining

order, Surrogate Webber noted to Dalia's counsel that:

> "They [Dalia and Sagi] are on notice of all of your fears
> [with respect to the dissipation of the Orly Trust's assets].
> So for them now to do something which would obviously
> be against their duties and responsibilities would be
> somewhat glaring in terms of what the surcharge [to be
> imposed against Dalia] would be." (emphasis supplied)
> (See excerpt from transcript from July 1, 2009
> hearing annexed hereto as **Exhibit "X"**, Page "23")

70.    The Restraints were later confirmed by this Court on August 18, 2009,

reconfirmed and supplemented with additional restraints by this Court on July 16, 2010 and

made a part of a stipulation between Petitioner and Dalia which was entered on September 8,

2010 (see **Exhibit "Y"**).

71.    On or about September 21, 2010, Petitioner filed the Second Amended

Verified Petition (the "Second Amended Petition") to remove Dalia as Trustee. Dalia has filed a

Motion to Dismiss the Second Amended Petition and the decision on the Motion to Dismiss still

remains *sub judice.*

## THE ADDITIONAL RESTRAINTS PLACED UPON DALIA AND SAGI BY THE NEW YORK COURTS IN THE NEW YORK TRI ACTION AND THE NEW YORK TPR ACTION

72.     In addition to the Restraints imposed upon Dalia by the July 2009 Order, on or about July 28, 2010, the Court in the New York TPR Action also restrained Dalia, Sagi and the co-defendants to that action from transferring, selling, pledging, assigning, or otherwise disposing of D & K's 48% ownership interest in TPR. (the "TPR Action Restraints") (See Exhibit "Z" at page "32")

73.     The Court in the New York TRI Action also entered certain restraints against Dalia, Sagi and the other co-defendants to that action with respect to the Orly Trust TRI Shares.[8] (the "TRI Action Restraints") (See Exhibit "AA", December 28, 2011 Order in New York TRI Action, Pages "14" through "15").

## DALIA HAS WILLFULLY AND REPEATEDLY DISOBEYED THE JULY 2009 ORDER BY ENTERING INTO A FURTHER SCHEME TO ENCUMBER AND DISSIPATE THE ORLY TRUST'S ASSETS

74.     Petitioner submits that it could not be any more clear to Dalia, her counsel, Sagi and the other co-defendants to the New York TPR Action and the New York TRI Action that Dalia was forbidden from transferring, pledging, encumbering, assigning, selling and/or dissipating any assets of the Orly Trust without prior notice to Petitioner as a result of: (i) the Restraints set forth in the July 1, 2009 Order; (ii) Surrogate Webb's statement to Dalia's counsel on the return date that Dalia and Sagi are on notice of Petitioner's fears that the Orly Trust's assets will be dissipated (and therefore, any actions taken by Dalia against her duties and responsibilities would obviously be "glaring") (See Exhibit "X", Page "23"); (iii) the Stipulation entered into between Petitioner and Orly further confirming the Restraints (See Exhibit "Y";

---

[8] Both the New York TRI Action and the New York TPR Action are before Justice Paul Feinman.

and, (iv) the restraints imposed by Justice Feinman in the New York TRI Action and New York TPR Action (collectively, the "Supreme NY Restraints"). All these restraints were specifically and expressly intended to preserve the "status quo" until the Courts rendered a final decision.

75.    Notwithstanding the forgoing, rather than honor any of these restraints, subsequent to the Petitioner's filing of the Second Amended Petition, Dalia, Sagi and their cohorts, have continued to conspire together and in secret to render all of these restraints a nullity.

76.    Instead of treating this Court's July 2009 Order and the Supreme NY Restraints as Orders to be obeyed and boundaries to be honored, Dalia, Sagi and their cohorts saw them as obstacles to be hurdled. To that end, Dalia, D & K (through D & K GP), and/or TPR (in other words, Dalia and Sagi) secretly executed eight (8) agreements[9] encumbering the Orly Trust with $4.44 million in new debt, which the Orly Trust has no hope of paying off.

77.    In breach of Dalia's fiduciary duties as Trustee, the Secret Agreements were specifically designed and intended as part of Dalia and Sagi's scheme to encumber the Orly Trust with debt but not to similarly encumber the Sagi Trust with any debt whatsoever.

