York, on the _14_ day of _December_ 2011, at _2¹⁵_ p.m., or as soon thereafter as counsel can be heard, why an Order should not issue enjoining TPR and the Trump Group Defendants, along with their agents, assigns, attorneys, and/or anyone acting on their behalf from proceeding with, or making any motion in or concerning, the action commenced in Delaware Chancery Court entitled *Dalia Genger as Trustee of the Orly Genger 1993 Trust v. TR Investors LLC et al* (the "Delaware Action") during any period of time when Dalia Genger, the plaintiff in the Delaware Action, is enjoined from prosecuting the Delaware Action by this Court; and it is hereby

ORDERED that, ~~until further order of this Court~~ *pending the hearing of this motion*, TPR and the Trump Group Defendants, along with thier agents, assigns, attorneys, and/or anyone acting on their behalf shall be prohibited from proceeding with, or making any motion in or concerning, the Delaware Action; and it is further

ORDERED, that a copy of this Order to Show Cause, together with copies of the papers upon which it was made, shall be served upon counsel for all parties who have appeared in this action by e-mail and electronic filing and that such service shall be deemed good and sufficient notice of this application. All opposition papers shall be e-filed on or before _Nov. 21, 2011_. All reply papers shall be e-filed on or before _Dec. 9, 2011_.

ORAL ARGUMENT
DIRECTED
*JSC*

ENTER:

_____
J.S.C.

**HON. PAUL G. FEINMAN**

#640275v1/YG/10669.003                    2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 12
----------------------------------------------x
ARIE GENGER and ORLY GENGER, in her
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,

                        Plaintiffs,

                 -against-

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, individually and as
trustee of THE SAGI GENGER 1993 TRUST,
GLENCLOVA INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II,
LLC, JULES TRUMP, EDDIE TRUMP AND MARK HIRSCH,

                        Defendants.
----------------------------------------------x

Index No. 651089-10

ORDER
Motion Sequence
Numbers 012 and 013

**PAUL G. FEINMAN, J:**

The instant motions, brought on by orders to show cause

assigned motion sequence numbers 012 and 013, respectively, are

filed by plaintiff Orly Genger, in her individual capacity and on

behalf of the Orly Genger 1993 Trust, seek temporary restraining

orders and preliminary injunctions against the defendants named

in the above-captioned action, from proceeding with that certain

action commenced in the Delaware Chancery Court entitled *Dalia

Genger as Trustee of the Orly Genger 1993 Trust v. TR Investors

LLC et al* (the Delaware Action), in which Dalia Genger sought a

declaratory judgment with respect to the beneficial ownership of

the Orly Trust shares. On October 26, 2011 and November 9, 2011,

after hearing from counsel for the plaintiff and the defendants,

this Court issued temporary restraining orders (the TROs)
enjoining the defendants from proceeding with, or otherwise
making any motion in or concerning, the Delaware Action until
further order of this Court.   The TROs were issued to maintain
the status quo in this matter, pending a decision of the United
States District Court for the Southern District of New York (the
Federal Court), which is anticipated to, inter alia, determine
the proper forum or jurisdiction for hearing and adjudicating the
beneficial interest in the disputed shares (the Federal Court
Decision).   Inasmuch as the Federal Court Decision has not yet
been issued, the instant motions are held in abeyance, pending
the Federal Court's resolution of the jurisdictional issue.

Accordingly, it is

ORDERED that the temporary restraining orders dated October
26, 2011 and November 9, 2011 shall continue pending further
order of this Court; and it is further

ORDERED that the parties are directed to notify the court
when the Federal Court Decision has issued in order that this
court may finally resolve the motions hereby held in abeyance.

Dated: April 9, 2012

_Carl G Fernin_

J.S.C.

2

# ZEICHNER ELLMAN & KRAUSE LLP

575 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022
(212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

35 MASON STREET
GREENWICH, CT 06830
(203) 622-0900
FAX: (203) 862-9889

103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
(973) 618-9100
FAX: (973) 364-9960

YOAV M. GRIVER
(212) 826-5338
ygriver@zeklaw.com

January 16, 2013

**BY E-FILING**

Hon. Barbara Jaffe, J.S.C.
Supreme Court of the State of New York
60 Centre Street
New York, NY 10007

## Arie Genger et al. v. Sagi Genger et al., Index No. 651089/10

Dear Justice Jaffe:

       This firm represents plaintiff Orly Genger, as an individual and on behalf of the Orly Genger 1993 Trust ("Orly"), in the above-referenced action. Pursuant to Uniform Court Rule 202.48, Orly submits the attached counter-proposed Judgment in response to defendant Dalia Genger's ("Dalia") proposed Judgment [Docket No. 287], along with a redline showing the limited changes Orly has made to Dalia's proposed Judgment. <u>We respectfully request a conference with the Court to address Dalia and Orly's proposed Judgments.</u>

       Orly's proposed Judgment makes two changes to Dalia's proposed Judgment. *First*, Orly's proposed Judgment removes the phrase "all temporary restraining orders and preliminary injunctions are vacated as against" Dalia. The Court's Decision and Order, however, does not contemplate the release of any injunctions or restraints. Further, Dalia's proposed language could affect Justice Feinman's restraint of an action commenced by Dalia Genger -- supposedly *on behalf of the Orly Trust*, and not as an individual -- in Delaware Chancery Court (the "Delaware DJ Action"). <u>See</u> Docket No. 150 [signed TRO]. All parties to the Delaware DJ Action remain parties to this action, including the Orly Trust, and the injunction remains necessary and appropriate.

       *Second*, Orly's proposed Judgment removes the phrase "and that Plaintiffs Arie Genger and Orly Genger take nothing against" Dalia. Such language is unclear and appears unnecessary.[1]

       Orly thanks the Court for its continued attention to this matter.

---

[1] Neither this letter nor Orly's counter-proposed Judgment should be construed as a waiver of Orly's right to appeal the Decision and Order.

ZEICHNER ELLMAN & KRAUSE LLP

Hon. Barbara Jaffe
January 16, 2013
Page 2

Respectfully submitted,

Yoav M. Griver
Attorney for plaintiff Orly Genger

YMG:asl
Enclosures

cc:      All Counsel of Record (by e-file)

Present:
Hon. Barbara Jaffe, Justice

At a Trial Term, Part 12, of the
Supreme Court of the State of New
York, held in and for New York
County, at the Courthouse, 60
Centre Street, on January __, 2013

---

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
Trust,

                          Plaintiffs,

          v.

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, Individually and as Trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.

                          Defendants.

Index No. 651089/2010

PROPOSED JUDGMENT

---

Upon the Decision and Order entered December 19, 2012, and the Amended Decision
and Order entered January 2, 2013, and the papers referenced therein, including the Summons
and Supplemental Summons, the Third Amended and Supplemental Complaint (Dkt. 112), the
October 14, 2011 Notice of Motion of Defendant Dalia Genger to Dismiss the Third Amended
and Supplemental Complaint (Dkt. 129) and October 14, 2011 Affirmation of Robert A. Meister
and Memorandum in Support thereof (Dkts. 129-1, 129-2, and 159), the Memorandum of
Plaintiff Orly Genger in Opposition thereto (Dkt. 182), the Memorandum of Plaintiff Arie
Genger in Opposition thereto (Dkt. 189), the November 22, 2011 Affirmation of Lauren J.

2

Wachtler in Opposition thereto (Dkt. 191) and the Reply Memorandum of Dalia Genger is

Support (Dkt. 195), it is hereby

     ORDERED, ADJUDGED AND DECREED that all claims against Defendant

Dalia Genger are severed and dismissed with prejudice, and it is further

     ORDERED, ADJUDGED AND DECREED that Defendant Dalia Genger, who resides

at 200 East 65th Street, New York, New York 10065, shall have Judgment for costs and

disbursements of $200 pursuant to CPLR § 8101, and $45 pursuant to CPLR § 8202 against Arie

Genger, who resides at 2600 Island Boulevard, Penthouse One, Aventura, Florida 33160, and

Orly Genger, who resides at 1965 Broadway, Apartment 22G, New York, New York 10024.

ENTER

 

                                               _____

                                               Barbara Jaffe, Justice

                                               _____

                                               Clerk of the Court

3

At a Trial Term, Part 12, of the
Supreme Court of the State of New
York, held in and for New York
County, at the Courthouse, 60
Centre Street, on January __, 2013

Present:
Hon. Barbara Jaffe, Justice

---

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
Trust,

                    Plaintiffs,

          v.

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, Individually and as Trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.

                    Defendants.

Index No. 651089/2010

PROPOSED JUDGMENT

---

Upon the Decision and Order entered December 19, 2012, and the Amended Decision
and Order entered January 2, 2013, and the papers referenced therein, including the Summons
and Supplemental Summons, the Third Amended and Supplemental Complaint (Dkt. 112), the
October 14, 2011 Notice of Motion of Defendant Dalia Genger to Dismiss the Third Amended
and Supplemental Complaint (Dkt. 129) and October 14, 2011 Affirmation of Robert A. Meister
and Memorandum in Support thereof (Dkts. 129-1, 129-2, and 159), the Memorandum of
Plaintiff Orly Genger in Opposition thereto (Dkt. 182), the Memorandum of Plaintiff Arie
Genger in Opposition thereto (Dkt. 189), the November 22, 2011 Affirmation of Lauren J.

2

Wachtler in Opposition thereto (Dkt. 191) and the Reply Memorandum of Dalia Genger is

Support (Dkt. 195), it is hereby

      ORDERED, ADJUDGED AND DECREED that all claims against Defendant

Dalia Genger are severed and dismissed with prejudice ~~and all temporary restraining orders~~

~~and preliminary injunctions are vacated as against her, and that Plaintiffs Arie Genger and~~

~~Orly Genger take nothing against Dalia Genger~~, and it is further

      ORDERED, ADJUDGED AND DECREED that Defendant Dalia Genger, who resides

at 200 East 65th Street, New York, New York 10065, shall have Judgment for costs and

disbursements of $ 200 pursuant to CPLR § 8101, and $45 pursuant to CPLR § 8202 against

Arie Genger, who resides at 2600 Island Boulevard, Penthouse One, Aventura, Florida 33160,

and Orly Genger, who resides at 1965 Broadway, Apartment 22G, New York, New York 10024.

                ENTER

                _____

                Barbara Jaffe, Justice

                _____

                Clerk of the Court

Document comparison done by Workshare DeltaView on Wednesday, January 16, 2013 12:26:04 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://NYZEK_LIB/696776/1 |
| Document 2 | PowerDocs://NYZEK_LIB/696776/2 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 1 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 3 |

# FILED UNDER SEAL

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **BARBARA JAFFE**
*J.S.C.*
*Justice*

PART *12*

Index Number : 651089/2010
GENGER, ARIE
vs.
GENGER, SAGI
SEQUENCE NUMBER : 017
VACATE STAY/ORDER/JUDGMENT

INDEX NO. *651089/12*

MOTION DATE _____

MOTION SEQ. NO. *017*

The following papers, numbered 1 to _____ , were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____ |
| Answering Affidavits — Exhibits _____ | No(s). _____ |
| Replying Affidavits _____ | No(s). _____ |

Upon the foregoing papers, it is ordered that this motion is

DECIDED IN ACCORDANCE WITH
ACCOMPANYING DECISION / ORDER

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

DEC 2 3 2013

Dated: _____

_____, J.S.C.
**BARBARA JAFFE**
*J.S.C.*

1. CHECK ONE: ......................................   ☐ CASE DISPOSED   ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: .................MOTION IS:  ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☑ OTHER
3. CHECK IF APPROPRIATE: ................................  ☐ SETTLE ORDER   ☐ SUBMIT ORDER
   ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  :  IAS PART 12
------------------------------------------------------------------x

ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,

                        Plaintiffs,

              -against-

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, individually and as trustee of THE SAGI GENGER 1993 TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP AND MARK HIRSCH,

                        Defendants.

------------------------------------------------------------------x

SAGI GENGER, individually and as assignee of THE SAGI GENGER 1993 TRUST, and TPR INVESTMENT ASSOCIATES, INC.,

      Cross-Claimants, Counterclaimants, and Third-Party Claimants,

              -against-

ARIE GENGER, ORLY GENGER, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, TRANS-RESOURCES, INC., and WILLIAM DOWD,

      Cross-Claim, Counterclaim and/or Third-Party Defendants.

------------------------------------------------------------------x

Index No. 651089/10

Mot. Seq. Nos. 017-020, 022, 025

**DECISION AND ORDER**

```
-----------------------------------------------------------------x
```
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC, JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.,

        Counterclaimants, Cross-Claimants, and Third-
        Party Plaintiffs,

            -against-

ARIE GENGER, ORLY GENGER, SAGI GENGER,
TPR INVESTMENT ASSOCIATES, INC., THE
SAGI GENGER 1993 TRUST, WILLIAM DOWD,
ARNOLD BROSER, DAVID BROSER, and ONE
OR MORE ENTITIES DIRECTED, OWNED OR
CONTROLLED BY ARNOLD BROSER AND/OR
DAVID BROSER,

        Counterclaim, Cross-Claim, and/or Third-
        Party Defendants.
```
-----------------------------------------------------------------x
```
BARBARA JAFFE, JSC:

This decision and order addresses motion sequence numbers 017, 018, 019, 020, 022 and

025 in the above-captioned action. In sequence number 017, the so-called Trump Group seeks an

order vacating or modifying an order issued on November 9, 2011 by the justice previously

presiding in this part temporarily restraining it and others from proceeding in a related action

pending before the Delaware Court of Chancery (November 2011 TRO). In sequence numbers

018, 019, and 020, third-party defendants Arnold Broser and David Broser seek orders

dismissing and/or severing the third-party actions commenced against them by the Trump Group.

In sequence number 022, David Broser moves for an order quashing the Trump Group's

subpoena *duces tecum*.

On or about June 16, 2013, plaintiffs and third-party defendants Arnold Broser and David Broser (collectively, AG Group), entered into a settlement agreement with the Trump Group that resolved the various claims and counterclaims among the parties and contains a confidentiality clause. On July 1, 2013, I so-ordered a second amended stipulation and order of discontinuance with prejudice by which the parties, among other things, agreed to the vacatur of the November 2011 TRO. Given the settlement agreement and stipulation, and based on counsels' representations, sequence numbers 017, 018, 019, 020, and 022 are moot and deemed withdrawn.

Thereafter, defendants TPR Investment Associates, Inc. (TPR) and Sagi Genger (collectively, TPR/Sagi) sought by order to show cause (sequence number 025) an order compelling the production or disclosure of the settlement agreement. Plaintiffs oppose; the Trump Group takes no position.

## I.  BACKGROUND

The instant motion (sequence number 025) is one of many addressed in prior opinions. Thus, familiarity with the essential facts is presumed. For present purposes the following background is provided.

On July 26, 2010, plaintiffs commenced this action seeking, among other things, a determination of their beneficial ownership interests in certain shares of Trans-Resources, Inc. (TRI), a TPR subsidiary, or the proceeds of the TRI shares, as well as damages arising from defendants' alleged fraudulent acts and breaches of fiduciary duties. In a decision dated January 2, 2013, I dismissed all of plaintiffs' claims but for those alleging a breach of fiduciary duty and unjust enrichment against, among others, TPR/Sagi. As mentioned above, AG Group, including

3

plaintiffs, settled with the Trump Group. A copy of the settlement agreement accompanied a request that I so-order the stipulation.

On July 8, 2013, after the Delaware Chancery Court rendered its decision awarding TPR proceeds from its sale of the TRI shares of which plaintiffs claimed beneficial interests, Arie sought to restrain TPR/Sagi from using or otherwise disposing of the sale proceeds (sequence number 024). In support, Arie stated that, pursuant to the settlement agreement, he relinquished his claims to the actual ownership of his TRI shares, but reserved his claims against TPR/Sagi to receive the proceeds of such shares, based on his surviving claims of breach of fiduciary duty and unjust enrichment. I declined to sign the OSC. Arie appealed to the Appellate Division, First Department.

## II. DISCUSSION

### A. Contentions

TPR/Sagi argues that Arie's attempt to obtain emergency relief to restrain or enjoin it from using the sale proceeds is substantially based on the settlement agreement, thereby opening the door to its disclosure. It relies on a heading in Arie's appellate brief ("Arie's Settlement With The Trump Group Defendants Does Not Affect His Unjust Enrichment Claims For the Turnover of The Arie Share Proceeds") and Arie's statement therein that "[a]s part of that settlement, Arie relinquished any future claim to the actual ownership of the Arie TRI Shares themselves, but clearly reserved . . . his . . . claims against TPR and Sagi in this action to receive the [shares] proceeds . . . ." (NYSCEF 531, at 3). TPR/Sagi also contends that plaintiffs have thereby placed the settlement agreement in issue, and that the settlement agreement is otherwise relevant because the Trump Group paid plaintiffs a sum certain in exchange for the release of claims

against it, and that plaintiffs "may well have been made whole by the terms of the Settlement, thereby negating any claims for damages against TPR and Sagi." Thus, TPR/Sagi maintains that "at the least," it is entitled to an offset pursuant to GOL § 15-108. (NYSCEF 531, at 5).

Arie opposes, contending that his claim to the share proceeds arises from his unjust enrichment and breach of fiduciary duty claims and not from the settlement agreement. (NYSCEF 538).

B.  Analysis

Disclosure of the terms of a settlement agreement by a settling party to a nonsettling party "may be appropriate, despite the presence of a confidentiality clause in the agreement, where the terms of the agreement are 'material and necessary' to the nonsettling party's case." (*Mahoney v Turner Constr. Co.,* 61 AD3d 101, 103 [1ˢᵗ Dept 2009]).  However, where the terms "have no bearing on the issues in the case, the terms are not discoverable by a nonsettling party." (*Id.* at 105).  Any uncertainty as to the relevance of the settlement terms may be resolved by an *in camera* review of the settlement agreement, and confidential terms may be protected by an order limiting disclosure. (*Id.*).  And, although a party may open the door to an issue and thereby waive an objection to disclosure, the determination of whether a party has opened the door to an issue is discretionary, based on a consideration of "whether . . . the evidence or argument said to open the door is incomplete or misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression." (*People v Massie*, 2 NY3d 179, 184 [2004]).

My approval of the stipulation was based primarily on the settlement agreement whereby the settling parties agreed to the mutual dismissal and release of claims and counterclaims, save for the aforementioned claims against TPR/Sagi.  Although referencing the agreement wherein

5

Arie relinquished his claim to actual ownership of the TRI shares and reserved his claims against TPR/Sagi, the injunctive relief he sought was not based on the settlement agreement but on his claim to beneficial ownership of the shares, and TPR/Sagi identifies no incomplete or misleading statements about the agreement in Arie's appellate brief or other courts papers. That plaintiffs produced *in camera* a copy of the settlement agreement neither opens the door to its disclosure nor puts its terms in issue, as it was provided in conjunction with the stipulation, and does not constitute an impermissible *ex parte* communication.

In contrast to the circumstances set forth in *Osowski v AMEC Constr. Mgt., Inc.*, 69 AD3d 99 (1ˢᵗ Dept 2009), here, the settlement has no bearing on anything other than a possible offset at the end of the trial. TPR/Sagi's speculation that plaintiffs may have been made whole by the settlement does not warrant disclosure of the agreement and is, in any event, not supported by its terms. (*Id.* at 107, citing *Matter of New York County Data Entry Worker Prod. Liab. Litig.*, 162 Misc 2d 263 [Sup Ct, NY County 1994], *affd*, 222 AD2d 381 [1ˢᵗ Dept 1995] [although settlement terms would be useful in assessing maximum exposure under 15-108, "such strategizing has no bearing on the underlying issues of fault and damages"]; *King County, Washington v IKB Deutsche Industriebank AG*, 2012 WL 3553775, *2, 2012 US Dist LEXIS 116583, *9 (SD NY, Aug. 17, 2012, No. 09 CV 8387 [defendant may raise 15-108 defense without knowing settlement terms]). Here, other than trial strategy, TPR/Sagi fails to advance a sufficient reason supporting its request for pre-verdict disclosure of the settlement agreement.

Additionally, at oral argument of the motion, TPR/Sagi's counsel argued, for the first time, that because the settlement agreement affects plaintiffs' beneficial ownership of the TRI shares, disclosure is essential. (NYSCEF Doc. No. 547, at 15-16). Plaintiffs' opposition papers

6

to the instant motion and their papers seeking approval of the stipulation reflecting that plaintiffs

agreed to release their claims against the Trump Group and acknowledged that the Trump Group

owns all right and interest, both beneficial and outright, to the shares, in exchange for the

payments under the settlement agreement, while retaining their claims against TPR/Sagi in this

action, demonstrate that disclosure of the agreement is not essential to their defense, and my

decision permitting the claims to proceed against TPR/Sagi is based on the allegations in

plaintiffs' complaint as well as other pleadings filed by the relevant parties.  Therefore, the

settlement agreement, and Arie's release of his claim to beneficial ownership of the shares, is

irrelevant to TPR/Sagi's defense in this action.

Accordingly, based on the foregoing, it is hereby

ORDERED, that, with respect to motion sequence numbers 017, 018, 019, 020 and 022,

the relief sought is moot and the motions are deemed withdrawn; it is further

ORDERED, that with respect to motion sequence number 025, the relief sought is denied;

and it is further

ORDERED, that the parties are directed to appear for a status conference before this court

on January 22, 2014, at 215 a.m./p.m.

ENTER:

_____
J.S.C.

Dated:        December 18, 2013
              New York, New York

**BARBARA JAFFE**
*J.S.C.*

7

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on March 11, 2014.

Present - Hon. Peter Tom,                  Justice Presiding,
                David Friedman
                Rolando T. Acosta
                Richard T. Andrias
                Rosalyn H. Richter,        Justices.

------------------------------------x
Arie Genger,
        Plaintiff-Appellant-Respondent/
        Plaintiff-Appellant,

                -and-

Orly Genger, in her individual capacity
and on behalf of Orly Genger 1993
Trust,
        Plaintiff-Appellant-Respondent,
                                            M-541
                -against-                   Index No. 651089/10

Sagi Genger, et al.,
        Defendants-Respondents-Appellants/
        Defendants-Respondents,

Glencova Investment Company, et al.,
        Defendants-Respondents-Appellants,

                -and-

Rochelle Fang, etc., et al.,
        Defendants.
------------------------------------x

        Consolidated appeals and cross appeals having been taken to
this Court from the amended order of the Supreme Court, New York
County, entered on or about January 2, 2013 (mot. seq. nos. 006,
007, 009-011, 015), and from the order of said Court entered on
or about July 11, 2013 (mot. seq. nos. 013-016), respectively,
and said consolidated appeals and cross appeals having been
perfected,

        And defendants TPR Investment Associates, Inc. and Sagi
Genger having moved, pursuant to CPLR 3124, to compel the
production of the Settlement Agreement entered into between
plaintiffs Arie Genger and Orly Genger and the defendants
referred to as the "Trump Group", and for related relief,

(M-541)                          -2-                     March 11, 2014


    Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon,

    It is ordered that the motion is denied.  Sua sponte, the
perfected consolidated appeals and cross appeals are adjourned to
the May 2014 Term.


        ENTER:



                                        CLERK

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **BARBARA JAFFE**
*J.S.C.*
*Justice*

PART 12

Index Number : 109749/2009
GENGER, ORLY
vs.
GENGER, DALIA
SEQUENCE NUMBER : 034
COMPEL DISCLOSURE

INDEX NO. 109749/00

MOTION DATE _____

MOTION SEQ. NO. 034

The following papers, numbered 1 to _____ , were read on this motion to/for    *Compel*

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH ACCOMPANYING DECISION / ORDER**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 7/3/14                                          _____, J.S.C.
**BARBARA JAFFE**
*J.S.C.*

1. CHECK ONE: .................................................... ☐ CASE DISPOSED    ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: .........................MOTION IS:  ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................................................  ☐ SETTLE ORDER    ☐ SUBMIT ORDER
☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 12
------------------------------------------------------------------x
ORLY GENGER, in her individual capacity and on
behalf of the Orly Genger 1993 Trust (both in its
individual capacity and on behalf of D & K Limited
Partnership),

                                 Plaintiff,

        -against-

DALIA GENGER, SAGI GENGER, LEAH FANG,
D & K GP LLC, and TPR INVESTMENT
ASSOCIATES, INC.,

                                 Defendants.
------------------------------------------------------------------x

Index No. 109749/2009

Motion seq. nos. 034, 035

**DECISION AND ORDER**

BARBARA JAFFE, JSC:

| | |
|---|---|
| **For plaintiff:** | **For TPR/Sagi:** |
| Yoav M. Griver, Esq. | John Dellaportas, Esq. |
| Brian Leinbach, Esq. | Nicholas Schretzman, Esq. |
| Zeichner, Ellman & Krause, LLP | Morgan, Lewis & Bockius LLP |
| 1211 Avenue of the Americas | 101 Park Ave. |
| New York, NY 10036 | New York, NY 10178 |
| 212-223-0400 | 212-309-6000 |
| | |
| William Wachtel, Esq. | |
| Wachtel, Missry LLP | |
| 885 Second Ave. | |
| New York, NY 10017 | |
| 212-909-9595 | |

In motion sequence number 034, defendants TPR Investment Associates, Inc. (TPR) and

Sagi Genger (collectively, TPR/Sagi) seek an order compelling plaintiff Orly Genger and

nonparties Arie Genger and Mark Hirsch to attend additional depositions and answer questions

about the settlement agreement entered into by Orly, Arie and the so-called Trump Group in or

about June 2013. (NYSCEF 539). In motion sequence number 035, Arie seeks a protective order

preventing further deposition of him by TPR/Sagi. (NYSCEF 550). These motions are

consolidated for disposition.

## I.  BACKGROUND

The background pertinent to these motions is set forth in several opinions of this court

and others, including my decision dated December 23, 2013, rendered in the related action,

*Genger v Genger*, Index No. 651089/2010. (NYSCEF 700).  In that decision, I denied

TPR/Sagi's motion for an order compelling Arie and Orly to disclose the terms of the June 2013

settlement.  TPR/Sagi filed this motion seeking essentially the same relief, and before I issued the

December decision.  And, in another decision in that action, dated March 20, 2014, I denied

TPR/Sagi's motion for an order enjoining Orly from implementing or accepting the benefits of

the settlement, thereby rejecting their contention that Orly should be restrained from enjoying or

using the proceeds for her own benefit as the  proceeds belong to the Orly Trust. (NYSCEF 925).

In light of the foregoing, and given the protracted history of these litigations, familiarity

with the factual background, rulings, and rationales set forth in the December and March

decisions is presumed.

## II.  DISCUSSION

TPR/Sagi allege that as the Orly Trust receives no consideration for releasing its claims

against the Trump Group, the party that funded the settlement, and that Orly has pocketed the

proceeds for her own benefit, there is "a clear conflict of interest between Orly and the Orly

Trust, which would militate for dismissal of Orly's derivative claims against Sagi and TPR on

the grounds that she is no longer an adequate representative."  They thus argue that the settlement

agreement is relevant to their defenses in this action, as opposed to the 2010 action addressed in

my December 2013 decision, and that Orly, as a derivative plaintiff, has no standing to bring

claims on behalf of the Orly Trust given the conflict of interest and her inadequate representation

2

of the Trust's interests. (NYSCEF 547).

