*Wixon Jewelers, Inc.*, 919 N.Y.S.2d 151, 152 (1st Dep't 2011) (holding that a party that repudi-ates or breaches a contract cannot then claim the benefits of that contract); *see also PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1014-15 (Del. Ch. 2004).

In this connection, the members of the TPR Group are indistinguishable. The TPR Group repeatedly state that they are not a "group" and that the Sagi Trust and TPR are "distinct enti-ties." (Opp'n Br. at 5). These arguments should lead the Court to question plaintiffs' credibility generally. One member of the TPR Group, Sagi, admittedly controls the other member of the group, TPR. *See TR Investors, LLC v. Genger*, 2013 WL 603164, at *5 ("Sagi had purchased control of TPR from his mother, Dalia, with whom he was aligned."). It also bears mentioning that the third member of the TPR Group, the Sagi Trust (of which Sagi is the primary beneficiary and the representative by assigment of its claims), is not a party to this lawsuit. Rather, Sagi (who participated in the negotiation of the Stockholders Agreement and signed the transfer doc-uments on behalf of TPR) claims that he is suing personally on the basis of an unspecified "writ-ten assignment" from the Sagi Trust (Compl. ¶ 3) – although the assignment was not proffered in support of the Complaint or in this Opposition Brief.[6] Even if it were a party to this action, the Sagi Trust's alleged rights and injury in this litigation also arise entirely out of the TPR Group's wrongdoing – *i.e.*, TPR's impermissible transfer of shares. (Opp'n Br. at 19).

---

[6] Although granting the motion to dismiss will moot this issue for the Trump Group, it bears noting that the Second Circuit has held that even though clients may give informed consent, it "has required that the court must be satisfied that the client 'knowingly and intelligently wishes to proceed with joint representation.'" *Oneida of Thames Band v. State of N.Y.*, 757 F.2d 19, 22 (2d Cir. 1985). At the very least, recognizing the TPR Group's pro-pensity to revisit long-settled issues that had been resolved with their consent (*i.e.*, the sale by TPR of the Sagi Trust shares was on terms that were "fair, reasonable and acceptable"), the Trump Group would be "entitled to the assur-ance of an on-the-record consent sufficient to preclude any subsequent challenge to a judgment by either [client] because of [the] joint representation." *Id.* (suggesting trial court "ascertain in open court . . . that each client under-stands the potentially adverse nature of the claims and nonetheless prefers to be jointly represented").

II.    **THE COMPLAINT FAILS TO STATE ANY CLAIM FOR BREACH OF FIDUCIARY DUTY OR AIDING AND ABETTING SUCH A BREACH.**

The Trump Brief conclusively demonstrated that the Complaint failed to state a claim against Trans-Resources for breach of fiduciary duty and aiding and abetting alleged breaches of fiduciary duty. (Trump Br. at 16-17). Specifically, with respect to the aiding and abetting portion of the TPR Group's claims, the Trump Group showed that, even assuming Arie and Dowd were acting in some capacity for Trans-Resources (which they were not) when Arie orchestrated the 2004 Transfers in order to resolve his marital issues and walked away from the Funding Agreement negotiations, Trans-Resources still cannot be liable for breaching any fiduciary duty or aiding and abetting a breach of fiduciary duty. (Trump Br. at 17). This Court has already held (in dismissing Arie's breach of fiduciary duty claims against TPR) that a corporate entity (as opposed to its directors or officers) owes no fiduciary duties to its stockholders. (*Id.*) And the TPR Group cannot circumvent this well-established rule by the transparent expedient of pleading that Trans-Resources aided and abetted Arie and Dowd in breaching their duties to the Trans-Resources purported stockholders. (*Id.*)

In opposition, the TPR Group abandon their claim for direct breach of fiduciary duty and concede there can be no aiding and abetting claim grounded on Arie's violation of his duties as a director or officer of Trans-Resources. (Opp'n Br. at 21-22). In so conceding, the TPR Group acknowledge that aiding and abetting claims are "limited to those cases where a plaintiff alleges only that a defendant corporation aided and abetted a breach of fiduciary duty owed by that corporation's directors or officers as such" – and then argues that Arie owed duties in other capacities. (Opp'n Br. at 21-22). Specifically, the TPR Group argue that (i) "Arie owed the Sagi Trust a fiduciary duty as a co-shareholder in TRI" in a "close corporation"; (ii) "as the Sagi Trust's proxy holder, Arie had 'superior knowledge of essential facts'" rendering non-disclosure inherently unfair; and (iii) Arie had a familial fiduciary duty or "acted . . . beyond the scope of his

agency," which "[i]f true, [means] TRI aided and abetted those wrongful acts as well." (Opp'n Br. at 22). None of these ever-changing arguments pass muster. *Cf. TR Investors, LLC v. Genger*, 2010 WL 2901704, at *12 (describing the Trump Group's efforts to address "ever-changing arguments as playing a game of 'Whack-a-Mole'").

*First and foremost*, Arie could not possibly have owed any duty as a "co-stockholder," because Arie was never a stockholder of Trans-Resources. The purported transfers to him were void. (*See* Dellaportas Aff. Ex. I, ¶ 4-5). And even if he had been a stockholder, Trans-Resources is not a "close corporation" of the kind where co-stockholders may owe mutual duties – as opposed to a "closely-held" corporation, a different animal – as the TPR Group surely knows. A "close corporation" is a special type of entity that requires specific provisions in the corporation's charter contained in 8 *Del. C.* § 342, which are nowhere to be found in the Trans-Resources charter (and are not alleged to be). *See Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 451 (Del. Ch. 2011) (noting that the company "was simply a closely held corporation in the generic sense").

*Second*, the TPR Group offer no authority for the proposition that Arie, as a purported proxy holder, owed a duty by virtue of any "superior knowledge of essential facts render[ing] non-disclosure inherently unfair." (Opp'n Br. at 22). Indeed, in the only case cited by the TPR Group in support of their position, the Appellate Division ***dismissed*** the plaintiff's claims, holding that "there was no duty to disclose." *Barrett v. Freifeld*, 908 N.Y.S.2d 736, 738 (2d Dep't 2010) (cited in Opp'n Br. at 22).

*Third*, if someone happens to be an executive, but breaches a duty solely in his personal capacity or "outside the scope of his agency," the corporation the executive serves cannot be held liable – precisely because the executive is acting outside the scope of his employment. *See Arnold v. Soc'y for Sav. Bancorp., Inc.*, 678 A.2d 533, 539 (Del. 1996) (rejecting argument that corporate entity could be liable for the actions of its directors because, among other things,

"[d]irectors, in the ordinary course of their service as directors, do not act as agents of the corpo-

ration. . . .") (citations omitted); *see also McArthur v. J.M. Main St., Inc.*, 847 N.Y.S.2d 233, 234

(2d Dep't 2007) (dismissing action to recover for alleged wrongs determined, as a matter of law,

to be outside scope of the employment). The TPR Group offer no case law or other authority

that would allow them to sidestep this hornbook rule by pleading alleged non-corporate fiduciary

duties, and then claiming that the corporation aided and abetted a breach by the executive of

those duties.

In this respect, the Opposition Brief improperly relies on allegations that appear nowhere

in the Complaint, and are raised here for the very first time. For instance, the TPR Group argue

– without citation to the Complaint – that "Arie was aware for months that the Trump Group was

about to foreclose on the Sagi Trust Shares, and yet he actively took steps to conceal this infor-

mation from Cross-Claimants, and indeed tried to misappropriate the Sagi Trust Shares for his

own benefit." (Opp'n Br. at 22). Also without citation to the Complaint, the TPR Group claim

that "[Trans-Resources'] CEO Dowd and its attorney Lentz actively collaborated with Arie on

his 'shock and awe' scheme against Sagi" and conclude (without citation) that "Arie could not

have gotten away with breaching these duties without the substantial assistance of TRI, including

its CEO Dowd. . . ." (Opp'n Br. at 22-23). In fact, Lentz was *not* acting as company counsel;

he was acting as Arie's personal counsel. *See* Ex. 2, *TR Investors, LLC v. Genger*, C.A. No.

3994-CS, Tr. Rul'g at 4-5 (Del. Ch. Sept. 18, 2009) ("I don't believe a reasonable reading of the

document permits of the construction that the lawyer involved was representing anyone other

than Mr. Genger personally. This is not at all written in a way that suggests that it is for the ben-

efit of the entity and all of its stakeholders. It is entirely written as a partisan piece of strategic

advice.") (emphasis added). And, Dowd – who the TPR Group acknowledges was Arie's "'loyal

subordinate'" – also was acting on behalf of Arie's personal interests and not for the benefit of

Trans-Resources. (*See* Opp'n Br. at 22 (citing *TR Investors, LLC v. Genger*, 2010 WL 2901704, at *7).

Even were these newly minted assertions accurate (they are not), they must be ignored. *See MediaXposure Ltd. (Cayman) v. Omnireliant Holdings, Inc.*, 918 N.Y.S.2d 398, 2010 WL 4225939, at *5 (N.Y. Sup. Ct. Oct. 25, 2010) (TABLE) (denying plaintiffs' attempt "to amend the complaint through an opposition brief, which is not permissible. . . ."); *see also Hicinbothem v. Natural Golf Corp.*, 697 N.Y.S.2d 760, 761 (3d Dep't 1999) (affirming dismissal where plaintiffs relied on allegation made in their opposition brief but not the complaint).

## III.   THE COMPLAINT FAILS TO STATE CLAIMS FOR BREACH OF THE STOCKHOLDERS AGREEMENT.

In their opening brief, the Trump Group established that the TPR Group have no standing to enforce the Stockholders Agreement and have not sufficiently pleaded a cause of action for breach of the Stockholders Agreement. (*See* Trump Br. at 17-22). In the Opposition Brief, the TPR Group do not rebut that the Sagi Trust lacks standing, misreads the Stockholders Agreement as a matter of law and fails to provide any causal link between the alleged breaches of Sections 1.5, 2.2 and 2.4 of the Stockholders Agreement and its conclusory claims of damages.

*First*, the TPR Group improperly suggest that the Sagi Trust has standing under Section 6.2 of the Stockholders Agreement because it is "binding upon, and shall inure to the benefit of, the parties hereto, their legal representatives, and transferees in accordance with this Agreement, except as otherwise set forth herein." (Opp'n Br. at 23). But the Sagi Trust is neither a party to the Stockholders Agreement, nor a Permitted Transferee therein, and because the purported transfer to the Sagi Trust was void, it never became a stockholder. (*See* S.A. § 2.1; Dellaportas Aff. Ex. I, ¶ 4-5).

*Second*, the TPR Group cite language from the introductory section to the Court of Chancery's July 2010 opinion for their claim that Arie Genger personally, and not TPR, breached the

Stockholders Agreement. (Opp'n Br. at 23-24). This argument further reflects a willingness to

misstate – and even ignore – that court's findings that TPR breached the agreement. (*See, e.g.*,

Compl. ¶ 17: noting "***TPR*** agreed to proceed with the 2004 Transfers"). *See also TR Investors,*

*LLC v. Genger*, 2013 WL 603164, at *1 ("[T]he transfer of the Trans-Resources stock out of

TPR *violated the terms of the Stockholders Agreement that TPR had signed* with the Trump

Group.") (emphasis added).

    *Third*, the Opposition Brief reiterates the conclusory allegation that "TRI . . . breach[ed]

the Stockholders Agreement" by not providing "information" about the Funding Agreement.

(Opp'n Br. at 23-24). But the Stockholders Agreement on its face limits any disclosure obliga-

tions under Section 1.5 to only three types of "financial information": (i) "annual, quarterly and

monthly Company financial statements"; (ii) "Company projections"; and (iii) "material reports

from the Company to TPR regarding the Company's performance or prospects." (S.A. § 1.5).

No matter how one parses the language of Section 1.5, the proposed Funding Agreement and re-

lated negotiations do not fall within any of these limited categories. The proposed Funding

Agreement was not a "financial statement" for which "information" was required; it did not con-

tain "Company projections"; and it was not a "material report" sent to TPR concerning "the

Company's performance or prospects." (*Cf.* S.A. § 1.5).

    The TPR Group cannot rewrite the contract to manufacture a breach for non-disclosure of

a non-existent agreement. The plain meaning of the Stockholders Agreement controls, and under

New York law, where, as here, "the agreement was negotiated by sophisticated and well-

counseled parties, courts are 'extremely reluctant to interpret an agreement as impliedly stating

something which the parties have neglected to specifically include . . . .'" *Worcester Creameries*

*Corp. v. City of N.Y.*, 861 N.Y.S.2d 198, 201 (3d Dep't 2008) (citation omitted). Thus, there

could be no breach by Trans-Resources for non-disclosure, even if TPR had been a stockholder.

IV.   **THE COMPLAINT FAILS TO STATE A CLAIM AGAINST TRANS-RESOURCES FOR TORTIOUS INTERFERENCE WITH THE TRANSFER AGREEMENT.**

In the Trump Brief, the Trump Group established that (i) the Sagi Trust cannot recover for tortious interference of contract where the underlying contract is void, and (ii) the Complaint does not credibly allege the elements of a claim for tortious interference with a contract. (Trump Br. at 22-23).

A tortious interference claim must allege (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the third party's breach of the contract without justification, (4) actual breach of the contract by the third party, and (5) resulting damages. *See Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996). (*See also* Trump Br. at 23-24).

The Delaware courts ruled that the 2004 transfers are void. Therefore, the Transfer Documents and 2004 Voting Trust Agreements are also void and unenforceable. (Rev. Fin. J. ¶¶ 10, 12, 14). Void agreements are a legal nullity incapable of being breached, *see 420 E. Assocs. v. Kerner,* 438 N.Y.S.2d 316, 318 (1st Dep't 1981) (quoting 9 N.Y. Jur., Contracts § 7) ("A void contract is no contract at all; it binds no one and is more a nullity."), and, therefore, cannot support a tortious interference claim.

The TPR Group also have never pleaded that the Transfer Agreement was enforceable, and it is black-letter law there is no cause of action for tortious interference with unenforceable contracts. *See Nixon Peabody LLP v. de Senihles, Valsamdidis, Amsallem, Jonath, Flaicher Assocs.,* 873 N.Y.S.2d 235, 2008 WL 4256476, at *10 (N.Y. Sup. Ct. 2008) (TABLE) ("These allegations would not state a cause of action for tortious interference with either existing or prospective contractual or economic relations because the July 2007 agreement is unenforceable . . . ."); *Savannah Bank*

*v. Sav. Bank of Fingerlakes,* 691 N.Y.S.2d 227 (4th Dep't 1999) (accord); *Jaffe v. Gordon,* 658

N.Y.S.2d 612 (1st Dep't 1997) (accord).[7]

In the Opposition Brief, the TPR Group object to the Trump Group's argument that

Article 10 of the Stock Purchase Agreement provides an acknowledgment that the 2004 Trans-

fers might not be valid. (Opp'n Br. at 26). The Court need not take the Trump Group's word for

it; the Delaware Supreme Court has so held. (*See* Sup. Op. at 196 (noting, in Article 10, "both

the purported transferor (TPR) and the purported transferee (the Sagi Trust) agreed on a mecha-

nism whereby the Trump Group's share acquisition would be fully protected if the 2004 Trans-

fers were determined to be void")).

For the foregoing reasons, and those in the Trump Brief, the claim for tortious interfer-

ence should be dismissed.

## V.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST TRANS-RESOURCES FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS.

In the Trump Brief, the Trump Group explained that "[a] claim for tortious interference

with prospective business advantage must allege that: (a) the plaintiff had business relations

with a third party; (b) the defendant interfered with those business relations; (c) the defendant

acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there

was resulting injury to the business relationship." (Trump Br. at 25). Moreover, "[w]here there

has been no breach of an existing contract, but only interference with prospective contract

rights ... plaintiff must show more culpable conduct on the part of the defendant." (Trump Br. at

25). The Trump Brief demonstrated that the TPR Group failed to allege these elements ade-

quately because the Sagi Trust and the Trump Group had no business relations before August 21,

---

[7]    The TPR Group's only cited authority, *DePetris & Bachrach, LLP v. Srour*, 898 N.Y.S.2d 4, 7 (1st Dep't 2010), supports the Trump Group's position. The *Srour* court held that a claim for tortious interference with a contract will fail in the absence of a viable contract. *Id.*

2008; the TPR Group did not allege that the Trump Group acted with the "sole purpose of harming" the TPR Group; and the TPR Group could not claim that it suffered an injury to any relationship with the Trump Group, given that the Trump Group engaged in business relations with the TPR Group only after the proposed Funding Agreement did not materialize. (Trump Br. at 25-27).