78.    Petitioner discovered the existence of the Secret Agreements on or about July 6, 2012 solely in response to discovery requests made by Petitioner's counsel in the New York TPR Action. These documents were only first produced on or about July 6, 2012 notwithstanding the fact that: (i) the initial Secret Agreements, namely, the $4,000,000

---

[9] These eight secret agreements (collectively, the "Secret Agreements") will be further described immediately below and are: (i) the $4,000,000 Promissory Note dated October 3, 2011 (See Exhibit "BB"); (ii) the Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note executed on May 15, 2012 (See Exhibit "CC"); (iii) the $4,240,000 Amended and Restated Promissory Note dated May 15, 2012 (See Exhibit "DD"); (iv) the $200,000 Promissory Note dated May 15, 2012 (See Exhibit "EE"); (v) the Agreement Amending Terms of Promissory Note dated March, 2012 (See Exhibit "FF"); (vi) the purported TPR Settlement Agreement dated October 3, 2011 (See Exhibit "GG"); (vii) the purported Amended and Restated TPR Settlement Agreement dated March 16, 2012 (See Exhibit "HH"); and, (viii) the Bill of Sale and Note Assignment dated May 15, 2012 (See Exhibit "II").

Promissory Note and the TPR Settlement Agreement were both executed approximately nine (9) months earlier on October 3, 2011; (ii) the July 2009 Order expressly required that Dalia provide Petitioner with prior notice of any and all acts which would affect the Orly Trust TRI Shares; and, (iii) the Supreme NY Restraining Orders expressly required that Dalia provide prior notice of any and all acts which would affect the Orly Trust's respective interests in the Orly Trust TRI Shares and TPR.

## THE 2011 PROMISSORY NOTE

79.     Unbeknownst to Petitioner, on October 3, 2011, Dalia and TPR purported to cancel the $4,500,000 deficiency remaining on the D & K Note after the disputed TPR Sale and replace it with a $4,000,000 promissory note that directly obligated the Orly Trust to pay TPR (the "2011 Promissory Note"). (See **Exhibit "BB"**, copy of 2011 Promissory Note and the TPR Settlement Agreement (defined below), **Exhibit "GG"**).

80.     By so doing, Dalia wrongly attempted to: (i) transfer $4 million dollars of liability from D & K to the Orly Trust (See **Exhibit "GG"**, TPR Settlement Agreement at 5); (ii) replace the unenforceable D & K Note with a putatively enforceable one (id); (iii) acknowledge the legality of the sham TPR Sale and the resulting deficiency (id. at 2-3); and, (iv) ensure that this $4 million dollar liability would not fall within the release that was part of the purported TPR Settlement Agreement reached that same day between Dalia, Sagi and the other defendants to the New York TPR Action, but would continue to burden the Orly Trust (id. at 5).

81.     The 2011 Promissory Note was payable to TPR the earlier of: (a) November 1, 2012; or, (b) the receipt of any proceeds from the sale of the Orly Trust TRI Shares, "notwithstanding anything to the contrary herein or in the parties' accompanying [TPR] Settlement Agreement". See **Exhibit "BB"** at 1.

-25-

82.    By executing the 2011 Promissory Note on behalf of the Orly Trust, Dalia (i) obligated the Orly Trust to pay all of TPR's legal fees (See **Exhibit "BB"** at 2); (ii) **made her removal as Trustee an "Event of Default" making the 2011 Promissory Note immediately due and payable** (id. at 1, emphasis added); and, (iii) agreed to the law and jurisdiction of the State of Delaware (id at 2)[10]

## THE 200K PROMISSORY NOTE AND THE CREDIT AGREEMENT

83.    In May, 2012, TPR assigned the 2011 Promissory Note to MSCo, a St. Kitts entity. In exchange for an alleged $400,000 received from MSCo, Dalia had the Orly Trust sign another promissory note for $200,000 (the "200K Note") (See **Exhibit "EE"**) and increased the 2011 Promissory Note to $4,240,000.[11] (See **Exhibit "CC"**, Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note (the "Credit Agreement" and **Exhibit "EE"**, (the 200K Note).