Having settled claims against the Trump Group in her individual capacity and as beneficiary of the Orly Trust, and absent anything prohibiting the Orly Trust from prosecuting claims against the Trump Group, there is no conflict between Orly and the Trust. And, it is undisputed that TPR/Sagi sought to obtain proceeds of the sale of the Orly Trust shares to the Trump Group, which proceeds are also claimed by the Orly Trust. Moreover, in a recent opinion issued by the Southern District of New York in *TPR Inv. Assoc., Inc. v Pedowitz & Meister LLP*, 2014 WL 1979932, *6 (SD NY, May 15, 2014), although TPR was found to be entitled to the proceeds, the court also observed that nothing therein "should be construed as resolving any question other than whether TPR is the next (but not necessarily last) beneficiary of the sale of the Orly Trust Shares." Consequently, given TPR/Sagi's struggle with the Trust over the proceeds, their bona fides in expressing concern for the Trust is questionable at best.

Additionally, Dalia, trustee of the Orly Trust, has often sided with her son Sagi in these actions, and if Orly is deemed to be an inadequate representative of the Orly Trust, and Dalia declines to pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be insulated from the prosecution of such claims. However, after TPR/Sagi filed this motion, the Appellate Division, First Department, held that Dalia had a conflict of interest in releasing herself, as part of settlement agreements entered into in 2011 and 2012 between TPR/Sagi and herself, as trustee. It also adjudged the settlements, which were against Orly's interests, as void and/or voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1st Dept 2014]). Thus, Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly. And, as noted by the First Department, Orly had petitioned the Surrogate's Court to remove Dalia as trustee and to

3

surcharge her. (*Id.*).

To the extent that there exist any issues as to which claims filed by Orly against the Trump Group belong to Orly individually or are derivative claims of the Orly Trust, and whether the derivative claims were released pursuant to the settlement agreement, as I observed in my March 2014 decision, those are matters for the parties to the settlement agreement.

This action does not involve the Trump Group, the party that is released under the settlement agreement. Rather, this action concerns Orly's allegation of "a sham UCC sale" orchestrated by Dalia and Sagi in 2009 with respect to the so-called 1993 Note that was never intended to be collected or enforced. Thus, TPR/Sagi have not demonstrated that the settlement agreement is relevant to their defenses. (NYSCEF 549 at 1). And it is undisputed that the settlement agreement settles no claims asserted by Orly in this action. Thus, there is no need to depose Orly about the settlement agreement.

As it is also undisputed that neither Arie nor Hirsch, an officer of the Trump Group, are parties to this action, there is no basis for deposing them about the settlement agreement.

TPR/Sagi also rely on a recent pleading filed by the Trump Group in the 2010 action (NYSCEF 888) whereby it raises a defense pursuant to General Obligations Law § 15-108 (b) to the cross claim for contribution asserted against it by TPR/Sagi. They argue that the pleading reflects the divergent positions taken by Orly and the Trump Group as to whether the settlement agreement settled derivative claims and, thus, according to TPR/Sagi, "one of these parties is lying to the Court." (NYSCEF 638 at 2). Per my holding in the December decision, the settlement agreement "has no bearing on anything other than a possible offset at the end of the trial," and that even though the settlement terms may be useful in assessing maximum exposure

4

under §15-108, "such strategizing [to obtain the settlement terms] has no bearing on the

underlying issues of fault and damages." (NYSCEF 700 at 1).  I thus found that "other than trial

strategy, TPR/Sagi fail[ed] to advance a sufficient reason supporting its request for pre-verdict

disclosure of the settlement agreement." (*Id.*).  The same holds true here.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED, that the relief requested in motion sequence number 034 by TPR Investment

Associates, Inc. and Sagi Genger (TPR/Sagi) seeking to compel additional depositions of the

named deponents is denied; and it is further

ORDERED, that the relief requested in motion sequence number 035 by nonparty Arie

Genger for a protective order to prevent further depositions of him by TPR/Sagi is denied as

moot.

ENTER:

Barbara Jaffe, JSC

Dated:        July 3, 2014
              New York, New York

5

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **BARBARA JAFFE**    PART _12_
            _J.S.C._
                    _Justice_

Index Number : 651089/2010
GENGER, ARIE                            INDEX NO. _651089/10_
vs.
GENGER, SAGI                            MOTION DATE _____
SEQUENCE NUMBER : 031                   MOTION SEQ. NO. _031_
REARGUMENT/RECONSIDERATION

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is _for leave to reargue_
_is denied. See Genger v Genger, NY Slip Op_
_66095 (U)._

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _9/16/14_                          _____, J.S.C.
                                          **BARBARA JAFFE**
                                          _J.S.C._

1. CHECK ONE: ...................................... ☐ CASE DISPOSED  ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ............................................. ☐ SETTLE ORDER  ☐ SUBMIT ORDER
                                          ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **BARBARA JAFFE**
_____
J.S.C.                                    PART _12_
                            *Justice*

| Index Number : 651089/2010 | INDEX NO. 651089/10 |
| GENGER, ARIE | MOTION DATE _____ |
| vs. | MOTION SEQ. NO. _023_ |
| GENGER, SAGI | |
| SEQUENCE NUMBER : 023 | |
| OTHER RELIEFS | |

The following papers, numbered 1 to _____ , were read on this motion to/for  _other reliefs_

| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____ |
| Answering Affidavits — Exhibits _____ | No(s). _____ |
| Replying Affidavits _____ | No(s). _____ |

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH
ACCOMPANYING DECISION / ORDER**

Scanned to New York EF on 3/24/14 mk

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated:    **MAR 2 1 2014** _____    _____ , J.S.C.

| 1. CHECK ONE: ........................................... | ☐ CASE DISPOSED | ☑ NON-FINAL DISPOSITION |
| 2. CHECK AS APPROPRIATE: ..................MOTION IS: | ☐ GRANTED ☑ DENIED | ☐ GRANTED IN PART ☐ OTHER |
| 3. CHECK IF APPROPRIATE: ............................... | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| | ☐ DO NOT POST | ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK :   PART 12
------------------------------------------------------------------------------x
ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of THE ORLY GENGER 1993 TRUST,

                Plaintiffs,

        -against-

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC.,
DALIA GENGER, THE SAGI GENGER 1993 TRUST,
ROCHELLE FANG, individually and as trustee of
THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP AND MARK HIRSCH,

                Defendants.
------------------------------------------------------------------------------x
SAGI GENGER, individually and as assignee of
THE SAGI GENGER 1993 TRUST, and TPR INVESTMENT
ASSOCIATES, INC.,

                Cross-Claimants, Counterclaimants,
                and Third-Party Claimants,

        -against-

ARIE GENGER, ORLY GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH, TRANS-RESOURCES, INC.,
and WILLIAM DOWD,

                Cross-Claim, Counterclaim and/or
                Third-Party Claim Defendants.
------------------------------------------------------------------------------x
BARBARA JAFFE, JSC:

      Index No. 651089/10

      Motion Seq. No. 023

      **DECISION AND ORDER**

      Sagi Genger (Sagi), The Sagi Genger 1993 Trust (Sagi Trust) and TPR Investment

Associates, Inc. (TPR) ask that I 1) decline to "so-order" a stipulation of settlement, unless and

until the settlement and all settlement-related documents have been produced to all interested

parties; and 2) enjoin and restrain plaintiff Orly Genger from implementing, accepting

consideration from, or in any way enjoying the benefits of the settlement, unless and until

movants' arguments about the settlement have been heard. Orly opposes the motion.

## I.  BACKGROUND

The parties to the settlement referenced in the stipulation are, primarily, Arie Genger,

Orly Genger and the Trump Group, composed of Glenclova Investment Company, TR Investors,

LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, and Mark

Hirsch.  Movants ask that I not so-order the stipulation because 1) Orly settled derivative claims

belonging to the Orly Trust; and 2) the Sagi Trust, the remainderman beneficiary of the Orly

Trust, will be harmed if Orly is not enjoined from taking the settlement proceeds for herself, as

such proceeds belong to the Orly Trust, not to Orly personally.

After being provided with a copy of the settlement agreement for *in camera* review, a

conference call was held with me on June 27, 2013 and all the parties in interest, including

counsel. (NYSCEF 487).  As a result of the conference call, a statement was inserted into the

stipulation reflecting that Orly had settled her claims against the Trump Group "in her individual

capacity and as beneficiary of" the Orly Trust.  The statement was initialed by counsel for Orly,

Arie, and the Trump Group.  Because the stipulation was so-ordered, the request that I decline to

do so is moot, as is the request for the production or disclosure of the settlement agreement and

related documents, which I denied by order dated December 18, 2013, rendered in a closely

related, if not substantially identical, matter. (NYSCEF 700).

The remaining issues raised in this motion are whether Orly settled derivative claims of

the Orly Trust, and if so, whether she should be enjoined from taking and using proceeds of the

2

settlement for her sole benefit. Movants allege that, although the stipulation specifies that Orly

settled claims against the Trump Group in her individual capacity and as beneficiary of the Orly

Trust, she actually settled derivative claims belonging to the Orly Trust. Thus, they argue that

the settlement proceeds belong to the Orly Trust. They rely in large part on a letter to me dated

June 28, 2013 in which counsel for the Trump Group states, in relevant part, that "[c]ertain of

Orly Genger's claims against the Trump Group in this action have been held by Justice Feinman

to be derivative in nature," and that "[e]xcluding such claim from the claims that are to be

dismissed is not what the Trump Group bargained and paid for in the settlement . . . ." (NYSCEF

485). At oral argument, counsel for the Trump Group explained that the stipulation submitted to

me for approval indicated that "Orly was signing in whatever capacities she has," and that the so-

ordered stipulation "supersedes" the arguments advanced in the June 28 letter. (NYSCEF 651 at

6, 8). In essence, the parties to the settlement agreement concur that the only claims released by

Orly against the Trump Group were those "that Orly made on her own behalf and as a beneficiary

of the [Orly Trust]" (NYSCEF 651 at 11), and that the Trump Group agreed to the language

inserted in the so-ordered stipulation (NYSCEF 651 at 12 ["Your Honor, my colleague, Mr.

Allingham, signed the interlineated order as you entered it. We agree to whatever that order

is."]).

　　　　Dalia Genger, trustee of the Orly Trust, neither filed nor joined in the instant motion.

Instead, she signed an affidavit, dated June 28, 2013, asserting that "an analysis of the claims

[filed by Orly against the Trump Group] shows that they are entirely claims of the Orly Trust and

that she has no individual rights separate therefrom." (NYSCEF 483, ¶ 2). Dalia's assertion is

not supported or accompanied by any analysis of the subject claims, and is fatally conclusory.

3

Similarly, movants only "suspected" that "derivative Orly Trust claims" were settled in the

settlement agreement, and now allege that their suspicion is bolstered by the June 28 letter.

(NYSCEF 577, ¶ 6). And, having found that "Dalia - as trustee of Orly's Trust - had a conflict

of interest in releasing herself as part of the October 2011 and March 2012 settlement agreements

[embodying the proposed transactions]" (*Genger v Genger*, -- AD3d --, 2014 NY Slip Op 01421

*2 (1st Dept 2014), the Appellate Division throws doubt on Dalia's standing to complain.

In the settlement agreement, Orly stops short of releasing derivative claims. Rather, in

paragraph 8 of the agreement, she only agrees to "cooperate" and "cause" the Orly Trust to

release any and all claims against he Trump Group. At any rate, and to the extent that there

remain issues of fact and law as to which claims filed by Orly against the Trump Group belong to

Orly individually and/or are derivative claims belonging to the Orly Trust, I invite the parties to

the settlement agreement to set forth the claims given up by Orly in her individual and beneficial

capacities, and to explain why any derivative claims advanced in the complaint are not released

by the agreement. Unless and until the issue of derivative claims is resolved, I cannot determine

whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly

Trust, particularly when the Sagi Trust has asserted a contingent remainderman interest in the

Orly Trust.

Orly's counsel also challenges the legal standing of the Sagi Trust in making this

motion, as it is undisputed that TPR has no interest in the Orly Trust. At oral argument, counsel

contended that given Orly's youth and good health, the Sagi Trust's interest "is only contingent,

and if [Orly] does have issue, it is destroyed forever," and thus such interest "is speculative at

best." (NYSCEF 651 at 13; NYSCEF 548 at 3). Counsel also noted that even though a

4

contingent remainderman has "limited standing," movants cite no authority "allow[ing] them to

highjack [sic] a settlement based upon contingent remainderman status." (NYSCEF 651, at 14).

As movants seek injunctive relief against Orly, they must establish their standing to pursue such

relief, which they have failed to do.  Hence, the requested relief is denied without prejudice.

Although I have reviewed the settlement agreement and so-ordered the related stipulation,

in accordance with *Mahoney v Turner Constr. Co.* (61 AD3d 101 [1st Dept 2009]), signing the

stipulation only resolves the parties' dispute regarding whether the terms and related documents

should be produced or disclosed.

Accordingly, based on the foregoing, it is hereby

ORDERED, that the branch of the instant motion seeking an order declining to "so-order"

that certain "Second Amended Stipulation of Discontinuance with Prejudice," dated as of June

20, 2013 (the Stipulation), is denied as moot; it is further

ORDERED, that the branch of the instant motion seeking, in effect, an order requiring the

disclosure or production of that certain settlement agreement referenced in the Stipulation is

denied as moot; and it is further

ORDERED, that the branch of the instant motion seeking to enjoin or restrain plaintiff

from implementing, accepting consideration from, or in any way enjoying the benefits of the

settlement agreement is denied without prejudice.

ENTER:

Barbara Jaffe, JSC.

Dated:        March 20, 2014
              New York, NY

5

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
TRUST,

      Plaintiffs,

      - against -

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, individually and as Trustee
of the SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT CO., TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES
TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.,

      Defendants.

---

SAGI GENGER, individually and as assignee of THE
SAGI GENGER 1993 TRUST, and TPR INVESTMENT
ASSOCIATES, INC.,

      Cross-Claimants, Counterclaimants, and Third-
      Party Claimants,

      - against -

ARIE GENGER, ORLY GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., and WILLIAM DOWD,

      Cross-Claim, Counterclaim and/or Third-Party
      Defendants.

INDEX NO. 651089/2010

( SECOND )
AMENDED STIPULATION OF
DISCONTINUANCE WITH
PREJUDICE

Hon. Barbara Jaffe

Part 12



GLENCLOVA INVESTMENT CO., TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II,
LLC, JULES TRUMP, EDDIE TRUMP, MARK
HIRSCH, and TRANS-RESOURCES, INC.,

     Counterclaimants, Cross-Claimants, and Third-
     Party Plaintiffs,

       - against –

ARIE GENGER, ORLY GENGER, SAGI GENGER,
TPR INVESTMENT ASSOCIATES, INC., THE SAGI
GENGER 1993 TRUST, WILLIAM DOWD, ARNOLD
BROSER, DAVID BROSER, and ONE OR MORE
ENTITIES DIRECTED, OWNED OR CONTROLLED
BY ARNOLD BROSER AND/OR DAVID BROSER,

     Counterclaim, Cross-Claim, and/or Third-Party
     Defendants.

WHEREAS no party hereto is an infant or an incompetent as to whom a committee has been

appointed;

WHEREAS the parties hereto have entered into a confidential agreement finally resolving the

disputes between them as it relates to the subject matter of this action;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel for

Plaintiffs/Counterclaim Defendants Arie Genger and Orly Genger ("Orly"), in her individual capacity

 and ~~on behalf of~~ *(as beneficiary of)* the Orly Genger 1993 Trust, and Third-Party Defendants Arnold Broser, David Broser

and One or More Entities Directed, Owned or Controlled by Arnold Broser and/or David Broser

(collectively, the "AG Group"), and Defendants/Counterclaimants/Third-Party Plaintiffs Glenclova

Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump,

Eddie Trump, Mark Hirsch, and Trans-Resources, Inc. (collectively, the "Trump Group"), that:

1

1.        All claims, counterclaims and third-party claims of the AG Group in this action against the Trump Group are discontinued with prejudice and without costs;

2.        All claims, counterclaims and third-party claims of the Trump Group in this action against the AG Group are discontinued with prejudice and without costs;

3.        Any and all orders, including, without limitation, the Order to Show Cause dated August 8, 2011 (Mot. Seq. 5), the Order to Show Cause for Temporary Restraining Order and Preliminary Injunction dated August 11, 2011 (Mot. Seq. 4), the Order to Show Cause and Temporary Restraining Order dated November 9, 2011 (Mot. Seq. 13) (the "November 9, 2011 OSC") and the Decision and Order dated December 28, 2011 entered in this action which restrain, enjoin or in any way limit actions by any members of the Trump Group shall be, and are hereby, vacated and dissolved. Except as specifically provided in paragraph 4 of this Stipulation, nothing in this Stipulation is intended to vacate or dissolve any order entered in this action restraining, enjoining or in any way limiting acts by Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, individually and/or as Trustee of the Orly Genger 1993 Trust, William Dowd, the Sagi Genger 1993 Trust, or Rochelle Fang, individually and/or as Trustee of the Sagi Genger 1993 Trust.

4.        Orly's applications that resulted in the Order to Show Cause and Temporary Restraining Order entered October 26, 2011 (the "October 26, 2011 OSC") (Mot. Seq. 012) and the November 9, 2011 OSC are hereby withdrawn. The parties hereto stipulate and agree that any and all orders, restraints, injunctions or other limiting actions in the October 26, 2011 OSC and the November 9, 2011, which restrain, enjoin or in any way limit actions by any party, individual or entity from proceeding in the matter entitled *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors LLC et al.*, C.A. No. 6906-CS ( Del. Ch) shall be, and are hereby, vacated and dissolved.

2

5.        Nothing in this Stipulation is intended to dismiss, discontinue or release any claim

asserted in this action as against Sagi Genger, TPR Investment Associates, Inc., Dalia Genger,

individually and/or as Trustee of the Orly Genger 1993 Trust, William Dowd, the Sagi Genger 1993

Trust, or Rochelle Fang, individually and/or as Trustee of the Sagi Genger 1993 Trust.

[INTENTIONALLY BLANK]

3

IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be executed by facsimile and in counterparts that together shall constitute one and the same Stipulation.

DATED:  New York, New York
        June 21, 2013

MITCHELL SILBERBERG & KNUPP LLP

By: _____
    Paul D. Montclare
    pdm@msk.com
    12 East 49th Street, 30th Floor
    New York, New York 10017-1028
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

    *Attorneys for Plaintiff Arie Genger*


FELDMAN GALE P. A.
&
LAWRENCE, WORDEN, RAINIS, & BARD P.C.

By: _____
    Michael P. Hogan
    Jeffrey D. Feldman
    Ashley G. Kessler
    mhogan@feldmangale.com
    1700 Market Street, Suite 3010
    Philadelphia, Pennsylvania 19103
    (305) 358-5001
    &
    Russell T. McHugh
    rmchugh@lwrlawyer.com
    225 Broad Hollow Road, Suite 105E
    Melville, New York 11747
    (631) 694-0033

    *Attorneys for Third-Party Defendant
    Arnold Broser*

SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP

By: _____
    William P. Frank
    Thomas J. Allingham II
    John Boyle
    William.Frank@skadden.com
    Thomas.Allingham@skadden.com
    John.Boyle@skadden.com
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    *Attorneys for Third Party Glenclova
    Investment Company, TR Investors, LLC,
    New TR Equity I, LLC, New TR Equity II,
    LLC, Jules Trump, Eddie Trump, Mark
    Hirsch And Trans-Resources, Inc.
    (Collectively, The "Trump Group")*

4

5389781.1/43419-00001

IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be executed by facsimile and in counterparts that together shall constitute one and the same Stipulation.

DATED:  New York, New York
        June 20, 2013

MITCHELL SILBERBERG & KNUPP LLP

By: _____
    Paul D. Montclare
    pdm@msk.com
    12 East 49th Street, 30th Floor
    New York, New York 10017-1028
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

*Attorneys for Plaintiff Arie Genger*

FELDMAN GALE P. A.
&
LAWRENCE, WORDEN, RAINIS, & BARD
P.C.


By: _____
    Michael P. Hogan
    Jeffrey D. Feldman
    Ashley G. Kessler
    mhogan@feldmangale.com
    1700 Market Street, Suite 3010
    Philadelphia, Pennsylvania 19103
    (305) 358-5001
    &
    Russell T. McHugh
    rmchugh@lwrlawyer.com
    225 Broad Hollow Road, Suite 105E
    Melville, New York 11747
    (631) 694-0033

*Attorneys for Third-Party Defendant*
*Arnold Broser*

SKADDEN, ARPS, SLATE MEAGHER &
FLOM LLP

By: _____
    William P. Frank
    Thomas J. Allingham II
    John Boyle
    William.Frank@skadden.com
    Thomas.Allingham@skadden.com
    John.Boyle@skadden.com
    Four Times Square
    New York, New York 10036
    (212) 735-3000

*Attorneys for Third Party Glenclova*
*Investment Company, TR Investors, LLC,*
*New TR Equity I, LLC, New TR Equity II,*
*LLC, Jules Trump, Eddie Trump, Mark*
*Hirsch And Trans-Resources, Inc.*
*(Collectively, The "Trump Group")*

3

ZEICHNER, ELLMAN & KRAUSE LLP

THE FREYBERG LAW GROUP

By: _____
     Yoav M. Griver
     Brian D. Leinbach
     YGriver@zeklaw.com
     BLeinbach@zeklaw.com
     575 Lexington Avenue
     New York, New York 10022
     (212) 223-0400

By: _____
     Mark L. Freyberg
     Mitchell Goldberg
     mfreyberg@freyberglaw.com
     mitchell@oglaw.net
     950 Third Avenue, 32nd Floor
     New York, New York 10022
     (212) 754-9200

*Attorneys for Plaintiff Orly Genger, in her
individual capacity and ~~on behalf of~~ the Orly
Genger 1993 Trust*

as beneficiary of (*ymg*)

*Attorneys for Third Party Defendant
David Broser*

So-Ordered: _____

Hon. Barbara Jaffe

5389781.1/43419-00001

ZEICHNER, ELLMAN & KRAUSE LLP            THE FREYBERG LAW GROUP

By: _____            By: _____
    Yoav M. Griver                          Mark L. Freyberg
    Brian D. Leinbach                        Mitchell Goldberg
    YGriver@zeklaw.com                       mfreyberg@freyberglaw.com
    BLeinbach@zeklaw.com                     mitchell@oglaw.net
    575 Lexington Avenue                     950 Third Avenue, 32nd Floor
    New York, New York 10022                 New York, New York 10022
    (212) 223-0400                           (212) 754-9200

*Attorneys for Plaintiff Orly Genger, in her*          *Attorneys for Third Party Defendant*
*individual capacity and on behalf of the Orly*        *David Broser*
*Genger 1993 Trust*


So-Ordered: _____ BARBARA JAFFE
                                                    J.S.C.
            Hon. Barbara Jaffe

5389781.1/43419-00001

Page 1

1          SUPREME COURT OF THE STATE OF NEW YORK
2                   Index No. 109749/09
3     ORLY GENGER in her        :
      individual capacity       :          **CERTIFIED COPY**
4     and on behalf of the      :
      Orly Genger 1993          :
5     Trust (both in its        :
      individual capacity       :
6     and on behalf of D&K      :
      Limited Partnership),     :
7                               :
8               Plaintiff,      :
      -against-                 :          DEPOSITION OF:
      ECF Case DALIA            :
9     GENGER, SAGI GENGER,      :          ORLY GENGER
      LEAH FANG, D&K GP         :
10    LLC, and TPR              :
      INVESTMENT                :
11    ASSOCIATES, INC.,         :
                                :
12              Defendants.     :
13    - - - - - - - - - - - - - - -
14          VIDEOTAPED DEPOSITION OF ORLY GENGER
15          TRANSCRIPT of the stenographic notes
16    of the proceedings in the above-entitled
17    matter, as taken by and before
18    CAROLYN CHEVANCE, a Shorthand Reporter, and
19    Notary Public of the State of New Jersey, held
20    at the office of Morgan, Lewis & Bockius LLP, 101
21    Park Avenue, New York, New York, on October
22    25, 2013, commencing at 10:15 a.m.
23
24    Reporter: Carolyn Chevance
25    Job 66709

1

2    A P P E A R A N C E S:

3

4           ZEICHNER ELLMAN & KRAUSE
            BY:  YOAV GRIVER, ESQ.
5           575 Lexington Avenue
            New York, New York  10022
6           Attorneys for Plaintiff
7           MORGAN, LEWIS & BOCKIUS
            BY:  NICHOLAS SCHRETZMAN, ESQ.
8           101 Park Avenue
            New York, New York  10178
9           Attorneys for Defendant
10

11   Also present:

12

13   Dale Swindell, Videographer

14

15

16

17

18

19

20

21

22

23

24

25

1              ORLY GENGER

2    attempted sale of TRI shares and the loss of her

3    trust control premium but she has not yet done

4    so", you then brought a -- you then brought that

5    lawsuit, correct?

6         A    Yes.

7         Q    And you brought that lawsuit as you

8    did this one, both individually and on behalf of

9    your trust; is that correct?

10        A    Just to be certain, if you want to

11   give me a copy of my Complaint if you're going to

12   ask me questions about that lawsuit.

13        Q    I'm not going to ask you many

14   questions about it, I promise.  Just whether you

15   brought those claims, if you can remember,

16   whether you brought them both as you did in this

17   action, whether you brought them individually and

18   on behalf of the Orly trust alleging injury to

19   you and injury to the trust?

20        A    Yes.

21        Q    You did.  You brought that claim

22   against the parties in this action, as Sagi and

23   TPR as well as the Trump Group?

24        A    Yes.

25        Q    And you since settled your claims

1                    ORLY GENGER

2     against the Trump Group; is that correct?

3         A      I settled with the Trump Group.

4         Q      And you settled your claims that

5     you brought on your own behalf and on behalf of

6     the trust, correct?

7              MR. GRIVER:   Objection,

8         mischaracterizes.   Objection, foundation.

9         Objection, mischaracterizes facts.

10        A      I settled on behalf of myself as an

11    individual.

12        Q      You did not settle the claims that

13    were brought on behalf of the trust?

14        A      Well, if there -- if the trustee of

15    my trust decides to file a complaint with the

16    Trumps regarding this matter they can.

17        Q      Sorry, the Complaint has already

18    been filed alleging these injuries to the trust,

19    right?

20        A      Correct.

21        Q      Your testimony today is that when

22    you settled your claims against the Trumps you

23    did not settle those claims on behalf of the

24    trust, is that right?

25              MR. GRIVER:   Can I have that back?

1                    ORLY GENGER

2                (The record was read.)

3                MR. GRIVER:  Objection, asked and

4        answered.

5        A      I settled with the Trumps on my

6    behalf as an individual.  Not -- I am not the

7    trustee of my trust.  So I couldn't settle with

8    them as a trustee of my trust.

9                If the trustee decides to pursue

10   this matter with the Trumps they can.

11       Q      So no consideration was paid to the

12   trust, is that correct?

13               MR. GRIVER:  Can I have the

14       question back?

15               (The record was read.)

16       Q      In connection with the settlement?

17               MR. GRIVER:  I'm going to object

18       because you are seeking a legal conclusion

19       from a lay witness.

20       Q      I will actually rephrase that.

21               No money was paid to the Orly trust

22   in exchange for the dismissal of the settlement

23   of claims, is that correct?