In response, the TPR Group maintain that, but for Trans-Resources' "wrongful conduct," the Trump Group and the Sagi Trust "would have remained co-owners." (Opp'n Br. at 26). But such unsupported speculation cannot support a claim. *See Procapui-Productores de Camaroes de Icapui Ltda. v. Leyani*, No. 07-CV-6627 (BSJ), 2010 WL 2720584, at *2 (S.D.N.Y. June 22, 2010) ("A court need not defer to sweeping and unsupported allegations and conclusions" in assessing adequacy of complaint). Indeed, the portion of Mark Hirsch's testimony cited by the TPR Group undercuts any assertion that the Sagi Trust would have remained a co-owner. (Opp'n Br. at 8). At the time the proposed Funding Agreement was being discussed, everyone recognized that the Trump Group could exercise their purchase rights, which is evidenced by Arie's statement to the Trump Group, cited by TPR, that "it's even a better idea if you give me an option to buy whatever shares [you] end up getting from Sagi." (Opp'n Br. at 8 (quoting Dellaportas Ex. A at 18)). The TPR Group also assert that as of August 6, 2008, "this deal was still in place." (*Id.* at 8 (citing Dellaportas Ex. X)).

In any event, the TPR Group's rank speculation is also fundamentally implausible, given that the Stockholders Agreement was designed to prevent exactly what the TPR Group suggest, without support, would have occurred: the Trump Group's being forced to accept Sagi or his affiliates as co-owners of Trans-Resources. It is illogical to suggest that Trans-Resources could now be liable to the TPR Group for somehow failing to accommodate the exact state of affairs that the parties to the Stockholders Agreement, including TPR, contracted to avoid.

21

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTRIBUTION

The Trump Brief established that the TPR Group have no basis for a claim of contribution against the Trump Group and Trans-Resources. (Trump Br. at 27-28). Arie and Orly settled with the Trump Group and Trans-Resources in June 2013. (*Id.* at 27). In connection with that settlement, on July 1, 2013, the Court entered the Second Amended Stipulation of Discontinuance with Prejudice. (*Id.* at 27-28). The Second Amended Stipulation of Discontinuance constitutes a release of all claims between the settling parties within the meaning of *General Obligations Law* § 15-108. (*Id.* at 28).

Nevertheless, the members of the TPR Group argue that they remain entitled to contribution for a subset of claims brought by Arie and Orly prior to the settlement against Trans-Resources and the Trump Group, and for unjust enrichment claims against TPR and Sagi. (*See* Opp'n Br. at 28). They are wrong. N.Y. Gen. Oblig. § 15-108(b) relieves an alleged tortfeasor "from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules" when such alleged tortfeasor has settled with any injured parties. (*See also* Trump Br. at 28-29). In the face of this provision, the TPR Group attempt to argue that "[t]he 'unjust enrichment' [claim that] Arie and Orly were asserting against [Trans-Resources] and the Trump Group" was separate from the "surviving 'unjust enrichment' claim." (Opp'n Br. at 29). In actuality, there was ***only one count of unjust enrichment*** brought by Arie and Orly against the Trump Group, Trans-Resources and members of the TPR Group. *See* Third Amended and Supplemental Complaint, *Genger v. Genger*, Index No. 651089/2010 (N.Y. Sup. Ct. Sept. 20, 2011) [D.I. 112].

The TPR Group also argue that they remain entitled to contribution for certain claims brought against TPR and Sagi. Despite failing to cite any binding agreement or decision, the TPR Group suggest for the first time that the confidential settlement agreement ***might*** only dismiss Orly's individual claims against the Trump Group, but not resolve the Orly Trust's claims

against the Trump Group and the TPR Group. (Opp'n Br. at 28). These allegations fail because they were not alleged in the Complaint. *See Mayer v. Sanders*, 695 N.Y.S.2d 593, 595 (2d Dep't 1999) (dismissing because there were no factual allegations in the complaint sufficient to state a cause of action for indemnification and contribution); *see also supra*.

Moreover, the argument is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. *See Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485, at *6 (N.Y. Sup. Ct. Jan. 3, 2013) (TABLE) (citing *Genger v. Genger*, No. 109749/2009 (N.Y. Sup. Ct. June 28, 2010)). In settling the claims among them, the Trump Group, Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance. Accordingly, under N.Y. Gen. Oblig. § 15-108(b), the Trump Group and Trans-Resources have no liability to the TPR Group for contribution.

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR INDEMNIFICATION.

Although the TPR Group seek implied indemnification from the Trump Group and Trans-Resources for claims brought against the TPR Group by Arie and Orly, dismissal is required because the Complaint fails to state a claim for common law indemnification. (*See* Trump Br. at 27-30).

A cause of action for implied indemnification requires either (a) a showing that plaintiff and defendant owed a duty to third parties, and that plaintiff discharged the duty which, as between plaintiff and defendant, should have been discharged by defendant, or (b) vicarious liability without actual fault on the part of plaintiff (the proposed indemnitee). (Trump Br. at 28). This Court has already held that a party who has actually participated to some degree in the wrongdoing cannot receive the benefit of the implied indemnification doctrine. (*See id.* at 29).

23

The only remaining claims against TPR and Sagi are claims for breach of fiduciary duty (against only Sagi), and unjust enrichment (against both Sagi personally and TPR) for taking the proceeds of TPR's sale of those Trans-Resources shares that were purportedly transferred to the Orly Trust and to Arie.[8] These were acts in which the TPR Group actively participated (and the TPR Group do not suggest otherwise), and in which neither the Trump Group nor Trans-Resources had any involvement other than being the source of the sale proceeds. As a consequence, and as further detailed in the Trump Brief (*see* Trump Br. at 29), the TPR Group are not entitled to benefit under the implied indemnification doctrine, and the claims for such should be dismissed.

Additionally, the TPR Group's claim should be dismissed because the Complaint fails to allege that (i) the TPR Group together with any member of the Trump Group or Trans-Resources collectively owed a duty to Arie and Orly that was breached, or (ii) even if such a duty existed, the TPR Group discharged such duty even though, as between the TPR Group, on the one hand, and the Trump Group and Trans-Resources, on the other hand, that duty should have been discharged by the Trump Group and Trans-Resources. (Trump Br. at 29). Nor could it, as the Trump Group, including Trans-Resources, had no say in, or any knowledge of, how the proceeds received by TPR for the sale of Trans-Resources shares was to be divided among the feuding members of the Genger family. Rather, the TPR Group offers only the conclusory allegation that "[t]o the extent [the TPR Group] incur liability on [Arie's and Orly's] surviving claims, the Trump Group and [Trans-Resources] should indemnify [the TPR Group]. . . ." (Compl. ¶ 95), which is insufficient to maintain a claim for implied indemnification. (Trump Br. at 29).

---

[8]    The Court already dismissed all of Arie's and Orly's claims against the Sagi Trust. *See Genger v. Genger*, 2013 WL 221485, at *21.

In an ill-conceived effort to cure its legal and pleading insufficiencies, the TPR Group at-

tempt to gap-fill the Complaint's deficits by providing an addendum, couched as its opposition

brief, replete with facts and allegations not supported by the Complaint or reality.[9] For instance,

in response to the Trump Group's argument that the TPR Group failed to plead a duty (Trump Br.

at 29-30), the TPR Group now argue that:

> TPR and Sagi are being sued for one and only one thing – their decision to settle
> the Trump Group's lawsuit by agreeing to the August 22, 2008 Stock Purchase
> Agreement and Side Letter Agreement. . . . [S]ettlement was needed because: (a)
> TRI "reneged" on the Funding Agreement; and (b) the Trump Group then "retali-
> ated" against TRI's management, in particular Arie, by filing suit against TPR to
> undo the 2004 sale of the Sagi Trust Shares to the Sagi Trust. In other words,
> Cross-Claimants are being sued because, through no fault of their own, they were
> caught in the cross-fire between TRI and the Trump Group, and settled. Either
> TRI was right to renege, or the Trump Group was right to retaliate. But either way,
> one of them breached a duty which it would be inequitable to shift unto either
> TPR or Sagi.

(Opp'n Br. at 29-30) (citations omitted). None of this can be found in the Complaint. But in any

case, this statement – like the Complaint – fails to allege any vicarious liability or collective duty

owed by both the TPR Group and the Trump Group but discharged by members of the TPR

Group. Even if it did, the statement once again ignores the fundamental notions that it was

TPR's (and its President, Sagi's) conscious decisions to (i) settle the litigation with the Trump

Group by selling one block of its Trans-Resources stock for a price that they explicitly acknowl-

edged was "fair, reasonable and acceptable to each" of TPR and Sagi Genger, and (ii) sell the

other two blocks of its Trans-Resources stock to which Arie and the Orly Trust laid claim. Of

course, TPR (and Sagi, its president) had other options at the time, including defending the law-

---

[9]      The TPR Group cite the dissent in *Rosado v. Proctor & Schwartz, Inc.*, 483 N.Y.S.2d 271, 279 (1st Dep't
1984), claiming it was affirmed. (Opp'n Br. at 29). What the Court of Appeals in *Rosado* actually affirmed was a
finding that no implied indemnification existed because the damages that the third party plaintiff was "compelled to
pay stems from its own wrong and there is not unjust enrichment on [the third party defendants'] part." *Rosado v.
Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 27 (N.Y. 1985). A similar result would be warranted here if the TPR
Group is found liable to Arie and/or Orly based upon the TPR Group's own wrongdoing.

suit brought by the Trump Group using the same theories the TPR Group take here (*i.e.*, that

2004 Transfers were valid because Arie, but not TPR, failed to give notice, or that the Sagi Trust

validly owned the shares). Instead, TPR gladly elected to take the offer on the table and lead the

Trump Group to believe that the TPR Group were more than satisfied, and that the Trump Group

were now insulated by at least one faction of the Genger family from any further involvement in

that family's ongoing feud. Having chosen their path, TPR and Sagi – and they alone – should

be required to bear the burden of their misconduct.[10]

## VIII.  THE TPR GROUP'S CLAIMS ARE TIME-BARRED.

### A.  Both Tortious Interference Claims Are Barred By The Statute Of Limitations

In the Trump Brief, the Trump Group established that the Sixth Counterclaim and Seventh Counterclaim – for tortious interference with the Transfer Agreement and for tortious interference with business relations, respectively – should be dismissed due to the applicable limitations periods. (Trump Br. at 23 n.22 & 25 n.24). Specifically, the Sixth Counterclaim, brought in 2013, but which is alleged to have occurred in 2008, should be dismissed because it is subject to a three-year statute of limitations. *See Buller v. Giorno*, 868 N.Y.S.2d 639 (1st Dep't 2008) (affirming dismissal of claim for tortious interference of contract due to the expiration of the statute of limitations). Likewise, the Seventh Counterclaim – a tort claim – brought in 2013 but alleged to have occurred in 2008, is barred by a three-year statute of limitations and should be dismissed. *See Susman v. Commerzbank Capital Mkts. Corp.*, 945 N.Y.S.2d 5, 7-8 (1st Dep't 2012). In its opposition, the TPR Group does not appear to contest that these limitations periods

---

[10]  *In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931, 936 (1st Dep't 1984), cited by the TPR Group, does not address indemnification of any kind, let alone implied indemnification of the kind the TPR Group seeks in the Complaint. Rather, that case stands for the unremarkable proposition that the relationship among stockholders in a "close corporation" is akin to that of partners. As noted above, Trans-Resources, a Delaware entity, is not a "close corporation" under Delaware law. Even if it were, the TPR Group's argument does not explain (a) how such a relationship constitutes the vicarious relationship required for implied indemnification or (b) how TPR or Sagi discharged a duty that should have been discharged by the Trump Group.

are applicable.[11] Thus, in addition to the reasons set forth above and in the Trump Brief, the

Sixth and Seventh Counterclaims also should be dismissed as time-barred.

### B.    The Fraud Claims And The Breach Of Contract Claims Are Barred By The Statute Of Limitations

The TPR Group devote their focus upon the Trump Group's argument that CPLR 213(8)

requires claims of fraud to be commenced no more than six years from the date the claim ac-

crued or two years from the time the fraud was discovered. (Opp'n Br. at 13-15). In the Trump

Brief, the Trump Group argued that the First Counterclaim (filed in April 2013) is time-barred

and should be dismissed because any representation (and the only representation alleged in the

Complaint is Arie's statement in the MSA) about TPR's ability to convey its Trans-Resources

shares was made more than six years ago (in 2004) and was discovered more than two years ago

(in 2008) by the TPR Group when TPR sold its Trans-Resources shares to the Trump Entities.

(Trump Br. at 13).

In response, the TPR Group argue that the First Counterclaim: (i) at a minimum, relates

back to Arie's Second Amended and Supplemental Complaint (the "Arie Complaint"), which

was filed on September 22, 2010 (*see* Opp'n Br. at 13-14); (ii) did not accrue until August 2008,

"when the Trump Group exercised their Purchase Rights under the Stockholders Agreement"

(*see* Opp'n Br. at 14); or (iii) accrued, on some equitable basis, in 2011-12, when the TPR Group

claim to have "realize[d] the full scope of the wrongful scheme against them" because, among

other reasons, their discovery was somehow impeded due to Arie's spoliation efforts (*see* Opp'n

Br. at 15). These arguments miss their mark.

*First*, the alleged basis for the First Counterclaim is Arie's representation in the MSA re-

garding TPR's ability to transfer its Trans-Resources shares – a representation made in 2004

---

[11]    The TPR Group glibly lump all of their claims together in defining them as the "Cross Claims." (Opp'n Br. at 1). Each of their claims, however, must be reviewed to determine whether they are barred by the applicable stat-
*(cont'd)*

27

(more than six years ago) that was discovered by the TPR Group in 2008 (more than two years

ago) when TPR and the Sagi Trust negotiated the Stockholders Agreement with the Trump Enti-

ties. (Trump Br. at 13). Thus, even if the First Counterclaim relates back to the Arie Complaint

(and it does not), the alleged conduct occurred outside time frames permitted by CPLR 213(8).

*Second*, the Trump Group are aware of no authority – and the TPR Group cite none – for

the proposition posited by the TPR Group that a statute of limitations is tolled until a plaintiff

completely discovers the "full scope" of an alleged wrong. Rather, established New York law

stands completely to the contrary. *See Watts v. Exxon Corp.*, 594 N.Y.S.2d 443, 444 (3d Dep't

1993) ("[H]aving positive knowledge of fraud is not required to commence the running of the

two-year Statute of Limitations. In order to start the limitations period regarding discovery, a

plaintiff need only be aware of enough operative facts 'so that, with reasonable diligence, she

could have discovered the fraud. . . .' In other words, all that is necessary are sufficient facts to

suggest to a person of ordinary intelligence the probability that they may have been defraud-

ed. . . .") (citations omitted); *see also Aldrich v. Marsh & McLennan Cos., Inc.*, 861 N.Y.S.2d 30,

31 (1st Dep't 2008) (merely requiring notice and ability with reasonable diligence to discover an

alleged fraud, and holding that inquiry notice of a fraud may be supported by information in the

public domain); *cf.* CPLR 213(8) (incorporating reasonable diligence standard).[12]

Similarly, the Trump Group established in the Trump Brief that the Third Counterclaim

for breach of the Stockholders Agreement was time-barred because the alleged breach occurred

in 2004, more than six years prior to the commencement of TPR's claim. (*See* Trump Br. at

---

*(cont'd from previous page)*

ute of limitations. Any argument lumping them together should be rejected out of hand.

[12]     Arie's deletion of certain documents is irrelevant to the analysis and does not create a basis for some sort of
equitable tolling, as the TPR Group suggest. This is particularly the case where the members of the TPR Group had
knowledge that Arie's representation was false.

18). In its opposition, the TPR Group merely recycle their same arguments made with respect to the First Counterclaim. (Opp'n Br. at 14-15). These arguments fail for the reasons noted above.