84.    Further, Dalia, purporting to act as Trustee wrongfully attempted to: (i) waive any defenses the Orly Trust would have to payment, including any defenses with respect to MSCo., TPR, or any prior holder of the 2011 Promissory Note (See **Exhibit "CC"**, Credit Agreement, §6.1(c)); (ii) have the Orly Trust broadly indemnify MSCo., should Orly or any future Trustee legally attack the 2011 Promissory Note, the Amended Promissory Note, or the Credit Agreement (id., §7); (iii) make the Orly Trust liable for all costs of collection, including attorneys' fees (See **Exhibit "DD"**, Amended and Restated Promissory Note (the "Amended 2011 Note") § 6); (iv) **make Dalia's replacement as the Orly Trust Trustee an "Event of**

---

[10] In March, 2012, unbeknownst to Petitioner, TPR, D & K and the Orly Trust (i.e. Dalia and Sagi) purported to enter into an "Agreement Amending Terms of Promissory Note" to provide for New York law and jurisdiction in any competent court (See Exhibit "FF"). This Agreement also gave Dalia and Sagi the power to amend the 2011 Promissory Note at will.

[11] In other words, Dalia pledged $440,000 of Orly Trust assets in exchange for a purported $400,000.

**Default" making the Amended 2011 Note and the 200K Note (jointly, the "Notes")**
**immediately due and payable** (See Exhibit "CC", Credit Agreement, § 6.2, emphasis added);

(v) agree to pay the 200K Note from the sale of the Orly Trust TRI Shares "notwithstanding

anything to the contrary" (**Exhibit "EE"**, 200K Note, §1.3); and, (vi) make the Credit

Agreement and Notes fully assignable without the consent of, or notice to, the Orly Trust (See

**Exhibit "CC"**, Credit Agreement, § 10).

## THE PURPORTED SETTLEMENT AND AMENDED SETTLEMENT

85.    On October 3, 2011, Dalia (supposedly on behalf of the Orly Trust), TPR

and D & K (by Sagi Genger) purported to settle the New York TPR Action.

86.    Petitioner and her counsel in the New York TPR Action were not

informed of this purported settlement nor was Petitioner consulted in any way regarding its

terms.

87.    In violation of the July 2009 Order, the Supreme NY Restraints, Surrogate

Webb's admonishment to Dalia concerning the dissipation of the Orly Trust's Assets, and the

Stipulation entered into between Petitioner and Dalia, the purported settlement agreement (the

"TPR Settlement Agreement", which incorporates the 2011 Promissory Note by reference)

purports to have the Orly Trust transfer all its interests in D & K and disclaim all interest in TPR.

The settlement agreement also has TPR relinquish its claims to the Orly Trust TRI Shares:

> (a) TPR hereby relinquishes in favor of the OG Trust [the Orly Trust] any
> economic interest in the TRI Shares [the Orly Trust TRI Shares] and assigns
> to the OG Trust its right to any economic benefits of the TRI Shares
> including any proceeds from the sale thereof, including but not limited to
> the $10.3 million in proceeds otherwise owing to TPR in the future pursuant
> to the terms of the August 22, 2008 letter agreement; (b) the OG Trust -
> irrespective of any claim made or asserted on its behalf by Orly Genger --
> hereby transfers to TPR its limited partnership interest in DK (the "DK
> Interest"), and disclaims any interest in, any shares of or TPR, either directly

or indirectly through DK (the "TPR Interest");... and (c) TPR agrees to pay $100,000 for the legal fees of the OG Trust.[12]
(See **Exhibit "GG"**, TPR Settlement Agreement, Paragraph "1")

88.    On March 16, 2012, Dalia (supposedly on behalf of the Orly Trust), TPR, and D & K GP (by Sagi Genger) entered into a purported Amended and Restated Settlement Agreement (the "Amended TPR Settlement Agreement"). Once again, Petitioner was not informed or consulted in any way. The purported "settlement" was restated, and then amended to purportedly cancel and void "the (i) the Amended and Restated Limited Partnership Agreement of D&K Limited Partnership dated as of October 30, 2004 and signed November 22, 2007, and/or (ii) the Meeting of Partners of D&K L.P. January 31, 2009 and Agreement." See **Exhibit "HH"**, March 16, 2012 Amended TPR Settlement Agreement, Paragraph "1").