24               MR. GRIVER:  Let's go off the

25       record.  I'm going to say that the reason

# In The Matter Of:

*ARIE GENGER and ORLY GENGER*
*v.*
*SAGI GENGER*

---

## *ORLY GENGER - Vol. 1*
### *February 14, 2014*

---

**MERRILL CORPORATION**

**LegaLink, Inc.**

225 Vanck Street
10th Floor
New York, NY 10017
Phone: 212.557.7400
Fax: 212.692.9171

ORLY GENGER - 2/14/2014

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

----------------------------------x

ARIE GENGER and ORLY GENGER, in her

individual capacity and on behalf of

the ORLY GENGER 1993 Trust,

                    Plaintiffs,

     -against-        Index No. 651089/2010

SAGI GENGER, TPR INVESTMENT ASSOCIATES,

INC., DALIA GENGER, THE SAGI GENGER

1993 TRUST, ROCHELLE FANG, Individually

and as Trustee of THE SAGI GENGER 1993

TRUST, GLENCLOVA INVESTMENT COMPANY, TR

INVESTORS, LLC, NEW TR EQUITY I, LLC,

NEW TR EQUITY II, LLC, JULES TRUMP,

EDDIE TRUMP, MARK HIRSCH, and

TRANS-RESOURCES, INC.,

                    Defendants.

----------------------------------x

                    February 14, 2014

                    10:17 a.m.


     Videotaped Deposition of ORLY GENGER,

taken by Defendants, pursuant to Notice, at

the offices of Morgan Lewis & Bockius LLP,

101 Park Avenue, New York, New York, before

ERIC J. FINZ, a Shorthand Reporter and

Notary Public within and for the State of

New York.

ORLY GENGER - 2/14/2014

Page 2

```
 1
 2    A P P E A R A N C E S :
 3    ZEICHNER ELLMAN & KRAUSE LLP
      Attorneys for Plaintiff Orly Genger
 4         1211 Avenue of the Americas
           New York, New York 10036
 5
      BY:  YOAV M. GRIVER, ESQ.
 6         (ygriver@zeklaw.com)
 7         -AND-
 8    WACHTEL MISSRY
           885 Third Avenue
 9         New York, New York 10017
10    BY:  WALTER P. STASIUK, ESQ.
           (wstasiuk@wmllp.com)
11
12                                              10:18:32
      MITCHELL SILBERBERG & KNUPP LLP
13    Attorneys for Plaintiff Arie Genger
           12 East 49th Street
14         New York, New York 10017
15    BY:  LAUREN J. WACHTLER, ESQ.
           (ljw@msk.com)
16
17                                              10:17:51
      MORGAN LEWIS & BOCKIUS LLP
18    Attorneys for Defendants Sagi Genger and TPR
      Investment Associates
19         101 Park Avenue
           New York, New York 10178
20
      BY:  NICHOLAS SCHRETZMAN, ESQ.
21         (nschretzman@morganlewis.com)
               -and-
22         JESSICA JOY, ESQ.
           (jjoy@morganlewis.com)
23
24
25
```

ORLY GENGER - 2/14/2014

Page 3

```
 1
 2     A P P E A R A N C E S: (Continued)              10:18:02
 3     SKADDEN ARPS SLATE MEAGHER & FLOM LLP           10:18:05
       Attorneys for Defendants Glenclova
 4     Investment Company, TR Investors LLC, New TR    10:18:13
       Equity I LLC, New TR Equity II LLC,
 5     Trans-Resources, Mark Hirsch, Jules Trump
       and Eddie Trump
 6          One Rodney Square
            P.O. Box 636
 7          Wilmington, Delaware 19899
 8     BY:  DOUGLAS D. HERRMANN, ESQ.
            (douglas.herrmann@skadden.com)
 9
10                                                     10:18:19

       GOLDBERG SEGALLA LLP
11     Attorneys for William Dowd
            11 Martine Avenue
12          White Plains, New York 10606
13     BY:  BRIAN T. STAPLETON, ESQ.
            (bstapleton@goldbergsegalla.com)
14
15
16
       ALSO PRESENT:
17
            SAGI GENGER
18
            WILLIAM PACE, Videographer
19
20
21
22
23
24
25
```

ORLY GENGER - 2/14/2014

Page 70

| | | |
|---|---|---|
| 1 | ORLY GENGER | 12:10:49 |
| 2 | yes. | 12:10:51 |
| 3 | Q.    And you filed this complaint on | 12:10:56 |
| 4 | your behalf individually and on behalf of | 12:10:58 |
| 5 | your trust.  Is that correct? | 12:10:59 |
| 6 | A.    Yes. | 12:11:00 |
| 7 | Q.    And have you since settled your | 12:11:07 |
| 8 | claims against The Trump Group that you | 12:11:09 |
| 9 | brought in this action? | 12:11:13 |
| 10 | MR. HERRMANN:  Object to the | 12:11:14 |
| 11 | form of the question. | 12:11:16 |
| 12 | A.    I settled with the Trumps other | 12:11:24 |
| 13 | than with regards to my trust.  So I settled | 12:11:29 |
| 14 | with them as an individual. | 12:11:31 |
| 15 | Q.    So are you still suing them on | 12:11:33 |
| 16 | behalf of the trust? | 12:11:36 |
| 17 | A.    No.  I'm not currently suing | 12:11:43 |
| 18 | them on behalf of the trust. | 12:11:51 |
| 19 | Q.    So you aren't suing them in your | 12:12:00 |
| 20 | individual capacity or on behalf of the | 12:12:02 |
| 21 | trust; correct? | 12:12:04 |
| 22 | MR. GRIVER:  Can I have that | 12:12:06 |
| 23 | question read back, please. | 12:12:12 |
| 24 | (Record read as requested.) | 12:12:14 |
| 25 | A.    Correct. | |

ZEICHNER ELLMAN & KRAUSE LLP

575 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022
(212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

35 MASON STREET
GREENWICH, CT 06830
(203) 622-0900
FAX: (203) 862-9889

YOAV M. GRIVER
(212) 826-5338
ygriver@zeklaw.com

103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
(973) 618-9100
FAX: (973) 364-9960

August 17, 2015

**BY E-MAIL**

John Boyle, Esq.
Skadden, Arps, Slate,
  Meagher & Flom LLP
Four Times Square
New York, NY 10036

**John.Boyle@skadden.com**

<u>Arie Genger et al. v. Sagi Genger et al., Index No. 651089/10</u>

Dear John:

As you know, this firm represents Orly Genger. On Friday, August 14, 2015, you filed an Affirmation with the Appellate Division, First Department, in connection with the above-referenced action that contained two related material misstatements. In Paragraph 5(b) of your Affirmation you state that "In June 2013, while the appeals were pending, the Trump Group settled with Orly, acting individually and for the Orly Trust." In Paragraph 10 you state "all of Orly's and the Orly Trust's claims against the Trump Group were resolved in the June 2013 Settlement and dismissed in connection with the Stipulation of Discontinuance." Both these statements are incorrect and misleading to the First Department. <u>We ask that you correct your two misstatements.</u>

As you may know, your statements are directly contradicted by the following (as well as contemporaneous 2013 correspondence and transcripts of proceedings):

1.    <u>The unambiguous language of the June 2013 Settlement. ("CSA").</u>    Orly settled only individually and as beneficiary; she did not settle Orly Trust claims. Indeed, the CSA expressly defines the Orly Trust as a non-settling party, CSA at 3, and the Orly Trust was not included in any release of claims. Emphasizing that the CSA does not release Orly Trust claims, the CSA directs Orly and the rest of the AG Group to take necessary actions to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties" in the future. Id. at 16. *A fortiori*, had the Orly Trust's claims been released in the CSA there would be no reason to include language about "causing" the release of Orly Trust claims in the future.

2.    <u>The unambiguous language of the New York Supreme Court's So-Ordered Stipulation of Dismissal.</u> The So-Ordered Stipulation of Dismissal discontinued claims that Orly

ZEICHNER ELLMAN & KRAUSE LLP

John Boyle, Esq.
August 17, 2015
Page 2

brought individually and as beneficiary, but, like the CSA, did not dismiss Orly Trust claims
(indeed, language dismissing Orly Trust claims was specifically removed). The Stipulation of
Dismissal expressly left Orly Trust claims un-settled, and also lifted the injunctions that had
heretofore prevented the Orly Trust from prosecuting its beneficial ownership claims to the Orly
Trust TRI Shares in the earlier-filed Dalia Delaware action, so that the Orly Trust could prosecute
its still-existing claims.

      3.   The Trump Group's August 2013 Settlement of Orly Trust claims in
Delaware. On or about August 30, 2013, taking advantage of the fact that the CSA did not settle
trust claims and the termination of the injunctions, the Trump Group settled the Orly Trust's claims
in the Delaware courts, by entering into the "So-Ordered" August 30, 2013 Stipulation in the
Delaware Chancery Court action that Dalia commenced on behalf of the Orly Trust. *A fortiori*,
had the Orly Trust's claims been released in the CSA there would be no reason for you or your
client to settle those same claims two months later.

      4.   Both the United States District Court and the New York County Supreme
Court have recognized that the CSA did not settle the Orly Trust claims. See Genger v. Genger,
2015 U.S. Dist. LEXIS 649, *9-10 (S.D.N.Y. Jan. 5, 2015) ("The [June] 2013 Settlement
Agreement does not waive any of the Orly Trust's claims."); 3/20/14 Decision and Order in this
action at 4 ("in the [June] 2013 settlement agreement, Orly stops short of releasing derivative
claims").

      In light of the foregoing, please correct your material misstatements to the First
Department. Thank you.

                             Sincerely yours,

                             Yoav M. Griver

YMG/asl

cc:  Paul D. Montclare
     Lauren J. Wachtler
     Brian T. Stapleton
     Desmond C.B. Lyons
     John Dellaportas
     Robert A. Meister
     Judith Lisa Bachman
     Ira Tokayer

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

ERIC D. HERSCHMANN
EHERSCHMANN@KASOWITZ.COM
212-506-1711

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO

September 28, 2015

**BY EMAIL**

Thomas J. Allingham II, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, Delaware 19899

John Boyle, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 198999

Re:    *June 16, 2013 Confidential Settlement Agreement between the*
       *Trump Group and the AG Group ("the Settlement Agreement")*

Counsel:

We represent Orly Genger. We have reviewed the various correspondence, court filings and decisions regarding the Settlement Agreement and do not intend to engage in a letter writing campaign. As we are sure you know, the Settlement Agreement has not been modified or amended and Judge Jaffe has not changed her prior rulings. Section 17 of the Settlement Agreement requires that all parties -- including Ms. Genger -- consent in writing to an amendment or modification of the agreement, and, to date, Ms. Genger has not provided her written consent to any such amendment or modification. No party can unilaterally amend the Agreement. Your latest conduct appears to be an attempt to make such unilateral modifications. Though Ms. Genger has released certain claims against the Trump Group by entering into the Settlement Agreement, she has not released claims against the Trump Group for a breach of the Settlement Agreement itself. We do not wish to engage in any further litigation with your clients, but if your conduct continues, we will have no choice but to do so. If you would like to discuss this matter further, please call me.

Sincerely,

Eric D. Herschmann /S.M.K.

Eric D. Herschmann

cc:    Yoav Griver, Esq. (by email)



# GRANTED

## IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust,                          :

       Plaintiff,                          :

      v.                                  :

TR INVESTORS, LLC, GLENCLOVA            :
INVESTMENT CO., NEW TR EQUITY I,        :
LLC, NEW TR EQUITY II, LLC,             :
TRANS-RESOURCES, INC., and              :
TPR INVESTMENT ASSOCIATES, INC.         :

       Defendants.                          :                          C.A. No. 6906-CS

_____     :

TR INVESTORS, LLC, GLENCLOVA            :
INVESTMENT CO., NEW TR EQUITY I,        :
LLC, NEW TR EQUITY II, LLC, and         :
TRANS-RESOURCES, INC.,                  :

       Counterclaim and Crossclaim         :
       Plaintiffs,                          :

      v.                                  :

DALIA GENGER, as Trustee of the         :
Orly Genger 1993 Trust,                 :

       Counterclaim Defendant,              :

  and                                      :

TPR INVESTMENT ASSOCIATES, INC.,        :

       Crossclaim Defendant                 :

_____     :

TPR INVESTMENT ASSOCIATES, INC.,        :
       Counterclaim and Crossclaim         :
       Plaintiff,                           :

|                                                      |   |
|------------------------------------------------------|---|
| v.                                                   | : |
|                                                      | : |
| DALIA GENGER, as Trustee of the                     | : |
| Orly Genger 1993 Trust,                             | : |
|                                                      | : |
| Counterclaim Defendant,                             | : |
|                                                      | : |
| and                                                  | : |
|                                                      | : |
| TR INVESTORS, LLC, GLENCLOVA                        | : |
| INVESTMENT CO., NEW TR EQUITY I,                    | : |
| LLC, NEW TR EQUITY II, LLC, and                     | : |
| TRANS-RESOURCES, INC.,                              | : |
|                                                      | : |
| Crossclaim Defendant                                | : |

## STIPULATION AND PROPOSED ORDER OF DISMISSAL

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the

stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2. The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3. The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale

---

[1] This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds into a court in New York at any time.    Upon the so-ordering of paragraphs 1-2 above concerning beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights under the Escrow Agreement. Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court.

4. The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

5. The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group have already been dismissed without prejudice.

6. Each party shall bear its own costs.

/s/ *Thomas J. Allingham*
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2015)
Douglas D. Herrmann (I.D. No. 4872)
Amy C. Huffman (I.D. No. 5022)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Attorneys for TR Investors, LLC, Glenclova*
*Investment Co., New TR Equity I, LLC,*
*New TR Equity II, LLC, and Trans-*
*Resources, Inc.*

/s/ *Jeremy D. Anderson*
Jeremy D. Anderson (I.D. No. 4515)
Joseph B. Warden (I.D. No. 5401)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware  19899

*Attorneys for Dalia Genger, as Trustee of*
*the Orly Genger 1993 Trust*

/s/ *Colm F. Connolly*
Colm F. Connolly (I.D. No. 3151)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
(302) 574-3000

*Attorneys for TPR Investment Associates,*
*Inc.*

IT IS SO ORDERED this _____ day of _____, 2013.

_____
Chancellor Leo E. Strine, Jr.

**This document constitutes a ruling of the court and should be treated as such.**

|  |  |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Leo E Strine |
| **File & Serve Transaction ID:** | 53943155 |
| **Current Date:** | Aug 30, 2013 |
| **Case Number:** | 6906-CS |
| **Case Name:** | Genger, Dalia vs T R Investors LLC |
| **Court Authorizer:** | Strine, Leo E |

/s/ Judge Strine, Leo E

# FISH & RICHARDSON P.C.

17TH FLOOR
222 DELAWARE AVENUE
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Jeremy D. Anderson
302 778-8452

Email
janderson@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

August 9, 2013

**FR**

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

HOUSTON

MUNICH

NEW YORK

SILICON VALLEY

SOUTHERN CALIFORNIA

TWIN CITIES

WASHINGTON, DC

*Via LexisNexis File & ServeXpress and*
*Hand Delivery*

The Hon. Leo E. Strine, Jr.
Chancellor
COURT OF CHANCERY
New Castle County Courthouse
500 North King Street, Suite 1551
Wilmington, DE 19801

Re:   *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v.*
      *TR Investors, LLC, et al.,* C.A. No. 6906-CS

Dear Chancellor Strine:

During the status conference with the Court on August 1, 2013, Your Honor ordered me to confer with Dalia Genger regarding her willingness to agree to settle the above-captioned case. Having done so, I can report back to the Court that Dalia desires to settle this action. However, as trustee of the Orly Genger Trust, Dalia needs to understand Orly's position regarding the Trust's beneficial ownership of the shares, particularly in light of preliminary injunctions issued by the New York courts.

We have reason to believe that Orly's position was disclosed in a Settlement Agreement with the Trump Group in one of the New York cases, but the Trustee has not been provided a copy of that agreement. While the Settlement Agreement apparently was made confidential by the parties, Mr. Allingham represented to the Court that the Trump Group is willing to produce the agreement if so ordered. Once the Trustee understands Orly's position, she will be in a position to conclude whether to agree that the shares of Trans-Resources stock transferred by TPR to the Orly Genger 1993 Trust are beneficially owned by the Trump Group.

Alternatively, if Orly gives the Trustee written consent to sign the enclosed stipulation of dismissal, the Trustee will immediately execute the stipulation in the form attached. Counsel for Dalia, TPR and the Trump Group discussed the best way to approach Orly to get her written consent to the stipulation of dismissal and decided that Mr. Allingham, given that he settled one of the New York cases with Orly, should be the intermediary. While Orly has not yet provided her written consent, it is

FISH & RICHARDSON P.C.

The Hon. Leo E. Strine, Jr.
August 9, 2013
Page 2

my understanding from Mr. Allingham that Orly intends to submit a letter to the
Court – on which I expect that she will copy Dalia – regarding her position as to the
stipulation of dismissal.

Respectfully yours,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson
Delaware Bar No. 4515

JDA/phb
Enclosure – form of Stipulation of Dismissal

Cc (w/encls.) (*via LexisNexis File & ServeXpress*):
     Thomas J. Allingham II (DE Bar #476)
     Douglas D. Herrmann (DE Bar #4872)
     Colm F. Connolly (DE Bar #3151)
     Amy M. Dudash (DE Bar #5741)

# PEDOWITZ & MEISTER, LLP

570 LEXINGTON AVENUE, 18ᵀᴴ FLOOR
NEW YORK, NEW YORK 10022
212-403-7333
212-354-6614 (FAX)
www.pedowitzmeister.com

ARNOLD H. PEDOWITZ
ROBERT A. MEISTER

KAREN KRANSON
MARISA H. WARREN

JORDANA F. SCHOENER *LAW CLERK

212.403.7330 voice
robert.meister@pedowitzmeister.com

August 13, 2013

NEW JERSEY OFFICE

285 OLD SHORT HILLS ROAD
SHORT HILLS, N.J. 07078

VIA UPS Overnight

Yoav Griver, Esq.
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, New York 10022

Ralph Hochberg, Esq.
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
1065 Avenue of the Americas
New York, NY 10018

William Wachtel, Esq.
Wachtel Missry LLP
885 Second Avenue
New York, NY 10017

Re:    *In Matter of Application of Orly Genger for removal of Dalia Genger at Trustee of The Orly Genger 1993 Trust u/a Arie Genger,* Surg. Ct, N. Y. Co.  File no 0017/2008

*Arie Genger and Orly Genger, in her individual capacity and on behalf of the ORLY GENGER 1993 TRUST v. Sagi Genger et al.,* Supreme Court, New York County index no. 651089/2010

Dear Yoav, Ralph and Bill:

As counsel for Dalia Genger, as Trustee of the Orly Genger 1993 Trust, we notify you, as counsel for Orly Genger, that the Trustee received the attached proposed Stipulation of Dismissal of the action *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.,* Del. Chancery Ct. C.A. No. 6906-CS, which if signed and filed would eliminate any claim that the Orly Genger 1993 Trust has any ownership interest in shares of Trans-Resources, Inc., and she is considering signing it.  I refer to the proposed Stipulation for all its terms.

Cordially,

Robert A. Meister

Encl.

**IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE**

DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust,

        Plaintiff,

    v.

TR INVESTORS, LLC, GLENCLOVA
INVESTMENT CO., NEW TR EQUITY I,
LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC., and
TPR INVESTMENT ASSOCIATES, INC.

        Defendants.

C.A. No. 6906-CS

TR INVESTORS, LLC, GLENCLOVA
INVESTMENT CO., NEW TR EQUITY I,
LLC, NEW TR EQUITY II, LLC, and
TRANS-RESOURCES, INC.,

        Counterclaim and Crossclaim
        Plaintiffs,

    v.

DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust,

        Counterclaim Defendant,

   and

TPR INVESTMENT ASSOCIATES, INC.,

        Crossclaim Defendant

TPR INVESTMENT ASSOCIATES, INC.,
        Counterclaim and Crossclaim
        Plaintiff,

v.                                              :

DALIA GENGER, as Trustee of the              :
Orly Genger 1993 Trust,                      :
                                              :
      Counterclaim Defendant,         :
                                              :
  and                                   :
                                              :
TR INVESTORS, LLC, GLENCLOVA                 :
INVESTMENT CO., NEW TR EQUITY I,             :
LLC, NEW TR EQUITY II, LLC, and              :
TRANS-RESOURCES, INC.,                       :
                                              :
      Crossclaim Defendant            :

---

## STIPULATION OF DISMISSAL

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR.

These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2.  The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3.  The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as the parties to such Escrow Agreement jointly agree on the disposition of the Sale Proceeds, or as a court in New York shall otherwise direct.

4.  The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

---

[1] This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

5. The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group are dismissed without prejudice.

6. Each party shall bear its own costs.

| | |
|---|---|
| /s/ _____ | /s/ _____ |
| Thomas J. Allingham II (I.D. No. 476) | Colm F. Connolly (I.D. No. 3151) |
| Anthony W. Clark (I.D. No. 2015) | Amy M. Dudash (#5741) |
| Douglas D. Herrmann (I.D. No. 4872) | MORGAN, LEWIS & BOCKIUS LLP |
| Amy C. Huffman (I.D. No. 5022) | The Nemours Building |
| SKADDEN, ARPS, SLATE, | 1007 North Orange Street |
| MEAGHER & FLOM LLP | Suite 501 |
| One Rodney Square | Wilmington, Delaware 19801 |
| P.O. Box 636 | (302) 574-3000 |
| Wilmington, Delaware 19899-0636 | |
| (302) 651-3000 | |

*Attorneys for TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources, Inc.*

*Attorneys for TPR Investment Associates, Inc.*

/s/ _____
Jeremy D. Anderson (I.D. No. 4515)
Joseph B. Warden (I.D. No. 5401)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware 19899

*Attorneys for Dalia Genger, as Trustee of the Orly Genger 1993 Trust*

IT IS SO ORDERED this _____ day of _____, 2013.

_____
Chancellor Leo E. Strine, Jr.

720047-WILSR01A - MSW

## ZEICHNER ELLMAN & KRAUSE LLP

575 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022
(212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

35 MASON STREET
GREENWICH, CT 06830
(203) 622-0900
FAX: (203) 862-9889

103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
(973) 618-9100
FAX: (973) 364-9960

YOAV M. GRIVER
(212) 826-5338
ygriver@zeklaw.com

August 16, 2013

**BY EMAIL**

Robert Meister, Esq.
Pedowitz & Meister LLP
570 Lexington Avenue
New York, NY 10022
**robert.meister@pedowitzmeister.com**

### Dalia Delaware Action

Dear Robert:

I received your August 13, 2013 letter with the attached proposed stipulation of dismissal. I also have a copy of Dalia Genger's August 9, 2013 letter to the Delaware Chancery Court in which she represented that she would not sign the stipulation unless and until "Orly gives the Trustee written consent to sign" it.

As currently written, the stipulation is unacceptable to Orly.

I ask that you specifically confirm, by close of business on Monday August 19, 2013, that Dalia will not sign any form of stipulation absent Orly's review and written consent to same. Thank you.

Please feel free to call me if you have any questions.

Sincerely yours,

Yoav M. Griver

WACHTEL MISSRY LLP

ONE DAG HAMMARSKJOLD PLAZA
885 SECOND AVENUE
NEW YORK, NEW YORK 10017

EUROPEAN OFFICE
VIA PIER CAPPONI, 19
FLORENCE, ITALY 50132
TELEPHONE: (39) (055) 5048366
FACSIMILE: (39) (055) 5031698

WILLIAM B. WACHTEL
PARTNER
DIRECT DIAL: (212) 909-9595
DIRECT FAX: (212) 909-9450
wachtel@wmllp.com

TELEPHONE: (212) 909-9500
FACSIMILE: (212) 371-0320

CALIFORNIA OFFICE
2030 MAIN STREET, 12TH FLOOR
IRVINE, CA 92614
TELEPHONE: (949) 660-8824
FACSIMILE: (949) 679-4841

August 26, 2013

The Honorable Leo E. Strine, Jr.
Chancellor
Court of Chancery
New Castle County Courthouse
500 North King Street, Suite 11400
Wilmington, Delaware 19801

Re:    Dalia Genger as Trustee v. TR Investors, LLC, et al.
       Civil Action No. 6906-CS

Dear Chancellor Strine:

We are counsel to Orly Genger in various actions pending in the State of New York. We write to follow up on certain matters we addressed in our letter to your Honor dated August12, 2013:

1.    We note that Dalia Genger's August 16 Status Report to your Honor stated that she would not resign as Trustee of the Orly Genger Trust, but would not give a reason. For the reasons discussed in our prior letter, we can only conclude that her motivation is to continue to help her son Sagi to the detriment of her daughter Orly, the beneficiary of the Orly Trust. That help is designed to assist Sagi in his ongoing efforts to take for his own benefit the proceeds of the sale of both the Arie Shares and the Orly Shares (what your Honor referred to as "winning the Powerball").

2.    Dalia's August 23 Status report incompletely describes certain discussions between our office and Dalia's New York counsel. In an effort to facilitate the resolution of the matters pending before your Honor, we reviewed the draft Stipulation which the parties to this case had drafted, which would dismiss with prejudice the claims between the Orly Trust and the Trump Group, and dismiss without prejudice TPR's claim to the proceeds of that sale (the "Sale Proceeds"). We were told (as was the Court) by Dalia's New York counsel that Dalia would not

The Honorable Leo E. Strine, Jr.
August 22, 2013
Page 2 of 2

execute the Stipulation without Orly's consent.    We requested certain revisions to the Stipulation, including an explicit recital that this Court had made no findings as to the ownership of the Sale Proceeds, an issue which would be adjudicated in New York.    The Trump Group agreed to modify the Stipulation as we requested, and we had every reason to believe that Dalia would consent as well, because we modified the draft Stipulation to accommodate Dalia's counsel's concerns. Dalia's counsel suddenly told us in the middle of last week that Dalia needed more time to consider the issue. Over this past weekend, Dalia's counsel  told us that the language we had proposed was not acceptable to TPR (*i.e.*, to Sagi). Dalia's counsel has not articulated any other reason why our proposed language is no longer acceptable to Dalia, and we believe that it accommodates both Dalia's concerns and the needs of the Trumps. (A copy of the draft Stipulation is enclosed for your Honor's convenience.)

Orly's counsel remains available to the Court if we can assist in any way in resolving this matter.

Respectfully yours,

William B. Wachtel

Cc(w/ encl): Jeremy D. Anderson, Esq.
Thomas Allingham III, Esq.
Amy M. Dudash, Esq.
John Dellaportas, Esq.

1163599.1

## IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

DALIA GENGER, as Trustee of the :
Orly Genger 1993 Trust, :
 :
   Plaintiff, :
  v. :
 :
TR INVESTORS, LLC, GLENCLOVA :
INVESTMENT CO., NEW TR EQUITY I, :
LLC, NEW TR EQUITY II, LLC, :
TRANS-RESOURCES, INC., and :
TPR INVESTMENT ASSOCIATES, INC. :
 :
   Defendants. :
 :
—————————————————————     C.A. No. 6906-CS
 :
TR INVESTORS, LLC, GLENCLOVA :
INVESTMENT CO., NEW TR EQUITY I, :
LLC, NEW TR EQUITY II, LLC, and :
TRANS-RESOURCES, INC., :
 :
   Counterclaim and Crossclaim :
   Plaintiffs, :
  v. :
 :
DALIA GENGER, as Trustee of the :
Orly Genger 1993 Trust, :
 :
   Counterclaim Defendant, :
 :
  and :
 :
TPR INVESTMENT ASSOCIATES, INC., :
 :
   Crossclaim Defendant :
 :
 :
—————————————————————
 :
TPR INVESTMENT ASSOCIATES, INC., :
   Counterclaim and Crossclaim :
   Plaintiff, :
 :

v.                                              :
                                                :
DALIA GENGER, as Trustee of the                 :
Orly Genger 1993 Trust,                          :
                                                :
        Counterclaim Defendant,               :
                                                :
  and                                  :
                                                :
TR INVESTORS, LLC, GLENCLOVA                    :
INVESTMENT CO., NEW TR EQUITY I,                :
LLC, NEW TR EQUITY II, LLC, and                 :
TRANS-RESOURCES, INC.,                          :
                                                :
        Crossclaim Defendant                  :

---

## STIPULATION OF DISMISSAL

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR.