The TPR Group also argue that their breach of contract claim did not accrue until the Trump Group "exercised their Purchase Rights" under the Stockholders Agreement. (Opp'n Br. at 14). Even assuming the TPR Group are not factually mistaken, their argument is wrong as a matter of law. *See, e.g., St. George Hotel Assocs. v. Shurkin*, 786 N.Y.S.2d 56, 57 (2d Dep't 2004) (rejecting argument that cause of action accrues when damages are allegedly sustained, and holding that the cause of action accrued and began to run "upon the breach"). Such a claim accrues at the time of breach, *see id.*, here, in 2004 when TPR improperly transferred the shares.[13]

For the foregoing reasons, and the reasons discussed in the Trump Brief, the TPR Group's claims should be dismissed.

## IX.    THE TPR GROUP SHOULD NOT BE GRANTED LEAVE TO REPLEAD.

The TPR Group's request to re-plead should be seen for what it is:  a further attempt to keep litigating baseless claims. "[L]eave to amend a pleading should not be granted where the proposed amendment is 'palpably insufficient'. . . ." *Freeman v. City of N.Y.*, 975 N.Y.S.2d 141, 144 (2d Dep't 2013) (citations omitted). Moreover, the Court may not grant leave to amend where the proposed amendment lacks merit, including to the extent it is shown that a party possesses no cause of action. *See Oneida Indian Nation v. Hunt Constr. Grp., Inc.*, 970 N.Y.S.2d 156, 157 (4th Dep't 2013) ("We agree with plaintiff that Supreme Court erred in granting the motion inasmuch as it is well settled that such leave 'should not be granted where, as here, the proposed amendment lacks merit. . . .'") (citations omitted). For the reasons set forth herein and

---

[13]    The TPR Group rely on *Brooklyn Union Gas Co. v. Interboro Surface Co., Inc.*, 449 N.Y.S.2d 274, 275 (2d Dep't 1982) in aid of their argument that their alleged harm accrued after August 8, 2008, when the Trump Group invoked their Purchase Rights. The Second Department, however, has subsequently held, that *Brooklyn Union Gas Co.* "should not be followed. . . ." *St. George Hotel Assocs.*, 786 N.Y.S.2d at 57 (citations omitted).

in the Trump Brief, there is no merit to the causes of action alleged in the TPR Group's Complaint and any proposed amendment of their claims against the Trump Group would be "palpably insufficient." Accordingly, the Court should deny any request for leave to amend the Complaint.[14]

## CONCLUSION

For the reasons set forth above as well as those set forth in their Trump Brief, Trans-Resources and the Trump Group respectfully request that the Court dismiss the Complaint, including the First, Second, Third, Sixth, Seventh and Tenth Counterclaims against them, with prejudice and grant such other relief as is just and proper.

Dated: New York, New York
      April 17, 2014

Of Counsel:
Thomas J. Allingham II
Anthony W. Clark
Douglas D. Herrmann
Christopher M. Foulds
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000
(302) 651-3001 (facsimile)

Respectfully submitted,

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP

By: /s/ John Boyle
William P. Frank
John Boyle
Four Times Square
New York, New York  10036
(212) 735-3000
(212) 735-2000 (facsimile)

*Attorneys for Glenclova Investment Co.,
TR Investors, LLC, New TR Equity I, LLC,
New TR Equity II, LLC, Jules Trump,
Eddie Trump, Mark Hirsch and
Trans-Resources*

---

[14]     The TPR Group cite *Cerra v. Scher Fabrics, Inc.*, 748 N.Y.S.2d 483 (1st Dep't 2002), for the proposition that the TPR Group may be granted leave to amend. (Opp'n Br. at 30). However, unlike here, the *Cerra* court did not face a situation in which the plaintiff's claims were completely devoid of any merit.

737270-WILSR01A - MSW

FILED: NEW YORK COUNTY CLERK 04/03/2015 12:31 PM          INDEX NO. 651089/2010

NYSCEF DOC. NO. 1275                                    RECEIVED NYSCEF: 04/03/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CIVIL TERM: **PART: 12**
---------------------------------------------X
ARIE GENGER and ORLY GENGER, in her
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,

                          Plaintiff(s),

                                            INDEX NO.
            -against-                       651089/10

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST,
ROCHELLE FANG, individually and as trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC.,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,

                          Defendant(s).
---------------------------------------------X
SAGI GENGER, individually and as assignee of
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.,

                     Cross-Claimants, Counterclaimants
                        and Third-Party Claimants,

            -against-

ARIE GENGER, ORLY GENGER,
GLENCOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC., JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., WILLIAM
DOWD, and THE ORLY GENGER 1993 TRUST,

                     Cross-Claim, Counterclaim and/or
                        Third-Party Defendants.
---------------------------------------------X
                              80 Centre Street
                              New York, New York 10007
                              March 25, 2015

**B E F O R E:**

**THE HONORABLE BARBARA JAFFE,**
                              J U S T I C E

                    *Eric Allen*
              *Official Court Reporter*

1

2    **A P P E A R A N C E S:**

3    MITCHELL, SILBERBERG & KNUPP, LLP
     Attorneys for Arie Genger
4    12 East 49th Street
     New York, New York 10017
5    BY:  PAUL D. MONTCLARE, ESQ.

6

7    ZEICHNER ELLMAN & KRAUSE, LLP
     Attorneys for Plaintiff Orly Genger
8    1211 Avenue of The Americas
     New York, New York 10036
9    BY:  YOAV M. GRIVER, ESQ.

10

11   JUDITH LISA BACHMAN, ESQ.
     Attorney for Defendant Dalia Genger
12   254 South Main Street
     New City, New York 10956

13

14

     MORGAN, LEWIS & BOCKIUS, LLP
15   Attorneys for Defendant TPR Investments
     101 Park Avenue
16   New York, New York 10178
     BY:  JOHN DELLAPORTES

17

18

19

20

21

22

23

24

25

26

1

2              THE COURT:  So, this is your motion,

3    Ms. Bachman.

4              MS. BACHMAN:  It is, your Honor.

5              Good morning.

6              THE COURT:  Good morning.

7              MS. BACHMAN:  So, this motion has been pending

8    for a long time, so I want to make sure that the Court

9    is aware of sort of the context in which our --

10             THE COURT:  What happened in surrogates?

11   Nothing yet from --

12             MS. BACHMAN:  It has not -- Dalia is still the

13   trustee.  The court has required further proceedings

14   with regard to making sure that the Sagi Trust is

15   included in the matter, so it remains at the status quo

16   that Dalia is still the trustee.

17             THE COURT:  Do you know when -- is there any

18   clue as to when that case is going to be decided?

19             MS. BACHMAN:  I do not know, your Honor.

20             MR. GRIVER:  Your Honor, the only relevant

21   happening, I think, in the case, is that the surrogate

22   court appointed a guardian for the children who are the

23   remainder -- continuing remainderment for the Sagi

24   trust and he filed, I believe last week, position

25   papers saying that he agrees with our position that

26   Dalia should be removed as trustee and that she has

4

1

2    violated her obligations.

3        THE COURT: Okay, but that's not part of the

4    record before me right now.

5        MR. GRIVER: That is -- no. The remainderment

6    for the -- excuse me. The remainderment for the Orly

7    Trust.

8        THE COURT: Yes. That I understand.

9        MR. GRIVER: We can certainly file it with the

10   Court. We think it is a subsequent document that has

11   relevancy to these proceedings if your Honor thinks so.

12       MS. BACHMAN: And, obviously, that issue hasn't

13   been adjudicated and, as the Court noted, is not part

14   of the record.

15       So, with that caveat in mind, I think it is

16   important to understand the context of what's happened

17   here.

18       When we brought this motion, I think, back in

19   August of last year, we had not yet seen the settlement

20   agreement and the Federal Court had not yet opined on

21   the effect that they believed that the settlement

22   agreement had on what Orly gained from the Orly trust

23   shares. So, as part of this motion, I have included

24   Judge Keenan's two decisions which opine and conclude

25   that the settlement agreement is a monetization of

26   Orly's -- the Orly Trust shares. Essentially, she

2        traded the trust shares as part of the settlement and

3        acknowledged that the Trump Group is the owner --

4            THE COURT:  Was it in Keenan's decision or was

5        it Forest's?

6            MS. BACHMAN:  I apologize, thank you.  Yes,

7        Forest.  I could tell by your face that I had gone

8        astray, so I appreciate it.

9            Judge Keenan's decision --

10           THE COURT:  No, Judge Forest.

11           MS. BACHMAN:  Sorry, Judge Forest's decision.

12       Delete Keenan from the record.

13           So, based on that decision, it is now our

14       understanding with that decision that the settlement

15       agreement was basically the exchange:  The Orly Trust

16       interest in the shares for a whole bunch of money.

17           The Trump Group had been consistent before this

18       Court in acknowledging that they viewed the settlement

19       as the settlement of the interest of the Orly Trust

20       shares and that it was an exchange of money for those

21       shares.  They effectuated that and acknowledged that by

22       encouraging and asking the Delaware chancery court to

23       dismiss and acknowledge that the shares now belonged to

24       the Trumps.

25           Orly's attorneys have taken somewhat interesting

26       turns along the way.  Before this Court, when this

1

2   Court was hearing the issue of whether it should so

3   order the settlement, Mr. Griver, I believe, argued

4   that, no, we are not settling the trust claims and, in

5   fact, quote, "Dalia can pick up the cudgel."

6       The Court said in it's decision, look, I can't

7   tell whether the trust shares -- whether the trust

8   claims are dismissed or not as part of the settlement

9   and until I get clarification, you accurately stated, I

10  believe, I cannot tell who the settlement proceeds

11  belonged to.  I can't tell whether they belong to the

12  trust or to Orly individually.  So, the Court invited

13  the parties to clarify who they viewed as the settling

14  parties and whether the trust had dismissed its claims

15  or not.

16      None of the settling parties acceded to the

17  Court's invitation and with that ambiguity, we were

18  left to protect the interests of the trust.  We brought

19  this motion seeking first for Dalia to be substituted

20  in if claims remained since Orly has stepped back and

21  said that she is no longer prosecuting the case as a

22  derivative plaintiff.  And under well-settled New York

23  law, if a derivative plaintiff is no longer prosecuting

24  the action on behalf of the principal, then it is

25  appropriate for a party to be substituted who has an

26  actual interest in protecting that principal.  That

1

2      would be, obviously, the trustee of the trust.

3              Likewise, as a second branch and perhaps now

4      more importantly, we simultaneously moved for the

5      settlement proceeds to be paid into court pending an

6      allocation and determination of who that money belongs

7      to and that's why we are before you today.

8              We now have seen the settlement agreement and it

9      seems to confirm and be consistent with the Trump

10     Group's position that they intended to and did settle

11     all of the claims including, most importantly, the

12     trust claims and at the end of the day that's what they

13     bought and paid for:  The trust shares.  And if they

14     bought and paid for the trust shares, the money belongs

15     to the trust.

16              Thank you.

17              MR. ALLINGHAM:  Your Honor, I don't know who

18     should speak next, but I think it would be helpful I

19     should speak next to make clear submissions.

20              MR. GRIVER:  No objection.

21              MR. ALLINGHAM:  Tom Allingham for the Trump

22     Group.

23              The settlement agreement settles claims.  It

24     doesn't buy shares.  The shares had already been

25     purchased as the Delaware court has found, pursuant to

26     an agreement that was entered into back in 2008 and the

1

2   closing on those shares was 2012 or '13, '11, whenever.

3   Those shares had been purchased a long time ago.   There

4   remained claims of the Orly trust against the Trump

5   Group and that's what was settled in the settlement

6   agreement.   We paid money for a release of claims that

7   Arie, Orly and the Orly Trust had against the Trump

8   Group and that's what we paid the money for, so that's

9   point number 1.

10   Point number 2:   I think this is an unusual

11   situation, at least in my experience.   The moving party

12   now agrees with the position that we've taken since the

13   settlement agreement was entered into in June of 2013

14   that among the claims that we purchased a release of,

15   among the claims that we settled were the claims of the

16   Orly Trust and so the relief that is sought -- there

17   were two forms of relief sought in the motion, as

18   Ms. Bachman said.   One was, "I want to intervene to

19   pursue these claims."   That form of relief we oppose.

20   Because those claims have now, as conceded, I think, by

21   everybody -- everybody agrees that they were released,

22   there are no claims currently pending and, in fact,

23   there are no claims that could be pending into which

24   Dalia could intervene.   So, the motion --

25   THE COURT:   There is nothing to --

26   MR. ALLINGHAM:   Correct.   There is nothing

*Eric Allen*
*Official Court Reporter*

1

2      there, nothing to intervene in, so the motion to

3      intervene should be denied.

4            THE COURT:  It's a motion to be substituted.

5            MR. ALLINGHAM:  To be substituted.  I think of

6      it as an intervention motion, but, yes, your Honor.

7            And I don't think that if you look at the

8      papers, anybody really disputes that.  In Dalia's

9      brief, she says it has now been definitively revealed

10     that Orly settled the Orly Trust's claims against the

11     Trump Group.  In the Sagi submission, not a brief but

12     an affirmation from Mr. DellaPortas, it's the same

13     thing:  "Having finally seen the settlement agreement,

14     it is eminently clear that there is no cudgel for Dalia

15     to pick up.  The claims" -- and these are the claims of

16     the Orly Trust -- "were released, as Mr. Allingham had

17     correctly told the Court in his June 2013 letter."

18            So, where does that leave us?  That leaves us

19     with the second form of relief, which is should any

20     form of relief be entered against the settlement

21     proceeds that have either -- that have either been paid

22     or may in the future be paid pursuant to the settlement

23     agreement.

24            With respect to the 18 or so million dollars --

25     I think it's actually 17 and a quarter million dollars,

26     but the money that's already been paid in cash, we

1

2 don't have it.  We have no claim to it.  We take no

3 position on that money.  The Court may or may not have

4 jurisdiction to enter relief against whoever has got

5 that money, but we don't know who it is.  We know who

6 we paid it to, but we don't know who has the money now.

7      With respect to the remaining settlement

8 proceeds that may be paid in the future, that is in the

9 form of two notes; each in the principal amount of 7

10 and a half million dollars.

11      There are a number of conditions that may affect

12 the maturity date of those notes.  They have a nominal

13 maturity date of June of 2016 and June of 2017, but

14 they could be accelerated or extended.

15      Also, we have a contractual right to set off any

16 unpaid indemnification amounts under the settlement

17 agreement.  In the settlement agreement, we paid not

18 only for releases from Arie, Orly and the Orly Trust,

19 but we also paid -- so that's peace from those three

20 parties -- but we also paid for an indemnification from

21 Arie, Orly and the Orly Trust against any defense

22 costs, settlement payments or judgments in a broad

23 array of actions that could be brought by any Genger

24 family member.  So although we couldn't buy complete

25 peace, we tried to buy an insurance policy against the

26 peace that remained out there.

1

2          So, we have a setoff right against -- we have a

3    contractual obligation to pay on those notes.  When

4    that will come due is determined by a lot of factors.

5    When they come due, we have a contractual right of

6    setoff against the $15 million face amount of those

7    notes.

8          And so, with respect to the future payments,

9    what I would say is this:  No payment is due now, so I

10   think any relief on the future payment would be

11   premature.

12         To the extent any relief were to be entered now

13   as to these future payments, it shouldn't be entered

14   against the Trump Group which has a contractual

15   obligation to pay the payee.  It should either be

16   entered in the nature of an in rem remedy against the

17   notes themselves, deliver them to you or whatever, or

18   it should be entered and directed at the payee that

19   we're contractually obligated to pay, rather than to

20   direct it to the Trump Group which would abrogate our

21   contractual obligation to pay under the note.

22         So that's our position.

23         THE COURT:  Thank you.

24         MR. ALLINGHAM:  Thank you, your Honor?

25         THE COURT:  Who is next?  You don't have to

26   stand, Mr. Griver.

1

2          MR. GRIVER:  Thank you, your Honor.  I am

3      sometimes better when I stand.

4          A lot of times, this case has become somewhat

5      surreal, but I think this motion takes the cake.  There

6      is a museum in Cairo, Egypt called the October War

7      Museum that is dedicated to the proposition that Egypt

8      won the 1973 Yom Kippur war.  It looks like a museum.