89.    Importantly, though the Amended TPR Settlement Agreement purported to void these two agreements *ab* initio, the purported settlement did nothing to reverse or unwind the sham TPR Sale that these two agreements purported to enable, or to cancel the supposed deficiency resulting from the TPR Sale.[13]

90.    Demonstrably, these various actions and agreements (agreed to in secret and never revealed to the Court or Petitioner despite numerous Court appearances, filings and outstanding documents requests) in the New York TPR Action and New York TRI Action violated the protective restraints imposed by this Court and the other New York Courts in a

---

[12] Dalia, Sagi, TPR, and D & K also purported to require the Orly Trust to pay D & K and TPR's attorneys' fees, should Petitioner continue to advance claims on the Orly Trust's behalf (see **Exhibit "GG"**, Paragraph "8") and purported to release one another from all claims, causes of action, lawsuits, demands, liability of any kind, asserted or unasserted, known or unknown, suspected or unsuspected, direct or derivative, in connection with the 1993 Note [D & K Note], the [Orly Trust] TRI Shares, the Share Transfer, the DK Interest, the TPR Interest, the 2008 Letter Agreement, or any other matters, through the date of the Agreement Id. at Paragraph "4")

[13] The parties also made sure that the Release in the TPR Settlement Agreement did not cover anyone on Sagi and Dalia's "enemies list" (See **Exhibit "HH"**, Amended TPR Settlement Agreement, Paragraph "3"), changed the governing law to New York law (id. at Paragraph "6"), and made their agreement to Delaware jurisdiction non-exclusive (id.).

number of independent ways. As to the TPR Settlement Agreement and the Amended TPR

Settlement Agreement:

     (a)    Pursuant to the July 2009 Order, Dalia and her counsel were required to give Petitioner 10 days advance notice of any transaction that impacted the Orly Trust TRI Shares, but failed to provide notice of either the TPR Settlement Agreement or the Amended TPR Settlement Agreement;

     (b)    By agreeing in the TPR Settlement Agreement and the Amended TPR Settlement Agreement to have the Orly Trust relinquish its interest in TPR and transfer its interest in D & K to TPR, Dalia, Sagi, D & K GP, and TPR jointly and severally violated the TPR Action Restraints which forbade each of them from "transferring, pledging, assigning or otherwise disposing of the [Orly Trust TPR] Shares." (See **Exhibit "Z"** at 31-32)

    91.    As to the Notes and the Credit Agreement, TPR's assignment of the 2011

Promissory Note to MSCo was an "...act by Respondent, her agents and all other persons acting

on her behalf to assign, mortgage, pledge, redeem, encumber, sell or otherwise alter the Orly

Trust's interest in TRI..." Accordingly, pursuant to the July 2009 Order, Dalia was required to

give Petitioner at least 10 days notice of the transaction but completely failed to do so. This

failure to notify Petitioner also violated various provisions of the Supreme NY Restraining

Orders.

## THE EVENT OF DEFAULT UNDER THE NOTES HAS BEEN TRIGGERED AS A RESULT OF THE DISMISSAL OF DALIA'S COUNSEL'S FEDERAL INTERPLEADER ACTION

    92.    As a result of Dalia, TPR, D & K (through D & K GP) (i.e, Dalia and

Sagi's) actions, the $4.44 million dollars in new debt to MSCo is immediately due and payable

because of one of the poison pills that litter the Secret Agreements (in addition to the one that

provides an event of default if Dalia is removed as Trustee of the Orly Trust) has already been

triggered[14], and thus, MSCo is able to immediately proceed against the Orly Trust's assets in any

---

[14]The resolution of an interpleader action commenced by Dalia's counsel, Pedowitz & Meister LLP ("Pedowitz & Meister") is a triggering Event of Default under the Secret Agreements. Pedowitz & Meister was the

jurisdiction in the world (Delaware, St. Kitts, etc.) without notice or warning to the Orly Trust or to anyone.