These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2.  The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust.  As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3.  Nothing contained herein shall be construed in any manner whatsoever as a determination, directly or indirectly, as to which party or parties have a beneficial interest in, and/or entitlement or right to, the proceeds paid by the Trump Group pursuant to                 the                 Side                 Letter                 Agreement.

4.  The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as the parties to such Escrow Agreement jointly agree on the disposition of the Sale

---

[1]  This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds, or as a court in New York shall otherwise direct, provided that the escrow agent may interplead the Sales Proceeds into such a court.

5.  The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

6.  The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group are dismissed without prejudice.

7.  Each party shall bear its own costs.

/s/_____
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2015)
Douglas D. Herrmann (I.D. No. 4872)
Amy C. Huffman (I.D. No. 5022)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Attorneys for TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources, Inc.*

/s/_____
Jeremy D. Anderson (I.D. No. 4515)
Joseph B. Warden (I.D. No. 5401)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware  19899

*Attorneys for Dalia Genger, as Trustee of the Orly Genger 1993 Trust*

/s/_____
Colm F. Connolly (I.D. No. 3151)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
(302) 574-3000

*Attorneys for TPR Investment Associates, Inc.*

IT IS SO ORDERED this _____ day of _____, 2013.

_____
Chancellor Leo E. Strine, Jr.



**13 CIV 8243**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

TPR INVESTMENT ASSOCIATES, INC.,

                      Plaintiff,

    v.

PEDOWITZ & MEISTER LLP, as escrow
agent, DALIA GENGER ("Dalia"), as trustee of the Orly
Genger 1993 Trust, and ORLY GENGER, as
beneficiary of the Orly Genger 1993 Trust,

                      Defendants.

**COMPLAINT**

Civil Action No. _____

**ELECTRONICALLY FILED**



    Plaintiff TPR Investment Associates, Inc. ("TPR"), through its attorneys at Morgan,

Lewis & Bockius LLP, by way of its Complaint against defendants Pedowitz & Meister LLP (the

"Pedowitz firm"), as escrow agent, Dalia Genger ("Dalia"), as trustee of the Orly Genger 1993

Trust (the "Orly Trust"), and Orly Genger ("Orly"), as beneficiary of the Orly Genger 1993

Trust, hereby alleges as follows:

## SUMMARY OF CLAIM

    1.    By this action, TPR seeks a permanent injunction directing the Pedowitz firm,

as escrow agent, to release approximately $10.3 million in funds held in escrow, which funds

belong to TPR as a result of its sale of shares in a company called Trans-Resources, Inc. ("TRI"

and the "TRI Share Sale Proceeds"). All of the issues surrounding the ownership of the TRI

Share Sale Proceeds have now been duly litigated, such that there are final judicial findings

which conclusively establish TPR's entitlement to those funds. Because, however, Orly (as

beneficiary of the Orly Trust) continues to claim those funds, the Pedowitz firm has declined to

release the funds to TPR absent an order from a court of competent jurisdiction in the State of

New York. Accordingly, TPR now brings this injunction action.

1

20-01187-jlg  Doc 1-48  Filed 06/30/20  Entered 06/30/20 20:19:48  NoR part 50
Case 1:13-cv-08243-JPK  Document 15  Filed 11/18/13  Page 2 of 10
Pg 78 of 150

## PARTIES

2.      Plaintiff TPR is a Delaware corporation with its principal place of business in Greenwich, Connecticut.  In August 2008, TPR sold 1102.8 shares of common stock in TRI for approximately $10.3 million – the TRI Share Sale Proceeds at issue in this suit.

3.      Upon information and belief, defendant the Pedowitz firm is a New York limited liability partnership with its principal place of business in New York, New York.  The Pedowitz firm serves as escrow agent for the TRI Share Sale Proceeds.  Upon information and belief, the Pedowitz firm maintains the TRI Share Sale Proceeds in an escrow account at JP Morgan Chase Bank in New York, New York.

4.      Defendant Dalia is the sole trustee of the Orly Trust and resides in New York, New York.  The Orly Trust was created under a December 13, 1993 agreement among Arie Genger, Grantor, then residing in New York, New York, and the Orly Trust's original trustees, Lawrence M. Small and the late Sash A. Spenser, who are no longer its trustees.

5.      Upon information and belief, defendant Orly resides in New York, New York.  She is the sole non-contingent beneficiary of the Orly Genger 1993 Trust.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the parties are diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the defendants reside in this District, because a substantial part of the events giving rise to the claims in this proceeding occurred in this District, and because the property that is the subject of this action is situated in this District.

20-01187-jlg  Doc 1-48  Filed 06/30/20  Entered 06/20/20 20:19:48  NoR part 50
Case 1:19-cv-08243-PK  Document 15  Filed 11/18/19  Page 3 of 10
Pg 79 of 150

# FACTS

1.  In August 2008, TPR sold 1102.8 shares of common stock in TRI (the "TRI Shares") to a group of affiliated parties jointly referred to as the "Trump Group" for a sale price of approximately $10.3 million. The sale transaction closed in February 2011.

2.  Because the Orly Trust claimed a beneficial ownership interest in the shares (based upon an earlier 2004 transfer of the TRI Shares to the Orly Trust, which transfer was adjudicated to be void under the TRI Stockholders' Agreement), the parties agreed to place the TRI Shares Proceeds in escrow. In September 2010, the Trump Group entered into an Escrow Agreement with TPR, the Orly Trust, Orly, and the Pedowitz firm (the "Escrow Agreement"). Pursuant thereto, when the Trump Group closed on its purchase in February 2011, it caused $10,314,005 to be deposited in escrow with the Pedowitz firm.

3.  On August 11, 2011, the Pedowitz firm filed an interpleader action pursuant to 28 U.S.C. § 1135 in this Court, naming TPR, the Orly Trust, Orly Genger personally, and the Trump Group as parties to the action. *See Pedowitz & Meister LLP v. TPR Inv. Assocs., Inc., et al.*, 1:11-cv-05602, Doc. #1 (S.D.N.Y. Aug. 11, 2011). The Pedowitz firm contended that two or more of TPR, the Orly Trust, Orly and the Trump Group were adverse claimants to the TRI Share Sale Proceeds, and consequently sought a determination as to which party was entitled to the funds. The Pedowitz firm noted that, while no party to the September 1, 2010 Escrow Agreement had, as of then, demanded payment of escrowed funds, Orly, as beneficiary of the Orly Trust, had objected to any release of the funds without her consent.

4.  In connection with its interpleader complaint, the Pedowitz firm deposited the TRI Share Sale Proceeds in the amount of $10,332,779.82 with the Clerk of the District Court for the Southern District of New York.

3

20-01187-jlg Doc 1-48 Filed 06/30/20 Entered 06/20/20 20:19:48 NoR part 50
Case 1:13-cv-08243-JFK Document 1 Filed 11/18/13 Page 4 of 10
Pg 80 of 150

5.     On June 14, 2012, this Court dismissed the Pedowitz firm's interpleader suit,
because it found that the dispute actually concerned beneficial ownership over the underlying
TRI Shares, rather than the TRI Share Sale Proceeds.  In doing so, this Court held:

> All potential claimants acknowledge that . . . <u>if the 2004 transfer of shares to . . .
> the Orly Trust is found to be invalid, then TPR had the right to sell the shares to
> the Trump Group, and TPR would be entitled to the interpleaded funds.</u>

Exh. A at 23. (*Glenclova Inv. Co. v. Trans-Resources, Inc. et al.*, 1:08-cv-07140-JFK, Doc. #164,
*Pedowitz & Meister LLP v. TPR Inv. Assocs., Inc., et al.*, 1:11-cv-05602-JFK, Doc. #64
(S.D.N.Y. June 14, 2012) (J. Keenan) (emphasis added)).

6.     This Court further expressed "its stated preference that the question of beneficial
ownership of the … [TRI] Shares be decided in a state court." *Id.* at 49.  As the Court explained:
"either of the [Delaware and New York] state courts is well-equipped to do so, as each will be
guided by the final judgment entered in Delaware." *Id.* at 33.  (As explained below, the Chancery
Court in Delaware has since adjudicated beneficial ownership of the TRI Shares.)

7.     No appeals were taken from the June 14, 2012 Order by Orly or anyone else.
Accordingly, that decision is now final.

8.     On June 28, 2012, this Court entered an order directing the Clerk to return the
interpleaded funds from the registry of the Court with interest to the Pedowitz firm by a federal
wire to JP Morgan Chase Bank, ABA routing # 021000021, for credit to account # 2984572582.
*See Pedowitz & Meister LLP v. TPR Inv. Assoc.*, 1:11-cv-05602-JFK, Doc. #65 (S.D.N.Y. June
28, 2012).  Upon information and belief, the Pedowitz firm continues to hold the TRI Share Sale
Proceeds in an escrow account at JP Morgan Chase Bank, NA.  On November 18, 2013, the firm
advised that, with interest, the current account balance is $10,368,051.51.

9.     Shortly after the Pedowitz firm filed the above-referenced interpleader action in

20-01187-jlg    Doc 1-48    Filed 06/30/20    Entered 06/30/20 20:19:48    No 6 part 50
Case 1:13-cv-08243-JFK    Document 1-    Filed 11/18/13    Page 5 of 10
Pg 81 of 150

this Court, on October 4, 2011, Dalia, as trustee of the Orly Trust, commenced a plenary action

in Delaware Chancery Court against the Trump Group and TPR, seeking a declaration that the

Orly Trust was the true beneficial owner of the TRI Shares.  *See Dalia Genger v. TR Investors,*

*LLC, et al.*, C.A. No. 6906-CS (Del. Ch.).

10.     On August 30, 2013, the Delaware Chancery Court entered a Stipulation and

Order of Dismissal of that action, which determined that TPR was the beneficial ownership of

the TRI Shares and had duly sold them to the Trump Group.  After soliciting and considering

comments from Orly personally, that Court found as follows:

> 1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the
> "3994 Action"), the Court found that (i) the transfers in October 2004 of [TRI]
> stock out of TPR [to, *inter alia*, the Orly Trust] were in violation of the March
> 2001 Stockholders Agreement among [TRI], TPR [and two members of the
> Trump Group] (ii) the transfers were void and the stock reverted to TPR, and (iii)
> the Trump Group had the right to buy all of the improperly transferred [TRI]
> stock from TPR.  These determinations and findings were essential to the Court's
> determinations and findings in the 3994 Action.

> 2. The Trump Group, having closed on the purchase of the [TRI] Shares
> (representing 1102.8 shares of [TRI] stock) pursuant to and under the terms of the
> Side Letter Agreement between TPR and the Trump Group entered into in August
> 2008, as was the Trump Group's right under that agreement, owns, for all
> purposes, all right, title and interest (beneficially, of record and otherwise) to the
> shares of [TRI] purportedly transferred by TPR to the Orly ... Trust.  As a result,
> the Trump Group owns, for all purposes, all right, title and interest (beneficially,
> of record and otherwise) to all authorized and issued shares of [TRI]. . . .

*See* Exh. B (*Dalia Genger v. TR Investors, LLC, et al.*, C.A. No. 6906-CS (Del. Ch. Aug. 30,

2013) (emphasis added).

11.     As noted above, this Court had previously held on June 14, 2012 that: "All

potential claimants acknowledge that . . . if the 2004 transfer of shares to . . . the Orly Trust is

found to be invalid, then TPR had the right to sell the shares to the Trump Group, and TPR

would be entitled to the interpleaded funds." Exh. A at 23 (emphasis added.)  Subsequent to that

Case 1:13-cv-08243-JFK   Document 1-2   Filed 11/18/19   Page 6 of 10
20-01187-jlg   Doc 1-48   Filed 06/30/20   Entered 06/30/20 20:19:48   NoR part 50
Pg 82 of 150

ruling, the Delaware Chancery Court has now found that the 2004 transfer of the TRI Shares to the Orly Trust was void, and that the TRI Shares reverted to TPR, which in turn lawfully sold those shares to the Trump Group in 2008.

12. Tellingly, Orly no longer challenges this transaction. Rather, on June 19, 2013, Orly and the Trump Group, inter alia, stipulated and agreed as follows: "the Trump Group own, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of [TRI] purportedly transferred by TPR Investment Associates, Inc. in October 2004 to Arie and the Orly Genger 1993 Trust" (i.e., what is referred to herein as the TRI Shares).

13. Nevertheless, Orly has since repudiated the finding of this Court in its June 14, 2012 Order that once beneficial ownership of the TRI Shares had been determined, that would necessarily also resolve ownership of the TRI Share Sale Proceeds. Specifically, in an August 12, 2013 letter to the Delaware Chancery Court, Orly's counsel wrote that: "Orly has indeed settled all disputes between her and the Trump Group. As part of that settlement, Orly has acknowledged individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust. Orly has not, however, abandoned her claim to the proceeds of the sale of those shares against TPR and Sagi [Genger] ..." (emphasis added.)

14. Orly's newly announced claim to the TRI Share Sale Proceeds is without basis. First, this Court has already adjudicated the claim against her, finding that the only two possible recipients of the TRI Share Sale Proceeds are the Trump Group (which has since disclaimed) and TPR. Second, even had it not, Orly has contractually sworn off the claim. Under §§ 2(b)(ii)-(iii) of the Escrow Agreement (which Orly executed as a beneficiary of the Orly Trust), Orly agreed that, in exchange for TPR's agreement to place the TRI Share Sale Proceeds in escrow, either the

20-01187-jlg  Doc 1-48  Filed 06/30/20  Entered 06/30/20 20:19:48  NoR part 50
Case 1:13-cv-08243-JPK  Document  Entered 06/20/20 20:19:48  Page 7 of 10
Pg 83 of 150

Trump Group or TPR, and no one else, would ultimately receive the funds.

15.    Accordingly, all of the issues as to ownership of the TRI Shares and the accompanying TRI Share Sale Proceeds are now resolved.  Nevertheless, the TRI Share Sale Proceeds remain in escrow with the Pedowitz firm, based on Orly's continuing claim to those funds, until a Court in New York directs their disposition.  Specifically, the parties in Delaware stipulated and agreed, the Chancery Court ordered, as follows:

> 3. The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow ... shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the [TRI Share] Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale Proceeds into a court in New York at any time. ...

*Id.* (emphasis added).

16.    Lastly, so as to make clear that nothing therein impacted the various monetary damage claims which the parties are asserting against one another in New York state court, the Stipulation and Order further provided that: "Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court."  There is no claim pending in any other Court seeking ownership of the TRI Share Sale Proceeds.  Orly is asserting common law monetary damage claims against TPR in New York state court, pursuant to a pleading which she jointly filed with her father, Arie Genger.  In its June 14, 2012 Order, however, this Court held, as to that very same pleading: "while Arie asserts a beneficial ownership in the underlying [TRI] shares, in no case does he have a claim against the interpleaded funds themselves. Instead, Arie's numerous counterclaims seek money damages for breach of fiduciary duties that are ancillary to, and beyond the scope of, the Skadden interpleader." Exh. B at 22.

17.    In light of the findings of both this Court and the Delaware Chancery Court

7

20-01187-jlg   Doc 1-48   Filed 06/30/20   Entered 06/30/20 20:19:48   No R part 50
Case 1:13-cv-08245-JPK   Document 1   Filed 11/18/13   Page 8 of 10
Pg 84 of 150

discussed above, on Monday morning, November 18, 2013, TPR contacted the Pedowitz firm, as

escrow agent, and asked it to release the TRI Share Sale Proceeds to TPR. The Pedowitz firm

declined to do so, absent written consent from all of the parties. In a submission filed with the

New York State Supreme Court Appellate Division, First Department on November 13, 2013,

however, Orly continues to take the position that the foregoing Court decisions "do not

'invalidate[]' Orly and the Orly Trust's claim to the $10.3 million" in TRI Share Sale Proceeds.

Thus, no such consent will be forthcoming.

18.      TPR therefore now brings this suit to compel the Pedowitz firm to release to TPR

the TRI Share Sale Proceeds. TPR also names hereto, as interested parties, (i) Orly, who is the

only other claimant to the TRI Share Sale Proceeds, and (ii) the Orly Trust, through which Orly

claims the proceeds "as beneficiary".[1]

**FIRST CAUSE OF ACTION**
**Permanent Injunction**

19.      TPR hereby incorporates by reference Paragraphs 1 through 18, as though fully

set forth herein.

20.      As set forth above, TPR is entitled to the TRI Share Sale Proceeds currently held

in the Escrow Account, because this Court has held that: "All potential claimants acknowledge

that . . . if the 2004 transfer of shares to . . . the Orly Trust is found to be invalid, then TPR had

the right to sell the shares to the Trump Group, and TPR would be entitled to the interpleaded

funds." Orly was a party to the interpleader case in which that finding was made (which finding

was necessary to the dismissal decision), and she took no appeal from it.

---

[1]        Paragraph 3 of the above-referenced August 30, 2013 Stipulation and Order of Dismissal entered by the
Delaware Chancery Court further provides that: "Upon the so-ordering of paragraphs 1-2 above concerning
beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights
under the Escrow Agreement." As those paragraphs have been so-ordered, the Trump Group has disclaimed any
interest in the TRI Share Sale Proceeds, and accordingly it is not named in this action.

8

Case 1:13-cv-08245-JPK  Document 1  Filed 11/18/13  Page 9 of 10
20-01187-jlg  Doc 1-48  Filed 06/30/20  Entered 06/30/20 20:19:48  Notice part 50
Pg 85 of 150

21.     Thereafter, on August 30, 2013, the Delaware Chancery Court found that: "the Trump Group had the right to buy all of the improperly transferred [TRI] stock from TPR" and "[t]he Trump Group, having closed on the purchase of the [TRI] Shares (representing 1102.8 shares of [TRI] stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of [TRI] purportedly transferred by TPR to the Orly ...Trust." The Chancery Court directed that the TRI Share Sale Proceeds shall remain in escrow "until such time as a court in New York shall direct the[ir] disposition." *Id.*

22.     Accordingly, TPR is entitled to the TRI Share Sale Proceeds.

23.     The Pedowitz firm, as the escrow agent, has nevertheless declined to release the TRI Share Sale Proceeds to TRI absent an order from a Court in New York.  Accordingly, it should be instructed to release the TRI Share Sale Proceeds in the Escrow Account, along with any interest accrued thereon, to TPR.

24.     TPR does not seek monetary damages and has no adequate remedy at law.

WHEREFORE, TPR requests this Court to issue an Order: (a) permanently enjoining and directing the Pedowitz firm to release to TPR all of the TRI Share Sale Proceeds held in the Escrow Account, plus any and all accrued interest earned thereon, and (b) granting such other and further relief as this Court may deem just and proper.

20-01187-jlg  Doc 1-48  Filed 06/20/20  Entered 06/20/20 20:19:48  NoR part 50
Case 1:13-cv-08243-JFK  Document 1  Filed 11/18/13  Page 10 of 10
Pg 86 of 150

Dated: New York, New York
      November 18, 2013

MORGAN, LEWIS & BOCKIUS LLP

*/s/ John Dellaportas*

John Dellaportas
jdellaportas@morganlewis.com
Nicholas Schretzman
nschretzman@morganlewis.com
Mary C. Pennisi
mpennisi@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000

*Attorneys for Plaintiff*
*TPR Investment Associates, Inc.*

```
                              E4TATPRA
                                                    1
     E4TATPRAps
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    TPR INVESTMENT ASSOCIATES, INC.,
3
4
4                    Plaintiff,
5
5              v.                        13-cv-8243 (JFK)
6
6    PEDOWITZ & MEISTER LLP,
7    as escrow agent,
7    et al.,
8
8                    Defendants.
9
9    ------------------------------x
10
10                                 New York, N.Y.
11                                 April 29, 2014
11                                 3:00 p.m.
12
12
13   Before:
13
14                    HON. JOHN F. KEENAN
14
15                                      District Judge
15
16
16                        APPEARANCES
17
17   MORGAN, LEWIS & BOCKIUS, LLP
18        Attorneys for Plaintiff
18   BY:  JOHN DELLAPORTAS, ESQ.
19        MARY C. PENNISI, ESQ.
19
20   ZEICHNER, ELLMAN & KRAUSE, LLP
20        Attorneys for Defendant Orly Genger
21   BY:  YOAV M. GRIVER, ESQ.
21        BRYAN LEINBACH, ESQ.
22
22   PEDOWITZ & MEISTER, LLP
23        Defendant Pro Se
23   BY:  ROBERT A. MEISTER, ESQ.
24
24   JUDITH BACHMAN, ESQ.
25        Attorney for Defendant Dalia Genger
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                    2
     E4TATPRAps
1             (In open court)
2             THE COURT:  Good afternoon.
3             Before we get to the argument on the three motions, I
4    wanted to find out something.  Mr. Meister?
5             MR. MEISTER:  Yes, your Honor.
6             THE COURT:  How are you?  All right.  Now, you
7    represent your firm as Pedowitz & Meister, right?
8             MR. MEISTER:  Yes, your Honor.
                              Page 1
```

E4TATPRA
```
 9                THE COURT:  Do you any longer represent the Orly
10     Trust?
11                MR. MEISTER:  Not in this action.  I do in other
12     actions.
13                THE COURT:  OK.  Because I was concerned about the
14     possibility of a conflict.
15                MR. MEISTER:  We did get waiver letters at the very
16     outset, your Honor.
17                THE COURT:  All right.  You did.  But in this action,
18     Ms. Bachman, you're representing --
19                MS. BACHMAN:  Ms. Genger, Dalia Genger, correct, as a
20     trustee of the Orly Trust.
21                THE COURT:  You're representing Dalia Genger as
22     trustee of the Orly Trust?
23                MS. BACHMAN:  That's correct, your Honor.
24                THE COURT:  All right.  Fine.  I just wanted to make
25     sure I understood you.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

E4TATPRAps
```
 1                But you filed the briefs in this, Mr. Meister.
 2                MR. MEISTER:  I did, your Honor.
 3                THE COURT:  You did.  All right.  I just wanted to
 4     make sure I knew who was where.
 5                All right.  So first we're going to have argument on
 6     behalf of the motion that is being made to dismiss the action.
 7     And that's by Orly.  And, Mr. Leinbach, you're going to argue
 8     that, or Mr. Griver?
 9                MR. GRIVER:  Mr. Griver, your Honor.
10                THE COURT:  All right.  I'll hear you.
11                MR. GRIVER:  Thank you, your Honor.  And I'll be
12     seeking today to dismiss the action of TPR as well as the
13     crossclaims and interpleader action filed by Dalia Genger and
14     by Pedowitz & Meister as escrow agent.
15                Your Honor, on June 14th, 2012, you told the parties
16     before you in no uncertain terms that this Court would not
17     allow itself to be strongarmed into haling Orly into federal
18     court.  You reiterated that message on November 12, 2013, where
19     you stated, "It is inaccurate for TPR to suggest that the issue
20     of beneficial ownership is conclusively resolved."  Yet, only
21     six days later, on November 18th, TPR came in and brought an
22     action, followed by the actions and claims of the other
23     respondents.
24                So we are here again despite your instruction.  And we
25     are here on the flimsiest of grounds.  There is a specific
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

E4TATPRAps
```
 1     September 1 escrow agreement that expressly sets forth five and
 2     only five enumerated rights in which proceeds -- and that's --
 3                THE COURT:  How do you fit this under subdivision 2 of
 4     that escrow agreement?  I don't see how you fit under that.
 5                MR. GRIVER:  Section 2 of the escrow agreement, your
 6     Honor, there is no way that TPR fits within section 2 of that
 7     escrow agreement.  I absolutely agree with you.
 8                THE COURT:  All right.
 9                MR. GRIVER:  And that's a whole point.  They come to
10     this Court and they ask you to direct the escrow agent to
11     disburse the escrow funds to it, $10.6 million.  But section 2
12     says, "No funds shall be disposed from escrow, from the escrow
13     account except in accordance with section 2."  And there is no
```
Page 2

E4TATPRA
14    question that TPR --
15              THE COURT:   Their argument is section 2, and you say
16    it doesn't apply.
17              MR. GRIVER:   It does not apply.  But that's not really
18    the argument, your Honor, because in their opposition brief,
19    they say, well, we kind of almost sort of applied.  But "kind
20    of almost sort of" is not what you look for in escrow
21    agreements.  You have to scrupulously adhere to the specific
22    terms.  This was a negotiated agreement.  Every one counts, and
23    section 2 has to be met, and they don't do it.
24              So instead they say to you this:  TPR asks you not to
25    enforce the escrow agreement but to help them breach it.  They
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                5
      E4TATPRAps
1    ask you to ignore it.  Respectfully, your Honor, this is not
2    what courts do.  Courts do not amend or ignore agreements.
3    They enforce them.
4              TPR's argument is that there are final judicial
5    findings which conclusively established TPR's entitlement to
6    those funds.  TPR is gone.  One of those findings that they
7    claim exists is something that you said.  "TPR takes one
8    statement out of this Court's 52-page opinion."
9              THE COURT:   That's what all of you do.
10              MR. GRIVER:   Excuse me?
11              THE COURT:   I say, that's what all of you do in this
12    litigation, not just TPR.  Everybody does it in this
13    litigation.  I read the minutes.  What was it?  75 pages or 77
14    pages from the Delaware Chancery Court by the Judge who now, as
15    I understand it, is the Chief Judge of Delaware.  And he points
16    out that everybody picks words here.
17              Let me ask you a couple of questions.  All right.  The
18    state action claim, you're asserting an unjust enrichment claim
19    against TPR arising from a sale of the Orly Trust shares to the
20    Trump Group.  Am I right so far?
21              MR. GRIVER:   That's correct.
22              THE COURT:   All right.  Is that claim still viable, or
23    did Justice Jaffe dismiss it?
24              MR. GRIVER:   No, Justice Jaffe did not dismiss it.  It
25    is viable.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                6
      E4TATPRAps
1              THE COURT:   Now.  As I understand it, you have an
2    interlocutory appeal of certain rulings by the New York Supreme
3    Court.  There are two New York cases, right?
4              MR. GRIVER:   The two New York cases involving the
5    trust.
6              THE COURT:   OK.  One is on its way to the Court of
7    Appeals, I'm told?
8              MR. GRIVER:   No.  There is a motion seeking a leave to
9    appeal the unanimous decision of the Fourth Department.
10              THE COURT:   In other words, you would like to get to
11    the Court of Appeal.
12              MR. GRIVER:   TPR would like to get to the Court of
13    Appeal, Dalia Genger --
14              THE COURT:   It's not a done deal yet.
15              Now, the second thing that's in the state court, as I
16    understand it, that's your interlocutory appeal.  Right?
17              MR. GRIVER:   That's correct.
18              THE COURT:   All right.  Now, is that still extant?
                                Page 3

E4TATPRA
19          MR. GRIVER:   It is still extant.  We are going to be
20   arguing that shortly, your Honor, in about a month.
21          THE COURT:  Should I defer ruling on the motions here
22   until after the First Department rules?  Did the First
23   Department case ever have anything to do with this situation
24   here?
25          MR. GRIVER:  What Justice Jaffe did was, she dismissed
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                        7