9      You go in, there are exhibits on the second floor, you

10     can watch a film on the third floor.  There is a

11     diorama -- it's really nice.  It is a moving diorama,

12     360 degrees, all dedicated to the idea that Egypt won

13     that war; right?  Only problem is it's not true.

14         So, you go to someone who is at the museum, you

15     know, a guide and you say, well -- but Egypt lost the

16     war.  And he says, no, no, but look at that piece of

17     paper, look at that newspaper article where it says it

18     won.  Look at this piece of shrapnel.  Look at this

19     tank we captured from the Israelis; all of this proves

20     that we won; right?  And you can buy T-shirts and

21     everything and it looks real until you really look at

22     it and you realize that they are only talking about the

23     first day of the war and they completely ignore 99

24     percent of what happened; okay?

25         Mr. Allingham gets up here and says, oh, well,

26     we settled with the Trump -- we settled with the Orly

1

2      Trust; right?  Well, you know what?  You have to look

3      at the language of the CSA because the Orly Trust is

4      expressly excluded from the settling parties.

5      Mr. Allingham tried to get the trust claims included

6      and the Orly Trust included --

7              THE COURT:  Which Orly entities settled?  There

8      is three in all, I take it?

9              MR. GRIVER:  No.  There is the AG Group settled

10     so the Brosers settled, Arie settled --

11             THE COURT:  I don't consider them -- the Orly

12     people are Orly individually, Orly as beneficiary of

13     the trust and the Orly Trust; is that right?

14             MR. GRIVER:  Orly settled and it says it right

15     there:  Orly Genger in her individual capacity and in

16     her capacity as beneficiary of the Orly Genger 1993

17     trust.

18             THE COURT:  And as beneficiary.

19             MR. GRIVER:  And as beneficiary.

20             But the Orly Trust itself is expressly excluded

21     from the A.G. Group settling parties and is expressly

22     defined as a member of the nonsettling Sagi Group.

23             THE COURT:  Is that your understanding,

24     Mr. Allingham?

25             MR. GRIVER:  That is Page 3, by the way.

26             MR. ALLINGHAM:  It is, your Honor.  That is the

*Eric Allen*
*Official Court Reporter*

14

1

2        way the agreement reads.

3              When Justice Feinman in --

4              THE COURT:   That's the end of it.   So the Orly

5        Trust is not settled.

6              MR. GRIVER:   That is the language that he signed

7        in exchange.

8              MR. ALLINGHAM:   It's more complex than that.

9              MR. GRIVER:   You know what else is in that?   Any

10       changes to that have to be in writing, agreed to by all

11       the parties, and we don't agree and there is no

12       writing.   He is talking about what he wanted and there

13       is also a -- where everything, all prior agreements, et

14       cetera, are merged.   There is a merger clause in there,

15       as well.

16             THE COURT:   Oh, no, do I perceive another action

17       or motion?

18             MR. GRIVER:   No, I don't believe so, your Honor,

19       because here's what also happened.   There was a second

20       amended stipulation of dismissal where we crossed out,

21       by hand, because it was mistakenly put in -- crossed

22       out by hand and your Honor was concerned about it and

23       that's why it became the second amended stipulation of

24       dismissal because that language was taken out.   And the

25       language that was taken out was any idea that the Orly

26       Trust settled the claims as part of that confidential

1

2    settlement agreement, the Orly Trust was removed and,

3    indeed, the Orly Trust remained -- the claims of the

4    Orly Trust remained, specifically in that second

5    amended stipulation of dismissal, which allowed the two

6    injunctions -- the injunctions against the Trump Group

7    and the injunctions against everybody else, including

8    Dalia Genger -- to pursue her claims in Delaware --

9            THE COURT:  So you agree with Ms. Bachman on

10    that; that the Orly Trust claims remain and --

11            MR. GRIVER:  The Orly Trust claims remain --

12            THE COURT:  So the only issue remains, of

13    course, whether Dalia should be substituted, which I

14    take it -- but you say the trust claims remained --

15    does everybody agree?

16            MR. GRIVER:  No, it remained.  The second

17    amended stipulation of dismissal, which dismissed

18    Orly's claims as an individual and as a beneficiary is

19    what happened in this court.  As part of that

20    stipulation, the claims of the Orly Trust were not

21    settled -- were not dismissed and Ms. Bachman and Dalia

22    were permitted to reinvigorate a lawsuit in Delaware

23    that they had commenced claiming the right to the

24    shares and go moving against the Trump Group and TPR,

25    et cetera; right?

26            We had gotten those stayed previously because

1

2     our concern was that Dalia would not vigorously pursue

3     those claims on behalf of the Orly Trust.

4         Dalia went down to Delaware, immediately settled

5     with TPR and with the Trump Group.  Now, if her claims

6     had already been settled two months before, then what

7     was she doing down in Delaware?  But she went down to

8     Delaware.  She didn't come in at the time and say, hey,

9     wait a second, wait a second, I want my moneys.  No.

10    She went down to Delaware, settled with everybody else,

11    TPR and the Trump Group, and it was that settlement

12    that caused the 1st Department to dismiss the claims

13    here because they said there is nothing left because of

14    the Delaware stipulation.

15        So, Dalia has already taken care of it and

16    because of that there are no claims left.  The Court of

17    Appeals has so ruled, the 1st Department has so ruled

18    that the fact that we are here arguing about her

19    attempt to substitute herself in when she settled

20    already as a trustee -- she gets one chance to settle.

21    We gave you the Delaware stipulation.  That's what she

22    says.  She makes findings of fact that are -- that help

23    Sagi.  She makes statements that help Sagi and then

24    finally she settles all of her claims on behalf of the

25    trust claiming to properly represent the trust.

26        Now, that's something that we are going to raise

1

2           up in the surrogate's court.  That is another example

3           of Dalia misusing her power as trustee, but that has no

4           bearing on this.  There are no claims left because the

5           Orly trust settled her claims in Delaware and Orly

6           individually and as beneficiary settled the claims with

7           the Trumps in the confidential settlement agreement.

8                The money that they are trying to get now is

9           above the $10 million that the Delaware settlement

10          caused to be given to TPR and that's the Keenan

11          decision.  The Keenan decision was, well, now that the

12          Delaware stipulation exists and the Orly Trust is

13          decided, that everything's okay with the Orly Trust,

14          well, then the sale of the shares back in 2008, the

15          proceeds go to TPR.  It's in our papers.

16               THE COURT:  I am shaking my head nodding just to

17          the extent that I understand what you are saying.

18               MR. GRIVER:  Right, okay.

19               Very simply, Orly settled with the Trumps in

20          June.  The Orly Trust settled with the Trumps in

21          August, two months later.

22               Now, we go to -- and the main point, your Honor

23          is there are no claims left and since there are no

24          claims left, her substitution motion just fails.  It's

25          that simple.

26               Then we go to the second part of her claim,

18

1

2     which is CPLR 2701.  She wants the proceeds of Orly's

3     settlement with the Trumps to be paid into court and

4     she just can't do that.  Most attorneys, I think, would

5     simply read the language of the statute to determine

6     that the language of the statute bars their ability to

7     bring a motion and stop right there, but that's not

8     what happened here.  What happened here is that they

9     proceeded nonetheless.  And the motion to have the

10    proceeds paid in court doesn't work because under CPLR

11    2701, that CPLR provision, your Honor, is designed very

12    narrowly to take care and protect moneys that are the

13    subject of an action.  And there are three sub parts.

14         First of all, it has to be the subject of an

15    action.  The moneys that are the settlement with the

16    A.G. Group but not the Orly Trust are not part of the

17    2010 case which, in any event, no longer exists.

18         But you can go and look at each one of the

19    individual subparagraphs and see that it doesn't work.

20         The fourth one is if a third party is a trustee

21    and is holding the money, like the comptroller of the

22    -- the State comptroller.  The State comptroller has,

23    let's say, death benefits.  The person has died.  It is

24    claimed both by the beneficiary of the will and by the

25    ex-wife who is named in the policy for the death

26    benefits.  They are fighting over that specific sum of

1

2       money and the comptroller has to pay it to somebody so

3       he pays it into court on a monthly basis until the

4       court rules does widow A get it or widow B get it.

5       That's clearly not the situation here.

6            The second one is where there are special

7       circumstances that make it desirable that payment be

8       made to -- that payment be made into the court instead

9       of two the parties.  Well, as Mr. Allingham correctly

10      noted, some of the money has already been paid, some of

11      the money will be paid and there are no special

12      circumstances here that should delay any of that.

13      There is no evidence that they have come in that said

14      that there is a special circumstance that requires the

15      court to protect the moneys.  There is not even a claim

16      against those moneys in a court of law.

17           Third is the situation where ownership of the

18      property will depend on the outcome of the pending

19      action.  That also is inapplicable here.  There is no

20      pending action, number one.  And, number two, even if

21      there was, you can look at all the counterclaims, all

22      of the cross-claims, all of the original claims, none

23      of it has to do with the confidential settlement

24      agreement so it simply does not apply.

25           And it can't serve as a legal basis for what

26      Dalia is attempting to do.  She made her own decision

1

2        to settle and she settled it as she saw fit; in a way

3        that was destructive to Orly and we'll take care of

4        that later, but in a way that she decided to settle

5        those claims.  There is a stipulation in Delaware and

6        they ignore that.  They ignore the second amended

7        stipulation of dismissal in this court and what

8        happened -- the fact that they went ahead and then used

9        that stipulation to say, oh, there are still claims for

10       Orly Trust.  Now they are claiming that the Orly Trust

11       claims didn't even exist at the time that they went

12       into Delaware and how is that possible?  And

13       Mr. Allingham chooses to ignore the actual language of

14       the confidential settlement agreement which he cannot

15       do because he negotiated that language, he chose to

16       have his client sign that language and for him to come

17       in and say well let me explain to you how the language

18       should be ignored is improper, entirely so.

19            So, I am going to sit down and say nothing else.

20       Thank you.

21            MR. MONTCLARE:  Thank you, your Honor.  Paul

22       Montclare for Arie Genger.

23            I have just a few things to say.  I have to say

24       I agree with everything that Mr. Griver said.  It's not

25       to have him back in the courtroom.

26            It seems to me that we can address this really

*Eric Allen*
*Official Court Reporter*

1

2   pretty simply.  There is no action for her to

3   substitute into.  I mean, how can you substitute into

4   an action that's been completely dismissed, has been

5   completely affirmed, there is now no leave-to-appeal

6   motion pending to the Court of Appeals.  She is going

7   to be substituted in for Orly who lost the case against

8   the Trumps who are no longer in the case.  I mean, that

9   should end the whole analysis.  I don't understand why

10  we need to go past that.

11        The issue with respect to the confidential

12  settlement agreement, on behalf of Arie Genger, we were

13  a party to that agreement and they want to come in and

14  interfere with our property rights by just saying, oh,

15  we want it paid into court.  What action is there to

16  deprive us of our property rights being brought by --

17        THE COURT:  Well, I think what Mr. Griver

18  mentioned in his list of subdivisions of 2701, the only

19  one that piqued any interest was special circumstances,

20  so what about that?

21        MR. MONTCLARE:  But there are no -- there has to

22  be an existing action, your Honor.  There is no

23  existing action.

24        THE COURT:  So that -- you still need an

25  existing action for there to be special circumstances.

26        MR. MONTCLARE:  Yes.  Otherwise what do we just

*Eric Allen*
*Official Court Reporter*

1

2       have people walking in off the street and into court

3       and asking for an application to pay it into court?

4              THE COURT:  It happens all the time.

5              MR. MONTCLARE:  They could have early on tried

6       to get an attachment of that.  They could have done a

7       lot of things but the procedural mechanism they have

8       chosen is a little unusual.

9              But it's not grounded in anything.  I think --

10      and also, it proceeds from a false assumption of what

11      their -- what they conceded in Delaware, which I am not

12      going to repeat; why we settled with Mr. Allingham's

13      clients in Delaware at a time when there are open

14      issues that made settlement possibility.  Much to my

15      great disappointment, that is no longer the case.  That

16      case is over against the Trumps.  It's over.

17             And the reason she wants to substitute in is to

18      basically to sue the Trumps.  And that makes no sense

19      at all to me.

20             THE COURT:  Okay, thank you.

21             I think --

22             MR. DELLAPORTAS:  Very briefly, your Honor.

23             Three quick points:

24             Number 1, Orly Genger brought claims in this

25      case on behalf of the Orly Genger 1993 Trust.

26             Number 2, Orly Genger and her father got or are

1

2          going to get $32.3 million in settlement of those

3          claims and, number 3, those claims are no more and we

4          join in Ms. Genger's -- Mrs. Dalia Genger's position

5          that the money should be paid into court.

6               Subject to that, we respectfully disagree with

7          the comments of Mr. Montclare and Mr. Griver, except to

8          the extent that Mr. Griver described the Cairo museum,

9          which I have been to as well and I think it is an

10         accurate description of it.

11              And with that, we rest on our papers.

12              THE COURT:  Thank you.

13              MS. BACHMAN:  May I add something, your Honor?

14              THE COURT:  Sure.

15              MS. BACHMAN:  With regard to, I think, the

16         Court's very pointed question to Mr. Griver and

17         Mr. Allingham, who were the settling parties?  And I

18         think the Court described, at least conceptually, three

19         possibilities:  Orly as beneficiary and Orly

20         individually --

21              THE COURT:  Those were settled.

22              MS. BACHMAN:  Apparently.  Apparently that's

23         what Mr. Griver is saying.

24              THE COURT:  Signed, sealed, delivered.  You saw

25         the agreement.

26              MS. BACHMAN:  I have now seen the agreement.

1

2          The mystery party is what happened to the Orly

3     Trust.

4          THE COURT:   And that was in Delaware.   Kaputski

5     (phonetic) in Delaware; no?

6          MS. BACHMAN:   As I understand it, this case was

7     a derivative case presently pending today.   That's what

8     Orly described in her complaint, her claims to be.   She

9     is bringing this action, quote, "on behalf of the Orly

10    Trust as beneficiary of the Orly Trust to protect her

11    interest thereunder."   Her claim, as I understand it --

12    and unfortunately you have had a longer tenure in this

13    than I have -- but as I understand, it were purely

14    derivative claims.   I understand that she said in the

15    caption Orly Genger individually and on behalf of the

16    Orly Trust but the real claims were with regard to what

17    was done with the Orly Trust shares.   For them to say

18    she settled as a beneficiary and somehow that's

19    different than the trust is a distinction without a

20    difference.   If you are a beneficiary, you are, I

21    believe, saying I have a derivative right to sue

22    because the trust is not protecting my interest as the

23    beneficiary.

24          I don't understand how you can split that

25    difference and say, no, the beneficiary is something

26    different than the trust.   They have to be merged and

 1

 2          that's what she did in her complaint.

 3              And the entire settlement agreement is replete

 4          with all of those references.

 5              It says, in defining who the A.G. Group is, that

 6          Orly Trust, in quote, "all her capacities." It doesn't

 7          say in her individual capacity --

 8              THE COURT: What about the second agreement?

 9          Are you focusing on the second?

10              MS. BACHMAN: I am looking at what I believe to

11          be the actual -- the CSA.

12              THE COURT: The one where there is a writing, "I

13          wrote in" or something.

14              MS. BACHMAN: Correct.

15              THE COURT: I'm on Page 1 of that.

16              MS. BACHMAN: I am actually looking at the

17          settlement agreement itself, what she actually did.  On

18          Page 1 of that settlement agreement, it says -- it

19          defines Orly as "Orly Genger in all capacities."

20              So, while they may be playing convenient word

21          games here -- I hope they are not -- but the settlement

22          agreement itself belies what I believe Mr. Griver is

23          trying to convince this Court of; that somehow there is

24          this distinction, this magical distinction that he is

25          now conveniently drawing which they weren't drawing in

26          the settlement agreement itself.