93.    Thus, by her actions Dalia has created a situation where the assets of the Orly Trust could be in immediate peril of dissipation.

## DALIA NEEDS TO BE REMOVED AS TRUSTEE IMMEDIATELY

94.    As a result of all of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary of the Orly Trust, her violation of the terms and conditions of this Court's July 2009 Order and the Supreme NY Restraints, her ongoing conspiracy and scheme with Sagi to loot, transfer, pledge, encumber and dissipate the Orly Trust's assets and the immediate peril to those assets, Petitioner submits that Dalia's should be immediately removed as Trustee of the Orly Trust.

## JOEL ISAACSON SHOULD BE APPOINTED AS
## SUCCESSOR TRUSTEE

95.    As a result of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary

---

Escrow Agent with respect to the proceeds of the disputed sale of the Orly Trust TRI Shares and commenced an interpleader action against Petitioner, Dalia as Trustee of the Orly Trust and other parties in the United States District Court for the Southern District of New York, Pedowitz & Meister LLP v. TPR Investment Associates, Inc. Orly Genger, et al (Case No. 11 Civ. 5602) (the "Pedowitz & Meister Interpleader Action") whereby it sought, inter alia, a judgment from the Court determining who was entitled to the proceeds of the disputed sale of the Orly Trust TRI Shares. Petitioner's counsel moved to dismiss the Pedowitz & Meister Interpleader Action on the grounds, inter alia, that the District Court lacked subject matter jurisdiction and in any event, all the parties and claims involved in the Pedowitz & Meister Interpleader Action were already pending before Justice Feinman in the New York TRI Action. The Pedowitz & Meister Interpleader Action was recently dismissed by Judge John F. Keenan in the United States District for the Southern District of New York by Opinion and Order dated June 14, 2012, due to lack of subject matter jurisdiction and described by him as a "sham". See Case No.'s 08 Civ. 7140 (JFK), 11 Civ. 5602 (JFK), et al), Docket No. 64). Thus, the resolution of this sham action has triggered an Event of Default under the Secret Agreements. It is worth noting that Pedowitz & Meister represents both Dalia in her individual capacity and as Trustee of the Orly Trust.

of the Orly Trust and her violation of the terms and conditions of this Court's July 2009 Order, Dalia should be immediately removed as Trustee and replaced with Joel Isaacson.

96.     Mr. Isaacson is the founder and CEO of Joel Isaacson & Co. LLC, which has been a leading independent wealth management firm in New York City for almost 20 years, and which is located at 546 Fifth Avenue, 20th Floor, New York, NY 10036. Mr. Isaacson specializes in financial services and tax planning and has acted as trustee for more than 100 trusts. He holds a Bachelors of Science Degree in accounting and a Masters of Business Administration degree in financial planning. Mr. Isaacson is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR or D & K, is willing and prepared to succeed Dalia as Trustee immediately and has an understanding of the current status of the Orly Trust.

**WHEREFORE,** respectfully requests that an Order be entered: (i) immediately removing Dalia Genger as Trustee of the Orly Trust; (ii) suspending the Letters of Appointment heretofore issued to Dalia; (iii) appointing Joel Isaacson as successor trustee; and, (iv) granting such other and further relief as this Court deems to be just equitable and proper.

Dated: New York, New York
        October 15, 2012

_____
ORLY GENGER

## VERIFICATION

STATE OF NEW YORK                    )
                                     ) ss.:
COUNTY OF NEW YORK                   )

     ORLY GENGER, the petitioner named in the foregoing Third Amended Verified

Petition, being duly sworn, deposes and says:

    1.    I am the Petitioner in this matter.

    2.    I have read the annexed Third Amended Verified Petition, know the contents thereof and the same are true to my knowledge, except those matters thereon which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.


_____
             ORLY GENGER


Sworn to before me this
15th day of October, 2012

_____
Notary Public

**Daniel B Fix**
Notary Public State of New York
New York County, LIC# 02F16239452
Comm Exp 04/18/2015

-32-

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY
PRESENT: __HON. PAUL G. FEINMAN__          PART __12__
                        J.S.C.