E4TATPRAps
1   some of our claims, but not others, including unjust enrichment
2   claims against Sagi Genger and TPR.  TPR has cross-moved to
3   dismiss everything.  So we have that the Court, in the
4   alternative, stay, and that is certainly something that the
5   Court can do, and that is to stay matters until the end of the
6   appeal process.
7          THE COURT:  OK.  Why does it matter whether I direct
8   the escrow agent, in other words, Pedowitz & Meister, to
9   release the 10.3 million to TPR?  Even if I do that, don't you
10   still have your claims for money damages?
11          MR. GRIVER:  We do have our claims for money damages,
12   your Honor, but --
13          THE COURT:  Well, what difference does it make?
14          MR. GRIVER:  Well, for one thing it would be violating
15   the escrow agreement.  For another thing, there's no basis for
16   the Court to take that action.  There has been no finding that
17   would permit the Court to do that.  TPR has moved for summary
18   judgment, but there are issues of fact as to whether TPR has
19   the right to those moneys.
20          I'll give you one example.  TPR is in the First
21   Department right now seeking leave to appeal to argue that they
22   have absolutely no right to those proceeds because they entered
23   into a settlement agreement in 2011 that gave all those
24   proceeds to the Orly Trust.
25          I'll give you another example.  We have a special
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                        8

E4TATPRAps
1   proceeding before Justice Jaffe right now where we claim that,
2   under the escrow agreement, because of the failure to timely
3   object under the specific express terms of the escrow
4   agreement, the escrow agent shall disburse those moneys to
5   Orly.
6          THE COURT:  You've been litigating in New York State
7   Supreme for years, right?
8          MR. GRIVER:  Correct.
9          THE COURT:  Does the escrow agreement even mention New
10   York Supreme?
11          MR. MEISTER:  It does not, your Honor.
12          THE COURT:  I know it doesn't.  That's why I asked the
13   question.
14          MR. GRIVER:  Right.  It does not, your Honor.
15          THE COURT:  Yes.  But you're saying to me that I can't
16   rewrite the escrow agreement, that I should read it strictly.
17   And it's your position that -- is it your position that New
18   York doesn't have the power to litigate the dispute over the
19   money?
20          MR. GRIVER:  No, your Honor.  This is not the first
21   time that we've been in front of you saying that the New York
22   State Court should be the one to decide it.  There is no
23   question that it is a court of competent jurisdiction.  The
                              Page 4

E4TATPRA
24    interpleader before your Honor, which was another attempt by
25    Pedowitz & Meister to give this Court jurisdiction, if you look
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
9

E4TATPRAps
1    at section 2.C.3 of the escrow agreement, it says that the only
2    thing that the escrow agent can do is to interplead the funds
3    in a court of competent jurisdiction in order to, quote, obtain
4    an order from such court requiring the other parties hereto to
5    commence an arbitration proceeding pursuant to the purchase
6    agreement to resolve all issues arising pursuant to this escrow
7    agreement, period, end quote.
8         Pedowitz & Meister cannot come in here and interplead
9    and ask you to decide who gets the proceeds.  That's not what
10   the interpleader is for.  That's the specific language of this
11   agreement.  Nor can they come in and ask you to release them as
12   escrow agents.  They can, under 2.C.2, resign.  But the relief
13   that they seek is outside the specific language of the escrow
14   agreement.  They simply can't do that under the escrow
15   agreement.
16        And, your Honor, I helped negotiated this escrow
17   agreement.  This was a hard-fought document.  And for them to
18   just say, well, now that we don't like the terms of that
19   agreement, why don't you, your Honor, ignore them, that's
20   unacceptable.  That's not correct.  That's not what this Court
21   should do.
22        And look, your Honor, they talk about your opinion as
23   giving TPR the right to the proceeds.  Now, certainly your
24   Honor didn't think so when it issued its decision on November
25   12th, 2013, when you said that the issue of who beneficially
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
10

E4TATPRAps
1    owns the Orly Trust shares has not been decided.  But look what
2    you said about the escrow agreement, in the opinion that they
3    cite as you having determined that they have the right to the
4    proceeds.  On page 24, you note the fact that in the state
5    court the plaintiffs have, quote, privately contracted with the
6    potential plaintiffs in the form of an escrow agreement which
7    specifies the circumstances under which and to whom the escrow
8    funds are to be released.  And then you go on to say, "Once a
9    court enters judgment on this issue, the escrow agent can
10   disburse the escrow funds to the prevailing plaintiffs in
11   accordance with guidance set forth in the escrow agreement."
12        So this opinion, the Delaware stipulation, none of
13   that gives TPR or Dalia or the escrow agent the authority to
14   ignore the escrow agreement, which is exactly what they do.
15        So TPR argues that dicta in your opinion somehow was a
16   determination of beneficial ownership.  That's simply not true.
17   If you look at page 50 to 51 of your decision, you say exactly
18   what your finding is.  And that is that the claims, the
19   Pedowitz interpleader is dismissed for lack of subject matter
20   jurisdiction or pursuant to the Court's discretion to abstain.
21   And then you say, the pending action is stayed pending
22   resolution of the beneficial ownership of the Arie shares and
23   Orly Trust shares in the state courts.  Your Honor, the state
24   courts have not decided that.  If you look at the Delaware
25   stipulation, which is their attempt to say that that happened,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
11

Page 5

E4TATPRA

E4TATPRAps
1  you'll see that that's not true at all.  First of all, the
2  stipulation proposed an order of dismissal involved a case that
3  did not involve Orly Genger, and she was not a party to this
4  stipulation.  Second of all, if you look at paragraph 5 of that
5  stipulation -- and that's Exhibit B to the TPR complaint -- TPR
6  claims that this Delaware stipulation conclusively establishes
7  TPR's rights to the proceeds.  But look what Section 5 says.
8  "The claims brought by TPR for the sale of proceeds against the
9  trustee of the Orly Trust and the Trump Group have already been
10 dismissed without prejudice."  As a matter of simple logic,
11 your Honor, this stipulation cannot determine TPR's rights to
12 the proceeds, when TPR's claims were previously dismissed.
13          We go on to say how paragraph 1 only talks about
14 findings that were actually canceled as to the Orly shares by
15 the Delaware Supreme Court.  Paragraph 2 does not answer the
16 question who has the right to the proceeds or who was the
17 appropriate seller of those TRI shares.  There's no question
18 now, because of the settlement between Orly as beneficiary and
19 the Trump Group, that the fact that they had the right to buy,
20 we no longer have any claims as to that.  But we certainly are
21 claiming that TPR had no right to sell.  That's what our unjust
22 enrichment claims are, your Honor.  That's why we have a 2010
23 action that has been there for four years.
24          Unless the Court has --
25          THE COURT:  You reserve how much time for rebuttal?
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                        12

E4TATPRAps
1          MR. GRIVER:  Five minutes.
2          THE COURT:  All right.  Thank you.
3          MR. GRIVER:  Thank you.
4          THE COURT:  All right.  So next, we'll hear from,
5  Mr. Dellaportas is going to argue, right?
6          DELLAPORTAS:  Thank, your Honor.
7          THE COURT:  Would you use the lectern.  That way the
8  people behind you can hear you.  Thank you.
9          DELLAPORTAS:  Hopefully I'll be able to balance all
10 this.
11         THE COURT:  Put it on the rail there.
12         DELLAPORTAS:  Thank you, your Honor.
13         And this is essentially my opposition to the motion to
14 dismiss, and also my -- in support of the cross-motion for
15 summary judgment.
16         THE COURT:  Maybe I ought to take something up with
17 you right at the beginning before you get into your argument.
18 Not as long as you people but for some while I've had something
19 to do with this, and as I understood it, back when some of
20 these other cases were filed, TPR admitted that its principal
21 place of business was in New York City.  Now, nobody has raised
22 this, not anybody before me here has raised it.  But
23 jurisdiction is always something that's before me.
24         Now, as I read part of the 08 Civil 7140, that the
25 address for notice to TPR is care of Sagi Genger at 1211 Park
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                        13

E4TATPRAps
1  Avenue.  Also, in the decision at 910 F.Supp.2d 657 -- I got
2  this from the papers, I didn't make it up -- Sagi Genger is a
3  joint United States and Israeli resident residing at 1211 Park
4  Avenue.
                            Page 6

                              E4TATPRA
5              Now, at this point, you're saying that the reason that
6       I have jurisdiction is because there is diversity and that
7       TPR's principal place of business is in Connecticut, right?
8              DELLAPORTAS:  Yes, your Honor.  And I can explain.
9              THE COURT:  what?
10             DELLAPORTAS:  I can explain, if you'd like.
11             THE COURT:  All right.  Because we did a little
12      checking ourselves, and as I understand it -- and if I'm wrong
13      you correct me, and I'll certainly give you an opportunity to
14      say anything you want here -- as I understand it, Mr. Sagi
15      Genger put his house up, or the house, on Juniper Hill Road up
16      in Connecticut, in Greenwich, he put it up for sale.  Where is
17      he living?
18             DELLAPORTAS:  Connecticut, your Honor.
19             THE COURT:  What?
20             DELLAPORTAS:  Connecticut, your Honor.
21             THE COURT:  Is he still at Juniper Hill, or is he
22      somewhere else?
23             DELLAPORTAS:  I believe he's still at Juniper Hill.
24      This was never a home owner.  That was a rental.  Essentially
25      TPR has always been a Delaware corporation.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                 14
        E4TATPRAps
1              THE COURT:  I know that.  The question I'm asking you
2       about is the principal place of business.
3              DELLAPORTAS:  Until last summer his principal place of
4       business was 1211 Park Avenue, in New York.  Now TPR, the
5       president is Mr. Genger and he maintains a home office, which
6       is the principal place of business.  Last summer, Mr. Genger,
7       who has five children, two of his children have special needs.
8       And so they found a special school in Connecticut.  And so the
9       entire family moved there.  Over the last summer they moved
10      their house there and they moved the home office there.  And
11      all the correct filings were made with the state of Connecticut
12      to make sure that's right.  Now, we're still registered to do
13      business in New York.  But the principal place of business is
14      now Connecticut.  And before filing this we researched it, and
15      the case law says that you look to diversity questions and
16      citizenship at the time of the onset of the complaint.
17             THE COURT:  OK.  Go ahead.  That's fine.
18             DELLAPORTAS:  And the move has nothing to do with this
19      complaint or anything else.  It had to do with the special
20      needs.  We're happy to put in an affidavit to that effect.
21             As far as Mr. Genger being -- you asked something
22      about him being a joint U.S.-Israeli citizen?
23             THE COURT:  Yes -- joint New York or U.S. and Israeli
24      citizenship is not what concerns me.  It's the question of the
25      place of business.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                 15
        E4TATPRAps
1              DELLAPORTAS:  So we're satisfied that we have proper
2       diversity jurisdiction and we're properly before this Court,
3       your Honor.
4              If I can proceed to the substance.
5              THE COURT:  Go ahead.
6              DELLAPORTAS:  So essentially, your Honor, we're here
7       to enforce and implement the June 14th, 2012 order on its
8       terms.  And I've read that it's dicta.  We don't believe that
9       it's dicta.  Your Honor, we were all before your Honor some
                                Page 7

E4TATPRA
10   time ago.  And at the time, it was right after the Delaware
11   Supreme Court had ruled, somewhat ambiguously.  And Mr. Meister
12   came at that time and said, there are adverse claimants, there
13   is vexation litigation.  And your Honor said no.  And I think,
14   you know, it wasn't the position we took, but in retrospect we
15   didn't appeal it.  We think it was pretty common sense and the
16   legally correct decision, which is, there is no real adversity
17   here and thus no subject matter jurisdiction here under 28
18   U.S.C. 1335 because, as your Honor wrote, "All potential
19   claimants acknowledge that if Arie and the Orly Trust are
20   deemed -- if the 2004 transfer of shares to Arie and the Orly
21   Trust is found to be invalid, then TPR had the right to sell
22   the shares to the Trump Group and TPR would be entitled to the
23   interpleader funds".
24          Now, what's significant about this ruling is, this was
25   after the Delaware Supreme Court ruled how it did, because
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                16
     E4TATPRAps
1    they're taking the position that once the Delaware Supreme
2    Court didn't affirm under the escrow agreement all bets are
3    off.  Section 2.B.3 which talks about -- 2.B.2 -- which talks
4    about affirming, that doesn't count any more.  But that's not
5    what your Honor ruled.  What your Honor said is that any court
6    of competent jurisdiction can decide the beneficial ownership
7    and that will automatically determine who gets the shares.  And
8    your Honor said that the New York courts are well equipped to
9    do so and the Delaware courts are well equipped to do so and
10   probably New York is better, but you're going to leave that to
11   the parties to figure it out.  And you sent us all on our way.
12          So what happened next?  Well, TPR didn't file any
13   suits.  But this being it the Gengers, TPR didn't get sued just
14   in New York and didn't get sued just in Delaware.  We got sued
15   in both.  And I just heard that no court has made a finding of
16   beneficial ownership of the shares.  Absolutely incorrect.
17   Both courts have made a finding of beneficial ownership of the
18   shares.  Both are conclusive and final.
19          So let me just very briefly go through what happened
20   after your Honor made that ruling.  Your Honor knows some of it
21   from one of the prior skirmishes, but let me take you all the
22   way through it just again.
23          First, there was only one claim about beneficial
24   ownership of the shares -- that's what we're talking about
25   here -- in the 2010 action.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                17
     E4TATPRAps
1           It's important to note, by the way, that the 2010
2    action that they're asking you to stay for, that was filed
3    before the escrow agreement was signed.  So Orly understood and
4    contracted that the determination of beneficial ownership of
5    the shares wasn't going to be determined by the 2010 action; it
6    was going to be determined by Delaware.  The 2010 action
7    already existed when she signed that agreement.
8           THE COURT:  Well, you were down in Delaware, right?
9           DELLAPORTAS:  I was, your Honor.
10          THE COURT:  Didn't the chancellor down there,
11   Chancellor Strine, didn't he tell you that once the stipulation
12   was signed in Delaware, that the place to go was New York
13   Supreme, not -- he didn't say anything about filing a new
14   action before me.  Isn't that why the stipulation in Delaware
                                Page 8

E4TATPRA
15  reads, quote, a court in New York, close quote?
16          DELLAPORTAS:  Chancellor Strine said a court in New
17  York.  It did not say a state court in New York or a federal
18  court in New York.
19          THE COURT:  He knows the difference between a federal
20  court and a state court.  Come on.  He referred twice in that
21  proceeding specifically to me.  And I read the minutes.  I read
22  them yesterday and I read them again this morning.  And both
23  place -- he talks about federal court and me, and he even
24  mentions something about the Constitution.  If he meant federal
25  court, he would have said federal court.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                              18

    E4TATPRAps
1           DELLAPORTAS:  He expressed the concern that perhaps
2   there wouldn't be diversity jurisdiction.  There is.  And even
3   if he meant state court, Chancellor Strine is a great judge but
4   he doesn't have the authority to tell us which court to go to.
5   He kicked us all out of his court and after that --
6           THE COURT:  He certainly did.
7           DELLAPORTAS:  After that it's up to us.
8           THE COURT:  He didn't express a great deal of pleasure
9   with any of you that I read.
10          DELLAPORTAS:  Yes.  And I think he's had his fill of
11  the Gengers, as have many judges.  But before he did, he
12  entered a final order saying that beneficial ownership of the
13  shares was TPR's and TPR properly sold them.
14          Let's compare what your Honor ruled versus what he
15  then ruled.  Your Honor said, "If the 2004 transfer of shares
16  to Arie Genger to the Orly trust is found to be invalid, then
17  TPR has the right to sell the shares to the Trump Group and TPR
18  would be entitled to the interpleader funds."
19          Now we did to what Chancellor Strine ruled.  He ruled
20  that the shares were invalid.  He used the term "void" but it's
21  the same thing.  The transfers were void and the stock reverted
22  to TPR and the Trump Group had the right to buy all of the
23  improperly transferred Trans-Resources stock from TPR.  And
24  then he said, it's now -- that transaction is complete.  These
25  are paragraphs 1 and 26 his ruling.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                              19

    E4TATPRAps
1           So his ruling gave exactly the ruling that your Honor
2   said we would need to obtain in order to satisfy the
3   interpleader the last time around.
4           Now, he didn't rule that we're entitled to the money.
5   He didn't want to rule that.  He said go to New York to figure
6   out who's entitled to the money.  But that doesn't stop the res
7   judicata or collateral estoppel effect on which the Court
8   ruled, on which your Honor ruled.
9           Just to be clear, we don't say Chancellor Strine said
10  we're entitled to the money.  We say this Court said under
11  express conditions we would be entitled to the money.
12          THE COURT:  You make a big point here, as I understand
13  it, as I read this, that Orly filed a state court action last
14  December and that she never claimed the funds in the original
15  Supreme Court action.  Right?  You make a point about that,
16  don't you?
17          DELLAPORTAS:  She never claimed ownership of them.
18  What she claimed was that by our obtaining them --
19          THE COURT:  Isn't that what the unjust enrichment
                              Page 9

E4TATPRA
20  claim is?
21          DELLAPORTAS:  Your Honor said exactly the opposite.
22  With respect to Arie's shares, which is the same shares, when
23  this was before your Honor last time -- and this is on page 24
24  of your Honor's decision -- your Honor noted the difference.
25  You said, "Well" -- and this is about Arie but it's the same
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                           20
E4TATPRAps
1   shares -- "Well, Arie asserts a beneficial ownership in the
2   underlying Trans-Resources shares.  In no case does he have a
3   claim against the interpleaded funds themselves.  Instead,
4   Arie's numerous counterclaims seek money damages for a breach
5   of fiduciary duties that are ancillary to and beyond the scope
6   of the Skadden interpleader."
7           That is the same thing here.  They have money damages
8   claims.  Your Honor asked exactly the right question:  If they
9   give us the money, do they still have money damages claims?
10  Absolutely.  Absolutely they still have money damages claims.
11  And maybe they'll win and maybe they will be worth more than
12  10.3, maybe they will be less than 10.3.  But what's been
13  noted, that the first element of a claim for unjust enrichment
14  is that we were enriched.  And so far we're being sued for
15  unjust enrichment and we haven't been enriched.  So our point
16  is, at least allow us to be enriched.  And then we can have a
17  trial over whether it was just or unjust.
18          THE COURT:  Let me ask you one more question and I'll
19  wrap it up.  Are you saving time for rebuttal too?
20          DELLAPORTAS:  I will save a couple minutes.  But I
21  have a couple of great points, your Honor.
22          THE COURT:  Let me ask you this.  You're arguing that
23  the Delaware stipulation satisfies section 2.B.2 of the escrow
24  agreement, right?
25          DELLAPORTAS:  It does, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                           21
E4TATPRAps
1           THE COURT:  OK.  Well, I don't know whether that's
2   technically true.  Aren't you really making a different
3   argument?  Aren't you really making an argument that there's a
4   drafting error here and that it would be consistent with the
5   spirit of the agreement, not with the verbiage?  Isn't that
6   what you're preliminarily saying?
7           DELLAPORTAS:  We're arguing two things, your Honor.
8   We make both points it our papers.  Number one is that this has
9   been litigated.  And once it's been litigated it doesn't matter
10  that somebody comes up with a clever argument after the fact.
11  They had an obligation.  If they thought it could only be the
12  Delaware Supreme Court, they had to speak up again, because if
13  that were the case, then we should have been before your Honor
14  two years ago and had this resolved.  But they said no.  They
15  took the opposite position.  They said it's impossibly to be
16  vexatious because everybody agrees how this thing should be
17  read.  Now they are saying, never mind, it actually should be
18  read some other way.
19          In the courts we only get to litigate things once,
20  your Honor.  And whether it's res judicata or collateral
21  estoppel --
22          THE COURT:  Not in this case.
23          DELLAPORTAS:  Well, there's a first time for
24  everything, your Honor.  And that's how it was interpreted by
                           Page 10

                              E4TATPRA
25    the Court.  And it was absolutely a necessary finding to the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              22
      E4TATPRAps
 1    decision, but it's on what the Court pinned its finding of lack
 2    of diversity.  That's where lack of subject matter jurisdiction
 3    came from.  If they had said then that, oh, you can only have
 4    the Delaware Supreme Court -- the Delaware Supreme Court had
 5    already dismissed the case at that point.  But your Honor
 6    said -- and they agreed, they urged this result -- that any
 7    court of competent jurisdiction can decide it.
 8          So now we haven't had one, we've had two courts, your
 9    Honor, who have ruled on beneficial ownership.  And that's, I
10    think, something we're missing here.
11          Justice Jaffe, on January 3rd, 2012, issued her
12    decision where they only had one count of beneficial ownership.
13    If you look at the third amended supplemental complaint, Count
14    One is their count seeking beneficial ownership of the shares,
15    which is what we're talking about here.  And in it they sought
16    the following relief:  The 2004 transfer should be undone.  All
17    the shares should come back to TPR.  TPR should give them to
18    TPR2, a new company.  Arie should be put in control of TPR2.
19    And then 50 other ridiculous events.
20          This goes before Justice Jaffe, and Justice Jaffe
21    dismisses it.  Justice Jaffe rules, quote, Arie seeks to undo
22    the Delaware court's adverse findings against him and the Trump
23    Group's right to buy the invalidly transferred shares
24    notwithstanding the fact that they were transferred as a result
25    of his misrepresentation in the divorce.  In any event, any
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              23
      E4TATPRAps
 1    equitable or contractual right in favor of Arie to reform the
 2    diverse stipulation does not override the preexisting
 3    contractual right of the Trump Group to purchase the invalidly
 4    transferred shares."  So she threw out their only claims of
 5    beneficial ownership.
 6          It goes up on appeal, your Honor -- and your Honor
 7    asked before it.  It doesn't go up on appeal on that issue.
 8    I'd like to read to you, because this is very important -- and
 9    this happened after the last time we were here before your
10    Honor.  Last time your Honor said the beneficial ownership
11    claim is on life support or almost dead but not quite dead.
12    Since your Honor made that ruling, both Arie and Orly have
13    pulled the plug on that.  And so this is from her suit, this is
14    from her brief.  She says, "In June 2013, Orly and Arie entered
15    into a settlement agreement with the Trump Group that resolved
16    all issues between them in this case.  By this settlement, Orly
17    settled her individual claims and, as a result, is no longer
18    seeking beneficial ownership of the Orly Trust GRI shares."
19          Now, she says she still wants the money.  Good for
20    her.  But the shares, that's no longer pending in any court.
21    It was conclusively decided by Justice Jaffe.  It was
22    conclusively decided by Chancellor Strine.
23          Now, Chancellor Strine read a decision.  He thinks
24    she's got -- Orly's got a good unjust enrichment claim.  Maybe
25    he'll come and testify for her.  I don't know.  But that's not
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              24
      E4TATPRAps

                           Page 11

E4TATPRA
1    what we're here for today.  We're not here on Orly's money
2    damages claims.  Your Honor said time and again, this Court is
3    not going to hear money damages claims again.  Those are in the
4    state court for better, for worse.  We respect that decision.
5    We're not seeking to challenge it.  All we're seeking to do is
6    implement the very strict ruling of this Court on June 12th
7    that if we satisfied certain conditions, that we would be
8    entitled to the funds.  We have satisfied those conditions.
9             THE COURT:  OK.  You saved time for rebuttal.
10            DELLAPORTAS:  Very briefly, your Honor?
11            THE COURT:  Very briefly, if you're going to do
12   rebuttal.
13            DELLAPORTAS:  You asked if we proceed under 2.B.2.
14   And we do proceed under 2.B.2.  We don't think it's a drafting
15   error.  We think that, inconsistent with the case we cited in
16   our brief, that it needs to be read that every provision of an
17   escrow agreement needs to be read to fulfill the overall
18   purpose.  And the overall purpose of this agreement was, if we
19   owned the shares and we sold the shares, to give us our
20   proceeds from selling the shares.  It's not complicated.
21            We also proceed under 2.B.5.  We made a written
22   request under 2.B.5.  We said, why don't we all just agree, why
23   don't we all not be Gengers for once in our life and agree just
24   to release this, subject to all your money damages claims.  And
25   we made that on November 18th.  That's Exhibit C to our papers.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          25
     E4TATPRAps
1    They responded, no, we object.  That's Exhibit D to their
2    papers.
3             When you get a written letter --
4             THE COURT:  All right.  Come on.
5             DELLAPORTAS:  Yes.  When you get a written request and
6    you have an objection --
7             THE COURT:  Thank you.  Save your time for rebuttal.
8             DELLAPORTAS:  -- the only way for the escrow agent to
9    release the funds is by order of the court.  So at this point
10   we need an order of some court, and we believe this court is
11   the correct court.  Thank you, your Honor.
12            THE COURT:  Thank you.
13            All right.  Now, who is going to argue here on behalf
14   of Pedowitz & Meister?
15            MR. MEISTER:  I would, your Honor, but I think it may
16   make sense that Ms. Bachman argue briefly on behalf of
17   Ms. Genger.
18            THE COURT:  All right.
19            MS. BACHMAN:  Good afternoon, your Honor.
20            THE COURT:  Good afternoon.
21            MS. BACHMAN:  I do not believe I'll need any time for
22   rebuttal because I'll be very brief.
23            As I understand it, Ms. Genger's crossclaim,
24   counterclaim here was pursuant to the settlement agreement that
25   the parties have made that the Orly Trust was entitled to the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          26
     E4TATPRAps
1    proceeds, which are currently being held in escrow.  As this
2    Court is aware from the numerous papers that have been filed,
3    Justice Jaffe tells us that settlement agreement was either
4    void or voidable, and subsequently on appeal to the First
5    Department, the First Department affirmed that decision.
                              Page 12

E4TATPRA

```
 6          Accordingly, it seems that the logic behind
 7    Ms. Genger's claims is now in jeopardy and therefore we don't
 8    object if this Court would direct that the escrow be given to
 9    TPR.  TPR has represented to the Court and there is an oral
10    understanding, to my knowledge, that if on further appeal of
11    the First Department decision the settlement agreement is
12    deemed to be valid, then TPR will act in accordance with the
13    settlement agreement and return the money to the trust.
14          THE COURT:  Let me ask you this question.  You
15    represent Dalia now, right?
16          MS. BACHMAN:  That is correct, your Honor.
17          THE COURT:  Personally, right?
18          MS. BACHMAN:  As the trust -- her role here, I
19    believe, is as the trustee of the trust.
20          THE COURT:  Well, how can she do both?  She is the
21    trustee for the Orly Trust.  Right?
22          MS. BACHMAN:  That is correct.
23          THE COURT:  And as I read Chancellor Strine's -- now
24    he's chief justice down there, chief judge.  As I read his
25    remarks, he kept suggesting that she no longer should be
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

E4TATPRAps

```
 1    trustee, didn't he?  Did you read that?
 2          MS. BACHMAN:  I am familiar with that.  To my
 3    knowledge, your Honor, the surrogate court in New York has, at
 4    least to date, deemed that Dalia is an appropriate
 5    representative of the trust.
 6          THE COURT:  Aren't she and Arie estranged?
 7          MS. BACHMAN:  They are clearly at odds, your Honor.
 8    But that does not -- that's not, if you will -- in the
 9    structure that we have of trusts, I believe that a beneficiary
10    does not necessarily have the discretion to choose the trustee.
11    It's the trust document itself that determines who should be
12    the trustee and how that trustee is appointed.  And until the
13    surrogates court rules otherwise, I believe that she is the
14    appropriate representative of the trust.
15          THE COURT:  All right.
16          Anything else you want to say?
17          MS. BACHMAN:  That's all, your Honor.
18          THE COURT:  Thank you.
19          MS. BACHMAN:  Thank you.
20          THE COURT:  I'll hear from you, Mr. Meister, briefly.
21          MR. MEISTER:  Your Honor, Robert Meister for Pedowitz
22    & Meister, pro se.
23          I also will be brief.  I don't think I will need any
24    time for rebuttal.
25          First, as trustee -- escrow agent, I should say -- we
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