1

2         THE COURT:  Even assuming you are right,  which I

3    am not sure you are, but assuming you are right, so

4    what?  If it was all settled, if two of the entities

5    settled in one way or the other and then Dalia went

6    down and settled with the Trump Group and TPR in

7    Delaware, what's left and why is there something left?

8    That's what I want to know.

9         MS. BACHMAN:  At least as I understand the

10   context of the Delaware settlement, it was motivated --

11   and if you look at the confidential settlement

12   agreement, it calls for the settlement of that Delaware

13   case.  It says go settle that case.  Orly --

14        THE COURT:  It doesn't say go settle it.  It

15   says something else; right?

16        MR. MONTCLARE:  Cooperate.

17        MR. GRIVER:  Cooperate.

18        MS. BACHMAN:  It says Orly will cause.

19        THE COURT:  Cause.

20        MR. GRIVER:  No, Orly will take efforts to

21   cause.

22        THE COURT:  Something like that.  It's a little

23   squishy.

24        MS. BACHMAN:  A little squishy, but the concept

25   is clearly there.  If he wants to look at the words,

26   which I think he had a part in drafting, that was idea.

```
 1

 2          The idea was we're buying peace, as Mr. Allingham said.

 3     We're doing the best we can.  We don't want to hear

 4     from you again.  Go away and make sure, as best you

 5     can, this all goes away.

 6          THE COURT:  So why is something left?  That's

 7     what I don't understand.

 8          MS. BACHMAN:  A, it's unclear if something is

 9     left or not.  But even if it's not, fine, they settled

10     those cases.  They settled those claims and they got

11     paid for it.  If she brought this case as a derivative

12     plaintiff and she got paid for her derivative claims,

13     it is black letter law that that money, those

14     settlement proceeds on behalf of the derivative

15     plaintiff go to the principal.  They don't belong to

16     the individual.

17          THE COURT:  Aren't you too late?

18          MS. BACHMAN:  How so?

19          THE COURT:  It settled.

20          MS. BACHMAN:  But the payment hasn't been made

21     yet.

22          THE COURT:  I don't know.  It sounded like it

23     was.  And does it matter?  Does it matter that it

24     hasn't been paid?  Even if it hasn't been, the

25     agreement has been entered, it's -- is there a judgment

26     or something?
```

1

2          MR. ALLINGHAM:  Your Honor entered a stipulation

3      of dismissal and we have paid $17.25 million plus

4      interest and we are obligated on two more notes.

5          THE COURT:  As he said, it sounds like that ship

6      has sailed.

7          MS. BACHMAN:  There is $15 million that they owe

8      to the settling parties.  If you want to call that

9      spare change, I will take that change.  That's fine.

10          Mr. Griver talked about the fact that these --

11      the cases that I cited talk about a future stream of

12      payment; right?  He is talking about widows and orphans

13      getting paid in the future.  That is, by definition,

14      what this is.  We are talking about a future stream of

15      payment for claims that were settled.  Yes, the claims

16      were settled.  Mr. Allingham said repeatedly that he

17      bought peace.  The Orly Trust settled its claims under

18      the settlement agreement.  Otherwise, if -- as I

19      understand the Court's concern, if they settled the

20      claims, took all the money and we were not a party to

21      it, then they shouldn't have been in power to settle in

22      the first place.  They can't have it both ways.  They

23      can't settle the claims and take the money and then say

24      it's too late.  Either they settled the derivative

25      claims and money belongs to the trust or they didn't

26      settle the claims and those claims are out there and we

1

2      have the right to pursue them.

3            THE COURT:  I'll read your papers because I am

4      not quite sure I get it.

5            MR. GRIVER:  Your Honor, just very quickly.

6      Notice that she talks about the complaint.  She does

7      not talk about what happened in the settlement and she

8      misquotes the CSA.  The CSA is executed by the A.G.

9      Group and the Trump Group.  That's on Page 1.

10           Two defined groups:  The A.G. group is

11     specifically defined to be Orly Genger in her

12     individual capacity and in her capacity as beneficiary

13     of the Orly Genger 1993 trust.  The Orly Trust is

14     expressly excluded and on Page 3 is included with a

15     group called the Sagi Group which identifies the

16     nonsettling parties.  It's very simple.  There is an

17     entire agreement clause.  We have to amend it only by a

18     writing signed by all of the parties, so that language

19     is what controls; not the complaint but the language of

20     the settlement.

21           The second amended stipulation of dismissal,

22     Ms. Bachman wasn't here jumping up and down and saying,

23     hey, I have to be part of this because it's settling

24     the Orly Trust shares.  Instead, the Orly Trust was

25     specifically careted out and, in fact, Dalia, on behalf

26     of the Orly Trust, supposedly as the trustee, then

1

2          later went down to Delaware.  And she didn't say, hey,

3          you know what?  Good news.  All of my claims in this

4          case have been settled so see you later.  Bye.  She

5          went to the court and she said there is an existing

6          case, I have existing claims and here is the

7          settlement.  And when Orly went down and tried to get

8          involved in that settlement, then Dalia and her counsel

9          said, no, didn't listen to what Orly had to say and

10         then settled it against Orly's desires.

11              So for her to say, well, there is a provision

12         that says that Orly should attempt to get the Orly

13         Trust to settle, Orly wasn't involved in the

14         settlement.  She didn't cause the settlement in any

15         way, shape or form.

16              Please look at our papers and -- because our

17         papers are the only ones, the only ones to talk about

18         what actually happened; okay?  The rest of it, what

19         Ms. Bachman is talking about, she is talking about the

20         first day of the Yom Kippur war.  She knows the next

21         two weeks.  They may win this case in Egypt.  They will

22         not win in case before this Court.

23              MR. ALLINGHAM:  Your Honor, may I?

24              THE COURT:  If it's something you haven't

25         said --

26              MR. ALLINGHAM:  It's not something I have not

*Eric Allen*
*Official Court Reporter*

 1

 2        said.

 3              What emerges from all of the arguments is that

 4        everyone agrees that no claims remain for Dalia to pick

 5        up, so the motion for substitution should be denied.

 6              I agree with Mr. Griver that the Orly Trust

 7        settled with the Trumps at some point.  He and I have a

 8        disagreement about at what point.  Actually, we don't

 9        even have a disagreement about at what point.  I

10        believe that the Orly Trust settled with the Trumps in

11        June in the settlement agreement.  I believe that the

12        Orly Trust settled with the Trumps in August in

13        Delaware --

14              THE COURT:  How can they do it twice?

15              MR. ALLINGHAM:  Your Honor, if you were in my

16        position and you had been involved in this litigation

17        as long as --

18              THE COURT:  I understand.

19              MR. ALLINGHAM:  I was looking for the

20        Delaware --

21              THE COURT:  It's belts and suspenders.

22              MR. ALLINGHAM:  -- the Delaware guarantee with

23        respect to title.  I was looking for whatever

24        protection I could get.

25              THE COURT:  Okay.

26              MR. ALLINGHAM:  Now, as to whether Orly could

*Eric Allen*
*Official Court Reporter*

32

1

2          settle as a beneficiary of the Orly Trust or

3          derivatively on behalf of the Orly Trust, Justice

4          Feinman, on January 3rd, 2013, found that Orly had

5          derivative standing to bring claims on behalf of the

6          Orly Trust.  I argued that she didn't.  I lost.

7          Justice Feinman found that she did and that ruling is

8          law of the case.

9                 Orly had derivative standing to bring claims on

10         behalf of the Orly Trust, according to Justice Feinman.

11         In what capacity?  I can't think of any other -- there

12         may be someone, but I can't think of any other capacity

13         than as the beneficiary.  So I believed in June that

14         when we said she is settling individually and as

15         beneficiary of the Orly Trust, I got a release of the

16         claims that were made against me derivatively by the

17         Orly Trust.  But, as Mr. Griver says, in August we got

18         a release and dismissal from the Orly Trust in

19         Delaware.

20                 THE COURT:  Thank you.

21                 MR. ALLINGHAM:  What is clear, though, is that

22         we have a release and a dismissal of the Orly Trust

23         claims.  Everyone seems to agree to that and there are

24         no claims pending here to substitute it.

25                 THE COURT:  So it seems, but I will read your

26         papers and I will keep an open mind and I will issue a

1

2          decision.

3                 It's your motion, so you will upload this

4          transcript in the E-Filing system.  I see I have a nice

5          file here.  If I don't have hard copies of memos,

6          affirmations, affidavits, I need them all due on or

7          before April 8th.  Exhibits can remain E-Filed.

8                 Thank you.

9                 MR. ALLINGHAM:  Thank you, your Honor.

10                MR. DELLAPORTAS:  Thank you, your Honor.

11                       ***************

12    CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
      OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS CASE.

13

14                           _____

15                                ERIC ALLEN
                              SENIOR COURT REPORTER

16

17

18

19

20

21

22

23

24

25

26

*Eric Allen*
*Official Court Reporter*

FILED: NEW YORK COUNTY CLERK 11/15/2016 05:00 PM   INDEX NO. 109749/2009
NYSCEF DOC. NO. 1440                                RECEIVED NYSCEF: 11/15/2016

# In The Matter Of:

## *ORLY GENGER v.*
## *DALIA GENGER ET AL.*

---

### *Rochelle Fang, Sagi Genger, Orly Genger*
### *August 08, 2016*

---

### *Supreme Court State of New York*

Original File 080816GENGER.txt
**Min-U-Script®**

578

1

2     SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK : CIVIL TERM : PART 12
3     ----------------------------------------x
      ORLY GENGER, in her individual capacity and
4     on behalf of the Orly Genger 1993 Trust (both
      in its individual capacity and on behalf of
5     D&K Limited Partnership),

6                                        Plaintiff,
                                              Index No.
7          -against-                          109749/09

8     DALIA GENGER, SAGI GENGER, LEAH FANG, D&K GP
      LLC, and TPR INVESTMENT ASSOCIATES, INC.,
9
                                        Defendants.
10    ----------------------------------------x
                                  August 8, 2016
11                                60 Centre Street
                                  New York, NY  10007
12    B e f o r e :

13        HON. IRA GAMMERMAN, Judicial Hearing Officer.

14    A p p e a r a n c e s :

15

16        KASOWITZ, BENSON, TORRES, & FRIEDMAN, LLP
          Attorneys for Plaintiff
17             1633 Broadway
               New York, New York  10019
18        BY:  ERIC D. HERSCHMANN, ESQ., and
               MICHAEL PAUL BOWEN, ESQ.
19

20        KELLEY, DRYE & WARREN, LLP
          Attorneys for Defendants SAGI GENGER and
21        TPR INVESTMENT ASSOCIATES
               101 Park Avenue
22             New York, New York  10178
          BY:  JOHN G. DELLAPORTAS, ESQ.
23
                    MINUTES OF NONJURY TRIAL
24
                              Reported By:
25                            John Phelps, and
                              William L. Kutsch
26                            Senior Court Reporters

747

1                    O. Genger - by Plaintiff - Direct/Bowen

2    was settling it.

3        Q    So other people aside from yourself were also giving up

4    things as consideration with respect to the $32 million payment?

5                    MR. DELLAPORTAS:  Objection.

6                    THE COURT:  Sustained.

7                    If we have the document, I assume that's one of the

8        exhibits or will be?

9                    MR. BOWEN:  I think it's in evidence.

10                   THE COURT:  All right.  So the document will

11       reflect who gets what and who is giving up what.

12                   Let's move on.

13       Q    Did you receive any money or your trust receive any

14   money from this settlement agreement?

15       A    No.

16       Q    Are you expecting to receive any money yourself

17   personally from this settlement agreement?

18       A    No.

19       Q    Are you expecting that your trust, the Orly Genger

20   trust, is going to receive any money from the settlement

21   agreement?

22       A    No.

23                   MR. BOWEN:  May I have one second, Judge?

24                   THE COURT:  Okay.

25                   (Pause in the proceedings.)

26                   THE COURT:  Counsel, you said you wanted to call

748

1                    O. Genger - by Plaintiff - Direct/Bowen

2       her.  She is here.  Ask her questions please.

3                    MR. DELLAPORTAS:  Your Honor --

4                    THE COURT:  I thought we were finished.

5                    MR. BOWEN:  No.  I just wanted to consult with my

6       lead chair.

7                    THE COURT:  I was hopeful.

8                    MR. BOWEN:  I now pass the witness.

9                    THE COURT:  Go ahead.

10                   MR. DELLAPORTAS:  I would prefer to call her as

11      part of my case.

12                   THE COURT:  This is part of your case.  Go ahead.

13                   MR. DELLAPORTAS:  I understand.  I don't have any

14      exhibits with me.

15                   THE COURT:  It's okay.  You knew what you were

16      going to do.

17                   Let's go ahead.

18                   MR. DELLAPORTAS:  I don't have the exhibits with

19      me, your Honor.

20                   THE COURT:  We don't need the exhibits.  Ask

21      whatever questions you have without the exhibits.

22                   MR. DELLAPORTAS:  Okay.

23      CROSS-EXAMINATION

24      BY MR. DELLAPORTAS:

25      Q    Miss Genger, you said you signed a settlement agreement

26      for $33 million; is that correct?

WLK

749

O. Genger - by Plaintiff - Cross

THE WITNESS: That's in evidence; isn't it?

MR. DELLAPORTAS: Yes. It's a foundational

question, your Honor.

THE COURT: Go ahead.

Q    And you said, if I wrote correctly, you don't know who

gets the money?

A    Correct.

Q    It's not of interest to you?

THE COURT: Are you interested in who gets the

money?

THE WITNESS: Yeah. Sure.

Q    You never asked anybody how there's a pot of

$33 million here, who is going to get it; that's what you are

telling the judge?

A    There isn't a pot of $33 million.

THE COURT: Well, do you expect to receive a

portion of that $33 million at some point?

THE WITNESS: At this point, no.

THE COURT: Well, at what point? At any point?

THE WITNESS: It's depends on how things --

THE COURT: Do you think that -- you think your

right to receive or the amount that you will receive or

whether you will receive depends on what happens in this

case?

THE WITNESS: No.

750

O. Genger - by Plaintiff - Cross

1
2          THE COURT:  Is there another case that will affect
3      that?
4          THE WITNESS:  No.  It's just a matter of, I know
5      that the Trumps were estopped in paying money because my
6      mother filed a lawsuit.
7          THE COURT:  Well, that's the lawsuit in the
8      Surrogates' Court?
9          THE WITNESS:  Right.
10         THE COURT:  Okay.
11         THE WITNESS:  Because she filed a lawsuit, now they
12     won't pay.
13         THE COURT:  At some point, when that lawsuit is
14     resolved, do you expect to receive a portion of the
15     $33 million?
16         THE WITNESS:  I don't expect to.  I hope that I
17     will, but I don't know.
18         THE COURT:  Okay.  That's the answer.
19     Q   Miss Genger, so we are clear, approximately $18 million
20     will be paid; is that correct?
21         THE COURT:  I missed the question.
22     Q   Approximately $18 million of the 32, 33 has already
23     been paid; is that correct?
24     A   I don't know exactly.
25         THE COURT:  It's in escrow with the lawyer.
26         MR. DELLAPORTAS:  No, your Honor.  $18 million has

WLK

751

1                    O. Genger - by Plaintiff - Cross

2        been distributed.

3                    THE COURT:  Has been distributed?

4                    MR. DELLAPORTAS:  Yes.

5                    THE COURT:  Have you received any money of the $18

6        million?

7                    THE WITNESS:  No.

8        Q       Where did that go?

9        A       I don't know.

10       Q       You're a signatory to a settlement agreement.  You have

11       no idea where $18 million went?

12       A       I believe it went to pay off Broser and other things

13       but I don't know.

14       Q       Who are the Brosers?

15       A       Arnold Broser and David Broser.  They are people who

16       helped fund litigations and gave us funds for living.

17       Q       So they loaned you money?

18       A       Yes.

19       Q       So part of that $18 million, or maybe all of the $18

20       million that's already been paid, went to your creditors;

21       correct?

22                    MR. HERSCHMANN:  Objection.  Calls for speculation.

23                    THE COURT:  Well, we don't know if they're

24       creditors.  You didn't get any of the $18 million?

25                    THE WITNESS:  No.

26                    THE COURT:  Next question.

WLK

752

O. Genger - by Plaintiff - Cross

1

2  Q    But the Brosers are your creditors; correct?

3          MR. BOWEN:  Objection.

4          THE COURT:  Overruled.

5          Did they loan money to you and your father in order

6  to finance the lawsuit?