_Orly Genger, etc._                    AMENDED DECISION
                                       & ORDER
                                       INDEX NO. __109749/09 E__

        - v -                          MOT. DATE _____

_Dalia Genger, et al._                 MOT. SEQ. NO. __001-006__

                                       MOT. CAL. NO. _____

                                       **E-FILE**

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                          | **PAPERS NUMBERED** |
|----------------------------------------------------------|---------------------|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | _____        |
| Answering Affidavits — Exhibits                          | _____        |
| Replying Affidavits                                      | _____        |

**CROSS-MOTION:** ☒ Yes  ☐ No

Upon the foregoing papers, it is

ORDERED that the decision and order of this court dated June 28, 2010 and filed on July 2, 2010 which resolved motions bearing sequence numbers 001, 002, 003, 004, 005 and 006 are hereby vacated and recalled. This "gray" sheet (short form order) and the annexed Amended Decision and Order shall be substituted in their stead as the decision and order for the motions bearing seq. nos. 001 through 006, inclusive.

                                       So ordered,

Dated: __7/28/2010__
          7:25 PM                      _____
                                            J.S.C.

Check one: ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST   ☐ REFERENCE
                       ☐ PC DATE _____   ☐ CC Date _____

**MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CIVIL TERM: PART 12

-------------------------------------------------------------------X

ORLY GENGER, in her individual capacity and on
behalf of the Orly Genger 1993 Trust (both in its
individual capacity and on behalf of D & K
Limited Partnership),

                       Plaintiff,

          against

DALIA GENGER, SAGI GENGER, D & K GP
LLC, and TPR INVESTMENT ASSOCIATES,
INC.,

                       Defendants.

-------------------------------------------------------------------X

Index No.   109749/2009E
Mot. Seq. Nos.   001 through
                 006

***AMENDED***
**DECISION AND ORDER**

For the Plaintiff:
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022
(212) 223-0400

For Dalia Genger:
Pedowitz & Meister LLP
1501 Broadway
New York, NY 10036
(212) 403-7330

For Sagi Genger:
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100

For D&K GP, LLC:
Finkelstein Newman Ferrara LLP
225 Broadway
New York, NY 10007

For TPR:
Lyons McGovern, LLP
The Hennessy House
16 New Broadway
Sleepy Hollow, NY 10591
(914) 631-1336

      E-filed papers considered in review of this motion brought by order to show cause for a preliminary injunction,
motions for summary judgment, and motion to amend:

| | **Papers:** | **E-File Number:** |
|---|---|---|
| **Seq. No. 001** | Order to Show Cause & TRO, Exhibits, Memo of Law in Support | 6 , 7, 7-1, 9 |
| | Affidavit & Affirmation in Opposition, Exhibits, Memo of Law | 35, 35-1 - 35-8, 36, 37 |
| | Affidavit & Affirmation in Opposition, Memo of Law, Exhibit | 38, 39, 40, 40-1 |
| **Seq. No. 002** | Notice of Motion, Affirmations, Exhibits | 12, 13, 13-1 - 13-6, 18, 18-1 - 18-9 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52 |
| | Reply Memo of Law (Dalia Genger) | 61 |
| | Reply Memo of Law | 65 |
| **Seq. No. 003** | Notice of Motion, Affirmation, Exhibits, Memo of Law | 15, 16, 16-1 - 16-9, 19 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52, 53 |
| | Memo of Law in Reply, Affirmation, Exhibit | 59, 60, 60-1 |
| | Reply Affirmation, Exhibits, Memo of Law | 62, 62-1, 64 |
| **Seq. No. 004** | Notice of Motion, Affirmation, Memo of Law, Exhibits | 20, 21, 22, 22-1 - 22-8 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52, 54 |
| **Seq. No. 005** | Notice of Motion, Affirmation, Memo of Law, Exhibits | 27, 28, 29, 29-1 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52, 55 |
| **Seq. No. 006** | Notice of Motion, Affirmation, Exhibits | 45, 46, 46-1 - 46-7 |
| | Affirmation in Opp., Memo of Law, Exhibits | 47, 48, 48-1 - 48-2 |
| | Affirmation in Reply & Opp | 49 |