E4TATPRAps

```
 1    received multiple claims for the same proceeds.  We didn't
 2    commence an interpleader action.  Rather, we filed an answer
 3    using rule interpleader, defense of interpleader.
 4          I heard my colleague, Mr. Griver, say that the escrow
 5    agreement says we can't do that.  But I've read the escrow
 6    agreement many times.  In fact, I blush to say I drafted it.
 7    And it doesn't say that.  It says that if there are conflicting
 8    claims, the escrow agent can, among other things, do nothing.
 9    It also says other things that it may do.  It doesn't say
10    anything that it can't do, in terms of the interpleader.
```

Page 13

E4TATPRA

11          So while the escrow agent could have started an
12  interpleader seeking arbitration, we didn't.  We didn't start
13  any interpleader.  And I don't believe that even if the
14  agreement purported to prevent the escrow agent from taking
15  advantage of federal law, that that would be lawful.  But we
16  don't have to worry about that.  It didn't.
17          Why do we like interpleader as opposed to your Honor
18  just saying, here's judgment, here's the proceeds where the
19  proceeds go, the way any normal case would be decided?  The
20  interpleader gives the parties who have -- whoever the Court
21  determines has the right to the money -- gives them the same
22  thing.  It gives the interpleader, as escrow agent, a
23  discharge.  And since my colleague, Mr. Griver, has come up
24  with numerous creative theories in the course of these
25  litigations, in particular his December action, which seeks
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              29

E4TATPRAps
1  damages against the escrow agent for not turning all the funds
2  over to Orly, we think that discharge by this Court would
3  surely be something good to have, something we're entitled to
4  as a matter of law.
5          The only other thing I would say to the Court is, I
6  did check the account.  The current balance in the escrow is
7  $10,376,163.20.  That's going to change on April 30.  So I take
8  it that when the Court decides this, if the Court decides that
9  the money should go to someone or the other --
10         THE COURT:  It can be tomorrow.
11         MR. MEISTER:  If it's tomorrow --
12         THE COURT:  Tomorrow's April 30th.
13         MR. MEISTER:  It is.  It is.  The way Chase credits
14  things, I send out a notice to all the parties every month.
15  The credit comes in on April 30th.  Not in a huge amount of
16  money.  It's now earning 0.15 percent interest.
17         THE COURT:  Yes.  I'm aware of the bank statements.
18         MR. MEISTER:  The only thing that I would say apropos
19  of the claim against the escrow agent is that there was an
20  objection to the Orly claim.  It's attached to my papers.  The
21  notice went out.  Mr. Griver says he doesn't remember receiving
22  it.  His client doesn't open her mail, so it's not a problem
23  there.  But the point is, the escrow agreement does not require
24  the escrow agent to send out notices of objection.  It does
25  require notices of claims.  There's no argument that notices of
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              30

E4TATPRAps
1  claims weren't sent out.  So I don't see how the escrow agent
2  can be faulted in that case.
3          And with that I'll just remind your Honor of the old
4  Russian proverb, which I should have borne in mind when
5  agreeing to become here, as escrow agent, that no good deed
6  remains unpunished.
7          THE COURT:  Thank you.
8          All right.  So first we're going to have Mr. Griver's
9  rebuttal.  Go ahead.
10         MR. GRIVER:  Thank you, you, your Honor.  As
11  demonstrated, TPR's plea is that you allow it to ignore the
12  escrow agreement because it's as if they had met its
13  requirements.  Orly gave up fundamental rights to reach the
14  specific language of the escrow agreement.  They admit they
15  don't need it.
                        Page 14

E4TATPRA
16            They say instead that beneficial ownership has been
17    decided.  Well, look at what the New York court said on May 29,
18    2013.  And this was at page 3 of our memo.  It says, "Nor can
19    TPR's unilateral declaration of ownership be reconciled with
20    the undisputed fact that the issues of ultimate beneficial
21    ownership in such shares and the related proceeds have not yet
22    been judicially determined by a court of competent
23    jurisdiction."  Look at what you said just one week before they
24    came in and said, oh, it's been determined.  You said,
25    "Therefore, it is inaccurate for TPR to suggest that the issue
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          31
E4TATPRAps
1    of beneficial ownership is conclusively resolved."
2            What Mr. Dellaportas does is, he mixes and matches the
3    arguments of Arie Genger and Orly Genger.  I am in front of you
4    have representing Orly Genger and the Orly proceeds and the
5    Orly shares.  Arie Genger is completely and entirely different.
6    Look at what your Honor said about what Orly was seeking to do.
7    "Orly moves to dismiss the federal action, to which they are
8    party, and asks the Court to stay the Delaware court chancery
9    action so the merits of their claim can proceed in New York
10    Supreme Court."  That's what Orly asked for.  That's on page 15
11    of your decision dated June 14, 2012.  Orly didn't say, I don't
12    care where it's being decided.  She said it should be in front
13    of the New York State court.
14            And your Honor went on to say that the decision on
15    beneficial ownership does not void or amend the escrow
16    agreement.  You have said that the proceeds will be provided
17    pursuant to the escrow agreement that all of the parties
18    contracted to.
19            As far as the Delaware stipulation is concerned, your
20    Honor, which, Orly has no part in that proceeding or in the
21    stipulation, paragraph 1 just references -- it said "in an
22    action styled TR Investments, LLC, the Court found that" -- it
23    isn't making new findings.  It is just memorializing what
24    happened before.  It does not go on to say, but those findings
25    as to the Orly Trust and the Orly Trust shares and the Orly
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          32
E4TATPRAps
1    proceeds have been voided by the Delaware Supreme Court --
2    which is exactly what happened.
3            Paragraph 2 does not say -- and Mr. Dellaportas said
4    this but it's not true.  It does not say TPR had beneficial
5    ownership.  All paragraph 2 says is that the Trump Group owns
6    those shares.  It talks about the buyer.  It does not talk
7    about the seller.
8            In paragraph 3, Dalia and TPR get together and try and
9    amend the escrow agreement to say, well, you can go to a court
10    of competent jurisdiction.  But paragraph 9 of the escrow
11    agreement, in two places, says everybody has to agree.  And
12    they keep forgetting about Orly and they keep forgetting about
13    the fact that Orly is a party to this.
14            And finally, your Honor, it can't be a decision of
15    TPR's right to the sale of proceeds because --
16            THE COURT:  Hold it.  Slowly.  Slowly.
17            MR. GRIVER:  OK.  It cannot be, your Honor, a decision
18    of TPR's right to the sale of proceeds, because it specifically
19    memorializes the fact that those claims were dismissed prior to
20    this stipulation.  That was language that acknowledged the fact
                            Page 15

E4TATPRA
21    TPR chose to dismiss its claims and as a result the stipulation
22    has nothing do with its rights to those proceeds.
23            Your Honor, I think that they're ignoring Orly at
24    every stage of the proceeding and ignoring the agreement that
25    they reached with Orly in the escrow agreement.  It runs
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    33
E4TATPRAps
1    through this entire case.  The escrow agent, right, had a clear
2    conflict of interest.  We raised it.  We've raised it in the
3    New York State action.  The waiver that he says he obtained, he
4    never obtained it from the beneficiary of the trust.  He went
5    to his client Dalia and said, is it OK if I represent you and
6    somebody else.  But he never went and say, hey, how can I do
7    this.  For Dalia to stand up as trustee and say, oh, give it to
8    TPR, is exactly why we have been trying through Dalia for years
9    now, why we objected to appointment in the first place, and why
10   Dalia was recently found to have violated her fiduciary duties
11   in one of the secret agreements that she entered into with TPR.
12           THE COURT:  You said "finally" about five minutes ago.
13           MR. GRIVER:  Well, your Honor, then I'm pleased to say
14   that I am finally done.
15           DELLAPORTAS:  One minute?
16           THE COURT:  Yes.  There is a little time.  Go ahead.
17           DELLAPORTAS:  I just wanted to respond to a couple
18   things that were said.  It was alleged that we've mixed Arie
19   and Orly.  Exhibit N to our papers, page 26, is Orly's
20   appellate brief, which was filed with the Appellate Division
21   after your Honor ruled that the beneficial ownership of the
22   shares was on life support but not yet dead.  And then Orly
23   says she settled with the Trumps and, quote, Orly is no longer
24   seeking beneficial ownership of the Orly Trust PRI shares.
25           Beneficial ownership is over, your Honor, of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    34
E4TATPRAps
1    shares.  Now they say, now we want the money.  Great.  But
2    that's not what the ruling is, your Honor.
3            They also said that Chancellor Strine's ruling,
4    paragraph 2, speaks only as the buyer and not the seller.
5    Absolutely incorrect.  What Chancellor Strine ruled in
6    paragraph 2 was, "The Trump Group, having closed on the
7    purchase of the so-called Orly Trust shares" -- here's the
8    important part -- "pursuant to and under the terms of the side
9    letter agreement between TPR and the Trump Group."  That's the
10   ruling.  The side letter agreement is in the record.  That's a
11   contract whereby we sold those shares to them.  Exactly the
12   ruling your Honor said we needed to get in order to get our
13   proceeds.
14           We've gotten the ruling that the Court asked us to
15   get.  We would now like our proceeds.  Thank you very much,
16   your Honor.
17           THE COURT:  Thank you.  All right.  Decision is
18   reserved.  Thanks very much.
19           MR. GRIVER:  Thank you, your Honor.
20                            o0o
21
22
23
24
25
                            Page 16

E4TATPRA
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
ARIE GENGER and ORLY GENGER, in her        :
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,                :        Index No. 651089/2010
                                                    (Jaffe, B. JSC)
                                           :
            Plaintiffs,                    :

            -against-                      :

SAGI GENGER, TPR INVESTMENT               :
ASSOCIATES, INC., DALIA GENGER, THE
SAGI GENGER 1993 TRUST, ROCHELLE          :
FANG, individually and as trustee of THE SAGI
GENGER 1993 TRUST, GLENCLOVA              :
INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR         :
EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP AND MARK HIRSCH,                    :

            Defendants.                    :
------------------------------------------------------------------x
SAGI GENGER, individually and as assignee of  :
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.               :

      Cross-Claimants, Counterclaimants, and  :
      Third-Party Claimants,

            -against-                      :

                                           :
ARIE GENGER, ORLY GENGER,                 :
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,  :
NEW TR EQUITY II, LLC, JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH,                  :
TRANS-RESOURCES, INC., WILLIAM
DOWD, and THE ORLY GENGER 1993 TRUST,     :

                                           :
      Cross-Claim, Counterclaim and/or
      Third-Party Defendants.              :
------------------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT
OF TRUSTEE DALIA GENGER'S MOTION
TO SUBSTITUTE FOR PLAINTIFF ORLY GENGER
ON HER DERIVATIVE CLAIMS AGAINST THE TRUMP GROUP
AND FOR AN ORDER DIRECTING
SETTLEMENT PROCEEDS TO
BE PAID INTO COURT

Judith Lisa Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Table of Contents

Table of Authorities                                                                    i

Preliminary Statement                                                            1

Statement of Facts                                                                  1

Argument

      Point I

             Substitution of Derivative Plaintiff Orly Genger
             Is Necessary Because She No Longer
             Represents the Orly Trust on the
             Trump Group Claims And She Has Suggested the Trustee
             "Pick Up the Cudgel" on those Claims                                4

      Point II

             The Proceeds of the Settlement
             Should be Paid into Court
             To Protect the Fund                                                      5


Conclusion                                                                          10

Table of Authorities

Cases

Bonham v Coe, 249 A.D. 428, 292 N.Y.S. 423 (4th Dep't 1937)                    9

Clarke v. Greenberg, 71 N.E.2d 443, 296 N.Y. 146 (1947)                        6

Conforti v. Goradia, 234 A.D.2d 237, 651 N.Y.S.2d 506  (1st Dep't 1996)        6

Gusinsky v. Bailey, 21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table)
(Sup. Ct. N.Y. County 2008), rev'd on other grounds,
66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008)                               6

In re Carroll's Estate, 153 Misc. 649, 275 N.Y.S. 911 (Sur. Ct. 1934)         9

In re Martin's Estate, 96 N.Y.S.2d 842 (Surr. Ct. 1950)                       9

In re Roosevelt's Estate, 131 Misc. 800, 228 N.Y.S. 323 (Sup. Ct. 1928)       9

James v. Bernhard, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dep't 2013)          4, 5

Lade v. Levitt, 33 A.D.2d 956, 306 N.Y.S.2d 704 (3d Dep't 1970)             6, 9

Rice v. DiNapoli, 23 Misc.3d 1128(A), 889 N.Y.S.2d 507 (Table)
(Sup. Ct. Albany County 2009)                                              6, 9

Titus v. Empire Mink Corp., 17 N.Y.S.2d 909  (Sup. Ct. 1939)                  9

Werner v. Werner, 70 Misc.2d 1051, 334 N.Y.S.2d 966 (Sup. Ct. Albany County 1982)   6


Statutes and Rules

CPLR 2701                                                                    6, 9

Preliminary Statement

Dalia Genger, as trustee for the Orly Trust, moves to be substituted in for derivative

plaintiff Orly Genger on the claims Orly brought on behalf of the Orly Trust against the Trump

Group since "Orly no longer represents the Orly Trust as to the Trump Group".

As the substituted plaintiff, Dalia Genger, as trustee for the Orly Trust, respectfully

requests an order pursuant to CPLR 2701 directing that the settlement fund from the Trump

Group be paid into court since the Court "cannot determine whether <u>some or all</u> of the settlement

proceeds with the Trump Group belong to <u>Orly or the Orly Trust</u>."    Order of the Court, Filed

May 13, 2014, Doc. 925 at 4 (emphasis added).

Statement of Facts

Dalia Genger is the trustee of the Orly Genger 1993 Trust ("Orly Trust").  In this action,

Orly Genger ("Orly") instituted direct and derivative claims on behalf of the Orly Trust against

various defendants, including the so-called Trump Group.

Orly settled with the Trump Group defendants.  Memorandum of Law of Orly Genger,

Doc. 775 at 2, attached as Exhibit 1 to the Affirmation of Judith Bachman, dated August 11,

2014 ("Bachman Aff.').

"A material term of the agreement among the settling parties was the dismissal of ***all***

claims presently pending against one another, in whatever capacity they were brought. [If the

settlement stipulation was drafted so as to] have the effect of ***not*** dismissing Orly Genger's

derivative claims against the Trump Group, contrary to the agreement of the settling parties.

Excluding such claims from the claims that are to be dismissed is not what the Trump Group

bargained and paid for in the settlement . . ."  Letter to the Court from Thomas J. Allingham II,

dated June 28, 2010, Doc. 728 at 2, attached as Exhibit 2 to the Bachman Aff. (emphasis added).

The Trump Group later reaffirmed this aspect of the settlement:

> "[any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against the Trump Group, but not resolve the Orly Trust's claims against the Trump Group and the TPR Group. (Opp'n Br. at 28) . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. *See Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485, at *6 (N.Y. Sup. Ct. Jan. 3, 2013) (TABLE) (citing *Genger v. Genger*, No. 109749/2009 (N.Y. Sup. Ct. June 28, 2010)). In settling the claims among them, the Trump Group, Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

Reply Memorandum of Law of Trump Group, Filed April 17, 2014, Doc. 888 at 22-23, attached as Exhibit 3 to the Bachman Aff.

Evidencing this intent, in paragraph 8 of her settlement agreement, Orly agreed to "cooperate" and "cause" the Orly Trust to release any and all claims against the Trump Group." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.

Pursuant to that duty, Orly not only settled all her claims in this case; she also caused <u>the Orly Trust</u> to release claims against the Trump Group in a parallel Delaware case. Specifically, at the time of the Trump Group settlement, the Orly Trust was maintaining a proceeding in Delaware Chancery Court. Following her Trump Group settlement, Orly's counsel twice wrote to Chancellor Strine urging "the dismissal of the last remaining Genger related case in Delaware" and "acknowledg[ing] individually <u>and in her capacity as the beneficiary of her trust</u> that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." Exhibit M, Filed June 2, 2014, Doc. 1034, attached as Exhibit 5 to the Bachman Aff. Satisfied that Orly no longer wanted the Orly Trust to pursue its claims, the

2

Chancery Court dismissed the Orly Trust's claims in that case with prejudice. Exhibit N, Filed June 2, 2014, Doc. 1034, attached as Exhibit 6 to the Bachman Aff.

Notwithstanding the provisions of her own Trump Group settlement agreement and her representations to the Delaware Chancery Court, Orly told <u>this Court</u> that her Trump Group settlement "only dismisses Orly's individual claims against the Trump Group, but does not resolve or dismiss any claims of the Orly Trust against the Trump Group". Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. Moreover, Orly stated that she "no longer represents the Orly Trust as to the Trump Group (<u>while allowing Dalia Genger to pick up the cudgel if she so chooses</u>) . . ." Id. (emphasis added).

In light of these conflicting statements, this Court "invite[d] the parties to the settlement agreement to set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released in the agreement." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.

Conveniently for them, none of the parties to the settlement agreement complied with the Court's request to "set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released in the agreement." <u>Id.</u> In fact, Orly's counsel explicitly refused to comply with that request. Email Correspondence dated May 26, 2014, attached as Exhibit 7 to the Bachman Aff.

Accordingly, this Court held that "[u]nless and until the issue of [the status of the] derivative claims is resolved, I cannot determine whether <u>some or all</u> of the settlement proceeds with the Trump Group belong to <u>Orly or the Orly Trust</u> . . ." Order of the Court, Filed May 13, 2014, Doc. 925 at 4 (emphasis added), attached as Exhibit 4 to the Bachman Aff.

3

Even in the presence of this conveniently self-manufactured uncertainty by Orly as to whom the settlement proceeds belong to, *i.e.,* Orly or the Orly Trust, counsel for both Orly and the Trump Group have represented in Court that cash payments <u>were made and will be made only to Orly</u>. Exhibit N, Filed June 2, 2014, Doc. 1034, attached as Exhibit 6 to the Bachman Aff. ("Orly did sign the settlement agreement, and that's a settlement in which real money is changing hands and will continue to change hands."). Upon information and belief, Orly used the proceeds to pay her own debts, and those of her father, acts which are explicitly prohibited by the Orly Trust agreement.

To protect the interests of the Orly Trust, Dalia Genger, as trustee of the Orly Trust, now moves this Court for an order of substitution for derivative plaintiff Orly Genger on the Orly Trust Trump Group claims and for an order directing that the settlement fund with the Trump Group be deposited into Court.

Point I

Substitution of Derivative Plaintiff Orly Genger
Is Necessary Because She No Longer
Represents the Orly Trust on the
Trump Group Claims And She Has Suggested the Trustee
"Pick Up the Cudgel" on those Claims

Pursuant to CPLR 1021, "a motion for substitution may be made by the successors or representatives of a party or by any party."

Such substitution is appropriate, and indeed necessary, when a derivative plaintiff is no longer an appropriate representative plaintiff. <u>James v. Bernhard</u>, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dep't 2013).

In James, the Court found that the substitution of independent directors in place of a club member derivative plaintiff was necessary where the derivative plaintiff club member no longer represented the club's interests.

Here too, substitution for derivative plaintiff Orly Genger is necessary because Orly Genger no longer represents the Orly Trust on those claims, and indeed she has suggested that the Trustee should "pick up the cudgel". Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. Orly Genger, the party to be substituted, has expressly acknowledged that such substitution is appropriate: "Orly no longer represents the Orly Trust as to the Trump Group (while allowing  Dalia Genger to pick up the cudgel if she so chooses) . . ." Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. (emphasis added).

Since, by her own admission and, in fact urging, Orly has said that Dalia Genger has standing to make this motion and "pick up the cudgel" on the Orly Trust Trump Claims, Dalia Genger, as Trustee, must be substituted for Orly as to the Orly Trust Trump Group claims. Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. This substitution will, as described more fully below, protect the Orly Trust's interest in the settlement with the Trump Group.

Point II

The Proceeds of the Settlement
Should be Paid into Court
To Protect the Fund

A court may direct that funds should be paid into court if

1. a party has such property in his possession, custody or control as trustee for another party or where it belongs or is due to another party; or

5

    2. a party has such property in his possession, custody or control
and it belongs or is due to another party, where special
circumstances make it desirable that payment or delivery to such
other party should be withheld;

    3. the ownership of such property will depend on the outcome of a
pending action and no party is willing to accept possession or
custody of it during the pendency of the action.

CPLR 2701. See, e.g., <u>Conforti v. Goradia</u>, 234 A.D.2d 237, 651 N.Y.S.2d 506 (1st Dep't

1996).

    Where two parties dispute entitlement to a settlement fund of money, a court should

direct payment of the fund into court under CPLR 2701, rather than allow payment to one party,

to protect that fund and the mutual interests of the parties. <u>Lade v. Levitt</u>, 33 A.D.2d 956, 306

N.Y.S.2d 704 (3d Dep't 1970); <u>Rice v. DiNapoli</u>, 23 Misc.3d 1128(A), 889 N.Y.S.2d 507

(Table) (Sup. Ct. Albany County 2009); <u>Werner v. Werner</u>, 70 Misc.2d 1051, 334 N.Y.S.2d 966

(Sup. Ct. Albany County 1982)

    In the instant action, this Court has held "[u]nless and until the issue of [the status of the]

derivative claims is resolved, I cannot determine whether <u>some or all</u> of the settlement proceeds

with the Trump Group <u>belong to Orly or the Orly Trust</u> . . ." ." Order of the Court, Field May

13, 2014, Doc. 925 at 4 (emphasis added), attached as Exhibit 4 to the Bachman Aff.

    This difficulty flows from the fact that any settlement of Orly's derivative claims on

behalf of the Orly Trust belongs to the Orly Trust and not to Orly, individually. See <u>Gusinsky v.</u>

<u>Bailey</u>, 21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. County 2008), <u>rev'd on</u>

<u>other grounds</u>, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008); <u>Clarke v. Greenberg</u>, 71

N.E.2d 443, 296 N.Y. 146 (1947). Any payment of the settlement funds to Orly or any other

person which belong to the Orly Trust, is improper.

6

It appears that Orly has deliberately manufactured confusion as to whether or not she settled the Orly Trust derivative claims against the Trump Group so that she can take all of the settlement funds for herself rather than have them paid to the Orly Trust. Counsel for both Orly and the Trump Group have represented in Court that cash payments were made and will be made only to Orly. Exhibit N, Filed June 2, 2014, Doc. 1034, attached as Exhibit 6 to the Bachman Aff. ("Orly did sign the settlement agreement, and that's a settlement in which real money is changing hands and will continue to change hands.")

Such payment only to Orly, and not the Orly Trust, is improper, since there is compelling evidence that some, if not all, of the settlement funds belong to the Orly Trust as the result of the settlement of derivative claims against the Trump Group.

The Trump Group, one of the settling parties, believes the derivative Orly Trust claims have been settled: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group, contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement . . ." Letter to the Court from Thomas J. Allingham II, dated June 28, 2010, Doc. 728 at 2, attached as Exhibit 2 to the Bachman Aff. (emphasis added). The Trump Group reaffirmed this aspect of the settlement:

> [any suggestion] that the confidential settlement agreement *might* only dis-miss Orly's individual claims against the Trump Group, but not resolve the Orly Trust's claims against the Trump Group and the TPR Group. (Opp'n Br. at 28) . . . is counterfactual. This Court has already held that certain of Or-ly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. *See Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485, at *6 (N.Y. Sup. Ct. Jan. 3, 2013) (TABLE) (citing *Genger v. Genger*, No. 109749/2009 (N.Y.

7

> Sup. Ct. June 28, 2010)). In settling the claims among them, the
> Trump Group, Trans-Resources, Orly and Arie agreed to the
> dismissal of all claims presently pending against one another. This
> agreement is memorialized in the Second Amended Stipulation of
> Discontinuance.

Reply Memorandum of Law of Trump Group, Filed April 17, 2014, Doc. 888 at 22-23, attached as

Exhibit 3 to the Bachman Aff.

Further, in paragraph 8 of her settlement agreement, Orly agreed to "cooperate" and

"cause" the Orly Trust to release any and all claims against the Trump Group." Order of the

Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.  Pursuant

to that duty, Orly not only settled all her claims in this case; she also caused the Orly Trust to

release claims against the Trump Group in a parallel Delaware case, when she twice had her

counsel urge (and later obtain) for "the dismissal of the last remaining Genger related case in

Delaware" and "acknowledg[ing] individually and in her capacity as the beneficiary of her trust

that the Trump Group are the record and beneficial owners of the TRI shares which had been

distributed to the Orly Trust." Exhibit M, Filed June 2, 2014, Doc. 1034, attached as Exhibit 5 to

the Bachman Aff.

All of these facts compel the conclusion that Orly's Trump Group settlement in this

action resulted in the dismissal of both her individual and derivative claims, and that some, if not

all, of the settlement fund belongs to the Orly Trust.

Yet, in self-manufactured confusion, notwithstanding the provisions of her own Trump

Group settlement agreement and her representations to the Delaware Chancery Court, Orly told

this Court that she "only dismisses Orly's individual claims against the Trump Group, but does

not resolve or dismiss any claims of the Orly Trust against the Trump Group". Memorandum of

Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff.

In light of the conflicting statements, this Court "invite[d] the parties to the settlement agreement to set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released in the agreement." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.   Conveniently for them, none of the parties to the settlement agreement complied with the Court's request.   Email Correspondence dated May 26, 2014, attached as Exhibit 7 to the Bachman Aff.

With these efforts, Orly succeeded in clouding the question of to whom the settlement proceeds belong: the Court "cannot determine whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust . . .".

Such self-manufactured confusion, though, is the very reason why the settlement proceeds must be paid into Court[1] - - to protect that fund and the mutual interest of the parties. Lade v. Levitt, 33 A.D.2d 956, 306 N.Y.S.2d 704 (3d Dep't 1970); Rice v. DiNapoli, 23 Misc.3d 1128(A), 889 N.Y.S.2d 507 (Table) (Sup. Ct. Albany County 2009).   Without such an order, the Orly Trust will be denied the opportunity to obtain any of the settlement proceeds paid as the result of settling claims belonging to the Orly Trust.

---

[1] Such an order must be made against all of the settling parties since it is undisclosed who is holding the settlement proceeds.   If such payment has already been made, then the recipient stands in relation as a quasi trustee of the Orly Trust and/or is in possession of funds which belong to the Orly Trust.  Bonham v Coe, 249 A.D. 428, 292 N.Y.S. 423 (4th Dep't 1937); In re Martin's Estate, 96 N.Y.S.2d 842 (Surr. Ct. 1950); In re Roosevelt's Estate, 131 Misc. 800, 228 N.Y.S. 323 (Sup. Ct. 1928); Titus v. Empire Mink Corp., 17 N.Y.S.2d 909 (Sup. Ct. 1939); In re Carroll's Estate, 153 Misc. 649, 275 N.Y.S. 911 (Sur. Ct. 1934).   This state of facts fits squarely within CPLR 2701.