7          THE WITNESS:  They loaned money to my father.

8  Q    In fact, you were a co-plaintiff in that lawsuit that

9  they loaned money to; correct?  We have the complaint here.

10          :    THE COURT:  You were one of the plaintiffs in the

11  lawsuit.

12          THE WITNESS:  Which lawsuit?

13  Q    The lawsuit in New York.

14          THE COURT:  The lawsuit that was settled as a

15  result of the agreement.

16          MR. DELLAPORTAS:  Yes.

17          THE WITNESS:  Sorry.  What we signed?

18          THE COURT:  You were one of the plaintiffs.

19          THE WITNESS:  I'm sorry.  Can you show me?

20          THE COURT:  All right.  Everybody stop.

21          There is an agreement settling a lawsuit.  That's

22  the agreement under which the $33 million was paid, 18 of

23  which has already been paid, as I understand it?

24          THE WITNESS:  Yes.

25          MR. HERSCHMANN:  Your Honor, for the record --

26          THE COURT:  Were you one of the plaintiffs in that

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon. BARBARA JAFFE

       *Justice*

**PART 12**

---

ARIE GENGER and ORLY GENGER, in her individual capacity
and on behalf of THE ORLY GENGER 1993 TRUST,

                **Plaintiffs,**

- v -

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC.,
DALIA GENGER, *et al.*,

            **Defendants.**

INDEX NO. 651089/2010
MOTION DATE
MOTION SEQ. NO.   42
CALENDAR NO.

**INTERIM ORDER**

---

The following paper, numbered 1, was read on this motion.

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...
Answer — Affidavits — Exhibits
Replying Affidavits

PAPERS NUMBERED

Cross-Motion: ☐ Yes ☐ No

       Defendant Dalia Genger's motion for an order substituting her, as trustee, as plaintiff for Orly Genger's Trump Group claims, and for an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court is held in abeyance pending the Surrogate's Court's resolution of Orly Genger's petition to remove Dalia Genger as trustee of Orly Trust. (*See Genger v Genger*, interim order dated Apr. 1, 2015, index No. 113862/2010 [mot. seq. no. 2]).

MOTION/CASE IS RESPECTFULLY REFERRED TO
JUSTICE     , J.S.C.
DATED:

Dated:    **5/7/15**

                        J.S. **BARBARA JAFFE**
                                  J.S.C.

Check one: ☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST   ☐ REFERENCE

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)
- - - - - - - - - - - - - - - - - - - - - - - x

OPPOSITION AFFIRMATION
ON BEHALF OF SAGI TRUST

File No. 0017/2008

JOHN DELLAPORTAS, an attorney admitted to practice in the courts of this state, hereby subscribes and affirms to be true under the penalties of perjury, pursuant to CPLR 2106, as follows:

1.     I am a member of the law firm of Kelley, Drye & Warren LLP, counsel to the Remainderman Beneficiary, the Sagi Genger 1993 Trust (the "Sagi Trust"). I respectfully submit this affirmation, on behalf of the Sagi Trust, in opposition to the motion of Orly Genger ("Orly") to dismiss the cross-petition of Dalia Genger (the "Trustee"), the trustee of the Orly Genger 1993 Trust (the "Trust"). The Sagi Trust supports the Trustee's cross-petition and, more broadly, the efforts of the Trustee to recoup the $32.3 million in Trust assets that Orly misappropriated for the benefit of her father, Arie, and his creditors.

2.     By this affirmation, the Sagi Trust wishes to supplement the record by noting certain additional false and misleading statements in Orly's motion papers. Most egregiously, on pages 2-3 of her Memorandum of Law, Orly falsely states that: "Sagi has now been adjudicated after trial and on summary judgment in two separate legal actions to have committed fraud against, and to have breached his fiduciary duties to, Orly, which determinations were upheld on appeal." In reality, the only finding of "fraud" liability against Sagi (relating to a transaction between the parties in which Orly *made* money and Sagi *lost* money) was <u>vacated (not affirmed) on appeal</u>. *See Genger v Genger*, 144 A.D.3d 581 (1st Dep't 2016). As the same counsel who signed Orly's brief also argued her appeal, his false statement is very puzzling.

3.      The other lawsuit against Sagi to which Orly refers (the "2009 Action") turned out
to be even more meritless.  Last August, J.H.O. Gammerman presided over a two-week trial in
the case, following which he found that Orly had suffered <u>zero damages</u> from the complained-of
conduct. *See Genger v. Genger*, N.Y. Cnty. Sup. Ct. Index No. 109749/2009, NYSCEF Doc. No.
1512.  Orly curiously fails to mention this outcome either.

4.      Lastly, Orly also neglects to tell the Court that in 2010 she filed *a third* meritless
lawsuit against Sagi, also supposedly on behalf of the Orly Trust (the "2010 Action").  In 2014,
all claims against Sagi, and the Company he ran, TPR, and the Sagi Trust were thrown out by the
Appellate Division, First Department, in a unanimous decision penned by Justice Helen
Freedman. *See Genger v. Genger*, 121 A.D.3d 270 (1st Dep't 2014).

5.      In that same suit, however, in 2013 Orly recovered $32.3 million from the Trump
Group (former friends and business partners of Arie Genger), by compromising the Trust's claim
to beneficial ownership in a black of shares of Trans-Resources, Inc. Yet, to date – contrary to
New York law – she has turned over <u>none</u> of the proceeds to the Trust.  No court has ever
adjudicated the proper recipient of the proceeds, because Orly obtained a discontinuance of her
derivative suit while refusing to show the underlying settlement agreement to either the Trustee
or the Sagi Trust (even on an "attorney's eyes only" basis).

6.      The irony here is that the Trustee procured a settlement of approximately $11
million from Sagi-run TPR in exchange for a release of the Trust's claims against TPR in the
2009 and 2010 Actions, but Orly had that settlement voided based on the Trustee's supposed
"conflict of interest." Incredibly, Orly now *brags* about that result on page 3 of her brief,
claiming that the $11 million settlement makes the Trustee "unfit to serve as trustee."  As noted
above, however, Orly then recovered $0 for the Trust on these same suits.

STATE OF NEW YORK
SURROGATE'S COURT:  COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

- - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIDAVIT OF SERVICE BY**
**FEDERAL EXPRESS**

File No. 0017/2008

STATE OF NEW YORK          )
                           )  SS.:
COUNTY OF NEW YORK         )

Kristina M. Allen, being duly sworn, deposes and states:

1.    I am not a party to this action, and am over 18 years of age.

2.    On the 26th day of September, 2017, I served the Opposition Affirmation on behalf of the Sagi Trust, dated September 26, 2017, upon the following attorneys at the addresses designated by them for service of papers:

> Eric D. Herschmann
> Kasowitz Benson Torres LLP
> 1633 Broadway
> New York, New York 10019

> Judith Bachman
> 254 S. Main Street, Suite 306
> New York, New York 10956

by depositing a true copy thereof, in a secure envelope with Federal Express, for overnight delivery.

_____
Kristina M. Allen

Sworn to before me this
26 day of September, 2017.

_____
Notary Public

SAMMY TONY SIMON
Notary Public, State of New York
No. 01SI6322471
Qualified in New York County
Commission Expires 04/06/2019

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK



| | |
|---|---|
| In the matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11). | File No.:    2008-0017<br><br>Surrogate Nora S. Anderson |

### AFFIRMATION OF SERVICE

I am an attorney admitted to practice before the Courts of the State of New York. On

September 25, 2017, on behalf of petitioner Orly Genger, I caused to be served by hand delivery

a true and correct copy of Orly Genger's Notice of Motion to Dismiss the Cross-Petition of Dalia

Genger, the Memorandum of Law in Support of Petitioner's Motion to Dismiss Dalia Genger's

Cross-Petition, and the Affirmation of Michael Paul Bowen and exhibits thereto, dated

September 8, 2017, on the Guardian Ad Litem in this action at the following address:

      Steven Riker, Esq.
      Law Office of Steven Riker
      One Grand Central Place, 46th Floor
      New York, New York 10165

Dated: New York, New York
       September 26, 2017

                                              Andrew R. Kurland

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11). | File No.:    2008-0017 <br><br> Surrogate Nora S. Anderson |

## REPLY AFFIRMATION OF MICHAEL PAUL BOWEN
## IN SUPPORT OF ORLY'S MOTION TO DISMISS CROSS-PETITION

MICHAEL PAUL BOWEN, duly admitted to practice law before the courts of the State of New York, affirms the following to be true under penalties of perjury pursuant to CPLR 2106:

1.    I am counsel to petitioner Orly Genger, and submit this reply affirmation in further support of Orly's motion to dismiss the cross-petition of Dalia Ganger ("Dalia") (cited herein as "Orly Mem.") and in reply to the opposition submissions by Dalia, dated September 25, 2017, and by Sagi Genger ("Sagi"), dated September 26, 2017, (which submissions are cited herein as "Dalia Mem." and "Sagi Opp.", respectively).

2.    The submissions by Dalia and Sagi do not address the core defect in her cross-petition – the undisputed fact that it is based on a claim that was already litigated and is barred by *res judicata*. Instead, both Sagi and Dali continue to try to deflect from this simple truth by clouding the record with fanciful claims that are, not only false, but irrelevant to the immediate procedural issue. In fact, these submissions show, yet again, that Dalia is arrayed *against* the interests of the trust beneficiary, Orly, and is in league with Sagi – who has now been adjudicated *twice* to have committed fraud and breach of fiduciary duties against Orly. That is reason enough – as is demonstrated in Orly's petition in this case – for the immediate removal of

Dalia as trustee.  By not voluntarily resigning that position, Dalia has used it for years and continues to use it to this day to serve her own conflicted interests and those of her son, Sagi.

3.      Dalia has thus violated – and continues to violate – her fundamental obligation as a fiduciary of the duty of undivided loyalty.  The fact that she let Sagi, who has already been adjudicated to be adverse to Orly, draft and submit papers on her behalf in this proceeding proves that she is irreconcilably conflicted and should be removed as trustee.

4.      Her meritless cross-petition is just yet another example of her antipathy to and conflict with Orly.  It should be dismissed with prejudice.

## A.  Neither Dalia Nor Sagi Refute the *Res Judicata* Bar

5.      In her opposition, Dalia pushes her claim that Orly's settlement with the Trump Group somehow implicated claims owned by the Orly Trust.  But that argument, such as it is, ignores the central flaw in her cross-petition:  The undeniable fact that Dalia failed to object to this settlement at the time Orly entered into it on behalf of herself and the fact that, previously, Dalia herself dismissed *with prejudice* any claims the Orly Trust had against the Trump Group.  This was held by the First Department to preclude the very claims that Dalia again tries to raise here in her cross-petition:

> Defendant Dalia Genger, as Trustee for the Orly Genger 1993 Trust (Orly Trust), failed to articulate any objection to the court's entry of the November 25, 2014 order dismissing plaintiff Orly Trust's breach of fiduciary duty and unjust enrichment claims against certain defendants, and her claim is not properly before this Court.  In any case, that order did not dismiss any claims; rather, it recognized that all claims had previously been dismissed or discontinued by prior court orders, dismissed the complaint, and severed other viable third party claims, cross claims, and counterclaims unrelated to the Orly Trust.

2

*Arie Genger v. Sagi Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016). As discussed in Orly's

moving papers, that decision is proof positive that Dalia's cross-petition is barred by *res*

*judicata*. Orly Mem. at 8-10.

6.      In her opposition, Dalia just ignores these hard facts, as already determined by the

Appellate Division -- a determination that is binding on this Court. Dalia's lack of response on

this point of law is further confirmation, if any there need be, that her cross-petition is not

sustainable. *See* Dalia Mem. at 4-6; Sagi Opp. ¶ 4. *See also* Bowen Affirm., dated September 8,

2017, Ex. D ¶ 4.

**B.  The Opposing Submissions are Rife with Falsehood**

7.      The rest of the misguided opposition by both Dalia and her confederate Sagi

sheds no further light on the viability of the cross-petition. Rather, these submissions are

textbook examples of misdirection and obfuscation.

8.      Sagi's inflammatory affirmation in opposition mischaracterizes the various

courts' rulings, as the opinions themselves demonstrate.

9.      First, contrary to what Sagi states (Sagi Opp. ¶ 2), the Appellate Division did not

reverse specific findings of Supreme Court that supported Orly's fraud claim against Sagi in her

2008 fraud action. After a months-long bench trial on the liability phase of a bifurcated trial,

Supreme Court held Sagi liable for fraud and set the matter over for a damages hearing. On

appeal, the Appellate Division vacated the judgment as to liability and remanded, holding that

liability on the fraud claim could not be determined before concluding the damages stage of trial.

In so ruling, the Appellate Division specifically rejected Sagi's arguments against the trial

court's findings that Orly had established through clear and convincing proof all the other

elements of fraud other than damages, including his false statements, her reasonable reliance and

his fraudulent intent, as well as the trial court's findings that Sagi provided false testimony,

falsified documents and generally lacked credibility. On these elements, the appellate court

ruled:

> The evidence otherwise supported the court's finding that Orly had
> satisfied her burden of proving the remaining elements of her cause
> of action for fraud in the inducement. We find no basis to disturb
> the court's factual findings and credibility determinations.

*Orly Genger v. Sagi Genger*, 144 A.D.3d 581, 581 (1st Dep't Nov. 29, 2016).

10.     Sagi, in fact, tried a second time, by a motion to reargue before the Appellate

Division, to convince the appeals court to vacate the entirety of the trial court's findings,

essentially asking to re-do the entire liability-stage trial and for recusal of the trial judge who has

presided for years over this and related litigation between Orly and Sagi and who presided over

the months-long bench trial (Jaffe, J.). The First Department *again* rejected his arguments,

summarily denying the motion to reargue. *Orly Genger v. Sagi Genger*, Feb. 28, 2017 App. Div.

Order No. M-6660, Index No. 100697/08.

11.     Second, in paragraph 3 of his opposition, Sagi falsely claims that Orly's claims

against Sagi in the "2009 Action" resulted in a finding of no damages. (This breach of fiduciary

duty case is related to, but was litigated as a separate case from, the 2008 fraud case discussed

above.) Again, Sagi's assertion is demonstrably false. In the 2009 Action, Supreme Court found

that Sagi had breached fiduciary duties he owed Orly. *Orly Genger v. Dalia Genger*, No.

109749/09, 2016 WL 1407903 (Sup. Ct. N.Y. Cnty. Apr. 8, 2016). This finding was

unanimously *affirmed in full* by the Appellate Division. *Orly Genger v. Dalia Genger*, 147

A.D.3d 443 (1st Dep't 2017). Afterward, a judicial hearing officer made a recommendation

awarding Orly no monetary damages. But this is not yet decided. Supreme Court has yet to

render decision. It is *sub judice* and the JHO recommendation was challenged by Orly on

4

various grounds.  Therefore, the issue as to Orly's damages resulting from Sagi's breach of his fiduciary duties simply has not yet been decided.

12.     More importantly, the question of damages is irrelevant to this proceeding and the pending motion to dismiss the cross-petition:  What is relevant is the trial court and the First Department both held Sagi liable for breach of his fiduciary duties to Orly, and the fact that Dalia – in yet again exhibiting her disqualifying conflicts of interests and unfitness to serve as trustee for Orly's trust – sided with Sagi and still sides with Sagi despite these adjudications of his fraud and breach of fiduciary duties that he (and Dalia) perpetrated against Orly.

13.     Dalia's opposition is likewise replete with falsehoods (not to mention typos). Like a broken record, Dalia continues to make the exact same arguments in a further attempt to delay the final resolution of this matter and further harm her daughter and granddaughter.

14.     Dalia is wrong when she argues that the Guardian Ad Litem in this action – Mr. Steve Riker, Esq. – represents Orly's daughter in this proceeding.  Dalia Mem. at 1, 12. It is indisputable that Mr. Riker was appointed in 2014 to represent *only* the interests of *unborn* children, who are (theoretically) contingent beneficiaries of the Orly Trust.  (At the time of the appointment of the Guardian over two years ago, Orly did not have any children.)  *See* Order Appointing Guardian Ad Litem, filed Dec. 11, 2014 ("It is Ordered, that Steven M. Riker, Esq., is hereby appointed the guardian ad litem of: UNBORN CHILDREN.").