Conclusion

Dalia Genger as Trustee must be substituted in for derivative plaintiff Orly Genger since

"Orly no longer represents the Orly Trust as to the Trump Group" and the settlement proceeds

must be paid into Court since the Court "cannot determine whether <u>some or all</u> of the settlement

proceeds with the Trump Group belong to <u>Orly or the Orly Trust</u> . . ."

Dated: New City, New York
            August 11, 2014

                                            _____/s/_____
                                            Judith Lisa Bachman, Esq.
                                            254 S. Main Street, Suite 306
                                            New City, New York 10956
                                            845-639-3210

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

**PRESENT:  Hon. BARBARA JAFFE**                    **PART 12**
*Justice*

ARIE GENGER and ORLY GENGER, in her individual capacity
and on behalf of THE ORLY GENGER 1993 TRUST,

INDEX NO.  651089/2010
MOTION DATE
**Plaintiffs,**                              MOTION SEQ. NO.  42
CALENDAR NO.

- v -

**INTERIM ORDER**

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC.,
DALIA GENGER, *et al.,*

**Defendants.**

The following paper, numbered 1, was read on this motion.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answer —  Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion:  ☐ Yes  ☐ No

MOTION/CASE IS RESPECTFULLY REFERRED TO
J.S.C.

      Defendant Dalia Genger's motion for an order substituting her, as trustee, as plaintiff for Orly Genger's Trump Group claims, and for an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court is held in abeyance pending the Surrogate's Court's resolution of Orly Genger's petition to remove Dalia Genger as trustee of Orly Trust. (*See Genger v Genger*, interim order dated Apr. 1, 2015, index No. 113862/2010 [mot. seq. no. 2]).

JUSTICE
DATED:  Dated:  **5/7/15**                    _____
                                    J.S. **BARBARA JAFFE**
                                                *J.S.C.*

Check one:  ☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST  ☐ REFERENCE

SUPREME COURT: NEW YORK COUNTY

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 Trust, | Index No. 651089/10 |
| | (Justice Barbara Jaffe) |
| Plaintiffs, | Motion Seq. No. 42 |

-against-

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, Individually and as Trustee of THE SAGI GENGER 1993 TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,

Defendants.

SAGI GENGER, individually and as assignee of THE SAGI GENGER 1993 TRUST, and TPR INVESTMENT ASSOCIATES, INC.,

Cross-Claimants, Counterclaimants, and Third-Party Claimants,

-against-

ARIE GENGER, ORLY GENGER, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, TRANS-RESOURCES, INC., and WILLIAM DOWD,

Cross-Claim, Counterclaim and/or Third-Party Defendants.

**ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO DALIA GENGER'S MOTION TO SUBSTITUTE HERSELF AS DERIVATIVE PLAINTIFF ON BEHALF OF THE ORLY GENGER 1993 TRUST AGAINST THE TRUMP GROUP AND FOR AN ORDER DIRECTING SETTLEMENT PROCEEDS TO BE PAID INTO COURT**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

    A.   Orly's New York Action On Behalf Of Herself And Her Orly Trust ......... 2

    B.   The Many Court Recognitions That Dalia Suffers From Irreparable
       Conflicts Of Interest And Has Often Sided With Sagi Genger
       Against Orly....................................................................................... 3

    C.   The June 2013 Confidential Settlement Agreement Between The
       "AG Group" And The "Trump Group" ....................................................... 7

    D.   The Second Amended Stipulation Of Discontinuance In This Action........ 8

    E.   No Claims Remain Against The Trump Group In This Action.................. 9

    F.   The Dalia Delaware Action Against The Trump Group And August
       2013 Delaware Stipulation Dismissing Dalia's Claims Against The
       Trump Group With Prejudice ................................................................. 10

    G.   The Delaware Stipulation Works To Harm Orly And The Orly Trust
       As Dalia And Sagi Intended .................................................................. 14

ARGUMENT.................................................................................................. 16

I.     DALIA'S MOTION TO SUBSTITUTE HERSELF ON THE
       CLAIMS IN THIS CASE AGAINST THE TRUMP GROUP
       SHOULD BE DENIED ........................................................................... 16

    A.   Dalia's Motion To Substitute Fails As Moot Because There Are No
       Claims Remaining Against The Trump Group For Which Dalia
       Could Substitute..................................................................................... 16

    B.   Dalia's Motion To Substitute Fails Because Of The Delaware
       Stipulation............................................................................................ 16

    C.   Dalia's Motion To Substitute Fails Because Dalia Suffers From
       Conflicts Of Interest, Is Biased In Favor Of Sagi And Against Orly,
       And Is Otherwise Unfit To Conduct This Litigation On Behalf Of
       The Orly Trust ..................................................................................... 17

II.    DALIA'S MOTION TO HAVE THE CONFIDENTIAL
       SETTLEMENT AGREEMENT PROCEEDS PAID INTO COURT
       UNDER CPLR 2701 SHOULD BE DENIED .......................................... 18

CONCLUSION................................................................................................ 21

## TABLE OF AUTHORITIES

Page(s)

CASES

Clarke v. Greenberg,
296 N.Y. 146 (1947) ..........................................................................................21

Conforti v.Goradia,
234 A.D.2d 237 (1st Dept. 1996).........................................................................21

General Electric Co. v. Inter-America Marketing Systems, Inc.,
220 A.D.2d 307 (1st Dept. 1995)......................................................................17, 18

Genger v. Genger
120 A.D.3d 1102 (1st Dept. 2014)..........................................................................4

Genger v. Genger,
2014 N.Y. App. Div. LEXIS 5390 (1st Dept. July 24, 2014)...........................15, 16

Gusinsky v. Bailey,
2008 Misc. LEXIS 5811 (N.Y. Sup. Ct. Sept. 17, 2008).....................................21

ICN Pharmaceuticals, Inc. v. Bristol-Myers Co.,
245 A.D.2d 182 (1st Dept. 1997).........................................................................17

James v. Bernhard,
106 A.D.3d 435 (1st Dept. 2013).........................................................................18

Lade v. Levitt,
33 A.D.2d 956 (3d Dept. 1970) ...........................................................................21

Rice v. DiNapoli,
2009 NY Misc. LEXIS 1182 (N.Y. Sup. Ct. Apr. 21, 2009)...............................20

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP,
2014 U.S. Dist. LEXIS 67116 (May 15, 2014) ...................................................15

Werner v. Werner,
1972 N.Y. Misc. LEXIS 1743 (N.Y. Sup. Ct. July 6, 1972) ...............................21

STATUTES

CPLR 1021...........................................................................................................1, 18

CPLR 2701.....................................................................................................passim

# PRELIMINARY STATEMENT

Dalia Genger's ("Dalia") two motions are meritless and should be denied for a number of independent reasons.

*First*, under CPLR 1021, Dalia seeks to be substituted into this action as a derivative plaintiff to litigate any claims the Orly Genger 1993 Trust ("Orly Trust") may have in this action against the Trump Group. Dalia's "substitution motion" is moot because the Orly Trust has no existing claims against the Trump Group in this action. Even if such claims still existed, Dalia's substitution motion should be denied. CPLR 1021 exists to ensure that derivative plaintiffs with conflicts of interest may be removed, and conflict-free plaintiffs substituted. Here, Dalia's motion would achieve the opposite result because Dalia suffers from manifest conflicts of interest and improper bias. To allow her to substitute in would bring her conflicts of interest into this litigation, and place Orly Genger ("Orly") and the Orly Trust at risk. If Dalia truly believes the Orly Trust should "pick up the cudgel" against the Trump Group in this litigation, the proper course is for her to resign and let a new trustee who is conflict-free and acceptable to Orly advance those claims. See Statement of Facts and Argument, Point I.

*Second*, under CPLR 2701, Dalia seeks to have the proceeds from Orly's individual settlement with the Trump Group paid into Court, contending she has a right to seek that relief because Orly's settlement also settled Orly Trust claims. Dalia is wrong.

Dalia's request relies on ignoring the plain language of CPLR 2701 by omitting the critical phrase "which is the subject of this action" from her citation of the statute. CPLR 2701 only permits property "which is the subject of the action" to be paid into Court, yet the proceeds Dalia seeks to be placed into Court are not the subject of this action, or any other

action. For this reason and others, CPLR 2701 simply does not apply, and Dalia's effort to have

the settlement proceeds placed with the Court should be denied. <u>See</u> Statement of Facts and

Argument, Point II.

Moreover, the factual predicate of Dalia's "funds motion" is incorrect. The multi-

party confidential settlement with the Trump Group did not settle Orly Trust claims. This is

confirmed by, among other things, (i) the plain language of that Confidential Settlement

Agreement; (ii) the plain language of the Second Amended Stipulation of Settlement, which did

not dismiss any Orly Trust claims; and (iii) Dalia previously taking advantage of the fact that

Orly Trust claims were not settled to continue her Dalia Delaware Action and enter into the

Delaware Stipulation. <u>See</u> Statement of Facts and Argument Point II.

## <u>STATEMENT OF FACTS</u>

### A.   <u>Orly's New York Action On Behalf Of Herself And Her Orly Trust</u>

On July 26, 2010, co-plaintiffs Orly and Arie Genger commenced this action. <u>See</u>

Complaint [Docket No. 112]. Orly's operative complaint asserted both individual claims and

claims on behalf of the Orly Trust. Orly is the sole non-contingent beneficiary of the Orly Trust.

<u>See</u> Complaint ¶¶ 208-219. On January 2, 2013, the Court dismissed most of plaintiffs' claims

against the Trump Group entities. <u>See</u> Jan 2, 2013 Amended Decision and Order at 25-27, 28-29

[Docket No. 285]. The Court allowed plaintiffs to proceed with claims for: (i) breach of

fiduciary duty and aiding and abetting fiduciary duty against Sagi Genger ("Sagi"); and (ii)

unjust enrichment against TPR Investment Associates, Inc. ("TPR") and against Sagi. <u>Id.</u>

The Court already has ruled that Orly may properly advance claims on her own

behalf and on behalf of the Orly Trust:

> Plaintiff [Orly] argues, and none of the defendants dispute her, that as beneficiary
> of the Orly Genger 1993 Trust, she has a right to assert causes of action on behalf
> of the trust, citing *Velez v. Feinstein*, 87 AD2d 209 (1st Dept. 1982) (where trustee
> has failed to enforce a claim on behalf of the trust, the beneficiary may do so).
> She further argues that as the Orly Genger 1993 Trust is a limited partner of D&K
> Ltd. Partnership, she has the right to assert causes of action on behalf of the
> Partnership as against TPR Investment and the other defendants, citing among
> other cases, *CCG Assoc. I v. Riverside Assoc.*, 157 AD2d 435, 442 (1st Dept.
> 1990) ("[t]he right of a limited partner to bring an action on behalf of the
> partnership to enforce a right belonging to the partnership is beyond dispute") (Pl
> Memo of Law [Doc. 9:4] p.1 n.1). Defendants' arguments in opposition are not
> persuasive.

7/28/10 Decision and Order at 4 [Index No. 109749/2009; Docket No. 80]. That Orly has such

standing is law of the case.

## B.   The Many Court Recognitions That Dalia Suffers From Irreparable Conflicts Of Interest And Has Often Sided With Sagi Genger Against Orly

On January 2, 2009, Surrogate Roth, denied Orly's first application to remove

Dalia as Trustee of the Orly Trust. Surrogate Roth states that she would give Dalia the

opportunity to serve as Trustee and see what happens:

> Indeed, it appears that Dalia (who states that she is ready and able
> to act as fiduciary) has yet to assume the duties of trustee in
> deference to her daughter's position in this litigation. As a validly
> appointed trustee, she should be given the opportunity to do what
> she deems necessary to manage and protect the trust's assets.

January 2, 2009 Surrogate Decision at 7 (emphasis added) [Index No. 109749/09; Docket No.

198]. Orly has renewed her application to remove Dalia, and it remains pending in Surrogate

Court.

Since Surrogate Roth's January 2, 2009 Decision, numerous courts have

examined Dalia's actual actions as Trustee, and recognized that Dalia suffers from conflicts of

interest and is otherwise unfit to serve as Trustee. Thus, for example, the First Department held

that Dalia suffered from conflicts of interest, and placed her personal interests ahead of the Orly

Trust and Orly, benefiting herself at the expense of the Orly Trust:

> In entering into the aforementioned October 2011 and March 2012
> settlement agreements with TPR and D&K LP on behalf of the
> Orly Trust, of which she was sole trustee, Dalia had a conflict of
> interest. The new promissory notes executed by Dalia on behalf of
> the Orly Trust pursuant to the settlement agreements contained
> provisions that were plainly intended to entrench her as sole trustee
> of Orly Trust, notwithstanding the ongoing disputes and litigation
> between herself and plaintiff, the trust's beneficiary. Specifically,
> the replacement notes provided that Dalia's resignation or removal
> as trustee of Orly Trust, or the appointment of any additional
> trustee, would constitute an event of default rendering the notes
> immediately due and payable by Orly Trust. Further, the purported
> settlement of the derivative claims that plaintiff asserts on behalf of
> Orly Trust in this action – which was already pending at the time
> the settlement agreements were executed – required the court's
> approval, which was never sought. Moreover, as previously
> discussed, the settlements were entered into in violation of the
> aforementioned 2010 and 2011 injunctions. For these reasons, the
> settlements are voidable and, given the expressed intention of
> plaintiff (the beneficiary of Orly Trust) to void them, the purported
> releases they contain are not enforceable.

Genger v. Genger 120 A.D.3d 1102, 1104 (1st Dept. 2014).

This Court also recognized Dalia's conflicts of interest and collusion with Sagi

against Orly make her unfit to act for Orly's benefit:

> Additionally, Dalia, trustee of the Orly Trust, has often sided with
> her son Sagi in these actions, and if Orly is deemed to be an
> inadequate representative of the Orly Trust, and Dalia declines to
> pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be
> insulated from the prosecution of such claims. However, after
> TPR/Sagi filed this motion, the Appellate Division, First
> Department, held that Dalia had a conflict of interest in releasing

herself, as part of settlement agreements entered into in 2011 and
2012 between TPR/Sagi and herself, as trustee. It also adjudicated
the settlements, which were against Orly's interests, as void and/or
voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1st Dept 2014]).[1]
Thus, Dalia may no longer be able to serve as trustee, having failed
to disclose the conflict to her principal, Orly. And, as noted by the
First Department, Orly has petitioned the Surrogate's Court to
remove Dalia as trustee and to surcharge her. (*Id.*).

7/3/14 Decision and Order at 3-4 (emphasis added) [Index No. 109749/09; Docket No. 698].

Dalia Genger, trustee of the Orly Trust, neither filed nor joined in
the instant motion. Instead, she signed an affidavit, dated June 28,
2013, asserting that "an analysis of the claims [filed by Orly
against the Trump Group] shows that they are entirely claims of
the Orly Trust and that she has no individual rights separate
therefrom." (NYSCEF 483, ¶ 2). Dalia's assertion is not supported
or accompanied by any analysis of the subject claims, and is fatally
conclusory....And having found that "Dalia – as trustee of Orly's
Trust – had a conflict of interest in releasing herself as part of the
October 2011 and March 2012 settlement agreements [embodying
the proposed transactions]" (*Genger v Genger*, --AD3d--, 2014 NY
Slip Op 01421 *2 (1st Dept 2014), the Appellate Division throws
doubt on Dalia's standing to complain.

3/20/14 Decision and Order at 3-4 (emphasis added) [Docket No. 925].

This Court, the Delaware Chancery Court, and the District Court for the Southern

District of New York have all questioned Dalia's fitness to serve as a fiduciary for Orly, and

questioned her motivation for refusing to resign as Trustee.

THE COURT: [referring to Surrogate Roth's January 2009
decision] The Surrogate said, you know, basically she should be
given a chance to try out, in essence. That's when I reread Judge
Roth's decision that at the time of the original objection to her, or
the challenge to her, she hasn't been given a chance to serve.

---

[1]    In response to Dalia and Sagi/TPR's motions for reconsideration, the First Department replaced the referenced
decision with a September 2014 decision, which re-affirmed Dalia's conflict of interest and expanded upon its
prior ruling.

I just don't understand why somebody would want to continue to serve as the trustee of her daughter's trust when the daughter doesn't want her. Why not just say: Okay. I'm out of this. You want to have a fight with your brother, have a fight with your brother. If you want to have a fight with your father, have a fight with your father.

I mean, <u>unless there is some truth to the conspiracy theories asserted by the plaintiffs, why is she continuing to serve? Why doesn't she resign? Who needs this aggravation?</u>

8/15/12 Hearing Tr. 3:23-4:13 (Feinman, J.) (emphasis added) [Index No. 109749/09; Docket No. 318].

THE COURT: Well how can she be both? She is the trustee for the Orly Trust. Right?...And as I read Chancellor Strine's – he's chief justice down there, chief judge. As I read his remarks, he kept suggesting that she no longer should be trustee, didn't he?

4/29/14 Hearing Tr. at 27-28 (Keenan, J.) (Janovsky Aff., **Exhibit I**) <u>see also</u> 8/1/13 Hearing Tr. at 42-43 (Janovsky Aff., **Exhibit J**) (Chancellor Strine questioning Dalia's fitness to serve as trustee, where "Dalia brings a lawsuit that Orly doesn't want," where "Dalia's aligned with Sagi" and Dalia is willing to come to a since voided settlement "on terms that Orly gives up any claim that she has that Sagi didn't exactly cut the pie fairly").

Even after the Surrogate's Court directed the parties to find an alternate trustee, Dalia refused to step down as Trustee for the Orly Trust. <u>See</u> 3.12.13 Orly Letter to Court [Index No. 109749/09; Docket No. 406]. In this regard, Orly and Sagi identified a distinguished attorney – Alex Sussman – acceptable to both Orly and Sagi. Dalia, however, refused to step down unless and until she was released from all liability for her actions as Trustee (once again placing herself and her interests ahead of Orly and the Orly Trust). <u>See</u> June 2013

6

Correspondence re: Alex Sussman (Janovsky Aff., **Exhibit A**).

## C.   The June 2013 Confidential Settlement Agreement Between The "AG Group" And The "Trump Group"

On June 16, 2013, plaintiffs Arie and Orly (individually and as beneficiary of the Orly Trust) and the Trump Group defendants entered into a confidential settlement agreement, resolving the settling parties' respective claims and counterclaims against one another (the "Confidential Settlement Agreement" or "CSA").[2] As this Court has found, based on its prior *in camera* review of the CSA, "in the settlement agreement, Orly stops short of releasing derivative claims." 3/20/14 Decision and Order at 4.

The Court's ruling on the matter is correct. The CSA is executed by the "AG Group" and the "Trump Group." Confidential Settlement Agreement at 1. The AG Group includes "Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust)." Id. The Orly Trust is expressly excluded from the AG Group, and is, instead, defined as a member of the non-settling "Sagi Group." Id. at 3. No provision in the CSA provides for settlement of Orly Trust claims.

Dalia contends (Dalia Br. at 8) that Orly's agreement in the CSA to "cooperate" in any future Trump Group efforts to "cause" the Orly Trust to release its claims against them, should she be asked to do so by them (CSA, ¶ 8), is equivalent to Orly settling Orly Trust claims on behalf of the Orly Trust. "Cooperating" is not a synonym for "settling" or "releasing." More fundamentally, Dalia entirely misses the point of the "cooperation provision" – this provision further proves the CSA did not settle any Orly Trust claims. If the CSA had settled Orly Trust

---

[2] The Confidential Settlement Agreement has been filed under seal as **Exhibit K** to the Affirmation of Peter

claims against the Trump Group, Orly's "cooperation" would be entirely unnecessary, because there would be nothing to "cause" in the future. Only if the CSA did not settle and release Orly Trust claims would there be a need for Orly to "cooperate" in future Trump Group efforts to "cause" the Orly Trust claims against them to be dismissed.

Dalia's recitation of positions taken at one time by Trump Group counsel, Thomas Allingham, regarding the CSA (see Dalia Br. at 2, 7-8) is unavailing, because it contradicts the CSA's "Entire Agreement" provision. See CSA, ¶ 17. That provision makes anything written about the CSA entirely irrelevant, unless it is an instrument in writing signed by all Parties. Id. Accordingly, the language of the CSA controls. Id. In turn, the CSA's plain and unambiguous language demonstrates that the Orly Trust is not a settling party, and Orly did not settle Orly Trust claims.

## D.     The Second Amended Stipulation Of Discontinuance In This Action

On July 1, 2013, the Court signed the Second Amended Stipulation of Discontinuance. See Second Amended Stipulation of Discontinuance at 2 [Docket No. 487] ("All claims, counterclaims and third-party claims of the AG Group in this action against the Trump Group are discontinued with prejudice and without costs."). Like the CSA before it, the Second Amended Stipulation of Discontinuance carefully and expressly limited the claims discontinued by Orly to those brought by Orly "individually and as beneficiary of the Orly Trust." See generally id. It did not discontinue any Orly Trust claims. Id. Because the Orly Trust claims still existed and were not discontinued, the Second Amended Stipulation of Discontinuance also released Dalia to prosecute her previously stayed Dalia Delaware Action

Janovsky ("Janovsky Aff."), filed contemporaneously herewith.

(defined and discussed below). See id. The Dalia Delaware Action had been previously restrained by the Court as duplicative and irreparably harmful to Orly and the Orly Trust. See 10.26.11 Order To Show Cause; 11.9.11 Order To Show Cause; 4.10.12 Interim Decision [Docket Nos. 150, 165, 230].

### E.    No Claims Remain Against The Trump Group In This Action

On July 24, 2014, plaintiffs' remaining claims were dismissed on appeal to the Appellate Division, First Department.[3] As a result of the First Department's July 24, 2014 Order, plaintiffs, including the Orly Trust, have no claims in this action. As shown below, the remaining claims were dismissed because of a so-called settlement of the Dalia Delaware Action, deliberately drafted and designed by Dalia and TPR/Sagi to end the Orly Trust claims against TPR/Sagi, and ensure that over $10 million from TPR/Sagi's sale of the Orly Trust TRI Shares went to TPR/Sagi, not the Orly Trust.

On November 25, 2014, the Court entered an Order, agreed to by the remaining parties to the action, dismissing plaintiffs' operative complaint (without prejudice to plaintiffs' right to seek leave to appeal to the Court of Appeals) and severing plaintiffs' dismissed complaint from Sagi/TPR's counterclaims, cross-claims and third-party claims. See 11.25.14 Order [Docket No. 1153]. (Dalia has appealed the Court's November 25, 2014 Order, but has not yet perfected her appeal.)

On January 31, 2014, the Trump Group defendants made a motion on notice to all parties to dismiss the remaining claims against them in this action. These claims were brought

---

[3]    Plaintiffs have sought leave to appeal the First Department's decision to the Court of Appeals. Plaintiffs' motion to the Court of Appeals is *sub judice.*

by Sagi and TPR. [Docket Nos. 732-751.] By Notice dated August 23, 2014, Sagi and TPR

voluntarily discontinued claims against the Trump Group members, but not TRI. [Docket No.

1112]. By Decision and Order dated January 7, 2015, the Court dismissed all claims by Sagi and

TPR against the Trump Group and TRI. See 1.7.15 Decision and Order at 21-22 [Docket No.

1159]. At present, there are no existing claims, counterclaims, or cross-claims against the Trump

Group in this action.

F.    **The Dalia Delaware Action Against The Trump Group And August 2013 Delaware
      Stipulation Dismissing Dalia's Claims Against The Trump Group With Prejudice**

On October 4, 2011 – one day after signing a "defendant-only settlement

agreement" that violated two court orders – Dalia commenced a derivative action on behalf of

the Orly Trust in Delaware Chancery Court (the "Dalia Delaware Action"). By the Dalia

Delaware Action, Dalia sought a Declaratory Judgment that the Orly Trust (and not TPR or the

Trump Group entities) was the beneficial owner of the Orly Trust TRI Shares. See Dalia

Delaware Complaint ¶¶ 37-43 (Janovsky Aff., **Exhibit C**). By commencing her action in

Delaware, Dalia provided the Delaware Chancery Court with the personal jurisdiction over the

Orly Trust that the Chancery Court previously lacked. Id.

This lawsuit by Dalia was a transparent attempt to give the Delaware Court the

jurisdiction to apply previous adverse decisions to the Orly Trust, and find that the proceeds of

the sale of the Orly Trust TRI Shares belonged to TPR/Sagi, and not the Trust. As beneficial

ownership of the Orly Trust TRI Shares and disposition of the proceeds from the sale were at

issue in this New York action, Orly obtained two temporary restraining orders in New York state

court on October 26, 2011 and November 9, 2011 (later continued by an April 10, 2012 Interim

Decision) preventing Dalia, TPR and the Trump Group from prosecuting the Dalia Delaware

Action. See 10.26.11 Order To Show Cause; 11.9.11 Order To Show Cause; 4.10.12 Interim

Decision [Docket Nos. 150, 165, 230.] These restraints were lifted as part of Orly's individual

settlement with the Trump Group. See Second Amended Stipulation of Discontinuance at 2

[Docket No. 487].

When the restraints were lifted, Dalia (as Trustee of the Orly Trust), TPR

(controlled by Sagi), and the Trump Group, drafted and entered into an August 13 Stipulation

that was "So Ordered" by the Delaware Chancery Court (the "Delaware Stipulation"). In the

Delaware Stipulation, Dalia stipulated and agreed, on behalf of the Orly Trust, to (i) the validity

of the TPR sale of the Orly Trust TRI Shares to the Trump Group, (ii) the Trump Group's

ownership "(beneficially, of record, and otherwise)" of the Orly Trust TRI Shares, and

(iii) dismiss with prejudice the Orly Trust's claims to beneficial ownership of the Orly Trust TRI

Shares. Thus, Dalia included in the Delaware Stipulation that:

> In the action styled *TR Investors, LLC, et al.* v. *Genger*, C.A. No.
> 3994-CS (the "3994 Action"), the Court found that (i) the transfers
> in October 2004 of Trans-Resources, Inc. ("Trans-Resources")
> stock out of TPR were in violation of the March 2001 Stockholders
> Agreement among Trans-Resources, TPR, TR Investors, LLC and
> Glenclova Investment Co.; (ii) the transfers were void and the
> stock reverted to TPR, and (iii) the Trump Group had the right to
> buy all of the improperly transferred Trans-Resources stock from
> TPR. These determinations and findings were essential to the
> Court's determinations and findings in the 3994 Action.

Delaware Stipulation at ¶ 2 (Janovsky Aff., **Exhibit D**).

Dalia also included in the Delaware Stipulation that:

> The Trump Group, having closed on the purchase of the so-called
> Orly Trust Shares (representing 1102.8 shares of Trans-Resources
> stock) pursuant to and under the terms of the Side Letter

Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares if Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.

Id. at 1-2.

Finally, Dalia included in the Delaware Stipulation that:

The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice…

Delaware Stipulation at ¶ 4. This means that Dalia purported to accept the void nature of the transfer of the Orly Trust TRI Shares to the Orly Trust, the validity of the sale of those shares between TPR/Sagi and the Trump Group, and to dismiss with prejudice all Orly Trust claims against the Trump Group related to the beneficial ownership of the Orly Trust TRI Shares. See id.

Dalia now strategically contends that Orly, via the CSA, caused her to enter into the Delaware Stipulation. Dalia Br. at 2, 8. If the CSA was the supposed guiding force of the Delaware Stipulation, as Dalia now claims, one would naturally expect it to be described, or discussed somewhere in the Delaware Stipulation, but it is not even mentioned or referenced. See Delaware Stipulation (Janovsky Aff., Ex. D).