15.     Mr. Riker is *not* the guardian of Orly's newborn daughter, who was born in 2017. Under New York law, her parents are presumptively entitled to act as her guardian.  *See, e.g., In re Judicial Settlement of First Intermediate Account of Proceedings of Mfrs. Of Hanover Trust Co.*, 83 A.D.2d 808, 808 (1st Dep't 1981) ("It is the policy of this state to encourage parents to act as guardians, thereby avoiding unnecessary appointments and the expense of a guardian ad

5

litem"). Absent further court order, Mr. Riker is limited to representing only theoretical "unborn children," not the actual daughter of Orly and her husband.

16.    Furthermore, Point II of Dalia's argument (Dalia Mem. at 15-17), which argues against Orly being allowed to select the successor trustee, is wholly inapposite. It is not germane to any issue on this motion to dismiss.

17.    Finally, in all the "smoke" of the misleading and irrelevant "issues" raised by Sagi and Dalia, Dalia ignores the massive record of her infidelity to Orly as the trust beneficiary. That is, perhaps, poignantly demonstrated by the fact that *Sagi's* lawyers drafted Dalia's answer and amended answer with cross-petition in this proceeding. *See* Orly Mem. at 5-7. Dalia does not even try to address this point -- because there is obviously nothing she can say in good faith to dispute it. *See* Dalia Mem. at 8 n.1 (admitting that Sagi's counsel filed Dalia's original answer, but ignoring that he also filed Dalia's August 12, 2017 amended answer and cross-petition and the fact that her signature on that pleading does not match her actual signature that appears on the verification).

## CONCLUSION

For the foregoing reasons and those set forth in Orly's opening papers on this motion, this Court should dismiss the cross-petition with prejudice, and award Orly such other and further relief that is just and proper.

Dated:    New York, New York
          October 2, 2017

_____
Michael Paul Bowen

6

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11). | File No.:    2008-0017<br><br>Surrogate Nora S. Anderson |

## AFFIRMATION OF SERVICE

I am an attorney admitted to practice before the Courts of the State of New York.  On

October 2, 2017, on behalf of petitioner Orly Genger, I served by U.S. First Class Mail, postage

prepaid, a true and correct copy of the Reply Affirmation of Michael Paul Bowen in Support of

Orly Genger's Motion to Dismiss Cross-Petition, dated October 2, 2017, on the parties to this

action, through their counsel, and the Guardian Ad Litem, as follows:


Counsel to Respondent/Cross-Petitioner Dalia Genger:

>    Judith Bachman, Esq.
>    254 S. Main Street, Suite 306
>    New City, New York 10956

Counsel to Respondent Sagi Genger:

>    John Dellaportas, Esq.
>    Kelley, Drye & Warren, LLP
>    101 Park Avenue
>    New York, New York  10017

Guardian Ad Litem:

>    Steven Riker, Esq.
>    Law Office of Steven Riker
>    One Grand Central Place, 46th Floor
>    New York, New York 10165


Dated: New York, New York
         October 2, 2017

                                                    _____
                                                    Andrew R. Kurland

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER, as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA § 711(11).

File No.:   2008-0017

Surrogate Nora S. Anderson

*New York County Surrogate's Court*
*MISCELLANEOUS DEPT.*
*OCT   2 2017*
*Clerk   FILED*

## STIPULATION TO ADJOURN MOTION TO DISMISS

IT IS HEREBY STIPULATED AND AGREED as follows:

1.    The return date of the motion to dismiss filed by petitioner Orly Genger, dated

September 8, 2017, is adjourned from October 3, 2017 to October 17, 2017.

2.    Photocopies and/or facsimile copies of this Stipulation shall be valid as if signed

in original.

Dated:  New York, New York
          October 2, 2017

KELLEY DRYE & WARREN LLP
John Dellaportas
101 Park Avenue
New York, NY 10178
(212) 808-5000

*Attorneys for Sagi Genger*

KASOWITZ BENSON TORRES LLP
Eric D. Herschmann
Michael P. Bowen
Andrew R. Kurland
1633 Broadway
New York, New York 10019
(212) 506-1903

*Attorneys for Orly Genger*

Judith Bachman
254 S. Main Street, Suite 306
New City, NY 10956
(845) 639-3210

*Attorney for Dalia Genger*

Steven Riker
One Grand Central Place, 46th Floor
New York, NY 10165
(212) 661-6410

*Guardian Ad Litem*

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of         MEMORANDUM IN OPPOSITION
ORLY GENGER, as a person interested, for the     TO MOTION TO DISMISS
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)    File No. 0017/2008

- - - - - - - - - - - - - - - - - - - - - - - - - x

The Sagi Genger 1993 Trust (the "Sagi Trust"), as the Remainderman Beneficiary to the

Orly Genger 1993 Trust (the "Trust"), respectfully submits memorandum of law in further

opposition to the motion of motion of Orly Genger ("Orly") to dismiss the cross-petition of Dalia

Genger (the "Trustee"), and specifically to address the claim that the Trustee's claims are

somehow barred by "res judicata." Simply put, the Trust's entitlement to the $32.3 million in

proceeds from the settlement of the Trust's claims against the Trump Group has never been

adjudicated. That issue is now squarely before this Court.

Orly does not, indeed she cannot, dispute that: (a) she brought derivative claims on behalf

of the Trust in the case entitled *Arie Genger et al v. Sagi Genger et al*, Index No. 651089/2010;

(b) that she settled the derivative Trust claims in 2013 for $32.3 million; and (c) to date, she has

remitted none of those settlement proceeds to the Trust. Nor can she dispute that, under New

York law, the proceeds from a derivative settlement belong to the injured party (in this case, the

Trust), not the derivative plaintiff (in this case, Orly). *See Sakow v Waldman*, 124 A.D.3d 860,

863 (2d Dep't 2015) ("A shareholder of a corporation, even of a closely held corporation, may

not recover in his or her individual capacity for wrongs committed against the corporation, and

any recovery obtained pursuant to a derivative cause of action asserted by a shareholder is

obtained for the benefit of the injured corporation.")

However, Orly claims that the Trustee is somehow barred by the doctrine of "res

judicata" from recovering the settlement proceeds for the Trust. That is utterly baseless. Under

New York law, in order for the terms of a settlement (beyond just the dismissal of the underlying case) to be *res judicata*, the terms of the settlement must be "agreed to by all parties present … [and] recorded in the minutes of the court." *Samerson v. Mather Mem. Hosp.*, 1995 NYLJ Lexis 2533, *11 (Sup. Ct. Suffolk Cnty. 1995); *see also United States Trust Co. v. Alpert*, 10 F. Supp. 2d 290, 1997 U.S. Dist. Lexis 24081 (S.D.N.Y. 1998) (rejecting similar argument that claim to settlement proceeds was barred by *res judicata* argument where the settling "court never considered any of the 346 Indentures at issue here nor the rights of the unitholder parties to those Indentures and obviously never decided who, as parties to the Indentures, would be entitled to distribution of the amount given to the Trustees herein").

That was not done here. Orly deliberately concealed the terms of the settlement from the Trustee, and then discontinued the action pursuant to a so-ordered Stipulation (NYSCEF DOC. NO. 487) that makes no mention whatsoever of any settlement proceeds, let alone determining the correct allocation thereof. The only res judicata is the dismissal of the Trust's claims. The Supreme Court never addressed the question of allocation of settlement proceeds; the closest it came was to hold "in abeyance" – in favor of this very proceeding – the Trustee's motion to have those proceeds deposited in that Court. (NYSCEF DOC. NO. 1279).

Accordingly, the Sagi Trust respectfully requests that Orly's motion be denied.

Dated: New York, New York
    October 9, 2017

JOHN DELLAPORTAS
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
*Attorneys for Sagi Trust*

STATE OF NEW YORK
SURROGATE'S COURT:  COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In the Matter of the Application of | AFFIRMATION OF |
| ORLY GENGER, as a person interested, for the | SERVICE |
| removal of DALIA GENGER as Trustee of the | |
| Orly Genger 1993 Trust pursuant to SCPA §711(11) | File No. 0017/2008 |

- - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN DELLAPORTAS, an attorney and counselor at law admitted to practice in the Courts of the State of New York, hereby affirms the following statements to be true under the penalties of perjury pursuant to CPLR 2106.  I am over the eighteen years old and not a party to this action.  On October 9, 2017, I caused to be served a copy of the attached Memorandum of Law in Opposition to Motion to Dismiss upon the following counsel:

Eric Herschmann
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
*Counsel to Petitioner Orly Genger*

Steven Riker, Esq.
Law Office of Steven Riker
One Grand Central Place, 46th Floor
New York, NY 10165
*Guardian At Litem*

Judith Lisa Bachman, Esq.
254 S. Main Street, Suite 406
New City, New York 10017
*Counsel to Respondent Dalia Genger*

by placing the documents in a sealed envelope with postage thereon fully pre-paid and then depositing the envelope in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
JOHN DELLAPORTAS

New York County Surrogate's Court
MISCELLANEOUS DEPT.

OCT 1 3 2017

FILED

Clerk_____

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA
GENGER, as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711(11)

-------------------------------------------------------------------X

File No. 2008-0017

**AFFIRMATION OF
STEVEN RIKER, ESQ.
IN RESPONSE TO
ORLY GENGER'S
MOTION TO DISMISS
CROSS PETITION**

STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the State

of New York, hereby affirms the following to be true subject to the penalties of perjury:

1.      I was appointed by an Order of the Hon. Nora S. Anderson to serve as the

Guardian ad Litem of unborn children of Petitioner Orly Genger ("Orly") in this miscellaneous

proceeding.

2.      Since such time, I have thoroughly acquainted myself with the rights and interests

of my wards in the above-entitled proceeding, and I have reviewed all the documents on file

pertaining thereto.

3.      I submit this affirmation in response to the instant motion of Orly, which seeks to

dismiss the recently filed Cross Petition of Dalia Genger, Trustee of the Orly Genger 1993 Trust.

## BACKGROUND

4.      Orly is the primary beneficiary of an irrevocable inter vivos trust established by

her father, Arie Genger ("Arie"), on or about December 13, 1993 (the "Orly Trust"). Orly has

sought the removal of her mother, Dalia Genger ("Dalia"), as trustee of said Trust, pursuant to

her Third Amended Petition (the "TAP").

5.      The Orly Trust provides for discretionary principal distributions to Orly for life,

and the remainder to her descendants, or if she has no descendants, to a trust that Arie established

for the benefit of Orly's brother, Sagi Genger (the "Sagi Trust"). Upon information and belief, Orly now has an infant daughter.

6.       Pursuant to the allegations of the TAP, Dalia has, *inter alia*, colluded with Sagi to loot the Orly Trust of its interests in two closely-held Genger family businesses – TPR Investment Associates, Inc. ("TPR") and Trans-Resources, Inc ("TRI"). Dalia has allegedly engaged in such action as a form of retribution to her daughter, Orly, who took the side of her father, Arie, during his divorce from Dalia (while Sagi took the side of his mother, Dalia).  As such, it is alleged that Dalia, in concert with Sagi, has breached her fiduciary duties as trustee of the Orly Trust.

7.       Pursuant to the allegations of the recently filed Cross Petition, Orly, *inter alia*, acted as a *de facto* trustee of the Orly Trust and breached her fiduciary duties in such capacity by bringing and settling a derivative action, on behalf of said Trust, as against the purchasers of certain shares of TRI – Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (the "Trump Group Entities") – without depositing the proceeds of such settlement into the Orly Trust. The Cross Petition contains causes of action sounding in breach of fiduciary duty, breach of loyalty, turnover, accounting, unjust enrichment, self-dealing, and successor trustee appointment.

## DISCUSSION

8.       As an initial matter, it is noted that counsel for Dalia has incorrectly stated that your affirmant was recently appointed to represent Orly's infant daughter (see Dalia Mem. at 12). As this Court is aware, your affirmant was appointed as GAL by Order dated December 11, 2014, several years before Orly had a child, and thus, was not appointed for the purpose of

2

representing the interests of Orly's newborn daughter.

9.     Additionally, I note that counsel, despite alleging that I was appointed to represent

Orly's infant daughter, failed to identify either your affirmant or her daughter as an interested

party in her Cross Petition, and initially failed to serve your affirmant with the Cross Petition

(although that has now been rectified).

A.     **De Facto Trustee**

10.     The main thrust of Dalia's Cross Petition is that Orly breached her fiduciary duty

to the Orly Trust by failing to pay any portion of the $32.3 million to the Trust that she obtained

in a settlement with the Trump Group Entities involving the rightful ownership of the TRI shares.

It is alleged by Dalia that Orly brought a derivative action on behalf of the Orly Trust against the

Trump Group Entities, seeking redress in an individual and representative capacity, and, as such,

owed a fiduciary duty to the Trust. In essence, the allegation is that Orly acted as a *de facto*

trustee.

11.     New York recognizes "the concept of a de facto trustee" (Matter of Monfort,

NYLJ, Dec. 13, 1995 (Sur Ct, Nassau County)(citing Matter of Sakow, 160 Misc.2d 703 (Sur Ct,

Bronx County 1994)).

12.     "A de facto trustee is one who assumes a position under color of title and actually

exercises the duties of office and can reasonably expect to be held accountable for trust related

activities" (Matter of Prins, NYLJ, July 23, 2008, at 30, col 3 (Sur Ct, New York County)

(citations omitted).

13.     Thus, assuming, *arguendo*, that Orly acted in a representative capacity, she may

be deemed a *de facto* trustee with fiduciary duties owed to the other trust beneficiaries, including

3

the obligation to deposit the Trust's share of any settlement proceeds into a Trust account, or

such other account as may be directed by a court of competent jurisdiction, due to her pending

proceeding to remove Dalia as Trustee of the Orly Trust.

B.    **Res Judicata**

14.    However, it appears that res judicata bars such claims at this juncture, since the

Appellate Division, First Department, in <u>Genger v. Genger</u>,  144 A.D.3d 581, 41 N.Y.S.3d 414

(1st Dept. 2016) held that:

> Defendant Dalia Genger, as Trustee for the Orly Genger 1993 Trust
> (Orly Trust), failed to articulate any objection to the court's entry of
> the November 25, 2014 order dismissing plaintiff Orly Trust's breach
> of fiduciary duty and unjust enrichment claims against certain
> defendants, and her claim is not properly before this Court (*Horizon
> Asset Mgt., LLC v Duffy, 106 AD3d 594, 595, 967 N.Y.S.2d 17 [1st
> Dept 2013]*). In any case, that order did not dismiss any claims;
> rather, it recognized that all claims had previously been dismissed or
> discontinued by prior court orders, dismissed the complaint, and
> severed other viable third party claims, cross claims, and
> counterclaims unrelated to the Orly Trust.

15.    Indeed, to the extent that Dalia previously alleged, or had a full and fair opportunity

to allege, that some, or all, of the $32.3 million settlement with the Trump Group Entities belonged

to the Orly Trust, such claims are now barred by prior court orders.

C.    **Statute of Limitations**

16.    Additionally, it is respectfully submitted that the fiduciary duty claim may be

time-barred.  New York applies different statutes of limitations for claims alleging breach of

fiduciary duty, depending on the remedy sought (see Kaufman v Cohen, 307 AD2d 113, 118 (1ˢᵗ

Dep't 2003). For equitable relief, the six-year limitations period in CPLR 213(1) applies.

However, when the plaintiff seeks only money damages, courts interpret the claims as alleging

injury to property, which is subject to the three-year limitations period set forth in CPLR 214(4).

Additionally, claims for breach of fiduciary duty generally accrue, and the statute of limitations

begins to run, as of the date of the alleged breach, not when it was discovered (see IDT Corp. v

Morgan Stanley, 12 NY3d 132, 140 (2009).

17.    In the case at bar, Dalia has sought monetary damages in the sum of $32.3 million

against Orly for her alleged breach of fiduciary duty, and thus, the three-year statute of

limitations, pursuant to CPLR 214(4), should apply herein.