Moreover, Dalia entered into the Delaware Stipulation against Orly's express direction. Specifically, prior to its execution, Dalia's counsel, Robert Meister, wrote an August 9, 2013 letter to the Chancery Court representing that Dalia would not sign the Delaware

Stipulation unless Orly consented to its execution.  See 8/9/13 Meister Letter (Janovsky Aff.,
**Exhibit E**).  Then on August 13, 2013, Dalia's counsel provided Orly's counsel with a draft of
the Delaware Stipulation, and stated that Dalia was considering signing the stipulation on behalf
of the Orly Trust.  See 8/13/13 Meister Letter With draft stipulation (Janovsky Aff., **Exhibit F**).

By August 16, 2013 letter, Orly's counsel responded stating that the stipulation in
its current form was unacceptable to Orly, and sought Dalia's representation that she would not
sign the Delaware Stipulation without Orly's consent, as Dalia represented to the Delaware
Chancery Court.  See 8/16/13 Orly Letter (Janovsky Aff., **Exhibit G**).  Orly also submitted her
proposed changes to the Delaware Stipulation to the Delaware Chancery Court and to Dalia, who
had represented she would not sign it on behalf of the Orly Trust without Orly's consent.  See
8.26.13 Wachtel Letter (Janovsky Aff., **Exhibit H**).  Despite Dalia's representations to the Court
and her fiduciary duties to Orly as Trustee of the Orly Trust, Dalia ignored Orly's wishes and
signed the Delaware Stipulation without Orly's proposed changes, without Orly's consent, and
against Orly's instructions.

Dalia not only omits this direct evidence showing she once again ignored Orly,
but Dalia's only supposed evidence that she entered into the Delaware Stipulation at Orly's
direction is Dalia's repeated and deliberate misrepresentation of a letter sent to the Delaware
Chancery Court by Orly counsel, William Wachtel.  See Dalia Br. at 2, 8 (citing and misquoting
August 13, 2013 Wachtel Letter, attached as Ex. 5 to Dalia Motion).[4]

The Wachtel Letter did not direct the Orly Trust to do anything.  Rather, Mr.
Wachtel wrote the letter to the Delaware Court to respond to Dalia's deliberate disregard of the

_____

[4]  For the Court's convenience, the 8.12.13 Wachtel Letter is also attached as **Exhibit B** to the Janovsky Aff.

Delaware Court's directive that Dalia inform the Court "whether Dalia is willing to step out of the Trust." Wachtel Letter at 1 (citing Delaware Court). Mr. Wachtel then discussed some instances of Dalia's bias and conflicts of interest that renders her an unsuitable Trustee. Id. at 2-3. Mr. Wachtel summarized by noting that "[w]ere she [Dalia] to resign, it would instantaneously facilitate the dismissal of the last remaining Genger related case in Delaware." Id. at 1. This letter cannot possibly be read as an instruction by Orly directing the Orly Trust to do anything (except perhaps have Dalia resign as Trustee, which Dalia refuses to do). Dalia misrepresents the Wachtel letter by twice omitting the underlined portion of the above sentence.

Importantly, when Mr. Wachtel referred to the CSA in the Wachtel Letter, he confirmed that the CSA did not settle any Orly Trust claims – Orly only settled individually and in her capacity as beneficiary of the Orly Trust:

> We wish to confirm to your Honor that Orly has indeed settled all disputes between her and the Trump Group. As part of that settlement, Orly has acknowledged *individually and in her capacity as the beneficiary of her trust* that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust. Orly has not, however, abandoned her claim to the proceeds of the sale of those shares against TPR and Sagi, nor to her other damage claims against TPR and Sagi, some of which are discussed below.

Id. at 2 (italics added; underlines in original).

## G.    The Delaware Stipulation Works To Harm Orly And The Orly Trust As Dalia And Sagi Intended

Two separate courts already have found the Delaware Stipulation determined beneficial ownership of the intended Orly Trust TRI Shares (and paved the way for TPR/Sagi to claim the $10.3 million in proceeds from the sale of those shares to the Trump Group). Thus, the

District Court for the Southern District of New York (Keenan, J.) stated:

> As part of a stipulation dismissing the action in Delaware
> Chancery Court, the parties to that action -- TPR/Sagi, the Trump
> Group, and Dalia, but not Arie or Orly -- agreed that the Trump
> Group is the rightful owner of the Orly Trust Shares.

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP, 2014 U.S. Dist. LEXIS 67116,

*5-6 (May 15, 2014).  Likewise, the Appellate Division, First Department held the August 2013

Delaware Stipulation – and not the CSA – determined beneficial ownership and ended Orly's

claims to the $10.3 million in proceeds from Sagi/TPR's sale of those shares to the Trump

Group:

> Moreover, under the 2008 agreement between TPR and the Trump
> Group, the sale could only take place after a judicial determination
> that TPR is the record and beneficial owner of the Orly Trust's TRI
> shares.  When the complaint was filed, it had only been determined
> that TPR was the shares' record owner, but the Delaware Chancery
> Court has now also ruled that TPR is the shares' beneficial owner
> (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR
> Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

Genger v. Genger, 2014 N.Y. App. Div. LEXIS 5390, *13 (1st Dept. July 24, 2014).  The First

Department used that finding as a lever to dismiss all of Orly's remaining claims in this action.

See id.

It was only after Dalia secured $10.3 million for her favored son Sagi, by

"stipulating" to certain facts and "dismissing with prejudice" the Orly Trust claims against the

Trump Group, that she turned around and took the opposite position by this Motion.  Having

gone back to the Delaware Court and prosecuted her claims there until August 2013, Dalia now

claims Orly had previously settled those claims two months earlier, in the June 2013 CSA.  Dalia

performs this "switcheroo" not to protect the Orly Trust, but to harass Orly and continue her and

Sagi's campaign to ensure that, no matter what else happens, Orly is left with nothing.

**ARGUMENT**

I.    **DALIA'S MOTION TO SUBSTITUTE HERSELF ON THE CLAIMS IN THIS
      CASE AGAINST THE TRUMP GROUP SHOULD BE DENIED**

A.    **Dalia's Motion To Substitute Fails As Moot Because There Are No Claims
      Remaining Against The Trump Group For Which Dalia Could Substitute**

Because of the Delaware Stipulation engineered by Dalia, all claims by Orly in

the operative complaint were dismissed (without prejudice to plaintiffs' right to seek leave to

appeal to the Court of Appeals). See Statement of Facts, Sections E, G; Genger v. Genger, 2014

N.Y. App. Div. LEXIS 5390, *13 (1st Dept. July 24, 2014); 11.25.14 Order (dismissing

plaintiff's complaint and severing Sagi/TPR's remaining claims) [Docket No. 1153]. Thus, no

plaintiffs' claims remain against the Trump Group for Dalia to substitute into, and Dalia's

motion to substitute fails as moot.[5]

B.    **Dalia's Motion To Substitute Fails Because Of The Delaware Stipulation**

By executing the Delaware Stipulation, Dalia purported to dismiss the Orly Trust

claims against the Trump Group with prejudice. See Delaware Stipulation at ¶ 4. Dalia also

sought to incorporate in the Delaware Stipulation the prior findings of fact of the Delaware

Chancery Court (in a litigation that did not involve Orly or the Orly Trust as parties) that the

transfer of the Orly Trust TRI Shares were void, and "the Trump Group had the right to buy all

---

[5]   On January 7, 2015, this Court also dismissed all Sagi and TPR claims against the Trump Group, including TRI,
      see 1.7.15 Decision and Order at 21-22 [Docket No. 1159], eliminating all existing claims by any party against
      the Trump Group.

of the improperly transferred Trans-Resource stock from TPR." Delaware Stipulation at ¶ 1.
This all took place after the June 2013 CSA.

Having acted in Delaware on the implicit basis that the Orly Trust claims were not
settled by the CSA, Dalia cannot now properly turn around and assert the CSA settled those Orly
Trust claims. See ICN Pharmaceuticals, Inc. v. Bristol-Myers Co., 245 A.D.2d 182, 186 (1st
Dept. 1997) (holding that defendant was bound by the doctrine of judicial estoppel from taking a
position before the New York County Supreme Court that was inconsistent with a position taken
in a prior arbitration); General Electric Co. v. Inter-America Marketing Systems, Inc., 220
A.D.2d 307 (1st Dept. 1995) ("The IAS Court properly invoked the doctrine of judicial estoppel
to preclude those counterclaims...since defendant successfully advanced the diametrically
opposite position at the trial of plaintiff's claims.").

If Dalia believes in good faith that the Orly Trust has remaining claims against the
Trump Group, they cannot be advanced by her. ICN Pharmaceuticals, supra; General Electric
Co., supra. Accordingly, she should resign and let any such claims be advanced (or not) by a
new trustee.

**C.      Dalia's Motion To Substitute Fails Because Dalia Suffers From Conflicts Of
         Interest, Is Biased In Favor Of Sagi And Against Orly, And Is Otherwise Unfit To
         Conduct This Litigation On Behalf Of The Orly Trust**

Multiple courts have properly found that Dalia suffers from conflicts of interest,
has aligned herself with Sagi against Orly, and/or questioned why she does not simply resign if
she truly cared more about Orly and the Orly Trust than about herself. See Statement of Facts,
Section B. Dalia already has amply demonstrated that she cannot be trusted to serve as Orly's
fiduciary, or trusted to avoid using her position as Trustee to further harm Orly and the Orly

17

Trust. <u>Id.</u>

Ironically, <u>James v. Bernhard</u>, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dept. 2013) – the only case cited by Dalia in her brief (Dalia Br. at 4) – demonstrates precisely why Dalia should not be substituted as the plaintiff in this case. In that case Bernhard was removed as derivative action plaintiff under CPLR 1021 because "defendants have established a 'persuasive case' that 'the proper protection of the corporation's interest or the proper conduct of the litigation would be better served by the elimination or change in the identity' of the plaintiff due to a conflict of interest." 106 A.D.2d at 435 (citations omitted). To protect the corporation and ensure the litigation was conducted in good faith, a special litigation committee free from conflict was substituted for the conflicted plaintiff. <u>Id.</u> Here, Dalia seeks the exact opposite – to introduce her conflicts of interest into this litigation and place Orly and the Orly Trust at risk. CPLR 1021 does not exist for that reason, and Dalia's motion to substitute should be denied.

If Dalia truly wishes for the Orly Trust to "pick up the cudgel" against the Trump Group (Dalia Br. at 5), the proper course is for her to resign, and let Alex Sussman (or some other trustee that is conflict-free and acceptable to Orly) advance those claims, if it is appropriate for the Orly Trust to do so.

## II.   DALIA'S MOTION TO HAVE THE CONFIDENTIAL SETTLEMENT AGREEMENT PROCEEDS PAID INTO COURT UNDER CPLR 2701 SHOULD BE DENIED

Dalia claims the Orly Trust is entitled to proceeds from Orly's individual settlement with the Trump Group because the CSA settled Orly Trust claims. Dalia is wrong. <u>See</u> 3/20/14 Decision and Order at 4 [Docket No. 925] ("In the settlement agreement, Orly stops short of releasing derivative claims."). That the CSA does not settle Orly Trust claims is

18

confirmed by, among other things, (i) the plain language of the CSA; (ii) the plain language of the Second Amended Stipulation of Settlement; and (iii) Dalia taking prior advantage of the fact that neither the CSA nor the Second Amended Stipulation of Settlement settled Orly Trust claims to continue her Dalia Delaware Action and enter into the Delaware Stipulation. See Statement of Facts, Sections C, D, F, G.

Moreover, on its face, CPLR 2701 does not support Dalia's efforts to have the CSA proceeds from the CSA paid into Court. CPLR § 2701 provides:

> **When court may order disposition of property**. The court upon motion or on its own initiative with such notice as it deems proper, may order personal property capable of delivery which is the subject of the action, paid into court or delivered to such person as it may direct with such security as the court shall direct, and subject to its further direction if:
>
> 1. a party has such property in his possession, custody or control as trustee for another party or where it belongs or is due to another party; or
>
> 2. a party has such property in his possession, custody and it belongs or is due to another party where special circumstances make it desirable that payment or delivery to such other party should be withheld; or
>
> 3. the ownership of such property will depend on the outcome of a pending action and no party is willing to accept possession or custody of it during the pendency of the action.

CPLR § 2701 (emphasis added).

CPLR 2701 is narrow. It only permits property "which is the subject of the action" to be paid into Court. Id. The CSA proceeds are not the subject of this action, or any other action. Accordingly, CPLR 2701 simply does not apply. For this reason alone, Dalia's "funds motion" should be denied. Remarkably, Dalia omits the phrase "the subject of the

action" when citing CPLR 2701 on page 5 of her brief, to avoid informing the Court that there is an express "subject of the action" requirement in the statute that is fatal to her motion.

Not only must the property at issue be "the subject of the action," but a party must also fit within one of the three subdivisions of CPLR 2701. Dalia's motion does not. For example, each subdivision speaks in terms of "a party." The Orly Trust, however, is no longer a party to this action. All of plaintiffs' claims have been dismissed, and Sagi and TPR have bought no claims against the Orly Trust. See Statement of Facts, Section E.

Further, Orly is not holding any CSA proceeds "as trustee for another party" nor do any of those funds "belong or is due" to Dalia or the Orly Trust (CPLR 2701(1)); Dalia does not identify any "special circumstances" making it desirable that the CSA proceeds be paid into Court (CPLR 2701(2)); and there is no question that the "ownership of the settlement funds" will not "depend on the outcome of a pending action" (CPLR 2701(3)), particularly since the action into which Dalia appears to want to insert herself no longer exists.

For each of these reasons, CPLR§ 2701 is inapplicable, and cannot serve as a legal basis for the exceptional relief Dalia seeks – to force the AG Group to pay the CSA proceeds into Court.

The four CPLR 2701 cases cited by Dalia (Dalia Br. at 6) show Section 2701 is meant for those limited instances where (i) there is a monthly stream of ongoing payments, (ii) there is no question that those payments belong to either plaintiff or defendant, and (iii) those payments are the "subject of the action." Thus, in Rice v. DiNapoli, 2009 NY Misc. LEXIS 1182 (N.Y. Sup. Ct. Apr. 21, 2009), Lade v. Levitt, 33 A.D.2d 956 (3d Dept. 1970), and Werner v. Werner, 1972 N.Y. Misc. LEXIS 1743 (N.Y. Sup. Ct. July 6, 1972), the State Comptroller

paid monthly death benefits into Court until suits between widows and ex-spouses regarding who owned those death benefits could be decided.  Similarly, in <u>Conforti v.Goradia</u>, 234 A.D.2d 237 (1st Dept. 1996), rent was paid into Court until resolution of a lawsuit between landlord and tenant involving that rent.[6]

Here, there is no monthly payment stream, neither Dalia nor the Orly Trust has any real right to any CSA proceeds, and there is no action pending where Dalia or the Orly Trust claims ownership of the CSA proceeds.  There is only a moot motion improperly brought in an action that concerned other matters.

## CONCLUSION

For each of the foregoing reasons, Orly respectfully requests the entry of an Order (i) denying Dalia's CPLR 1021 motion to substitute herself as derivative plaintiff regarding Orly Trust claims against the Trump Group in this action; (ii) denying Dalia's CPLR 2701 motion to have the Confidential Settlement Agreement proceeds paid into Court; and (iii) granting Orly such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          February 13, 2015                    ZEICHNER ELLMAN & KRAUSE LLP

                                               By:/s/Peter Janovsky_____
                                                  Yoav M. Griver
                                                  Peter Janovsky
                                                  Bryan D. Leinbach
                                                  Attorneys for plaintiff Orly Genger
                                                  1211 Avenue of the Americas
                                                  New York, New York 10036
                                                  (212) 223-0400

---

[6]   The other two cases cited by Dalia at p. 6 of her brief – <u>Gusinsky v. Bailey</u>, 2008 Misc. LEXIS 5811 (N.Y. Sup. Ct. Sept. 17, 2008) and <u>Clarke v. Greenberg</u>, 296 N.Y. 146 (1947) – do not even concern or address CPLR 2701. <u>Gusinsky</u> concerns the requirement that a derivative settlement be approved by the Court. Here, the Confidential Settlement Agreement did not require court approval because it did not settle derivative claims.  The court in <u>Clarke</u> held proceeds from settlement of a pure shareholder derivative lawsuit belonged to the company.  In that case, however, plaintiff brought no individual claims on his own behalf, and only settled derivative claims.

20-01187-jlg   Doc 1-48   Filed 06/20/20   Entered 06/20/20 20:19:48   No. part 50
Case 1:14-cv-05683-KBF   Document 135   Filed 03/17/15   Page 1 of 2
Pg 143 of 150

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  March 17, 2015

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X
SAGI GENGER,                                    :      14-cv-5683 (KBF)
                                                :
                              Plaintiff,         :
                                                :      ECF Case
                  -against-                     :
                                                :      [PROPOSED]
ORLY GENGER,                                    :      **AMENDED JUDGMENT**
                                                :
                              Defendants.        :
------------------------------------------------------------------ X

      **WHEREAS** the above-captioned action having come before this Court, and the matter

HAVING COME BEFORE THE Honorable Katherine B. Forrest, United States District Judge,

the Court, on January 5, 2015, having rendered its Opinion and Order granting Sagi Genger's

("Sagi") motion for summary judgment, denying Orly Genger's ("Orly") motion for summary

judgment, denying as moot Orly's motion to disqualify and all pending motions in limine, and

directing the Clerk of Court to terminate this action, and the Court on March 9, 2015 having

rendered its Opinion and Order awarding Sagi $150,059.01 in attorneys' fees, it is

      **ORDERED, ADJUDGED AND DECREED**:

      1.     That for the reasons stated in the Court's Opinion and Order dated January 5,

2015, Opinion and Order dated January 23, 2015 and addition submissions to the Orders and

Judgments Clerk hereto, Sagi's motion for summary judgment is granted; Orly's motion for

summary judgment is denied; all other pending motions are denied as moot;

      2.     That for the reasons stated in the Court's Opinion and Order dated March 9, 2015,

Sagi is entitled to $150,059.01 in attorneys' fees and costs;

1

20-01187-jlg   Doc 1-48   Filed 06/20/20   Entered 06/20/20 20:19:48   NoR part 50
Case 1:14-cv-05683-KBF   Document 133   Filed 03/17/15   Page 2 of 2
Pg 144 of 150

3.      Sagi is hereby awarded $100,000 in base damages, plus statutory interest in the amount of $7,989 pursuant to CPLR Article 50 at 9% per annum from February 17, 2014 through entry of the Amended Judgment, and $150,059.01 in attorneys' fees and costs, for a total judgment of $258,048.01.

Dated: New York, New York
        March 17, 2015

                                SO ORDERED.

                                _____K. B. Forrest_____  03/17/2015
                                        KATHERINE B. FORREST
                                        United States District Judge

2

STATE OF NEW YORK,                                         AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.                              BY UPS GROUND COMMERCIAL DELIVERY

   JOHN D. DELANEY, being duly sworn, says:  that I am over the age of eighteen years, and am not a party herein, and reside in Jersey City, New Jersey and that on the 6th day of October, 2015, I served a true copy of the within:

  **ORLY GENGER'S RESPONSE TO DALIA'S UNAUTHORIZED**
  **SUPPLEMENTAL FILING ON HER ALREADY FULLY**
  **SUBMITTED MOTION TO DISMISS**

  **AFFIRMATION OF BRYAN D. LEINBACH**
  **with Exhibits;**

by delivering into the exclusive care and custody of a representative of United Parcel Service for ground commercial delivery a true copy of the papers to the attorneys hereinafter named at the places hereinafter stated, which was properly enclosed in a pre-paid addressed wrapper of United Parcel Service and left in the custody of a representative of UPS to be sent by ground commercial delivery, directed to said attorneys at their last known addresses given below:

  Steven Riker, Esq.
  *Guardian Ad Litem*
  LAW OFFICE OF STEVEN RIKER
  110 East 59th Street, 23rd Floor
  New York, New York 10022

  John G. Dellaportas, Esq.
  MORGAN, LEWIS & BOCKIUS LLP
  101 Park Avenue
  New York, New York 10178

  Robert Meister, Esq.
  PEDOWITZ & MEISTER, LLP
  570 Lexington Avenue, 18th Floor
  New York, New York 10022

                      JOHN D. DELANEY

Sworn to before me this
_9th_ day of October, 2015

    NOTARY PUBLIC

ANTHONY ROSARIO
Notary Public, State of New York
No. 01RO6212071
Qualified in Bronx County
Commission Expires 10/05/20_17_

#829899

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No.:    0017/2008

In the Matter of the Application of Orly
Genger to Remove Dalia Genger  as
Trustee of the Orly Genger 1993 Trust
Established on December 13, 1993, by

ARIE GENGER,

Grantor,

## AFFIRMATION OF BRYAN D. LEINBACH

## ZEICHNER ELLMAN & KRAUSE LLP
### 1211 AVENUE OF THE AMERICAS
### NEW YORK, NEW YORK 10036
### TEL: (212) 223-0400
### FAX: (212) 753-0396
### www.zeklaw.com

New York County Surrogate's Court
MISCELLANEOUS DEPT.

OCT 2 0 2015

FILED
Clerk

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X    File No. 0017/2008

In the Matter of the Application of ORLY GENGER,                **AFFIRMATION OF**
as a person interested, for the removal of DALIA               **STEVEN RIKER, ESQ.**
GENGER, as Trustee of the Orly Genger 1993 Trust              **IN OPPOSITION TO**
pursuant to SCPA §711(11)                                      **THE SAGI TRUST'S**
                                                               **MOTION TO DISMISS**

-----------------------------------------------------------------------X

      STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the State

of New York, hereby affirms the following to be true subject to the penalties of perjury:

      1.     I was appointed by an Order of the Hon. Nora S. Anderson to serve as the

Guardian ad Litem of unborn children of Petitioner Orly Genger ("Orly") in this miscellaneous

proceeding.

      2.     I submit this affirmation in opposition to the instant motion of the Sagi Genger

1993 Trust (the "Sagi Trust"), which seeks to dismiss Orly's Third Amended Verified Petition,

dated October 15, 2012 (the "TAP").

## BACKGROUND

      3.     Orly is the primary beneficiary of an irrevocable inter vivos trust established by

her father, Arie Genger ("Arie"), on or about December 13, 1993 (the "Orly Trust"). Orly seeks

the removal of her mother, Dalia Genger ("Dalia"), as trustee of said Trust.

      4.     The Orly Trust provides for discretionary principal distributions to Orly for life,

with the remainder to her descendants (i.e., my wards), or if she has no descendants, to a trust

Arie established for the benefit of Orly's brother, Sagi Genger (the "Sagi Trust").

      5.     The Sagi Trust now seeks to dismiss the TAP on three grounds, namely that: 1)

the TAP fails to state a valid claim for the removal of Dalia, as trustee; 2) the TAP is based upon

Orly's allegedly false statement concerning her lack of a relationship with the proposed successor

trustee; and 3) Orly is allegedly exploiting this proceeding to delay the determination of Dalia's

application for the return of $32.2 million to the Orly Trust that Orly received in settlement of an

action in Supreme Court, New York County.

## DISCUSSION

### A.    **Allegations in TAP**

6.      Pursuant to the TAP (and the opposition papers submitted by Orly on this

motion), Dalia has purportedly colluded with her son – Sagi – to loot the Orly Trust of its

interests in two closely-held Genger family businesses – TPR Investment Associates, Inc.

("TPR") and Trans-Resources, Inc. ("TRI").

7.      Dalia has purportedly engaged in such action as a form of retribution to her

daughter, Orly, who took the side of her father, Arie, during his divorce from Dalia (while Sagi

took the side of his mother, Dalia).  As such, it is alleged that Dalia, in concert with Sagi, has

breached her fiduciary duties as trustee of the Orly Trust.

8.      By way of example and not limitation, it is alleged that Dalia failed to inform, and

affirmatively concealed from, Orly, an alleged "sham" foreclosure sale by Sagi of the Orly

Trust's stock interests in TPR. It is also alleged that Dalia attempted to dissipate the Orly Trust's

TRI Shares by commencing a wasteful action that seeks declaratory relief with respect to the

beneficial ownership of the Orly Trust's TRI Shares in the Delaware Chancery Court,

notwithstanding that said court already ruled against the Orly Trust in holding that TPR is the

beneficial owner of the Orly Trust's TRI Shares.

9.      Additionally, it is alleged that Dalia entered into certain Secret Agreements (as

2

defined in the TAP) on behalf of the Orly Trust, without notice to Orly, and as such, has
subjected the trust's assets to being foreclosed.

        B.      **The Liberal Construction to Be Afforded a Petition on a CPLR 3211 Motion**

        10.      It is axiomatic that on a motion to dismiss pursuant to CPLR 3211, the Surrogate
must afford the petition a liberal construction and "determine only whether the facts as alleged fit
within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 (1994)). "Whether a
[petitioner] can ultimately establish [his or her] allegations is not part of the calculus" (*EBC I,
Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19) (2005); *see also Lawrence v Graubard Miller*, 11
NY3d 588, 591 (2008)(holding that "[o]n a motion to dismiss a petition we, of course, must
accept the facts alleged in the petition as true, petitioner must be afforded every possible
favorable inference, and we must determine whether the facts alleged by petitioner fit within any
cognizable legal theory")).

        11.      Affidavits submitted by a respondent will almost never warrant dismissal under
CPLR 3211 unless they "establish conclusively that [petitioner] has no [claim or] cause of
action" (*Lawrence v Graubard Miller*, 11 NY3d 588, 591 (2008)(*quoting Rovello v Orofino
Realty Co.*, 40 NY2d 633, 636 (1976)).

        C.      **The Sagi Trust Has Not Met its Burden of Proof on this Motion**

        12.      In light of this standard, it is respectively submitted that The Sagi Trust has not
met its burden of proof on this motion. The facts, as alleged by Orly, if true, would support a
claim of, <u>inter alia</u>, breach of fiduciary duty. Additionally, it is respectfully submitted that the
other grounds stated for dismissal of the TAP – based upon Orly's allegedly false statement
concerning her lack of a relationship with the proposed successor trustee and her alleged

exploitation of this proceeding – do not bear on whether a claim has been stated in the TAP.

13.    Indeed, given that the Court, on this motion, must accept the facts as alleged in the TAP as true, and that Orly must be afforded every possible favorable inference, the potential credibility issues raised on this motion do not provide a basis, at this juncture, for the dismissal of the TAP.

14.    What's more, the support offered on the motion to dismiss by The Sagi Trust, which includes an attorney's affirmation and trial testimony, are of minimal, if any, probative value.

15.    Indeed, it is well settled that an attorney's affidavit or affirmation that is not based upon personal knowledge of the facts has no probative value and should be disregarded (*Israelson v. Rubin*, 20 A.D.2d 668 (2nd Dep't 1964).

16.    Furthermore, while the Sagi Trust does not specify the provision(s) of CPLR 3211 upon which its motion to dismiss is based, to the extent that it seeks to rely upon the transcript of trial testimony as documentary evidence, it should be noted that neither trial nor deposition testimony are considered documentary evidence within the intendment of CPLR §3211(a)(1) (*Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.,* 10 AD3d 267, 271 (1st Dep't 2004).

17.    Thus, it is respectfully submitted that the Sagi Trust has not proffered proper or sufficient evidence to "establish conclusively that [petitioner] has no [claim or] cause of action" (*Lawrence v Graubard Miller*, 11 NY3d 588, 591 (2008)(*quoting Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 (1976)).

4