18.    Furthermore, based upon Dalia's representations in her Cross Petition, that:

(i)    "In June 2013, Orly disclosed that she had 'entered into a confidential
settlement agreement to resolve all issues among the stipulating parties,'"
which included the Trump Group Entities (Dalia Cross Petition at ¶12);

(ii)   "By letter dated June 28, 2013, counsel to the Trump Group Entities wrote
to the court on behalf of all settling parties . . .confirming that: 'A material
term of the agreement among the settling parties was the dismissal of all
claims presently pending against one another, in whatever capacity they
were brought. [If the settlement stipulation was drafted so as to] have the
effect of not dismissing Orly Genger's derivative claims against the Trump
Group [Entities], contrary to the agreement of the settling parties . . .'"
[sic] (Dalia Cross Petition at ¶13); and

(iii)   "Months later, as part of a parallel proceeding, the United States District
Court directed Orly to produce her settlement agreement with the Trump
Group Entities . . . The document revealed that Orly had settled her claims
against the Trump Group Entities both 'in her individual capacity and in
her capacity as beneficiary of the Orly Genger 1993 Trust – the latter being
the very capacity by which the Supreme Court permitted Orly to assert
derivative claims.'" (Dalia Cross Petition at ¶15)

it appears that Dalia was aware, as early as June, 2013, and certainly within "months" thereafter,

that Orly had effectuated a settlement with the Trump Group Entities, in both, an alleged,

individual and representative capacity, and did not deposit the settlement proceeds into an Orly

Trust account. Yet, Dalia did not bring a claim against Orly until on or about August 12, 2017,

well more than three years later.

19.     Additionally, since the breach of loyalty cause of action is a mirror image of the

breach of fiduciary duty, and is based upon the same facts, it, too, would suffer the same time-

barred fate.

20.     Accordingly, it is respectfully submitted that the Cross Petition may be subject to

dismissal on multiple grounds.

## CONCLUSION

21.     Thus, except to the extent that i) Orly may be deemed a temporary *de facto* trustee

with concomitant fiduciary duties owed to the other trust beneficiaries, and ii) the Cross Petition

may be time-barred, your affiant respectfully submits that the issues on the motion have been

6

sufficiently briefed by Orly (with whom my wards' share many of the same interests), and that

my wards' interests are adequately protected thereby. To that extent, I will respectfully rely upon

the motion papers and legal arguments advanced by Orly, and submit that the Cross Petition

should be dismissed.

Dated: New York, New York
      October 13, 2017

 

_____

STEVEN RIKER

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    File No. 2008-0017
In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA                 **AFFIRMATION OF**
GENGER, as Trustee of the Orly Genger 1993 Trust               **SERVICE**
pursuant to SCPA §711(11)
------------------------------------------------------------------------X

     I, STEVEN RIKER, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following subject to the penalties of perjury

     On October 13, 2017, I served the within **AFFIRMATION OF  STEVEN RIKER,**

**ESQ. IN RESPONSE TO ORLY GENGER'S MOTION TO DISMISS CROSS PETITION**

by email <u>and</u> by depositing a true copy, enclosed in a post-paid, <u>overnight delivery</u>, Federal

Express wrapper, in an official depository under the exclusive care and custody of Federal

Express, within New York State, addressed to the following persons at the addresses set forth:

TO:   John Dellaportas, Esq.             Judith Bachman, Esq.
      Kelley Drye & Warren LLP       Attorney for Dalia Genger
      Attorneys for Sagi Trust          254 S. Main Street, Suite 306
      101 Park Avenue               New City, New York 10956
      New York, New York 10178

      Michael Paul Bowen, Esq.
      Kasowitz Benson Torres LLP
      Attorneys for Orly Genger
      1633 Broadway
      New York, New York 10019

 

                                _____
                                STEVEN RIKER

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FILE NO. 2008-0017

In the Matter of the Application of ORLY GENGER,
as a person interested, for the removal of DALIA
GENGER, as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711(11)

## AFFIRMATION OF STEVEN RIKER, ESQ.
## IN RESPONSE TO
## ORLY GENGER'S MOTION TO DISMISS THE CROSS PETITION

**STEVEN RIKER, ESQ.**
Guardian ad Litem
Law Office of Steven Riker
One Grand Central Place, 46th Floor
New York, New York 10165
Tel No.: (212) 661-6410

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11). | File No.:    2008-0017<br><br>Surrogate Nora S. Anderson |

## STIPULATION TO ADJOURN MOTION TO DISMISS

IT IS HEREBY STIPULATED AND AGREED as follows:

1.    Due to a family medical emergency of counsel for petitioner, the parties hereto

agree to adjourn the return date of the motion to dismiss filed by petitioner Orly Genger, dated

September 8, 2017, from October 17, 2017 to December 8, 2017, at 9:30 a.m.

2.    Photocopies and/or facsimile copies of this Stipulation shall be valid as if signed

in original.

Dated:  New York, New York
        October 16, 2017

KELLEY DRYE & WARREN LLP
John Dellaportas
101 Park Avenue
New York, NY 10178
(212) 808-5000

*Attorneys for Sagi Genger*

KASOWITZ BENSON TORRES LLP
Eric D. Herschmann
Michael P. Bowen
Andrew R. Kurland
1633 Broadway
New York, New York 10019
(212) 506-1903

*Attorneys for Orly Genger*

Judith Bachman
254 S. Main Street, Suite 306
New City, NY 10956
(845) 639-3210

*Attorney for Dalia Genger*

Steven Riker
One Grand Central Place, 46th Floor
New York, NY 10165
(212) 661-6410

*Guardian Ad Litem*

# KASOWITZ BENSON TORRES LLP

SENDER'S FAX ANDREW KURLAND

SENDER'S DIRECT DIAL 212-506-3306

SENDER'S E-MAIL ADDRESS
AKURLAND@KASOWITZ.COM

**NEW YORK OFFICE**
1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

# FAX TRANSMISSION COVER SHEET

| TO: | FAX NO.: 12126185157 |
|---|---|
| **FROM: Andrew Kurland** | **TELEPHONE NO.: 212-506-3306** |

**DATE: 16/10/2017**
**18:28:30 EDT**

**COVER MESSAGE**

Attached please find a stipulation adjourning petitioner's motion from October 17, 2017 to December 8, 2017.  Thank you.

Andrew R. Kurland
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-3306
Fax. (212) 835-5254
AKurland@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

---

**IF YOU DO NOT RECEIVE ALL OF THE PAGES OR FIND THAT THEY ARE ILLEGIBLE, PLEASE CALL (212) 506-1842.**

**CONFIDENTIALITY NOTICE:**
This fax transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

**Andrew R. Kurland**

| | |
|---|---|
| **From:** | Judith Bachman <judith@thebachmanlawfirm.com> |
| **Sent:** | Monday, October 16, 2017 5:37 PM |
| **To:** | Steven Riker |
| **Cc:** | Dellaportas, John; Andrew R. Kurland; Michael P. Bowen |
| **Subject:** | Re: E/O Genger - File No. 2008-0017 |

Again, any date in December before the 14th is fine for me.  Please sign accordingly.

**B**
THE BACHMAN
LAW FIRM

**Judith Bachman, Esq.**
*Trusted Legal Counsel for You and Your Business*

**P:** 845.639.3210  **C:** 845.300.1595
Judith@thebachmanlawfirm.com
thebachmanlawfirm.com

254 S. Main Street  |  Suite 306  |  New City, NY 10956

On Mon, Oct 16, 2017 at 5:34 PM, Steven Riker <sr@stevenrikerlaw.com> wrote:

I would prefer the 8th, to have a few extra days, but either is ok.

Very truly yours,

Steven Riker, Esq.
Law Office of Steven Riker
One Grand Central Place, 46th Floor | New York, NY 10165
445 Hamilton Avenue, Suite 1102 | White Plains, NY 10601
t 212.661.6410 | f 212.994.2146
SR@stevenrikerlaw.com

NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the individual(s) named as recipient(s) and are covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. If you received this email in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. Unless we have been formally retained, nothing contained in this email shall be construed as legal advice.

## Andrew R. Kurland

| | |
|---|---|
| **From:** | Dellaportas, John <JDellaportas@KelleyDrye.com> |
| **Sent:** | Monday, October 16, 2017 5:37 PM |
| **To:** | Steven Riker |
| **Cc:** | Judith Bachman; Andrew R. Kurland; Michael P. Bowen |
| **Subject:** | Re: E/O Genger - File No. 2008-0017 |

Ok to sign for me on 8th.

On Oct 16, 2017, at 5:34 PM, Steven Riker <sr@stevenrikerlaw.com> wrote:

> I would prefer the 8th, to have a few extra days, but either is ok.
>
>
> Very truly yours,
>
>
> Steven Riker, Esq.
> Law Office of Steven Riker
> One Grand Central Place, 46th Floor | New York, NY 10165
> 445 Hamilton Avenue, Suite 1102 | White Plains, NY 10601
> t 212.661.6410 | f 212.994.2146
> SR@stevenrikerlaw.com
>
> NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the individual(s) named as
> recipient(s) and are covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. If you
> received this email in error, please do not read, distribute, or take action in reliance upon this message. Instead,
> please notify us immediately by return email and promptly delete this message and its attachments from your
> computer system. We do not waive attorney-client or work product privilege by the transmission of this message.
> Unless we have been formally retained, nothing contained in this email shall be construed as legal advice.
>
>
> **From:** Judith Bachman <judith@thebachmanlawfirm.com>
> **Sent:** Monday, October 16, 2017 5:31:06 PM
> **To:** Dellaportas, John
> **Cc:** Andrew R. Kurland; Steven Riker; Michael P. Bowen
> **Subject:** Re: E/O Genger - File No. 2008-0017
>
> Me too.
>
>
> 
>
> **Judith Bachman, Esq.**

1

STATE OF NEW YORK
SURROGATE'S COURT:  COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of                    NOTICE OF SUBSTITUTION
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)       File No. 0017/2008
- - - - - - - - - - - - - - - - - - - - - - - - - x

PLEASE TAKE NOTICE that the Judith Bachman, Esq., 254 S Main St, New City, NY 10956,

(845) 639-3210, is hereby substituted as attorney of record for Dalia Genger in this proceeding in

lieu of Pedowitz & Meister LLP.

Judith L. Bachman
Incoming attorney

Pedowitz & Meister LLP

By _____
Robert A. Meister
Outgoing attorneys

Consented to:

_____
Dalia Genger

STATE OF NEW YORK    )
COUNTY OF NEW YORK  ) ss.:

On the 17 day of ~~November~~ December, 2017, before me personally came Dalia Genger, to me known and
known to me to be the person described in this document, who executed the foregoing consent
and acknowledged to me that she executed the same.

_____
Notary Public

ROBERT A. MEISTER
Notary Public, State of New York
No. 31-02ME2653350
Qualified in New York County
Commission Expires March 30, 2011

STATE OF NEW YORK
SURROGATES COURT: COUNTY OF NEW YORK

----------------------------------------------------X

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

File No. 0017/2009

**AFFIDAVIT OF SERVICE**

----------------------------------------------------X

State of New York    )
                    ) ss:
County of New York   )

        Jeremy Busch, being sworn, deposes and says:

        I am over the age of 18, and reside at 570 Lexington Avenue, 18th Fl., New York, NY 10022.

        On the 14th day of December, 2017, deponent served the attached Notice of Substitution via regular mail on:

> Eric D. Herschmann, Esq.
> Michael P. Bowen, Esq.
> Andrew Kurland
> Kasowitz Benson Torres LLP
> 1633 Broadway
> New York, New York 10019
> Attorneys for Petitioner         and
>
> John Dellaportas, Esq.
> Kelley Drye & Warren LLP
> 101 Park Avenue, 30th Floor
> New York, New York 10178
> Attorney for Sagi Genger Trust       and
>
> Steven Riker, Esq.
> 60 E. 42nd St. 46th Floor
> New York, New York 10165
> Guardian *ad Litem*

Jeremy Busch

Subscribed and Sworn to
before me this 14th day
of December 2017

_____
Notary Public

ROBERT A. MEISTER
Notary Public, State of New York
No. 31-02ME2653350
Qualified in New York County
Commission Expires March 30, 201__

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of
ORLY GENGER, as a person interested for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

---

File No.:   2008-0017
~~2018~~-0017

Surrogate Nora S. Anderson

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUL 16 2019

FILED
Clerk_____

PLEASE TAKE NOTICE that, on July 12, 2019 (the "Petition Date") at approximately

8:30 p.m. eastern time, petitioner/cross-claim defendant Orly Genger filed a voluntary petition

for bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code in the United States

Bankruptcy Court for the Western District of Texas, under Case No. 19-bk-10926.

PLEASE TAKE FURTHER NOTICE that, pursuant to 11. U.S.C. § 362, *inter alia*, the

commencement or continuation of a judicial, administrative, or other action or proceeding

against petitioner/cross-claim defendant Orly Genger that was or could have been commenced

before the Petition Date, including this action, is stayed as of the Petition Date.  Additional

information about the bankruptcy can be obtained by reviewing the docket of the matter

(*see* https://www.txwb.uscourts.gov/) or contacting counsel for debtor at:

Eric Taube, Esq.
(512) 385-6400
Eric.Taube@wallerlaw.com
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, Texas  78701

Dated: New York, New York
       July 15, 2019

                                Respectfully submitted,

                                KASOWITZ BENSON TORRES LLP

                                By: _____
                                    Michael Paul Bowen
                                    (mbowen@kasowitz.com)
                                    Andrew R. Kurland
                                    (akurland@kasowitz.com)
                                    1633 Broadway
                                    New York, NY 10019
                                    (212) 506-1700

                                Attorneys for petitioner/cross-claim defendant Orly
                                Genger

TO (via FedEx):

        Judith Bachman, Esq.
        254 S. Main Street
        Suite 306
        New City, NY 10956

        *Counsel for Respondent Dalia Genger*

        Spencer I. Schneider, Esq.
        39 Broadway, 32nd Floor
        New York, NY 10006

        *Counsel for Successor Trustee Michael Oldner*

        John Dellaportas, Esq.
        EMMET, MARVIN & MARTIN LLP
        120 Broadway, 32nd Floor
        New York, NY 10271

        *Counsel to the Sagi Genger 1993 Trust*

                                      2

Steven Riker, Esq.
Law Office of Steven Riker
One Grand Central Place, 46th Floor
New York, New York 10165

*Guardian Ad Litem*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of
ORLY GENGER, as a person interested for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11

File No.:   2008-001?

Surrogate Nora S. Anderson

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUL 16 2019

FILED

Clerk

## AFFIRMATION OF SERVICE

I am an attorney admitted to practice before the Courts of the State of New York.  On

July 15, 2019, on behalf of petitioner/cross-claim defendant Orly Genger, I caused to be served

by FedEx overnight delivery a true and correct copy of petitioner/cross-claim defendant Orly

Genger's Notice of Bankruptcy, dated July 15, 2019 on parties at the following addresses:

Judith Bachman, Esq.
254 S. Main Street
Suite 306
New City, NY 10956

*Counsel for Petitioner Dalia Genger*

Spencer I. Schneider, Esq.
39 Broadway, 32nd Floor
New York, NY 10006

*Counsel for Successor Trustee Michael Oldner*

John Dellaportas, Esq.
EMMET, MARVIN & MARTIN LLP
120 Broadway, 32nd Floor
New York, NY 10271

*Counsel for Sagi Genger*

Steven Riker, Esq.
Law Office of Steven Riker
One Grand Central Place, 46th Floor
New York, New York 10165

*Guardian Ad Litem*

Dated: New York, New York
July 15, 2019

Andrew R. Kurland

SURROGATE'S COURT : NEW YORK COUNTY

New York County Surrogate's Court

Date: _August 20, 2019_

----------------------------------------X

In the Matter of the Application of
Orly Genger to Remove Dalia Genger
as Trustee of The Orly Genger 1993
Trust Established on December 13,          File No. 2008-0017
1993, by

        ARIE GENGER,

         Grantor.

----------------------------------------X

A N D E R S O N ,  S .

    The court has been notified that Orly Genger, petitioner

and counter-claim respondent in the above-captioned proceeding,

has filed for bankruptcy, pursuant to Chapter 7 of Title 11 of

the United States Code, in the United States Bankruptcy Court

for the Western District of Texas under Case No. 19-bk-10926.

Accordingly, this proceeding has been automatically stayed (*see*

11 USC § 362).

    Proceed accordingly.


Dated: August 20, 2019


                                 /NSA
                            S U R R O G A T E